PETITION FILED BY:  **GLENN CHARLES AYO #531823**
**LOUISIANA STATE PRISON**
**ANGOLA, LOUISIANA 70712**

TO:  U.S. DISTRICT COURT – EASTERN DISTRICT OF LOUISIANA

Glenn Charles Ayo v. N. Burl Cain, Warden

# 13 - 4580

120 pages printed: Sunday, May 18, 2013  1:32.06 P.M.
102 exhibit pages attached.
*A - I APPENDIX ATTACHED*

# SECT. J MAG. 5

RECEIVED

MAY 23 2013

Legal Programs Department

SCANNED at LSP and Emailed
5-23-13 by Pom . 121 pages
date   initials   No.

# UNITED STATES DISTRICT COURT

## Eastern District of Louisiana

| | | |
|---|---|---|
| **GLENN CHARLES AYO** | * | **CIVIL ACTION** |
| | * | NO.: _____ SEC.: _____ |
| **VERSUS** | * | |
| | * | **MAGISTRATE:** _____ |
| **N. BURL CAIN, Warden** | * | |
| **Louisiana State Penitentiary** | * | **JUDGE:** _____ |

# PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C. SECTION 2254

## ORIGINAL BRIEF

RESPECTFULLY SUBMITTED BY:

_____ 531823

**GLENN CHARLES AYO #531823**
**LOUISIANA STATE PRISON**
ANGOLA, LOUISIANA 70712

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | **Eastern District of Louisiana** | |
|---|---|---|
| Name: GLENN CHARLES AYO | Prisoner No. 531823 | Case No. |
| Place of Confinement: LOUISIANA STATE PRISON | | |
| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of Petitioner) | |
| GLENN CHARLES AYO                    V. | N. BURL CAIN, WARDEN, LA. STATE PRISON | |
| The Attorney General of the State of: CHARLES FOTI | | |

**PETITION**

1. Name and location of Court which entered the judgment of conviction under attack _24th Judicial District Court, Parish of Jefferson, State of Louisiana_

2. Date of judgment of conviction _November 28, 2007_

3. Length of sentence _87 years_

4. Nature of offense involved (all counts) _Armed Robbery (1 ct.) ; Resisting Arrest (1 ct.)_

5. What was your plea? (Check one)
   (a) Not guilty      [X]
   (b) Guilty          [ ]
   (c) Nolo Contendere [ ]
If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _N/A_

6. Kind of trial: (Check one)
   (a) Jury       [X]
   (b) Judge only [ ]

7. Did you testify at the trial?
   Yes [X]    No [ ]

8. Did you appeal from the judgment of conviction?
   Yes [X]    No [ ]

9. If you did appeal, answer the following:

   (a) Name of Court _Court of Appeal, Fifth Circuit_

   (b) Result _Affirmed_

   (c) Date of result _State v. Ayo, 7 So.3d 85 (La. App. 5th Cir. 4-13-09)_

   (d) Grounds raised _Trial Court erred by failing to suppress evidence; Trial Court erred_

i

*precluding defense cross-examination on material issue(s); Trial Court erred not addressing pretrial writ on ineffective counsel; Trial Court erred not granting mistrial; Trial Court erred admitting evidence breaching pretrial agreement.*

(e) If you sought further review of the decision on appeal by a higher state Court, please answer the following:

    (1) Name of Court  *Louisiana Supreme Court*

    (2) Result  *Writ Denied*

    (3) Date of result and citation, if known  *State v. Ayo, 28 So.3d 1006 (La. 3/5/10)*

    (4) Grounds raised  *Same*

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

    (1) Name of Court

    (2) Result

    (3) Date of result and citation, if known

    (4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any Court, state or federal?
Yes [X]    No [ ]

11. If your answer to 10 was "yes", give the following information:

    (a) (1) Name of Court  *U.S. District Court, Eastern District. (case no. 08-963)*

        (2) Nature of proceeding  *28 U.S.C. § 1983, Civil Suit*

        (3) Grounds raised  *1. Perjured testimony resulted in false conviction of actual innocent man, denying Sixth and Fourteenth Constitutional right to fair trial*
        (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes [ ]    No [X]
        (5) Result  *Dismissed to exhaust State remedies first.*
        (6) Date of result  *June 3, 2008*

    (b) As to any second petition, application or motion give the same information:
        (1) Name of Court  *Louisiana Supreme Court*

        (2) Nature of proceeding  *Petition to Annul Opinion of Fifth Circuit Court of Appeal*

        (3) Grounds raised  *1. The Fifth Circuit committed perjury changing material facts, causing fraud on all reviewing Courts*

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes [ ]    No [X]
        (5) Result  *Denied access to court, Clerk refused to file*

(6) Date of result  *March 2, 2011*

(c) As to any third petition, application or motion give the same information:

  (1) Name of Court  *24ᵗʰ Judicial District Court, Parish of Jefferson, State of Louisiana*

  (2) Nature of proceeding  *Petition For Post Conviction Relief*

  (3) Grounds raised  *Ineffective assistance of counsel; Prosecutorial misconduct; and*

  *Abuse of discretion*

  (4) Did you receive an evidentiary hearing on your petition, application or motion?
  Yes  [ ]      No  [X]

  (5) Result  *Denied Relief*

  (6) Date of result  *May 16, 2012 (See Appendix - F )*

(d) Did you appeal to the highest state Court having jurisdiction the result of action taken on any petition, application or motion?

  (1) First petition, etc.      Yes  [ ]      No  [X]

  (2) Second petition, etc.   Yes  [X]      No  [ ]

  (3) Third petition, etc.     Yes  [X]      No  [ ]

(e) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:  *(1) Petitioner § 1983 was directed to exhaust State remedies:*

*(2) Defendant's petition the highest State court. Moreover, Petition for Mandamus Relief*

*in U.S. Eastern District (case no. 11-956). When State court denied access to court.*

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

  **Caution:** In order to proceed in the federal Court, you must ordinarily first exhaust your available state Court remedies as to each ground on which you request action by the federal Court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

  For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state Court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

  Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with

understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: *SEE MEMORANDUM IN SUPPORT*

Supporting FACTS (tell your story *briefly* without citing cases or law):

*SEE MEMORANDUM IN SUPPORT*

B. Ground two: *SEE MEMORANDUM IN SUPPORT*

Supporting FACTS (tell your story *briefly* without citing cases or law):

*SEE MEMORANDUM IN SUPPORT*

C. Ground three: *SEE MEMORANDUM IN SUPPORT*

Supporting FACTS (tell your story *briefly* without citing cases or law):

*SEE MEMORANDUM IN SUPPORT*

D. Ground Four: *SEE MEMORANDUM IN SUPPORT*

Supporting FACTS (tell your story *briefly* without citing cases or law):

*SEE MEMORANDUM IN SUPPORT*

13. If any of the grounds listed in 12 A, B, C, and D were not previously presented in any other Court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any Court, either state or federal, as to the judgment under attack?

Yes [ ]    No [ ]

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing  *Marquita Naquin, 848 2ᵈ Street, Gretna, La. 70053*

(b) At arraignment and plea  *Marquita Naquin, 848 2ᵈ Street, Gretna, La. 70053*

(c) At trial  *Evans Schmidt, 848 2ᵈ Street, Gretna, La. 70053*

(d) At sentencing  *Evans Schmidt, 848 2ᵈ Street, Gretna, La. 70053*

(e) On appeal  *Margaret Sellers, 513 Country Club Blvd. Thibodaux, La. 70301*

(f) In any post-conviction proceeding  *Pro Se*

(g) On appeal from any adverse ruling in a post-conviction proceeding  *Pro Se*

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same Court and at the same time?

Yes [X]     No [ ]

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes [ ]     No [X]

(a) If so, give name and location of Court which imposed sentence to be served in the future:
N/A

(b) Give date and length of the above sentence:  N/A

(c) Have you filed, or do you contemplate filing any petition attacking the judgment which imposed the sentence to be served in the future?

Yes [ ]     No [X]


WHEREFORE, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____
       *None*
Signature of Attorney (if any)


I declare under penalty of perjury that the foregoing is true and correct. Executed on

...... *MAY 20, 2013* ..............
            (date)

_____ 531823
Signature of Petitioner

v

# UNITED STATES DISTRICT COURT
## Eastern District of Louisiana

| | | |
|---|---|---|
| GLENN CHARLES AYO | ★ | CIVIL ACTION |
| | ★ | |
| VERSUS | ★ | NO.: _____  SEC.: _____ |
| | ★ | |
| N. BURL CAIN, Warden | ★ | MAGISTRATE: _____ |
| Louisiana State Penitentiary | ★ | |
| | ★ | JUDGE: _____ |

## MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C. SECTION 2254

MAY IT PLEASE THE COURT:

NOW INTO COURT, comes Pro Se Petitioner, Glenn Charles Ayo, who respectfully submits this memorandum in support of his petition for writ of habeas corpus, and requests that the law and argument contained herein be considered in this matter.

### GROUNDS FOR RELIEF

This petition for writ of habeas corpus is filed pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of respondent pursuant to a state court judgment of conviction that was obtained in violation of the Constitution of the United States.

### WRIT GRANT STATEMENT

Petitioner's federal habeas should be granted pursuant to 28 U.S.C. § 2254(d) for the following reasons: there has been a state court adjudication of all the issues presented in this petition; the issues in question involve federal law; the issues were adjudicated in formal state court proceedings; and the adjudication resulted in a decision that was contrary to clearly

1

established federal law under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. As discussed below, this petition is timely filed within the delays allowed by law.

### STATEMENT OF THE CASE / TOLLING OF ONE-YEAR LIMITATION

Defendant/Petitioner Glenn Ayo, was arrested January 7, 2007, and charged by way of Bill of Information, in Case No. 07-369, with armed robbery in violation of La. R.S. 14:64, and resisting arrest in violation of La. R.S. 14:108. (R.23).

Defense counsel, Marquita Naquin, was appointed to represent Mr. Ayo. However, suspiciously dismissed. Thereafter, Evans Schmidt was appointed to represent Mr. Ayo.

Jury trial was held on November 27th and 28th, 2007, and Defendant was found guilty as charged. (R. 148-383). A Motion for New Trial was filed and denied on December 5, 2007. Mr. Ayo was then sentenced to 87 years. (R. 389-403).

Defendant filed a Federal complaint, case no. 08-963, pursuant to 42 U.S.C. § 1983 against numerous Jefferson Parish officials, State of Louisiana, for violating his Constitutional right(s) by committing perjury in trial that resulted in his conviction. (See Appendix – A, attached).

The Fifth Circuit Court of Appeal denied Mr. Ayo's Direct Appeal in *State v. Ayo*, 7 So. 3d 85 (La. App. 5th Cir. 2009), case no. 08-KA-468, *rehearing denied* April 13, 2009. (See Appendix – B & C, attached).

Application for Writ of Certiorari Review, case no. 09-KH-1026, was filed in the Louisiana Supreme Court on April 23, 2009. The State's Supreme Court denied writ in *State v. Ayo*, 28 So. 3d 1006 (La. 3/5/10). (See Appendix – D, attached).

Defendant's "Petition to Annul Final Judgment for Vices of Form and Substance" was

subsequently filed in the Louisiana Supreme Court. When the Clerk of Court refused to process, Petitioner amended title and refiled under "Petition to Annul Opinion of Circuit Court for Vices of Form and Substances."

When the Clerk of Louisiana Supreme Court denied Constitutional access to court a second time. (No case number assigned). Mr. Ayo petitioned for Writ of Mandamus in the United States District Court, Eastern District of Louisiana, case no. 11-956. (See Appendix – E, attached).

### Timeliness of Application:

This Application is properly before this Court as Petitioner's Direct Appeal was finalized when rehearing denied April 13, 2009. (See Appendix – B & C).

Application for Writ of Review, case no. 09-KH-1026, filed in Louisiana Supreme Court April 23, 2009. The State Supreme Court denied writ in *State v. Ayo*, 28 So. 3d 1006 (La. 3/5/10). (See Appendix – D, attached).

Petitioner's conviction became final for the purpose of the Anti-Terrorism and Effective Death Penalty Act on June 5, 2010, after the 90 day period for seeking relief in the United States Supreme Court expired. *Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003).

Petitioner timely filed his *Application for Post Conviction Relief*, including exhibit(s), into the trial court 61 days later on August 6, 2010, within one year of the affirmation of his conviction and sentence, preserving both his state post-conviction rights and the federal habeas deadlines established by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244. The trial court denied relief on May 16, 2012. (See Appendix – F, attached w/ exhibit(s)).

Petitioner sought Application for Supervisory and/or Remedial Writ in the Louisiana

Fifth Circuit Court of Appeal 51 day later on July 6, 2012, under case no. 12-KH-583  The Louisiana Fifth Circuit Court of Appeal denied Petitioner's relief on August 24, 2012. (See Appendix – G, attached).

In a diligent attempt to stop repeated corruption in the truth process, judicial misconduct, and criminal malfeasance of Appellant Circuit Court changing record on appeal, Defendant additionally filed a judicial complaint, including exhibit(s), detailing alteration of Court's records, the same was denied. (See Appendix – H, attached w/ exhibit(s)).

When appellate court denied Supervisory Writ on August 24, 2012, Defendant filed an Application for Remedial Writ / Certiorari in the Louisiana Supreme Court, case no. 12-KH-2093, filed 33 days later on September 26, 2012. The State Supreme Court denied relief, March 8, 2013, thereby exhausting all State remedies. (See Appendix – I, attached).

Petitioner now files this Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody and Memorandum in Support, _23_ days later, on __MAY 20_, 2013, in accordance with penitentiary rules and procedures through electronic filing. Therefore, this application is timely and proper before this Honorable Court for its consideration AFTER 218 DAYS OUT OF COURT.

## STATEMENT OF FACTS

Mr. Baptist DeBroy testified that he had gone to a Mardi Gras warehouse with his wife when a man approached from behind and put a knife to his throat demanding money. The robber and he were face-to-face, within one foot, and he got a good look at him. (R. 80-83, 264-268).

Mr. DeBroy gave the perpetrator $28.00 and the perpetrator fled on foot. Mr. DeBroy called 911, describing the robber as a white man about 5'7", slim, weighing 150 pounds, and

wearing a dark blue or black (pullover) hooded sweatshirt. (R. 84, 269-272).

Lieutenant Detective Daniel Jewell, Jr., who grew up in the neighborhood, met with the victim, got a better description, and instructed him to call 911. He specifically remembered Mr. DeBroy saying *"He was a nice looking guy."* (R. 155-158).

After he made a couple of loops around the neighborhood to see if he saw the perpetrator, the radio dispatcher informed that Deputy Simoneaux stopped a suspect on Jefferson Highway. While in route going down Cicero Street, Detective Jewell saw a white male wearing blue jeans and green tee shirt carrying a traveling bag. After he questioned the description of the man with fellow officers via radio, he learned that the white male did not fit the description of the suspect. He then drove off. (R. 158-162).

When Mr. DeBroy did not identify the Mexican man stopped by Deputy Simoneaux, Detective Jewell headed back to Cicero Street where he viewed the guy in green shirt and jeans, but he wasn't there anymore. He asked one of the construction workers with no incriminating information, where the guy that was standing in front his apartment with the green shirt went? They said, "Yeah. He got into a blue cab and headed that way." The direction he pointed would have been towards New Orleans or possibly Mississippi – East. (R. 85, 163).

Deputy Paul Simoneaux controvertedly testified that while in route to investigate an armed robbery, Detective Jewell advised on the radio that he observed a suspect fitting the description get into a Metairie Service Cab Co. cab and he had a knife protruding from his back pocket. He then further heard Detective Jewell broadcast that he was in pursuit trying to catch up with the cab, but lost sight of it "as we entered the Orleans Parish line." (R. 98-100, 235-237).

5

When Deputy Simoneaux got to the corner of Eagle St. and Claiborne Ave., in New Orleans, he observed a cab in the Spur Station. At that point, he "*stopped and began to watch.*" While conducting surveillance out of his jurisdiction of Jefferson Parish. He observed the man hand the cab driver what he believed was money. Then he pulled into the station and grabbed his arm.

Deputy Simoneaux observed what appeared to be an [un]concealed knife protruding from his back pocket. He placed Defendant in a compliance hold bent over the hood of his patrol car. He kept telling the individual to "*Stop Struggling*," but the individual was saying, "*Well, I don't understand. Why is this going on? What's happening?*" Deputy McCoy arrived and assisted handcuffing the individual. The investigatory stop was *not* in conjunction with New Orleans Police Department (N.O.P.D.). (R. 94, 100, 107, 176, 237-239).

Deputy George McCoy and Deputy Paul Simoneaux searched the individual's pocket for property. He had $21.00 crumpled up in his right hand. (R. 101, 239-240). The victim was in the front passenger seat of Deputy McCoy's patrol car for an investigatory one-on-one viewing and saw Mr. Ayo resisting the officer(s). Deputy Paul Simoneaux had him wrapped up over the hood of his car. Mr. DeBroy could not identify him and asked to get closer, then identified him as the perpetrator. Then, Mr. Ayo was placed under arrest. (R. 114-116, 203-205, 207).

Nurse Practitioner, Susan Lee, of the Jefferson Parish Correctional Center, weighed the Defendant and he was 212 pounds on the day of trial. (R. 303).

The Defendant, Glenn Ayo, took the stand in his own defense due to counsel's failure to investigate two (2) exculpatory witnesses. (R. 336-337). He testified that he is 44 – not 30 years old, as perpetrator, and was 240 pounds the day of arrest – not slim or 150 pounds, with

obvious cuts, scabs and bruising about his face – certainly not the "*Good Looking Man*" Mr. DeBroy observed face-to-face with robber. (R. 82-83, 91, 158, 284-285). Mr. Ayo was on his way to work with a partially broken knife [tool] to strip copper wire in New Orleans, when stopped by Jefferson Parish Officials out of their jurisdiction.

Mr. Ayo testified and introduced into evidence a receipt demonstrating that he received a $300.00 Western Union (less) than 24 hours before arrest.[1]  He had a job and no motive to rob the victim. The case is one of mistaken identity due to highly suggestive viewing of Defendant. In forceful custodial investigative stop. (R. 340-343, 355-356, 365).

The Defendant was found guilty at jury trial as charged. (R. 148-383). Mr. Ayo was then sentenced to 87 years without parole. (389-403).

---

1   The Western Union receipt was introduced into evidence only at trial, not at either suppression hearing. (R. 275, 324).

NOTE:        Petitioner raised one claim of Ineffective Assistance of Counsel (Claim Eight (8))

on Direct Appeal. See *State v. Ayo*, 7 So.3d 85, 89-90 (La. App. 5th Cir. 2009). On Post

Conviction Relief, however, the trial court erroneously barred twenty-nine (29) Ineffective

Claim(s) alleging they were all previously raised on appeal. 'Impossible' in light of the fact only

eleven (11) assignment of errors were raised on direct. *Id.* at 89-90. (See Appendix – B & C).

1. Pro Se Assignment of Error Number One on Direct Appeal and Claim(s) 13, 14 and 15

on Post Conviction.[2] (See Appendix – B,C & F).

## CLAIM NO. 1

THE ADJUDICATION THAT POLICE WERE IN AN "UNINTERRUPTED
INVESTIGATION" AND PROPERLY ENTERED ANOTHER JURISDICTION, AND
DECISION THAT  COUNSEL WAS NOT INEFFECTIVE FOR REFUSING TO
DEFEND  HIS  CLIENT  AGAINST  ILLEGAL  ARREST  INVOLVED  AN
UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S
FOURTH,  SIXTH,  AND  FOURTEENTH  AMENDMENT  CONSTITUTIONAL
RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Mr. DeBroy, the victim of a robbery described the perpetrator as:

> "A white male. Clean shaven, (good looking man), 150 lbs., slim,
> black hair, wearing a blue or black 'pullover' hooded sweatshirt."
> (R. 82-83, 158, 283-286; State Exhibit – 3).

Several blocks away Lieutenant Detective Daniel Jewell, Jr. observed:

> "A white male, 'with two (2) black eyes', cuts and severe scabbing
> and bruising about his face [not the good looking man to (B.O.L.O.)
> be on lookout], 240 lbs., husky, brown hair, wearing a lime green t-
> shirt and carrying a travel bag."
> (R. 176-177, 320-321, 326, 364-367; State Exhibit – 13).

---

2  Consolidated for convenience of Court.

But Detective Jewell declined to "investigate" him further because he did not resemble the description and drove off. Then a call came in that Deputy Simoneaux had a man "*detained*" fitting the description of suspect. (R. 158-162, 235-236). But when the victim did not identify the Mexican man detained for a show-up identification. Detective Jewell headed back to Cicero Street to speak with the white male he seen in the green shirt standing outside his apartment. (R. 162-163). Upon arrival the guy was gone. However, construction workers with no knowledge of any crime, said that the guy standing outside his apartment:

> "He got into a blue cab and headed 'that way.'"
> (R. 162-163).

Petitioner contends, probable cause for a full custodial arrest is more than "reasonable suspicion for an investigatory stop." The little evidence here was insufficient to establish Mr. Ayo was fleeing to avoid apprehension as would allow officers reasonable suspicion that Defendant committed a crime. *State v. Fisher*, 720 So.2d 1179, 1183 (1998).

The only facts known to Jefferson Parish Officials when they entered Orleans Parish, another jurisdiction, looking to "speak" with and "investigate" this possible suspect:

1.) That a white male was observed outside his apartment several blocks away from the incident, but did not match description warranting initial stop by a veteran Lieutenant Detective Jewell. (R. 162).
2.) The man was not doing anything suspicious or illegal. He was just talking to someone on the landing of the apartment. (R. 174, 188).
3.) And an untested source, construction workers in the area with "*no*" incriminating information, informed Detective Jewell that the man hired a cab and went "that way". (R. 163).

This innocent everyday behavior did not provide officers with the requisite "reasonable cause" to believe Mr. Ayo committed a crime warranting immediate arrest. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 70 L.Ed.2d 527 (1983); *Miller v. East Baton Rouge Sheriff's*

9

*Dept.*, 511 So.2d 446, 454 (La. 1987), arresting officer failed to "act as a man of average caution" by arresting a suspect based "uncritically and almost exclusively on ... an unworthy source of information." *State v. Ruffin*, 448 So.2d 1274, 1278 (La. 1984).

Nothing changed from the time Detective Jewell initially saw Mr. Ayo standing outside his apartment until the time it was realized that the man Deputy Simoneaux stopped and detained was not the perpetrator. Officials had not heard nor seen anything more to give them grounds to believe Mr. Ayo acted unlawfully. *Beck v. Ohio*, 379 U.S. 89, 96-97, 85 S.Ct. 223, 228-29, 13 L.Ed.2d 142 (1964), common rumor or report, suspicion, or even strong reason to suspect was not adequate to support arrest. (citation omitted).

## SUB-CLAIM NO. 2 - DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE A SINGLE SUPPRESSION LAW ON SUFFICIENCY OF EVIDENCE FOR HOT PURSUIT TO ARREST IN ANOTHER PARISH. (SEE APPENDIX – F).

The information known to these officers did not establish reasonable cause for a warrantless arrest, especially out of jurisdiction.

La. C.Cr.P. Art. 213, state in pertinent part:

> A peace officer may, without a warrant, arrest a person when:
>
> (3) A peace officer has reasonable cause to believe that the person to be arrested has committed an offense ...,
>
> (4) A peace officer in close pursuit *'of a person to be arrested* ... may enter another parish in the state and make the arrest.'

---

3  *State v. Thompson, Sr.*, 894 So.2d 1268, 1272 (La. App.2nd Cir. 2005), the gang was spotted at an apartment complex loading the stolen money and a large cache of guns into a mini van. The Shreveport Police spotted and began trailing a green van matching the alert. As they entered Bossier Parish, the officer pulled over the van; *State v. Owens*, 565 So.2d 1062 (La. App. 5th Cir. 1990).

Petitioner contends, the case sub judice hinge on all four corners of the record with an identical scenario before the Louisiana Supreme Court. In which the arresting agents who were only informed to watch car and see what they could learn from such surveillance, did not have reasonable grounds to suspect him of criminal activity to warrant stop of Defendant because of ongoing investigation. See e.g., *State v. Blanton*, 400 So.2d 661, 663 (La. 1981), finding no deficiencies in the automobile or his conduct, agents could not make an Art. 215.1 investigatory stop.

The State of Louisiana in *State v. Ayo*, 7 So.3d 85, 94-95 (La. App. 5th Cir. 2009), *writ denied*, 28 So.3d 006 (La. 2010) unreasonably applied *United States v. Bishop*, 530 F.2d 1156, 1157 (5th Cir. 1976), in which officials track bank robbers into another parish with hidden transmitter in packet of "bait money"; and again in *State v. Washington*, 444 So.2d 320 (La. App. 1st Cir. 1983), *writ denied*, 445 So.2d 450 (La. 1984), in which tracking dogs trailed the robbers on foot. *Id.* (See also Appendix – E).

When in the case sub judice, veteran Lieutenant Detective Daniel Jewell, Jr., elected not to stop Defendant and drove off because he did not match the description. There was never a case of "tracking" or "following" Mr. Ayo in close or hot pursuit. He simply waited outside his apartment, hired a cab, and lawfully went to work in another parish. (R. 162, 174, 188).

The State court further acted in a Legislative capacity by changing the statutory language in the opinion of *State v. Ayo*, 7 So.3d 85, 95 (La. App. 5th Cir. 2009), to justify entering another jurisdiction:

> "The arrest was the result of an **'uninterrupted investigation'** by responding officers."

11

*Id.* at 95.

If "uninterrupted investigation(s)" were the legal standard, investigations that continued for week(s) would authorize law enforcement officers to go beyond their territorial jurisdiction without a warrant at any time.

The State Circuit Court additionally capitalized on perjured testimony demonstrated by (State Exhibit – 3). In that:

> "The pursuit of the Defendant, initiated in Jefferson Parish, was immediate and continuous."

*Id.* at 95.

That is simply not true close examination of (State Exhibit – 3) compared against trial transcripts conclusively demonstrate. The arresting officer was on a roving patrol out of jurisdiction, first stopping every white male encountered in Jefferson Parish. Then he observed the first "white male," Mr. Ayo, in Orleans Parish. (R. 99, 237). He conducted a full custodial detention and show-up identification before arrest. (R. 114-116, 203, 205). The only other facts known to Jefferson Parish officials when they made the arrest, is that:

1. Lieutenant Detective Jewell, a well-seasoned officer, observed a white male in a green tee-shirt outside his apartment. He was not doing anything suspicious or illegal. (R. 174, 188).

2. He did not match the description for a stop and he drove off. (R. 162).

3. And construction workers simply working next to Mr. Ayo's residence with "NO" incriminating information. When asked, said the man standing outside his apartment hired a cab and went "that way." (R. 163).

Without any showing that officers had heard or seen anything else, they entered another parish, tried to question Mr. Ayo, and forcefully restrained him when he attempted to exercise

12

his constitutional right(s) to walk away.

The United States Supreme Court unequivocally held in ***Chimel v. California***, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317, 70 L.Ed.2d 527 (1983), arresting officer failed to act as a man of average caution by arresting a suspect based on "uncritically and almost exclusively on an unworthy source of information." ***Dunaway v. New York***, 442 U.S. 200, 213-15, 99 S.Ct. 2248, 2257-58, 60 L.Ed.2d 824 (1979); ***Beck v. Ohio***, 379 U.S. 89, 96-97, 85 S.Ct. 223, 228-29, 13 L.Ed.2d 142 (1964); ***State v. Ruffin***, 448 So.2d 1274, 1278 (La. 1984), seizure without probable cause violated the Fourth and Fourteenth Amendment, and any evidence seized during ensuing search was inadmissible.

Therefore, the adjudication in ***State v. Ayo***, 7, So.3d 85, 95 (La. App. 5th Cir. 2009), *writ denied*, 28 So.3d 1006 (La. 2010), resulted in an unreasonable application of clearly established Constitutional law, and there is an absence of available corrective process.

2. Pro Se Assignment of Error Number Three on Direct Appeal and Claim(s) 6, 7, 8 and 9 on Post Conviction.[4] (See Appendix – B, C & F).

## CLAIM TWO

**THE ADJUDICATION THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE REFUSING TO IMPEACH WITNESS NOR OBJECT TO KNOWN PERJURED TESTIMONY INVOLVED UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S) TO A FAIR TRIAL.**

## FACTS AND ARGUMENT IN SUPPORT

The trial court erroneously alleged all perjury claim(s) were addressed on Direct Appeal.

---

4  Consolidated for convenience of Court.

See *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009), trial court record is insufficient to review the facts addressing Defendant's claim of ineffective assistance of counsel. *Id.* at 99.

The use of testimony known by prosecuting authorities to be false without correction in order to procure conviction where Mr. Ayo's life or liberty depends, violated due process of law to a fair trial. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *U.S. v. O'Keefe*, 128 F.3d 885, 893-94 (5th Cir. 1997).

The grant of a new trial based on a *Napue* violation, however, is only proper if: (1) the statement at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material.

In the case sub judice, the State's entire case hinged on the officers contention that they had probable cause to arrest and search Mr. Ayo out of their jurisdiction.

In satisfying the **Three-Prong** test of *Napue*: the arresting officer, Deputy Simoneaux testified that Detective Jewell advised on the radio that a suspect got into a **"blue service cab"** {Name of Company and Color of Cab}, he had a knife protruding from his back pocket; He was trying to catch up with the cab, but lost sight of the vehicle as [we] entered the Orleans Parish line. (R. 98-100, 235-237; See: Exhibit "H", Attached).

In showing testimony false: (1) Detective Jewell controvertedly testified that he observed a white male talking to someone outside an apartment several blocks away from crime scene, but did not know if this was the description and he drove off. He didn't see the cab nor the guy get into the vehicle.

After the first investigative stop produced negative results. He return to the area to "speak with the man," but construction workers said the person standing outside his apartment

14

got into a cab and went "that way" - no broadcast of observing a weapon, the name of cab company, "Blue" color of cab, nor any hot pursuit into Orleans Parish to arrest Mr. Ayo was made by Detective Jewell.[5] (R. 162-164, 173-174; See: Exhibit "I", Attached).

In showing Prosecutor knew it false: (2) the State introduce (CFS) Dispatch Transcripts from Sheriff's Office into evidence as (State's Exhibit-3), the prosecution was surely aware of her own evidence and concede meeting with Detective Jewell in her officer to listen to both the 911 and Sheriff's Office dispatch tape(s), introducing the same transcript(s) into evidence. (R. 152-154, 186-187, State's Exhibit(s) – 3 & 4). The prosecutor knew that "no" such broadcast exist of Detective Jewell alerting other officers that he observed a weapon, Mr. Ayo enter a Blue Service Cab Company cab, nor chasing the cab in hot pursuit across the parish line. (R. 153; State Exhibit – 3).

In showing statements were material: (3) absent the perjured testimonial evidence, the truthful innocent every day behavior of Mr. Ayo standing outside apartment with a carryall bag waiting for cab to drive him to work. (R. 162, 173-174, 188). In probable cause and suppression hearing(s) or trial, the Prosecutor could not carry burden of proof *State v. Fisher*, 720 So.2d 1179, 1184 (La.1988), showing particularize facts and circumstances known to the arresting officer were sufficient to justify a man of ordinary caution to believe Defendant committed a crime. That "officers were in close or hot pursuit of *person to be arrested* ... may enter another parish." La. C.Cr.P. Art. 213(3) & (4).

Petitioner contends, for example, in the case of "probable cause" for issuance of an arrest warrant, intentional misrepresentation constitutes fraud on the court and impremissible

5  The construction workers possess no knowledge of any crime committed in the general area.

15

overreaching by the government designed to deceive the magistrate. *State v. Rey*, 351 So.2d 489, 491-92 (La. 1987) (citing *U.S. v. Thomas*, 489 F.2d 664, 667, 68 (5ᵗʰ Cir. 1973).

The same is with the case sub judice, the false testimony of an erroneous broadcast by a veteran (Lieutenant Detective) observing Mr. Ayo with a knife several blocks from crime, pursuing a fleeing suspect in certain "Blue" color ~~but~~ *vehicle,* "losing sight of car as we entered the Orleans Parish line." (R. 98-100). Did in fact [fraud]ulently influence and affect the issue(s) under determination to wit: Whether probable cause to arrest exist; Whether an "illegal" arrest out of jurisdiction occurred; and whether an illegal search and seizure occurred requiring suppression of incriminating looking evidence. Otherwise corrupting the truth-seeking function of the trial process constitutes a *Napue* violation of the first magnitude.

But despite Defense Counsel in possession of the dispatch transcript prior to suppression hearing(s), and the State introduced the same report into evidence at trial. Counsel ineffectively refuse to impeach witnesses with the same transcript(s) in hand. *U.S. v. Barham*, 595 F.2d 231, 243 (5ᵗʰ Cir. 1979). The State further reinforced the deception through her misleading question(s). (R. 153; See: Exhibit "A", Attached). Counsel took absolutely no steps to impeach perjurious testimony or object, exposing fraud to judge during suppression hearing(s) or fact finders at trial. *State v. Robinson*, 817 So.2d 1131, 1135 (La. 2002). Thus, Mr. Ayo remains prejudiced with an illegal detention and unlawful exploratory search, absent probable cause, with its fruits from the poisonous tree unconstitutionally introduced as material evidence against him at trial. (See: Exhibit "J", Attached).

The United State Supreme Court unequivocally held in *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the use of testimony known by prosecuting authorities to

be false, without correction, to procure conviction where life or liberty depends, violated Defendant's Sixth and Fourteenth Amendment right(s) to due process of law to a fair trial.

Therefore, the adjudication in *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009), *cert. denied*, 28 So.3d 1006 (2010), resulted in an unreasonable application of clearly established constitutional law, and there is an absence of available state corrective process.

## *SUB-CLAIM NO. 2* - DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES OR OBJECT TO KNOWN PERJURED TESTIMONY. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

In satisfying the **Three-Prong** test of *Napue, supra*. Detective Jewell testified that he informed the 911 Dispatcher that he saw a knife in Mr. Ayo's back pocket. (R. 186-187; See Exhibit "K", Attached).

In showing testimony false: (1) Detective Jewell himself controvertedly testified that he met with the victim and got a better description[6]. Then instructed the victim, Mr. DeBroy to call 911 while he canvassed the area. (R. 157-158, 274). In fact, Sheriff's Office record(s) conclusively demonstrate that Detective Jewell first observed Mr. Ayo standing outside his apartment over sixteen (16) minutes "**after**" the 911 call was placed by the victim – not *before* the 911 call to allegedly observe Mr. Ayo with a knife. (R. 161-163; See: Exhibit "K", Attached).

---

6  Detective Jewell's testimony is suspect as he also alleged that he drove past Defendant with a knife in his pocket while investigating an armed robbery. Because "[He] didn't know if this was the description." (R. 162-163).

Assuming Arguendo the State was referring to Detective Jewell informing the Sheriff's Office dispatch to broadcast to other officers that "he observed Mr. Ayo with a knife," as Appellate Court insist Defendant is wrong. *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009; See also Appendix - E). The dispatch transcript is further devoid of any such transmission of Detective Jewell observing a knife, the primary basis for allegedly entering another jurisdiction to make an investigative show-up identification for armed robbery. (See: Exhibit "F", Attached).

In showing Prosecutor knew it false: (2) Mrs. Shannon Swaim, the Prosecutor concede meeting with Detective Jewell in her office to play and listen to both the 911 and Sheriff's Office dispatch tape(s). Introducing the same transcript(s) into evidence. (R. 152-154, 186-187; State Exhibit – 3 & 4).

Petitioner contends, the Prosecutor did not simply allow the false evidence go uncorrected, but reinforced the deception through her misleading question(s) knowing "no" such material evidence exist between the 911 operator nor Sheriff's Office dispatcher with Detective Jewell observing Mr. Ayo with a weapon. The 911 transcript (State Exhibit – 4) and sheriff's office transcript (State Exhibit – 3), **both** are totally devoid of any such transmission by Detective Jewell – a textbook case of the Prosecutor in collusion with witness[es] to offer known perjured testimony and commit fraud on fact finders. *U.S. v. Barham*, 595 F.2d 231, 243 (5th Cir. 1979), required a new trial. *Id*.

In showing the statements were material: (3) the State first procured this [fraud]ulent testimony at probably cause and suppression hearing(s) from Deputy Simoneaux to justify the unlawful arrest out of jurisdiction and illegal search and seizure of evidence. Then knowingly capitalized on same perjury again at trial to prejudice juries mind that a credible eyewitness

18

(Lieutenant Detective) observed Mr. Ayo near the scene with the same type of weapon (knife)

utilized by perpetrator to commit the crime at bar. Then chased him across parish line(s) as a

result of the material evidence (knife) sticking out of his pocket – undoubtedly "material" fraud

on Court and fact finders.[7] (R. 98-100, 235-237; Compare Exhibit(s) "E", "F" and "G",

Attached).

The United States Supreme Court unequivocally held in *Napue v. Illinois*, 360 U.S. 264,

79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the use of testimony known by prosecuting authorities to

be false, without correction, to procure conviction where life or liberty depends, violated

Defendant's Sixth and Fourteenth Amendment constitutional right(s) to due process of law to a

fair trial.

Therefore, the adjudication in *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009), *cert.

denied*, 28 So.3d 1006 (La. 2010), resulted in an unreasonable application of clearly established

constitutional law, and there is an absence of available state corrective process.

## SUB-CLAIM NO. 3 - DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES OR OBJECT TO KNOWN PERJURED TESTIMONY. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

In satisfying the **Three-Prong** false testimony test of *Napue, supra*: Deputy McCoy

testified that when he pulled into the Spur Gas Station in New Orleans. The victim was with

him in patrol car and Mr. DeBroy said "Yes, that's him." Immediately identifying Mr. Ayo as

---

7  Defendant does not argue petty inconsistencies, but cumulative false testimony by "three (3)" officers of six (6) non existing transmission(s). Thus, establishing known perjury claim(s).

the perpetrator from the patrol car. (R. 114-115, 204; See: Exhibit "L", Attached).

In showing testimony false: (1) Mr. DeBroy is the victim, the State's **"chief"** witness. Who controvertedly testified, "when I pulled up they asked me if I could identify the man. I said, 'no.' Let me go look at him first because I got out the car and I was a little distance away." (R. 85; See: Exhibit "M", Attached).

In showing Prosecutor knew it false: (2) the decision of whether to proceed with prosecuting case also hinged on identification testimony. Unlike Defense Counsel, the record is clear that the Prosecutor met with her witnesses and aware of Deputy McCoy's expected testimony. (R. 186). In this instance, reinforcing the deception with question(s) design to mislead fact finders. See *U.S. v. Barham*, 595 F.2d 231, 243 (5th Cir. 1979).

In showing statements were material: (3) Louisiana law Art. 213(3) & (4) requires officials to be "in pursuit of *person to be arrested* ... may enter another jurisdiction in this State and make the arrest." But Jefferson officials admitted illegally detaining Mr. Ayo in Orleans Parish pending an *investigative* show-up identification to be conducted out of jurisdiction. (R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Incumbent on the State is to negate any reasonable probability of [mis]identification and carry burden of proving identity of Defendant as the perpetrator. Thus Deputy McCoy's perjured testimony alleging that from the moment they observed Mr. Ayo from the patrol car. The victim immediately shouted "Yes, that's him." That is nothing less than material fraud on court, both in probable cause to arrest hearing and again during trial.

In suppression hearing, had officer's truthfully testified of the illegal investigative detention and exploratory search and seizure out of jurisdiction. (All) evidence would have

20

been suppressed as a matter of law and jury acquitted Mr. Ayo in trial.

Petitioner contends, to the extent that the perjury was known to Mr. Schmidt and he ineffectively failed to ask any question(s) impeaching the false testimony during cross-examination, only serves as an additional basis for relief under Mr. Ayo's ineffective assistance of counsel claim(s). (See: Exhibit "J", Attached).

The United States Supreme Court unequivocally held in *Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979), police violated the Fourth and Fourteenth Amendment(s) when, without probable cause, they seized petitioner for interrogation. *Id.* The same holds true during the identification process. See *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention cannot be introduced.

Therefore, the adjudication in *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009), *cert. denied*, 28 So.3d 1006 (La. 2010),that Defendant is confused, officer's did not commit perjury. Resulted in an unreasonable application of clearly established constitutional law, and there is an absence of available state corrective process.

## *SUB-CLAIM NO. 4* - DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH OR OBJECT TO KNOWN PERJURED TESTIMONY. (SEE APPENDIX – I).

### FACTS AND ARGUMENT IN SUPPORT

Encompassed in proving the element(s) of an offense is the necessity of proving the identity of Defendant as the perpetrator, in order for State to carry its burden of proof. *State v.*

*Zeno*, 742 So.2d 699, 706 (La. App. 5th Cir. 1999).

In satisfying the **Three-Prong** false testimony test of *Napue*, *supra*: the victim did "not" identify Mr. Ayo in open-court as the perpetrator at suppression hearing just eight (8) months after "[he] got a good look at his robber." (R. 82-83, 96).

On the second day of trial, eleven (11) months after someone committed a crime against him. The Judge ordered bailiff "clear the hall to return defendant from jail." The Assistant District Attorney Shannon Swaim, obstructed justice by walking the victim down a long hall, around a corner, and both strategically positioned themselves by the jail door procuring a "known" false identification of Defendant. Then Mr. DeBroy took the stand five (5) minutes later [fraud]ulently identifying Mr. Ayo, an innocent construction worker, as the perpetrator. (R 279-281).

In showing testimony false: (1) the victim previously could not make an in-court identification. "After" the highly illegal obstruction of justice and suggestive viewing at jail door, he suddenly can.

In showing Prosecutor knew it false: (2) The Assistant District Attorney "knew" the victim could not make an in-court identification. Therefore, she brought Mr. DeBroy down the hall despite Court order, regard for ethics, or performance of her every day job to serve justice fairly. She further directed him 100 feet down the hall to of all places – the jail door! Then the Prosecutor boldly capitalized on the victim not previously identifying Mr. Ayo at the suppression hearing, but could id him today at trial. (R. 280-281). Thus demonstrating beyond any doubt, the State knew testimonial evidence was the product of her falsehood. *U.S. v. Barham*, 595 F.2d 231, 243 (5th Cir. 1979), requiring a new trial. *Id.*

But the greatest evidence conclusively demonstrating the State acted in collusion with her witnesses to offer perjured testimony, is a note that an excused juror wrote the Judge. The note acknowledged that she knew all about the case: How Mr. DeBroy previously could not identify Mr. Ayo as the perpetrator, but "would do so at trial." Thus the same malfeasance could only be achieved through the Prosecution in secret agreement with her witness. (See: Exhibit "N", Attached).

In showing statements were material: three (3) psychological studies on expert testimony surrounding juror misperception on eyewitness identification concluded that seventy-two (72) percent of jurors voted for conviction upon eyewitness "in-court" identification. 32 A.M. Crim.L.Rev., at 1023-24:

> "[E]yewitness testimony is likely to be believed by jurors ... there is
> almost nothing more convincing than a live human being who takes
> the stand, points a finger at the defendant, and says 'that's the one!' "

*EYEWITNESS TESTIMONY* at 19, Professor E. Loftus (1979).

Thus absent the material fraud of positive in-court identification, seventy-two (72) percent the jurors would have acquitted Mr. Ayo in trial – a classic case of an over zealous Assistant District Attorney! *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993), Defendant met his burden of proving actual prejudice, such serious corruption of the truth-seeking process would strike at the confidence of the conviction. *Id.*

Petitioner contends, he interrupted the Court, in objection, bringing the malfeasance to the Court's attention. However, the Trial Judge suspiciously, as if part of the corruption process, strictly prohibit Mr. Ayo from objecting and making a record but through his attorney. (R. 296).

Defendant wrote Defense Counsel trial note(s), but Counsel would not bring the highly

suggestive viewing to the attention of the Court. Then in one last desperate attempt to object,

Mr. Ayo shook Defense Counsel's arm t6o get his attention, they looked like two keystone

comics in the presence of the jury. But Mr. Schmidt still grossly refuse to object or move for

mistrial. (See: Exhibit "G", Attached).

The United States Supreme Court unequivocally held in *United States v. Crews*, 445

U.S. 491, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (5th Cir. 1983), pretrial identification obtained

during illegal detention cannot be introduced. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th

Cir. 1993), and defendant met his burden of proving actual prejudice, such serious corruption of

the truth-seeking process would strike at the confidence of the conviction.

Therefore, the adjudication in *State v. Ayo*, (No. 12-KH-583) --- So.3d --- (La. App. 5th

Cir. 8/24/12), *writ denied*, (No. 12-KH-2093) --- So.3d --- (La. 3/8/13). Resulted in an

unreasonable application of clearly established constitutional law, and there is an absence of

available state corrective process.


*SUB-CLAIM NO. 5* – NOW ADDRESSING THE INEFFECTIVE ASSISTANCE OF

COUNSEL CLAIM(S) CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE

APPENDIX – F).

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984),developed a two-prong test to evaluate claim(s) of ineffective

assistance of counsel. The Defendant must show:

> That counsel's representation fell below an objective standard of
> reasonableness. 466 U.S. At 687-88. [And] That there is reasonable
> probability that, but for counsel's unprofessional errors, the result of

24

the proceeding would have been different. *Id.* At 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel possessed the 911, and sheriff's office dispatch transcripts prior to suppression hearing(s). Plus, Mr. Ayo repeatedly informed counsel of the truth and the fact all three (3) officers testimony conflicted and were committing perjury, testifying of several "non" existing radio broadcast demonstrative by the report(s) in his hand.

Mr. Schmidt, however, blatantly refuse to cross-examine and/or impeach these witnesses in order to expose the truth and suppress "illegally" seized evidence. Thus falling below an objective standard of reasonable professional norms, not functioning as counsel guaranteed Mr. Ayo by the Sixth Amendment.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, had Defense Counsel performed his required duty and not let cumulative perjured testimony go uncorrected. The defense would have established the "investigative" stop out of jurisdiction was not in close or hot pursuit and highly illegal;[8] the exploratory search that ensued is unconstitutional, and the work knife, money, windbreaker, and pretrial identification, (all) evidence from unlawful detention would have been suppressed.[9] With no alleged evidence going to jury, including unduly suggestive in-court identification. The State could not have carried an erroneous burden of proof and jury would have acquitted Mr. Ayo.

---

8  La. C.Cr.P. Art. 213(3) & (4).

9  *State v. Moreno*, 619 So.2d 62, 65-66 (La. 1993), arresting officer exceeded scope of investigatory stop when they took defendant into custody; *State v. Ruffin*, 448 So.2d 1274, 1279-80 (La. 1984), evidence relied upon must be suppressed as fruits of an unlawful arrest.

3.    Pro Se Assignment of Error Number Seven on Direct Appeal and Claim(s) 10, 11,

and 12 on Post Conviction. [10]

## CLAIM THREE

**THE ADJUDICATION THAT DEFENSE COUNSEL NOT INEFFECTIVE FOR REFUSING TO IMPEACH WITNESSES NOR OBJECT TO UNDULY SUGGESTIVE SHOW-UP AND IN-COURT IDENTIFICATION INVOLVED AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S) TO A FAIR TRIAL.**

### FACTS AND ARGUMENT IN SUPPORT

The trial court erroneously alleged all ineffective assistance of counsel claim(s) were

addressed on Direct Appeal, while on direct appeal the State appellate court repeatedly

misapplies constitutional law. See *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009).

The victim did "not" identify Defendant as the perpetrator just eight (8) months after the

alleged incident at the suppression hearing August 16, 2007. So, at trial, prior to attempting an

in-court identification, the State suggestively displayed a (single) picture of Mr. Ayo's booking

photo and prejudicially implied: "Is this a picture of the person who robbed you?" (R. 279;

State Exhibit – 13).

Petitioner contends, the single picture was displayed without laying any foundation and

procuring a proper in-court identification, and prior to laying a foundation for the introduction

of evidence. *State v. Robinson*, 386 So.2d 1374, 1377 (La. 1980), photo array of six (6)

individual not unduly suggestive. *Id.* Only after the material evidence was suggestively

displayed focusing Mr. DeBroy's attention solely on Defendant. The victim identified Mr. Ayo,

an innocent construction worker on his way to work as the perpetrator. *State v. Bright*, 776

---

10 Consolidated for convenience of Court.

So.2d 1134, 1145 (La. 2000), identification procedure suggestive if it unduly focuses a witness attention on suspect, ***State v. Flank***, 537 So.2d 236, 239 (La. App. 4th Cir. 1988), no picture can be signed out. ***Id***.

When the Prosecutor improperly introduced "material" evidence, Defense Counsel ineffectively failed to object or motion for mistrial, neglecting to defend his client's constitutional right(s).

## *SUB-CLAIM NO. 2* - DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA MATERIAL EVIDENCE OF ILLEGAL INVESTIGATIVE STOP AND LAWLESS POLICE BRUTALITY. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Jefferson Parish Sheriff's Deputy Paul Simoneaux testified that he was conducting surveillance, "watching" the suspect in Orleans Parish. Then pulled into the service station and attempted to speak with the pedestrian. (R. 99, 213, 237). When Defendant question the officer's erratic behavior and unlawful jurisdiction, Mr. Ayo decline to answer his question(s) and attempted to walk away (R. 322-323). Deputy Simoneaux became irate at the exercise of Mr. Ayo's constitutional right(s), grabbed hold of Defendant's arm, wrestled him over the hood of car, beat him down and threatened to shoot Mr. Ayo with weapons drawn. If he did not submit to their unlawful investigative authority out of jurisdiction. (R. 109-110, 204-205, 323, 354-356). Then handcuffed Defendant, placed him in the back of patrol car and:

> "I notified Deputy McCoy to bring the victim to identify the suspect *'I stopped* to see *if'* this could be the perpetrator." (R. 101, 116, 207, 256).

27

(See: Exhibit(s) "D" & "O", Attached).

Petitioner contends, the mere fact that police approach a citizen and address him does not compel him to respond to their inquires or comply with their request. Legally, nothing prevents his choosing not to answer and walk away. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *State v. Sky*, 373 So.2d 145, 147 (1979).

Mr. Ayo further exercised his clear right to resist the unlawful detention, and used only so much force as was necessary to repel the officer's aggression. *White v. Morris*, 345 So.2d 461, 466-67 (La. 1977). But Defense Counsel grossly refuse to subpoena the mobile video system (MVS) from the patrol car or service station video surveillance tapes conclusively demonstrating Jefferson Parish officials were "not" in hot pursuit to immediately arrest Mr. Ayo in another parish. But on a roving patrol and conducted an illegal (investigative) stop out of their jurisdiction, coupled with lawless police misconduct, an unconstitutional exploratory search, and then conducted a highly suggestive show-up identification took place – beating and handcuffing Mr. Ayo in presence of victim. *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), hostility of seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment, and common rumor or report, suspicion, or even strong reason to suspect was not adequate to support an arrest. *Davis v. Mississippi*, 394 U.S. 721, 726-27, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 679 (1969). *Id.* (See: Exhibit(s) "A" & "F", Attached).

_SUB-CLAIM NO. 3_ - DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNDULY SUGGESTIVE SHOW-UP IDENTIFICATION. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Deputy Simoneaux testified that the victim was in the passenger side of Deputy McCoy's patrol car when they pulled into the service station. He provided the following account of the show-up identification procedure utilized:

> "His windshield would be facing directly at the suspect while [we] were wrestling with him on the front-hood of car. After he was handcuffed, he stood up. He faced directly towards Deputy McCoy's unit."
> (R. 109-110).

Mr. DeBroy, the victim did "not" identify Mr. Ayo as the perpetrator at that time. (R. 85).

However, unequivocally testified that upon his viewing:

> "I was thinking they were arresting someone for something."
> (R. 86, 289-290).

The United States Supreme Court in _Manson v. Braithwaite_, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), developed a Two-Prong Test to evaluate claim(s) of suggestive identification procedures:

> "Defendant must prove that the identification itself was suggestive";
>
> "And that there was a substantial likelihood of misidentification as a result of the procedure."

In satisfying the First-Prong of _Manson_: Petitioner contends, under the totality of circumstances in which the victim was transported to another parish to view a dramatic exhibition of lawless police misconduct, instead of simply returning Mr. Ayo to the non-hostile

29

crime scene[11]. The show-up identification was undoubtedly suggestive.

Moreover, Jefferson Parish officials knew that the "investigative" detention out-of-jurisdiction was highly illegal and Mr. Ayo could not lawfully be transported from Orleans to Jefferson Parish, absent an arrest based on probable cause. See *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

Nevertheless, Defense Counsel neglected to research and argue the law(s) made and provided, challenging such an unorthodox viewing procedure out of their lawful jurisdiction. (See: Exhibit "I", Attached).

In satisfying the **Second-Prong** of *Manson*: Petitioner contends, the victim concedes "[He] was thinking they were arresting somebody." Coupled with the fact, Mr. DeBroy sat attentively in police car listening to Mr. Ayo's criminal history with a crowd of deputies pointing, cheering, and screaming like a tailgate party: "That's him. That's him." (R. 86, 288-290, 324).

Additionally, the fact Mr. Ayo is (44 years old [14 years older], 240 pounds [90 lbs heavier] than victim's description, husky, with **very severe cuts and bruising about his face**).

Distinguishably different than Mr. DeBroy's description of perpetrator as (30 years old, 150 pounds, slim, "good looking man"). (R. 284; State Exhibit – 4).

Further, the victim did not identifying Mr. Ayo in-court at suppression hearing. (R. 96; State's Exhibit – 13).

Petitioner contends, due to the magnitude of the victim's [in]accuracy from initial description and his degree of [un]certainty at pretrial hearing. Mr. DeBroy is in fact mistaken

---

11 *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), hostility of seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment.

and his decision making prejudiced by the lawless police misconduct and highly suggestive procedure utilized at investigative detention, and again by State during trial.

But the record is clear, Defense Counsel grossly neglected to argue the prerequisite test of *Manson*, *supra*, nor any other authority whatsoever. Thus had Mr. Schmidt performed his required duty, the trial court would have found that there exist not just a substantial likelihood of misidentification, but there was in fact a [mis]identification of an innocent construction worker. (R. 325-326; See: Exhibit "J", Attached).

_SUB-CLAIM NO. 4_ – NOW ADDRESSING THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM(S) CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE APPENDIX – F).

The United States Supreme Court in *Strickland v. Washington*, , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a Two-Prong Test to evaluate claim(s) of ineffective assistance of counsel. Defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.
>
> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the First-Prong of *Strickland*; Petitioner contends, no justification exist for Defense Counsel's repeated failure to defend Mr. Ayo. (1) First his refusal to subpoena material evidence; such as, video surveillance tape(s); (2) Then not arguing a single authority when, as a matter of law, show-up identification obtained during an illegal detention must be suppressed;

31

(3) Neglecting to challenge officer's wrestling down and handcuffing Defendant "during" show-up identification; (4) Then grossly refusing to object or move for mistrial when Prosecutor brought victim to jail door for unduly suggestive viewing; and (5) Further failing to object to improper introduction of booking photo into evidence. All fell below an objective standard of reasonable professional norms, constituting deficient performance of the first magnitude.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, defense counsel ineffectively failed to challenge not one, but two (2) separate unduly suggestive (out of court and in-court) identification(s), nor objecting to the highly improper introduction of material photo evidence combined or singularly is so prejudicial to a fair trial. *State v. Bright*, 776 So.2d 1134, 1135 (La. 2000). But for counsel's error(s), the State was unable to carry erroneous burden of proof, and jury would have acquitted Mr. Ayo.

The United States Supreme Court unequivocally held in *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), hostility of seizures based on mere suspicion was a prime motive for the adoption of the Fourth Amendment. *United States v. Crews*, 445 U.S. 491, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (5th Cir. 1983), pretrial identification obtained during illegal detention cannot be introduced. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993), and defendant met his burden of proving actual prejudice, such serious corruption of the truth-seeking process would strike at the confidence of the conviction.

Then in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), defendant has shown that but for counsel's unprofessional errors, the outcome of the proceedings would have been different had defendant not been denied his Sixth and Fourteenth Amendment right(s) to reasonable counsel and a fair trial.

Therefore, the adjudication in *State v. Ayo*, (No. 12-KH-583) --- So.3d --- (La. App. 5th Cir. 8/24/12), *writ denied*, (No. 12-KH-2093) --- So.3d --- (La. 3/8/13), that defense counsel not ineffective. Resulted in an unreasonable application of clearly established constitutional law, and there is an absence of available state corrective process. (See Appendix – G & I).

4. Pro Se Assignment of Error Number Three on Direct Appeal and Claim(s) 6, 7, 8 and 9

on Post Conviction. (See Appendix – B, C & F).

## CLAIM FOUR

**THE ADJUDICATION THAT DEFENSE COUNSEL NOT INEFFECTIVE FOR NEGLECTING TO INVESTIGATE AND SECURE EXCULPATORY WITNESSES FOR SUPPRESSION HEARING(S) AND/OR TRIAL INVOLVED AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

## FACTS AND ARGUMENT IN SUPPORT

The trial court erroneously alleged claim(s) 2 & 5 of ineffective assistance were raised

on Direct Appeal. See *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009), *writ denied*, 28

So.3d 1006 (La. 2010), defense counsel had an instanter subpoena issued for Theo Brickley, the

day of trial . . . the Defendant on the record informed the court that he did not want a

continuance but wanted to proceed to trial even without the witness. *Id.*

Petitioner contends, the State court evaded the fact there was two (2) exculpatory

witnesses not investigated, not at suppression hearing(s) for exclusion of alleged evidence, nor

at trial to exculpate Defendant, not just Mr. Brickley – to move for continuance after eleven

(11) months of counsel's blatant negligence to investigate and subpoena witnesses would prove

wholly futile the day of trial.

Defendant repeatedly informed defense attorney's Mrs. Marquita Naquin and Evans

Schmidt for eight (8) months prior to first suppression hearing August 16, 2007. Further, for

eleven (11) additionally months prior to second suppression hearing on November 16, 2007, and

up to day of trial, emphasizing the necessary importance of investigating and securing these

two (2) alibi and exculpatory witnesses:

34

> "I need to speak with you and your investigator as my alibi witness
> is having landlord trouble and may move."

(Supp. R. 56-65; See Exhibit – A, attached)

But due to counsel's gross disregard for defending his client. He neglected to interview either witness nor retain Defense Investigator Ronnie Montgomery until August 2, 2007, just days prior to suppression hearing. Both of whom "never," not once, conducted a single consultation with either exculpatory witness prior to hearing(s) and/or trial.

Moreover, defense counsel failed to subpoena a single witness, not even the arresting officer, for second suppression hearing. (R. 131-134)

Petitioner contends despite the suppression hearing continued on seven (7) occasions prior to retaining investigator. (R. 1-8). Mr. Schmidt incompetently neglected to motion for continuance to interview and secure witnesses once the defense had an investigator. Otherwise, the alleged primary evidence that appeared incriminating would have been justified by witnesses and suppressed, resulting in Defendant's acquittal at trial. *State v. Hogan*, 372 So.2d 1211, 1214 (La. 1979), Trial court would have granted defense counsel's motion for recess. LSA-C.Cr.P. Art. 709. But defense counsel ineffectively failed to defend his client. (See Exhibit – B, attached).


## SUB-CLAIM NO. 2 – DEFENSE COUNSEL INEFFECTIVELY NEGLECTED TO INVESTIGATE AND SECURE TWO (2) EXCULPATORY WITNESSES FOR SUPPRESSION HEARING(S) AND/OR TRIAL. (SEE APPENDIX – F).

Defense Counsel's dereliction of duty did not cease at two (2) suppression hearing(s).

35

Three (3) additional months (Eleven (11) full months) elapsed prior to trial November 27 & 28,

2007, without Mr. Schmidt attempting to locate either one of two "local" witnesses. Thus,

Petitioner waived further continuance of trial as futile.[12]

First Witness: Had Defense Counsel performed his required duty, alibi witness Theo

Brickley would have provided exculpatory testimonial evidence:

> "I picked-up Mr. Ayo walking home at 9:05 am in New Orleans, and
> he was wearing a white dress shirt and dark pants. He had 'no' zip-up
> windbreaker or travel bag when dropped off at Dave's apartment
> between 9:15 and 9:20 am on Cicero St."

> "He requested I drop him off at work after changing clothes, but I
> had an appointment and could not wait."

(R. 313-315, See: Exhibit "C", Attached).

Second Witness: Mr. Ayo did not know alibi witness "Dave's" last name. However,

provided Counsel and alleged Investigator with a detailed map to his front door – the only

residence on Cicero St. (R. 185). (See Exhibit – B, attached).

Defendant further informed, "The landlord of building also knows Dave's place of

employment as he receives direct deposit(s) for rent from Dave's employer." Thus had witness

moved, alibi witness Dave was still locatable through his employer and other technological

means. (See: Exhibit "B", Attached).

Dave would have offered additional exculpatory testimonial evidence directly refuting

State's case in chief:

> "Theo Brickley dropped off Mr. Ayo at my apartment between 9:15
> and 9:20 am. In my presence, Mr. Ayo called a cab and changed into
> work clothes until the cab arrived at 9:28 am."

---

12 Instanter subpoena day of trial did not rectify eleven (11) months pretrial ineffectiveness.

"I [Dave] gave Mr. Ayo a broken kitchen knife to strip copper wire."

"Also I sold him several travel bag(s), including a dark blue weatherproof zip-up windbreaker before leaving in Bill's cab as it has been rainy all weekend."

(R. 316-318, See: Exhibit(s) "A" & "B", Attached)

Exculpatory, in so much as, the zip-up windbreaker and work knife are two (2) of the only three (3) pieces of evidence the State introduced at trial. The money is justified and did not match denomination allegedly stolen. Thus the absence of two (2) exculpatory witnesses who would have provided an alibi for Mr. Ayo's whereabouts, and further excluded (primary) evidence is such a substantial issue which would cause Mr. Ayo's acquittal at trial.

Petitioner contends, Mr. Schmidt's gross incompetence is so evident. Detective Jewell testified:

> "The **only** residence on Cicero Street is this [Dave's] apartment above the body shop."

(R.185).

But Defense Counsel ridiculously alleged that he could not locate the "**only**" residence on the block to investigate and secure Mr. Ayo's alibi witness.

The Trial Judge and District Attorney further ridiculed Mr. Schmidt on the record regarding the Second Witness:

State:
> "[Mr. Brickley] just pled guilty less than a month ago and [Counsel] is saying he couldn't locate him. He's on probation."

Court:
> "It's certainly part of the public record."

(R. 336-337).

Petitioner contends, on defense entirely predicated on alibi, Defense Counsel and his alleged Investigator took absolutely no steps to interview nor subpoena any witnesses, witnesses ready and willing to testify, subjecting State's case to meaningful adversarial testing. *Harrison v. Quarterman*, 496 F.3d 419, 427-28 (5th Cir. 2007) (citing *Anderson v. Johnson*, 338 F.3d 382, 393-94 (5th Cir. 2003)). counsel's failure to have the only known exculpatory witness testify satisfied *Strickland's* prejudice requirement. *Id.* Otherwise with material witnesses, the State could not carry burden of probably cause and (all) alleged evidence justified and suppressed, emerging in an acquittal.

## SUB-CLAIM NO. 3 – DEFENSE COUNSEL INEFFECTIVELY FAILED TO INVESTIGATE AND SUBPOENA THIRD WITNESS FOR SUPPRESSION HEARING(S). (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Mr. William (Bill) Barrett was the cab driver taking Mr. Ayo to work who witnessed and was part of the illegal investigative stop out of jurisdiction, an unlawful warrantless exploratory search, and the arrest of Mr. Ayo only after a highly suggestive show-up identification. (R. 101, 115, 207, 256; See: Exhibit "D", attached).

Petitioner contends, Defense Counsel was aware that Mr. Barrett worked **locally** for service cab company in Metairie, Louisiana. That police report(s) contain both his home and work address, cell phone number, and that his testimonial evidence would directly refute the State's case in chief. But Mr. Schmidt took absolutely no steps to investigate or subpoena and secure testimony of any of the three defense witnesses, (*Nealy v. Cabana*, 764 F.2d 1173,

38

1179-80 (5th Cir. 1985). See also *Code v. Montgomery*, 799 F.2d 1481, 1484-85 (11th Cir. 1986)}, counsel's failure to present alibi defense deprived him of a fundamentally fair trial. *Id.* Thus prejudicing Mr. Ayo's trial with introduction of unlawfully seized evidence. (See: Exhibit "E", Attached).

## SUB-CLAIM NO. 4 – DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA DEFENSE INVESTIGATOR AS WITNESS. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Defense Investigator Ronnie Montgomery was retain to locate three (3) witnesses for suppression hearing(s) and trial. Additionally, Mr. Montgomery was to drive the route traveled by defendant three (3x) times from New Orleans to "Dave's" apartment, establishing time frame of Mr. Ayo's alibi and inability to commit offense in question. (R. 174; See: Exhibit(s) "F" & "G", attached).

Petitioner contends, Mr. Schmidt ineffectively failed to subpoena Defense Investigator as a witness. And frivolously attempted to present an alibi defense without a single corroborating witness that these individual(s) even exist but simply could not be located by the investigator. *Code v. Montgomery*, 799 F.2d 1481, 1484 (11th Cir. 1986). Thus, constituting an inadequate pretrial investigation so serious, Mr. Ayo was coerced to testify in his own defense at trial and his bare unsupported testimony left him without any credible defense whatsoever.

<u>SUB-CLAIM NO. 5</u> – DEFENSE COUNSEL INEFFECTIVELY, WITH A DELIBERATE INDIFFERENCE, REFUSED TO SUBMIT EXCULPATORY EVIDENCE. (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Each day Defense Counsel neglected to investigate and secure Mr. Ayo's alibi witness[es] rose the likely probability of irreparable harm, i.e., forever losing contact with exculpatory witnesses. As Defendant repeatedly emphasized the same in **numerous** (over ten (10)) correspondence to Mrs. Naquin and Mr. Schmidt. (See: Exhibit(s) "A", "B" & "F", Attached).

> "I need to speak with you and your investigator as my alibi witness
> is having landlord trouble and may move."

(Supp. R. 56-65; See: Exhibit(s) "A", "B" & "F", Attached).

On March 5, 2007, Defendant made contact with Theo Brickley. Who provided Mr. Ayo with in a sworn affidavit, attesting to expected testimony herein. (See: Exhibit "C", Attached).

Petitioner contends, but Defense Counsel refused to submit exculpatory evidence (affidavit) into evidence; evidence material to probably cause and suppression hearing(s), and, material to overall outcome of trial. Mr. Schmidt's refusal conclusively demonstrates that he acted in collusion with the State to further prosecution. Counsel's refusal to defend Mr. Ayo is ineffective assistance of the first magnitude. (See Exhibit "C", Attached).

_SUB-CLAIM NO. 6_ : NOW ADDRESSING THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM(S) CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE APPENDIX – F).

The United States Supreme Court in _Strickland v. Washington_, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel. The Defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.
>
> [And] That there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. _Id._ at 694.

In satisfying the **First-Prong** of _Strickland_ Petitioner contends, Defense Counsel's repeated deficiencies in (over 60 claim(s)) of "lack" of performance is evident of his collusion with the Prosecution, and, judicial recourses would best be served by simply asking Mr. Schmidt in an evidentiary hearing, "Exactly what did you do to defend your client?"

Nevertheless, may it please the Court, Counsel was repeatedly informed that Mr. Brickley and Dave's testimony directly refuted the State's case in chief, providing Mr. Ayo with an alibi and geographically without means to commit the crime in question.

Additionally Counsel was repeatedly warned for eleven (11) month(s) that Mr. Ayo's alibi witnesses must be investigated and secured prior to hearing(s) and trial. Mr. Schmidt's contention that "he could not locate them" is totally unpersuasive as a local detective testified that Dave's apartment "is the **only** residence on Cicero St.," and public record(s) conclusively demonstrate Theo Brickley is on supervised probation with a parole officer. (R. 185, 336-337).

41

The record is totally devoid of Counsel attempting to subpoena anyone, including Defense Investigator to furnish extent of his investigation, for two (2) separate motion to suppress hearing(s). Mr. Schmidt's inadequate pretrial investigation fell below an objective standard of reasonable professional norms, not functioning as counsel guaranteed Mr. Ayo by the Sixth Amendment. (See: Exhibit "E", Attached).

In satisfying the **Second-Prong** of *Strickland*, Petitioner contends, Counsel's ineffectiveness is compounded with three (3) exculpatory witnesses not subpoenaed for two (2) suppression hearing(s), or again at trial, "not" investigating nor calling any defense witnesses. Moreover, refusing to introduce exculpatory evidence (affidavit of Theo Brickley) into evidence at not one, but two (2) separate suppression hearing(s) and/or trial, is so prejudicial in the absence of any witnesses to testify. See *Harrison v. Quarterman*, 496 F.3d 419, 427-28 (5th Cir. 2007) (citing *Anderson v. Johnson*, 338 F.3d 382, 393-94 (5th Cir. 2003), counsel's failure to have the only known exculpatory witness testify "satisfied" *Strickland's* Sixth Amendment prejudice requirement.

The United States Supreme Court held in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), if a defendant is denied effective assistance of counsel, they are denied their Sixth and Fourteenth Amendment constitutional right(s) to a fair trial.

Therefore, the adjudication in *State v. Ayo*, (No. 12-KH-583) --- So.3d --- (La. App. 5th Cir. 8/24/12), *writ denied*, (No. 12-KH-2093) --- So.3d --- (La. 3/8/13), Defendant not denied ineffective assistance of counsel. Involved an unreasonable application of clearly established constitutional law, and there is an absence of available state corrective process.

5. Pro Se Claim(s) 15, 16 and 17 on Post Conviction. (See Appendix – F).

## CLAIM FIVE

THE ADJUDICATION THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR NEGLECTING TO ARGUE STATUTORY LAW(S) ON ILLEGAL "INVESTIGATIVE STOP" OUT OF JURISDICTION INVOLVED AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

The trial court erroneously alleged claim(s) 15, 16 and 17 of ineffective assistance were raised on Direct Appeal. See *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009), *writ denied*, 28 So.3d 1006 (La. 2010). No where on appeal were these ineffective assistance of counsel claim(s) ever raised, let alone addressed. (See Appendix – B & C, attached).

The State court evaded the fact that none of the officers involved in this case had reason to believe Defendant committed a crime to effectuate Mr. Ayo's immediate arrest in Orleans Parish. *State v. Chopin, Jr.*, 372 So.2d 1222, 1224-25 (La. 1977), police did not have right to make investigatory stop. *Id.* Deputy Simoneaux unequivocally testified that when he observed the cab in the Spur Station:

"I stopped and began to watch."

(R. 99, 237, 254-255).

After observing him hand the cab driver money. He entered the parking lot, wrestled him down, handcuffed, and detained Mr. Ayo, notifying Deputy McCoy to:

"Bring the victim to identify the subject that 'I stopped to see if ' this could be the perpetrator."[13]

---

13 Properly defined in Merriam Webster's Collegiate Dictionary, Eleventh Edition: *IF* \ 1: in the event that. 2:

43

(R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Petitioner contends, here Jefferson Parish Deputies admitted they were not in hot pursuit of this cab to immediately arrest its occupant(s). But "watched" and conducted a highly illegal (investigative) detention and exploratory search out of jurisdiction.[14] Detective Jewell concealed their malfeasance by his broadcast "slow N.O.P.D. [New Orleans Police Department] down." (See: Exhibit "I", Attached).

Though Jefferson Parish officials were without statutory authority to conduct independent investigatory stop(s) in another jurisdiction. *Brown v. Illinois*, 442 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975). Defense Counsel grossly neglected to impeach the officers admission of an illegal investigative detention in Orleans Parish nor argue a single, not one, statutory authority defending Mr. Ayo's unconstitutional Fourth Amendment seizure. (see Exhibit "J", Attached).

*SUB-CLAIM NO. 2* – DEFENSE  COUNSEL INEFFECTIVELY FAILED TO ARGUE LACK OF STATUTORY AUTHORITY FOR PRIVATE CITIZEN TO EXECUTE "INVESTIGATIVE" STOP(S). (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The State diligently argued that Deputy Simoneaux was acting as a private citizen when he arrested Mr. Ayo in Orleans Parish. (R. 107). Deputy Simoneaux, however, concede not arresting Defendant immediately upon first encounter as the prerequisite of a hot pursuit out of

---

whether <ask>. 5: and perhaps not even.

14 *Brown v. Illinois*, 442 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the impropriety of the arrest was obvious. The Detectives embarked upon this expedition for evidence in hope that something might turn up.

44

jurisdiction in Article 213. But testified that "he stopped and began to watch." In other words,

Jefferson Parish officials conducted an investigation in Orleans Parish. Then after illegally

detaining Mr. Ayo out of his lawful jurisdiction.

> "He notified Deputy McCoy to bring the victim to identify the
> subject that 'I stopped to see if this could be' the perpetrator.
> (R. 101, 116, 207, 256. See: Exhibit "D", Attacked).

Petitioner contends, accepting the State's argument as true. This "citizen" deputy made a

forceful (investigative) detention for the purpose of conducting a show-up identification

process, not arresting Mr. Ayo until "after" the victim viewed his suspect. (R. 116, 207).

Despite the State's argument, an investigative stop and show-up identification conducted

by a private citizen is "illegal" in its entirety. *United States v. Crews*, 445 U.S. 463, 477, 100

S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention

cannot be introduced. *Id.* Defense Counsel ineffectively neglected to argue against the State's

erroneous contention that private citizens may conduct full custodial investigation. When

Louisiana jurisprudence contains no such constitutional law. Adequately defending Mr. Ayo's

constitutional right(s) to be free from intrusive encounters and illegal detention. (See: Exhibit

"J", Attached).


**SUB-CLAIM NO. 3** – DEFENSE COUNSEL INEFFECTIVELY FAILED TO

CHALLENGE INSUFFUCIENCY OF PROBABLE CAUSE FOR PRIVATE CITIZEN

TO ARREST, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH

AMENDMENT CONSTITUTIONAL RIGHT(S). (SEE APPENDIX – F).

45

## FACTS AND ARGUMENT IN SUPPORT

When Mr. Ayo was encountered by Jefferson Parish officials, he was in the 17th Ward of
Orleans Parish (where Hurricane Katrina broke the 17th Street canal levee) – one of the hardest
hit areas and most heavily under construction at the time. The State diligently argued that
Deputy Simoneaux was out of his lawful jurisdiction. But acting as a private citizen when he
observed a knife "protruding" out Defendant's back pocket and arrested him. (R. 107, 144, 162,
237).

Petitioner contends, the State's argument is seriously misplaced. Police Officers and/or
private citizens "**must**" have probable cause to arrest culprit before pursuing or detaining
another citizen. *State v. Franklin*, 353 So.2d 1315, 1319 (La. 1978).  Mr. Ayo's possession of
an [un]concealed work knife violated "*no*" Louisiana law, and Lieutenant Detective Jewell
could not testify of a single authority warranting an arrest. (R. 183, 315-316, 322-323).

If society sanction the State's position it would cause total mayhem, authorizing the
immediate arrest of nearly every construction worker on his way to and from work. *Dunaway
v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), seizure without
probable cause violated the Fourth Amendment; *Henry v. United States*, 361 U.S. 98, 101, 80
S.Ct. 168, 4 L.Ed.2d 134 (1959), arrest on mere suspicion collides violently with basic human
right of liberty; *State v. Washington*, 364 So.2d 958, 959-60 (La. 1978). But Defense Counsel
grossly neglected to impeach Deputy Simoneaux, the arresting officer, with a single question
regarding the "lawfulness" of work knife and lawful basis for arrest. Counsel simply failed to
defend Mr. Ayo's constitutional right(s). (See: Exhibit "J", Attached).

6. Pro Se Claim(s) 18, 19 and 20 on Post Conviction. (see Appendix – F).

## CLAIM FIVE

**THE ADJUDICATION THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR NEGLECTING TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL *TERRI* STOP BASED ON RACE INVOLVED AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The trial court erroneously alleged claim(s) 18, 19 and 20 of ineffective assistance were raised on Direct Appeal. See *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5th Cir. 2009), *writ denied*, 28 So.3d 1006 (La. 2010). No where on appeal were these ineffective assistance of counsel claim(s) ever raised, let alone addressed. (See Appendix – B & C, attached).

The State entered dispatch transcript(s) into evidence demonstrating Detective Jewell broadcast that he observed:

> "A white male with green shirt and blue jeans" [several blocks away from the incident].

(R. 152-154; See: Exhibit "I", Attached).

In light of the fact (no green t-shirt nor blue jeans) were part of initial description, its evident Deputy Simoneaux relied on the only remaining factor to justify stop of Defendant – Mr. Ayo's apparent "white/male" ancestry.

Deputy McCoy uncontrovertedly testified that he stopped the other person:

> "Because the description said white male, and Hispanics are traditionally considered white males."

(R. 213).

Petitioner contends, the United States Supreme Court has long since held that race or

gender alone form no reasonable basis for stopping and detaining citizens in a public place. *United States v. Bringnoni-Ponce*, 422 U.S. 873, 885-86, 95 S.Ct. 2574, 2582-83, 45 L.Ed.2d 607 (1975). The Fourth Amendment does not allow stop(s) where race furnish the "only" ground for suspicion. *State v. Blasio*, 720 So.2d 749, 750 (La. App. 4th Cir. 1998), police officers could not articulate reason for suspecting defendant of criminal activity. But Defense Counsel grossly failed to argue a single authority defending Mr. Ayo's constitutional right(s) to be free of such intrusive detention. (See: Exhibit "J").

## SUB-CLAIM NO. 2 – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFULNESS OF FORCIBLE *TERRI* STOP. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The United States Supreme Court defined reasonable suspicion as "specific and articulable facts" which, taken together with rational inferences from these facts, reasonably warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), these men paced alternately along an identical route, pausing to stare in the same store window roughly 24 times, where each completion of this route was followed immediately by a conference between the two men on the corner. *Id.* at 23.

In essence, the question sub judice is whether based on the totality of circumstances. Did Deputy Simoneaux have a "particularized and objective basis" for suspecting that Mr. Ayo committed a crime?

The specific and articulable facts known to Jefferson Parish officials at the time of *Terri*

48

stop are as follows:

1.) A fellow officer broadcast that he merely observed a white male [several blocks away from incident] talking to someone on landing of apartment; (R. 162, 174, 188).

2.) He did not match the description, wearing a lime-green tee shirt and carrying a travel bag; (R. 86, 162).

3.) He did not match the profile, Mr. Ayo was 14 years older, "90" pounds heavier (240), with very notable cuts and bruising about his face (not the "good looking man" to B.O.L.O. - be on lookout); (R. 91, 158, 283-286).

4.) Mr. Ayo was in another parish and area under heavy construction; (R. 237).

5.) And lawfully paying a cab driver when observed the second time. (R. 237).

Neither singularly nor together did these facts afford Deputy Simoneaux with a particularize nor objective basis for reasonably suspecting Mr. Ayo of committing a crime. *State v. Key*, 375 So.2d 1354, 1358 (La. 1979). The United States Fifth Circuit reason that these same circumstances describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the court to conclude that as little foundation as there was in this case could justify a seizure. *U.S. v. Glass*, 741 F.2d 83, 85-86 (5th Cir. 1984).

Petitioner contends, had he not been unlawfully detained. With the limited information known up to that point. Deputy Simoneaux did not have the requisite "probable cause" necessary to apply with a magistrate for an arrest warrant. *Spinelli v. United States*, 393 U.S. 410, 412-13, 89 S.Ct. 584, 587, 21 L.Ed.2d 637 (1969); *U.S. v. Thomas*, 489 F.2d 664, 667-68 (5th Cir. 1973); *State v. Rey*, 351 So.2d 489, 491-92 (La. 1977). Consequently neither did the officers have "specific and articulable facts" warranting arrest without a warrant. But Defense Counsel ineffectively neglected to impeach witnesses nor argue a single authority, defending

49

Mr. Ayo's constitutional right(s) on an unlawful forcible *Terri* stop on "less" that reasonable cause. (See: Exhibit "J", Attached).

_SUB-CLAIM NO. 3_ – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL STOP MAY NOT RIPEN INTO PROBABLE CAUSE JUSTIFYING ILLEGALITY. (SEE APPENDIX – F).

<u>FACTS AND ARGUMENT IN SUPPORT</u>

The State diligently argued that the "illegal" investigatory stop out of jurisdiction ripened into probable cause when Deputy Simoneaux observed the knife in Mr. Ayo's pocket. "Officers are not expected to sit back and let defendant enter the store with a knife." (R. 144, 145).

Petitioner contends, his [un]concealed knife violated no law(s) nor did Mr. Ayo attempt to enter the store with his work knife or so-called weapon, call it what you will. Deputy Simoneaux unequivocally testified that Mr. Ayo sent the cab driver in the store with money. (R. 183, 237). Thus under the totality of circumstances presented there was "**no probable cause**" for Defendant's arrest initiating a *Terri* stop and, thereafter, arrest out of jurisdiction. *State v. Mareno*, 619 So.2d 62, 65 (La. 1993); *State v. Raheem*, 464 So.2d 293, 297 (La. 1985).

Consequently "**after**" the stop, when Defendant's unconcealed work knife was revealed. Though it violated no law, it cannot be the catalyst that converts Mr. Ayo's otherwise innocent activity into reasonable suspicion for the initial stop. *U.S. v. Glass*, 741 F.2d 83, 85-86 (5th Cir. 1984). But Defense Counsel grossly failed to argue any suppression law whatsoever, not one authority defending against the State's erroneous contention. See e.g., *State v. Blanton*, 400, So.2d 661, 663 (La. 1981), cocaine on his person should have been suppressed as the product

of an unlawful stop and seizure. That the unlawful stop ripened into probable cause upon discovery of his work. (See: Exhibit "J", Attached).

*SUBCLAIM NO. 4* – NOW ADDRESSING THE CONSTITUTIONAL RIGHT VIOLATION(S) IN BOTH CLAIM(S) FIVE AND SIX OF THE FOREGOING PETITION.

The arresting officers in this case lacked reasonable suspicion, taken together with rational inferences from these facts, to reasonably warrant intrusion of Mr. Ayo. The United States Supreme Court held in *United States v. Bringnoni-Ponce*, 422 U.S. 873, 885-86, 95 S.Ct. 2574, 2582-83, 45 L.Ed.2d 607 (1975), the Fourth Amendment does not authorize stops where race furnish the only ground for suspicion. *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979); *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), arrest on mere suspicion collides violently with basic human right of liberty. See also *State v. Washington*, 364 So.2d 958, 959-60 (La. 1978).

Petitioner contends, whether an officer on roving patrol or private citizen, the Fourth Amendment safeguards against "investigative" *Terry* stops out of jurisdiction. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *State v. Thompson, Sr.*, 894 So.2d 1268 (La. App. 2nd Cir. 2005).

Therefore, the adjudication in *State v. Ayo*, (No. 12-KH-583) --- So.3d --- (La. App. 5th Cir. 8/24/12), *writ denied*, (No. 12-KH-2093) --- So.3d --- (La. 3/8/13), Defendant not denied ineffective assistance of counsel. Involved an unreasonable application of clearly established constitutional law, and there is an absence of available state corrective process.

51

_SUB-CLAIM NO. 5_ – NOW ADDRESSING INEFFECTIVE ASSISTANCE OF COUNSEL IN CLAIM(S) FIVE AND SIX CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE APPENDIX – F).

The United States Supreme Court in _Strickland v. Washington_, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.
>
> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. _Id._ at 694.

In satisfying the **First-Prong** of _Strickland_: Petitioner contends, Defense Counsel's failure to impeach witnesses with conflicting report(s) conclusively demonstrating perjured testimony, arguing the lack of specific articulable facts warranting probable cause to arrest. Moreover, Mr. Schmidt blatantly refuse to challenge the State's erroneous contention that private citizens may conduct investigative stops, absent statutory authority, fell way below an objective standard of reasonable professional norms.

In satisfying the **Second-Prong** of _Strickland_: Petitioner contends, Defense Counsel ineffectively neglected to investigate nor argue not one, not a single legal authority defending against Mr. Ayo's unconstitutional detention. Undermined confidence in the outcome of Mr. Ayo's trial with the introduction of "illegally" seized evidence. Thus but for Mr. Schmidt's unprofessional errors, (all) alleged evidence seized during the unlawful investigative detention out of jurisdiction would have been suppressed, charge(s) dismissed, and Mr. Ayo acquitted at

trial. See e.g., **State v. Aguillard**, 357 So.2d 535, 538 (La. 1978), police officer who apprehended defendant, patted him down and seized cocaine, and then placed him under arrest did not lawfully arrest defendant prior to search, and therefore the warrantless search was unlawful and refusal to suppress evidence was error. *Id.*

7. Pro Se Post Conviction Claim(s) 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, 34 and 35.

(See Appendix – F).

## CLAIM SEVEN

THE ADJUDICATION THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR REFUSING TO ARGUE SUPPRESSION LAW(S) ON ILLEGALLY SEIZED EVIDENCE NOT IDENTIFIED AS EVIDENCE OF ALLEGED CRIME INVOLVED AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

The trial court erroneously alleged claim(s) 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, 34 and 35 were raised on Direct Appeal. See *State v. Ayo*, 7 So.3d 85, 99 (La. App. 5ᵗʰ Cir. 2009), *cert. denied*, 28 So.3d 1006 (La. 2010). No where on appeal were these ineffective assistance of counsel claim(s) ever raised, let alone addressed. (See Appendix – B & C, attached).

The record conclusively demonstrates that Jefferson Parish officials entered Orleans Parish and "watched", investigated Defendant out of jurisdiction. Then wrestled down and detained Mr. Ayo, searched and seized his work knife and contents of carryall bag, and forcefully placed Defendant in the back of police car against his free will pending an investigative show-up identification procedure to be conducted. Afterwards placing Mr. Ayo under arrest. (R. 86, 101, 109-110, 116, 207, 256; See: Exhibit "D", Attached).

Petitioner contends, in order for officials to justify a warrantless search incident to arrest, an arrest must have already occurred and the arrest itself must have been "lawful." *State v. Marks*, 337 So.2d 1177, 1181 (La. 1976). The rule excluding evidence seized in violation of Fourth Amendment has been recognized as a principle mode of discouraging "lawless police

54

misconduct." *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Key*, 375 So.2d 1354, 1355 (La. 1979).

But Mr. Schmidt blatantly refused to argue a single, not one legal authority warranting suppression of material evidence unconstitutionally seized.

The most conspicuous ineffective assistance, however, came when the victim did "not" identify Mr. Ayo's work knife as the weapon used in robbery. (R. 87, 95, 278). Mr. Schmidt, acting in collusion with State to further prosecution, did not argue against and condoned the introduction of [un]identified highly prejudicial material evidence against Mr. Ayo at trial. The record is completely silent of Mr. Schmidt challenging the suppression of unidentified weapon. (See: Exhibit "J", Attached).

*SUB-CLAIM NO. 2* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) AND BLATANTLY *REFUSED* TO INTRODUCE EXCULPATORY EVIDENCE. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The victim reported that the Perpetrator made off with $28 dollars in U.S. currency, (R. 87). Defendant was detained just minutes after the incident and found in possession of $21 dollars, clearly not denomination stolen. (R. 101).

Petitioner contends, search of his inner pockets during an investigative stop exceeded scope of pat-down for weapon(s) where officers search thoroughly enough to locate money and then examine "denomination" of bills. *State v. Fogan*, 609 So.2d 1016, 1018 (La. App. 4th Cir. 1992), in order for warrantless search of defendant and subsequent seizure of marked money to

55

be valid, the search would have to be incident to lawful arrest; La. C.Cr.P. Art 215.1(B). But Defense Counsel neglected to argue a single authority defending Mr. Ayo's unconstitutional search and seizure of alleged evidence.

Mr. Schmidt further neglected to investigate his alibi of employment or work schedule, i.e., arrested on way to work. Then when Mr. Ayo further provided Defense Counsel with a $300 dollar Western Union receipt from "less" than 24 hours of this robbery justifying Defendant's resources. Mr. Schmidt threw the material evidence on defense table blatantly refusing to introduce the exculpatory evidence in suppression hearing. (See: Exhibit(s) "A" & "J", Attached).

## SUB-CLAIM NO. 3 – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON SEARCH INCIDENT TO UNLAWFUL ARREST. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The report(s) and testimony of Jefferson Parish officials regarding the seizure of U.S. currency is riddled with so many different version(s) of the event. Because starting with Deputy Simoneaux, who testified the $21 dollars was forced from Defendant's hand, but conceded searching his pockets. (R. 101, 240, 258). Deputy McCoy testified that the currency was seized when it conveniently fell to the ground in plain view. (R. 219). Where Mr. Ayo maintain from the onset that his money was recovered from the search of his inner pockets.[15] (R. 323).

---

15 Both officers ridiculously testified Mr. Ayo still had the money in his hand 50 minutes "after" a robbery – additional perjury.

Petitioner contends, the State ignored the legality of initial stop, lawfulness of arrest, and further failed to carry burden of affirmatively proving the currency seized derived from the robbery of Mr. DeBroy. (R. 87, 258, 319). *State v. Ruffin*, 448 So.2d 1274, 1279 (La. 1984), search of defendant, subsequent to an unlawful arrest, could not be justified as a search incident to a lawful arrest. *Id.* But Counsel ineffectively failed to argue a single authority defending Mr. Ayo's illegal detention or the unconstitutional exploratory search and seizure of material evidence, when the $21 dollars would have been suppressed as a matter of law. (R. 101, 116, 207, 256; See: Exhibit(s) "D" & "J", Attached).

## SUB-CLAIM NO. 4 – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEIZURE OF ABANDON PROPERTY. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, Deputy McCoy testified that the money fell to the ground when Mr. Ayo was seized. (R. 219). But Defense Counsel failed to challenge unlawful investigative stop, thus property abandon by Defendant as a result of such an imminent stop cannot be legally seized. *State v. Chopin, Jr.*, 372 So.2d 1222, 1224-25 (La. 1979). Otherwise the material evidence would have been suppressed as a matter of law and jury acquit Defendant for lack of evidence. (See: Exhibit "J", Attached).

*SUB-CLAIM NO. 5* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH OF POCKETS EXCEEDED *TERRY* PAT-DOWN FOR WEAPONS. (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, Jefferson Parish officials lacked probable cause to arrest out of jurisdiction, and conduct thorough search of his inner pants pockets to locate money and then examine denomination of bills exceeded *Terry* pat-down for weapons. (R. 323). *State v. Short*, 665 So.2d 1102 (La. 1992); *State v. Parker*, 622 So.2d 791, 794-95 (La. App. 4th Cir. 1993), if protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits "**will**" be suppressed. *Id.*

But Defense Counsel ineffectively refuse to argue a single legal authority defending against Mr. Ayo's illegal detention and unconstitutional exploratory search and seizure, prejudicing Defendant's trial with the introduction of "*illegally*" seized material evidence. (See Exhibit "J", Attached).

*SUB-CLAIM NO. 6* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON EVIDENCE VIOLATED CHAIN OF CUSTODY. (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Jefferson Parish Sheriff Office record(s) conclusively demonstrate that Deputy Simoneaux and Deputy McCoy initially failed to store Defendant's money into evidence. However materialized at jail the day (after) Mr. Ayo's arrest, collected "**any**" $21 dollars from

property officer, and submitted the same illegally seized material evidence to the State for use against Defendant at trial. (R. 87, 219-220).

Petitioner contends, to admit demonstrative evidence, the law "requires" the object to be identified visually or by establishing the chain of custody of the currency from the time it was seized to the time it was offered into evidence. *State v. Godeaux*, 378 So.2d 941, 944 (La. 1980); *State v. Paster*, 373 So.2d 170, 177 (La. 1979). But despite the State's fraud on the court, and, inability to carry burden of proof that the U.S. currency introduced into evidence was the "same" object originally seized by the officers at the time of Mr. Ayo's arrest. *State v. Lewis*, 354 So.2d 566, 568 (La. 1978). Defense Counsel refuse to subject the State's case to meaningful adversarial testing, arguing the unconstitutional evidence must be suppressed. (See: Exhibit "J", Attached).

## SUB-CLAIM NO. 7 – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ALLEGED EVIDENCE NOT MATCHING DESCRIPTION. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The victim described to police the perpetrator's clothing as wearing:

"A blue or black 'pullover' hooded sweatshirt."
(R. 158; State's Exhibit(s) – 3 & 4).

In fact, officials placed so much emphasis on Mr. DeBroy's description of a (pullover) hooded sweatshirt. Deputies reported they stopped Mr. Ayo because his "tee-shirt" was labeled as that of :

"He was wearing a green pullover shirt."
(See: Police Report(s)).

Petitioner contends, then when officials testified to clothing located in Mr. Ayo's travel bag. They unequivocally describe:

"A polyester weatherproof 'zip-up' windbreaker."
(R. 180-181; State Exhibit – 15).

Not the "pullover" sweatshirt described by victim, but "zip-up" windbreaker. Nevertheless Defense Counsel ineffectively failed to argue suppression law(s) against the State's introduction of alleged material evidence "not" matching the description. (See: Exhibit "J", Attached).


_SUB-CLAIM NO. 8_ – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH PRIOR TO ARREST. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Deputy Simoneaux concedes forcefully detaining Mr. Ayo out of his lawful jurisdiction. Then:

"I notified Deputy McCoy to bring the victim to identify the subject
that 'I stopped to see if ' this could be the perpetrator."
(R. 101, 116, 207, 256; See: Exhibit "D", Attached).


Meanwhile prior to the highly illegal identification process, conducted an unconstitutional exploratory search of Defendant's inner pockets and carryall bag located in vehicle. (R. 110). Then upon the victim's arrival, police showed him a knife and money

removed from Mr. Ayo's pocket, and windbreaker removed from Defendant's travel bag. None of which was positively identified. (R. 86-87, 95).

Deputy Simoneaux next conducted his unlawful show-up in Orleans Parish, arresting Defendant only "after" Mr. DeBroy identified him. (R. 116; See: Exhibit "D", Attached).

Petitioner contends police did not lawfully arrest Mr. Ayo prior to search required suppression of (all) evidence unconstitutionally seized, including pretrial identification. *Brown v. Illinois*, 442 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the impropriety of the arrest was obvious, both in design and in execution was investigatory. The detectives embarked upon this expedition for evidence in hope that something might turn up; *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention cannot be introduced.

But Defense Counsel ineffectively neglected to argue a single suppression authority defending Mr. Ayo's constitutional right(s) to be free of intrusive encounters and warrantless search. Otherwise the work knife, "zip-up" windbreaker, and identification would have been suppressed, as a matter of law. The State unable to carry burden of proof and jury acquit Mr. Ayo for lack of evidence. (See: Exhibit "F", Attached).


**SUB-CLAIM NO. 9** – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH BEYOND SUSPECT'S IMMEDIATE CONTROL. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Deputy Simoneaux testified that he grabbed hold of Mr. Ayo "in front store." (R. 100,

204). Deputy McCoy advised that he found a zip-up jacket "**Inside**" a travel bag located "in the back seat of cab." (R. 110).

Petitioner contends, the United States Supreme Court has long since held that search extending beyond Defendant's person and area in his immediate control was unreasonable. *Chimel v. California*, 395 U.S. 752, 766-67, 89 S.Ct. 2034, 2041-42, 23 L.Ed.2d 685 (1969). But Counsel grossly failed to argue a single suppression authority defending against the unconstitutional search and seizure or the "zip-up" windbreaker would have been inadmissible as a matter of law, and jury acquit Mr. Ayo for lack of evidence. *Coolidge v. New Hampshire*, 403 U.S. 553, 556, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1975), following arrest inside house, search of vehicle outside could not be justified as incident to the arrest; *State v. Raheem*, 464 So.2d 293, 297 (La. 1985), when made after an illegal detention or search, consent to search, even if voluntary, is valid only if it was the product of free will and not the result of an exploitation of the previous illegality; evidence seized from defendant's purse should have been suppressed. *Id.*

## SUB-CLAIM NO. 10 – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH OF CLOSED TRAVEL BAG NOT JUSTIFIED UNDER PLAIN VIEW EXCEPTION. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Detective Jewell testified that he observed a white male wearing a green tee-shirt, carrying a travel bag over his shoulder. (R. 158, 162, 173). His radio broadcast nor trial testimony makes "no" mention of observing an exposed jacket sticking out possibly fitting the

description. (State's Exhibit – 3; See also: Exhibit "I", Attached).

In fact, Detective Jewell testified that a blue windbreaker was "removed (*from*) the gym bag found in the back of cab." (R. 180-181).

The victim unequivocally corroborated that "they walked over to a bag and they (*pulled out*) a blue jacket." (R. 277). (Emphasis added).

Petitioner contends, then Deputy McCoy committed perjury and fraud on Court testfying the jacket "was lying (**on top**) the bag. I didn't have to go into the bag at all." (R. 123; 218). (Emphasis added). Miraculously a textbook case of plain view doctrine.

In *State v. Pomes*, 376 So.2d 133, 135 (La. 1979), the Louisiana Supreme Court set forth a three (3) prong requirement before evidence in "plain view" may lawfully be seized:

1. That there be prior justification for police intrusion into a protected area;

2. That the evidence be discovered inadvertently;

3. And that it be immediately apparent, without close inspection, that the items are evidence or contraband.

   *Id*

In satisfying the **First-Prong** test of *Pomes*: Petitioner contends, under the totality of the circumstances and information known to Jefferson Parish officials. There was no reasonable cause nor hot pursuit "of person to be arrested," justifying the police intrusion into Mr. Ayo's protected area of privacy [travel bag in cab] in another jurisdiction. While Defendant stood outside store. (R. 238). Deputy Simoneaux concede not immediately arresting Mr. Ayo, but conducted an illegal "investigative" detention in another parish for the purpose of bringing the victim to conduct a show-up identification procedure. (R. 101, 116, 207, 256; See: Exhibit "D",

63

Attached).

Thus satisfying the first requirement: 1) Jefferson officials were not in a lawful position to conduct (investigations) and warrantless searches into "protected area" in Orleans Parish. (R. 158, 162, 173). *State v. Franklin*, 353 So.2d 1315, 1320-21 (La. 1977).

In satisfying the <u>Second-Prong</u> test of *Pomes*: Petitioner contends, the cab driver's statement nor trial testimony make absolutely "no" mention of observing Mr. Ayo with a "zip-up" windbreaker, permission authorizing search of cab or Defendant's travel bag, nor that the cab driver allegedly informing Deputy Simoneaux that Mr. Ayo put a jacket "in" his travel bag and that "he wanted it out of his cab." (R. 116; State's Exhibit – 16).

Quite the opposite of deputies repeated perjury. William Barrett testified, "I don't recall Defendant having a travel bag." (R. 195).

Thus satisfying the second requirement: 2) The contents of the travel bag were not "discovered inadvertently," but through an unlawful detention out of jurisdiction and an illegal exploratory search of cab in hope it contained evidence. (R. 180-181, 277; See: Exhibit "D", Attached). *Brown v. Illinois*, 422 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the arrest was investigatory, detectives embarked upon this expedition for evidence in hope that something might turn up; *State v. Finklea*, 313 So.2d 224, 225-26 (La. 1975), items not visible from outside car were not in plain view, and thus not subject to warrantless seizure.

In satisfying the <u>Third-Prong</u> test of *Pomes*: Petitioner contends, his travel bag contained a weatherproof polyester "zip-up" windbreaker, and not a cotton **"pullover"** sweatshirt as worn by the perpetrator. (R. 181; See: Exhibit "B", Attached).

Further, not one, but two (2) witnesses, a Lieutenant Detective and the victim both

testified that Deputy McCoy:

> "Removed 'from' ...[and]... pulled 'out' a blue jacket from 'inside' a
> bag."
> (R. 180, 277).

Therefore satisfying the third requirement: 3) Petitioner contends, his work jacket "inside" carry all bag was not in plain view nor "immediate apparent, without close inspection," that the "zip-up" windbreaker only resembled the "pullover" sweatshirt and evidence officials were lawlessly searching for. See e.g., **State v. Parker**, 622 So.2d 701, 704 (La. App 4th Cir. 1993), if incriminating character is not immediately apparent, the plain view doctrine cannot justify its seizure. *Id.*

But Defense Counsel grossly neglected to subpoena a single Defense witness for either of two suppression hearing(s), took absolutely no steps to impeach witnesses with obvious perjured testimony, nor argued a single suppression law against the unlawful search and seizure of property not in plain view, and out their jurisdiction, defending against Mr. Ayo's constitutional right violation(s). Otherwise the "zip-up" windbreaker would have been suppressed as a matter of law, and jury acquit Defendant for lack of evidence. (See: Exhibit(s) "B" & "J", Attached).

## *SUB-CLAIM NO. 11* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES NOR ARGUE SUPPRESSION LAW(S) ON PERJURY OF ALLEGED INCULPATORY STATEMENT. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Jefferson Parish officials testified that Defendant was arrested "after" the identification

process was conducted in Orleans Parish, and placed in the back seat of Deputy Simoneaux's

patrol car. (R. 101, 116, 207, 256). Then Deputy McCoy heard Defendant made an inculpatory

statement:

> "Because his window was open."
> (R. 119).

Petitioner contends, the amount of perjury in this case is off the chart! Again Mr. Ayo

informed Defense Counsel that the officer is violating his oath:

> "He's lying. The back window of a patrol car does not open, it
> would be an 'escape' route for prisoners. Ask him that."
> (See: Exhibit "G", Attached).

But Defense Counsel took absolutely no steps to impeach and expose the officers

perjury, blatantly refusing to argue suppression law(s) against false statement and defend Mr.

Ayo's constitutional right violation(s). *State v. Fisher*, 720 So.2d 1179, 1185-86 (La. 1998),

Defendant's alleged statements were inseparable from his illegal detention and should not have

been admitted, though voluntarily given. *Id.* Thus acting in collusion with the prosecution, Mr.

Schmidt allowed the prejudicial testimonial evidence go to the jury that would have otherwise

been suppressed as a matter of law. (See: Exhibit "J", Attached).


*SUB-CLAIM NO. 12* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT
TO ABUSE OF THE WRIT AND ABUSE OF JUDICIAL DISCRETION. (SEE
APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Defense Counsel filed a motion for preliminary examination (probable cause) hearing

66

and, wholly inadequate motion to suppress. (R. 9). When Mr. Schmidt would not visit, consult, nor correspond with Defendant, refusing to investigate exculpatory alibi witnesses for their version and factual input of the event(s) respectively. On June 27, 2007, Defendant supplemented the filing(s) pro se by way of "petition for writ of habeas corpus / alternative motion to suppress". (Supp. R. 17-65).

Petitioner contends, when Judge Henry G. Sullivan, Jr. disregarded Mr. Ayo's prima facie petition pending at the time of suppression hearing August, 16, 2007. Mr. Schmidt blatantly refuse to object or challenge the trial court's abuse of discretion, not hearing the habeas petition within thirty (30) day(s) as required by constitutional law.

But the abuse of the writ did not end there. The record is clear, after the Fifth Circuit Court of Appeal issued Defendant's "writ of mandamus" in *Ayo v. Clerk of 24th Judicial District Court*, (07-K-871) ___ So.2d ___ (La. App. 5th Cir. 10-31-07). Judge Sullivan did conduct a (second) bare-bones suppression hearing, absent State or Defense witnesses with "no" one to cross-examine or impeach on November 7, 2007. (Supp. R. 15; See also: R. 45).

Petitioner contends, the Sixth Amendment to the United States Constitution and the Confrontation Clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." *State v. Bias*, 393 So.2d 677, 679 (La. 1981); La. Const. Art. I § 16. Cross-examination is the primary means by which to test the believability and truthfulness of testimony and has traditionally been used to impeach or discredit witnesses. *State v. Robinson*, 817 So.2d 1131, 1135 (La. 2002).

But Mr. Schmidt ineffectively "refuse" to motion for continuance, subpoena witnesses, nor object to the Court's abuse of the great writ. Additionally, conducting the second

67

suppression hearing November 7, 2007, <u>absent</u> a single Defense or State witness present to impeach or cross-examine. Thus circumventing Defendant's pro se writ and, further prejudicing Mr. Ayo with the introduction of unconstitutionally seized "material" evidence that would have otherwise been suppressed. (See: Exhibit "E", Attached).

*SUB-CLAIM NO. 13* – DEFENSE COUNSEL AGAIN INEFFECTIVELY FAILED TO SUBPOENA A SINGLE WITNESS DURING THE SECOND SUPPRESSION HEARING AND NEGLECTED TO FILE A MOTION FOR CONTINUANCE. (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, Defense Counsel neglected to subpoena a single witness to properly challenge "illegally" seized evidence during the first suppression hearing of August 16, 2007. (R. 336-337; See: Exhibit(s) "A" & "B", Attached).

When given a second hearing, a second chance to rectify fundamental error(s), Mr. Schmidt willfully acted with a deliberate indifference towards Defendant, not subpoenaing "no" witnesses again – not even the arresting officer, nor did he move for a continuance. *State v. Hogan*, 372 So.2d 1211, 1214 (La. 1979), at trial, critical differences developed between defendant and witness testimony. As such, the necessity for witness presence and the prejudice caused defendant by witness absence are clear. *Id.* In case sub judice, Defense Counsel conducted conducted the hearing without a single Defense or State witness to cross-examine and impeach at the second suppression hearing of November 15, 2007. (R. 131-146; See: Exhibit "E", Attached).

Petitioner contends, Defense Counsel neither investigated, nor made a reasonable decision not to investigate the State's case by consulting with Defense witnesses. Such complete lack of pretrial preparation puts at risk both Mr. Ayo's right to an ample opportunity to meet the case of the prosecution and the reliability of the adversarial testing process. Here we are dealing with a (*total*) failure to conduct any pretrial investigation whatsoever. Mr. Schmidt's performance at trial suggest no better explanation for this apparent and persuasive failure to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary.

In sum, counsel did nothing! Mr. Ayo is unable to point to a single issue investigated nor a single suppression law argued by Mr. Schmidt in his defense. See *U.S. v. Drones*, 218 F.3d 496, 500 (5th Cir. 2000), when claim is based on counsel's failure to investigate issue, court looks to degree of investigation undertaken. *Id.*

*SUB-CLAIM NO. 14* – NOW ADDRESSING THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM(S) CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE APPENDIX – F).

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel. Defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

69

different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's inexcusable failure to investigate or subpoena any witnesses during suppression hearing(s), and his refusal to impeach State's witnesses with conflicting report(s) of Mr. Ayo's illegal detention and unconstitutionally seized evidence; coupled with Mr. Schmidt's failure to investigate and argue suppression law(s) readily available. See e.g., ***United States v. Crews***, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention cannot be introduced; ***Brown v. Illinois***, 442 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the impropriety of the arrest was obvious, both in design and in execution was investigatory. The detectives embarked upon this expedition for evidence in hope that something might turn up. Thus constituting deficient performance so serious, Mr. Schmidt was not functioning as counsel guaranteed Defendant by the Sixth Amendment and his performance fell way below an objective standard of reasonable professional norms.

In satisfying the **Second-Prong** of *Strickland* : Petitioner contends, Defense Counsel's ineffectiveness of refusing to argue a single legal authority as evident by both suppression hearing(s) and third time at trial, neglecting to defend against Mr. Ayo's illegal detention, unconstitutional search and seizure, and his failure to challenge [un]identified "zip-up" jacket and work knife as the weapon of perpetrator is so prejudicial. Case law is legion, e.g., ***Coolidge v. New Hampshire***, 403 U.S. 553, 556, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1975), following arrest inside house, search of vehicle outside could not be justified as incident to the arrest;

*State v. Raheem*, 464 So.2d 293, 297 (La. 1985), evidence seized after an illegal detention or search should have been suppressed. *Id.*

Defense Counsel's inexcusable and blatant "refusal" to introduce exculpatory Western Union receipt into evidence during suppression hearing, undermined the outcome of Defendant's trial with the State's introduction of incriminating looking (money) as material evidence. If this Court were to follow the standard set forth in *U.S. v. Drones*, 218 F.3d 496, 500 (5th Cir. 2000), when claim is based on counsel's failure to investigate issue, court looks to degree of investigation undertaken. *Id.* The Court would find counsel investigated absolutely nothing, nor argued a single authority at two (2) separate suppression hearing(s) and/or trial. Otherwise, the "zip-up" windbreaker, money, and work knife (none of which matched the description) would have been suppressed as a matter of law, and jury acquitted Defendant at trial for lack of evidence. (See Exhibit – J, attached).

Therefore, the adjudication in *State v. Ayo*, (No. 12-KH-583) --- So.3d --- (La. App. 5th Cir. 8/24/12), *writ denied*, (No. 12-KH-2093) --- So.3d --- (La. 3/8/13), Defendant not denied ineffective assistance of counsel. Involved an unreasonable application of clearly established constitutional law, and there is an absence of available state corrective process.

8.  Pro Se Claim(s) 20, 36, 37, 38, 39, 40 and 41 on Post Conviction Relief. (See Appendix

– F).

## CLAIM EIGHT

**THE ADJUDICATION THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR NEGLECTING TO INVESTIGATE, MOTION FOR DNA TESTING, AND SUBPOENA EXCULPATORY EVIDENCE, OBJECT TO DEFENDANT'S NON-PARTICIPATION IN JURY CHALLENGE, NOR OBJECT TO HIGHLY INFLAMMATORY RHETORIC INVOLVED AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The victim testified the perpetrator placed a "real big" knife to his throat demanding

money, but when he had trouble getting the money out, the man pulled the blade "against" his

throat "touching my Adam's apple." (R. 92, 266, 271). Thus perfect conditions for taking a

skin-cell sample.

Petitioner contends, from the date of arrest he maintained his actual innocence. (See

Appendix – A). Mr. Ayo repeatedly informed Defense Counsel that his small knife did not

match the description, and that he retrieved it from Dave's kitchen sink just before waling out

apartment for work. (R. 316-317; See Exhibit – A & B, attached).

But Defense Counsel ineffectively refuse to investigate DNA testing, an exact science.

When the power of the results of testing would in fact prove negative of victim's blood or skin

cell(s) and test positive for ham and mayonnaise – scientific evidence exonerating Mr. Ayo.

When Defense Counsel refused to challenge evidence pre-trial. Defendant's motion for

DNA testing post-trial. But the trial court erroneously denied relief because there is not an

"unknown donor."

Next, Defendant properly filed an ineffective assistance of counsel claim (Claim 20) on Post-Conviction Relief, due to defense counsel's refusal to challenge DNA testing and subject the State's case to meaningful adversarial testing.

Petitioner contends, the trial court committed fundamental error now deeming Defendant's ineffective assistance of counsel claim on post-conviction as "successive." Thus, the trial court's contradictory order(s) deny Mr. Ayo procedural due process. (See Order(s) attached w/ Exhibit(s)).

Nevertheless, said post-trial motion by Defendant has no effect on the issue at bar, "pre-trial" ineffective assistance of counsel, denying Petitioner meaningful adversarial testing and his Sixth and Fourteenth Amendment constitutional right(s).

## _SUB-CLAIM NO. 2_ – DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA EXCULPATORY EVIDENCE. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, repeatedly over an eleven (11) month period prior to trial. He informed Defense Counsel of the necessary importance to subpoena his medical record(s) from Santa Rosa Medical Center, State of Florida. Records conclusively demonstrate. Mr. Ayo suffered permanent damage and lost part of his left knee in an accident. Thus making it physically impossible for Defendant to have run from crime scene as the perpetrator. In this instance, material evidence conclusively refuting the State's case in chief. (R. 170; See: Exhibit(s) "A" & "P", Attached; See also: Exhibit(s) - "F" & "G", attached).

But Mr. Schmidt willfully committed ineffective assistance blatantly refusing to prepare

any defense whatsoever subject the State's case to meaningful adversarial testing. See e.g., *Harrison v. Quarterman*, 496 F.3d 419, 427-28 (5th Cir. 2007) (citing *Anderson v. Jackson*, 338 F.3d 382, 393-94 (5th Cir. 2003)), counsel failure to have the only known exculpatory witness testify satisfied *Strickland*'s prejudice requirement. *State v. Hogan*, 372 So.2d 1211, 1214 (La. 1979), defendant is entitled to summon, at state expense, attendance of witnesses from outside the state.

## *SUB-CLAIM NO. 3* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA EXCULPATORY EVIDENCE. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, when his phone record(s) establishing alibi were allegedly and very mysteriously irretrievable from the date in question – just as both Defense witnesses on probation unlocatable! Mr. Ayo repeatedly informed Defense Counsel of the necessary importance to subpoena William Barrett, the cab driver's phone record(s). Records expressly and directly refuting the State's case in chief, to wit: that Defendant was committing an armed robbery at 9:14 am, running several blocks thereafter to Jefferson Highway. While William Barrett's phone record(s) would prove Defendant was calling the cab driver at the exact same time in another location, conclusively demonstrating it was impossible for Mr. Ayo to commit the crime charged. (R. 170, 190; See: Exhibit(s) "A" & "F", Attached).

In this case, Mr. Schmidt totally failed to conduct any pretrial investigation whatsoever. Otherwise had counsel investigated, subpoenaed and introduced the exculpatory phone record(s) into evidence. The State could not carry erroneous burden of proof, and jury acquit

Mr. Ayo in trial.

**SUB-CLAIM NO. 4** – DEFENSE COUNSEL GROSSLY FAILED TO VISIT OR CONSULT WITH CLIENT IN JAIL TO PREPARE ANY DEFENSE WHATSOEVER. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, he diligently wrote Defense Counsel over ten (10) prima facie letter(s) detailing an adequate defense, however, Mr. Schmidt neglected to return a single correspondence. (See: Exhibit(s) "A", "B" & "F", Attached).

Further, as evident from Sheriff Office record(s), Defendant had "not" seen nor spoke a single word with Mr. Schmidt in over four (4) month(s) prior to trial. Thus coercing Mr. Ayo to blindly take the stand in his own defense at trial without any, none – no preparation nor expectation of State's questioning. Defendant would not have otherwise testified.

**SUB-CLAIM NO. 5** – DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT WHEN TRIAL COURT VIOLATED MR. AYO'S RIGHT TO PARTICIPATE IN CHALLENGE AND IMPANELLING OF JURY. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

During the jury selection process, prospective juror(s) were called and examined in presence of Defendant, however, Mr. Ayo sat deafen at Defense table. While challenge between State and Defense Counsel and the actually impaneling of jury was performed electronically (in secrecy) at the bench, to wit: the electronic microphone is "not" stereophonically wired to

loudspeakers for courtroom listening, but hardwired directly to the stenographer's computer recording device. Thus effectively denying Mr. Ayo's constitutional right to (hear) and participate in the challenge and selection of his jury.[16]

Petitioner contends, Federal and Louisiana law provides that "a defendant charged with a felony **'shall'** be present ... at the calling, examination, **'challenging, impaneling,'** and swearing of the jury, and at any subsequent proceedings for the discharge of the jury." La. C.Cr.P. Art. 831(A)(3). Further Louisiana Constitutional Art. I § 17(A), provides in part that "[t]he accused **'shall'** have the right to **'full'** voir dire examination of prospective jurors and to challenge jurors peremptorily." *[Emphasis added]*.

The same is with the case sub judice, Mr. Ayo was "not" permitted to hear nor participate in "the challenging or selection" phase of his jury.

The Third Circuit Court of Appeal in *State v. Grogan*, rejected a similar contention of the Trial Court in which the Judge unpersuasively reasoned:

"He has [Defense Counsel] to tell him what these people are saying."

*State v. Grogan*, 723 So.2d 1049, 1050 (La. App 3rd Cir. 1998), violation of Defendant's right(s) was not harmless error although there was no evidence that Defendant was prejudiced, required reversal of conviction and new trial. *Id*.

But again, again, and again, Mr. Schmidt took absolutely no steps to object or defend Mr. Ayo's constitutional right(s) to participate in the challenge and impaneling of an impartial jury.

---

16 Mr. Ayo is additionally hearing impaired, disable (ADA) with "less" than half (80% of 200%) of his hearing.

**_SUB-CLAIM NO. 6_ – DEFENSE COUNSEL INEFFECTIVELY REFUSED TO OBJECT TO HIGHLY INFLAMMATORY RHETORIC IN OPENING ARGUMENTS. (SEE APPENDIX – F).**

### FACTS AND ARGUMENT IN SUPPORT

Throughout all proceeding(s) the high strung Prosecutor refused to cease from the use of pejorative comment(s) and prejudicial rhetoric outside the record in suppression hearing(s) and trial was no different. When from the onset of opening statement, the State instilled Mr. Ayo's guilt in the juries mind:

> "The defendant here armed robbed Mr. DeBroy."
> **(See Opening Statement)**

Not that the State "intends to prove" or that "the evidence will demonstrate." Shannon Swaim affectively informed the jury that Defendant **"did"** in fact rob and **"is"** guilty of the crime charged, absent introduction of any evidence. That the prosecution is **not** required to prove its case, but Mr. Ayo must prove his innocence.[17]

Petitioner contends, the Court's have long since held that such egregious remark(s) constitute "plain error" seriously affecting the fairness, integrity and public reputation of judicial proceedings. **_United States v. Young_**, 470 U.S. 1, 14-15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); **_U.S. v. Morris_**, 568 F.2d 396, 402 (5th Cir. 1978). An attorney properly may state "I believe the evidence has shown the defendant's guilt," **_U.S. v. Wayman_**, 510 F.2d 1020, 1028 (5th Cir. 1975); but may not state "I believe that the defendant is guilty."

Presumably, the Trial Judge would have taken corrective action and admonish jury if

---

17 Defendant observed Shannon Swaim, Assistant District Attorney, snort narcotics throughout all proceeding(s), hair sample (testing dating back seven (7) years) with FBI will prove positive results.

there had been an objection or motion for mistrial. *U.S. v. Herrera*, 531 F.2d 788, 789 (5th Cir.

1976); La. C.Cr.P. Art 770 & 771. But Defense Counsel blatantly "refused" to object,

defending Mr. Ayo's constitutional right(s) to a fair trial. (See: Exhibit "G", Attached).

## *SUB-CLAIM NO. 7* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO THE STATE CAPITALIZING ON PERJURY AND OTHER CRIME(S) EVIDENCE IN OPENING STATEMENTS. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, the State refuse to cease from the use of highly inflammatory

rhetoric. In open statements, the State instilled Mr. Ayo's guilty in the juries mind:

> "You will hear the broadcast of officers observing Mr. Ayo with a
> knife and chasing him into Orleans Parish ... you will learn the
> defendant is wanted in other states."
> (See Opening Statement).

Petitioner contends, as detailed in State's Exhibit(s) – 3 and in (Claim 2), the dispatch

transcripts make absolute "no" mention, not one transmission of "observing Mr. Ayo with a

knife and chasing him into Orleans Parish." (Compare Exhibit(s) "H" & "F", Attached).

The State knowingly and intentionally offered the perjured testimony to stop the

suppression of "illegally" seized evidence during an illegal detention, follow by an exploratory

search out of jurisdiction. Then improperly capitalized on the fraud on court in opening

statements and throughout trial. But Defense Counsel took no steps to object or motion for

mistrial, defending Mr. Ayo's constitutional right(s) to a fair trial.

78

*SUB-CLAIM NO. 8* – NOW ADDRESSING THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM(S) CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE APPENDIX – F).

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* At 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel ineffectively neglected to protect his constitutional right(s) to participate in the challenging and selection of an impartial jury. Coupled with Mr. Schmidt's blatant refusal to object or move for mistrial and admonishment of jury on not one, but "numerous" occasion(s) of repeated prosecutorial misconduct fell way below an objective standard of reasonable professional norms. *U.S. v. Herrera*, 531 F.2d 788, 789 (5th Cir. 1976); *Geiger v. Cain*, (05-0674) ___ F.Supp.2d ___ (E.D. La. 11-28-06), writ granted with respect to unconstitutional trial error due to improper remarks by prosecution, and ineffective assistance of counsel due to fail of the defense to move for mistrial as a result of those remarks.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Counsel's ineffectiveness of not objecting nor motion for mistrial when Louisiana Law would have granted one, prejudiced Defendant with a fundamentally unfair outcome of trial. La. C.Cr.P.

79

Art. 770 & 771.

But for Mr. Schmidt's unprofessional error(s), Mr. Ayo would have sat a fair jury, had an impartial trial without prejudicial remarks and perjury, and Defendant would have been acquitted. *State v. Grogan*, 723 So.2d 1049, 1050 (La. App. 3rd Cir. 1998), violating defendant's right(s) during jury selection, no showing of prejudice necessary to warrant a new trial. *Id.*

Therefore, the adjudication in *State v. Ayo*, (No. 12-KH-583) --- So.3d --- (La. App. 5th Cir. 8/24/12), *writ denied*, (No. 12-KH-2093) --- So.3d --- (La. 3/8/13), involves an unreasonable application of federal constitutional law, and there is an absence of available state corrective process.

9.  Pro Se Claim(s) 42, 43, 44 and 45 on Post Conviction Relief. (See Appendix – F).

## CLAIM NINE

**THE ADJUDICATION THAT THE CHIEF COURT REPORTER DID NOT COMMIT MATERIAL FRAUD ON COURT CONCEALING PROSECUTORIAL MISCONDUCT, AND TRIAL COURT COMMITTED FUNDAMENTAL ERROR REFUSING TO ADMONISH JURY, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The Fifth Circuit Court of Appeal erroneously alleged in *State v. Ayo*, 7 So.3d 85, 96 (La. App. 5th Cir. 2009), *cert. denied*, 28 So.3d 1006 (2010), in charging the jury at the conclusion of trial, the judge instructed the jury that statements and arguments made by the attorneys were not evidence, thus protecting against any prejudice that might have arisen. *Id.* citing *State v. Pardon*, 703 So.2d 50, 62 (La. App. 5th Cir. 1997).

Petitioner contends, the State court's decision regarding opening and closing arguments not evidence. When pertaining to cross-examination, the solicitation of evidence, and mistrial declared midtrial is an unreasonable application of law.

Moreover, contrary to the Fifth Circuit, the trial judge blatantly refused to admonish the jury on prosecutor misconduct. (R. 339). Thus, denying Defendant's Sixth and Fourteenth Amendment right(s) to a fair trial.

*SUB-CLAIM – 2*: **CHIEF COURT REPORTER COMMITTED MATERIAL FRAUD ON COURT CONCEALING PROSECUTORIAL MISCONDUCT. (SEE APPENDIX – F).**

Defendant motion the Fifth Circuit Court of Appeal for an "in camera" inspection of trial tape(s). After an outright (unethical shouting match) in presence of jury had been

81

"omitted" from the record as follows:

| ORIGINAL TRIAL | AS DEPICT IN TRANSCRIPT |
|---|---|
| **STATE:**<br>Q. So you were sentenced in 1994 to 17 years and now 13 years later you're not on parole? | Q. You're not on parole? |
| A. No, Ma'am | A. No, Ma'am |
| Q. He's a liar. | Q. At this time. *[ALTERED]* |
| A. I'm not lying. | A. <u>At this time.</u> *[ALTERED]* |
| **Ms. Swaim:**<br>Q. He's a liar. *[SCREAMING]*<br>    He's a liar. | *[OMITTED]*<br>*[OMITTED]* |
| **Defendant**<br>    You want to talk about liars. Let's talk about lying ass officers who conveniently said everything was in plain view. | *[OMITTED]* |
| **Mr. Schmidt:**<br>    Objection your Honor. May we approach? | *[OMITTED]* |

(R. 329-365)

Petitioner contends, in light of the fact Mr. Ayo has "never," never been on parole in any state or at any time. Mr Ayo certainly would not erroneously endorse the State's perjury of other crime(s) evidence stating:

> "No, Ma'am. [I'm not on parole] at this time."
> (R. 329-332).

The Fifth Circuit Court of Appeal committed fundamental error in *State v. Ayo*, 7. So.3d 85, 103 (La. App. 5th Cir. 2009), ordering John H. Andressen, Chief Court Reporter of [the same entity responsible for altering transcript], to listen to the relevant portion of transcript. *Id.* Naturally, Mr. Andressen cosign and denied the alteration despite twelve (12) jurors, amongst other officer(s) of court, "witnessing" the unethical shouting match.

82

Petitioner contends, Defense Counsel must be afforded fair opportunity to review tape(s) and cross-examine witnesses on highly prejudicial issue in an evidentiary hearing. (See: Exhibit "Q", Attached).

## _SUB-CLAIM NO. 3_ – PROSECUTOR MISCONDUCT OF IMPARTING VERITY TO THE TESTIMONY OF OFFICERS. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, the State committed plain error when the prosecutor gave the jury her own guarantee that Mr. Ayo "is lying" and the officers, her witnesses are telling the truth. _United States v. Herrera_, 531 F.2d 788, 789-90 (5th Cir. 1976), it was impermissible for the prosecutor to impart verity to the testimony of officers. _Id._ The same prosecutorial misconduct constituted an extremely prejudicial attack on the credibility of Mr. Ayo, the (only) defense witness to testify on his own behalf.   _United States v. Young_, 470 U.S. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); _U.S. v. Restrepo-Granda_, 575 F.2d 524, 529-30 (5th Cir. 1978), conviction obtain by such inflammatory rhetoric must be reversed as the prosecutor's remark(s) rose to a level of "plain error." _Id._ Thus requiring a new and constitutionally fair trial for defendant.

## _SUB-CLAIM NO. 4_ – TRIAL COURT COMMITTED PLAIN ERROR SUSTAINING OBJECTION AND RULED CONTRARY TO FLORIDA LAW.

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, he was coerced to testify in a desperate attempt to prove his

innocence due to Defense Counsel's failure to investigate local exculpatory witnesses. Defendant testified that he was previously convicted of manslaughter in 1994, which is enumerated as accidental death / culpable negligence under Florida Law. The same equivalence as DUI manslaughter – accidental death. The State objected, and Trial Court improperly sustained, precluding Defense line of questioning going to the credibility of the only Defense Witness.

Consequently the State improperly capitalized that it wasn't accidental, but murder. (R. 328-330).

Petitioner contends, Florida Statutory Law and his contracted plea agreement is clear:

<u>The Court</u>: Is there also a mandatory minimum?

<u>Mr. Strickler [State]</u>: No, your Honor, because under the statute, it has – manslaughter is not enumerated and it's not considered murder.

(See: Exhibit "R", Attached).

Defendant's contention is further demonstrated by the prosecutor's bewilderment and perjurious monologue, not questioning - monologue in presence of jury:

"He's a liar. He's a liar. He has a detainer for violating parole in Santa Rosa County, Florida." (R. 330).

When Public record(s) corroborate that Mr. Ayo is not and has "never" been on parole in any State, neither has Defendant suffered a murder conviction nor is he wanted for a parole violation.

Petitioner contends, the Trial Court first erred by sustaining objection, excluding testimonial evidence going to Mr. Ayo's credibility, violating substantial constitutional due

process right(s). *State v. Everidge*, 702 So.2d 680, 684 (La. 1997).

Further, after Defendant stipulated to the manslaughter conviction, further specific(s) relating to the prior offense were foreclosed to the prosecution. Moreover, testimony of a "non"-existent warrant for parole violation is nothing less than highly inflammatory question(s) of other crime(s) evidence put to Mr. Ayo. *State v. Pounds*, 359 So.2d 150, 153 (La. 1978).

The Trial Court committed fundamental error sustaining objection, contrary to Florida Law. Thus allowing jury to weigh Defendant's credibility with the erroneous assumption that Mr. Ayo is a wanted criminal with a prior murder conviction, as opposed to manslaughter by culpable negligence, denying Defendant's Sixth and Fourteenth Amendment right(s) to a fair trial.[18]

## *SUB-CLAIM NO. 5* – TRIAL COURT ABUSED JUDICIAL DISCRETION AND FUNDAMENTAL ERROR REFUSING TO ADMONISH JURY. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The amped up Prosecutor was totally out of control. Ms. Swaim would not cease her highly prejudicial "monologue," - monologue not questions, of an [un]available witness, not over objection during cross-examination:

> Ms. Swaim:
>
> Now you do know that [Mr. Ayo's] good bud, Theo Brickley.
>
> Mr. Schmidt:
>
> Objection, your Honor.
>
> Ms. Swaim:

---

18 DUI Manslaughter and the Mishandling of Firearms are responsible for countless "accidental" deaths yearly.

85

Just got guilty for like four (4) felonies, in Division "O".

Mr. Schmidt:

Objection, you Honor. May we approach.

(R. 335-338).

Petitioner contends, the Trial Court properly ruled that the Prosecutor did "not" have the right to go into Mr. Brickley's criminal history. But committed fundamental error "refusing" to admonish the jury on impropriety. (R. 339).

The Fourth Circuit addressed an identical situation in which the prosecutor's statement were prejudicial and completely irrelevant as statement was outside of any evidence adduced at trial. Thus the questioning was impermissible and trial court should have at least admonished the jury to disregard prosecutor's statement. *State v. Barber*, 617 So.2d 974, 976 (La. App. 4th Cir. 1993); La. C.E. Art. 403; La. C.Cr.P. Art. 770 & 771.

The Court's do not indicate that only the prosecuting attorney is worthy of blame. Indeed the Trial Judge had an obligation in the interest of fairness and justice to stop the Prosecutor from delivering a greatly prejudicial argument sua sponte. *U.S. v. Corona*, 551 F.2d 1386, 1391 n. 5 (5th Cir. 1977), once such statements are made, the damage is hard to undo.

In the case sub judice, Mr. Ayo was the (only) Defense Witness to testify. The State's repeated inflammatory remark(s) of calling Defendant a liar, ridiculing his ability to secure witnesses, and improper attack on character of an unavailable witness, all in the presence of jury, absent admonishment of jury, the "cumulative" effect of numerou(s) improprieties denied Mr. Ayo's constitutional right to a fair and impartial trial. Thus Trial Judge committed fundamental error additionally denying mistrial. *U.S. v. Garza*, 608 F.2d 659, 665 (5th Cir. 1978).

86

Therefore, the opinion in *State v. Ayo*, 7, So.3d 85, 95 (La. App. 5th Cir. 2009), *cert. denied*, 28 So.3d 1006 (La. 2010), charging jury at conclusion of trial ... protect[s] against any prejudice. *Id.* The decision was based on an unreasonable determination of facts in light of the evidence presented, and, resulted in a decision that involves an unreasonable application of Federal constitutional law. *U.S. v. Herrera*, 531 F.2d 788, 789-90 (5th Cir. 1976), it was impermissible for prosecutor to impart verity to testimony of officers. See also *United States v. Young*, 470 U.S. 1, 19, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *U.S. v. Restrepo-Granda*, 575 F.2d 524, 529-30 (5th Cir. 1978), conviction obtain by such inflammatory rhetoric rose to level of "plain error" and must be reversed. *Id.* Thus there is an absence of available State corrective process and this Court should issue the writ.

10. Pro Se Claim(s) 46, 47, 48, 49, 50, 51 and 52 raised on Post Conviction Relief. (See

Appendix – F).

## CLAIM TEN

THE ADJUDICATION THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR NEGLECTING TO ARGUE LAW(S) AGAINST BREACH OF PRETRIAL ARGUMENT AND INTRODUCTION OF ILLEGAL EVIDENCE INVOLVED AN UNREASONABLE DETERMINATION OF FACTS AND AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends the trial court erroneously alleged Claim(s) 46, 47, 48, 49, 50, 51 and

52 were all raised on Direct Appeal. That is simply not true. See *State v. Ayo*, 7 So.3d 85, 96

(La. App. 5th Cir. 2009), *cert. denied*, 28 So.3d 1006 (2010). Thus, there is an absence of

available State corrective process.

The State disclosed a letter to the Defense that Mr. Ayo wrote to William Barrett, the cab

driver in the instant case. The letter contain highly prejudicial information of [un]related other

crime(s). Thus the Prosecutor stipulated pretrial not to introduce the evidence, however,

"breached" that agreement mid-trial and the Court admitted highly prejudicial and

unconstitutional evidence as State's Exhibit – 21. (R. 345-349; See: Exhibit "S", Attached).

Petitioner contends, evidence of criminal offenses other than the offense being tried is

inadmissible as substantive evidence because of the substantial risk of grave prejudice. *State v.*

*McDermitt*, 406 So.2d 195, 200 (La. 1981); La. C.E. Art. 404(B)(1). Though a (second)

suppression hearing was conducted "less" than two (2) weeks before trial. Defense Counsel

ineffectively neglected to argue the suppression of other crime(s) evidence when Louisiana

Law would have automatically granted motion. (See: Exhibit "J", Attached).

The United States Supreme Court recently addressed a similar issue in Louisiana, *Montejo v. Louisiana*, 556 U.S. ___, 129 S.Ct. 2079, 2091-92, 173 L.Ed.2d 955 (2009), holding that remand was required to determine whether it required suppression of the letter defendant wrote victim's widow. *Id.* Therefore the trial court committed fundamental error not conducting an evidentiary hearing to determine whether it required a new trial.

## *SUB-CLAIM NO. 2* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO MOTION TO REDACT IRRELEVANT PORTION(S) OF HIGHLY PREJUDICIAL EVIDENCE. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The Prosecutor stipulated pretrial not to introduce the letter Defendant wrote to William Barrett which made mention of Mr. Ayo's previous incarceration in state prison and posting bond in another state. Ms. Swaim, however, breached that agreement mid-trial and the Trial Court erroneously admitted a barrage of evidence unrelated to the trial at hand as State's Exhibit – 21. (R. 345-349; See: Exhibit "S", Attached).

Petitioner contends, the requirements of *State v. Prieur*, 277 So.2d 126, 128 (La. 1973), are Defendant's constitutional safeguards against the introduction of irrelevant and prejudicial information. *Id.* Portion(s) of the letter exceeded the permissible scope of cross-examination or rebuttal evidence, and its probative value greatly outweighed by its prejudicial value. *State v. Constantine*, 364 So.2d 1011, 1014 (La. 1978); *State v. Schwartz*, 354 So.2d 1332, 1333-34 (La. 1978), it was reversible error to allow state to present highly prejudicial evidence of

89

unrelated other crime(s). *Id.*

Nevertheless, Defense Counsel blatantly refuse to motion to redact the irrelevant portion(s) of other crime(s) evidence, neglecting to defend Mr. Ayo's constitutional right(s) to a fair trial. (See: Exhibit "G", Attached).

**SUB-CLAIM NO. 3** – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE BREACH OF PRETRIAL AGREEMENT, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S). (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

The Prosecutor stipulated pretrial not to introduce the letter Defendant wrote William Barrett into evidence. The State, however, breached that agreement mid-trial and the Trial Court admitted State's Exhibit – 21. (R. 345-349; See: Exhibit G & S, Attached).

Petitioner contends, the District Attorney did "not" motion to modify stipulation nor reserve the right to impeach Defendant with the letter if Mr. Ayo took the stand. *State v. Fallon*, 290 So.2d 273, 278 (La. 1974); La. C.Cr.P. Art. 921. But Defense Counsel ineffectively failed to argue a single authority on State's breach of agreement, absent reservation, defending Mr. Ayo's constitutional right(s) to a fair trial. *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994), hearing was required as to due process claim relating to claim of unfair surprise. *Id.* Thus trial court committed fundamental error not conducting an evidentiary hearing on Defendant's Fourteenth Amendment claim.

90

*SUB-CLAIM NO. 4* – DEFENSE COUNSEL INEFFECTIVELY MISLEAD DEFENDANT WITH FALSE ADVICE. (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Defense Counsel never met with Mr. Ayo in "over" four (4) month(s) prior to trial, so Defendant possessed no knowledge of witnesses who would or would not testify. When mid-trial Mr. Schmidt advised:

> "I want a nurse from the jail to weigh you, right now. 'We' will put her on the stand and demonstrate you are much heavier than Mr. DeBroy's description."

Petitioner contends, to his astonishment nurse practitioner Susan Lee was "not" a defense, but a State witness. Thus Defense Counsel had Mr. Ayo so ineffectively [un]informed regarding his case. Defendant had no idea Counsel's advice was "false" until after the State announced its "last" witness, Susan Lee. (R. 299).Conclusively demonstrating that defense counsel was acting in collusion with the State.

*SUB-CLAIM NO. 5* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ILLEGAL EVIDENCE. (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, assuming arguendo the State did not violate *Brady* rule(s) of discovery.[19] Nurse Susan Lee "illegally" provided the State with Mr. Ayo's "personal" medical record(s), absent Defendant's consent nor through proper judicial subpoena. Record(s) the State unconstitutionally entered into evidence. (R. 289-303).

---

19  Defense Counsel never met with nor provided Mr. Ayo with copy of discovery.

But Defense Counsel grossly refused to defend Mr. Ayo's Federal Constitutional right(s) under the H.I.P.A.A. Privacy Act, ineffectively neglecting to argue a single word on the illegally seized evidence. (See: Exhibit "J", Attached).

**_SUB-CLAIM NO. 6_ – DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE LAW(S) ON PERJURY FRAUD   ON COURT, OR ABUSE OF JUDICIAL DISCRETION WHEN TESTIMONY EXCEEDED PERMISSIBLE SCOPE OF EVIDENCE. (SEE APPENDIX – F).**

### FACTS AND ARGUMENT IN SUPPORT

The State elicit testimonial evidence from Nurse Susan Lee, custodian of Medical Record(s) and Superior of Health Care of Inmates at the Jefferson Parish Jail. (R. 299-300). Over hearsay objection, the Trial Court ordered the admission of record(s) into evidence for the sole purpose;

> "In showing the weight of this defendant when he was booked ..."
> (R. 302; State's Exhibit – 20).

Petitioner contends, the State was questioned of her illegality of possessing private record(s), the prosecutor perjuriously contended:

> "[It's] not ... personal hospital records. It's a mandatory physical assessment ..."
> (R. 301).

The record(s) introduced into evidence were not that of a mandatory evaluation upon Mr. Ayo's booking January 7, 2007. Nurse Lee provided the following hearsay testimony:

> "That physical assessment was done February 24, 2007. No, I did

92

'not' conduct the weighing or anything. It say's, he was 181 pounds."

(R. 302-303). *[Emphasis added]*.

Hence, as a result of the State's perjury and fraud on Court, the judge impermissibly introduced Mr. Ayo's personal medical record(s) of an assessment from his (sick-call) visit while in jail, conducted one and one-half (1 ½) month(s) "**after**" booking. *U.S. v. Mays*, 872 F.2d 582, 587-88 (5th Cir. 1989). Defense Counsel ineffectively took absolutely no steps to argue suppression of [fraud]ulent booking record(s) nor object to the highly prejudicial testimonial evidence exceeding permissible scope the Judge allowed. La. C.E. Art. 403. (See: Exhibit "J", Attached).

## *SUB-CLAIM NO. 7* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO HIGHLY INFLAMMATORY RHETORIC OF BEING IN JAIL. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The amped up District Attorney first bewitched the jury with an improper monologue of Defendant being wanted for a "non" existing parole violation. (R. 330).

Next the Prosecutor introduced the letter Mr. Ayo wrote to the cab driver making highly prejudicial reference(s) to Defendant's prior imprisonment, and, posting bond in another state. (r. 345-349, See: Exhibit "S", Attached).

Petitioner contends, then the State elicited highly inflammatory testimony from Nurse Lee through misleading question(s). Testifying that she is the custodian of medical record(s) and oversees the health care of "inmates at the Jefferson Parish **jail**." Additionally testifying of

93

Mr. Ayo's personal medical appointment in the "jail" one and on-half (1 ½) month(s) "after his arrest." (R. 299-303).

Defense Counsel grossly neglected to object or motion for mistrial, to not one, but three repeated reference(s) to Defendant being "in jail"; failing to defend Mr. Ayo's constitutional due process right(s) to a fair trial. *State v. Barber*, 617 So.2d 974, 976-77 (La. App. 4th Cir. 1993); La. C.E. Art. 403 & 404(A)(1); La. C.Cr.P. Art. 770 & 771.


*SUB-CLAIM NO. 8* – NOW ADDRESSING THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM(S) CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE APPENDIX – F).

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the First-Prong of *Strickland*: Petitioner contends, Defense Counsel's failure to move for suppression of evidence, his failure to argue law(s) on breach of agreement, and his further failure to object to hearsay testimony exceeding the scope of evidence. *State v. Prieur*, 277 So.2d 126, 128 (La. 1973). Coupled with Mr. Schmidt's negligence to motion for mistrial to fraud on the court and repeated reference(s) to Mr. Ayo being in jail, fell way below

94

an objective standard of reasonable professional norms. *U.S. v. Corona*, 551 F.2d 1386, 1391

N.5 (5th Cir. 1997), once such statements are made, the damage is hard to undue. *Id.*


In satisfying the <u>Second-Prong</u> of *Strickland*: Petitioner contends that but for Defense

Counsel's unprofessional error(s) and blatant "refusal" to defend his client's constitutional

right(s), motion to suppress or redact irrelevant portions of highly inflammatory evidence. See

*Montejo v. Louisiana*, 556 U.S. ___, 129 S.Ct. 2079, 2091-92, 173 L.Ed.2d 955 (2009),

remand was required to determine whether it required suppression of letter defendant wrote.

*Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994) as to due process claim relating to claim of

unfair surprise, it was reversible error to present prejudicial evidence of unrelated other

crime(s). La. C.E. Art. 403.

Therefore, had defense counsel acted as counsel guaranteed by the Sixth and Fourteenth

Amendment. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984). Mr. Ayo never would have testified in his own defense exposing and defending against

prejudicial portions of his criminal history improperly admitted into evidence by letter he

wrote, but the State agreed not to introduce. Thus, had defense counsel performed his required

duty, the jury would have acquit Defendant for lack of evidence and man of good character.

95

11. Pro Se Claim(s) 53, 54, 55, 56, 58, 59 and 60 raised on Post Conviction Relief. (See

Appendix – F).

### CLAIM ELEVEN

THE ADJUDICATION THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE FOR
NEGLECTING TO ARGUE LAW(S) AGAINST OBSTRUCTION OF JUSTICE, ABUSE
OF JUDICIAL DISCRETION, AND JUROR'S SLEEPING INVOLVED AN
UNREASONABLE DETERMINATION OF FACTS AND AN UNREASONABLE
APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S SIXTH, EIGHTH
AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

The cab driver, William (Bill) Barrett who was present for the illegally investigative

stop of Mr. Ayo out of jurisdiction, the unlawful exculpatory search, and his arrest thereafter.

(R. 116). Defense Investigator, Ronnie Montgomery informed Defendant:

> "Your friend William Barrett was arrested. He worked a plea
> agreement with the State, turned your letter(s) over and agreed to
> testify against you for probation or something."
> (See: Exhibit "B", Attached).

Petitioner contends, cross-examination is the primary means by which to test the

truthfulness of testimony and has traditionally been used to impeach or discredit witnesses.

*State v. Robinson*, 817 So. 2D 1131, 1135 (La. 2002); La. Const. Art I § 16. Directed toward

revealing possible bias, prejudice or ulterior motives of the witness as they may relate directly

to issues or personalities in the case at hand. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105,

1110, 39 L.Ed.2d 347 (1974), the exposure of a witness' motivation in testifying is a proper and

important function of the constitutionally protected right of cross-examination; *Santobello v.*

*New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *U.S. v. Sanfilippo*, 564

F.2d 176, 178 (5th Cir. 1977), witness refusal to disclose promise of immunity in another case which would have affected his credibility required reversal. *Id.*

But Defense Counsel blatantly refused to impeach State's witness William Barrett as to what he was promised, what was his motive to testify and commit perjury against Mr. Ayo. (R. 189-195; See: Exhibit(s) "E" & "G", Attached).

## *SUB-CLAIM NO. 2* – DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH ON STATE'S OBSTRUCTION OF JUSTICE OF TAMPERING WITH WITNESSES. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

The cab driver, William (Bill) Barrett witnessed the illegal investigative stop of Mr. Ayo in Orleans Parish by Jefferson Parish Officials. The unlawful exploratory search of Defendant's inner pockets and travel bag, absent consent, and his arrest that followed this illegal exploration. (R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Petitioner contends, he remained in contact with Mr. Barrett who was always very lucid of the fact(s). During trial, however, State's witness Barrett committed perjury provided the Court with a fictitious address and, developed "selective amnesia" and "out-right stupidity" upon cross-examination by defense only. (R. 189-195). Mr. Ayo brought the fraud to Defense Counsel's attention, demanding he questioned the conspicuous behavior. *State v. Wilson*, 394 So.2d 254, 258 (La. 1981), trial court's refusal to order witness to answer defense counsel's questions, violated Defendant's right to compel attendance of witness and to present a defense as guaranteed by State and Federal Constitution. See *Kirkpatrick v. Whitley*, 992 F.2d 491, 495

(5th Cir. 1993), (remand was required to determine whether prosecutor presented falsified evidence. *Id.*) But Mr. Schmidt refuse to defend Mr. Ayo's constitutional right(s), exposing the Prosecutor's obstruction of justice. (see: Exhibit(s) E & G, Attached).

In the case sub judice, Mr. Barrett's truthful testimony would unveil perjury on material issue(s), such as, the highly illegal investigative detention and exploratory search out of jurisdiction. Thus requiring suppression of unconstitutional seized evidence. But Defense Counsel did not subpoena Mr. Barrett for either one of two (2) suppression hearing(s), and further ineffectively refuse to impeach witness when opportunity arose at trial. *Kirkpatrick v. Whitley*, 992 F.2d 491, 495 (5th Cir. 1993), remand was required to determine whether prosecutor presented falsified evidence, and new trial is necessary when disclosure of the truth would affect judgment of jury. *U.S. v. Anderson*, 574 F.2d 1347, 1355-56 (5th Cir. 1978).

## SUB-CLAIM NO. 3 – THE PROSECUTOR FELONIOUSLY TAMPERED WITH DEFENSE WITNESS. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Defense witness, Theo Brickley would corroborate Defendant's alibi and will testify:

1.) "[He] evaded Defense subpoena to appear at Mr. Ayo's trial because Assistant District Attorney, Shannon Swaim informed him: 'Ayo is trying to cooperate with the State Police and have you arrested for drug trafficking.' " [20]

2.) "Ms. Swaim also agreed to a lenient sentence if I did not testify on Mr. Ayo's behalf.

3.) "But before his trial, Ms. Swaim did not trust that I would not appear, and had my

---

20 Officer of Court aiding and abetting criminal activity and obstructing justice is felony malfeasance.

probation officer issue a violation warrant for no reason. She made sure I did not appear

for his trial, knowing I would not show – up in court with an active warrant."

(See: Exhibit "T", Attached).

Petitioner contends, the Prosecutor obstructed justice and tampered with Defense

Witnesses using improper threats of harsh sentence(s), coercion, and suborned perjury from her

duties. Affectively suppressing exculpatory material testimonial evidence of Mr. Brickley

which directly refuted the State's case in chief. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th

Cir. 1993), such a corruption of the truth-seeking process would strike at the confidence of the

conviction and sentence. *Id.*

Therefore requiring an evidentiary hearing to resolve such serious claim(s), and further

determine whether probable cause exist warranting Shannon Swaim's arrest.

*SUB-CLAIM NO. 4* – DEFENSE COUNSEL INEFFECTIVELY "REFUSED" TO
OBJECT AND MAKE RECORD OF NUMEROU(S) ILLEGALITIES. (SEE APPENDIX
– F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, prior to trial he provided Defense Counsel with a chronological list

of prima facie objection(s) detailing numerou(s) illegalities, ranging from perjured testimony in

suppression hearing(s) to "local" exculpatory witnesses on supervised probation. That

allegedly could not be located for investigation and/or attendance. But Mr. Schmidt blatantly

"refused" to object, defend against and preserving Mr. Ayo's constitutional right(s) for appeal.

(See: Exhibit "U", Attached).

_SUB-CLAIM NO. 5_ – DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT

TO ABUSE OF JUDICIAL DISCRETION. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Upon conclusion of the first day of trial, the Judge ordered the jury to be in Court the next morning:

> "I would like everyone here around 8:00 o'clock, no later than 8:30 [a.m.] so we can get started on time."

On the second **night** of trial, November 28, 2007, it was "after" 8:30 p.m. and closing arguments, charging of jury with instructions, nor had the evidence yet been published or deliberation commenced.

Petitioner contends, half the jury panel expressed the need to stop. (R. 372-373). Mr. Ayo further brought to Defense Counsel's attention the aggravation and fatigue displayed by the jury, with at least two (2) juror's falling asleep during testimony of (only) Defense witness, Mr. Ayo.

But Mr. Schmidt ineffectively "refuse" to object or motion for recess until the next day, ineffectively failing to challenge the Trial Court's abuse of discretion. _U.S. v. Giraldi_, 86 F.3d 1368, 1374 (5th Cir 1996). Defense Counsel neglected to defend Mr. Ayo's constitutional due process right(s) to a fair trial. When juror's left their respective homes and had been in Court an absurd sixteen (16) hour(s).[21]  Now pressured by the Trial Court to reach a speedy and fundamentally unjust verdict at 9:52 p.m., the same night. (See: Exhibit "V", Attached).

---

21 Calculated on an average person awakening "no less" than one (1) hour, at 6:00 am, before leaving home at 7:00 am. Allowing for traffic to timely arrive at Court for 8:00 am.

_SUB-CLAIM NO. 6_ – DEFENSE COUNSEL INEFFECTIVELY "REFUSE" TO MOTION FOR MISTRIAL AFTER AT LEAST TWO (2) JURORS' FELL ASLEEP. (SEE APPENDIX – F).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, half the jury panel expressed the need to stop. (R. 372-373). Mr. Ayo further brought to Defense Counsel's attention the aggravation and fatigue display by the jury with at least two (2) jurors' falling asleep during testimony of (only) Defense witness, Mr. Ayo. Thus resulting in fact finders hearing only testimony of State witnesses.

But Mr. Schmidt blatantly "refused" to motion for mistrial and defend Mr. Ayo's constitutional right(s) to a fair and just trial, when major portion(s) of the defense truth-seeking process directly refuting the State's case in chief went unheard by numerou(s) sleeping juror's. (See: Exhibit "V", Attached).

Noteworthy is the fact that Mr. Ayo was prohibited from objecting to any violation(s) of law during trial, reprimanded by Trial Judge that "If you have anything to say, say it through your attorney." (R. 296). But when a Defendant did so defense counsel "refuse" to object and make record preserving violation for appeal.


_SUB-CLAIM NO. 7_ – DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO HIGHLY INFLAMMATORY RHETORIC IN CLOSING ARGUMENTS, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S). (SEE APPENDIX – F).

## FACTS AND ARGUMENT IN SUPPORT

Throughout all proceeding(s) the amped up Prosecutor refused to cease from the use of perjurative comment(s) and prejudicial rhetoric outside the record. When from the onset of trial through closing statements. The State capitalized on perjured testimony and material fraud on Court:

"You heard how a Lieutenant Detective broadcast, how he observed Mr. Ayo get into a cab with a large knife right around the corner from the robbery, and how the officers chased but lost sight of the vehicle as they entered Orleans Parish." [22]  (See Closing Arguments). When "not" a single word of the aforementioned monologue is true, [un]substantiated by the CFS Dispatch transcripts and State's Exhibit- 3. Thus a textbook case of "known" perjury. (See: Exhibit "I", Attached).

Petitioner contends, the court's have long held that such egregious remark(s) constitute "plain error" seriously affecting the fairness, integrity and reputation of judicial proceedings. *United States v. Young*, 470 U.S. 1, 14-15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). And presumably, the Trial Judge would have taken corrective action and admonished jury if there had been an objection or, granted motion for mistrial had Counsel performed his duty. *U.S. v. Herrera*, 531 F.2d 788, 789 (5ᵗʰ Cir. 1976); La. C.Cr.P. Arts. 770 & 771.

But Defense Counsel simply "refuse" to object, defending Mr. Ayo's constitutional right(s) to a fair trial.

---

22 Trial Court denied Mr. Ayo's motion to transcribe closing arguments in March 2010.

*SUB-CLAIM NO. 8* – NOW THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM(S) AS CONSOLIDATED FOR CONVENIENCE OF COURT. (SEE APPENDIX – F).

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.
>
> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland* Petitioner contends, Defense Counsel's repeated lack of performance on over "sixty", (sixty (60) claim(s)) is evident of nothing less than his acting in collusion with the State to further prosecution, and judicial resources would best be served by simply asking Mr. Schmidt "exactly what did you do to defend your client, Mr. Ayo."

Nevertheless, may it please the Court: Defense Counsel's failure to expose witness plea agreement with the State and impeach his motivation to testify and commit perjury. Coupled with Mr. Schmidt's further failure to motion for mistrial when the Prosecutor tampered with witnesses, and jurors' sleeping through Defense case in chief fell way below an objective standard of reasonable professional norms. *Kirkpatrick v. Whitley*, 992 F.2d 491, 495 (5th Cir. 1993), remand was required to determine whether prosecutor presented falsified evidence. *Id.*

In satisfying the **Second–Prong** of *Strickland* Petitioner contends, but for Defense

103

Counsel's unprofessional error(s) and blatant "refusal" to defend his constitutional right(s) to a fair trial, absent other crime(s) evidence and exposed the State's perjury, tampering with defense witnesses and fraud on the court. See *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993), such a corruption of the truth-seeking process would strike at the confidence of the conviction. *Id.*

Therefore had defense counsel acted as counsel guaranteed by the Sixth and Fourteenth Amendment and argued against the aforementioned corruption(s) during trial. The Defendant would "not" have testified nor jury learned of his criminal history, believed the truthful version of facts acquitting Mr. Ayo. Thus, satisfying the prejudice prong of *Strickland*.

12. Pro Se Claim(s) 61 raised on Post Conviction Relief. (See Appendix – F).

## CLAIM TWELVE

THE ADJUDICATION THAT DEFENSE COUNSEL DID NOT RENDER A CUMULATIVE AMOUNT OF INEFFECTIVE ASSISTANCE INVOLVED AN UNREASONABLE DETERMINATION OF FACTS AND AN UNREASONABLE APPLICATION OF FEDERAL LAW, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends the trial court erroneously alleged Claim 61 was adjudicated on Direct Appeal. That is simply not true. See *State v. Ayo*, 7 So.3d 85, 96 (La. App. 5th Cir. 2009), *cert. denied*, 28 So.3d 1006 (2010). Thus, there is an absence of available State corrective process.

In the interest of judicial economy Defendant need not methodically reiterate the preceding "sixty", sixty (60) inexcusable and unprofessional error(s) of Defense Counsel to demonstrate it prejudiced the entire truth-seeking process of trial. Thus resulting in an unjust conviction that violated due process of equal protection of law.

The Federal Court's in *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992), developed a three-prong standard to evaluate whether relief should be granted for cumulative error(s) in the conduct of a State trial. The Defendant must show:

1.) The individual error(s) involve matter of constitutional dimension;

2.) The error(s) are not procedurally barred;

3.) And the error(s) so inflected the entire trial, that the resulting conviction violates due process.

*Id.* at 1454.

In satisfying the **First-Prong** of *Derden*, Petitioner contends, with the cumulative effect of so many error(s) it would be nothing less than a waste of judicial resources to engage in an argument that at least sixty (60) or more error(s) did not surpass the harmless error test of *Chapman v. California*, 386 U.S. 18, 25-26, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The State courts, however, still rationalized that Mr. Ayo received his Sixth and Fourteenth Amendment Constitutional Due Process right(s) to effective assistance of counsel and had a fair trial. Such contention is absurd, considering that Defense Counsel blatant refuse to defend Mr. Ayo in a nutshell:

1. Mr. Schmidt did not investigate nor subpoena two (2) "local" exculpatory alibi witnesses easily locatable through probation office;

2. Refuse to impeach material perjured testimony from record;

3. Failed to subpoena third material witness (cab driver) for suppression hearing(s) who witnesses illegalities;

4. Failed to subpoena Defense Investigator;

5. Refuse to subpoena exculpatory evidence (police video);

6. Refuse to introduce exculpatory evidence such as, affidavit of absent exculpatory witness and, Western Union receipt justified Defendant's money;

7. Refuse to argue a single legal authority in "suppression" hearing;

8. Failed to subpoena a single witness, including the arresting officer at (second) suppression hearing;

9. Never visited Defendant for four (4) month(s) leading up to trial;

10. Failed to object or motion for mistrial to countless known perjured testimony;

11. Countless prejudicial remark(s) of other crime(s) evidence in presence of jury;

12. Refuse to motion for mistrial when State obstructed justice with suggestive identification at jail door;

13. Counsel failed to and refuse to motion for mistrial when two juror(s) were sleeping during Defense case in chief.

(See: Exhibit(s) "A", "B", "C", "F", "G" & "J", Attached).

Just to name a few! To ridiculously argue just these thirteen (13) error(s) are not of constitutional dimension to a fair trial would be frivolous.


In satisfying the **Second-Prong** of *Derden*: Petitioner contends, the Louisiana Supreme Court denied Certiorari Review from Direct Appeal March 5, 2010. His post conviction was filed on August 6, 2010. Thus Mr. Ayo is well within the two (2) year statute of limitation to file post-conviction relief as defined in La. C.Cr.P. Art. 930.8, and Defendant's cumulative error claim is not procedurally barred for review.


In satisfying the **Third-Prong** of *Derden*: Petitioner contends, Defense Counsel's material error(s) so infected the entire truth-seeking process of trial, they resulted in the denial of due process and a fundamentally unjust conviction of an innocent construction worker, in so much as:

1. The first defense witness, Theo Brickley, would have provided exculpatory testimony that Mr. Ayo was in Orleans Parish with him at the time of Mr. DeBroy's robbery;

2. The second witness, Dave, would have provided additional exculpatory testimony that

he furnished Mr. Ayo with the work knife and zip-up windbreaker for work "after" the crime in question;

3. Mr. Schmidt, acting in collusion with prosecution, refuse to argue that (any) money taken from jail property room and placed into evidence is not material;

4. Counsel blatantly refuse to argue a single authority at suppression hearing, condoning the introduction of incriminating looking evidence "illegally" seized without warrant, and, out of lawful jurisdiction;

5. Mr. Schmidt's outright refusal to object or motion for mistrial to repeated perjury;

6. Counsel refuse to motion for mistrial of unlawful suggestive viewing of Mr. Ayo at jail door; and

7. Refuse to motion for mistrial when two (2) jurors were sleeping, etc., etc....

(See: Exhibit(s) "A", "B", "C", "F", "G" & "J", Attached).

Petitioner contends, these seven of sixty (60) or more Defense Counsel error(s) standing alone so inflected the entire trial, as (all) alleged evidence would have been suppressed as a matter of law. The "plain error" denied Mr. Ayo's Sixth and Fourteenth Amendment due process right(s) to a fair and impartial trial resulting in a fundamentally unjust conviction of actually innocent man on his way to work. Thus satisfying all three-prong(s) of *Derden*.

Petitioner has conclusively demonstrated that the justice of his conviction was rendered unreliable by the breakdown in the adversary testing process caused by numerous deficiencies in counsel's assistance. See *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065 (1984), citing *Powell v. Alabama*, 287 U.S. at 68-69, 53 S.Ct. at 63-64.

The Court of Appeals and Louisiana Supreme Court further erroneously interpreted and

misapplied constitutional law(s) of this State and the United States on Direct Appeal and Post

Conviction, then again and again on review therefrom, and the fraudulent decision will cause

material injustice significantly affecting the public interest. The State court's have so far

departed from proper judicial proceedings, abused its powers, and sanctioned such a departure

and abuse by the lower court, as to call for an exercise of this Court's authority to issue the

writ.

## CONCLUSION OF RELIEF

WHEREFORE, Petitioner respectfully moves this Honorable Court to issue the writ as

follows:

1. In light of the absence of available State corrective process, retain jurisdiction and

   vacate Mr. Ayo's judgment of conviction and sentence;

2. Order a new trial be held within one hundred and twenty (120) days;

3. Or, IN THE ALTERNATIVE, Order an evidentiary hearing be held on specific time and

   date.

This I forever pray.

RESPECTFULLY SUBMITTED BY:

_____ 5.31.23

GLENN CHARLES AYO #531823

*[PRO SE PETITIONER]*

109

## AFFIDAVIT OF VERIFICATION

Personally appeared before me Glenn C. Ayo #531823, who after producing a pictured

State's I.D. was duly sworn, and hereby declare under penalty of perjury that I read the

foregoing **PETITION FOR WRIT OF HABEAS CORPUS** and the fact(s) herein are all true,

correct and complete to the best of my knowledge.

SWORN this ___20th___ day of ___MAY___, 2013.

_____
*NOTARY PUBLIC* 92381

## CERTIFICATE OF SERVICE

I, *GLENN C. AYO #531823*, hereby certify that a true copy of petition and

memorandum has been furnished by pre-paid U.S. Postal to:

**DISTRICT ATTORNEY'S OFFICE
200 DERBIGNY STREET
GRETNA, LOUISIANA 70053**

Mailed this ___20th___ day of ___MAY___, 2013.

_____ 531823

GLENN CHARLES AYO #531823
LOUISIANA STATE PRISON
ANGOLA, LOUISIANA 70712
*[PRO SE PETITIONER]*

110