RECEIVED

MAY 23 2013

Legal Programs Department

SCANNED at LSP and Emailed
5·23·13 by  fm  .  ____ pages
date        initials   No.

# EXHIBIT- A

EXHIBIT - A1

INDIGENT DEFENDER BOARD (IDB)                    FEBRUARY 14, 2007
MARQUITA NABUN, ESQ.
848  2ND STREET                              CASE NO. 07-369, 08-370
GRETNA, LA. 70053

RE: COPY OF REPORT(S), ALIBI DEFENSE,
    IDB INVESTIGATOR, HEARING FEB. 22, 2007

    MA'AM,

1.   WE HAVE A HEARING NEXT WEEK FOR MOTIONS. PREVIOUSLY,
I WROTE YOU TWICE, BUT FAILED TO MEET YOU TO DATE;

2.   PLEASE PROVIDE A COPY OF ALL "SUPPLEMENTAL" REPORTS;

3.   INITIAL POLICE REPORT SUPPORTS MY ALIBI DEFENSE, BUT
NEED TO SPEAK WITH YOU OR YOUR INVESTIGATOR BEFORE
THEY MOVE IN ORDER TO SUPPORT THE SAME.

4.   WITH ALL DUE RESPECT, WITHOUT INTERVIEWING / SPEAKING
WITH ME FIRST, HOW CAN YOU EFFECTIVELY MOTION TO SUPPRESS
ANYTHING, ABSENT FACTUAL IMPUT FROM DEFENDANT?

5.   AND, I WANT TO COOPERATE WITH THE SHERIFF'S OFFICE AND
DISTRICT ATTORNEY, BUT NEED YOUR ASSISTANCE.

    TRUSTING YOU CAN BE OF ASSISTANCE AND WILL RECEIVE
A PROMPT RESPONSE, I THANK YOU IN ADVANCE.

                              RESPECTFULLY,

                              GLENN C. AYO 806645300
                              JPCC, P.O. BOX, 388
                              GRETNA, LA. 70054

                    1 OF 4

EXHIBIT - A2

INDIGENT DEFENDER BOARD (IDB)                    MARCH 14, 2007

MARGUITA NARWIN, ESQ.

848 2nd STREET                                   CASE NO. 07-369, 07-370

GRETNA, LA. 70053

                                                 DIVISION:   M

RE: DOCUMENTS TO AID IN DEFENSE,

    MOTION HEARING MARCH 15, 2007

        MA'AM,

1.    PLEASE PROVIDE ME WITH COPY OF "ALL SUPPLEMENTAL REPORT(S)
AND STATEMENT(S)", SO I MAY ADEQUATELY ASSIST IN MY DEFENSE.
PLEASE NOTE:  I WAS A LAW CLERK FOR ELEVEN (11) YEARS AND CAN BE OF
      COMPETENT ASSISTANCE IN PREPARATION OF MY DEFENSE.

2.    THE ENTIRE DEFENSE HINGES ON ALIBI, LACK OF JURISDICTION,
AND LACK OF REASONABLE AND/OR PROBABLE CAUSE TO "SEIZE
MY PERSON". THUS THE FOLLOWING DOCUMENTS ARE ESSENTIAL:
A) 911 TRANSCRIPT;
B) JP SHERIFF'S OFFICE "BOLO ALERT" (TRANSCRIPT OF TRANSMISSION(S));
C) VIDEO FROM PATROL CAR;
D) OR VIDEO FROM STORE — BOTH CORROBORATE NO CLOSE OR
HOT PURSUIT AND, RESISTING "UNLAWFUL" ARREST.

3.    WITH ALL DUE RESPECT, THE "SECOND" MOTION HEARING IS TOMORROW
AND HAVE AN ALIBI DEFENSE, YET HAVE NOT MET YOU OR YOUR
INVESTIGATOR TO DATE IN ORDER TO FURNISH NAMES AND ADDRESS
OF WITNESSES, ETC.

                                    RESPECTFULLY,

                                    GLENN C. AYO. P0664500
                                    JPCC, P.O. BOX, 388
                                    GRETNA, LA. 70053

                        2 OF 4

EXHIBIT - A3

INDIGENT DEFENDER BOARD (IDB)                    APRIL 23, 2007
MR. EVANS SCHMIDT, ESQ.
848  2ND STREET ( 3RD FLOOR)          CASE NO. 07-368, 07-370
GRETNA, LA. 70053

                                        DIVISION:   M

RE: VISIT TO JAIL ASAP / ALIBI WITNESS MOVING

        SIR,

1.    PREVIOUSLY I WROTE EXPRESSING THE IMPORTANT NEED
TO SEE YOU AT JAIL / IDB INVESTIGATOR AS MY ALIBI WITNESS
IS MOVING.

2.    ADDITIONALLY, YOU CAN NOT FILE A VIABLE MOTION TO SUPPRESS
MAY 17, 2007, ABSENT FACTUAL INPUT FROM DEFENDANT.

3.    RESPECTFULLY, I EXPECT NO FURTHER CONTINUANCE(S).

                            SINCERELY,
                            Glenn G.

                            GLENN C. AYO 80664500
                            JPCC
                            P.O. BOX, 388
                            GRETNA, LA. 70054

                    3 OF 4

EXHIBIT - A4

INDIGENT DEFENDER BOARD (IDB)                    JUNE 9, 2007
EVANS SCHMIDT, ESQ.
848 2nd STREET                          CASE NO. 07-3C9, 07-370
GRETNA, LA. 70053
                                        DIVISION: M
RE: MOTION(S) HEARING JUNE 21, 2007 /
    VISIT TO JAIL ASAP

        SIR,

1.    PREVIOUSLY I WROTE EXPRESSING THE URGENT NEED TO
SPEAK WITH YOU / IDB INVESTIGATOR AT JAIL AS MY ALIBI WITNESS
IS SUPPOSE TO BE MOVING, YET SEEN NO ONE TO DATE.

2.    ADDITIONALLY, THE REPORT(S) ARE RIDDLED WITH LIES, THUS
YOU CAN NOT FILE VIABLE MOTION(S) AND /OR ARGUE THE SAME,
ABSENT FACTUAL IMPUT FROM DEFENDANT.

3.    AND, YOU MUST FILE "SUBPOENA DUCES TECUM" FOR:
A) 911 TRANSCRIPTS,                    { BOTH OF WHICH
B) CFS REPORT (DISPATCHER TRANSCRIPTS) { SUPPORT ALIBI DEFENSE};
C) VIDEO OF ARREST FROM PATROL CAR — NO REASONABLE CAUSE;
D) CAB DRIVER CELL PHONE RECORDS — ALSO SUPPORTS ALIBI.

4.    SPECIAL AGENT MARK (PH. # 504-G25-5549), LOUISIANA STATE
POLICE, NARCOTICS DIVISION, IN CONJUNCTION WITH FEDERAL
DEA MET WITH ME MAY 15, 2007, REQUESTING YOU AND DISTRICT
ATTORNEY BOTH CONTACT AND ARRANGE A SID-DOWN MEETING
WITH HIM ASAP.

                        RESPECTFULLY SUBMITTED,

                        GLENN C. AYO 80664500
                        JPCC (4AL-7A)
                        P.O. BOX, 388
                        GRETNA, LA. 70054
                4 OF 4

EXHIBIT - A5

INDIGENT DEFENDER BOARD (I.D.B)        JULY 20, 2007
EVANS SCHMIDT, ESQ.
848  2ND STREET                    CASE NO. 07-369, 07-370
GRETNA, LA. 70053

                              DIVISION: M

RE: ALIBI WITNESS AND MOTION(S)

        SIR,

1.   REPEATEDLY OVER THE LAST SEVEN (7) MONTHS I REQUESTED
TO SPEAK WITH DEFENSE COUNSEL AND YOUR IDB INVESTIGATOR
AS THE "PRIMARY" ALIBI WITNESS WAS HAVING LAND-CARD TROUBLE
AND MAY BE MOVING SINCE JANUARY OF THIS YEAR, ALL OF WHICH
TO NO AVAIL, SEVERELY PREJUDICING MY VIABLE DEFENSE.

2.   PLEASE UNDERSTAND, I WAS A LAW-CLERK FOR TWELVE (12)
YEARS AND THOROUGHLY RESEARCHED TWENTY-TWO (22)
FUNDAMENTAL CONSTITUTIONAL RIGHT VIOLATION(S) IN THIS
CASE. SPEAKING WITH YOU "LESS" THAN TEN (10) MINUTES "AFTER"
CASE HAS BEEN CALLED IN COURT, COUPLED WITHOUT A SINGLE
VISIT TO JAIL, IS NOT ADEQUATE TIME FOR PROVIDING FACTUAL
INPUT TO PREPARE VIABLE DEFENSE. THUS, RESPECTFULLY REQUEST
A VISIT TO JAIL IN ORDER TO PROPERLY SPEAK WITH YOU
REGARDING THESE GROUND(S).

                              SINCERELY,

                              [signature]

                              GLENN C. AYO 80664500
                              JPCC (4AL-7A)
                              P.O. BOX 388
                              GRETNA, LA. 70054


                        6 OF 6

INDIGENT DEFENDER BOARD (IDB)                    AUGUST 5, 2007

EVANS SCHMIDT, ESQ.

848 2ND STREET                          CASE NO. 07-369, 07-370

GRETNA, LA. 70053                       DIVISION: M

RE: IDB INVESTIGATOR (MOTION(S)

    MR. SCHMIDT,

1.    PLEASE FIND (THREE (3) PAGES ATTACHED HERETO) EXACT
COPIES OF WHAT I FURNISHED YOUR INVESTIGATOR AUGUST 3,
2007, AND WHAT I HAVE BEEN INFORMING DEFENSE COUNSEL
SINCE MY JANUARY ARREST.

2.    THOUGH SINGLE MOTION HEARING HAS BEEN CONTINUED
SEVEN (7) TIMES. OUR NEXT HEARING IS AUGUST 16, 2007.
I PRAY YOU FILE SUBPOENA DUCES TECUM FOR:

A) 911 TRANSCRIPTS                    ⎫  BOTH REFUTE  ⎬
B) CFS REPORT (DISPATCHER TRANSCRIPTS) ⎭  FALSE REPORTS.
C) VIDEO OF ARREST FROM PATROL CAR — NO REASONABLE CAUSE.
D) CAB DRIVER CELL PHONE RECORDS      ⎫  BOTH SUPPORT  ⎬
E) MY CELL PHONE RECORDS              ⎭  ALIBI/INNOCENSE.
F) BOOKING PHOTO — SUPPORTS MISIDENTIFICATION.
G) MEDICAL RECORDS 1989-90, SANTA ROSA MEDICAL CENTER,
MILTON, FLORIDA, (PERMANENT DAMAGE TO LEFT KNEE) —
COULD NOT RUN FROM SCENE EITHER.

    TRUSTING YOU CAN BE OF ASSISTANCE, I THANK YOU IN ADVANCE.

                            RESPECTFULLY SUBMITTED,

                            GLENN C. AYO 80664500
                            JP CORRECTIONAL CENTER
                            P.O. BOX, 388
                            GRETNA, LA. 70054

INDIGENT DEFENDER BOARD (IDB)
EVANS SCHMIDT, ESQ.                                    AUGUST 16, 2007
848  2ND STREET
GRETNA, LA. 70053                          CASE NO. 07-369, 07-370
                                           DIVISION:  M

RE: PHONE RECORD (ALIBI) / MOTION(S)

    SIR,

1.   ENCLOSED PLEASE FIND VITAL INFORMATION TO SUBPOENA
DUCES TECUM PHONE RECORDS SUPPORTING ALIBI AND
ACTUAL INNOCENCE.
    TRAC-PHONE WIRELESS
    ATTN. SUBPOENA COMPLIANCE
    8390  N.W. 26TH STREET
    MIAMI, FL. 33112            MY PH. # 504-715-2417
PH. # 1-800-820-8632    SERIAL # 01096800102069
FAX # 305-715-6932    SIM CARD # 8901410306088325306

2.   ALSO A $300.00 DOLLAR WESTERN UNION RECEIPT FOR
MONEY I RECEIVED LESS THAN 24 HOURS OF ALLEGED ROBBERY.

3.   ADDITIONALLY PLEASE FIND COPY OF SUPERVISORY WRIT
PENDING IN 5TH CIRCUIT, AFTER EIGHT (8) UNDUE CONTINUANCE(S)
ON SINGLE MOTION TO SUPPRESS. ACCOMPANIED WITH BRIEFED
MEMORANDUM OF LAW DETAILING TWENTY-TWO (22) APPLICABLE
POINTS OF LAW / CONSTITUTIONAL RIGHT VIOLATION(S). WITH
ALL DUE RESPECT, I EXPECT YOU TO BRIEF AND ARGUE ALL
22 GROUNDS — ABANDON NONE. SEE STATE-V-GIBSON,
359 So.2d 147 (LA.1978) (THOSE ISSUES WHICH ARE NOT BRIEFED
OR ARGUED ARE DEEMED ABANDONED).
                              RESPECTFULLY SUBMITTED,

                              GLENN C. AYO 80664500
                              JP CORRECTIONAL CENTER
                              P.O. BOX, 388
                              GRETNA, LA. 70054

# EXHIBIT- B

I.D.B. INVESTIGATOR                          AUGUST 3, 2007

RONNIE MONTGOMERY

848 2ND STREET                          CASE NO. 07-368, 07-370

GRETNA, LA. 70053                          DIVISION:   M

RE: LOCATING "PRIMARY" ALIBI WITNESS


     SIR,


     PER OUR FIRST MEETING TODAY AFTER SEVEN (7) MONTHS
OF INCARCERATION AND YOUR INSTRUCTIONS.


1.   MY FIRST ALIBI WITNESS THEO BRICKLEY, 1524 JOLIET ST.,
NEW ORLEANS, LA. 70118 ( PH.# 504-352-0024), WILL TESTIFY:


     ON JANUARY 7, 2007, AT 9:05AM, WHILE TRAVELING UP
CARROLLTON AVE., IN NEW ORLEANS. HE PROVIDED GLENN AYO
WITH A RIDE, DROPPING HIM OFF AT DAVE'S APPARTMENT
AT 9:15AM. JUST OFF THE CORNER OF JULES ST. AND JEFFERSON
HWY.


2.   REPEATEDLY OVER THIS SEVEN (7) MONTH PERIOD I INFORMED
DEFENSE COUNSEL "COME SEE ME OR SEND YOUR INVESTIGATOR
AS MY PRIMARY ALIBI WITNESS IS FIXING TO MOVE". IF
YOU CAN NOW LOCATE DAVE/DAVID [LAST NAME AND EXACT
ADDRESS UNKNOWN] (SEE MAP ATTACHED AS PAGE-2), HE
WOULD HAVE TESTIFIED:


     ON JANUARY 7, 2007, AT 9:15AM, GLENN AYO ARRIVED AT
MY APARTMENT AND CALLED FOR A TAXI-CAB. THEN CHANGED
INTO WORK CLOTHES AND BORROWED AN OLD BROKEN KITCHEN
KNIFE TO STRIP COPPER WIRE.
     WHILE WAITING FOR THE CAB I SOLD MR. AYO AN OLD CLOTH
TRAVEL BAG, SHAVING KIT AND BLUE LEATHER PROOF JACKET FOR
$20 DOLLARS.          1 OF 3

THEN THE CAB DRIVER CALLED AYO'S CELLULAR-PHONE AS HE COULD
NOT FIND THE HOUSE AND I [DALE] GAVE DIRECTION, WITH MR. AYO
DEPARTING AT 9:25 AM.



RIVER RD.

JULES ST.

1 MILE

250 IRES AVE. PEDESTRIAN FLED NORTH TOWARDS JEFFERSON HWY. →

RESIDENTIAL HOUSING

UP-STAIRS
DOOR ON
RIGHT SIDE

PAINT + BODY
SHOP

DALE'S
HOUSE

PARKING
LOT

KEY
SHOP

LARGE RED BRICK
ABANDON BUILDING

BUSINESS

MASON
HALL

CAR
WASH

JEFFERSON HWY.

CAB

TOILET

CONFIDENCE PEOPLE PEDESTRIAN'S PASSING

ORLEANS
PARISH

CLAIBORNE AVE.

JEFFERSON HWY

RR TRACKS

17TH ST. CANAL

2 of 3

3.   MY THIRD ALIBI WITNESS WILLIAM BARRETT (CAB DRIVER),
1007 S. TURNBULL DR, METAIRIE, LA. 70001, WILL TESTIFY:

ON JANUARY 7, 2007, AT 9:15 AM, GLENN AYO CALLED MY
CELLULAR PHONE FOR TAXI SERVICE. WHEN I COULD NOT
LOCATE THE APARTMENT I REDIALED MR. AYO'S NUMBER
AND OBTAINED DIRECTIONS. PICKING-UP THIS FARE AT 9:28 AM
JUST OFF JEFFERSON HWY.

WITNESS THEO BRICKLEY AND WILLIAM BARRETT IS YOUR
ONLY HOPE LOCATING PRIMARY ALIBI WITNESS "DAVE"
WHO WAS HAVING LAND-LORD TROUBLE AT THE TIME OF MY
JANUARY ARREST.

RESPECTFULLY SUBMITTED,

GLENN C. AYO 80664500
JP CORRECTIONAL CENTER
P.O. BOX, 388
GRETNA, LA. 70054

3 OF 3

1   A.   No.  He was right by a business.

2   Q.   Well, there's two businesses there followed -- on

3   the corner there's a business, then the next building

4   is a business, then the next building is a residential

5   house.

6   A.   On Cicero?

7   Q.   Yes.

8   A.   It's all businesses.  The only place that's a

9   residence is the apartment above the body shop that

10  sits underneath the billboard.  There are no

11  businesses (sic) on Cicero.  The next residence is on

12  Brooklyn, which Cicero runs right into Brooklyn.

13  That's where you would have a residence.

14  Q.   Now, you didn't do a report on this because you

15  were off duty at the time; is that correct?

16  A.   Well, I didn't do -- no.  I didn't do a report on

17  it 'cause the district units handle the report, handle

18  the case.

19  Q.   Okay.  Now, neither you nor I think it's Deputy

20  Simoneaux when they were -- when you were riding along

21  Jefferson Highway which turns into Claiborne Avenue,

22  at that point it was a Code 1.

23  A.   Correct.

24  Q.   There was no hot pursuit.  You didn't have your

25  lights on or anything like that; is that correct?

26  A.   I didn't have my lights and siren on, no.  I

27  wouldn't have my lights and siren on anyway looking

28  for an armed robbery suspect even it was a second

29  later -- kind of give away who I was.

30       MR. SCHMIDT:

31            If I may just have a minute to confer

32            with my client for a minute,

-38-

185

TRIAL NOTES: QUESTION(S) TO ELICIT

INDIGENT DEFENDER BOARD (IDB)
INVESTIGATOR RONNIE MONTGOMERY

1. MR. MONTGOMERY, ON WHAT DATE (AUG. 2, 2007) WERE YOU
RETAINED TO LOCATE AND INVESTIGATE ALIBI WITNESSES FOR
DEFENDANT, GLENN AYO?

2. WHICH ATTORNEY, MRS. MARGNITA NAPUIN OR MR. EVANS SCHMIDT
MOVED THE COURT FOR FUNDING TO RETAIN YOU?

3. AT ANY TIME BETWEEN JANUARY AND APRIL 2007. DID
MRS. NAPUIN ATTEMPT TO RETAIN AND/OR REQUEST YOU LOCATE
ALIBI WITNESSES FOR THE DEFENSE?

4. ON YOUR FIRST ENCOUNTER WITH DEFENDANT. DID HE INFORM
YOU THAT [HE] BEEN REQUESTING HIS ATTORNEY(S) SINCE JANUARY
2007 "TO SEND INVESTIGATOR TO LOCATE ALIBI WITNESS 'DAVE'
BEFORE HE MOVES BECAUSE MR. AYO DID NOT KNOW THE ADDRESS
NUMBER, AND DAVE WAS HAVING LANDLORD TROUBLE?"

5. DID YOU MEET WITH MR. AYO AGAIN THE VERY NEXT DAY
(AUG. 3, 2007), AT WHICH TIME DEFENDANT PROVIDED YOU WITH
A DETAILED MAP OF WHERE HOUSE WAS LOCATED?

6. DID YOU EVER LOCATE OR SPEAK WITH WITNESS DAVE, CONFIRMING
MR. AYO CALLED FOR CAB ON HIS OWN CELL PHONE, YET FROM
DAVE'S LIVING-ROOM?

7. IF NOT, WHY NOT?

8. DID THERE COME A TIME AFTER SUCH INABILITY WHEN MR. AYO
INFORMED YOU THAT "THE LANDLORD KNEW DAVE'S EMPLOYER
BECAUSE HIS RENT WAS AUTOMATICALLY WITHDRAWN FROM
HIS CHECK AND PROVIDED TO LANDLORD"?

1 OF 3

9. AFTER YOU INFORMED DEFENDANT THAT DAVE MUST HAVE MOVED AS NO ONE ANSWER(S) HIS DOOR. ISN'T IT TRUE, THAT DEFENDANT AGAIN REMINDED YOU OF DAVE'S RENTAL AGREEMENT WITH HIS EMPLOYER, AND THAT ANY ONE OF THE OTHER THREE (3) TENANT'S WOULD KNOW THE LANDLORDS ADDRESS AND/OR PHONE NUMBER. WHO IN TURN, THE LANDLORD WOULD KNOW DAVE'S EMPLOYER AND WORK SCHEDULE?

10. ISN'T IT TRUE, THE DEFENDANT FURTHER INFORMED YOU THAT DAVE'S EMPLOYER COULD CERTAINLY KNOW HIS NEW CURRENT ADDRESS?

11. MR. MONTGOMERY, DID YOU EVER INTERVIEW ANY ONE OF THESE THREE (3) TENANTS, OBTAINING THE LANDLORDS INFORMATION? OF DAVE'S EMPLOYER?

12. DID YOU EVER INTERVIEW OR CONTACT DAVE'S EMPLOYER TO OBTAIN HIS NEW ADDRESS OR WORK SCHEDULE, SO YOU COULD CONFIRM THE PHONE CALL FOR CAB IN HIS LIVING-ROOM AND DEFENDANT'S ALIBI?

13. WHY DIDN'T YOU PURSUE SUCH PLAUSIBLE LEAD(S) TO LOCATE THE "PRIMARY" WITNESS IN THIS CASE — ISN'T THAT WHAT YOU WERE RETAINED TO DO?

14. MR. MONTGOMERY, DID YOU HAVE TROUBLE LOCATING STATE WITNESS WILLIAM F. BARRETT, THE CAB DRIVER?

15. COULD YOU EXPLAIN TO THE COURT EXACTLY WHAT TROUBLE YOU WERE EXPERIENCING?

16. DID THERE COME A TIME WHEN YOU DID LOCATE MR. BARRETT?

17. MR. MONTGOMERY, DID THE CAB DRIVER INFORM YOU WHERE HE PICKED-UP DEFENDANT ON THIS FARE?

18. AND WHERE WAS THAT?

19. IS THAT THE SAME CORNER OF THE STREET YOU REPEATEDLY ATTEMPTED TO LOCATE WITNESS DAVE?

20. HOW FAR AWAY FROM CORNER WAS DAVES APARTMENT — ABOUT TWO (2) HOUSES?

21. MR. MONTGOMERY, DID YOU EVER ASK MR. BARRETT, THE CAB DRIVER, OR DID HE EVER MAKE MENTION OF LETTERS ALLEGEDLY WRITTEN BY DEFENDANT TO HIM?

22. DID MR. BARRETT SURRENDER THOSE LETTERS OVER TO YOU?

23. AND, PLEASE TELL THE COURT, EXACTLY WHAT YOU DID WITH THOSE CORRESPONDENCE(S)?

24. DO YOU KNOW IF SCIENTIFIC HAND-WRITING ANALYSIS TESTING WAS EVER CONDUCTED TO CONFIRM OR DISPEL THAT DEFENDANT DID IN FACT WRITE THOSE LETTERS?

# EXHIBIT- C

<u>GENERAL AFFIDAVIT</u>

I, THEO BRICKLEY BEING OF SOUND MIND AND BODY DO HEREBY VOLUNTARILY DEPOSE OF MY OWN FREE WILL AS FOLLOWS:

ON SUNDAY MORNING, JANUARY 7, 2007, AT 9:00 AM, I EXIT MY HOME AT: 1524 JOLIET ST, NEW ORLEANS, LA. 70118. TRAVELING UP CARROLLTON AVE. TO GET GAS AT THE CORNER OF CLAIBORNE AVE. I NOTICED GLENN AYO, A FRIEND WALKING AND PULLED OVER GIVING HIM A RIDE.

DURING THE CONVERSATION OF OUR SHORT TRAVEL. AYO STATED THAT HE SLEPT AT HIS GIRLFRIEND MARY'S HOUSE AND HAD TO CHANGE OUT OF HIS DRESS CLOTHES IN ORDER TO GO TO WORK STRIPPING COPPER. FURTHER REQUESTING I WAIT, DROPPING HIM BACK OFF ON CARROLLTON AVE. BUT REFUSED AS I HAD A 9:30 AM. APPOINTMENT IN METAIRIE. THUS, DROPPING AYO OFF AT DAVE'S HOUSE. LOCATED AT THE CORNER OF JULES ST. AND JEFFERSON HWY.

WHEREFORE, I THEO BRICKLEY HEREBY DECLARE UNDER PENALTY OF PERJURY THAT I READ THE FOREGOING GENERAL AFFIDAVIT AND THE FACTS HEREIN ARE ALL TRUE, CORRECT AND COMPLETE TO THE BEST OF MY KNOWLEDGE.

SWORN THIS 5th DAY OF MARCH, 2007.

_____
AFFIANT

WITNESSED BY:

_Rickey Little_
_Stewart Holmes_
_Joshua Dalley_

THEO BRICKLEY
1524 JOLIET ST.
NEW ORLEANS, LA. 70118

# EXHIBIT- D

1      to give me his hands.

2  Q  And what did he do?  Did he still continue to

3      struggle with you and not give you his hands?

4  A  Yes Ma'am.

5  Q  And did you have to get help to actually detain

6      the suspect?

7  A  I was on the radio advising of my location, what

8      I had.  And Deputy McCoy arrived shortly

9      thereafter; and we were able to secure the

10     suspect and handcuff him.

11  Q  Did you ever have a chance to speak with the

12     cab driver?

13  A  Not me.  It was Deputy McCoy who spoke with the

14     cab driver.

15  Q  Did you retrieve the knife from - did you take

16     custody of the knife at that point?

17  A  After he was secured in my car, I went to get the

18     knife and I turned it over to Deputy McCoy.

19  Q  As far as on the Defendant's person; did he have

20     anything of evidentiary value on his person?

21  A  In his right hand we found a twenty-dollar bill

22     and a one-dollar bill that was crumpled up.

23  Q  Did you yourself ever find out what he had handed

24     to the cab driver?

25  A  I was told I think by Deputy McCoy that he was

26     handing a five-dollar bill to the cab driver

27     to go inside to get something.

28  Q  You said you had detained the suspect.  Was at

29     that time was the purpose of the victim

30     coming see if that was the perpetrator?

31  A  Yes Ma'am.

32  Q  And after detaining the perpetrator, did the

101

1          when we handcuffed the Defendant, Paul said

2          I got the knife on top of that icebox over

3          there.  Which is one of those boxes they put

4          bag ice in.

5    Q   At some point when the victim made the

6          identification, at any time you spoke with

7          him; did you in any way force, coerce or

8          promise him anything in exchange for picking

9          out the Defendant at the Spur Station?

10   A   No.

11   Q   Did you in any way make him or suggest to him

12         who he should pick out?

13   A   No.

14   Q   After the Defendant was arrested, did you

15         yourself place the Defendant under arrest?

16   A   Paul placed him under arrest when we identified

17         him; and he put him in the car and read him

18         his Rights.

19   Q   At some point after that, did you have the

20         occasion to speak with the cab driver that

21         actually brought him to the Spur Station?

22   A   Yes.  I was standing there, and the cab driver

23         says: He's got things in the back seat of my

24         car.  And I said: What's that?  He said: A

25         bag with some kind of jacket or something

26         that he put in the bag.

27         And I walked over there and you could see the

28         jacket on top of the bag.  It wasn't

29         completely in the bag.  It was open.  And I

30         don't know if the zipper was broke or what,

31         but it was open.

32   Q   And did the jacket that you saw at that time

1   Q.   Or anything like that.

2   A.   He said, "That's definitely him."

3        MR. SCHMIDT:

4              Objection, Your Honor.

5        THE COURT:

6              Sustained.

7        THE WITNESS:

8              Okay.

9   BY MS. SWAIM:

10  Q.   Now, Deputy, after speaking with the victim and

11  the victim being allowed to look at the suspect, was

12  the suspect placed under arrest?

13  A.   Yes.  He was placed under arrest, and Paul

14  verbally gave him his rights.

15  Q.   And that would be Paul Simoneaux read him his

16  rights, correct?

17  A.   Correct.

18  Q.   And at that time, did Glenn Ayo at some point

19  while you were on the scene ever make any statements

20  to you?

21  A.   Yes, he did.

22  Q.   Okay.  Can you tell the Ladies and Gentlemen of

23  the Jury exactly what he said.

24  A.   Well, actually, Paul and I were talking about

25  where he was picked up by the cab driver, and he

26  blurted out, "No.  I wasn't picked up there.  I was

27  picked up at Claiborne and Carrollton by the taxi."

28  Q.   And what about Sergeant Arceneaux, Sandy

29  Arceneaux?

30  A.   Okay.

31  Q.   Was she on the scene?

32  A.   I don't know if she was on the scene at that time

-60-

1    BY MR. SCHMIDT:

2    Q.   If Deputy McCoy testified that you alerted him on

3    the radio to the effect that "I think I have the

4    perpetrator," would that be an accurate statement?

5    A.   I don't know because I wasn't here when he

6    testified to that.  All I can say is that I notified

7    him to bring the victim to me to identify the subject

8    that I had stopped to see if this could be the

9    perpetrator.

10   Q.   Okay.  The knife that was in the back pocket of

11   Mr. Ayo, that wasn't a concealed weapon, was it?

12        MS. SWAIM:

13             Judge, I'm going to object to the

14          relevance.

15        THE COURT:

16             What's the relevance, Counsel?

17        MR. SCHMIDT:

18             Just --

19        THE COURT:

20             You want to approach the bench?

21             * * * * * *

22    (BENCH CONFERENCE OUT OF THE HEARING OF THE JURY)

23             (AS FOLLOWS:)

24             * * * * * *

25        MR. SCHMIDT:

26             Just going back through the facts and

27          his arrival on the scene and what he saw,

28          that's all.  I think I have a right to do

29          that on cross-examination.

30        THE COURT:

31             You can ask him what he saw.  That's

32          not what you said.

*NOT AN ARREST BUT INVESTIGATION OUT OF THEIR JURISDICTION*

Pamela Lobrono
Official Court Reporter
24th Judicial District Court
Parish of Jefferson

256

# EXHIBIT- E

# 24th Judicial District Court
# Parish of Jefferson - State of Louisiana

State of Louisiana  
    Versus  
GLENN AYO  
DOB:    08/01/1962  
Judge:    Henry G. Sullivan, Jr.  
ADA:    William C. Credo, III

| | |
|---|---|
| Case Number: | 07-0369 |
| Division: | M |
| Complaint: | A0637107 |
| Date: | 08/16/2007 |
| Court Reporter: | Pamela Lobrono |

The Defendant, GLENN C. AYO, appeared before the bar of the Court this day for a motion hearing.

The Defendant was represented by FREDERICK E. SCHMIDT.

The Defendant is in Jefferson Parish Prison.

Motions taken up:  
    Motion to suppress evidence.  
    Suppress identification.  
    Motion to suppress statement.  
    Preliminary exam.  
State Witness:  
Baptistse Debroy  
Dep Paul Simioneaux  
Dep George Mccoy  
The matter was heard, argued and submitted. The Court found probable Cause on the Defendant. The Court denied as to all the Motions, Defense objects and the Court noted.  
Trial in this matter is set for 10/1/07.  
The Defendant was remanded to Jefferson Parish Prison.

/s/Kelly Boudreaux

_____

Kelly Boudreaux, Deputy Clerk

pg: 9

         Motion Hearing

# 24th Judicial District Court
## Parish of Jefferson - State of Louisiana

State of Louisiana
       Versus
GLENN AYO
DOB:        08/01/1962
Judge:     Henry G. Sullivan, Jr.
ADA:      Shannon Swaim

Case Number:    07-0369
Division:        M
Complaint:     A0637107
Date:          11/07/2007
Court Reporter:   Pamela Lobrono

The Defendant, GLENN C. AYO, appeared before the bar of the Court this day for a general hearing.

The Defendant was represented by FREDERICK E. SCHMIDT.

The Defendant is in Jefferson Parish Prison.
The Defense still needs a copy of the Arrest Photo.
The Defense argues 26 points of viable law.
D-A 4 total pages in globo police reports
D-B 3 total pages in globo incident history detail JPSO
Status set for 11/15/07
Trial set for 11/26/07
The Defendant was remanded to Jefferson Parish Prison.

/s/Kelly Boudreaux
_____
Kelly Boudreaux, Deputy Clerk

**pg: 15**

Entry:

**General Hearing**

# 24th Judicial District Court
## Parish of Jefferson - State of Louisiana

| | | | |
|---|---|---|---|
| State of Louisiana | | Case Number: | 07-0369 |
| Versus | | Division: | M |
| GLENN AYO | | Complaint: | A0637107 |
| DOB: | 08/01/1962 | Date: | 11/15/2007 |
| Judge: | Henry G. Sullivan, Jr. | Court Reporter: | Pamela Lobrono |
| ADA: | Elizabeth Curren | | |

The Defendant, GLENN C. AYO, appeared before the bar of the Court this day for a general hearing.

The Defendant was represented by FREDERICK E. SCHMIDT.

The Defendant is in Jefferson Parish Prison.
The Court took up the ruling on the 22 points of law. The Court denied the Motions. The Defense objects Court noted.
Trial in this matter set for 11/26/07.
The Defendant was remanded to Jefferson Parish Prison.

/s/Kelly Boudreaux

_____
Kelly Boudreaux, Deputy Clerk

**pg: 16**

Entry:

**General Hearing**

# EXHIBIT- F

INDIGENT DEFENDER BOARD                    SEPTEMBER 4, 2007
EVANS SCHMIDT, ESQ.
848  2ND STREET                            CASE NO. 07-369, 07-370
GRETNA, LA. 70053                          DIVISION:  M

RE: NECESSARY DOCUMENT(S) FOR TRIAL

        SIR,
        WITH ALL DUE RESPECT, FOR MONTH(S) PRIOR TO SUPPRESSION
HEARING. REPEATEDLY I REQUESTED DEFENSE COUNSEL OBTAIN
FOLLOWING EXCULPATORY EVIDENCE TO DEMONSTRATE "ACTUAL
INNOCENCE":


1)  911 TRANSCRIPT;                    ⎫ BOTH REFUTE ⎫
2)  CFS REPORT (DISPATCHER TRANSCRIPTS); ⎭ FALSE REPORTS ⎭
3)  VIDEO OF ARREST FROM PATROL CAR — NO REASONABLE CAUSE;
4)  CAB DRIVER CELL-PHONE RECORD(S);  ⎫ BOTH SUPPORT ALIBI; ⎫
5)  MY CELL-PHONE RECORD(S);          ⎭ AND INNOCENCE ⎭
6)  BOOKING PHOTO — SUPPORTS MISIDENTIFICATION;
7)  MEDICAL RECORDS 1989-90, SANTA ROSA MEDICAL CENTER,
MILTON, FLORIDA, (PERMANENT DAMAGE TO LEFT KNEE —
COULD NOT HAVE RAN FROM SCENE.


                              RESPECTFULLY SUBMITTED,

                              Glenn J

                              GLENN C. AYO 90664500
                              JP CORR. CENTER
                              PO. BOX, 388
                              GRETNA, LA. 70054

INDIGENT DEFENDER BOARD                    SEPTEMBER 5, 2007

EVANS SCHMIDT, ESQ.

848  2nd STREET                            CASE NO. 07-369/07-370

GRETNA, LA. 70053                          DIVISION:  M

RE: WITNESSES FOR TRIAL / TRANSCRIPT(S)

        SIR,

    IF YOUR PRIVATE INVESTIGATOR, RONNIE MONTGOMERY
HAS NOT LOCATED ALIBI WITNESS "DAVE" PRIOR TO TRIAL. YOU MUST
SUBPOENA MY OTHER TWO (2) WITNESSES, COMPELLING THEIR PRESENCE
FOR TRIAL.

1)  THEO BRICKLEY              2)  WILLIAM BARRETT
    1524  JOLIET ST.               1007 TURNBULL DR.
    NEW ORLEANS, LA. 70118         METAIRIE, LA. 70001

3)  ALSO YOU MUST REQUEST TRANSCRIPT FROM PROBABLE CAUSE/
SUPPRESSION HEARING OF AUGUST 16, 2007, FOR IMPEACHMENT
PURPOSES AT TRIAL.

                        RESPECTFULLY SUBMITTED,

                        GLENN C. AYO 80664500
                        JP CORR. CENTER
                        P.O. BOX, 388
                        GRETNA, LA. 70054

DENECHAUD & DENECHAUD                    SEPTEMBER 5, 2007
C/O CHARLES DENECHAUD, ESQ.
1010 COMMON ST., SUITE - 3010            CASE NO. 07-369, 07-370
NEW ORLEANS, LA. 70812                   DIVISION:   M

RE: EFFECTIVE ASSISTANCE OF COUNSEL

        MR. DENECHAUD,
        MY UNDERSTANDING IS THAT YOU ARE THE SUPERVISOR OF
MR. EVANS SCHMIDT, INDIGENT DEFENDER BOARD, JEFFERSON
PARISH. PLEASE UNDERSTAND, I WAS A LAW CLERK FOR TWELVE (12)
YEARS, AND PERHAPS, YOU CAN GUIDE MR. SCHMIDT AND HELP
ME RECEIVE THE MINIMAL REQUIREMENTS OF STRICKLAND.

1.    ON AUGUST 16, 2007, A PROBABLE CAUSE AND SUPPRESSION HEARING
WAS CONDUCTED. MR. SCHMIDT POSSESSED THE THOROUGHLY
RESEARCHED TWENTY-TWO (22) ISSUE BRIEF ENCLOSED — YET
DID NOT ARGUE A "SINGLE" POINT OF LAW DURING HEARING!

2.    BOOKING PHOTO SUPPORTS MISIDENTIFICATION AND CLAIM OF
"ACTUAL INNOCENCE" — YET MR. SCHMIDT DID NOT UTILIZE EXCULPATORY
EVIDENCE.

3.    THE PRIVATE INVESTIGATOR (P.I.) DID NOT LOCATE LAST ALIBI
WITNESS — YET HE DID NOT SUBPOENA P.I. NOR TWO (2) WITNESSES
FOR HEARING.

4.    THOUGH 911 TRANSCRIPT COMPARED AGAINST PHONE RECORDS
SUPPORT ALIBI — MR. SCHMIDT SUBPOENAED NEITHER.

5.    ALLEGEDLY, AN OFF-DUTY OFFICER WAS ON SCENE FIRST, WITNESSED
AND, BROADCAST DESCRIPTION OF PERPETRATOR, WHO FURTHER
WAS NOT PRESENT AT HEARING — YET HE DID NOT MOVE FOR
CONTINUANCE NOR OBJECT TO HEARSAY.

                    1 OF 2

6. THOUGH CFS REPORT (DISPATCH TRANSCRIPT) DEMONSTRATE "PERJURED" POLICE REPORT(S), REFUTE PROBABLE CAUSE AND/OR HOT PURSUIT ACROSS PARISH LINE — MR. SCHMIDT DID NOT SUBPOENA NOR CHALLENGE.

7. MR. SCHMIDT POSSESSED $300 DOLLAR WESTERN UNION RECEIPT — YET DID NOT CHALLENGE MONEY SEIZED NEXT DAY.

8. POLICE REPORT DEMONSTRATE JACKET WAS "INSIDE" TRAVEL-BAG — YET DID NOT ARGUE AGAINST PERJURED "PLAIN VIEW" TESTIMONY.

9. OFFICER TESTIFIED THAT CAB-DRIVER WANTED TRAVEL-BAG OUT OF HIS CAB — YET DID NOT OBJECT TO HEARSAY.

10. AND, ALLEGEDLY, I MADE AN INCULPATORY STATEMENT FROM OPEN WINDOW — YET MR. SCHMIDT DID NOT CHALLENGE "PERJURED" TESTIMONY SINCE BACK WINDOW OF PATROL-CAR DON'T ROLL DOWN.

MR. DENECHAUD, TRUSTING YOU WILL ARRANGE ANOTHER EFFECTIVE PRELIMINARY EXAMINATION AND SUPPRESSION HEARING, PRESERVING ALL VIABLE ISSUES FOR APPELLATE REVIEW, I THANK YOU IN ADVANCE.

RESPECTFULLY,

GLENN C. AYO 80644500
JP CORRECTIONAL CENTER
PO-BOX, 388
GRETNA, LA. 70054

2 OF 2

INDIGENT DEFENDER BOARD (IDB)          OCTOBER 4, 2007

EVANS SCHMIDT, ESQ.

848 2nd STREET                         CASE NO. 07-369, 07-370

GRETNA, LA. 70053                      DIVISION:   M

RE: INVESTIGATOR LOCATING WITNESSES,
    PHONE RECORDS, MOTION(S)

     SIR,

1.   ENCLOSED PLEASE FIND COPY OF INFORMATION FURNISHED
MR. RONNIE MONTGOMERY, INVESTIGATOR. THE PHONE RECORDS
HAVE BEEN ALTERED OR THEY ARE WRONG. YOU MUST CONTACT
TRAC-PHONE WIRELESS AND INVESTIGATE. PH# 1-800-822-8632,
FAX# 305-715-6932. YOU HAVE MY PHONE, SERIAL AND SIM-CARD
NUMBER(S).

2.   WITH ALL DUE RESPECT, I STRONGLY OBJECT TO YOUR STRATEGY:
"NOT REQUESTING ANOTHER PROBABLE CAUSE AND/OR SUPPRESSION
HEARING". YOU DON'T FEEL THE PROCEEDINGS WERE "IMPARTIAL"
SINCE DETECTIVE JEWEL (JP631) AND NONE OF MY WITNESSES
WERE SUBPOENAED? THE ENTIRE HEARING WAS HEARSAY,
WITHOUT YOU OBJECTING TO SUCH.

3.   PLEASE REMEMBER, YOU CAN OVERCOME SUCCESSIVE MOTION(S)
BY FILING "MOTION TO DISMISS," THUS ARGUING TWENTY-TWO (22)
POINTS OF LAW IN MY HABERS CORPUS NEVER BEFORE ARGUED.

4.   DETECTIVE DANNY JEWEL (JP631) MUST BE SUBPOENAED
FOR TRIAL.

5.   AND ALL POLICE REPORTS MUST BE ADMITTED INTO EVIDENCE
FOR IMPEACHMENT AT TRIAL.

                         RESPECTFULLY SUBMITTED,

                         GLENN C. AYO 80664500
                         JPCC
                         P.O. BOX, 388
                         GRETNA, LA. 70054

I.D.B. INVESTIGATOR                              OCTOBER 4, 2007
MR. RONNIE MONTGOMERY
848 2nd STREET                                   CASE NO. 07-369, 07-370
GRETNA, LA. 70053                                DIVISION: M

RE: LOCATING ALIBI WITNESSES /
    PHONE RECORD(S)

        SIR,

1.   THANK YOU FOR THE VISIT TODAY, BUT I ASSURE YOU, THE
PHONE RECORDS HAVE BEEN ALTERED OR THEY ARE WRONG.
BOTH THE POLICE REPORT(S) AND WITNESS STATEMENT CONFIRMS
I CALLED CAB FROM MY CELL PHONE.

2.   HONESTLY I CAN NOT UNDERSTAND THE PROBLEM LOCATING
WITNESS WILLIAM BARRETT (CAB DRIVER) AS HE WORKS FOR
"METAIRIE CAB" AND HIS ADDRESS AND PHONE NUMBER IS
LISTED ON POLICE REPORT AS: 1007 S. TURNBULL DR, METAIRIE,
LA. 70001. (PH.# 504-234-9289)

3.   WITNESS THEO BRICKLEY, HE IS BOTH ON PROBATION IN
NEW ORLEANS AND/OR HAS COURT APPEARANCE(S) / IS ALSO
ON PROBATION IN JEFFERSON PARISH. CHECK W/ HIS PROBATION
OFFICER FOR CORRECT ADDRESS AND PHONE NUMBER, IT WAS
LISTED AS: 1524 JOLIET ST, NEW ORLEANS, LA. 70118. (PH.# 504-
352-0024)

   HIS GIRLFRIEND / EX-WIFE IS: SONYA BERRY, 2301 HOUMA
BLVD, METAIRIE, LA. 70001. (HER PH.# 504-232-2877).
BUT PREVIOUSLY I FURNISHED THIS SAME INFORMATION IN
LETTER OF AUGUST 3, 2007.

                                    RESPECTFULLY SUBMITTED,

                                    GLENN C. AYO 80664500
                                    JPCC
                                    PO. BOX, 388
                                    GRETNA, LA. 70054

INDIGENT DEFENDER BOARD                     OCTOBER 23, 2007

EVANS SCHMIDT, ESQ.

848 2ND STREET                              CASE NO. 07-369/07-370

GRETNA, LA 70053                            DIVISION: M

RE: SUBPOENA WILLIAM BARRETT (CAB DRIVERS)

     PHONE RECORD(S) SUPPORT MY ALIBI (504-234-9289)

          SIR,

1.   SINCE YOU ALLEGEDLY HAVING TROUBLE OBTAINING MY CELL-PHONE

RECORDS, YOU CAN EASILY SUBPOENA WILLIAM BARRETT (CAB DRIVER)

PHONE RECORD(S) (504-234-9289) TO SUPPORT MY ALIBI; AND

THE FACT HE CALLED ME BACK AT DAVE'S HOUSE TO GET EXACT

ADDRESS — DURING SAME TIME ROBBERY IS TAKING PLACE

SIX (6) BLOCKS AWAY.

2.   ENCLOSED PLEASE FIND COPY OF SWORN AFFIDAVIT FROM WITNESS

TYLO BRICKLEY, WHO DROPPED ME OFF AT "DAVE'S" HOUSE JUST

BEFORE CALLING CAB.

3.   AND MY LETTER OF OCTOBER 4, 2007, PROVIDES ALL NAMES

AND ADDRESSES OF DEFENSE WITNESSES FOR TRIAL.

                         SINCERELY,

                         Glenn J.

                         GLENN C. AYO 806665700

                         JP CORRECTIONAL CENTER

                         P.O. BOX 388

                         GRETNA, LA. 70054

# EXHIBIT- G

"TRIAL NOTES"

LT. THERIAND — WHAT IS HE DOING HERE?

DO YOU WANT TO KNOW WHO I FAVOR

WHY WAS THAT OLDER BLACK LADY STRUCK?

AFTER C.B. SLOT A JURY I HAVE SOME STIPULATIONS, OBJ
AND MOTION IN LIMINE THAT NEEDS TO BE MADE A MATTER OF RECORD

OBJ. STAR SAID "I DID IT" — NOT INTEND TO RECUR!

NOTE THAT SHE SAID BILL WOULD SWAP SHIFT — THAT'S A PURCHASE
LIKE POLICE REPORTS — LMAO A WINDBREAKER

YOU GOT MY MEDICAL RECORDS — DET. JEWEL SAID CAN RUN IN 60 SEC.
— I CAN'T RUN!

YOU KNOW HE WAS LYING HIS ASS OFF
BULLSHIT, HE DIDN'T SEE NO KNIFE FROM MOVING CAR

COME ON HE DON'T SAY NOTHING ON TAPE ABOUT MY KNIFE OR WEAPON

DID YOU GET BILL'S PHONE RECORDS?
GET THEM FAXED

WHAT'S WRONG WITH HIM
RONNIE SAID HE GOT BUSTED AND TURNED MY LETTERS OVER
TO GET OUT OF JAIL — CALL HIM BACK AND SEE IF SHE
CUT HIM A DEAL
SHE DID THAT — SHE TOLD HIM NOT TO ANSWER QUESTIONS

OBJ. PERJURY — THE VICTIM DIDN'T TO ME WHEN HE WAS
CUT THE CAR
OBJ. MANUEL BROKE CHAIN OF CUSTODY AT JAIL

JACKET ON TOP BAG

OBJ. HE'S LYING — HE DON'T UNDERSTAND OATH

EVERYTHING IN PLAIN VIEW — COME ON!


DID YOU HEAR THAT

THERE WAS NO PROBABLE CAUSE TO STOP OR ARREST


HE LIED IN SUPPRESSION HEARING — NOW HE CATCHES ME

THERE WAS NO HOT PURSUIT


AN UNCONCEALED KNIFE VIOLATES NO LAW

SO LET'S JUST ARREST EVERY CONSTRUCTION WORKER W/ KNIFE


ASK HIM WHAT QUESTIONS HE ASKED WHEN HE APPROACHED ME

HE PLAYED, I TRIED TO WALK AWAY FROM HIM!


LOOK AT SUPPRESSION NOTES — PAGE 128-30

NO SCRATCHES OR TATTOOS ON FACE — BOOKING PHOTO

MOVE FOR ACQUITTAL


DECLARE A MISTRIAL

JUDGE ORDER HALL CLEAR

THE D.A. & VIC CAME OUT, PRIDE IN HALL JUST OUTSIDE

JAIL DOOR.

| | WITNESSED BY |
|---|---|
| WHAT ARE YOU WAITING FOR | DEP. NORMAN BLANCHARD (DEGUY) |
| CHIN DOWN MY ASS | DEP. RICHARD HERBERT (RIDGE) |


HE CONTRADICT ED ME TWICE

NOW TODAY'S HE'S CERTAIN — BULLSHIT

SHE TAMPERED W/ THE WITNESS — THAT'S ILLEGAL


PUT RONNIE ON STAND SO THEY KNEW I HAD WITNESSES BUT

COULDN'T LOCATE

2

RONNIE WAS TO DRIVE IT 3X TO ESTABLISH TIME I GOT TO DALLAS

INTRODUCE THEO'S AFFADAVIT

MISTRIAL — I'M NOT ON PAROLE
I AINT NEVER BEEN ON PAROLE

NO, I DON'T HAVE WARRANTS FOR SANTA ROSA FLORIDA

I THOUGHT YOU SAID SHE WASN'T GOING TO ~~DISCUSS~~ USE LETTERS
WHAT DID THE JUDGE SAY?

YOU KNOW WHAT I WAS TRYING TO GIVE YOU
THE ~~~~ EXHIBITS FROM MY PRO SE MOTION

WHAT TIME ARE WE GOING TO STOP?
THE JURY HAS BEEN HERE SINCE 9:00 THIS MORNING
AND THEY ARE GOING TO START DELIBERATING AT 9PM —
UNREAL!

# EXHIBIT- H

ARREST REPORT AND *PROBABLE CAUSE AFFIDAVIT* (REV 1/96)

Orleans 07-00179

**ARRESTEE DATA**

| ARRESTEE NAME | RACE | SEX | BIRTH DATE | SSN# | |
|---|---|---|---|---|---|
| AYO GLENN C | W | M | 8/1/62 | | Code 6 |

| ARRESTEE ADDRESS | | HEIGHT | WEIGHT | HAIR | EYE | ARREST NUMBER |
|---|---|---|---|---|---|---|
| 2801 ROSSETTA DR | | 5-8 | 180 | BRO | BRO | |

| CITY | STATE | ASSIGNMENT-ETHNICITY | BIRTH STATE | NATIONALITY | ARREST TRACKING # |
|---|---|---|---|---|---|
| CHALMETTE | LA | R NHIS | LA | US | |

| ALIAS NAME | SOC. SEC. # | OPERATOR'S LICENSE # | SIC. ST. | STATE I.D. # |
|---|---|---|---|---|
| AYO DENNIS M 10-30-56 | 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 | 5263680 | LA | |

**MARKS-SCARS-TATTOOS-ETC.**

| TYPE | LOCATION | DESCRIPTION | WEAPON |
|---|---|---|---|
| 1. | | | |
| 2. | | | GANG |
| 3. | | | |

**ARREST DATA**

| LOCATION OF ARREST | DIST # R.A.# | DATE OF ARREST | TIME OF ARREST | DATE | TIME |
|---|---|---|---|---|---|
| CLAIRBORN AVE AND EAGLE ST | 1ST 1117 | 1/7/07 | 0940 | | |

| ARRESTING OFFICER'S NAME | OFFICER'S P.R.# | UNIT | ARREST CREDIT |
|---|---|---|---|
| DEP. P. SIMONEAUX | 97695 | 1A12 | 10 |

| ARRESTING OFFICER'S NAME 2 | OFFICER'S P.R.# | |
|---|---|---|
| | | NO PROBABLE CAUSE / refuse at magistrate |

| TRANSPORTING OFFICER'S NAME 1 | TRANS. OFFICER'S P.R.# | PROBABLE CAUSE / Judge on Magistrate |
|---|---|---|
| SAME | | |

**CHARGES**

| ORDINANCE/STATUE # | | ORD. TYPE/MEA | DRUG TYPE | FEL/MISD | ATTACH/DEPT # | ITEM NO. |
|---|---|---|---|---|---|---|
| RS14:64 ARMED ROBBERY (KNIFE) | | | | F | | A-06371-07 |
| RS14:69 POSSESION OF STOLEN PROPERTY $26 | | | | M | | A-06371-07 |
| RS14:108 RESISTING ARREST | | | | | | A-06371-07 |
| | | | | | | |
| | | | | | | |

| COURT OF TRIAL | SECTION |
|---|---|
| | |

**OFFENSE DATA**

| LOCATION OF OFFENSE | DATE OF OFFENSE | TIME OF OFFENSE |
|---|---|---|
| 250 IRES AVE JEFFERSON LA 70121 | 1/7/07 | 0924 |

**PROBABLE CAUSE AFFIDAVIT**   BEFORE ME THE UNDERSIGNED AUTHORITY PERSONALLY CAME AND APPEARED THE UNDERSIGNED, WHO AFTER BEING DULY SWORN STATED AS FOLLOWS:

1. ON JAN. 7, 2006, I RESPONDED TO AN ARMED ROBBERY AT 250 IRES AVE. JP631 WHO WAS ON THE SCENE PRIOR

2. ADVISED HE OBSERVED A SUSPECT FITTING THE 64G SUSPECT GET INTO A METAIRIE CAB AND HE HAD A KNIFE IN HIS

3. BACK POCKET. JP631 STARTED TO FOLLOW THE CAB BUT LOST SIGHT OF IT. AS I FOLLOW JP631 I OBSERVED A

4. METAIRIE CAB IN THE SPUR STATION AT EAGLE AND CLAIRBORN. I OBSERVED A SUBJECT FITTING THE 64G SUSPECTS

5. DESCRIPTION GET OUT OF THE CAB. I TURNED AROUND AND PULLED INTO THE STATION AND BEGAN TO SPEAK WITH THE

6. SUBJECT. I OBSERVED THE HANDLE OF A KITCHEN KNIFE IN HIS BACK POCKET. I REMOVED THE KNIFE, AND STARTED

7. TO PLACE THE SUBJECT UNDER ARREST. HE STRUGGLED TO GET AWAY FROM MY GRASP. SUBJECT WAS RESTRAINED.

8. HE WAS FOUND TO BE IN POSSESION OF THE VICTIMS MONEY. PLACED UNDER ARREST.

9. TRANSPORTED TO THE JPCC FOR BOOKING AFTER IDSNTIFIED BY THE VICTIM.

SWORN TO AND SUBSCRIBED

BEFORE ME, THIS_____ DAY

OF_____ 20___

| ARRESTED WITH | | | | | | | |
|---|---|---|---|---|---|---|---|

**CAREER CRIMINAL INTERCEPT UNIT**

| CODE 6 | OFFICER SIGNATURE | | 97695 |
|---|---|---|---|
| YES ☐ NO ☐ | ASSIGNMENT OF AGENT | | PHONE # |

EX-OFFICIO NOTARY PUBLIC

364-5300

1ST DISTRICT          983-7260

1        Avenue in Jefferson Parish?

2  A  Yes Ma'am.

3  Q  Can you tell the Court how it was that you became

4      involved in that investigation?

5  A  Radio call came over to the District Officer in

6      that area of an armed robbery that occurred.

7      I responded to assist him.

8  Q  Where did he first respond?

9  A  It was on Iris Avenue in Jefferson.

10  Q  What did you do when you got to that location?

11  A  While I was in route, a Detective Jewel had

12      arrived on the scene prior to even myself or

13      the other Officer.  He advised that the

14      suspect had fled the scene; gave us a

15      description.

16      We went to the location to speak with the victim.

17      And I began to canvas the area for the

18      suspect.

19  Q  And do you know which Officer went to speak with

20      the victim?

21  A  Deputy George McCoy.

22  Q  So what happened?  What did you do next?

23  A  While in the area of Jefferson Highway, I

24      observed a suspect that could possibly fit

25      the description: detained him.  Had Deputy

26      McCoy bring the victim over to my location

27      to try and identify him.

28      It was learned that this was not the suspect.

29      At that time Detective Jewel heard on the radio

30      that he observed a suspect fitting the

31      description of the perpetrator getting into

32      a Service Cab at Jules Avenue and Jefferson

98

```
 1              Highway.  And he had last seen the Service
 2              Cab heading eastbound on Jefferson Highway
 3              towards the Parish line.
 4    Q    And that would be in Jefferson Parish; correct?
 5    A    Yes.
 6    Q    Were you riding alone that day?
 7    A    Yes Ma'am.
 8    Q    So what did you do next?
 9    A    At that point in time Deputy McCoy then left the
10              locating, heading towards the Orleans Parish
11              line.  I began to follow Deputy McCoy.
12         We then heard Detective Jewel (phonetically) say
13              on the radio that they had just lost sight
14              of the vehicle as we were entering into the
15              Orleans Parish line, Orleans area.  At which
16              time I slowed down an immediately began to
17              look on the side.
18         At Eagle Street and Claiborne I observed a
19              Service Cab in the service station out there.
20    Q    Did you separate at that point from Deputy McCoy?
21    A    Yes Ma'am.
22    Q    And Eagle and Claiborne: that would be in Orleans
23              Parish; correct?
24    A    Yes Ma'am.
25    Q    And you said you had noticed a cab fitting the
26              description.  What was that description?
27    A    It was a Service Cab.
28         And getting out of the cab I observed a suspect.
29              The  suspect  that  we  had  seen  fit  the
30              description  of  what  was  given  to  us  by
31              Detective Jewel.
32         I began - tried to advise Headquarters where I
```

1    was.  I pulled into the station.  Walked up

2    to the suspect.   And I saw in his back

3    pocket, his right-back pocket, a brown

4    handle; which looked like a kitchen knife

5    handle.

6  Q  You could see that sticking out from his back

7    pocket?

8  A  Just sticking out.

9  Q  And had you already been given the information

10    about the knife that was involved in the

11    incident?

12  A  Yes Ma'am.  Deputy Jewel advised that a knife was

13    involved.  He also said that he observed a

14    knife in the back pocket of the suspect

15    getting into the cab.

16  Q  And then at that time, when you first observed

17    the suspect; where was he at the Spur

18    Station?

19  A  He was standing outside the cab, handing

20    something to the driver of the cab.  I'm not

21    sure what it was, but I believe it was

22    money.

23    Cab Driver went into the station.  And then I

24    walked up to the suspect.  Actually grabbed

25    hold of the garment; pulled the knife out of

26    his back pocket.

27  Q  And then what happened next?

28  A  I then placed the knife - because we were close

29    to the ice-machine - placed it on top of the

30    ice-machine, and then got the suspect to my

31    car.  He kept trying to pull away from me.  I

32    kept telling him to stop fighting, to stop;

25

100

# EXHIBIT- I

1    A.    As I was going down Cicero from Brooklyn to

2    Jefferson -- if you don't know, Ladies and Gentlemen,

3    it's where -- if any of you are familiar with

4    Jefferson Highway, it's where the big S curve is going

5    into the city.  Cicero, Jules, and Jefferson Highway

6    all intersect right there at that curve, at the first

7    curve, just past Ochsner.

8        I was going down Cicero towards Jefferson

9    Highway, at which point I saw a white male with dark

10   hair, clean shaven, carrying like a gym bag, dark

11   jeans or blue jeans, with a green tee shirt.  Almost

12   simultaneously as I'm passing him, I hear the 1 Alpha

13   12 put out the stop in the 800 block of Jefferson

14   Highway.

15       As I'm passing him, you know, I'm thinking "Well,

16   maybe this is the guy.  Maybe I should stop and get

17   his name and see."  But like I said, at the same time

18   this other stop happened.  So I head over to assist.

19   But before I can get there and as I'm thinking, you

20   know, I'm thinking "Maybe I should stop him, but let

21   me go back up this guy."  As I'm heading over there,

22   the victim was being relocated -- or he asked -- I'm

23   sorry.  He asked, "Is this the description?"  He's

24   asking me, and I'm like "I don't know.  I don't have

25   the victim.  I'm just driving the area."

26       So I was going to relocate back to get the victim

27   to bring him over there.  But in route back to 250

28   Iris, the 1 Alpha 1, one of the other responding

29   units, had already picked up the victim to bring him

30   to identify the subject stopped in the 800 block of

31   Jefferson Highway.

32       So then I started my search again.  I said,

*PASSED UP INVESTIGATION -- NOT ARREST*

-15-

162

```
 1     "Well, let me go over there just in case it is him."
 2     But before I could get there, the victim had already
 3     said, "That's not him."
 4          Now, I'm thinking "Well, I just might have passed
 5     up the perpetrator here."  And it hits me:  He had
 6     something in his back pocket.  To me it looked like
 7     the handle of a knife, but it looked like the handle
 8     of like a kitchen knife.  And I remember the victim
 9     saying it was a big knife, but, you know, it's pretty
10     commonplace when you have a knife or a gun stuck in
11     your face it always looks gigantic.
12          So I started heading back to Cicero where I had
13     originally viewed the guy in the green shirt and
14     jeans.  Upon arriving at that location, he wasn't
15     there anymore.  But there were several workers there.
16     They were hanging a new billboard that day.  And I
17     asked one of the guys working on the billboard if they
18     had seen where the guy that was just standing there
19     with the green shirt where he went.  And they said,
20     "Yeah.  He just got into a blue cab and headed that
21     way."  And the direction he pointed would have been
22     towards New Orleans.
23     Q.   And do you remember about how much time passed
24     before you initially saw the person and you came back?
25     A.   Three minutes, maybe.  I don't -- I'm not --
26     Q.   And when you saw the person and you saw him go to
27     New Orleans, do you remember if you came over the
28     dispatch and dispatched that?
29     A.    I put it out after -- I'm sorry -- after the
30     victim said that the subject they had stopped in the
31     800 block was not him, I think I put it out saying
32     "Well, I think I might have seen the guy" or "I saw a
```

*(handwritten annotations in right margin:)* LT. DETECTIVE MADE NO BROADCAST OF WEAPON — A VETERAN OFFICER!)

*(handwritten annotations in right margin:)* DID NOT SEE A CAB — NO SUCH BROADCAST = "PERJURY"

Pamela Lobrono
Official Court Reporter
24th Judicial District Court
Parish of Jefferson

28

163

1   guy that kind of fits the script and has his clothing

2   script, and he got into a blue cab, and he should be

3   heading towards the city."

4   Q.   And have you reviewed the dispatch in this case?

5   A.   Have I?

6   Q.   Yes.

7   A.   Yes, ma'am.

8   Q.   And you've reviewed the printout of the dispatch,

9   correct?

10  A.   Yes.

11  Q.   Do you remember the time that you came over and

12  dispatched?

13  A.   No.  I'd have to see it.

14  Q.   If I showed you a copy of it, would it refresh

15  your memory?

16  A.   Sure.

17       MS. SWAIM:

18            And, Your Honor, at this time I'm going

19       to show Lieutenant Jewell a copy of State's

20       Exhibit #3, which is a transcription of the

21       dispatch itself.

22       THE COURT:

23            Very well.  It's already been admitted

24       into evidence.

25       MS. SWAIM:

26            May I approach?

27       THE COURT:

28            Yes, you may.

29  BY MS. SWAIM:

30  Q.   Lieutenant Jewell, if you could just take a

31  second and review that dispatch and see if that jogs

32  your memory.

-17-

164

1    Q.    Canvass the area.  Now, when you saw Mr. Ayo, he

2    wasn't doing anything suspicious or inappropriate, was

3    he?

4    A.    No.  Standing in the middle of the street, like I

5    said, with the bag, the gym bag over his shoulder,

6    speaking to someone on the landing of the apartment.

7    Q.    And you didn't notice anything unusual about him

8    at that time, did you?

9    A.    Other than, you know, his body type and clean

10   shaven and hair color matched the description of the

11   perpetrator as well as there was a knife sticking out

12   of his back pocket.  Other than those two things -- or

13   at least a handle of a knife.

14   Q.    Well, so you're canvassing the area for somebody

15   that just committed an armed robbery with a knife.

16   A.    Correct.

17   Q.    And you see a gentlemen with a knife in his back

18   pocket.

19   A.    Correct.

20   Q.    Why didn't you call that in on dispatch?  You

21   didn't think that was significant?

22   A.    I think I did call it in on dispatch.  I put the

23   description out on dispatch.

24   Q.    This is Exhibit 3, which I know you've already

25   reviewed.

26   A.    Uh-huh (affirmative response).

27   Q.    Could you point out to me where you put the knife

28   out on dispatch.

29   A.    I put the green shirt, the blue jeans -- no.  I

30   don't have it in here.

31   Q.    Certainly, that would have been a very

32   significant feature, would it not have?

-35-

182

```
Tiburon, Inc.   INCIDENT HISTORY DETAIL   J0700706      Page  1      01/07/07
                        JEFFERSON PARISH POLICE                          09:28
***************************************************************************
INITIATE:  09:21:24 01/07/07    CALL NUMBER:       J0269
ENTRY:     09:23:19             CURRENT STATUS:    CLOSED
DISPATCH:  09:24:29             PRIMARY UNIT:      1A1
ON SCENE:  09:25:13             ITEM NUMBER:       JP070106371
CLOSE:     12:34:40             DISPOSITION:       R

LOCATION: 250 IRIS AV,ME (JEANETTE ST & LANCE ST)
DAREA:     D1
BEAT:      101                  TYPE:  64K    ROBBERY/KNIFE
GZONE:     1117                 PRIORITY:  6
FIRE:      1211

09:23:19 JC01 ENTRY     RP:ALI: CINGULAR \AD:912 DAKIN ST,NO #5044531610
                        PH:985-238-9042 \ ORIGIN:9 \TX:C/2...COMP BEATRICE ADV
                        W/M WEARING BLUE HOOD OVER HEAD PUT 95K TO FRINEDS
                        THROAT AND DEMANDED MONEY (MTF)
09:23:19 JC01 IT        JP070106371
09:23:51 JC01 SUPP      ORIGIN:9 \TX:COMP ADV SUBJ ON FOOT WALKED TWDS JEFF
                        HWY....SUBJ 5'7 170 LBS
09:24:07 JC01 SUPP      ORIGIN:9 \TX:BLK HAIR CLEAN SHAVEN
09:24:29 JD07 DISP-ENR  1A1
09:24:29 JD07 ID        1A1 <S96945>MCCOY, GEORGE
09:24:32 JD07 BACK-ENR  1A1 1A12
09:24:32 JD07 ID        1A12 <S97695>SIMONEAUX, PAUL
09:24:32 JD07 SUPP      ORIGIN:9 \TX:OCCURED 10 MINS AGO....NOT INJURED DOES NOT
                        NEED MEDICAL
09:24:35 JD07 BACK-ENR  1A12 1A14
09:24:35 JD07 ID        1A14 <S99783>PITFIELD, JAMES D
09:25:12 JC01 SUPP      ORIGIN:9 \TX:SUBJ TOLD COMP THAT IF HE GOT UP HE WOULD
                        KILL HIM....SUBJ TOOK $30 FROMTHE COMP
09:25:13 JD07 BACK-ONS  1A12 631
09:25:13 JD07 ID        631 <S96715>JEWELL, DANIEL
09:25:33 JD07 SUPP      ORIGIN:9 \TX:C/B 453 1610
09:25:37 JD07 MISC      631, ADVD HE IS IN THE NEIGHBORHOOD...NOT CODE
09:25:43 JD07 INSRVICE  1A1
09:25:52 JD07 MISC      1A12, WILL START TO THE AREA TO SEARCH
09:26:03 JD07 MISC      631, ADVD ITS NOT C/2 OCCURRED 10 MINS AGO
09:27:53 JD07 MISC      AIRED ON C/2 AT TIME OF DISPATCH
09:27:56 JD07 ONSCENE   1A12
09:28:13 JD07 MISC      WITH TONES ON JAC,INC F 1,F 4
09:30:23 JD07 BACK-ONS  1A12 1A1
09:30:23 JD07 ID        1A1 <S96945>MCCOY, GEORGE
09:30:50 JD07 CHGLOC    1A12 800-BLK JEFFERSON HY,ME, W/M TAN SHORT BLUE SLEEVES
                        SHIRT
09:30:50 JD07 ONSCENE   1A12
09:31:14 JD07 MISC      631, ADVD CLOTHING SCRIPT DRK PANTS BLUE SWEAT SHIRT
09:31:31 JD07 MISC      631, ADVD HE IS A W/M
09:31:50 JD07 MISC      1A12, H/M...TAN SHORTS...
09:32:56 JD07 PREEMPT   1A14
09:33:21 JD07 MISC      1A12, CLOSE TO THE TRIPLE A MINI STORAGE
09:33:38 JD07 MISC      1A1, ADVD HE IS 10-5 VICTIM AND SEE IF HE CAN IDENTIFY
09:33:53 JD07 MISC      631, TRYING TO VERIFY ETHINICITY
09:34:01 JD07 MISC      1A1, ADVD AN AMERICAN MALE
09:34:16 JD07 MISC      631, ADV DWHAT ABOUT THE HOODED SWEATSHIRT
09:36:15 JD07 MISC      1A1, SUBJ WASNT THE ONE
09:36:27 JD07 MISC      631, HE SUBJ GOT IN TO A CAB
09:36:36 JD07 MISC      631, ADVD GOING TO NEW ORLEANS
```

IMAGED DEC 0 3 2007   83110

Tibaldo, Inc.        INCIDENT HISTORY DETAIL 08070281 Page                 09:28
                    JEFFERSON PARISH POLICE                                 09:28
*************************************************************************

```
09:37:26 JD07 MISC      631, ADVD IS IT GREEN SHIRT AND BLUE JEANS
09:37:55 JD07 MISC      1A1, HAD ON BLUE JEANS FOR SURE
09:38:04 JD07 MISC      631, ADVD DOESNT SEE A CAB
09:38:15 JD07 INSRVICE  1A12
09:38:30 JD07 BACK-ONS  1A1 1A12
09:38:30 JD07 ID        1A12 <S97695>SIMONEAUX, PAUL
09:38:51 JD07 MISC      1A12, ADVD HE IS WITH A W/M BLK SHIRT BLUE JEANS
09:39:04 JD07 MISC      631, M SEEM W/M BROWN HAIR GREEN SHIRT
09:39:58 JD07 CHGLOC    1A12 CLAIBORNE DR/JEFFERSON HY,ME, SPUR STATION
09:40:10 JD07 MISC      1A12, SUBJ HAS A 95K
09:40:42 JD07 CHGLOC    1A12 EAGLE/CLAIBORNE
09:40:50 JD07 MISC      1A1, GET NOPD OUT HERE
09:40:50 JD05 MISC      EAGLE AND CLAIBORNE
09:41:00 JD07 MISC      1A12, ADVD THE SUBJ HAS A 95K....
09:41:07 JD07 BACK-ONS  1A12 1A10
09:41:07 JD07 ID        1A10 <S22906>ARSENAUX, SANDRA
09:41:20 JD07 CHGLOC    1A1 EAGLE/CLAIBORNE
09:41:26 JD07 ONSCENE   1A1
09:41:39 JD07 MISC      AIR IS 10 83
09:42:43 JD07 BACK-ONS  1A1 1A3
09:42:43 JD07 ID        1A3 <S99205>SOILEAU, MARK
09:43:12 JD05 MISC      NOPD E/R
09:43:19 JD07 MISC      1A3, ADVD STILL NEED NOPD TO LOC
09:43:21 JD07 INSRVICE  1A3
09:44:54 JD07 ONSCENOK  1A1
09:44:54 JD07 ONSCENOK  1A10
09:44:54 JD07 ONSCENOK  1A12
09:45:44 JD07 MISC      631, ADVD TO SLOW NOPD DOWN ...SINCE JPSO ADVD A C/4
09:49:26 JD07 MISC      1A1, START C/S TO THE LOC
09:50:37 JD07 BACK-ENR  1A1 805
09:50:37 JD07 ID        805 <107276>NAUMANN, RODNEY E
09:51:24 JD07 MISC      631, HAVE AN ON DUTY ROBBERY GET IN TOUCH....
09:51:47 JD05 MISC      JP 568 ADVD
09:52:49 JD07 MISC      631, P/S 416 2778 .
09:52:59 JD07 MISC      631, ADVD IT IS FOR 1A1
09:54:24 JD07 MISC      1A1, 10 53
10:07:47 JD07 TRANSPRT  1A12 JPCC, 1X
10:08:24 JD07 INSRVICE  1A10
10:20:16 JD07 MISC      1A1, 416 8778, FOR 1A1, FOR DET TO 1021
10:20:36 JD05 MISC      JP 568 ADV
10:24:19 JD07 MISC      1A1, REQ C/S MEET HIM AT 250 IRIS, 805 ADV
10:24:22 JD07 CHGLOC    1A1 250 IRIS AV,ME
10:24:27 JD07 ONSCENE   1A1
10:24:41 JD07 CHGLOC    805 250 IRIS AV,ME
10:27:44 JD07 ONSCENE   1A12
10:28:36 JD07 MISC      1A1, ADV HE IS OUT ON IRIS
10:35:57 JD07 ONSCENE   805
10:36:41 JD07 MISC      805, 1053
10:49:01 JD07 INSRVICE  805
11:13:44 JD07 INSRVICE  1A12
11:35:56 JD05 BACK-ONS  1A1 1A12
11:35:56 JD05 ID        1A12 <S97695>SIMONEAUX, PAUL
12:06:10 JD07 INSRVICE  1A12
12:24:15 JD07 CLEAR     1A1 R
12:34:40 JD07 INSRVICE  631
12:34:40 JD07 CLOSE
```

S-3

IMAGED DEC 0 3 2007
83110

Tiberon, Inc.   INCIDENT HISTORY DETAIL:   J07007026   Page  3 (last) 09 05 07
                JEFFERSON PARISH POLICE                                09:28
*************************************************************************

OPERATOR ASSIGNMENTS:   JC01   115581 KATICICH, ELLA OP30
                        JD07   115835 RHODES, JIANNI OP40
                        JD05   115007 TOURELLE, ASHLEY  OP18
          AS OF 10:07:47:  JD07   S94188 BANKSTON, LINDA  OP11
          AS OF 10:20:36:  JD05   S32320 BODLEY, SHARON A OP52
          AS OF 11:35:56:  JD05   115007 TOURELLE, ASHLEY  OP18
          AS OF 12:34:40:  JD07   115007 TOURELLE, ASHLEY  OP18

IMAGED  DEC 0 3 2007

S - 3
83110

# EXHIBIT- J

1  A.   Well, that's -- yeah.  I mean that's definitely

2  something that stands out.  But I'm looking for a lot

3  of other things.  I mean a blue-hooded sweatshirt can

4  be taken off and thrown away.

5  Q.   Okay.  And when you see Mr. Ayo standing on the

6  corner, he's talking to somebody acting like nothing's

7  going on.  The only thing you know at that time is

8  they've apprehended someone else, correct?

9  A.   Correct.

10  Q.   Do you know how many people were with the person

11  that was apprehended?

12  A.   No, ma'am.

13  Q.   And why would you go to the scene to assist those

14  officers?

15  A.   Back them up just in case -- I mean they had

16  somebody that just stuck a knife to a old man's

17  throat.  Who knows what this guy's capable of?  So I

18  go to back up the other officers if in fact it is that

19  person.

20  Q.   Okay.  And would that be normal procedure?

21  A.   Absolutely.

22  Q.   And at the time that you saw Mr. Ayo, was he

23  doing anything to make you think he had done something

24  wrong?

25  A.   No.  Mr. Ayo didn't know I was even there.  So --

26      MS. SWAIM:

27            I have no other questions, Your Honor.

28      THE COURT:

29            Thank you, Lieutenant.  You may step

30        down.

31      THE WITNESS:

32            Yes, sir.

-41-

BY MR. SCHMIDT:

Q.   Good morning, Deputy McCoy.  Let me ask you:  You indicated that when the word came out about apprehending Mr. Ayo at the Spur station you were already in the vehicle with the victim; is that correct?

A.   Yes, sir.

Q.   Y'all had just left the scene of the earlier suspect.

A.   Yes.

Q.   Okay.  Now, the earlier suspect that y'all stopped, he was a Mexican gentleman, wasn't he?

A.   Hispanic, yes.

Q.   And at no time -- what prompted the sheriff's office to stop a Hispanic gentleman?

MS. SWAIM:

Judge, I'm going to object to him testifying what prompted someone else to stop someone else.

THE COURT:

Sustained.

BY MR. SCHMIDT:

Q.   If you have knowledge, do you know why they would have stopped the Hispanic gentleman?

A.   Because the description said white male, and Hispanics are traditionally considered white males.  And he fit the height and the weight, and Mr. DeBroy, the victim, never did say he wasn't Hispanic.

Q.   Okay.  When Mr. DeBroy, the victim -- did he travel with you in the front seat or the back seat?

A.   Front seat.

Q.   He would have been privy to the radio

-66-

213

MR. SCHMIDT:

Well, I asked him if what he saw was concealed or not, was it concealed.

THE COURT:

That wasn't your question either.

MR. SCHMIDT:

Well, I'll rephrase it then.

THE COURT:

You asked him if it was a concealed weapon in the legal sense. That was the tone of your question.

MR. SCHMIDT:

Okay. I'll ask him -- I'll rephrase the question.

THE COURT:

All right.

* * * * * *

(THE FOLLOWING IS WITHIN THE HEARING OF THE JURY)

* * * * * *

BY MR. SCHMIDT:

Q.   The knife you saw was exposed in his back pocket; is that correct?

A.   The end was exposed.

Q.   And he was not engaging -- when you came on the scene, he was not engaging in any illegal conduct at that time, was he?

A.   Correct.

Q.   Now, you had testified earlier that you stopped him -- you immediately came upon him and removed the knife from his back pocket and put it on the ice machine, correct?

A.   Correct.

257

1  Q.   Okay.  Let me ask you:  You estimated that the

2  weight of the perpetrator was 150 pounds.

3  A.   Yes, sir.  I'm sure he put down what I said.

4  Q.   And the build of the perpetrator you indicated

5  would have been a slim build person?

6  A.   Yes.

7  Q.   Now --

8  A.   He wasn't a big fat man.

9  Q.   With regard to hair color, it doesn't appear you

10  were able to identify a hair color; is that true?

11  A.   I remember saying it was dark hair.  I didn't

12  say -- I may have said different colors, but it was

13  dark hair.  He wasn't a blond.

14  Q.   And with regard to any specific markings, tattoos

15  or --

16  A.   I don't remember seeing anything like that.

17  Q.   No scarring or anything like that?

18  A.   No, sir.

19  Q.   Now, let me ask you, Mr. DeBroy -- and I

20  understand that this is all difficult, but as you can

21  appreciate this is very, very important.

22  A.   I understand.

23  Q.   I was standing right here where I am right now,

24  and you were sitting right where you are right now,

25  and I asked you the question if you could identify the

26  individual that robbed you that day.  And do you

27  remember what you specifically told me?

28  A.   I said I wasn't sure.  I said, "No."  And I saw

29  people all over the place, and I didn't look really at

30  each person.  And I don't know whether I could

31  identify him that day or not.  I had an idea, but I

32  would never say without being sure.

Pamela Lobrono
Official Court Reporter
24th Judicial District Court
Parish of Jefferson

285

# *Application For Writs*

## No. '07 -K- 871

# COURT OF APPEAL, FIFTH CIRCUIT

# STATE OF LOUISIANA

OCT 3 1 2007

*Mary S Legnon*

Deputy Clerk

**GLENN CHARLES AYO**
VERSUS
**JON A. GEGENHEIMER,**
**CLERK OF 24TH JUDICIAL DISTRICT COURT,**
**STATE OF LOUISIANA, ET AL**

IN RE GLENN CHARLES AYO

APPLYING FOR  SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE HENRY G. SULLIVAN JR., DIVISION "M", NUMBER 07-369

**Attorneys for Relator:**

Glenn Charles Ayo #80664500
Jefferson Parish Correctional Center
P. O. Box 388
Gretna, LA   70054

**Attorneys for Respondent:**

Terry M. Boudreaux
Assistant District Attorney
Parish of Jefferson
200 Derbigny Street
Gretna, LA 70053
(504) 368-1020

## WRIT GRANTED

Defendant alleges that the trial court did not rule on his pro se "'Petition for Writ of Habeas Corpus' detailing twenty-two (22) viable points of law." Accordingly, it is ordered that the trial court rule on defendant's motion, if it has not already done so.

**Gretna, Louisiana, this 31ˢᵗ day of October 2007.**

*C E M*

**JUDGE CLARENCE E. McMANUS**

**JUDGE MARION F. EDWARDS**

**JUDGE WALTER J. ROTHSCHILD**

A TRUE COPY
GRETNA

OCT 3 1 2007

COURT OF APPEAL, FIFTH CIRCUIT

1          or was he absolutely certain that it was the

2          jacket?

3    A    He said it looked like the jacket.

4    Q    You testified earlier that the victim's eye sight

5          was not very good.  What led you to believe

6          that?

7    A    Well, because he was wearing glasses and he's

8          eighty-six years old.

9    MR. SCHMIDT:

10              No further questions.

11   THE COURT:

12              Any ReDirect?

13   MS. SWAIM:

14              No Your Honor.

15   THE COURT:

16              Thank you Deputy; you may step down.

17   MS. SWAIM:

18              And Judge, with that testimony I'm going

19         to submit on all Motions and the Preliminary

20         Hearing as well.

21   THE COURT:

22              Thank you.  Any argument?

23   BY MR. SCHMIDT:

24              Your Honor, with regard to the Statement

25         that was purportedly done; exactly what the

26         Statement  is  is  uncertain,  because  the

27         Officer was not able to effectively testify

28         to it.  But regardless of that; it is clear

29         that, you know, he should not have been

30         detained  in  Orleans  Parish  by  Jefferson

31         Parish Officers.  There is no evidence that

32         they are commissioned to operate in Orleans

                            49                        124

1    Parish.  And clearly the commission of the

2    offense was completed and they were without

3    any authority to detain him or take any type

4    of action in that regard.

5         With regard to the jacket which was

6    taken from the cab: the Officer admitted

7    that he had no consent or authority to go

8    into the cab and take it from the duffle

9    bag.

10         And on that basis we would ask that that

11    be suppressed.  With regard to the

12    Preliminary Examination, we would submit on

13    that.

14    THE COURT:

15         Thank you.

16    MS. SWAIM:

17         And Judge, briefly.  Certainly the

18    Defendant was detained in Orleans Parish.

19    There was a hot pursuit obviously, other

20    than just a call in that someone matching a

21    description, armed with a knife at the Spur

22    Station, who had just armed robbed someone.

23    Certainly the law isn't that you just sit

24    back and let someone go because you've

25    crossed a line.

26         And Judge, as far as the items found in

27    the cab.  The cab driver gave the Police

28    information that the Defendant's bag was in

29    the cab; it was not his own car - was in a

30    public cab - when the Police Officer went

31    and looked in the cab, the shirt fitting the

32    description given by the victim is sticking

125

# EXHIBIT- K

THE COURT:

     Yes, you may.

MR. SCHMIDT:

     I have no further questions, Your

  Honor.

THE COURT:

     Thank you.  Any redirect by the State?

MS. SWAIM:

     Yes, Your Honor.

REDIRECT EXAMINATION

BY MS. SWAIM:

Q.   Lieutenant Jewell, that radio, that dispatch transcription you're looking at, did you type that?

A.   No, ma'am.

Q.   Whose typing those words that end up there?

A.   I have no idea.  I guess the dispatcher.

Q.   Okay.  And there is a dispatcher, right?

A.   Yes, ma'am.

Q.   Can you explain to the Ladies and Gentlemen of the Jury what a dispatcher is?

A.   A dispatcher is someone who dispatches calls out to the deputies on the street or the officers.  She receives that -- well, the 911 operator is different than the dispatcher.

Q.   So you talk -- as we heard you talking on the 911 tape -- you're talking, and then someone else is typing.

A.   I guess.

Q.   Typing what you said.

A.   I guess.

Q.   Now, you and I met the other day, correct, in my office?

1    A.   Correct.

2    Q.   Did I play the copy of the dispatch tape to you?

3    A.   I believe so.

4    Q.   And do you remember hearing on the dispatch tape

5    as we all just heard --

6         MR. SCHMIDT:

7              Objection, Your Honor.  The State's

8              asking Lieutenant Jewell to testify to what

9              the tape says.  We've all listened to the

10             tape.  The tape's in evidence.  I think it's

11             inappropriate for him to try to testify as

12             to what the tape says.  He can testify to

13             what he said.

14        THE COURT:

15             The tape is in evidence.  He can

16             testify as to what he said.

17   BY MS. SWAIM:

18   Q.   Lieutenant Jewell, again you listened to the 911

19   tape.  We listened to it in my office, correct?

20   A.   Correct.

21   Q.   Do you remember on the 911 tape saying that you

22   thought you saw a knife in the back pocket?

23   A.   I believe I said that.  That's again why I

24   answered his question earlier that way.

25   Q.   And, again, you've heard the 911 tape.  This is

26   not your writing.  That's someone writing what you

27   say, correct?

28   A.   Correct.

29   Q.   Now, Lieutenant, when you're driving around and

30   looking for people, the one main thing you're looking

31   for is a blue-hooded sweatshirt, correct, or blue

32   hooded pullover or something like that, correct?

Pamela Lobrono
Official Court Reporter
24th Judicial District Court
Parish of Jefferson

187

## JEFFERSON PARISH SHERIFF'S OFFICE
### TRANSCRIBED AUDIO TAPE STATEMENT FORM

STATEMENT OF: _____   JPSO ITEM #: _____
               (FULL NAME)

LOCATION: _____
             (STREET, CITY, STATE)

DATE / TIME TAKEN: _____   INCIDENT: _____
                 (DATE)        (TIME)

OFFICER (S): _____

(Inaudible, system)
This recording was made by, Sgt. Betty Zerangue, day watch commander, Communications, on September 7, 2007. Date of this entry January 7, 2007, location of occurrence 250 Iris Avenue in Metairie. The first call was taken by Operator 30, on position Dayfield 1, starting time of the recording 9:21.

Operator 30: This is 911 Operator 30.

Caller: Yes mam, this Ms. Cunningham, we live at 250 Iris Avenue, right across from Jefferson Variety One of our people had a knife put to his throat and was robbed right on the corner, right outside.

Operator 30: Okay, hold on one moment.

Caller: Okay.

Operator 30: What's your name?

Caller: My last name is Cunningham, C

Operator 30: What's your first name, baby?

Caller: Beatrice, B-E-A-T-R-I-C-E.

Operator 30: And this was an employee?

Caller: No, uhm we are members of one of the Mardi Gras crews and we are here to set up this morning and he was walking into the building and the guy, it happened about 10 minutes ago.

Operator 30: Okay, uhm was he wh, the person that did it, white male? black male?

Caller: Uhm, he said he was white.

Operator 30: Okay, wait just a moment    IMAGED    DEC 0 3 2007    ████████

TRANSCRIBER: fls                     PAGE 1 OF 4    83110

Caller:  He had a hood up over his head.

Operator 30:  Okay wait just a moment, what color was the hood, ask him?

Caller:  Uh, Pat

Operator 30:  Put him on the phone for me, babe.

Caller:  Hold on just a second, can't hear you.  Uh 911

Operator 30:  Okay, sir

Male Victim:  Hello?

Operator 30:  Okay sir, what color was the hood he was wearing?

Male Victim:  A blue hood.

Operator 30:  Dark blue; light blue?

Male Victim:  Blue da uh no uh like uh, a good looking blue, navy blue, navy blue, navy blue, navy blue a white man about uh about 30 years old.

Operator 30:  Okay just a moment.

Male Victim:  No he was clean shaven, he was a nice looking man.

Operator 30:  He got money from you?

Male Victim:  Yeah, he got about 30 dollars.

Operator 30:  Okay just a moment

Male Victim:  Ha wanted my wallet, I told him I didn't have a wallet.  Then he said "you better give me your money or I'm going to kill ya", so he had a big knife up against my throat so I didn't give him my wallet I gave him some money.

Operator 30:  Okay just moment, stay on the line with me.  What way did he go towards?

Male Victim:  He went towards Jeff Highway.

Operator 30:  On foot?

**S - 4**

MAGED  DEC 0 3 2007  83110

ITEM #: _____                          PAGE 2 OF 4

**JEFFERSON PARISH SHERIFF'S OFFICE**
**TRANSCRIBED AUDIO TAPE STATEMENT CONTINUATION FORM**

Male Victim: On foot, yes, he was, he was in fact some of the people coming here saw him they didn't know who he was going on foot towards Jefferson Highway

Operator 30: About how tall was he?

Male Victim: He was about, 5........I'm about 5'6 he was about 5'7, 5'8 at the most.

Operator 30: About how much did he weigh?

Male Victim: He weighed about I'd say he weighed about uh, about 170 pounds.

Operator 30: Okay and did you, what color pants was he wearing?

Male Victim: Uh, I can't remember his pants it was just ordinary pants.

Operator 30: Okay and did anything else to distinguish him by, did you see the color of his hair, any tatoos', facial hair?

Male Victim: He had black hair and clean shaven. He was somebody you wouldn't notice on the street. You know what I mean

Operator 30: Yeah, and it occurred ten minutes ago?

Male Victim: Let's see right now it's about five after nine.

Operator 30: Okay sir so do you need medical, …..

Male Victim: No, no

Operator 30: are you hurt?

Male Victim: No mam, I'm not hurt, he threw me down and put a knife against my throat but I wasn't hurt. I just shocked. The knife looked so big.

Operator 30: Okay sir, uhm

Male Victim: He said if I got up, he would kill me.

Operator 30: I'm sorry.

Male Victim: He said if I got he'd kill me, he didn't want me to see where he was running, so I got up after he was gone. I didn't look

Operator 30: Did he take your wallet or just the money?

S - 4
31101

MAGED   DEC 0 3 2007

ITEM #: _                                      PAGE 3 OF 4

## JEFFERSON PARISH SHERIFF'S OFFICE
### TRANSCRIBED AUDIO TAPE STATEMENT CONTINUATION FORM

**Male Victim:** I didn't have a wallet, I just have a thing that I carry all my credit cards and stuff with.

**Operator 30:** Okay.

**Male Victim:** He said give me your wallet so I didn't have a wallet so he said give me your money so I just handed him my money, I said you didn't have to do all this, I would have gave you the money.

**Operator 30:** All right sir, uhm, let me speak to Beatrice.

**Male Victim:** Wait, wait, wait, what did you say?

**Operator 30:** Is she there still?

**Male Victim:** Did she ask, she wants to talk to you

**Caller:** Yes mam,

**Operator 30:** Beatrice, I just need to verify your cell phone number, what is that?

**Caller:** 453-

**Operator 30:** Uh huh

**Caller:** 1610,

**Operator 30:** Okay, let him know that we have someone on the way, okay?

**Caller:** Thank you so much

**Operator 30:** Thank you.

S - 4

MAGED   DEC 0 3 2007   83110

ITEM #: _                                          PAGE 4 OF 4

# EXHIBIT- L

1        memory?

2   A   No Ma'am.

3   Q   Did you take a Statement from the victim on that

4          date?

5   A   Yes I did.

6   Q   How is it that you documented that Statement?

7   A   On a form.

8   Q   Did you fill it out or the victim filled it out?

9   A   I filled it out.

10  Q   After you spoke with the victim, what did you do

11         next after you made that initial stop, and

12         he said that that was not the perpetrator?

13  A   Another Officer off-duty observed somebody

14         fitting   the   perpetrator's   description,

15         getting into a cab at Jules and Jefferson.

16      And he had to get turned around.  The cab was

17         headed towards New Orleans on Jeff Highway.

18  Q   And then what happened next?

19  A   Well, we started after the cab.  Deputy Simoneaux

20         saw the cab had pulled into a Spur Station

21         in New Orleans; and he pulled in behind him.

22         And they had already gotten out the cab.

23      And he tried to stop the passenger.  And the

24         passenger was giving him a problem; and he

25         called   it   in   before   he   secured   the

26         passenger.  We were in route to assist him.

27  Q   When you pulled up, was Deputy Simoneaux still

28         trying to detain the suspect?

29  A   Yes he was.

30  Q   And when you pulled up, what did you do?

31  A   When I pulled up the victim was with me.  And he

32         said: Yes, that's him; that looks like him.

1       And I got out the car to help Paul. I didn't
2           have time to ask him are you sure or
3           anything. I got out to help Paul because he
4           was having problems with the guy. And we
5           finally got the handcuffs on him.
6       Then I think Paul walked over to my unit. And
7           then I told Paul he identified him as being
8           the perpetrator. And he walked over there
9           and he asked him; Are you sure. And the guy
10          said: Well, let me get a little closer. And
11          he got a little closer, and he said; Yes,
12          I'm sure.
13  Q   So y'all allowed the victim to get closer to the
14          Defendant to make sure it was him; correct?
15  A   But he's an elderly gentleman, and his eyesight
16          is not that good.
17  Q   And when he got closer, he made a positive
18          identification; correct?
19  A   Yes.
20  Q   And when he made that identification, where
21          exactly was the Defendant?
22  A   The Defendant was - At that time I think we had
23          already put him in the car. I'm not sure,
24          but I think we had already put him in the
25          car.
26  Q   So he was either in the car or outside of the
27          car; correct?
28  A   Right.
29  Q   Did you yourself have anything to do with
30          retrieving the knife, or did you ever see
31          the knife on the Defendant himself?
32  A   I didn't see the knife on the Defendant. But

40

115

EXHIBIT- M

1        Highway.  So he took a ride over there.  So
2        I mentioned to him and I said: No, that's
3        not the man.  He wasn't Mexican; he was a
4        White man.
5    So we got back in the car.  And when we got back
6        in the car, he wasn't taking me back to Iris.
7        And he got a call and said they had someone
8        on Eagle and Claiborne.  And he took me down
9        there.
10   Q   And when you're back to Eagle and Claiborne, were
11       you in the Police vehicle?
12   A   Yes Ma'am.
13   Q   How many Police Officers were you with in that
14       vehicle?
15   A   Just that one gentleman.
16   Q   And do you remember where you were sitting in
17       the Police vehicle?
18   A   Right on the side of him.
19   Q   And when you first pulled up, do you remember
20       what type of place it was you pulled up to?
21   A   It was a service station.  The cab had stopped to
22       get gas, evidently.
23   Q   And when you first pulled up to the gas station;
24       what happened when you pulled up?
25   A   When I pulled up they asked me if I could
26       identify the man.  I said: No; let me go
27       look at him first.  Because I got out of the
28       car and it was a little distance away.  And
29       I walked over to his face; and I said yea,
30       that's the gentleman; that's the man.
31   Q   So when you first saw him you were a distance
32       from him in the vehicle; correct?

85

# EXHIBIT- N

EUGENE CUTTINGHAM

HARAHAN P.O. RESERVE OFFICER H 518

KNOW MR. BAPTISTE, KNOW PARTICULARS OF CASE
DID NO ID DEFENDANT BUT DO NOW

Juror # 57017   Proof Suffix 545
Excused by consent of counsel

November 27, 2007

FILED

27 2007

DEPUTY CLERK

IMAGED DEC - 7 07

# EXHIBIT- O

1      Is that the only identification that was

2      made?

3  A  To my knowledge.

4  Q  Did you remain at the scene throughout this

5      process?

6  A  After we secured everything, the victim's

7      property and everything and we positively

8      identified him, shortly thereafter I

9      transported him to the Correctional Center

10     to do some booking on him.

11  Q  After the victim made the I.D. from the Police

12     car, what happened to the victim then?

13  A  I have no idea.

14  Q  Was he transported by JPSO away?

15  A  I was not there if he was. I left the location

16     while he was still with Deputy McCoy.

17  Q  How far away was the victim from the suspect

18     when he made the identification?

19  A  Twenty feet maybe. We patted him on the hood of

20     my car, wrestling with him when Deputy McCoy

21     arrived; which he pulled into the parking

22     lot fifteen or twenty feet, give or take.

23  Q  Was the victim in the front or the back seat?

24  A  I believe he was in the front seat.

25  Q  Obviously in the passenger side.

26     From the passenger side position, where -

27     Was the suspect's face pointed towards that

28     Police vehicle where the victim was?

29  A  The suspect while on the hood of my car when

30     Deputy McCoy pulled in, his windshield would

31     be facing directly at the suspect while we

32     were wrestling with him on the front of the

34

109

# EXHIBIT- P

1    A.    Sure.

2    Q.    Okay.  Now, can you show the Ladies and Gentlemen

3    on the map where the Spur station is at Eagle and

4    Claiborne.

5    A.    Right here (indicating), on this side of the

6    street.

7    Q.    And that's in New Orleans, correct?

8    A.    Correct.

9    Q.    Now, if you could give me an estimate, from 250

10   Iris where the robbery occurred to Cicero, the

11   intersection of Jules and Jefferson, about how far of

12   a distance would that be?

13   A.    Maybe a block and a half, two city blocks,

14   considering that you have to come up and go down this

15   little side street and then come up another half a

16   block and then come up another half a block.  So it's

17   roughly a few city blocks, give or take.

18   Q.    Something that could be obviously walked.

19   A.    Oh, you can run it in less than a minute.

20   Q.    Maybe you could (laughter).

21   A.    Well, somebody could run it.

22   Q.    Now, as far as from 250 Iris -- well, I'm sorry.

23   From Jules and Jefferson and the intersection by

24   Cicero to Eagle and Claiborne, about how far would

25   that be?

26   A.    Well, if everybody was familiar with the S curve,

27   it's approximately right here (indicating).  So you go

28   into the "S" curve, you cross Monticello, the canal,

29   which becomes 17th Street Canal down by the lake, but

30   its the line of Jefferson and Orleans Parishes, and

31   one, two, three, four, five blocks from the canal.  So

32   5, 10 blocks.  Just cross over the double railroad

-23-

# EXHIBIT- Q

IN THE

FIFTH CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

GLEN CHARLES AYO,
          DEFENDANT/PETITIONER

-VS-                                DOCKET NO. 08-KA-0468

STATE OF LOUISIANA,
          PLAINTIFF/RESPONDENT

FILED: _____        _____
                                  DEPUTY CLERK OF COURT

### MOTION FOR IN-CAMERA INSPECTION/ALTERNATIVE AMENDED MOTION TO CORRECT AND SUPPLEMENT THE RECORD

COMES NOW, the above named Defendant, Pro Se, respectfully moves this Honorable Court pursuant to La.C.C.P. Art. 2132 (2006), and would show the following in support thereof:

1.    The Fifth Circuit Court of Appeal removed Case No. 08-KA-468 from the Appeal Docket September 9, 2008, remanding to the District Court for the opportunity to correct the record on appeal. See In the Interest of Solomon, 672 So.2d 1039, 1043 (La.App. 4 Cir. 1996), any inadequacy of the record is imputable to Appellant. The hearing, however, has since been canceled due to the District Court's miraculous discovery of the entire record on appeal after a great waste of judicial resources.

2.    Appellant contends, careful review of the record reveals that the State's cross-examination of Mr. Ayo (an out-right shouting match) regarding improper questioning Defendant of "other crimes" evidence has been unlawfully altered and portion(s) omitted as follows:

| Original | As Depicted |
|---|---|
| Q.  You received 17 years in 1994, and now 13 years later you're on parole? | (Part Omitted)<br>Q.  You're not on parole? |
| A.  No, ma'am. | A.  No, ma'am. |
| Q.  He's a liar. | Q.  At this time. (Altered) |
| A.  I'm not lying. | A.  At this time. (emphasis added) |
| Ms. Swaim: He's a liar.<br>          He's a liar. | (Omitted)<br>(Omitted) |
| Defendant:  You want to talk about liars, let's talk about your lying ass officers. | (Omitted) |
| Mr. Schmidt:      Objection, Your Honor. | (Omitted) |

(See R. 329-365).

4.     Appellant contends, he has "never," never, been on parole in any State. Thus, it's ridiculous for the Court Reporter to assert Mr. Ayo's response as:

"No, ma'am [I'm not on parole] at this time."

(R. 329-330) (emphasis added).

5.     Appellant contends, Mr. Ayo was the (only) defense witness to testify. The State's inflammatory remarks of calling him *"a liar"* at least three (3) times in the presence of the jury, effectively constituted the prosecutor instructing the jury not to believe the only defense witness. Thus, the repeated improprieties were so prejudicial and "material," the personal opinion of the State affected the substantial due process right(s) of Mr. Ayo receiving a fair trail as guaranteed by both the Constitutions of the United States and the State of Louisiana. See U.S. v. Garza, 608 F.2d 659, 665 (5th Cir. 1978).

6.     Appellant contends, Louisiana jurisprudence is clear, "[M]isstatements, irregularities, or which omits a material part of the trial record, may be corrected

2

even after the record is transmitted to the appellate court." La.C.C.P. Art. 2132 (2006); See also Guillie v. Dept. of Transp. And Dev., 538 So.2d 1144, 1146 (La.App. 5 Cir. 1989).

WHEREFORE, Appellant respectfully moves this Honorable Court to grant relief as follows:

(1)     Order the Court Reporter to allow Mr. Ayo, not his "prior" ineffective defense counsel, an opportunity to compare the tapes of the trial to the transcript(s), consistent with the directions in State v. Jackson, 746 So.2d 698, 702-703 (La.App. 5 Cir. 1999).

This I Forever Pray.

Respectfully submitted,

Appellant, Pro Se

## AFFIDAVIT VERIFICATION

I, Glenn Charles Ayo #531823, hereby declare under penalty of perjury that I read the foregoing Motion for In-Camera Inspection/Alternative Amended Motion to Correct and Supplement the Record and the facts herein are all true and correct, and complete to the best of my knowledge.

Sworn this 12th day of October, 2008.

_____
Appellant, Pro Se

## CERTIFICATE OF SERVICE

I, Glenn Charles Ayo #531823, hereby certify that a true copy has been mailed/hand delivered to:

District Attorney's Office
200 Derbigny St.
Gretna, LA 70053

Mailed this 12th day of October, 2008.

_____
Appellant, Pro Se

Glenn C. Ayo #531823
Main Prison
Louisiana State Penitentiary
Angola, LA 70712

4

IN THE FIFTH CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

GLENN CHARLES AYO                                      OCTOBER 31, 2008

        APPELLANT / PETITIONER

        - VS -                                    DOCKET NO. 08-KA-0468

STATE OF LOUISIANA

        APPELLEE / RESPONDENT

_____

                                        COURT OF APPEAL,
                                        FIFTH CIRCUIT

        FILED                           DEPUTY CLERK

                                        FILED  NOV 1 2 2008

        WRITTEN OBJECTION TO COURT ORDER

        FOR IN-CAMERA INSPECTION BY "SAME" ENTITY

1.    APPELLANT CONTENDS, THIS COURT GRANTED PETITIONER'S IN-CAMERA
      INSPECTION OCTOBER 27, 2008, AFFORDING MR. AYO'S (APPELLATE COUNSEL)
      OPPORTUNITY TO "EXAMINE COPIES" OF STATE AND DEFENSE EXHIBIT(S)
      ON BEHALF OF DEFENDANT. HOWEVER, AMBIGUOUSLY ORDERED THE
      "COURT REPORTER" TO COMPARE THE TRIAL TAPES TO PORTION OF
      TRANSCRIPT ALTERED BY THE VERY SAME ENTITY ACCUSED.

2.    APPELLANT CONTENDS, NOT ONLY DOES THE CURRENT ORDER CREATE
      A "CONFLICT OF INTEREST," BUT FURTHER CONFLICTS WITH CURRENT
      LAW. SEE E.G., STATE V. JACKSON, 746 SO. 2d 698, 703 (LA. APP. 5TH CIR.
      1999)(THE COURT REPORTER [SHOULD] ALLOW DEFENSE COUNSEL AN
      OPPORTUNITY TO COMPARE THE TAPES OF THE TRIAL TO THE TRANSCRIPT).

3.    APPELLANT CONTENDS, JUST AS APPELLATE COUNSEL, A NEUTRAL PARTY
      TO COMPLAINT OF DEFENDANT BE PERMITTED TO EXAMINE EXHIBIT(S).
      APPELLATE COUNSEL SHOULD COMPARE THE TRIAL TAPES TO TRANSCRIPTS
      AND NOTIFY THIS COURT IF DISCREPANCIES EXIST. JACKSON, SUPRA.

                                        RESPECTFULLY SUBMITTED,

                                        _____

                                        GLENN C. AYO 531823

# EXHIBIT- R

4

1      MR. WITHEE:  To the cap of 17.  That's

2   understood, your Honor.  I'd like to ask Mr. Ayo if

3   that's his understanding of the plea agreement.

4          THE DEFENDANT:  Yes, sir, it is.

5          THE COURT:  Raise you right hand.

6          (Whereupon, the defendant was sworn.)

7          THE COURT:  Now, you pronounce it Ayo?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, Mr. Ayo, if you enter a plea of

10   no contest to the charge, I am going to ask you

11   questions about the offense to which you pled.  If

12   you answer those questions under oath on the record

13   in the presence of your attorney, your answers, if

14   untrue, may later be used against you in prosecution

15   for perjury.

16          Mr. Withee, is it a plea of no contest to the

17   offense of manslaughter?

18          MR. WITHEE:  That is correct, your Honor.

19          MR. STRICKLER:  Your Honor, let me check this.

20   It's manslaughter with a firearm, makes it a first

21   degree felony.  That's why you can go up to 17 years,

22   there's not a cap at 15.

23          THE COURT:  Is there also a mandatory minimum?

24          MR. STRICKLER:  No, your Honor, because under

25   the statute, it has -- manslaughter is not enumerated

5

1   and it's not considered murder.

2       THE COURT: Okay.

3       MR. WITHRE: Understood, your Honor.

4       THE COURT: Now -- and you are Glenn Charles

5   Ayo?

6       THE DEFENDANT: Yes, sir.

7       THE COURT: Mr. Ayo, you have announced your

8   desire to entire a plea of no contest to the offense

9   of Manslaughter With a Firearm. It's your right to

10  do so. Before the Court may accept the plea it is

11  necessary that I find that the plea has been made

12  freely and voluntarily. I'm going to ask you some

13  questions. If you don't understand the questions or

14  the words that I use, please ask me to repeat or

15  explain any questions or statements. You may consult

16  were your attorney about any matter during

17  questioning.

18      You offered a plea of no contest to the offense

19  of Manslaughter With a Firearm, which is a first

20  degree felony. Is that correct?

21      MR. STRICKLER: Yes, sir.

22      THE COURT: And my first degree felony provision

23  here says that he can be sentenced to a term not

24  exceeding 30 years.

25      MR. STRICKLER: That's correct. But the

# EXHIBIT- S

BILL & DAVE,

IT SEEMS AT APPROX. 9:10 AM EVIDENTLY A 911 CALL WAS RECEIVED OF A ROBBERY NEAR RIVER ROAD AND IRIS AVE. THE SUSPECT FLED ON FOOT WALKING.

REPORT: "I ASKED THE CAB DRIVER WHERE HE PICKED UP THE SUSPECT. THE CAB DRIVER ADVISED THAT ON 1-7-07 AT 9:20 AM THE SUSPECT CALLED HIS CELL PHONE AND REQUESTED TO PICK HIM UP AT THE CORNER OF JULES AND JEFFERSON HWY."

LOGICALLY: COULD NOT HAVE WALKED NOR RAN TO DAVE'S, SHOWERED, AND RETRIEVED SOME CLEAN CLOTHES, ALL WITHIN TEN MINUTES AFTER THIS ROBBERY TOOK PLACE, PLUS, I PURCHASED THESE TWO (2) TRAVEL BAGS AND SHAVING KIT FROM DAVE JUST BEFORE I LEFT.

TRUE, I RETRIEVED A KITCHEN KNIFE FROM DAVE THAT PARTICULAR MORNING BECAUSE OF THE TROUBLE I HAD WITH DAN (THE PSYC-PATIENT "CONTRACTOR" WHO RIPPED ME OFF CHRISTMAS-EVE OF MY PAY) BUT I GOT THE KNIFE AFTER I CALLED THE CAB AND JUST BEFORE I WALKED OUT THE DOOR TO GET IN THE CAB — BECAUSE I HAD NO KNIFE WHEN I GOT THERE AND DAN WAS OUT SIDE!

WHETHER BILL SCROLLED DOWN HIS CELL-PHONE AND 9:20 AM IS IN FACT THE EXACT TIME — IT MIGHT BE 9:15 AM! BUT THAT IS NOT IMPORTANT TO DAVE, JUST YOU BILL!! DAVE, LISTEN TO THIS BULLSHIT — KNOWING I LEFT YOUR HOUSE AND GOT STRAIGHT INTO THE CAB.

REPORT: "THE KITCHEN KNIFE WAS IDENTIFIED BY THE VICTIM AS BEING THE KNIFE THE SUSPECT STUCK UP TO THE VICTIM'S THROAT. THE KNIFE HAD A STAINLESS STEEL BLADE, APPROXIMATELY SIX INCHES LONG, AND A WOODEN HANDLE WITH ONE SIDE OF HANDLE MISSING."

BULLSHIT, THIS WAS THE KNIFE DAVE JUST GAVE ME BECAUSE IT WAS BROKE — HE WOULDN'T LET ME TAKE THE GOOD ONE! NOT FOR DAN!! (ON BACK) 3 OF 3

THIS IS THE BACK ALL YOU SMOKERS! LAUGH LOUD, DOG!!

ANYWAY LOOK FORWARD TO HEARING FROM SOMEONE SOON.
ANYONE THAT WANTS MY ADDRESS PLEASE GIVE IT. CURRENTLY
I AM WORKING ON A BOND REDUCTION AND TRYING TO GET OUT —
IN 1994 I POSTED A $100,000 DOLLAR BOND BEFORE GOING DOWN,
FORGET YOU KNOW THAT! ALL I NEED IS FOR YOU TO BE IN COURT
FOR THAT SUPPRESSION HEARING — THAT ONE DAY IT COUNTS!
THERE IS NO SECOND CHANCES OR ANOTHER HEARING AT YOUR
CONVIENCE — WE GET ONE CHANCE — THAT IS IT!!

PLEASE INSTILL THESE TRUTHS IN YOUR HEADS AND LET THE LIES
COME AS A SURPRISE, SLAPPING THEM IN THE FACE ON MY DAY OF
RECONCILIATION!

YOUR BROTHER ALWAYS,

PS.   BILL, WHERE IS SHORES DR
                    METAIRIE, LA. 70006
EXACTLY LOCATED AT?

2.  DON'T MENTION NO THREATS IN LETTERS
    AS MY MAIL IS MONITORED ONLY
    COMING IN! PLUS, AS I SAID: ALL I NEED
    IS THE TRUTH. THANKS FOR BEING A TRUE
    BROTHER — BOTH OF YOU.



(LAST PAGE)

# EXHIBIT- T

*Department of Public Safety and Corrections*

*Public Safety Services*

May 16, 2007
3000/265/DKM/33
HQ-6/33

KATHLEEN BABINEAUX BLANCO
GOVERNOR

HENRY L. WHITEHORN, COLONEL
DEPUTY SECRETARY, PUBLIC SAFETY SERVICES
SUPERINTENDENT, OFFICE OF STATE POLICE

Mr. Glenn C. Ayo
Prisoner # 80664500
Jefferson Parish Correctional Center
Gretna, La. 70054

Re:     Response to Letter for Assistance

Dear Mr. Ayo:

Our office received your letter dated April 12, 2007 concerning illegal narcotics trafficking in the New Orleans metropolitan area. We appreciate your concern for the community and your willingness to offer information pertaining to local drug dealers operating in and around the New Orleans area. The Louisiana State Police takes your concerns and the information you are willing to provide seriously. As such, we have assigned a narcotics agent to interview you concerning specific individuals and drug trafficking organizations involved in specific illegal activity. State Police will do everything within its power to corroborate and investigate all credible leads to the fullest extent.

It is not within our purview to reduce, or agree to discuss any litigation involving a reduction in your sentence in exchange for information you are willing to provide. Such requests should be directed to the Jefferson Parish District Attorneys Office and the Jefferson Parish Sheriff's Office.

Sincerely,

Dane K. Morgan, Lieutenant Colonel
Deputy Superintendent - Investigations
Louisiana State Police
7919 Independence Boulevard
Box A-10
Baton Rouge, Louisiana 70806

COURTESY LOYALTY SERVICE
P.O. BOX 66614 BATON ROUGE, LOUISIANA 70896-6614
(225) 925-6118

DPSSP 4152

LOUISIANA STATE POLICE

DANE K. MORGAN, LT. COLONEL                              JULY 2, 2008

7919 INDEPENDENCE BLVD

BOX: A-10

BATON ROUGE, LA 70806


RE: MALFEASANCE

    MR. MORGAN,

    UNFORTUNATELY, I WAS ACCUSED OF A $78 DOLLAR ROBBERY WITHOUT INJURY.
IN MAY 2007, I MET WITH TWO AGENCIES, INCLUDING THE DEA REGARDING
MY COOPERATION AGAINST "EIGHT (8) DRUG TRAFFICKERS" — THE VERY SOURCE
OF CRIME WAVE. (SEE ATTACHMENT.)


    ONE TRAFFICKER WAS MY ALIBI WITNESS, HOWEVER, IN AN OVERZEALOUS
PROSECUTION OF PETTY OFFENSE, SHANNON SWAIN, ASST. DISTRICT ATTORNEY
FOR JEFFERSON PARISH, LOUISIANA, TO MERCY, ALTER MY ONLY OFFENSE
WITNESS. MRS. SWAIN COMMITTED MALFEASANCE, TO WIT: DISCLOSED [MY]
IDENTITY OF CONFIDENTIAL INFORMANT AND DISCLOSED ONGOING DRUG
TRAFFICKING INVESTIGATION BY INFORMING THEO BRICKLEY:

    "WHY WOULD YOU TESTIFY FOR AYO [DEFENDANT] WHEN HE IS
        TRYING TO COOPERATE WITH THE STATE POLICE AND HAVE YOU
        ARRESTED FOR TRAFFICKING IN COCAINE."

THE SAME THEO BRICKLEY WHO TRIED RUNNING OVER TWO (2) STATE TROOPERS
WITH 10 1/2 GRAMS OF CRACK IN SCHOOL ZONE. MRS. SWAIN OFFERED "PROBATION"
ON FOURTH COCAINE CONVICTION NOT TO TESTIFY FOR ME. (SEE JEFF. PARISH
PROBATION OFFICE / COURT RECORDS FOR THEO'S CURRENT ADDRESS TO VERIFY
SUCH MALFEASANCE — HE MAY BE RELUCTANT TO COOPERATE AT FIRST).

    OFFICIALS SHOULD BE ARRESTED BY PUBLIC OFFICIALS COMMITTING THE
CRIME OF DISCLOSING CONFIDENTIAL INFORMATION AND DESTRUCTION OF
JUSTICE, THUS WARRANTING INVESTIGATION AND PROSECUTION. NOTE: MRS.
SWAIN PUFFED COCAINE BACK HER NOSE THROUGHOUT MY TRIAL — SHE CAN NOT
PASS DRUG TESTING.                       RESPECTFULLY SUBMITTED,

                                         [signature]

CC:                                      GLENN C. AYO 538823
                                         LA STATE PENITENTIARY
                                         MAIN PRISON, HICKORY-3
                                         ANGOLA, LA 70712

FEDERAL BUREAU OF INVESTIGATION                JULY 2, 2008

P.O. BOX 83059

BATON ROUGE, LA. 70884-3059


RE: MALFEASANCE

    SIR / MA'AM,

UNFORTUNATELY, I WAS ACCUSED OF A PETTY $28 DOLLAR ROBBERY WITHOUT

INJURY. IN MAY, 2007, I MET WITH TWO AGENCIES, THE DEA AND STATE

POLICE REGARDING MY COOPERATION AGAINST "EIGHT (8) DRUG TRAFFICKER(S)

— THE VERY SOURCE OF CRIME ITSELF. (SEE ATTACHMENT).


1.   ONE TRAFFICKER WAS MY ALIBI WITNESS, HOWEVER, IN AN OVERBEARING

PROSECUTION OF PETTY OFFENSE, SHANNON SWAIM, ASST. DISTRICT ATTORNEY

FOR JEFFERSON PARISH, LOUISIANA, TO MERELY DETER MY ONLY DEFENSE

WITNESS, MRS. SWAIM COMMITTED MALFEASANCE, TO WIT: DISCLOSED [MY]

IDENTITY OF CONFIDENTIAL INFORMANT AND DISCLOSED ON GOING FEDERAL

DRUG TRAFFICKING INVESTIGATION BY INFORMING THEO BRICKLEY:

    "WHY WOULD YOU TESTIFY FOR HIM [DEFENDANT] WHEN HE IS

    TRYING TO COOPERATE WITH THE DEA AND HAVE YOU ARRESTED

    FOR TRAFFICKING IN COCAINE."

MOREOVER, FOR ATTEMPTING TO RUN OVER TWO (2) STATE TROOPERS AND

POSSESSING 10 ½ GRAMS OF CRACK IN SCHOOL ZONE, ON FOURTH COCAINE

CONVICTION, OFFERED HALO "PROBATION" NOT TO TESTIFY ON MY BEHALF. (SEE

JEFF. PARISH PROBATION OFFICE / COURT RECORDS FOR THEO CURRENT

ADDRESS TO VERIFY CRIME OF OBSTRUCTION OF JUSTICE — HE MAY BE

RELUCTANT TO COOPERATE AT FIRST).


2.   FURTHER, I POSSESS "TANGIBLE" EVIDENCE CONCLUSIVELY DEMONSTRATING

MRS. SWAIM COERCED OFFICER PAUL SNYDER JR., OFFICER GEORGE MCCOY,

AND LT. DETECTIVE DANNY JEWEL TO OFFER "PERJURED" TESTIMONY AT TRIAL —

"PERJURY" IS ALSO A CRIMINAL OFFENSE.


3.   MRS. SWAIM COMMITTED A "FRAUD ON COURT" AND PERJURY WHEN (#1 AND

DISPATCH TRANSCRIPT(S) DO NOT DEPICT AN ACCURATE TRANSLATION OF THE ACTUAL TRANSMISSION(S). IN FACT, THE TRANSCRIPTS ARE NOT A MERE INACCURATE ACCOUNT OF EVENTS BUT A TOTAL [FRAUD]ULENT PRINT OF THE TRUE TAPE OF EVENTS. THUS, SUCH "CRIME" OF FRAUD ON COURT WARRANTS INVESTIGATION AND PROSECUTION.

4.   ADDITIONALLY, CONTACT THE ALLEGE VICTIM ( MR. BAPTISTE M. DE BROY, 4608 SHULES DR., METAIRIE, LA. 70006, (RM. # (504) - 887 - 7976)) WHO WILL TESTIFY THAT AFTER THE JUDGE ORDERED "BAIL CLEARED TO RETURN DEFENDANT FROM JAIL TO TRIAL", MRS. SHANNON SWAIN, ASST. D.A. DELIBERATELY POSITIONED MR. DE BROY AT JAIL DOOR (BECAUSE HE COULD NOT PREVIOUSLY I.D. ME IN COURT AS PERPETRATOR), THEN COERCED MR. DE BROY TO TAKE THE STAND AND COMMIT "PERJURY" — A CRIME — UNDER OATH AT TRIAL, FALSELY IDENTIFYING ME.

NOTE:   MR. DE BROY IS 88 YRS. OLD AND THIS INVESTIGATION SHOULD COMMENCE WITHOUT DELAY TO PRESERVE MATERIAL EVIDENCE, IN THE UNFORTUNATE EVENT OF HIS DEATH.

5.   MOREOVER, MRS. SWAIN CONTINUOUSLY PUSHED DRUGS BACK HER NOSE THROUGHOUT ALL PROCEEDING(S) — SHE CAN NOT PASS DRUG TESTING.

   OFFICIALS SHOULD BE PROSECUTED AS PUBLIC OFFICIALS COMMITTING THE CRIME(S) OF MALFEASANCE, DISCLOSING CONFIDENTIAL INFORMATION AND OBSTRUCTING JUSTICE, TO WIT: WARNING DRUG TRAFFICKER(S) OF ONGOING FEDERAL AND STATE INVESTIGATIONS. ALL OF WHICH WARRANTS INVESTIGATION, ARREST, AND SURE PROSECUTION. (PLEASE CONTACT ME FOR FURTHER DETAILS AND TANGIBLE EVIDENCE).

RESPECTFULLY SUBMITTED,

GLENN C. AYO 531823

LA. STATE PENITENTIARY

MAIN PRISON, PICKING 3

ANGOLA, LA. 70712

2 of 2

# EXHIBIT- U

WITH ALL DUE RESPECT, YOUR HONOR,
SEVERAL OBJECTION(S) NEED BE MADE MATTER OF RECORD.

OBJ.    REPEATEDLY FROM JANUARY THRU APRIL 2007, I INFORMED
MRS. MARQUITA NAPUIN, DEFENSE COUNSEL OF THE NECESSITY
TO LOCATE (PRIMARY) ALIBI WITNESS "DAVE BEFORE HE MOVES
AS HE WAS HAVING LAND-LORD TROUBLE." BUT TO NO AVAIL, EACH
REQUEST WERE IGNORED.

OBJ.    THEN ON APRIL 19, 2007, BEFORE THIS HONORABLE COURT. MRS.
NAPUIN "_____" ERRONEOUSLY INFORMING
JUDGE SULLIVAN OF A NON-EXISTING ATTORNEY-CLIENT CONFLICT.
THUS WITHDRAWING FROM CASE UNDER "FALSE" PRETENSE IN AN
UNETHICAL ATTEMPT TO CIRCUMVENT AN INEFFECTIVE ASSISTANCE
AND MALPRACTICE CLAIM(S). (SIDE-BAR, SENSITIVE NATURE)

CASE    ALSO ON APRIL 19, 2007, MRS. NAPUIN AND MRS. SHANNAN SCHAFF,
ASSISTANT DISTRICT ATTORNEY BOTH SPECIFICALLY REQUESTED
MR. EVANS SCHMIDT (_____), BE APPOINTED
AS DEFENSE COUNSEL ████████████
████████████████████████████

OBJ.    IN TURN, FROM APRIL THRU AUGUST 2007, AGAIN I REPEATEDLY
INFORMED 2ⁿᵈ DEFENSE COUNSEL, SCHMIDT OF THE SAME URGENCY
TO PROCURE "PRIMARY" ALIBI WITNESS DAVE."

OBJ.    HOWEVER, FROM MY FIRST LETTER TO MRS. NAPUIN IN JANUARY, 2007
TILL THE INDIGENT DEFENDER BOARD INVESTIGATOR, MR. RONNIE
MONTGOMERY WAS ASSIGNED TO LOCATE MY THREE (3) WITNESSES ON
AUGUST 2, 2007. EIGHT (8) FULL MONTHS TRANSPIRED WITHOUT ANY
PERFORMANCE WHATSOEVER.
        NOW, AS A DIRECT RESULT OF THE UNDUE DELAY. DESPITE MR. AYO'S
DUE DILIGENCE OF PROVIDING MAPS, STREET ADDRESS, AND ███████
█████ OF EMPLOYER'S
NAMES AND LOCATIONS. THE DEFENSE IS FUNDAMENTALLY PREJUDICED
BY THE INABILITY TO LOCATE MATERIAL WITNESS "DAVE" FOR HEARINGS
AND/OR TRIAL.

                                        1

THE RECORD WILL REFLECT DEFENSE COUNSEL SCHMIDT DID NOT MOVE
FOR NECESSARY CONTINUANCE AND TOOK ABSOLUTELY NO STEPS TO
CHANNEL HIS INVESTIGATION BY SUBPOENAING DEFENSE WITNESSES,
SUBJECTING THE STATES CASE TO MEANINGFUL ADVERSARIAL TESTING

i) AS REQUIRED UNDER OUR SYSTEM OF JUSTICE." THUS ANOTHER "IMPARTIAL"
   THE MORNING OF TRIAL. AND)
2) HEARING MUST BE CONDUCTED TO RECTIFY DEFICIENCIES, OR, THE STATE
STIPULATE TO CURATIVE INSTRUCTION OF A READING INTO THE
RECORD BEFORE JURY AS TO WHAT MY WITNESSE(S) WOULD HAVE
TESTIFIED TOO. — DENIED CONFRONTATION CLAUSE!

OBJ.  ON AUG. 29, 2007, THE 5TH CIRCUIT COURT OF APPEALS ISSUED A WRIT
OF MANDAMUS FOR THIS COURT TO HEAR DEFENDANT'S PRO SE PETITION
FOR WRIT OF HABEAS CORPUS. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬)
THUS THE COURT SHOULD NOTE MY OBJECTION, PRESERVING ALL
22 GROUNDS FOR APPELLATE REVIEW.


OBJ.  DURING THE BARE-BONES SUPPRESSION HEARING OF AUG. 16, 2007,
BOTH OFFICER PAUL SIMONEAUX AND OFFICER GEORGE MC COY TESTIFIED
"THEY SOLELY ACTED ON AND ARRESTED DEFENDANT BASED ON THE
DESCRIPTION AS BROADCAST BY DET. DANNY JEWEL." THUS IN LIGHT
OF THE FACT DET. JEWEL DID NOT APPEAR NOR DID STATE LAY PROPER
PREDICATE AT HEARING, TO PERMIT SUCH "HEARSAY" TESTIMONY,
IN WHICH DEFENSE COUNSEL DID NOT OBJECT TOO. PLEASE LET THIS
COURT TAKE NOTE OF DEFENDANT'S OBJECTION TO SUCH HEARSAY
AND PARTIAL HEARING.


      IN ORDER TO ALLEGEDLY PROVIDE PROBABLE CAUSE,
OBJ.  IN BOTH POLICE REPORTS AND DURING SUPPRESSION HEARING,
OFFICER PAUL SIMONEAUX AND OFFICER GEORGE MC COY "FALSELY REPORT
THAT DET. DANNY JEWEL BROADCAST TO ALL UNITS THAT HE OBSERVED
A SUBJECT FITTING THE DESCRIPTION ENTER A CAB AND HE HAD
A KNIFE IN HIS POCKET." YET CPS REPORTS (DISPATCH TRANSCRIPTS)
CONCLUSIVELY REFUTE ANY SUCH BROADCAST AND DEFENSE COUNSEL
SCHMIDT DID NOT OBJECT. PLEASE NOTE DEFENDANT'S OBJECTION
TO OBVIOUS MALFEASANCE AND LACK OF PROBABLE CAUSE.

OBJ.   DURING PROBABLE CAUSE AND SUPPRESSION HEARING, OFFICER
PAUL SIMONEAUX, OFFICER GEORGE MCCOY, AND THE STATE ALL
RIDICULOUSLY ARGUED "THERE WAS HOT PURSUIT BY JEFFERSON PARISH
OFFICIALS INTO ORLEANS PARISH." YET CFS REPORTS (DISPATCH
TRANSCRIPTS) CONCLUSIVELY REFUTE ANY SUCH BROADCAST OF ANY
PER SE "HOT PURSUIT," AND DEFENSE COUNSEL SCHMIDT DID NOT
ARGUE AGAINST NOR OBJECT. PLEASE NOTE DEFENDANT'S OBJECTION
TO THE OBVIOUS "PERJURED" TESTIMONY AND LACK OF PROBABLE
CAUSE TO EFFECTUATE AN ████████████ EXPLORATORY INVESTIGATIVE
STOP OUT OF JURISDICTION.

OBJ.   DEFENDANT WAS DENIED HIS 6TH AMENDMENT RIGHT TO
CONFRONTATION CLAUSE AND CROSS-EXAMINE DET. DANNY JEWEL
AS TO WHAT DESCRIPTION HE OBSERVED TO CONSTITUTE BROADCAST
OF PROBABLE CAUSE TO STOP DEFENDANT. PLEASE NOTE DEFENSE OBJ.

OBJ.   DEFENDANT WAS FURTHER DENIED HIS 6TH AMENDMENT RIGHT TO
CONFRONTATION CLAUSE AND CROSS-EXAMINE DET. DANNY JEWEL
AS TO HIS PROXIMITY AND TRUTHFULNESS OF ALLEGEDLY OBSERVING
KNIFE IN POCKET OF DEFENDANT. REFUTED BY DISPATCH TRANSCRIPTS.
NOTE DEF. OBJ.

OBJ.   DEFENDANT WAS ADDITIONALLY DENIED HIS 6TH AMENDMENT RIGHT
TO CONFRONTATION CLAUSE AND CROSS-EXAMINE DET. DANNY JEWEL
AS TO HIS CLOSE PROXIMITY OF ALLEGEDLY OBSERVING KNIFE IN POCKET
OF DEFENDANT, YET HOW HE LOST SIGHT OF BRIGHT BLUE CAB
AT 9:30 AM ON A QUIET SUNDAY MORNING. PLEASE NOTE DEF. OBJ.

OBJ.   CROSS-EXAMINE DET. DANNY JEWEL AS TO THE TRUTHFULNESS
OF WHY HE DID NOT ACTIVATE HIS LIGHTS OR SIREN IN SUCH CLOSE
PROXIMITY. PLEASE NOTE OBJ.

OBJ.   AND CROSS-EXAMINE DET. DANNY JEWEL AS TO THE TRUTHFULNESS
OF HIS CLOSE PROXIMITY AND HOT PURSUIT, SINCE THE CFS REPORT
(DISPATCH TRANSCRIPTS) MAKE NO SUCH MENTION OF ANY HOT PURSUIT
PLEASE NOTE DEF. OBJ.

3

▬▬▬ COUNSEL SCHMIT INEFFECTIVELY FAILED TO ARGUE
ANY OF ▬▬ NOT ONE OF THE (4) ▬▬▬ ▬▬ LAID LITIGATED
BEFORE HIM IN PRO SE MOTION.

▬▬ ▬▬▬ COURT OF APPEALS GRANTED DEFENDANT'S PETITION FOR
WRIT OF MANDAMUS AUGUST 27, ▬▬▬ ORDERING THIS COURT
TO HEAR PRO SE PETITION FOR WRIT OF HABEAS CORPUS. ▬▬
THAT MOTION HAS NOT BEEN HEARD TO DATE.

OBJ.     FURTHER AT SUPPRESSION HEARING OF AUGUST 16, 2007, DEFENSE
COUNSEL SCHMIDT ALSO HAD 800 DOLLAR WESTERN UNION RECEIPT
IN HIS HAND, YET INEFFECTIVELY FAILED TO ARGUE MONEY
CONFISCATED WAS JUSTIFIABLY MINE. PLEASE NOTE OBJ.

OBJ.     OFFICER SIMONEAUX AND OFFICER MC COY OFFERED ADDITIONAL
"PERJURED TESTIMONY AT SUPPRESSION HEARING, TO WIT: "JACKET
WAS INSIDE" TRAVEL BAG, ON TOP, IN PLAIN VIEW", YET DEFENSE
COUNSEL MADE NO ARGUMENT AGAINST NOR OBJECTED TO SUCH
RIDICULOUS TESTIMONY. PLEASE NOTE OBJ.

OBJ.     OFFICER SIMONEAUX AND OFFICER MC COY FURTHER PROVIDED
(HEARSAY) TESTIMONY, TO WIT "THE CAB DRIVER WANTED HIS TRAVEL
BAG OUT OF HIS CAB SO I HAD A RIGHT TO SEARCH BAG", YET DEFENSE
COUNSEL DID NOT OBJECT TO SUCH HEARSAY. PLEASE NOTE DEF. OBJ.

OBJ.     OFFICER SIMONEAUX AND OFFICER MC COY COMMITTED "PERJURY"
BY ERRONEOUSLY TESTIFYING THAT DEFENDANT [I] MADE AN
(INCULPATORY STATEMENT) FROM BACK WINDOW OF PATROL CAR.
THIS IS RIDICULOUS, THE BACK WINDOW OF A PATROL CAR DON'T ROLL DOWN
AS IT WOULD BE AN ESCAPE ROUTE. PLEASE NOTE OBJ.

▬▬     HEARING OF SEP ▬▬▬ ▬▬ 2007, WAS HELD IN ABSENCE OF DEFENDANT
WHILE HE WAS AT BATHROOM.

INVOKE:     ART: 511

# EXHIBIT- V

# 24 1 Judicial District Co t
## Parish of Jefferson - State of Louisiana

State of Louisiana
      Versus

GLENN AYO

| | | | |
|---|---|---|---|
| DOB: | 08/01/1962 | Case Number: | 07-0369 |
| Judge: | Henry G. Sullivan, Jr. | Division: | M |
| ADA: | Shannon Swaim | Complaint: | A0637107 |
| | | Date: | 11/28/2007 |
| | | Court Reporter: | Pamela Lobrono |

The Defendant, GLENN C. AYO, appeared before the bar of the Court this day, November 30, 2007, for the Court to take up the jury trial of matter 07-0369, entitled State of Louisiana (vs) GLENN AYO, for the charge:
   ARMED ROBBERY (14:64)

The Defenadnt is in JPCC.

Present were:
  GLENN C. AYO - Defendant
  FREDERICK E. SCHMIDT - Counsel for the defendant
  Shannon Swaim - Assistant District Attorney for the State of Louisiana
  Elizabeth Curren - Assistant District Attorney for the State of Louisiana

Jury present polling waived

State witnesses:
  AGT. DANNY JEWELL
  WILLIAM BARRETT
  DEP. GEORGE MCCOY
  DEP. PAUL SIMONEAUX
  BAPTISTE DEBROY

Defense witnesses:
  GLEEN C. AYO

State evidence:
  S 1 - 911 TAPE CASSET
  S 2 - 911 TAPE CASSET
  S 3 - TRANSCRIPT OF S-1
  S 4 - TRANSCRIPT OF S-2
  S 5 - LARGE WHITE BOARD BLOWN UP MAP
  S 6 - PHOTO
  S 7 - PHOTO
  S 8 - PHOTO
  S 9 - PHOTO
  S 10 - PHOTO
  S 11 - PHOTO
  S 12 - PHOTO
  S 13 - ONE PAGE POLICE PHOTO
  S 14 - WHITE BOX WITH KNIFE INSIDE
  S 15 - GREEN DUFFELL BAG INSIDE BLUE WIND BREAKER, MEMORIAL MEDICAL CENTER BAG, LARGE BLACK DUFFELL BAG, SMALL CLEAR AND BLACK PLASTIC BAG
  S 16 - 2 PAGE VOLUNTARY STATEMENT OF WILLIAM BARRETT
  S 17 - 1 PAGE DESCRIPTION DIAGRAM
  S 18 - YELLOW ENEVLOPE WITH $21.00 DOLLARS INSIDE
  S 19 - 2 PAGE PROBABLE CAUSE AFFIDAVIT
  S 20 - 1 PAGE PHYSICAL ASSESSMENT OF GLENN AYO
  S 21 - 1 PAGE HAND WRITTEN LETTER BY GLENN AYO

State rest

Defense evidence:
  D 1 - WESTERN UNION

Defense Rest

7:30 pm State Closing
8:00 pm Defense Closing
8:30 pm State Rebuttle Closing
8:41 pm Jury Charges read
8:56 pm The Jury was Sent to delibarate and the Alt juror was dismissed.
9:52 pm The Jury returned with a verdict, Guilty as Charged Signed foreperson Anthony E. Maurin jr. Polling of the Jury 12-0. The Jury was discharge

Sentencing set for 12/5/07 at 9:00 am

The Defendant was remanded to JPCC.

**pg: 20**

# EXHIBIT- W

RECEIVED

TWENTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

W. 7d

NO. 07-0370  FEB 08 2010

Legal Programs Department

DIVISION "M"  RECEIVED

STATE OF LOUISIANA

VERSUS

GLENN AYO

FILED: 1-28-10

FEB 4 - 2010

WEST FELICIANA PARISH
SHERIFF'S OFFICE

DEPUTY CLERK

### ORDER

This matter comes before the court on defendant's **MOTION FOR ENLARGEMENT OF PAGES, STAMPED AS FILED JANUARY 26, 2010.**

The defendant requests that the court allow him to submit an application for post-conviction relief in excess of the maximum number of pages allowed by the rules of court. The court will grant defendant's request, and allow him to submit an application for post-conviction relief with a maximum of 65 pages.

Accordingly,

**IT IS ORDERED BY THE COURT** that defendant's motion be and the same is hereby **GRANTED.**

Gretna, Louisiana this 29th day of January, 2010.

JUDGE

**PLEASE SERVE:**

PRISONER: Glenn Ayo, DOC # 531823, Louisiana State Penitentiary, Angola, LA 70712

En Banc Attorney, 200 Derbigny St., Gretna, LA 70053

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE

DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON

IMAGED JAN 2 9 2009

RbO

Issued on 2-1-10 KGS