RECEIVED
MAY 23 2013
Legal Programs Department

SCANNED at LSP and Emailed
5-23-13 by [illegible] , 36 pages
date initials No.

# APPENDIX - C

STATE OF LOUISIANA

VERSUS

GLENN C. AYO

NO. 08-KA-468
C/W 08-KH-1179

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 07-369, DIVISION "M"
HONORABLE HENRY G. SULLIVAN, JR., JUDGE PRESIDING

**MARCH 24, 2009**

**MADELINE JASMINE**
**JUDGE PRO TEMPORE**

Panel composed of Judges Edward A. Dufresne, Jr.,
Walter J. Rothschild, and Madeline Jasmine

PAUL D. CONNICK, JR.
   District Attorney
TERRY M. BOUDREAUX
ANNE WALLIS
SHANNON SWAIM
   Assistant District Attorneys
   Parish of Jefferson
   200 Derbigny Street
   Gretna, LA 70053
   COUNSEL FOR APPELLEE

GLENN C. AYO #531823
   Louisiana State Penitentiary
   Angola, LA 70712
   IN PROPER PERSON

MARGARET S. SOLLARS
   Attorney at Law
   Louisiana Appellate Project
   513 Country Club Boulevard
   Thibodaux, LA 70301
   COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

Defendant Glenn C. Ayo appeals his conviction for armed robbery, a violation of LSA-R.S. 14:64, and his conviction for resisting an officer, a violation of LSA-R.S. 14:108.[1] On appeal, counsel for Mr. Ayo argues the following assignments of error:

1. The trial court erred by failing to suppress the identification obtained in violation of the defendant's constitutional rights.

2. A mistrial should have been granted.

Defendant also filed a *pro se* supplemental brief arguing the following assignments of error:

1. The trial court erred by failing to suppress the seizure of Mr. Ayo, finding police "not in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

[1] Because the violation of LSA-R.S. 14:108 is a misdemeanor, Mr. Ayo filed a writ application in this court for review of that conviction. The writ application and this appeal have been consolidated for review and opinion.

2. Trial Court erred by precluding Defense from cross-examining arresting officer on relevant "material" issue(s) in violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

3. Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution's obvious use of known perjured testimony, and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

4. Trial court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as "private citizen" to immediately arrest, violating Mr. Ayo's Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).

5. Trial court erred by failing to suppress the seizure of alleged evidence, finding that construction worker's possession of [un]concealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

6. Trial court erred by failing to suppress seizure of jacket in cab, not in "plain view" and beyond control of Mr. Ayo, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

7. Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

8. Trial court erred by not continuing trial, and "not" addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

9. Trial Court erred by failing to grant a mistrial when the State committed fundamental error and "perjury" by fraudulently informing jury that Mr. Ayo is wanted for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

10. Trial court erred by admitting evidence agreed upon in pretrial not to introduce, violating Mr. Ayo's Sixth and Fourteen Amendment Constitutional Right(s) to a fair trial.

11. Trial court erred in not intervening and properly govern proceedings, stopping State's repeated improprieties denying Mr. Ayo's right to a fair and impartial trial, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

Defendant was convicted on November 28, 2007, following trial by jury, whose verdict was unanimous. On the same date, he was also convicted by judge of the related misdemeanor offense of resisting an officer. On December 5, 2007, the defendant was sentenced, on the armed robbery charge, to serve 87 years incarceration of hard labor without the benefit of probation, parole, or suspension of sentence. On the resisting an officer conviction, defendant was sentenced to 6 months in jail, to run concurrently with the above sentence.

**FACTS**

The eighty-eight year old victim, Baptiste DeBroy, testified at trial that on the morning of January 7, 2007, he and his wife went to a warehouse located at 250 Iris Avenue, Jefferson, Louisiana, in order to distribute beads to members of a Mardi Gras krewe. As they walked toward the building, a white man in a hooded blue jacket approached Mr. DeBroy, pulled him behind the building, knocked him down, and put a knife to his throat. The victim testified that the knife looked like a kitchen knife with approximately a six-inch blade. The man demanded the victim's wallet and ordered Mr. DeBroy not to look at him, covering his own head with the hood of his jacket. However, the victim testified that he got a good look at the robber from close range before he donned the hood. Mr. DeBroy told the robber that he did not have a wallet, whereupon the robber demanded his cash. Mr. DeBroy turned over all his cash, amounting to $28,[2] and the robber started to leave, going towards River Road. He came back and told the victim, "If you get up, I'm going to stick you." The robber then left in the direction of Jefferson Highway.

---

[2] Mr. DeBroy was very specific that he was carrying a $20 dollar bill, a $5 dollar bill, and three $1 dollar bills, as was his custom.

Mr. DeBroy immediately went inside the warehouse and announced that he had been robbed. He spoke to the 911 operator and described the robber, his clothing, and the knife. Members of the Jefferson Parish Sheriff's Office (JPSO) responded and began an investigation. The 911 tape was played to the jury.

Lieutenant Danny Jewell, JPSO, testified that the warehouse belonged to his family and that he lived nearby. On the morning of January 7, 2007, he was off-duty when he was awakened by his uncle, who reported a robbery on the premises. Lieutenant Jewell met with the victim, who gave a detailed description of the robber and the knife. Jewell began to canvas the neighborhood in his unmarked police unit. He did not operate his lights or sirens in pursuit. Jewell testified that he did not activate his lights and sirens because that action would give away his identity to suspects.

Within thirty minutes of the robbery, while searching the immediate area, Jewell heard on the police radio that a suspect had been detained in the 800 block of Jefferson Highway and that the victim was being brought to view the suspect. As Jewell drove to that location, he saw a dark-haired, clean shaven, white male, wearing a green tee shirt on Cicero Street, near Jefferson Highway. Jewell testified that due to the detention of the first suspect, he did not investigate this man further at that time.

The victim immediately excluded the first suspect as the robber. Shortly afterwards, Jewell returned to Cicero Street to look for the man he had seen earlier. He was no longer in sight, but workers in the area told him that the man in the green shirt had just gotten into a blue cab, headed towards New Orleans. Jewell proceeded toward Jefferson Highway, which turns into Claiborne Avenue at the parish line, looking for the blue cab.

En route, Jewell heard on the police radio that a subject in a blue cab had been found at a gas station on Claiborne Avenue. When he arrived at the gas station, the suspect had already been detained by police. The subject was the same man that Jewell had seen on Cicero Street a few moments earlier. The victim was brought to the scene and identified the defendant as the robber. This identification was made within an hour of the robbery.

At trial, Lieutenant Jewell positively identified the defendant as the man discovered at the gas station after the robbery. A blue hooded sweatshirt was found on top of the defendant's green bag, recovered on the back seat of the cab.

At trial, the victim made a positive in-court identification of the defendant as the robber. He also positively identified a photograph of the defendant as the man who robbed him. He positively identified the blue hooded jacket and stated that the six-inch kitchen knife looked like the knife used in the robbery. The victim was cross-examined extensively regarding his physical description of the perpetrator.

Deputy George McCoy, JPSO, testified that he was on patrol on January 7, 2007 when he was dispatched to 250 Iris to investigate an armed robbery. He obtained a description of the robber from the victim and completed the information sheet. Deputy McCoy took the victim in his car to view an initial suspect. The victim immediately stated that this suspect was not the robber.

Soon afterwards, Deputy McCoy transported the victim to view a second suspect. When he arrived at the Spur station, he saw Deputy Simoneaux attempting to restrain the subject. The victim told him that the man was the robber. At trial, McCoy identified the defendant as the man arrested that day.

Deputy Paul Simoneaux, JPSO, testified that he was assigned as a backup officer on the robbery investigation. After the victim excluded the first suspect as

the robber, he heard on the police radio that Deputy McCoy saw a suspect getting into a cab, heading toward New Orleans. Simoneaux followed McCoy's unit to the Spur gas station in New Orleans. He saw a man matching the suspect's description exit the cab, handing what appeared to be money to the driver. As Simoneaux approached, he saw a kitchen knife sticking out from the suspect's back pocket. During a search incident to arrest, a twenty dollar bill and a one dollar bill were recovered from the defendant's pocket. At trial, Deputy Simoneaux positively identified the defendant as the man arrested that day and noted that at his arrest, the defendant gave police a false name and date of birth. Simoneaux described changes to the defendant's physical appearance in the months following the robbery, stating that he was heavier at trial.

The defendant exercised his right to testify at trial and stated that the victim's identification was mistaken. He explained his possession of a kitchen knife, testifying that he carried this knife in order to strip copper from wires in demolished homes in connection with his post-Katrina job. He admitted that he was in possession of a blue jacket and a kitchen knife and that he gave a false name upon arrest.

**COUNSELED ASSIGNMENT OF ERROR NUMBER ONE**

The trial court erred by failing to suppress the identification obtained in violation of the defendant's constitutional rights.[3]

**PRO SE ASSIGNMENT OF ERROR NUMBER ONE**[4]

---

[3] For logical discussion, these claims are taken out of the order presented in the defendant's brief.

[4] In addition to eleven assignments of error, this pro se brief contains thirty-three italicized headings, all mentioning legal concepts. It is not clear how these headings relate to the assignments of error but it is clear that these headings are not briefed. The brief must contain "a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, ... giving accurate citations of the pages of the record and the authorities cited[.]" Rule 2-12.4, Uniform Rules, Courts of Appeal. Assignments of error neither briefed nor argued are considered abandoned on appeal. State v. Blank, 01-364 (La. App. 5 Cir. 11/27/01), 804 So.2d 132, 139.

The trial court erred by failing to suppress the seizure of Mr. Ayo, finding police "not in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

**PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN**

Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The defendant argues that the trial court erred by failing to suppress the identification, which he contends was obtained in violation of his constitutional rights and was unduly suggestive. He first argues that the victim's on-scene identification was a prohibited "show-up" identification. He next argues that his arrest in New Orleans by Jefferson Parish officers was illegal due to the absence of an arrest warrant and lack of jurisdiction.

Prior to trial, the defense filed motions to suppress the identification and evidence, as well as other pretrial motions. At the motion to suppress hearing, the victim and two police officers testified regarding the identification procedures. At the conclusion of their testimony, the court denied the defense motions.

At trial, extensive cross-examination of the victim and the officers revealed inconsistencies in the victim's physical description of the robber. Based on the vagueness and inconsistencies of the description, the defendant argues that the court should have granted his motion to suppress the identification. The defendant also argues, as he did before trial, that his arrest was unlawful because it was made in the city of New Orleans by the Jefferson Parish Sheriff's Office. The defendant places much reliance on the fact that the officers did not turn on their police sirens and overhead lights as they pursued him into Orleans Parish.

**Motion to Suppress Identification**

**Physical Description**

The burden of proof on a motion to suppress is on the defendant. LSA-C.Cr.P. art. 703(D). A trial court's decision to deny a motion to suppress is afforded great weight by the reviewing court. State v. Raines, 00-1941, (La. App. 5 Cir. 5/30/01), 788 So.2d 635, 639, writ denied, 01-1906 (La. 5/10/02), 815 So.2d 833.

The admissibility of an identification is controlled by Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Williams, 08-272, p. 3, (La. App. 5 Cir. 12/16/08), __ So.2d __, 2008 WL 5247903. Viewing the evidence from a totality of the circumstances, the trial court should consider whether suggestiveness presents a substantial likelihood of misidentification. This review is based on five specific factors: 1) the opportunity of the witness to observe the perpetrator at the time of the crime, 2) the witness' degree of attention at the time of the crime, 3) the accuracy of his prior description of the offender, 4) the level of certainty displayed at the confrontation, and lastly, 5) the time between the crime and the confrontation. Id. at 115.

This Court has noted that the likelihood of misidentification of a suspect may violate due process, but the mere existence of suggestiveness is not an automatic constitutional violation. State v. Hurd, 05-258, p. 5, (La. App. 5 Cir. 11/29/05), 917 So.2d 567, 570. Although "show up" or one-on-one identifications are not favored in law, circumstances may justify the use of such procedures. One such exception is when the suspect is apprehended and viewed soon after the crime. Such immediate identifications increase accuracy in identification and provide for the expeditious release of innocent suspects. State v. Spurlock, 08-163, p. 8, (La. App. 5 Cir. 5/27/08), 986 So.2d 89, 94.

In applying these factors, we find that the trial court correctly denied the motion to suppress the identification. At the suppression hearing, the victim

testified that during the robbery, he had a clear, close, and well-lit view of the robber. The victim's undiverted attention was focused on the robber. Moments after the robbery, the victim gave police his best physical description of the robber and his clothing. Although there was a range of possible weights given by the victim, it is critically important that the victim *excluded* a suspect stopped by police shortly after the robbery.

Even more important than his physical description, the victim positively identified the defendant less than an hour afterwards. The victim explained to the jury that he had been unable to identify the defendant at the motion to suppress hearing, because there were many defendants seated together in the jury box, all dressed alike. At the time of trial, however, he again positively identified the defendant as the man who robbed him.

In brief, the defendant places great emphasis on the differing physical descriptions of the robber as described by the victim. During direct examination at trial, the victim testified that he told officers that the robber, a white male, was around 5'7" or 5'8". He stated that he may have told police that the robber was 150 pounds or he may have said 135 or 170 pounds. The transcript of the 911 tape states 170 lbs. He informed officers that the robber was between forty and fifty years old. Notably, at trial, the state introduced the prison intake assessment which established that on February 24, 2007, the defendant's weight was 181 and his height was 5'7". The prison's nurse practitioner testified that defendant's weight on the day of trial was 212 lbs.

Cross-examination of witnesses provides an opportunity to challenge identifications. The elderly victim in this case admitted to having given somewhat unspecific descriptions of the robber, such as possibly stating that his weight was 150, 135, or 170 pounds. He also stated that he may have said the robber was

around thirty years of age. Any discrepancies between the description of the perpetrator and the defendant as he appeared at trial were fully explored and known to the jury.

Most importantly, the victim made a positive identification of the defendant at trial. This was a daylight robbery in which the victim had an opportunity to view the robber at close range. The victim made an immediate report of the crime, gave a description of the robber's clothing and appearance, and made a positive identification of the defendant within an hour of the robbery.

Notably, the victim excluded the first subject detained by the police and only made a positive identification of the defendant after viewing him at close range. The victim testified at trial that the police officers did not suggest to him that he should identify the defendant as the robber. Thus it appears that all five Brathwaite factors are present and the identification of the defendant was reliable.

For these reasons, we find that the trial court did not err in denying the motion to suppress the out-of-court identification.

**Close Pursuit**

The defendant next complains that his arrest was illegal because it took place in Orleans Parish but was conducted by Jefferson Parish Sheriff's officers. He contends the trial court should have granted his motion to suppress because the arresting officers were outside of their territorial boundaries.

In urging this motion, the defendant places much reliance on the law relating to a citizen's arrest. By statute, a private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence. LSA-C.Cr.P. art. 214. Although all conditions of a citizen's arrest are satisfied in this case, the arrest passes muster as a close pursuit by a peace officer.

A warrantless arrest by a peace officer is lawful when the person to be arrested has committed a felony or the officer has reasonable cause to believe the person has committed an offense. LSA-C.Cr.P. art. 213(2)(3). In addition, the common law doctrine of fresh pursuit is codified in LSA-C.Cr.P. art. 213(4). Under this article, a peace officer in close pursuit of a person to be arrested is authorized to enter another jurisdiction of this state to make that arrest.[3]

Louisiana case law gives full weight to the doctrine of close pursuit. See, for example, United States v. Bishop, 530 F.2d 1156, 1157 (5 Cir. 1976). In a case construing Louisiana law, the court found close pursuit to be present in the investigation of a bank robbery in Caddo Parish. Shreveport Police stopped and arrested the suspect in Bossier Parish. The arrest was found to be legally valid under the "close pursuit" statute, even though the arrest occurred outside the arresting officers' jurisdiction, without the assistance of local law enforcement officers.

In State v. Washington, 444 So.2d 320 (La. App. 1 Cir. 1983), writ denied, 445 So.2d 450 (La. 1984), a robbery occurred at a Raceland bank near the border of Lafourche and St. Charles Parishes. Assisted by a tracking dog, the Lafourche Parish sheriff's officers began trailing the robbers on foot. Officers encountered the defendants on the railroad track in adjoining St. Charles Parish within two hours of the robbery. When found, the suspects were only five and a half miles from the scene of the robbery. The exception of close pursuit applied and the arrest was upheld. Id. at 324.

---

[3] "Close pursuit" does not require that police lights or sirens be used, nor does it require a high rate of speed. As noted by other courts reviewing this issue, "pursuit does not imply a fender-smashing Hollywood style chase scene, it does connote something more than mere casual following." City of Wenatchee v. Durham, 43 Wash.App. 547, 552, 718 P.2d 819 (Wash. App Div. 3 1986). Similarly, a pursuit into another jurisdiction was upheld where the police stayed within the 45 mile an hour speed limit and did not activate sirens or flashing lights. The court observed that "the critical elements characterizing 'hot pursuit' are the continuity and immediacy of the pursuit, rather than merely the rate of speed at which pursuit is made. Poss v. State, 167 Ga.App. 86, 87, 305 S.E.2d 884 (Ga. App. 1983).

The exception of close pursuit applies in this case. The arrest took place within an hour of the crime a few blocks over the adjoining parish line. The arrest was the result of an uninterrupted investigation by responding police officers. The pursuit of the defendant, initiated in Jefferson Parish, was immediate and continuous. Furthermore, the defendant was detained after he hired a cab and was leaving the area of the robbery. The pursuing officers saw a kitchen knife, matching the description of the weapon used in the robbery, sticking out from the defendant's pants. Within minutes of the defendant's detention and within an hour of the robbery, the victim made a positive identification. This assignment of error has no merit.

**COUNSELED ASSIGNMENT OF ERROR NUMBER TWO**

The defendant argues that a mistrial should have been granted due to the prosecutor's reference to other crimes committed by the defendant. In a related vein, he also contends in this assignment that a mistrial should have been granted after the prosecutor asked the defendant if he knew that his friend Theo Brickley, who was subpoenaed to testify on his behalf (but whom the state was unable to serve and therefore was not present at trial), had recently been convicted of four felonies.

During direct examination, the defendant admitted his 1994 conviction for manslaughter in the State of Florida. Counsel for the defendant characterized this crime as an accidental death, resulting in the prosecutor following up to ask the defendant if he received a seventeen-year sentence for this "accidental" crime. The defendant admitted the manslaughter conviction and seventeen-year sentence but denied that he was on parole. The prosecutor then inquired if he would be surprised to learn that a detainer to return him to Florida was in effect. At this

point in the exchange, the defense moved for a mistrial but the court denied that request. The court ordered that the exchange in question be stricken from the record and disregarded by the jury.

A mistrial shall be ordered when a remark, made within the hearing of the jury, by a judge, district attorney, or court official, refers to another crime committed or alleged to have been committed by the defendant when this evidence is not admissible. LSA-C.Cr.P. art. 770(2).

A mistrial is a drastic remedy. Except where mandated by statute, a mistrial is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. State v. Ballay, 99-906, p. 14, (La. App. 5 Cir. 2/29/00), 757 So.2d 115, 126, writ denied, 00-0908 (La. 4/20/01), 790 So.2d 13. The decision to grant or deny a mistrial is within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of that discretion. Id.

It was the defendant who brought up the fact of his prior conviction for manslaughter. It is a well-recognized principle that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination. State v. Smart, 05-814, p. 12, (La. App. 5 Cir. 3/14/06), 926 So.2d 637, 647. The evidence of the defendant's conviction for manslaughter was elicited directly from the defendant on direct examination; even on appeal, the defendant does not complain evidence of this conviction was improperly admitted. From the defendant's own testimony, the jury was aware of his criminal history. The defendant testified, without objection, that he had an attachment from Florida. It is notable also that the prosecutor did not allege that the defendant had committed additional crimes but rather questioned him regarding an outstanding detainer. The reference to the term "detainer" was not defined or explored further.

The state's limited reference to an outstanding detainer related to a crime that had already been admitted by the defendant. Furthermore, in charging the jury at the conclusion of the trial, the judge instructed the jury that statements and arguments made by the attorneys were not evidence, thus protecting against any prejudice that might have arisen. This practice is in accord with that of State v. Pardon, 97-248, p. 14, (La. App. 5 Cir. 10/15/97), 703 So.2d 50, 62, in which the court instructed the jury that statements and arguments by counsel were not evidence. On appeal, this Court held that this instruction cured any error and that therefore the defendant suffered no prejudice. Accordingly, we see no abuse of the trial court's discretion.

The defendant next complains that the trial court should have granted a mistrial due to the prosecutor's references to the convictions of the defendant's friend, Theo Brickley. During direct examination, the defendant testified that he got a ride from Theo Brickley on the morning of the robbery. During cross-examination, the prosecutor asked whether Mr. Brickley would testify at trial. The defendant responded that Brickley had not been served to appear in court and would not testify. The prosecutor asked the defendant if he knew that Brickley had recently been convicted of four felonies in another section of court. Before an answer could be given and after an immediate objection, the prosecutor voluntarily stated that she would not pursue this line of questioning any further. The trial court denied the motion for a mistrial and no further questioning along this line took place.

The trial court did not err in denying the motion for mistrial. In light of all the testimony introduced at trial, the brief, unanswered question into Theo Brickley's recent convictions did not create an unfair trial. Furthermore, the trial

judge specifically charged the jury that statements and arguments made by the attorneys are not evidence.

A trial court's ruling shall not be reversed by an appellate court because of any error which does not affect substantial rights of the accused. LSA-C.Cr.P. art. 921. As this Court recently held, harmless error is present when the guilty verdict actually rendered was surely unattributable to the error. State v. Lemeunier, 07-230, p. 9, (La. App. 5 Cir. 5/27/08), 986 So.2d 130, 136.

In this case, the evidence of the victim and police officers, if believed by the trier of fact, established all the elements of the crime of armed robbery. In light of the strength of the evidence against the defendant, the guilty verdict was "surely unattributable" to the alleged references to other crimes. This assignment of error has no merit.

**PRO SE ASSIGNMENT OF ERROR NUMBER TWO**

Trial Court erred by precluding Defense from cross-examining arresting officer on relevant "material" issue(s) in violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The defendant argues that at the hearing on his motion for a preliminary examination and his motion to suppress, the trial court erroneously and unfairly curtailed defense questioning on issues of jurisdiction, an investigatory stop, and the lawfulness of his arrest.

The defendant directs this Court's attention to the cross-examination of Deputy Simoneaux during the motion to suppress and preliminary examination, held on August 16, 2007.[4] When defense counsel asked this officer if he was commissioned as a law enforcement officer in Orleans Parish, the prosecutor

[4] In his brief, the defendant references pages 131 – 146 of the record. This portion of the transcript reflects two brief hearings on the defendant's petition for habeas corpus. Neither hearing contains testimony from witnesses.

objected. The objection was sustained. A bench conference was held but no objection or proffer of testimony was put on the record.

It is critically important that the defendant's complaint addresses curtailment of questioning at a motion hearing, not at trial. The defendant's constitutional confrontation rights are not affected by questioning at a motion hearing. State v. Harris, 08-2117 (La. 12/19/08), ___ So.2d ___, 2008 WL 5265206. In Harris, the Supreme Court specifically held that the right to confrontation contained in the United States and the Louisiana Constitutions is not implicated in a pre-trial matter.

In addition to the fact that the confrontation clause does not apply to a pretrial hearing, this issue is not preserved for appellate review. In State v. Stevenson, 02-0079 (La. App. 5 Cir. 4/30/02), 817 So.2d 343, this Court addressed an argument that the trial court erred in failing to allow defense counsel to fully cross-examine and impeach a police officer. The defendant desired to ask the officer about the law pertaining to booking a suspect. The trial court did not allow such questioning and on appeal, the defendant argued that he was unable to show the jurors the corruption of the police officers. The defendant objected but did not proffer the testimony of the officer. In denying relief on this claim on appeal, this Court relied on LSA-C.E. art. 103(A)(2), which provides that in order to preserve the right to appeal a trial court ruling that excludes evidence, the defendant must make the substance of the evidence known to the trial court. The defendant failed to proffer the substance of the excluded testimony and was precluded from raising the issue on appeal.

This pro se assignment of error merits little consideration.

**PRO SE ASSIGNMENT OF ERROR NUMBER THREE**

Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution's obvious use of known perjured testimony, and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

The defendant first argues that Deputy Jewell's testimony was false and knowingly presented by the state. Next, he argues that the court abused its discretion by allowing this perjured testimony to be presented, although he does not assert, and the record does not show, that he objected to the officer's testimony in the trial court. Next, the defendant argues that perjury is shown by the fact that the victim could not identify the defendant at the suppression hearing but could make a positive identification at trial. In his final subclaim, the defendant argues that his attorney was constitutionally ineffective for failing to object to the use of perjury.

The defendant relies on the leading perjury case, Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). In Napue, the Supreme Court of the United States held that where a prosecutor allows a state witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness's testimony reasonably could have affected the jury's verdict, even if the testimony goes only to the credibility of the witness.

This Court in State v. Singleton, 05-634 (La. App. 5 Cir. 2/14/06), 923 So.2d 803, addressed a perjury claim raised for the first time on appeal. The Court held that since the defendant failed to object during trial to the testimony as perjury, he waived his right to assert the error on appeal.

Although the defendant argues at length that false testimony was introduced in his trial, he points to the record, not newly discovered, external sources, to prove his allegation. He points to internal contradictions in the testimony to support his

claims, thus establishing that the substance of the claim, and its factual underpinnings, were known to him at the time of trial. Although the claim was known to him, the defendant did not afford the trial court an opportunity to rule on his perjury claim. Therefore, he is precluded from raising it for the first time on appeal.

The defendant alleges that Detective Jewell's testimony was perjured. Specifically, he alleges that although Jewell testified that he informed "911" that the defendant had a knife in his pocket, that in fact, he never told "911" any such thing. He alleges that at the time 911 was called by the victim, that Officer Jewell had not yet even seen nor spotted the defendant.

The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell. In the dispatch made by Officer Jewell, he informed the dispatcher that he saw the defendant with a knife in his pocket. The dispatch call was different from the 911 call made by the victim. This claim has no merit.

In his third subclaim, the defendant argues that the state contrived the victim's positive in court identification. The defendant repeatedly argues that, absent fraud, seventy-two percent of the jury would have returned a not guilty verdict.[7]

The defendant correctly notes that the victim testified at the motion to suppress hearing that he could not make a positive identification of the robber. The record establishes that during the motion to suppress hearing, the victim testified that the man he identified that day was the robber. In response to the question during cross-examination of whether he could identify in court the

[7] For his proposition that seventy-two percent of the jury voted for conviction based on the positive identification, the defendant mistakenly relies on Expert Testimony on Eyewitness Identification: A New Pair of Glasses for the Jury, 32 Am. Crim. Law. 1013, 1023. This article addresses issues not before this Court and furthermore, the article does not support the defendant's claim.

individual who robbed him, the victim replied, "No, not today. I did that day when I was face to face with him. I cannot – I can't say I would do it today, no." At trial, the victim positively identified the defendant as the man who robbed him. He was questioned thoroughly about this issue and explained his failure to identify the robber at the suppression hearing as both uncertainty due to the number of identically-dressed defendants seated in the jury box, and a reluctance to identify the wrong person in the absence of certainty.

Clearly, the credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Longo, 08-405 (La. App. 5 Cir. 1/27/09), 2009 WL 196358, ___ So.2d ___. It is also well settled that a positive identification of only one witness is sufficient to support a conviction. State v. Williams, 02-645 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La. 4/25/03), 842 So.2d 398.

The jury was aware that the victim did not make a positive identification of the defendant at the motion to suppress hearing, although he made a positive identification of the defendant shortly after the robbery and at trial. The jury's finding of guilt reveals that they found the witness credible and believed his identification of the defendant.

In his final complaint under this assignment of error, the defendant complains that his attorney was ineffective for failing to object to the use of perjured testimony. A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. McIntyre, 97-876, p. 10, (La. App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La. 9/18/98), 724 So.2d 753. However, where the record

contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. Id.

Notably, although the defendant points to discrepancies in testimony between witnesses, he does not establish that perjury occurred in his trial. The defendant also makes factual allegations of what he contends his attorney knew at the time of trial and on his allegation that the prosecutor allowed perjured testimony to be presented at trial. None of these allegations are supported by the record. The trial court record, therefore, is insufficient to review the facts addressing the defendant's claim of ineffective assistance of counsel. As presented on appeal, this assignment of error has no merit.

**PRO SE ASSIGNMENT OF ERROR NUMBER FOUR**

Trial court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as "private citizen" to immediately arrest, violating Mr. Ayo's Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).

**PRO SE ASSIGNMENT OF ERROR NUMBER FIVE**

Trial court erred by failing to suppress the seizure of alleged evidence, finding that construction worker's possession of [un]concealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

Pro se assignments of error four and five allege related complaints and are addressed together. The defendant argues, as he did in his pro se motion to suppress the evidence, that in order to justify a warrantless search as incident to an arrest, the arrest itself must be a "lawful" arrest.

The arrest of the defendant was made by Officer Simoneaux. This arrest was based on the description of the robber broadcast on the police radio. The

Supreme Court of the United States has expressly concluded that if a law enforcement bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on the bulletin justifies a stop to check identification. United States v. Hensley, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985).

Furthermore, probable cause existed to support the defendant's arrest. Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Fisher, 97-1133, p. 7 (La. 9/9/98), 720 So.2d 1179, 1184.

The police in this case had a reasonable and trustworthy report of an armed robbery where the dangerous weapon was a knife, along with a physical description of the robber. The defendant, who matched the description given, was found shortly after the robbery, attempting to leave the area. Upon detection, the defendant was arrested by Deputy Simoneaux when he saw him at a gas station. Visible protruding from the defendant's back pocket was a knife handle.

These circumstances constitute probable cause. As the Supreme Court of Louisiana noted in State v. Johnson, 363 So.2d 684, 689 (La. 1978) that "[o]ne of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime." The police in this case knew that an armed robbery had just occurred and they had reasonably trustworthy information on the robber's description sufficient to justify

a man of ordinary caution in believing the defendant had committed this robbery. This assignment of error has no merit.

In a subclaim, defendant argues that the currency seized from him at arrest should have been suppressed, based upon inconsistent and perjured testimony from the officers, and that the money was abandoned after defendant was unlawfully seized, and that the chain of custody was not proved. A review of the record shows that although the issue was raised in the motion to suppress, the defendant failed to object at trial to the introduction of the currency. Accordingly, the issue was waived and not preserved for appeal.

**PRO SE ASSIGNMENT OF ERROR NUMBER SIX**

Trial court erred by failing to suppress seizure of jacket in cab, not in "plain view" and beyond control of Mr. Ayo, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The defendant argues that the trial court should have suppressed the evidence of his windbreaker. He argues that the recovery of his windbreaker from his travel bag inside the cab was unreasonable because it was outside his immediate control. He also contends that the incriminating nature of the seized evidence was not immediately apparent.

The defendant, pro se, raised a pretrial challenge to the seizure of the windbreaker from his travel bag. The trial court heard this argument (and other arguments) in a hearing on motions to suppress and for a preliminary examination and found that the evidence was lawfully seized.

The defendant's reliance on "plain view" case law is misplaced. It is well established that when a lawful arrest is made of an occupant (or recent occupant) of a vehicle, law enforcement officers have the right to search the entirety of the passenger compartment, including closed containers found in the passenger

compartment, as a contemporaneous incident of the lawful arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). See also State v. Warren, 05-2248 (La. 2/22/07), 949 So.2d 1215. Belton is not limited to situations where suspects remain in their vehicles when approached by the police. See Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), where the police stopped the driver of a vehicle for a traffic violation after he had parked and left his car. The driver consented to a pat down during which he admitted possession of illegal drugs on his person. Police arrested the driver and put him in the patrol car before searching the vehicle and discovering a handgun under the driver's seat. The High Court concluded that so long as an arrestee is the sort of recent occupant of a vehicle "such as [the driver] was here," law enforcement officers could lawfully search the vehicle incident to the arrest. Thorton at 623, 124 S.Ct. at 2312.

This pro se assignment of error has no merit.

**PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN**

Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The portion of the defendant's argument that the victim's identification constituted a prohibited show-up identification has been addressed at length in connection with the first counseled assignment of error.

In an additional claim, the defendant argues that he should have been extradited to Jefferson Parish after his arrest in Orleans Parish. He relies in part on a federal statute, 18 U.S.C.A. §3182, which has no applicability to his arrest for a violation of Louisiana law.

LSA-C.Cr.P. art. 228 provides that "[i]t is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct

the person arrested to the nearest jail or police station and cause him to be booked." This Court, in State v. Stevenson, 02-0079 (La. App. 5 Cir. 4/30/02), 817 So.2d 343, addressed the argument the defendant now makes.

Through his questions, the defendant in Stevenson attempted to show that under article 228, he should have been taken to Orleans Parish for booking rather than the Gretna Police Station in Jefferson Parish. On appeal, he argued that the failure of the police to book him in Orleans Parish supported his defense that the police planted drugs on him while he was at the Gretna Police Station. The defendant argued that, in order to present his defense, he should have been allowed to fully cross-examine the officer on the law pertaining to booking a suspect.

On appeal, this Court found that the defendant did not preserve his right to appeal on this claim. During his questioning, the State objected and the trial court sustained the objection. The defendant objected to the ruling but did not proffer the testimony of the officer related to this line of questioning.

Similarly, the defendant in this case did not preserve the alleged error relating to the location of booking for appeal. This assignment of error has no merit.

**PRO SE ASSIGNMENT OF ERROR NUMBER EIGHT**

Trial court erred by "not" addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).[8]

---

[8] he defendant, in initially listing his assignments of error, includes the language relating to the court not continuing the trial. When the assignment is listed in his brief, it does not contain any reference or discussion on the question of continuing the trial. The defendant, in the body of his brief, assigns as error the following: "Trial Court erred by 'not' addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violation Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s)." As discussed above, under Rule 2-12.4, Uniform Rules, Courts of Appeal, assignments of error neither briefed nor argued are considered abandoned on appeal.

It is also noteworthy that no written motion for continuance appears in the record and that the minute entries from each day of trial fail to reflect that a continuance was requested by the defendant. LSA-C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The article also provides that "It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefore."

In this assignment of error, the defendant states that he wrote numerous letters to his attorney regarding preparation of his defense.

It is fundamental that a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To establish ineffective assistance of counsel, a defendant must prove both that 1) his attorney's performance was deficient, and 2) he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. McIntyre, 97-876 (La. App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La. 9/18/98), 724 So.2d 753.

The defendant raises complaints regarding preparation and the choice of defense witnesses. In particular, he asserts that counsel failed to locate and subpoena his potential defense witness, Theo Brickley.

The record does not support the allegation. Defense counsel noted on the record that he attempted to serve Theo Brickley for trial but was unsuccessful. (Vol. 2, p. 336, 339). The defense had an instanter subpoena issued for this witness but there was no return on the subpoena. More importantly, defense counsel informed the defendant at trial that he was entitled to a continuance should Brickley not be available for trial. The defendant on the record informed the court that he did not want a continuance but wanted to proceed to trial even without the witness. Accordingly, this assignment of error has no merit.

**PRO SE ASSIGNMENT OF ERROR NUMBER NINE**

Trial Court erred by failing to grant a mistrial when the State committed fundamental error and "perjury" by fraudulently informing jury that Mr. Ayo is wanted for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

The majority of issues raised in this pro se assignment of error have been discussed in connection with the second counseled claim.

The defendant makes a new factual claim: that his trial transcript has been altered. A criminal defendant has a right to a complete transcript of trial proceedings. LSA-Const. Art. 1, § 19. The law provides that in criminal cases tried in the judicial districts, the official court reporter shall record all portions of the proceedings required by law or the court and shall, when required by law or the court, transcribe those portions of the proceedings required, which shall be filed with the clerk of court in the parish where the case is being tried. LSA-R.S. 13:961.

Each volume of the transcript in this case bears the certification of the court reporter that a true and correct transcript of proceedings has been made. Despite these official attestations, the defendant states that his trial transcripts have been altered and that the alterations reveal perjury and ineffective assistance of his counsel. In his brief, he quotes passages which he contends are the true version of events.

By order of this Court, John H. Andressen, Deputy Judicial Administrator and Chief Court Reporter of the Twenty-fourth Judicial District, listened to the relevant portion of the transcript. He has provided a written statement to this Court that he listened to the entire cross-examination of the defendant and "determined that there are no parts of the transcript missing or altered." This assignment of error has no merit.

**PRO SE ASSIGNMENT OF ERROR NUMBER TEN**

Trial court erred by admitting evidence agreed upon in pretrial not to introduce, violating Mr. Ayo's Sixth and Fourteen Amendment Constitutional Right(s) to a fair trial.

It is undisputed that after the robbery the defendant wrote a letter to the cab driver, William Barrett. It is also undisputed that the state, in possession of the letter, provided a copy to the defense before trial. In this letter, the defendant stated that he armed himself with a knife before getting into the cab because he was afraid of a "psycho patient [sic] contractor" who was outside.

The defendant argues that the prosecutor promised prior to trial not to introduce his letter into evidence. He further contends that the state breached this agreement and questioned him regarding his letter. He concludes that the introduction of his letter to Mr. Barrett was so prejudicial as to warrant the granting of a new trial.

The state cross-examined the defendant on his letter to the cab driver. Defense counsel objected and informed the court that he had received copies from the state of letters the defendant wrote. Counsel also stated that he had been promised that the state would not use the letters at trial. The assistant district attorney replied that she had promised counsel not to use the letters during her case-in-chief but she denied promising not to use the letter to impeach the defendant. The trial judge allowed the prosecutor to cross-examine the defendant on his letter and allowed it to be admitted as state's exhibit 21.

In a bench conference, the state indicated that it wished to offer this letter into evidence. The defense objected but the court admitted the letter into evidence as State's Exhibit 21. The trial court was faced with contradictory accounts of an agreement between counsel. Under the circumstance, the trial court's ruling was not an abuse of discretion.

Furthermore, the trial court's ruling was supported by evidence law. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. LSA-C.E. art. 403.

Evidence may also be admitted for impeachment purposes. Impeachment evidence is that which affects the credibility of a witness. Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). An example, present in this case, of impeachment evidence is a prior inconsistent statement by the testifying witness. Defendant testified that he secured the knife to use for work stripping copper. What he wrote in the letter contradicts his trial testimony. Absent a clear abuse of discretion, a trial court's ruling on the admissibility of evidence will not be overturned on appeal.

The defendant's argument to this Court does not establish that the trial court abused its wide discretion in admitting the defendant's letter into evidence. This assignment of error has no merit

**PRO SE ASSIGNMENT OF ERROR NUMBER ELEVEN**

Trial court erred in not intervening and properly govern proceedings, stopping State's repeated improprieties denying Mr. Ayo's right to a fair and impartial trial, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

In his final assignment of error, the defendant contends that thirty-three errors infected his trial and that these were not harmless.

The combined effect of assignments of error, none of which warrant reversal on its own, does not deprive a defendant of his right to a constitutionally fair trial.

State v. Rochon, 98-717, p. 14, (La. App. 5 Cir. 3/10/99), 733 So.2d 624, 633. The Supreme Court has noted that the "cumulative error" doctrine has lost favor in the Louisiana courts. State v. Draughn, 05-1825, p. 70, (La. 1/17/07), 950 So.2d 583, 629. Significantly, the Supreme Court in State v. Manning, 885 So.2d 1044, 03-1982 (La. 10/19/04), quoted with approval Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987), where the federal Fifth Circuit rejected the cumulative error doctrine by noting that "twenty times zero equals zero."

This assignment of error has no merit.

**ERROR PATENT DISCUSSION**

The record was reviewed for errors patent, as required by LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). The review of the record reveals no errors patent in this case.

**PRO SE WRIT NO. 08-KH-1179**

In a pro se writ application, the defendant also challenges his misdemeanor conviction for resisting arrest, a violation of LSA-R.S. 14:108. This Court consolidated the actions on January 15, 2009.

Defendant argues that the "Trial Court committed fundamental error by finding police "not" in close nor hot pursuit of person to be arrested, may enter another jurisdiction and forcibly conduct "investigatory" stop/detention of any citizen on whim, and that Mr. Ayo inherently vests no right to resist such an illegal arrest/detention, in violation of Mr. Ayo's Fourth, Fifth, Sixth, and Fourteenth Amendment Constitutional Right(s)."

LSA-R.S. 14:108 states, in pertinent part:

> § 108. Resisting an officer
>
> A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

In this challenge to his misdemeanor conviction, the defendant reiterates legal arguments made in his challenge to his felony conviction. The merits of this assignment of error have been addressed at length in connection with the issues raised in pro se assignments of error one, two, four, and five. For the reasons noted above, his assignment of error has no merit.

Accordingly, the defendant's convictions are affirmed.

**AFFIRMED**

IN THE FIFTH CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

STATE OF LOUISIANA,
APPELLEE/RESPONDENT

-VS- NO. 08-KA-468
C/W 08-KH-1179

GLENN CHARLES, AYO,
APPELLANT/DEFENDANT

**MOTION FOR REHEARING/
ALTERNATIVE WRITTEN OBJECTION**

NOW INTO COURT COMES, the above-named Appellant pro se, respectfully moves his Honorable Court pursuant to La.C.Cr.P. art. 911 *et seq.* and Article 5, § 10 of the Louisiana Constitution, and would show the following as basis in support thereof:

1. Appellant contends, with all due respect, the published decision of this Court is an embarrassment to the judicial system and appalling mockery to the United States Constitution, in which law(s) and rights the Superior Court has been entrusted to uphold. Because beginning with the fact(s) section, continuing throughout the entire opinion, the Fifth Circuit Court of Appeal [mis]represents the actual testimony of witnesses, misquotes the Code of Evidence, and attempts to apply irrelevant case law.[1]

2. Appellant contends, but the malfeasance and fundamental error does not stop there. Defendant's supplemental direct appeal brief is composed in the "exact" same format as appellate counsel and as that of State's response brief with specific error/headings presented for review, followed by testimonial facts, citation of pages of the record and authorities cited, yet this Court erroneously and [un]persuasively alleges in Footnote 4, " . . . clearly these these headings are not briefed." (P. 7). Thus, abusing judicial discretion and violating Mr. Ayo's due process right(s) to review twenty-four (24) viable points of law applicable to each assignment of error.[2]

3. Appellant contends, this Court is well aware of the true facts; a twenty (20) year veteran, "Lieutenant" Detective Daniel Jewell, Jr. drove past Mr. Ayo, and further left the

---

1 Appellant would have to compile a twenty (20) page brief just to address the (misrepresented facts), and the Rule(s) of Court do not afford the time necessary to address the numerous amount errors and abuse of discretion contained in this opinion.

2 Clearly, this panel does not understand how briefs are compiled and case law operates. *See, e.g., State v. Washington*, 444 So.2d 320 (La.App. 1st Cir. 1983), in which nine (9) points of law and evidence are addressed in assignment of error number one.

area because Defendant (240 lbs, green shirt, with major facial injuries) did not match any description ever given by the victim at any time. That nothing changed warranting the immediate arrest of Mr. Ayo upon Det. Jewell's return. Thus, the prerequisite to enter another jurisdiction of this State, close pursuit "of a person to be arrested." La.C.Cr.P. art. 213(4) was clearly not satisfied in this case.

4. Appellant contends, if society were to follow the rational of this Court: "[He] saw a knife sticking out from Defendant's pocket . . . citizen's arrest are satisfied in this case." (P. 11, 13). Total mayhem would ensue if citizen's would wrestle down and arrest every construction worker with a knife on his belt or in his pocket! But an [un]concealed knife violates "no" law, nor satisfies the prerequisite of a private person to make an arrest "when the person arrested has committed a felony." La.C.Cr.P. art. 214.

5. Appellant contends, due to the ludicrous amount of misrepresented and eluded facts contained in the opinion of this Court, Defendant merely objects, preserving all thirty-five (35) legal issues contained in his supplemental direct appeal brief, and preserving the abuse of this Court's discretion for certiorari and federal review.

**WHEREFORE**, Appellant respectfully moves this Honorable Court to rehear the case at bar and grant relief as follows:

1. Address the twenty-fourt (24) remaining issue(s) clearly briefed and not abandoned;[3]

2. Deem there was no close pursuit, but an investigative stop by Jefferson Parish Officials in Orleans Parish;

3. Suppress all evidence seized from the illegal arrest; and

4. Remand for a new trial to be held.

This I forever pray.

RESPECTFULLY SUBMITTED,

GLENN CHARLES AYO
APPELLANT PRO SE

3 Typo error exists with Legal Issue #21 being repeated twice though two (2) independent issue(s) argued.

**AFFIDAVIT / CERTIFICATION**

I, Glenn Charles Ayo, hereby declare under penalty of perjury that I read the foregoing Initial Brief of Appellant and the facts herein are all true and correct and complete to the best of my knowledge and belief. I, Glenn Charles Ayo, hereby certify that a true copy of the foregoing has been furnished by prepaid U.S. Postal to the District Attorney's Office, 200 Derbigny St., Gretna, LA 70053.

Mailed this 1st day of April, 2009.

Glenn Charles Ayo #531823
Main Prison
Louisiana State Penitentiary
Angola, LA 70712

EDWARD A. DUFRESNE, JR.
CHIEF JUDGE

MARION F. EDWARDS
SUSAN M. CHEHARDY
CLARENCE E. McMANUS
WALTER J. ROTHSCHILD
FREDERICKA H. WICKER

JUDGES

FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

PETER J. FITZGERALD, JR.
CLERK OF COURT

GENEVIEVE L. VERRETTE
CHIEF DEPUTY CLERK

MARY E. LEGNON
FIRST DEPUTY CLERK

TROY A. BROUSSARD
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

April 13, 2009

TERRY M. BOUDREAUX
ASSISTANT DISTRICT ATTORNEY
PARISH OF JEFFERSON
200 DERBIGNY STREET
GRETNA, LA 70053

MARGARET S. SOLLARS
ATTORNEY AT LAW
LOUISIANA APPELLATE PROJECT
513 COUNTRY CLUB BOULEVARD
THIBODAUX, LA 70301

GLENN C. AYO #531823
MAIN PRISON - PINE 1
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712

DEAR SIR/MADAM:

REHEARING WAS THIS DAY REFUSED IN THE CASE ENTITLED:

**STATE OF LOUISIANA
VERSUS
GLENN C. AYO**

**STATE OF LOUISIANA
VERSUS
GLENN CHARLES AYO**

**NO: 08-KA-468
C/W
08-KH-1179**

VERY TRULY YOURS,

PETER J. FITZGERALD, JR.
CLERK OF COURT

SCANNED at LSP and Emailed
5-23-13 by BM . 40 pages
date initials No.

RECEIVED
MAY 23 2013
Legal Programs Department

# APPENDIX - D

SUPREME COURT OF LOUISIANA

******************************************

NUMBER 09-KH-1026

******************************************

STATE OF LOUISIANA

VERSUS

GLENN CHARLES AYO

****************************************************************

ORIGINAL APPLICATION FOR WRIT OF CERTIORARI AND/OR REVIEW

TO THE LOUISIANA COURT OF APPEAL, FIFTH CIRCUIT, NUMBER 08-KA-468
THE HONORABLE DUFRESNE, ROCTHSCHILD, AND JASMINE,
JUDGES PRESIDING

TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON
DOCKET NO. 07-369, 07-370
HONORABLE HENRY C. SULLIVAN, JR., DISTRICT COURT JUDGE, DIV. "M"

****************************************************************

APPLICATION FOR WRIT OF CERTIORARI AND/OR REVIEW

ON BEHALF OF GLENN CHARLES AYO
PRO SE DEFENDANT-PETITIONER

******************************************

ORIGINAL BRIEF ON THE MERITS

******************************************

RESPECTFULLY SUBMITTED BY

GLENN CHARLES AYO #531832
PRO SE DEFENDANT/PETITIONER
MAIN PRISON, PINE – 1
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712

(CRIMINAL PROCEEDING)

SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

NO. ____________________

TO BE COMPLETED BY COUNSEL or PRO SE LITIGANT FILING APPLICATION

TITLE

STATE OF LOUISIANA
VS.
GLENN CHARLES AYO

Applicant: Glenn Charles Ayo
Have there been any other filings in this Court in this matter? [ ] Yes [X] No

Are you seeking a Stay Order? NO
Priority Treatment? NO
If so you MUST complete & attach a Priority Form

LEAD COUNSEL/PRO SE LITIGANT INFORMATION

APPLICANT:
Name: Glenn Charles Ayo #531832
Address: Pine -1, La. State Penitentiary
Angola, LA 70712
Phone No: N/A Bar No. N/A

RESPONDENT:
Name: Paul D. Connick, Jr., D.A.
Address: 200 Derbigny, 5th Floor
Gretna, LA 70053
Phone No. (504) 368-1020 Bar No. Unknown

Pleading being filed: [X] In proper person, [X] In Forma Pauperis
Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.

TYPE OF PLEADING

[ ] Civil, [X] Criminal, [ ] R.S. 46:1844, [ ] Bar, [ ] Civil Juvenile, [ ] Criminal Juvenile, [ ] Other
[ ] CINC, [ ] Termination, [ ] Surrender, [ ] Adoption, [ ] Child Custody

ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court: ____________ Docket No. ____________
Judge/Commissioner/Hearing Officer: ____________ Ruling Date: ____________

DISTRICT COURT INFORMATION

Parish and Judicial District Court: Jefferson Parish, 24th JDC Docket Number: 07,369, 07,370
Judge and Section: Henry G. Sullivan, Jr., Div. "M" Date of Ruling/Judgment: 11/24/07

APPELLATE COURT INFORMATION

Circuit: Fifth Docket No. 08-KA-0468 Action: Conviction affirmed
Applicant in Appellate Court: Glenn Charles Ayo Filing Date: 6/25/09
Ruling Date: 3/24/09 Panel of Judges: Dufresne, Rothschild, and Jasmine, JJ. En Banc: [ ]

REHEARING INFORMATION

Applicant: Glenn Ayo Date Filed: 4/1/09 Action on Rehearing: Refused by Clerk
Ruling Date: 4/13/09 Panel of Judges: Peter J. Fitzgerald, Clerk (Refused) En Banc: [ ]

PRESENT STATUS

[ ] Pre-Trial, Hearing/Trial Scheduled date: ____________, [ ] Trial in Progress, [X] Post Trial
Is there a stay now in effect? NO Has this pleading been filed in any other Court? NO
If so, explain briefly ____________________

VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate Court of appeal (if required), to the respondent Judge in the case of a remedial writ, and to all other counsel and unrepresented parties.

____________________ DATE

____________________ SIGNATURE

**INDEX**

WRIT APPLICATION FILING SHEET ..... i

TABLE OF AUTHORITIES ..... iv

STATEMENT OF JURISDICTION ..... vii

WRIT GRANT CONSIDERATIONS ..... viii

MEMORANDUM ..... 1

STATEMENT OF THE CASE ..... 1

Procedural History ..... 1

Statement of Facts ..... 3

ASSIGNMENT OF ERRORS ..... 4

SUMMARY OF THE ARGUMENT ..... 5

ARGUMENT

ERROR NO. 1 ..... 6

ERROR NO. 2 ..... 10

ERROR NO. 3 ..... 13

ERROR NO. 4 ..... 15

ERROR NO. 5 ..... 16

ERROR NO. 6 ..... 18

ERROR NO. 7 ..... 20

ERROR NO. 8 ..... 22

ERROR NO. 9 ..... 23

ERROR NO. 10 ..... 27

ERROR NO. 11 ..... 27

PRAYER FOR RELIEF ..... 28

AFFIDAVIT / CERTIFICATE OF SERVICE ..... 29

**APPENDIX**

A. Pro Se Motion for Rehearing Refusal by the Court of Appeal, Fifth Circuit

B. Defendant' Pro Se Motion for Rehearing

C. Opinion, Louisiana Court of Appeal, Fifth Circuit

D. State's Reply Brief to Defendant's Pro Se Supplemental Brief

E. Defendant's Pro Se Supplemental Brief

F. State's Reply Brief to Defendant's Original Direct Appeal Brief

G. Defendant' Original Direct Appeal Brief

H. Exhibits (Original Direct Appeal and Writ of Certiorari and/or Review)

## TABLE OF AUTHORITIES

### CONSTITUTIONAL PROVISIONS:

Fourth Amendment .......... 6, 10, 12, 14, 16, 18, 20

Fifth Amendment .......... 14

Sixth Amendment .......... 13, 20, 22-23, 27-28

Fourteenth Amendment .......... 6, 10, 13, 14, 16, 18, 20, 22-23, 27-28

Article 5, § 5 of the Louisiana Constitution .......... vii

### STATUTORY PROVISIONS:

La.C.Cr.P. Art. 213 .......... 8

La.C.Cr.P. Art. 213(4) .......... 9-10

La.C.Cr.P. Art. 214 .......... 11

La.C.Cr.P. art. 228(A) .......... 22

La.C.Cr.P. art. 770 .......... 26

La.C.Cr.P. arts. 771 .......... 26

La.C.Cr.P. art. 770(2) .......... 24

La.C.Cr.P. art. 921 .......... 27

La.C.E. Art. 403 .......... 26

La.C.E. Art. 404(B)(1) .......... 24

La.C.E. Art. 611(B) .......... 11

La.R.S. 14:64 .......... 1

La.R.S. 14:108 .......... 1

### CASES:

Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) .......... 9

Bright v. State, 776 So.2d 1134 (La. 2000) .......... 21

Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) .......... 28

Chatzicharalambus v. Petit, 430 F.Supp. 1087 (E.D. La. 1977) .......... 27

Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) .......... 11

Derden v. McNeel, 978 F.2d 1453 (5th Cir. 1992) .......... 28

Dunn v. U.S., 307 F.2d 883 (5th Cir. 1962) .......... 26

Harrison v. Quarterman, 496 F.3d 419 (5th Cir. 2007) .......... 23

Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) .......... 21

Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) .......... 19

Napue v. Illinois, 360 U.S. 264, 79 So.2d 1173, 3 L.Ed.2d 1217 (1959) .......... 13

Nealy v. Cabana, 764 F.2d 1173 (5th Cir. 1985) .......... 23

New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) .......... 18-19

Rice v. Glad Hands, Inc., 750 F.2d 434 (5th Cir. 1985) .......... 27

R.J. D'Hemecourt Petroleum Inc. v. McNamara, 444 So.2d 600 (La. 1983) .......... 27

State v. Aguillard, 357 So.2d 535 (La. 1978) .......... 17

State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), ___ So.2d ___ .......... 6, 8-9, 11, 13-19, 21-23, 25-28

State v. Barber, 617 So.2d 974 (La.App. 4 Cir. 1993) .......... 26

State v. Blanton, 400 So.2d 661 (La. 1981) .......... 7, 9

State v. Blanis, 720 So.2d 749 (La.App. 4 Cir. 1998) .......... 12

State v. Bourgeois, 609 So.2d 1003 (La.App. 5 Cir. 1992) .......... 16

State v. Caldwell, 504 So.2d 853 (La. 1987) .......... 11

State v. Chopin, 372 So.2d 1222 (La. 1979) .......... 11, 17

State v. Cordero, 08-1717 (La. 10/3/08), ___ So.2d ___ .......... 6

State v. Dyer, 794 So.2d 1 (La.App. 5 Cir. 2001) .......... 21

State v. Everidge, 702 So.2d 680 (La. 1997) .......... 26

State v. Fallon, 290 So.2d 273 (La. 1974) .......... 27

State v. Finklea, 313 So.2d 224 (La. 1975) .......... 19

State v. Fisher, 720 So.2d 1179 (La. 1998) .......... 7, 15

State v. Franklin, 353 So.2d 1315 (La. 1978) .......... 18-19

State v. Godeaux, 378 So.2d 941 (La. 1980) .......... 18

State v. Jackson, 625 So.2d 146 (La. 1993) .......... 24

State v. Key, 375 So.2d 1354 (La. 1979) .......... 13, 17

State v. Moreno, 619 So.2d 62 (La. 1993) .......... 16

State v. Matthews, 366 So.2d 1348 (La. 1978) .......... 7

State v. Owens, 565 So.2d 1062 (La.App. 5 Cir. 1990) .......... 9

State v. Parker, 622 So.2d 791 (La.App. 4 Cir. 1993) ... 18, 20

State v. Paster, 373 So.2d 170 (La. 1979) ... 18

State v. Pomes, 376 So.2d 133 (La. 1979) ... 20

State v. Pounds, 359 So.2d 150 (La. 1978) ... 27

State v. Prieur, 277 So.2d 126 (La. 1973) ... 24

State v. Raheem, 464 So.2d 293 (La. 1985) ... 7, 9, 16-17, 19

State v. Robinson, 386 So.2d 1374 (La. 1980) ... 21-22

State v. Ruffin, 448 So.2d 1274 (La. 1984) ... 17

State v. Short, 665 So.2d 1102 (La. 1992) ... 18

State v. Singleton, 923 So.2d 803 (La.App. 5 Cir. 2006) ... 13, 21

State v. Smart, 926 So.2d 637 (La.App. 5 Cir. 2006) ... 23

State v. Thompson, 894 So.2d 1268 (La.App. 2 Cir. 2005) ... 9

State v. Thornton, 621 So.2d 173, 176 (La.App. 4 Cir. 1993) ... 17

State v. Walker, 836 So.2d 618 (La.App. 5 Cir. 2002) ... 26

State v. Washington, 364 So.2d 958 (La. 1978) ... 11

State v. Washington, 444 So.2d 320 (La.App. 1 Cir. 1983) ... 8

State v. Washington, 817 So.2d 343 (La.App 5 Cir. 2002) ... 11

State of South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933) ... 22

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ... 17

Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 156 L.Ed.2d 905 (2004) ... 18

United States v. Bishop, 530 F.2d 1156 (5th Cir. 1976) ... 8

United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) ... 12

United States v. Corona, 551 F.2d 1386 (5th Cir. 1977) ... 26

United States v. Glass, 741 F.2d 83 (5th Cir. 1984) ... 13, 16

United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) ... 14

United States v. Herrera, 531 F.2d 788 (5th Cir. 1976) ... 25

United States v. Restrepo-Granda, 575 F.2d 524 (5th Cir. 1978) ... 25

United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) ... 25

## STATEMENT OF JURISDICTION

The Louisiana Supreme Court has supervisory jurisdiction over this proceeding pursuant to Article 5, § 5 of the Louisiana Constitution of 1974, as amended.  The Louisiana Supreme Court has general supervisory jurisdiction over all other courts.  LSA-Const. Art. 5, Sec. 5.

## WRIT GRANT CONSIDERATIONS

It is submitted that this writ application should be granted, in accordance with considerations set forth in Rule X, § 1(a) as follows:

> Relief should be granted in this matter in that the decision of the Fifth Circuit Court of Appeal conflicts with a decision of the, this Court, or the Supreme Court of the United States, on the same legal issue:

1.   Mr. Ayo's rights to be free from illegal searches and seizures.

2.   Mr. Ayo's rights to confront the witnesses against him.

3.   Mr. Ayo's rights to a fair trial:

    1.   Trial court's failure to suppress illegally suggestive one-on-one identification procedures used by police officers.

    2.   Prosecutor's one-on-one confrontation with the victim and Mr. Ayo during trial, rendering an illegal suggestive in-court identification.

    3.   Trial Court allowing suggestive in-court identification.

    4.   Prosecutor's use of known "material" perjured testimony during trial.

    5.   Trial court's allowance of known "material" perjured testimony during trial.

    6.   Court's allowance of evidence without a proper chain of custody established.

4.   Mr. Ayo's rights to the effective assistance of trial counsel and appellate counsel.

5.   Mr. rights to a fair appellate review of his conviction and sentence.

> Relief should be granted in this matter in that the Fifth Circuit Court of Appeal has erroneously interpreted or applied the constitution or a law of this State or the United States States and the decision will cause material injustice or significantly affect the public interest to Appellant. Appellant asserts that the lower courts have not properly applied the Second Degree Murder Statute to the facts presented in evidence:

1.   Mr. Ayo's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment and Article 1, §§ 2, 3, 5, 13, 14, 16, 17, 19, 20, 22, and 24 of the Louisiana Constitution, rights

    1.   To be free from illegal searches and seizures.

    2.   To confront the witnesses against him.

    3.   To a fair trial.

    4.   To the effective assistance of trial counsel and appellate counsel.

    5.   To a fair review of his conviction and sentence.

MEMORANDUM

STATEMENT OF THE CASE

This is a criminal case resulting in a conviction.

Procedural History

Defendant/Petitioner, Glenn Ayo, was arrested January 7, 2007, and charged by way of Bill of Information, in Case No. 07-369, with armed robbery in violation of La.R.S. 14:64, and resisting arrest in violation of La.R.S. 14:108. (R. 23).

Counsel, Marquita Naquin, was appointed to represent Mr. Ayo. However, on April 19, 2007, Ms. Naquin was dismissed because of a "non"-existing conflict of interest. Thereafter, Evans Schmidt was appointed to represent Mr. Ayo.

Counsel filed a Motions for Preliminary Examination and to Suppress. (R. 9). On June 27, 2007, Mr. Ayo supplemented the filing(s) pro se, to-wit: Petition for Writ of Habeas Corpus / Alternative Motion to Suppress. (Supp.R. 17-61). A motion hearing was held on August 16, 2007, disregarding pro se motion pending. (R. 76). Mr. Ayo filed a Petition for Writ of Mandamus into the Fifth Circuit Court of Appeal, which issued the writ October 31, 2007, under Docket No. 07-K-871. (Supp.R. 13-16; R. 45). On November 9, 2007, the trial court conducted a separate hearing, without witnesses, denying relief on November 15, 2007. (R. 131, 145).

A jury trial was held November 27 & 28, 2007, and Mr. Ayo was found guilty as charged. (R. 148-383). A Motion for New Trial was filed and denied on December 5, 2007. Mr. Ayo was then sentenced to 87 years. (R. 389-403). The state filed notice of its intent to seek multiple bill enhancement (R. 22b). However, the state dismissed the bill on February 28, 2008. (R. 409-410). The instant appeal follows. (R. 79).

Direct appeal was taken with Margaret Sallars of the Louisiana Appellate Project representing Mr. Ayo. The Fifth Circuit Court of Appeal affirmed Mr. Ayo's conviction March 24, 2009. Rehearing was filed but refused April 13, 2009. The instant petition follows.

Statement of Facts

Mr. Baptiste DeBroy testified that he had gone to a Mardi Gras warehouse with his wife when a man approached from behind and put a knife to his throat, demanding money. The robber and he were face-to-face, within one foot, and he got a good look at him. (R. 80-83,

264-268).

Mr. DeBroy gave the perpetrator $28.00 and the perpetrator fled on foot towards Jefferson Highway. Mr. DeBroy called 911, describing the robber as a white man, about 5'7", weighing 150 pounds, and wearing a dark blue or black (pullover) hooded sweatshirt. (R. 84, 269-272).

Lieutenant Detective Daniel Jewell, Jr., who grew up in the neighborhood and was off duty at the time, got involved in the investigation when his uncle gave him a very brief description. He met with the victim, got a better description, and instructed him to call 911. He specifically remembered Mr. DeBroy saying that "*He was a nice looking guy.*" (R. 155-158).

After he made a couple of loops around the neighborhood to see if he saw the perpetrator, Detective Jewell downgraded the search to a Code-1. The radio dispatcher informed that Deputy Simoneaux stopped a suspect on Jefferson Highway.

While in route, going down Cicero Street, he saw a white male wearing blue jeans and green tee shirt carrying a travel bag. After Detective Jewell questioned the description of the man with fellow officers via radio, he learned that the white male wearing blue jeans and green tee shirt that he saw did not fit the description of the suspect and passed him up. (R. 158-162).

When Mr. DeBroy did not identify the Mexican man stopped by Deputy Simoneaux, Detective Jewell headed back to Cicero Street where he viewed the guy in green shirt and jeans; but he wasn't there anymore. He asked one of the construction workers where the guy that was standing there with the green shirt went? And they said, "Yeah. He got into a blue cab and headed that way." And the direction he pointed would have been towards New Orleans. (R. 85, 163).

Deputy Paul Simoneaux controvertedly testified that while in route to investigate an armed robbery, Detective Jewell advised that he observed a suspect fitting the description get into a Service Cab and he had a knife pretruding from his pocket. He then heard Detective Jewell broadcast on the radio that he was trying to catch up wit the cab, but lost sight of it as they entered Orleans Parish. (R. 98-100, 235-237).

When Deputy Simoneaux got to the corner of Eagle St. and Claiborne Ave., in New Orleans, he observed a cab in the Spur Station. At that point, "*he stopped and began to watch.*"

He observed the man hand the cab driver what he believed was money. Then he pulled into the station and grabbed his arm.

Deputy Simoneaux observed what appeared to be an [un]concealed knife protruding from his back pocket. He placed Mr. Ayo in a compliance hold and got him to the hood of his patrol car. He kept telling the individual to "*Stop Struggling*," but the individual was saying, "*Well, I don't understand. Why is this going on? What's happening?*" Deputy McCoy arrived and assisted handcuffing the individual. The investigatory stop was not in conjunction with the N.O.P.D. (R. 94, 100, 107, 176, 237-239).

Deputy George McCoy and Deputy Paul Simoneaux searched the individual's pockets for property. He had $21.00 crumpled up in his right hand. (R. 101, 239-240). The victim was in the front passenger seat of Deputy McCoy's patrol car for an investigatory one-on-one viewing to see if he could identify the suspect, and saw Mr. Ayo resisting the officer(s). Deputy Paul Simoneaux had him wrapped up over the hood of his car. The victim was an elderly man, and his eyesight not good. Mr. DeBroy asked to get closer and identified him as the perpetrator. Then, Mr. Ayo was placed under arrest. (R. 114-116, 203-205, 207).

Nurse Practitioner, Susan Lee, of the Jefferson Parish Correctional Center, weighed the Mr. Ayo and he was 212 pounds the day of trial. (R. 303).

Mr. Ayo took the stand in his own defense due to witness subpoena problems. (R. 336-337). He testified that he is 44 – not 30 years old, and was 240 pounds the day of arrest – not slim or 150 pounds, with obvious cuts, scabs and bruising about his face – certainly not the "*Good Looking Man*" Mr. DeBroy observed face-to-face in robbery. (R. 82-83, 91, 158, 284-285). Mr. Ayo was on his way to work with a broken knife [tool] to strip copper wire in New Orleans when stopped by Jefferson Parish Officials.

Mr. Ayo testified and introduced into evidence a receipt demonstrating that he received a $300.00 Western Union (less) than 24 hours before arrest. He had no motive to rob victim. The case is one of mistaken identity. (R. 340-343, 355-356, 365).

Nevertheless, the jury found Mr. Ayo guilty of armed robbery, sentencing him to serve 87 years at hard labor. (R. 383, 386). The State dismissed the multiple bill. (R. 402, 410).

ASSIGNMENT OF ERRORS

1. The Trial Court erred by failing to suppress the seizure of Mr. Ayo, finding police "not" in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

2. Trial Court erred by precluding Defense from cross - examining arresting officer on relevant "material" issue(s) in violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

3. Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution's obvious use of known perjured testimony, and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

4. Trial Court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as "private citizen" to immediately arrest, violating Mr. Ayo's Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).

5. Trial Court erred by failing to suppress the seizure of alleged evidence, finding that construction worker's possession of [un]concealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

6. Trial Court erred by failing to suppress seizure of jacket in cab, not in "plain view" and beyond control of Mr. Ayo, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

7. Trial Court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

8. Trial Court erred by not continuing trial, and "not" addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

9. Trial Court erred by failing to grant a mistrial when the State committed fundamental error and "perjury" by fraudulently informing jury that Mr. Ayo is wanted for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

10. Trial Court erred by admitting evidence agreed upon in pretrial not to introduce, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s) to a fair trial.

11. Trial Court erred in not intervening and properly govern proceedings, stopping State's repeated improprieties denying Mr. Ayo's right to a fair and impartial trial, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

**SUMMARY OF THE ARGUMENT**

Glenn Charles Ayo started his day out like many workers in the Greater New Orleans metropolitan area during the weeks following the hurricane. He got up, dressed, had a bit of breakfast, grabbed the tools he would need for work, and headed out the door to go to the job site.

Little did he know that because of some overzealous police officers, who thought nothing of him when they passed him on their way to question a suspect to a crime, that he would suddenly be gang tackled by these same officers while paying his cab fair and then be falsely accused of armed robbery.

These police officers broke many rules and many laws in their pursuit of bringing someone, anyone, to pay for this crime that occurred so close to home for Deputy Jewell. Unfortunately, for Mr. Ayo, the zest the officers had to bring in the one responsible for the crime resulted in the arrest and conviction of an innocent man.

The record and the argument below will show the Court that from the very outset Mr. Ayo was not even worthy of a second thought. Yet, after the police realized they had the wrong man, the search for a new suspect led them after Mr. Ayo. Not that he matched the description or caused them suspicion when he was first seen. It was just that he happened to be in the area at the same time going to work and the only other person they could think of at the time.

It will be shown that these Jefferson Parish Police Officers were never in close/hot pursuit of Mr. Ayo when he was encountered in Orleans Parish an hour later. It will also be shown that these officers did not have jurisdiction in Orleans Parish to conduct an exploratory search and investigation during the course of their duties.

The evidence that was seized as a result of this unlawful arrest should have been suppressed at Mr. Ayo's trial.

The one-on-one identification procedures performed by the police were unduly suggestive and the prosecutor arranged a one-on-one identification of Mr. Ayo by the victim just minutes before the victim took the stand, rendering the identification suggestive and inadmissible. The denial of these and other valuable constitutional rights resulted in a fundamentally unfair trial.

## ARGUMENT

*Legal Issue(s) For Review:*

1. *Petitioner contends, the malfeasance of the Fifth Circuit Court of Appeal did not stop with State v. Cardero, 08-1717 (La. 10/3/08), ___ So.2d ___. In the case at bar, beginning with the facts section, continuing throughout the entire opinion, the Fifth Circuit [mis]represents the actual testimony of witnesses, [re]words assignments of error(s), and applies irrelevant case law to refute Mr. Ayo's claim(s) on direct appeal. For the this Court not to grant certiorari review and remand for correction of the fundamental error(s) herein, would effectively implement inconsistent Louisiana law by the decision in State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), ___ So.2d ___.*[1]

   A) *Contrary to the Opinion (Op. hereinafter) of the Fifth Circuit, Mr. DeBroy, the victim, did not give a detailed description of the knife to the 911 operator or Detective Jewell, nor did he positively identify the weapon as erroneously portrayed by the Fifth Circuit (Op. p. 5), clearly contradictory to the record and trial testimony. (State Exhibit – 4).*

   B) *Detective Jewell did not testify that construction workers in the area told him the man standing in front of his apartment in the green tee shirt headed towards New Orleans. Which in turn, is the main culprit to the alleged close/hot pursuit and illegal arrest. (Op. p. 5.). These facts are contradicted by the State on direct examination. (R. 162-163).*

   C) *Nor was a blue pullover hooded sweatshirt found on top Mr. Ayo's travel bag. (Op. p. 6). Additionally, these facts are contradictory to the tangible evidence introduced of a zip-up polyester windbreaker.*

   D) *And Deputy Simoneaux did not testify that he heard on the police radio that Deputy McCoy saw a suspect get into a cab. (Op. p. 6-7). This too is contrary to the State's case in chief.*

2. *Petitioner contends, but the malfeasance and fundamental error does not stop there. Mr. Ayo's supplemental brief on direct appeal is composed in the exact same formate as appellate counsel and as that of State's response brief with specific headings/error(s) presented for review, followed by testimonial facts, citation of pages of the record and authorities cited; in perfect conformity with Rule 2-12.4, Uniform Rules of Court of Appeal. Yet the Fifth Circuit erroneously alleges in Footnote 4, ". . . clearly these headings are not briefed . . . abandoned on appeal." (Op. p. 7). Thus, abusing judicial discretion and violating Mr. Ayo's due process right(s) to review twenty-four (24) viable points of law applicable to each assignment of error.*

3. *Sufficiency of evidence warranting "hot pursuit" to arrest.*[2]

### PRO SE ASSIGNMENT OF ERROR NO. 1

The Trial Court erred by failing to suppress the seizure of Mr. Ayo, finding police "not" in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

---

1 The opinion of the Fifth Circuit contains over fifteen (15) occasion(s) of misrepresented facts. In the interest of judicial economy to prevent redundancy, all errors will not be addressed in Ground One, but systematically throughout the writ.

2 Ground one of pro se writ of Habeas Corpus / Motion to Suppress. (Supp R. 17-61; R. 16, 131-146).

## ARGUMENT IN SUPPORT

The victim, Mr. DeBroy, described the suspect as:

> A white male, clean shaven, good looking man, 150 lbs., slim, black hair, wearing a blue or back pullover hooded sweatshirt. (R. 82-83, 158, 283-286; State's Exhibit – 3).

The testimony of the officers and Mr. Ayo at trial revealed that at the time of the incident Mr. Ayo's description was:

> A white male, with two (2) black eyes, cuts, and severe scabbing and bruising about his face (not the good looking man to B.O.L.O. – to be on the look-out for), 240 lbs., husky, brown hair, wearing a lime green tee shirt and carrying a travel bag. (R. 176-177, 320-321, 326, 364-367; State's Exhibit – 13).

Mr. Ayo contends that probable cause for a full custodial arrest, is more than "*reasonable suspicion for an investigatory stop.*" *See e.g.*, State v. Fisher, 720 So.2d 1179, 1183 (La. 1998) (evidence was insufficient to establish that defendant was fleeing to avoid apprehension, as would allow officer's reasonable suspicion that defendant had committed a crime).

The only facts known to Jefferson Parish officials when they entered another jurisdiction looking to *"investigate"* this possible suspect was that:

1. A white male was observed outside an apartment several blocks away from the scene of the incident. [but did not match the description for the initial stop by Detective Jewell].

2. The man was not doing anything suspicious or illegal. He was just carrying a travel bag.

3. An untested source informed police that the man (Mr. Ayo) hired a cab and went "that way." (R. 158-163).[3]

This innocent everyday behavior did not provide the officers with the requisite "reasonable cause" to believe that Mr. Ayo committed a crime warranting immediate arrest. *See, e.g.*, State v. Blanton, 400 So.2d 661, 663 (La. 1981), arresting agents who were only informed by another agent to watch car and see what they could learn from such surveillance, did not have reasonable grounds to suspect him of criminal activity to warrant stop of defendant, and information supplied by confidential informant did not establish probable cause for warrantless arrest. State v. Raheem, 464 So.2d 293, 297 (La. 1985); State v. Matthews, 366 So.2d 1348, 1352 (La. 1978).

3 Two miles of businesses and residential neighborhoods lie between this point and Orleans Parish line.

La.C.Cr.P. Art. 213 states in relevant part:

> A peace officer may, without a warrant, arrest a person when:
> (3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;

Detective Jewell merely observed Mr. Ayo, who did not match the description of the suspect standing outside his apartment with a carryall bag. Detective Jewell did not have reasonable cause to believe that Mr. Ayo had committed an offense warranting immediate arrest.

Had Mr. Ayo matched the description of the suspect and/or was doing something suspicious to make Detective Jewell believe that he had committed an offense, as a seasoned officer, (Lieutenant) Detective Jewell, would undoubtedly have stopped and detained Mr. Ayo. However, this is not the case. Detective Jewell simply passed by Mr. Ayo and did not give him a second thought until it was discovered that the man that Deputy Simoneaux stopped and detained was not the suspect.

Nothing had changed from the time Detective Jewell initially saw Mr. Ayo and did not give him a second thought until it was discovered that the Mexican man that Deputy Simoneaux stopped and detained was not the suspect.

The authorities relied upon to affirm Mr. Ayo's conviction are misplaced and distinguishably different from the facts in the case at bar. The Fifth Circuit erred in relying on the decision in United States v. Bishop, 530 F.2d 1156, 1157 (5th Cir. 1976), in which bank officials had hidden a small transmitter in a packet of bait money. The Shreveport Police vehicle received the signal and were able to *follow* the signal into Bossier City, Louisiana.

In State v. Washington, 444 So.2d 320, 323 (La.App. 1 Cir. 1983), Raceland Bank officials informed police that the robbers escaped on foot along the railroad tracks behind the bank headed into St. Charles Parish. Using a K-9 dog, police again *followed* the robbers into the swamp and back to the railroad tracks. When police asked if they knew about the robbery, Turner confessed.[4]

If this Court allows the opinion stand in State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), ___ So.2d ___, in which a twenty (20) year veteran, "Lieutenant" Detective Daniel Jewell both observed and drove past Mr. Ayo standing in front of his apartment, and further left the area

4. Interesting is the fact that the Fifth Circuit cited in its opinion State v. Washington, 444 So.2d 320 (La.App. 1 Cir. 1983), in which nine (9) criminal keys/sub-points of law are addressed in assignment of error.

because Mr. Ayo (240 lbs., green tee shirt, with major facial injuries) did not match the description given by the victim. (See Appendix - ).

In this Court condones such a lenient rationale, that based on so little information, probable cause existed for a full custodial arrest, and the arrest passes muster as a close pursuit by a peace officer across parish lines. The Fifth Circuit's decision in State v. Ayo, will expressly and directly conflict with well settled federal and state law. *See* Beck v. Ohio, 379 U.S. 89, 96-97, 85 S.Ct. 223, 228-229, 13 L.Ed.2d 142 (1964); State v. Blanton, 400 So.2d 661, 663 (La. 1981); State v. Raheem, 464 So.2d 293, 297 (La. 1985).

d. *Pro Se Sub-Issue No. 2 – lawfulness of "investigatory" stop out of jurisdiction.*[5]

Mr. Ayo contends, the Fifth Circuit ridiculously alleges in Footnote 4, "It is not clear how these headings relate to the assignment of error." *e.g.*, sufficiency of evidence warranting hot pursuit to arrest; and police not in close pursuit may not enter another jurisdiction, though a sixth grader can determine the nexus between these issue(s), unbelievably it is unclear to elected officials.

In the instant case, none of the officers involved in this incident had reason to believe that Defendant had committed a crime outside their presence to effectuate an immediate arrest of Mr. Ayo. In fact, Deputy Simoneaux, unequivocally testified that he was not following the cab nor seen it until after [they] entered New Orleans. Then he observed [a] cab at the Spur Station on the corner of Engle St. and Claiborne Avenue. "He stopped and began to watch." (R. 99, 237, 254-255).[6]

Art. 213 allows a law enforcement officer from another parish in close pursuit (*of person to be arrested*) to pursue a suspect across parish lines. *See, e.g.*, State v. Thompson, Sr., 894 So.2d 1268, 1272 (La.App. 2 Cir. 2005) (The gang was spotted at an apartment complex loading the stolen money and a large cache of guns into a minivan. The Shreveport Police spotted and began trailing a green van matching the alert. As they entered Bossier Parish, the officer pulled over the van.); State v. Owens, 565 So.2d 1062, 1063 (La.App. 5 Cir. 1990) (Gretna Police activated emergency lights and gave chase. The vehicle eventually was stopped in Harvey, La.).

5 Contrary to the opinion of the Fifth Circuit, there is not a common law doctrine of *fresh pursuit* codified in LSA-C.Cr.P. art. 213(4), and the Circuit Court may not act in a legislative capacity and rewrite statutory law to merely exclude cold cases.

6 Properly defined in Merriam Webster's Collegiate Dictionary, Eleventh Edition: **Watch** \ 1. A state of alert or continuous attention. 6. To keep oneself informed about <His Progress>.

In the case sub judice, the Jefferson Parish Sheriff's Deputies were not in *hot pursuit* of this cab to immediately *arrest* its occupant(s), the requisite to following a suspect across parish lines. But officials "watch[ed]" and conducted an (investigation) out of their lawful jurisdiction. Such an exploration for evidence must be performed by, or in conjunction with, the New Orleans Police Department (NOPD). Thus, in light of the fact Jefferson Parish Officials are without statutory authority to "*watch*" individuals and conduct independent (investigations) in another jurisdiction, the initial investigatory stop in Orleans Parish was illegal. And the opinion in State v. Ayo, expressly and directly conflicts with LSA-C.Cr.P. art. 213(4).

5. *Denial of due process to cross-examine State's witness on "material" issue(s).*

**PRO SE ASSIGNMENT OF ERROR NO. 2**

Trial Court abused judicial discretion by precluding Defense from cross-examining arresting officer on relevant "material" issue(s), in violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

**ARGUMENT IN SUPPORT**

Mr. Ayo contends, the Fifth Circuit Court of Appeal states that during cross-examination of Deputy Simoneaux during the motion to suppress hearing. Then erroneously attacks Mr. Ayo in Footnote 6 that "neither hearing contains testimony from witnesses." (Op. p. 16).

The Circuit Court's application of law that Mr. Ayo's constitutional confrontation rights are not affected by questioning at a motion hearing are misplaced. The issue at bar was on motion for preliminary examination (probable cause hearing), and on motion to suppress (admissibility of evidence at trail); hearing(s) on material issues relevant to Mr. Ayo's liberty and constitutional right(s) to a fundamentally fair trial. The Trial Court abused its judicial discretion and committed fundamental error, over objection, precluding Defense from cross-examining Deputy Simoneaux regarding:

1. The lawfulness of his jurisdiction under color of State;
2. His lawful authority/commission to conduct "investigation(s)" in Orleans Parish;
3. And, the lawfulness of Mr. Ayo's detention and arrest. (R. 106).

When the lawfulness of jurisdiction, the lawfulness of investigatory stop, and the lawfulness of Mr. Ayo's arrest and evidence seized were the three (3) primary issue(s) at bar. (R. 9, 104-107, 131-146).

The Circuit Court's reliance on State v. Washington, 817 So.2d 343 (La.App 5 Cir. 2002), in which Stevenson frivolously argued the court denied his right to fully cross-examine and impeach an officer about "irrelevant" booking procedures, is seriously misplaced.

In the case at bar, Mr. Ayo's constitutional rights(s) were clearly violated when the trial court prohibited cross-examination on the lawfulness of arrest and evidence seized, and whether said evidence should be admitted/excluded from trial. Not to set aside this opinion, would expressly and directly conflict with well settled federal and state law. *See* Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); State v. Caldwell, 504 So.2d 853, 856 (La. 1987); LSA-C.E. Art. 611(B).

6. *Pro Se Sub-Issue No. 4 -- Lawfulness of private "citizen" executing investigatory stop(s).*[7]

Assuming arguendo, that Deputy Simoneaux was acting as a private citizen when [he] arrested Mr. Ayo in Orleans Parish. (R. 107). State v. Chopin, 372 So.2d 1222, 1224-1225 (La. 1979) (police officers did not have right to make investigatory stop of person walking in a well-lit, well-traveled area).

Deputy Simoneaux concedes (not) arresting Mr. Ayo immediately upon first encounter, such as that of a hot pursuit. But testified that "He stopped and began to watch." (R. 237). In other words, he (investigated). Then after detaining Mr. Ayo,

> "[He] notified Deputy McCoy to bring the victim to identify the subject that I stopped to see (if) this could be the perpetrator." (emphasis added). (R. 256).

Unequivocally, this officer conducted an (investigatory stop), because Mr. Ayo admittedly was not arrested until "after" the victim viewed the suspect. (R. 116, 207).

Mr. Ayo contends, if this Court does not overturn the rationale of the Fifth Circuit in State v. Ayo, accepting that all conditions of a citizen arrest are satisfied in this case. (Op. pp. 11, 13). Total mayhem will ensue as citizens wrestle down and arrest every construction worker with a knife on his belt or in his pocket—an [un]concealed knife which violates *no* law. To authorize a full custodial arrest on so little information, or (investigatory) stops by private citizens. The Fifth Circuit's decision would expressly and directly conflict with State v. Washington, 364 So.2d 958,

---

7 The State properly addressed all thirty-five (35) sub-issues (points of law) in their responsive brief, however, the Fifth Circuit ridiculously claims that the specific heading alleging "legal concepts", followed by one (1) page of facts and authorities in support are not briefed and abandoned. Thus, the twenty-four (24) issue(s) not addressed must be remanded for due process review.

960 (La. 1978); LSA-C.Cr.P. art. 214.

7. *Pro Se Sub-Issue No. 5 – Lawfulness of stop based solely on race or gender*[8]

In a light most favorable to the State, the prosecution entered dispatch transcripts into evidence, demonstrating that Detective Jewell broadcast he merely observed:

> A white male with green shirt and blue jeans [several blocks away from robbery]. (R. 152-154; State's Exhibit – 3).

In light of the fact (no green tee shirt nor blue jeans) were part of initial description, its evident Deputy Simoneaux relied on the (only) remaining factor to justify stop in Orleans Parish. Mr. Ayo's apparent Anglo "white/male" ancestry. Deputy McCoy uncontrovertedly testified that they stopped the other person

> "Because the description said white male, and Hispanics are traditionally considered white males" (R. 213).

Mr. Ayo contends, in light of the officer's own admission, Mr. Ayo was "illegally" detained based solely on his race and gender, and alleged evidence was further improperly admitted based on an "illegal" arrest. If this Court does not remand for a new trial, suppressing the illegal evidence fundamental to a fair trial, the Fifth Circuit's decision will expressly and directly conflict with federal and state law. United States v. Brignoni-Ponce, 422 U.S. 873, 885-886, 95 S.Ct. 2574, 2582-2583, 45 L.Ed.2d 607 (1975); State v. Blasio, 720 So.2d 749, 750 (La.App. 4 Cir. 1998).

8. *Lawfulness of forcible Terry stop*[9]

The radio dispatcher broadcast to all units a B.O.L.O., be on the look-out for:

> A white male, 150 lbs., black hair, wearing a blue or black (pullover) hooded sweatshirt. (See Exhibit – A).

When Deputy Simoneaux forcibly detained and subjected Mr. Ayo to a search by taking hold of him, Mr. Ayo was "*seized*" for purposes of the Fourth Amendment. The "specific and articulable facts" the officer had were:

1. A fellow officer broadcast that he merely observed a white male [several blocks away from robbery];
2. He did not match the clothing description, wearing a lime-green tee shirt and carrying a travel bag;

---

8 Ground Two of pro se Writ of Habeas Corpus / Motion to Suppress. (Supp.R. 17-61; R. 16, 131-146).
9 Ground Three of pro se Writ of Habeas Corpus / Motion to Suppress. (Supp.R. 17-61; R. 16, 131-146).

3. He did not match the profile, as Mr. Ayo was 14 years older, "90" pounds heavier (240 lbs.), with very notable cuts and bruising about his face (not the good looking man to "B.O.L.O." - be on the Look-out for);

4. Mr. Ayo was in another parish;

5. And lawfully paying cab driver when observed the second time. (R. 173-174, 237, 285-286).

Neither singularly nor together, did these facts afford Deputy Simoneaux with a particularized and objective basis for reasonably suspecting Mr. Ayo of committing a crime.

Mr. Ayo contends, to accept the Fifth Circuit's rationale that probable cause existed to arrest, all conditions of a citizen arrest are satisfied in this case, and the arrest passes muster as a close pursuit by a peace officer across parish lines. (Op. p. 11, 13). The Circuit Court's decision will expressly and directly conflict with federal and state law. U.S. v. Glass, 741 F.2d 83, 85-86 (5th Cir. 1984); State v. Key, 375 So.2d 1354, 1358 (La. 1979).

9. *Abuse of judicial discretion – allowing intentional use of "material" perjury of fraudulent probable cause to justify alleged hot pursuit.*

PRO SE ASSIGNMENT OF ERROR NO. 3

Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution's obvious use of known perjured testimony, and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

ARGUMENT IN SUPPORT

Mr. Ayo contends, the decision of the Fifth Circuit in State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), ___ So.2d ___, and State v. Singleton, 923 So.2d 803 (La.App. 5 Cir. 2006), expressly and directly conflicts with the United States Supreme Court's decision in Napue v. Illinois, 360 U.S. 264, 79 So.2d 1173, 3 L.Ed.2d 1217 (1959), in which *no* objection is required to bring the claim of a fundamentally unfair trial due to perjury. To allow the Fifth Circuit's opinion to stand, would implement conflicting law and authorize the *crime* of perjury to go unpunished in a court of law.

Next, the Fifth Circuit's rationale that Mr. Ayo merely "points to internal contradictions in the testimony" is seriously an understatement. (Op. p. 18). when the primary issue(s) at suppression hearing are: (1) hot pursuit jurisdiction into another parish; (2) lawfulness of arrest; and (3) lawfulness of evidence seized and admitted into trial. And Deputy Simoneaux falsely

testified that Detective Jewell advised on the radio that a suspect got into a Service Cab and had a knife protruding from his pocket, but he lost sight of it as he entered the Orleans Parish line. (R. 98-100, 235-237). Yet, when the State entered the dispatch transcript as State Exhibit – 3, and *no* such transmission took place, it is more than a mere internal contradiction, material to the outcome of trial. For this Court not to reverse for a new trial, would authorize the *crime* of perjury to go unpunished in a court of law.

10. *Pro Se Sub-Issue No. 8 – Abuse of judicial discretion – allowing intentional use of "material" perjury of fraudulent perpetrator.*

Mr. Ayo contend, in this claim Defendant (quotes), quotes the prosecutor erroneously alleging that Detective Jewel's "voice is on the 911 tape informing the operator he saw a knife in Mr. Ayo's back pocket." (R. 186-187). Yet, the Fifth Circuit repeatedly ridicules Mr. Ayo as "confused and mistakenly relies on." (Op. p. 19). When neither the police dispatch nor 911 transcript contain any such transmission and the testimony obviously perjury. (State Exhibits – 3 and 4). Thus, the only unwarranted mockery and confused party is that of the Fifth Circuit.

11. *Pro Se Sub-Issue No. 9 – Abuse of judicial discretion – allowing intentional use of known "material" perjured in-court identification.*

Mr. Ayo contends, the decision of the Fifth Circuit in State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), ___ So.2d ___, is an absolute mockery of the judicial system. This claim addresses the prosecutor bringing the victim to the jail door and instructing him who to identify when he takes the stand five (5) minutes later at trial. (R. 279, 296). Yet, the Fifth Circuit capitalized on the perjury by reiterating that "the finding of guilt reveals that they found the witness credible and believed his identification of the defendant." (Op. p. 20).

12. *Pro Se Sub-Issue No. 10 – Ineffective assistance of counsel.*

Mr. Ayo contends, the Fifth Circuit ambiguously addressed sub-claims No. 10, 11, and 12, which are set-up in the same format as the twenty-four (24) issues warranting relief. Yet, the Circuit Court selectively and erroneously claims that only some were "not briefed and abandoned." (Op. Footnote 4).

Further, the Fifth Circuit states in its opinion that "Defendant makes factual allegations of what his attorney knew at the time of *trial* and on his allegation that the prosecutor allowed perjured testimony to be presented at *trial*. None of these allegations are supported by the

record." Here the Circuit Court erroneously claims that "State Exhibit(s) – 3 and 4," (which demonstrate *no* such radio transmission took place and testimony obviously perjury), that "The trial court record, therefore, is insufficient to review the facts addressing the defendant's claim."

*13. Lawfulness of arrest by private citizen.*[10]

PRO SE ASSIGNMENT OF ERROR NO. 4

Trial Court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bald-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as "private citizen" to immediately arrest, violating Mr. Ayo's Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).

ARGUMENT IN SUPPORT

Mr. Ayo contends, the Fifth Circuit's reliance on United States v. Hensley, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985), is seriously misplaced. In Hensley, the Supreme Court held that (investigatory stop to check identification) of defendant in reliance on another police departments "wanted flyer," which was issued on basis of articulable facts supporting a reasonable suspicion that *the person wanted* had committed the offense, was constitutionally reasonable where the stop and detention that occurred was no more intrusive that would have been permitted . . . Id.

Contrary to the erroneous opinion of the Fifth Circuit, Mr. Ayo did "not" match the description nor profile of perpetrator—he was not (wanted) for this crime in Jefferson Parish; coupled with innocent everyday behavior of paying cab driver. Deputy Simoneaux did not merely conduct a non-intrusive investigatory stop to check Mr. Ayo's identification, but a (full custodial arrest) of Mr. Ayo in another parish because he possessed and [un]concealed work knife, which violated "no" Louisiana law. (R. 162, 237).

"No" Magistrate would have found just case to issue an arrest warrant on the bare-face facts known to Deputy Simoneaux before the encounter:

> A white male got into a cab and was headed towards New Orleans. (State's Exhibit – 3).

If this Court allows the decision to stand in State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), ___ So.2d ___, it will expressly and directly conflict with this Court's holdings in State v. Fisher, 720 So.2d 1179, 1184 (La. 1998).

10 Ground Four and Five of pro se Writ of Habeas Corpus / Motion to Suppress. (Supp. R. 17-61; R. 16, 131-146).

14. *Pro Se Sub-Issue No. 12 -- When illegal stop(s) ripen into probable cause.*

The Fifth Circuit's reasoning that Deputy Simoneaux was acting as a private citizen in making Mr. Ayo's arrest in Orleans Parish, is seriously misplaced. The State can not now argue that an "illegal" investigatory stop out of jurisdiction ripened into probable cause to arrest when Deputy Simoneaux observed the knife in Mr. Ayo's pocket. (R. 145). The State's position would unreasonably authorize the immediate arrest of nearly every construction worker entering a convenient store daily before and after work!

To allow the decision of the Fifth Circuit to stand in State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), ___ So.2d ___, would expressly and directly conflict with federal and state law. United States v. Glass, 741 F.2d 83, 85-86 (5th Cir. 1984); State v. Moreno, 619 So.2d 62, 65 (La. 1993); State v. Raheem, 464 So.2d 193, 297 (La. 1985).

15. *Lawfulness of evidence seized*

**PRO SE ASSIGNMENT OF ERROR NO. 5**

Trial Court erred by failing to suppress the seizure of alleged evidence, finding that construction worker's possession of [un]concealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

**ARGUMENT IN SUPPORT**

The fact that Mr. Ayo: (1) did not match any feature of description of perpetrator other that he is a "white male," (2) who traveled in a hired cab with a travel bag, (3) who was lawfully observed paying the cab driver, or (4) who lawfully possessed and [un]concealed work knife in area obviously under heavy construction, hardly could be considered indicative of criminal activity.[11] State v. Bourgeois, 609 So.2d 1003, 1004 (La.App. 5 Cir. 1992). Without any showing that officers had heard or seen anything else to give them grounds to believe that Mr. Ayo had acted or was then acting unlawful, violated the Fourth and Fourteenth Amendments, and knife seized from his person during ensuing search was inadmissible.

Thus, the alleged evidence (work knife) "not" identified by victim as weapon used in robbery (R. 278), SHOULD have been suppressed and certainly not admitted as "material" evidence in trial.

Any contrary decision would expressly and directly conflict with well settled Federal and

11 And still under construction: two (2) years after arrest.

state law. *See* Terry v. Ohio, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Key, 375 So.2d 1354, 1355 (La. 1979); State v. Aguillard, 357 So.2d 535, 538 (La. 1978).

16. *Search incident to unlawful arrest.*[12]

The victim reported that the perpetrator made off with $28.00. (R. 87) Defendant was stopped just minutes after the robbery and found in possession of $21.00, "not" denomination stolen. (R. 220). Moreover, at trial, Mr. Ayo uncontrovertedly submitted into evidence a $300.00 Western Union Receipt from "less" than 24 hours of this robbery, clearly justifying his resources. (R. 319).

The State's position ignores the legality of the initial stop, lawfulness of arrest, and failed to carry the burden of affirmatively proving that the currency seized derived from the robbery. (R. 87, 258, 319). Therefore, the Fifth Circuit's decision in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with Raheem, *supra*; State v. Ruffin, 448 So.2d 1274, 1279 (La. 1984) (search of defendant, subsequent to the unlawful arrest, could not be justified as a search incident to a lawful arrest). Thus, the $21.00 should have been suppressed.

17. *Pro Se Sub-Issue No. 15 -- Lawful seizure of abandoned property.*

Deputy McCoy testified that the money fell out of his hand to the ground. (R. 219). Therefore, the Fifth Circuit's decision in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with State v. Chopin, 372 So.2d 1222, 1224 (La. 1979), officers did not have right to make initial stop. Thus, money abandoned by Mr. Ayo as a result thereof could not have been legally seized.

18. *Pro Se Sub-Issue No. 16 -- Search exceeded pat down for weapons.*[13]

Mr. Ayo contends that Deputy Simoneaux and Deputy McCoy both ridiculously testified that Mr. Ayo was still holding the money in his hand at least 35 minutes after robbery. (R. 153, 219, 258; State's Exhibit - 3).[14] Obviously the currency was recovered from search of Mr. Ayo's inner pockets, exceeding scope of Terry pat-down for weapons. (R. 323). Therefore, the Fifth Circuit's decision in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with State v. Thornton, 621 So.2d 173, 176 (La.App. 4 Cir. 1993).

12 Ground Six of pro se Motion to Suppress. (Supp. R. 17-61; R. 16, 131-146).
13 Ground Eleven of pro se Motion to Suppress. (Supp. R. 17-61; R. 16, 131-146).
14 More perjury and material fraud upon court.

19. *Pro Se Sub-Issue No. 17 — Illegal stop and search may not ripen into probable cause.*[15]

The currency in and of itself is not unlawful nor contraband. State v. Parker, 622 So.2d 791, 794-795 (La.App. 4 Cir. 1993). Nor its incriminating character immediately apparent, since it did not match denomination stolen to furnish/ripen into probable cause. Therefore, the Fifth Circuit's decision in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with State v. Short, 665 So.2d 1102 (La. 1992).

20. *Pro Se Sub-Issue No. 18 — Lawfulness of chain of custody as to material evidence.*[16]

Jefferson Parish Sheriff's Office record(s) conclusively demonstrate that Deputy McCoy and Deputy Simoneaux materialized at jail the day (after) arrest, collected "any" $21.00 from property officer, and submitted the same as material evidence at trial. (R. 219-220). But when Mr. Ayo challenged the sufficiency of the evidence, not identified visually nor through proper chain of custody, the State declined to argue and carry its burden of proof that this evidence derived from robbery. (R. 142-143, 145). Therefore, the Fifth Circuit's decision in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with State v. Godeaux, 378 So.2d 941, 944 (La. 1980); State v. Paster, 373 So.2d 170, 177 (La. 1979).

21. 19. *Lawfulness of search beyond immediate control of Mr. Ayo.*[17]

**PRO SE ASSIGNMENT OF ERROR NO. 6**

Trial Court erred by failing to suppress seizure of zip-up windbreaker found in cab, not in "plain view" and beyond control of Defendant arrested in front store, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

**ARGUMENT IN SUPPORT**

Mr. Ayo contends, the Fifth Circuit's reliance on Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 156 L.Ed.2d 905 (2004) and New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), is seriously misplaced. In Belton, the Supreme Court held that when a police officer made a (lawful custodial arrest) of an occupant of an automobile.

In the case sub judice, it the Fifth Circuit would not have selectively curtailed twenty-four (24) briefed sub-claim(s). The facts and record conclusively demonstrate that officials were not in close/hot pursuit to immediately arrest Mr. Ayo. (R. 158-163, 237, 254-255). *see, e.g.*, State v. Franklin, 353 So.2d 1315, 1319 (La. 1978) (police in hot pursuit "must have probable cause to

15 Ground Twelve of pro se Motion to Suppress. (Supp. R. 17-61; R. 76, 131-145). Distinguishable from legal issue # 11 addressing knife.

16 Ground Thirteen of pro se Motion to Suppress. (Supp. R. 17-61; R. 76, 131-145).

17 Ground Seven of pro se Motion to Suppress. (Supp. R. 17-61; R. 76, 131-145).

arrest culprit" before pursuing him).

Here there was no probable cause to arrest, let alone a hot pursuit into Orleans Parish. Thus, the arrest was "illegal," and the opinion in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with Belton, and Franklin, *supra*; State v. Raheem, 464 So.2d 293, 295-296 (La. 1985).

22. *Investigative exploratory search out of jurisdiction.*[18]

Deputy Simoneaux observed a blue cab at the Spur Station in New Orleans. "He stopped and began to watch" [investigated]. (R. 237). Then he detained Mr. Ayo (R. 100, 258) and Deputy McCoy searched him and the cab for additional property (R. 116, 240). Then, after the victim identified Mr. Ayo, Deputy Simoneaux placed him under arrest. (R. 207, 242).

The record is clear that officials immediately detained Mr. Ayo, then went on an illegal exploratory search out of their jurisdiction. After discovering enough alleged evidence, what now appeared to amount to probable cause, they arrested Mr. Ayo. The opinion of the Fifth Circuit's in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with the Supreme Court's decision in Mapp v. Ohio, 367 U.S. 643, 657, 81 S.Ct. 1684, 1693, 6 L.Ed.2d 1081 (1961).

23. *Pro Se Sub-Issue No. 21 – Search of closed travel bag justified under "plain view" doctrine.*[19]

Detective Jewell testified that the blue windbreaker was "*removed (from) the gym bag found in the back of cab.*" (R. 180-181). The victim unequivocally corroborates this fact, testifying that "*they walked over to a bag and they (pulled out) a blue jacket.*" (R. 277). (emphasis added). Yet, Deputy McCoy seen fit to commit perjury and "material" fraud on court by testifying that the cab driver said he has a jacket "that he put (in) the bag." (R. 116; State's Exhibit – 16). Then at trial contradicted his own testimony from suppression hearing testifying that the jacket "was laying (on top) the bag. [He] didn't have to go into the bag at all." (R. 123, 218) (emphasis added).

The opinion in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with this Court's decision in State v. Finklea, 313 So.2d 224, 225-26 (La. 1975) (items

18 Ground Eight of pro se Motion to Suppress. (Supp. R. 17-61; R. 16, 131-146).
19 Ground Nine of pro se Motion to Suppress. (Supp. R. 17-61; R. 16, 131-146).

which were not visible from outside the car were not in plain view, and thus not subject to warrantless seizure); *see also* State v. Pemea, 376 So.2d 133, 135 (La. 1979); *see, e.g.*, State v. Parker, 622 So.2d 791, 794 (La.App. 4 Cir. 1993) (if its incriminating character [is not] immediately apparent the plain-view doctrine cannot justify its seizure).

24. *"One-on-one" show-up identification process unduly suggestive.*[10]

PRO SE ASSIGNMENT OF ERROR NO. 7

Trial Court erred by failing to suppress one-on-one identification, finding it was not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth, Sixth, and Fourteenth Amendment Constitutional Right(s).

ARGUMENT IN SUPPORT

In the case sub judice, this was simply not a non-suggestive procedure utilized. Deputy Simoneaux, testified that the victim was in the passenger side of Deputy McCoy's patrol car when they pulled in to the service station.

> "His windshield would be facing directly at the suspect while [we] were wrestling with him on the front hood of car. After he was handcuffed, he stood up. He faced directly towards Deputy McCoy's Unit." (R. 109-110).

Mr. DeBroy, the victim, unequivocally testified that upon his viewing

> "[He] was thinking they were arresting someone for something." (R. 86, 289-290).

Mr. Ayo, (1) Under the totality of circumstances in which the victim was transported to another parish to view a dramatic exhibition of *lawless police misconduct*, instead of simply returning Mr. Ayo to the non-hostile crime scene. The Fifth Circuit undoubtedly erred finding such an unorthodox viewing procedure "not" suggestive. (R. 290).

In satisfying the second-prong of test, Mr. Ayo contends; (2) the victim concedes "[He] was thinking they were arresting somebody for something." (R. 86, 289-290). Coupled with the fact Mr. DeBroy sat attentively in police car listening to Mr. Ayo's criminal history. (R. 288).

The fact that Mr. Ayo was (14 years older, "90" pounds heavier (240 lbs.), husky, with very notable cuts and bruising about his face), unlike the 150 lbs., slim, *"good looking"* description of perpetrator Mr. DeBroy originally provided. Moreover, the victim did not identify Mr. Ayo in court as the robber at suppression hearing. (R. 96, 288; State's Exhibit – 13).

In light of the magnitude of the victim's [in]accuracy from his initial description and

10. A typo error exists in supplemental brief, in which #21 was repeated twice on two (2) "separate" legal issues.

[un]certainty at pre-trial hearings, the only logical conclusion is that Mr. DeBroy was mistaken and his decision making prejudiced by the lawless police procedure utilized.

Undoubtedly, the erroneous decision of the Fifth Circuit in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with well settled federal and state law. *See* Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Singleton, 923 So.2d 803 (La.App. 5 Cir. 2006).

25. ***Pro Se Sub-Issue No. 22 – Suggestive in-court identification.***

Mr. Ayo contend, when the State first showed Mr. DeBroy a (single) picture of Mr. Ayo's Booking Photo prior to any attempt to procure a proper in-court identification procedure with Mr. Ayo's obvious presence, achieving a suggestive identification by improperly implying:

"Is this a picture of the person who robbed you?" (R. 279; State's Exhibit – 13).

Then all of a sudden (now) Mr. DeBroy identifies Mr. Ayo, an innocent construction worker on his way to work, after this material evidence was improperly introduced. Thus the decision of the Fifth Circuit in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with this Court's decision in Bright v. State, 776 So.2d 1134, 1145 (La. 2000), the Louisiana Supreme Court stated that: An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. State v. Robinson, 386 So.2d 1374, 1377 (La. 1980); State v. Dyer, 794 So.2d 1, 8 (La.App. 5 Cir. 2001).

26. ***Pro Se Sub-Issue No. 23 – Material fraud of in-court identification.***[21]

But the prosecutorial misconduct during identification process did not stop there. The record conclusively demonstrates Mr. Ayo abrupted the Trial Court's attention, in objection, after the Judge ordered

"Clear the hall to return Defendant from jail."

Only to find the Assistant District Attorney and victim strategically positioned by jail door to procure a known false trial [mis]identification of Mr. Ayo as the perpetrator of a crime he is innocent of. (R. 296; Exhibit – B).

Thus, no amount of want can cure the fundamental due process violation(s), except that of a new unbiased and impartial trial undoubtedly the opinion of the Fifth Circuit in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with this Court's decision in

21 Distinguishably different from Assignment of Error No. 3, known use of perjured testimony.

State v. Robinson, 386 So.2d 1374 (La. 1978).

27. *Unlawfully booking Mr. Ayo in parish other than arrest, absent proper extradition procedure.*[22]

Mr. Ayo contends, in light of the trial court ignoring defendant's writ, the decision of the Fifth Circuit's in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with well settled federal law. In so much as, it was the state court's duty in habeas corpus proceeding for release from custody to administer law prescribed by constitution, as constructed by the United States Supreme Court. State of South Carolina v. Bailey, 289 U.S. 412, 417, 53 S.Ct. 667, 669, 77 L.Ed. 1292 (1933); LSA-C.Cr.P. art. 228(A).

25. *Ineffective assistance of counsel "contested" in pretrial motion.*[23]

**PRO SE ASSIGNMENT OF ERROR NO. 8**

Trial Court erred by "not" addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

**ARGUMENT IN SUPPORT**

Mr. Ayo contends, first the Fifth Circuit ignores the fact this issue is properly on appeal from pre-trial motion hearing.

Mr. Ayo contends, the Fifth Circuit committed fundamental error and fraud on any court hereafter, by adding erroneous language "not" contained in brief that defendant complains of the court not continuing trial." (Op. Footnote 8; p. 26).

Mr. Ayo contends, the Fifth Circuit additionally skipped over the first claim of: defense counsel effectively neglected any attempt for the eleven (11) months before trial to attempt to "locate (primary) alibi witness Dave." The Fifth Circuit evaded this claim, skipping directly to the (secondary) witness Theo Brickley.

Claim One:

Mr. Ayo's letters to Defense Counsel over a seven (7) month period, informed,

> "[He] needs to speak with [attorney] or your investigator as soon as possible as [my] primary alibi witness 'Dave,' who I don't knows last name, is having landlord trouble and may move."

The letters are part of the record, attached to pro se brief as exhibits. (Supp. R. 56-65; R.

---

22 Ground(s) Seventeen and Eighteen of pro se Motion to Suppress (Supp. R. 17-61; R. 16, 131-146).

23 Ground(s) Nineteen, Twenty, and Twenty-One of pro se Writ of Habeas Corpus are consolidated into one (1) memorandum for convenience of court. (Supp. R. 17-61; R. 16, 131-146).

131-146; See Exhibit – D).

Claim Two:

Thereafter, before trial, Defense Counsel "again" neglected to perform his required duty, locating and securing the (only) other remaining Defense witness Theo Brickley.

In fact, the record makes clear that the State was even aware He was an alibi witness, ridiculing Defense how

> "[Mr. Brickley] just plead guilty less than a month ago and [Defense Counsel's] saying that he couldn't locate him. He's on probation . . . It's certainly part of the public record." (R. 336-337).

Defense Counsel simply called "no" witnesses on defense entirely predicated on (alibi), both of which would have provided exculpatory testimonial evidence, undermined confidence in the outcome of Mr. Ayo's trial. Mr. Ayo contends, the opinion of the Fifth Circuit State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with Harrison v. Quarterman, 496 F.3d 419, 427-428 (5th Cir. 2007); Nealy v. Cabana, 764 F.2d 1173, 1180 (5th Cir. 1985) (prejudice component satisfied where missing testimony directly contradicted the prosecution's evidence).

29. *Improper evidence of other crimes*[24]

**PRO SE ASSIGNMENT OF ERROR NO. 9**

Trial Court erred by failing to grant a mistrial when the State committed fundamental error and "perjury" by fraudulently informing jury that Mr. Ayo is wanted for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

**ARGUMENT IN SUPPORT**

Mr. Ayo contends, the Fifth Circuit addresses this issue a (counseled assignment of error number two), despite Mr. Ayo supplementing the appeal brief pro se due to ineffective assistance of appellate counsel. Now the Circuit Court circumvents and evades the supplementation. (Op. p. 27).

The Fifth Circuit's reliance on State v. Smart, 926 So.2d 637, 647 (La.App. 5 Cir. 2006), is seriously misplaced. The fact that Mr. Ayo admitted his *prior* conviction, does not allow the State to *fully go* into (unrelated) detainers and warrants of other crime(s) Mr. Ayo is *not* convicted of. To allow the opinion in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, to stand,

24 Assignment of Error No. Two of Appellate Counsel's initial brief.

would sanction law expressly and directly conflicting with State v. Prieur, 277 So.2d 126, 128 (La. 1973); *see also* State v. Jackson, 625 So.2d 146, 149 (La. 1993); LSA-C.Cr.P. art. 770(2); LSA-C.E. Art. 404(B)(1).

***30. Pro Se Sub-Issue No. 27 – Trial transcripts "altered" to conceal perjured testimony and ineffective assistance of counsel.***

Most interesting is the fact of how the Fifth Circuit *selectively* addressed certain pro se sub-issue(s), as here, yet erroneously and fraudulently claim others are *not briefed and abandoned*.

Mr. Ayo contends, the Fifth Circuit abused its judicial discretion after granting after granting an in-camera inspection by allowing the *same* entity responsible for altering the transcript to review for error. Mr. Ayo testified and GOD could not convince him the transcript has not been tampered with.

The Assistant District Attorney, Shannon Swaim did not question, but merely instructed the jury *"He is a liar"* on at least three (3) occasion(s). In fact, an outright (unethical shouting match) in jury's presence has been *omitted* from the record.

Mr. Ayo reasonably contends, the transcript has been modified as follows:

| Original Trial: | As Depicted in Transcripts: |
|---|---|
| Q. So you were sentenced in 1994 to 17 years and now 13 years later you're not on parole? | Q. You're not on parole? |
| A. No, Ma'am. | A. No, Ma'am. |
| Q. He's a liar. | Q. At this time. (Altered) |
| A. I'm not lying. | A. At this time. (Altered) (emphasis added) |
| Ms. Swaim: He's a liar. | (Omitted) |
| He's a liar. | (Omitted) |
| Defendant: You want to talk about liars. Let's talk about your lying ass officers who conveniently said everything was in plain view. | (Omitted) |
| Mr. Schmidt: Objection, Your Honor. | (Omitted) |

(See Between R. 329-365; See also In-Camera Motion).

Logically, in light of the fact Mr. Ayo has "never," never been on parole in any state, Mr. Ayo

certainly would not state that,

> "*No, ma'am. [I'm not on parole] at this time.*" (R. 330)

The current record fraudulently depicts Mr. Ayo erroneously endorsing Ms. Swaim's perjurous and slanderous accusation of other crimes evidence. Thus, warranting further inspection by a non-party of interest to outcome of case.

*31. Pro Se Sub-Issue No. 28 – Improper prosecutorial comments.*

Mr. Ayo contends, the aforementioned prosecutorial misconduct demonstrates an extremely prejudicial attack on Mr. Ayo, the credibility of the (only) Defense witness. Here it was impermissible for the prosecutor to insist Mr. Ayo "is lying" and the jury should not believe his testimony, attempting to impart verity to the testimony of the deputies by giving the jury her own personal guarantee that the officers were telling the truth and Defendant is lying.

To allow the opinion in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, to stand, would sanction law expressly and directly conflicting with well settled law. *See* United States v. Young, 470 U.S. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); U.S. v. Restrepo-Granda, 575 F.2d 524, 529-530 (5th Cir. 1978); U.S. v Herrera, 531 F.2d 788, 789-790 (5th Cir. 1976).

*32. Pro Se Sub-Issue No. 29 – Improper impeachment of "unavailable" witness.*[25]

*33. Pro Se Sub-Issue No. 30 – Prosecutorial misconduct of numerous inflammatory remarks.*

The second time Defense moved for mistrial was when the prosecutor would not cease her highly prejudicial "dialogue," not even over objection:

Ms. Swaim:
Q. Now, you do know that [Mr. Ayo's] good bud, Theo Brickley -

Mr. Schmidt:
Objection, Your Honor.

Ms. Swaim:
Just got guilty for like four (4) felonies in Division "O."

Mr. Schmidt:
Objection, Your Honor. May we approach.

The Trial Court ruled that Ms. Swaim did not have the right to go into Mr. Brickley's criminal history, but that a mistrial would not be granted. Then upon Defense request, the Judge "*refused*" to admonish the jury. (R. 335-339).

25 Legal issue(s) 30 and 31 have been consolidated into one argument for convenience of Court(s).

Mr. Ayo contends, Theo Brickley was not even present to testify when the State improperly tried to impeach his credibility through highly inflammatory remark(s) – certainly not question(s) put to Mr. Ayo.

The Fifth Circuit's opinion in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, expressly and directly conflicts with State v. Barber, 617 So.2d 974, 976 (La.App. 4 Cir. 1993); La.C.E. Art. 403; La.C.Cr.P. arts. 770 and 771. And after the trial court refused to admonish jury. State v. Walker, 836 So.2d 618, 623-624 (La.App. 5 Cir. 2002).

34. *Pro Se Sub-Issue No. 31 – Abuse of judicial discretion refusing to admonish jury.*

Mr. Ayo contends, the Court's do not indicate that only the prosecuting attorney is worthy of blame. Indeed the trial judge had an obligation in the interest of fairness and justice to stop the prosecutor from delivering a greatly prejudicial argument sua sponte.

Nevertheless, when the trial court refused to admonish the jury and left numerous prejudicial "remarks" go uncorrected, a mistrial should have been granted. To sanction the opinion in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, would expressly and directly conflict with well settled federal and state law. *See* U.S. v. Corona, 551 F.2d 1386, 1391 n. 5 (5th Cir. 1977); Dunn v. U.S., 307 F.2d 883, 886 (5th Cir. 1962); State v. Barber, 617 So.2d 974, 976 (La.App. 4 Cir. 1993).

35. *Pro Se Sub-Issue No. 32 – Improper impeachment of Mr. Ayo's credibility.*

Mr. Ayo testified that he was previously convicted of manslaughter in 1994, which is accidental death/culpable negligence under Florida law. The State objected, and Trial Court "improperly" sustained, precluding Defense line of questioning going to the credibility of (only) Defense witness. With the State thereafter, capitalizing that it wasn't accidental but murder. (R. 328-330).

Mr. Ayo contends, after he stipulated to the conviction of the previous offense, the issues relating to it were foreclosed in this prosecution. Consequently, the testimony concerning specifics surrounding his prior conviction (non-existent parole violation) was nothing less that irrelevant inflammatory question(s) and remarks put to the defendant.

To authorize the erroneous opinion in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, would expressly and directly conflict with well settled law of this Court. *See* State v. Everidge,

702 So.2d 680, 684 (La. 1997); State v. Pounds, 359 So.2d 150, 153 (La. 1978).

36. *Prosecutorial misconduct and abuse of judicial discretion by allowing state to breach stipulation during trial.*

**PRO SE ASSIGNMENT OF ERROR NO. 10**

Trial Court committed fundamental error by admitting evidence agreed upon by State in pretrial not to introduce, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s) to a fair trial.

**ARGUMENT IN SUPPORT**

Mr. Ayo contends, the State's stipulation not to introduce his letter into evidence has the effect of a judicial admission which binds all parties and the court to the terms actually agreed upon. And generally stipulations entered into freely and fairly are not to be set aside except to "*prevent manifest injustice*," so as to warrant granting of motion to modify stipulation.

In the case sub judice, the District Attorney did not motion to modify stipulation nor reserve the right to impeach Mr. Ayo with the letter if Defendant took the stand. The State just breached the pretrial agreement, introducing the letter which made mention of Mr. Ayo's incarceration, posting bond in another state, and knife as defense weapon following recent assault, in which the State unfairly utilized to prejudicially twist into robbery weapon. (State Exhibit – 21; R. 345-349).

Mr. Ayo contends, the Fifth Circuit in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, committed fundamental error by evading the issue of State breaching pretrial agreement. And to sanction this opinion would expressly and directly conflict with well settled federal and state law. *Rice v. Glad Hands, Inc.*, 750 F.2d 434, 438 (5th Cir. 1985); R.J. D'Hemecourt Petroleum Inc. v. McNamara, 444 So.2d 600, 601 (La. 1983); Chatzicharalambus v. Petit, 430 F.Supp. 1087, 1090 (E.D. La. 1977); State v. Fallon, 290 So.2d 273, 283 (La. 1974); LSA-C.Cr.P. art. 921.

37. *Pro Se Sub-Issue No. 34 – Cumulative error(s) not harmless*[26]

**ASSIGNMENT OF ERROR NO. 11**

Trial Court erred in not intervening and properly govern proceedings, stopping State's repeated improprieties denying Mr. Ayo's right to a fair and impartial trial, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

**ARGUMENT IN SUPPORT**

Mr. Ayo contends, he need not methodically reiterate the preceding thirty-four (34) error(s) that so prejudice the entire trial, that the resulting conviction violated due process.

26 Ground Twenty-two of pro se Writ of Habeas Corpus. (Supp.R. 17-61; R. 16, 131-146).

Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992). The cumulative effect of so many error(s) surpassing the harmless error test, Chapman v. California, 386 U.S. 18, 25-26, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and it would be nothing less than a waste of judicial resources to engage in such an argument, that thirty-three (33) errors were harmless and *Mr. Ayo* received his Sixth and Fourteenth Amendment Constitutional due process right(s) and equal protection of the law to a fair trial.

To sanction the opinion of the Fifth Circuit in State v. Ayo, 08-468 (3/24/09), ___ So.2d ___, would expressly and directly conflict with well settled federal and state law. *See* Chapman v. California, 386 U.S. 18, 25-26, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992).

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Glen Charles Ayo prays that this Honorable Court grants the writ, remanding for a new trial, not inconsistent with the Court's decision, and grants relief that he has available to him due to the errors presented herein and any other such relief this Honorable Court deems appropriate.

Respectfully submitted this 23rd day of APRIL, 2009.

GLENN AYO
Glenn Charles Ayo #532831
Main Prison, -----
Louisiana State Penitentiary
Angola, LA 70712

**VERIFICATION**

I hereby swear and affirm that the foregoing is true and correct to the best of my knowledge and belief.

I do hereby certify that the above application for supervisory writ has been served upon:

Respondent Court
Office of the Clerk
Louisiana Fifth Circuit Court of Appeal
P.O. Box 489
Gretna, LA 70054-0489
Phone: (504) 376-1400
Fax: (504) 376-1498

Opposing Counsel
District Attorney's Office
Parish of Jefferson
200 Derbigny, 5th Fl.
Gretna, LA 70053
Phone: (504) 368-1020
Fax: (504) 361-2585

by placing a copy of same in a properly addressed envelope into the hands of the Classification Officer assigned to my unit along with a Drawslip made out to the General Fund, LSP, Angola, LA 70712 for the cost of postage and a properly filled out Inmate's Request for Indigent/Legal Mail form, receiving receipt for same in accordance with the institution's rules and procedures for legal mail.

Done this 23rd day of April, 2009.

Glenn Charles Ayo

# The Supreme Court of the State of Louisiana

STATE EX REL. GLENN CHARLES AYO

NO. 2009-KH-1026

VS.

STATE OF LOUISIANA

------

IN RE: Ayo, Glenn Charles; - Plaintiff; Applying For Supervisory and/or Remedial Writs, Parish of Jefferson, 24th Judicial District Court Div. M, Nos. 07-369, 07-370; to the Court of Appeal, Fifth Circuit, Nos. 08-KA-468, 08-KH-1179;

------

March 5, 2010

Denied.

JTK

BJJ

JPV

JLW

GGG

MRC

Supreme Court of Louisiana
March 5, 2010

[signature]
Deputy Clerk of Court
For the Court

RECEIVED
MAY 23 2013
Legal Programs Department

SCANNED at LSP and Emailed
5-23-13 by [illegible] . 43 pages
date initials No.

# APPENDIX - E

**THE LOUISIANA SUPREME COURT**
**STATE OF LOUISIANA**

GLENN CHARLES AYO
*Plaintiff / Petitioner*

-VS- CASE NO.: ____________

FIFTH CIRCUIT COURT OF APPEAL,
STATE OF LOUISIANA, ET AL.
*Defendant / Respondent (s)*

____________ ____________
DATE FILED DEPUTY CLERK

**PETITION TO ANNUL FINAL JUDGMENT FOR VICES OF FORM AND SUBSTANCE AND FOR INJUNCTIVE RELIEF**

COMES NOW the above named Petitioner Pro Se, respectfully moves this Honorable Court pursuant to Art. 2002 B, La. C.Civ.P., amongst other applicable rule(s), and would show the following as basis in support thereof:

**FACTS IN SUPPORT**

On November 28, 2007, Plaintiff was convicted of armed robbery in the 24th Judicial District Court, in and for Jefferson Parish, Louisiana, Case #07-369, and sentenced to 87 years without parole. (See Exhibit - A).

On January 31, 2008, two (2) months later, Plaintiff diligently filed complaint (No. 08-963) pursuant to 42 U.S.C. § 1983, in the United States Eastern District Court of Louisiana, conclusively demonstrating from the record at bar *i.e.*, the 911 dispatch and, transcript(s) of Sheriff's office transmission(s). All three (3) officers committed the crime of "material" perjury in motion hearing to circumvent suppression law(s) on illegal search and seizure of evidence while on a roving patrol out of jurisdiction, and, the district attorney both knew of and capitalized on the same perjury again during trial.

The U.S. District Court ruled, State remedies must first be exhausted.

Appeal from the judgment and conviction was taken in State Court challenging said perjury claim(s) never addressed on merits.

On March 24, 2009, the Fifth Circuit Court of Appeal in ***State v. Ayo***, 7 So.3d 85, 98 (La. App. 5th Cir. 2009), held that since Defendant failed to object during trial to the testimony as perjury, he is precluded from raising it for the first time on appeal. ***Id.*** (See Exhibit - B, Attached).

On March 5, 2010, the Louisiana Supreme Court denied remedial writs in ***State ex rel. Ayo v. State***, 28 So.3d 1006 (La. 2010). Thus affirming the conviction and condone criminal malfeasance by State officials. (See Exhibit - C, Attached).

**ARGUMENT IN SUPPORT**

1. Petitioner contends, while preparing his application for post-conviction relief August 1, 2010. Mr. Ayo discovered the "published" opinion of the Fifth Circuit Court of Appeal in ***State v. Ayo***, 7, So.3d 85 (La. App. 5th Cir. 2009), contains an astronomical *over* seventy (70), seventy "material" error(s) of fact and, unbelievably, *additional* perjury *not* in the record nor introduced in any form of evidence, testimonial or otherwise. (See Exhibit - B, Attached).

2. Petitioner contends, perjury demonstrated from the *record* at bar should have been corrected as patent error.

3. Petitioner contends, the Louisiana Supreme Court's decision in ***State ex rel. Ayo v. State***, 28 So.3d 1006 (La. 2010), further condone the crime(s) of repeated perjury, and, endorse fraud on all reviewing court(s) taking under consideration the

fictitious opinion of the Fifth Circuit is ***State v. Ayo***, 7 So.3d 85 (La. App. 5th Cir. 2009. (See Exhibit - C, Attached).

**CLAIM ONE** [1]: Pro Se Assignment of Error Number One (FN 4)

> "(FN 4) in addition to eleven assignments of error, this pro se brief contains thirty-three italicized headings, all mentioning legal concepts. It is not clear how these headings relate to the assignments of error but it is clear that these headings are not briefed . . . Rule 2-12.4, Uniform Rules, Court of Appeal. Assignments of error neither briefed nor argued are considered abandoned on appeal. ***State v. Banks***, 804 So.2d 132, 139 (La. App. 5th Cir. 2001)."

***Id.*** 750 3d at 92.

Petitioner contends, the opinion of the Fifth Circuit in ***State v. Ayo***, 7 So.3d at 92, is a waste of judicial resources and violating Federtal and State Constitutional right(s). When a pro se litigant must explain to a *panel of superior judge's* how the following *subclaim(s)* relate:

1.Sufficiency of evidence warranting "hot pursuit" to arrest.

Assignment No. 1: The trial court erred finding police may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating constitutional right(s).

2. Lawfulness of "investigatory" stop out of jurisdiction.

(See Exhibit - D, Attached)

Yet three (3) separate judge(s), college graduates with law degree(s) can not discern the resemblance of subclaim(s) and criminal law key(s) taken from the very same law books they are per se to *fairly* decide the law in said opinion.

---

[1]Fraud on court will be listed first as heading, followed by Petitioner conclusively demonstrating falsehood from record.

In Exhibit - D, this Court will note that Mr. Ayo plagiarized the format of appellant counsel's brief, which was acceptable for an attorney but not conforming to uniform rules when it comes to pro se litigant. Further the thirty-three italicized heading(s) all contained "a specification of [legal] errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, . . . giving accurate citations of the pages of the record and the authorities cited." Clearly conforming with *all* the legal requirements of Rule 2-12.4.

Nevertheless the Fifth Circuit Court of Appeal seen fit to publish perjury, fraudulently claiming Mr. Ayo did "not brief" and "abandoned" thirty-three subclaim(s) on appeal. 7 So.3d at 92. Thus the fraud on all reviewing court's finalizing conviction of an innocent man must be annulled.

**CLAIM TWO**

> "The Defendant places much reliance on the fact that officers did not turn on their police sirens and overhead lights as they pursued him into Orleans Parish." 7 So.3d at 92.

Petitioner contends, *nowhere* does he base a single argument or any reliance whatsoever on "officers not turning on their police sirens and overhead lights as they pursued him" into another parish [3]. 7 So.3d at 92. The Fifth Circuit *adds* perjury to record, documented in a *published* opinion overzealously trying to paint the Petitioner as another pro se *idiot* who has no merit to claim(s) of relief. Thus the fraud on all reviewing court's must be annulled in the interest of fairness, integrity, and justice.

---

[3] In Claim Three, Petitioner will demonstrate from record their was "NO" pursuit, close or otherwise, but officer's wereon a roving patrol out of jurisdiction.

**CLAIM THREE**:

> "Although all conditions of a citizen's arrest are satisfied in this case, the arrest [in another jurisdiction] passes muster as a close pursuit by a peace officer." 7 So.3d at 94.

Petitioner contends, the misapplication of law and fraud by the Fifth Circuit is at hand — the illegal "*investigative stop*" out of jurisdiction, an unlawful exploratory search, then an illegal arrest — not a "close pursuit of *person to be arrested*." Art. 213(3) & (4), La. C.Cr.P.

The testimonial evidence presented during the suppression hearing and again at trial, (the record at bar), made clear Jefferson Parish Official's were on an illegal roving patrol out of jurisdiction in Orleans Parish. When Mr. Ayo exercised his constitutional right(s) to stop *investigative* questioning and walk away from the non-custodial police encounter. Deputy Paul Simoneaux became enraged and beat down the innocent construction worker, handcuffed, searched, and placed Mr. Ayo in back of his patrol car for an *investigative* show up identification:

> "I notified Deputy McCoy to bring the victim to identify the subject that I *stopped* to see *if* this *could be* the perpetrator." (R. 101, 116, 207, 256). (See Exhibit — E, Attached).

Contrary to the misapplication of law by the Fifth Circuit in *State v. Ayo*, 7 So.3d at 94, by statute, neither a private person in Article 214, nor a peace officer as defined in Article 213, may enter another jurisdiction in this state and conduct *investigative* stop(s), questioning, search, and further conduct one-on-one show up identification process, then arrested;

> "Paul placed him under arrest *when* we [victim] identified him." (R. 116).

Clearly Article 213 nor Article 214 authorize police or private citizen's to conduct *investigation(s)* in another parish.

Further, these passages additionally demonstrate there was never no "close pursuit of person to be arrested" immediately upon first encounter. The prerequisite to enter another jurisdiction in Article 213, La. C.Cr.P. Thus the misapplication of law by the Fifth Circuit Court of Appeal must be annulled to maintain conformity of well-settled law.

**<u>CLAIM FOUR</u>**:

> "The exception of close pursuit applies in this case . . . the arrest was the result of an *uninterrupted investigation* by responding officers." 7 So.3d at 95. (Emphasis added).

Petitioner contends, the Fifth Circuit acknowledges the fact that Jefferson Parish Officers were conducting an "investigation" a few blocks over the adjoining parish line. *Id.* At 95. But misapplied Federal and State Constitutional law, in that, an "*uninterrupted investigation*" is not the legal standard to enter another jurisdiction and deprive a person of his property and/or liberty.

The prerequisite under Louisiana law is as follows:

> "An officer in close or hot pursuit of *person to be arrested*. May enter another jurisdiction . . ."

Art. 213(3) & (4), La. C.Cr.P.

Not to question, search, and *investigate in another parish* — "*bring the victim to see if this could be the perpetrator*." (Exhibit - E, Attached).

Thus the misapplication of law must be annulled to maintain conformity with statutory law.

**CLAIM FIVE:**

> "The defendant alleges that Detective Jewell's testimony was perjured. Specifically, he alleges that although jewel testified that he informed '911' that the defendant had a knife in his pocket, that in fact, he never told '911' any such thing.
>
> "The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell.
>
> *In the dispatch made by Officer Jewell, he informed the dispatcher that he saw the defendant with a knife in his pocket.* [Inset Perjury By Court].
>
> The dispatch call was different from the 911 call made by the victim. This claim has no merit." 7 So.3d at 98.

1. Petitioner contends, the Fifth Circuit Court of Appeals fictional Alice In Wonderland opinion in ***State v. Ayo***, 7 So.3d 85, 98 (La. App 5th Cir. 2009), is malfeasance at its best. The Court adds their own *additional* perjury to the record.[3]

The record before the Court is clear, the veteran lieutenant Detective Daniel Jewell committed perjury during trial and the prosecutor both knew it was perjury and capitalized on the material falsehood:

A. "Well, the 911 operator is different than the dispatcher."

Q. "Do you remember on the 911 tape saying that you thought you saw a knife in the back pocket?"

A. "I believe I said that. That's again why I answered his question earlier that way."

Q. "And, again, you've heard the 911 tape. That's someone writing what you say, correct?"

A. "Correct."

(R. 186-187; See Also Exhibit - F, Attached).

---

[3]Fifth Circuit Judge's are *immune* from *civil* liabilities, not criminal malfeasance.

The Defendant confused nothing, and after the Detective unequivocally clarified on the record that "the 911 operator is different than the dispatcher." The Fifth Circuit further add *additional* perjury to the record other reviewing court's will consider, in that:

> "The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell. *In the dispatch, he inform the dispatcher that he saw the defendant with a knife in his pocket.*"

*Id.* 7 So.3d at 98. (See Exhibit - B, Attached).

When the *sheriff office dispatch transcripts* (State Exhibit - 3) were also entered into evidence with the 911 transcripts (State Exhibit - 4) and neither of the two (2) contain any such transmission of Detective Jewell observing Defendant with a knife. (See Exhibit - G, Attached).

2. Petitioner contends, this same perjured testimony is the crux of the entire false arrest of an innocent man *i.e.*, alleging Jefferson Parish Officials broadcast they observed a knife, had probable cause to arrest, and, allegedly were in close pursuit of that person into another jurisdiction -- all perjury!

The [fraud]ulent *broadcast to all units*, coupled with the additional perjured publication of the Fifth Circuit:

> *"The pursuing officer saw a kitchen knife, matching the description of the weapon used in the robbery, sticking out from the defendant's pants."*

*Id.* 7 So.3d at 95. (See Exhibit - B, Attached).

The perjury is so *material* to the [lack] of probable cause to pursue and arrest out of jurisdiction, it further resulted in a fundamental unjust conviction of an innocent construction worker by the fact finder(s). In that, illegally seized

tools/evidence was *not* suppressed and admitted into trial as a direct result of the perjury of a lieutenant detective allegedly *observing* Mr. Ayo with a knife near the crime scene and *broadcast* it to all units to arrest him on sight. Thus the additional perjury in published opinion by a superior court must be annulled and, change of venue granted for proper appellate review.

**CLAIM SIX:**

> "Although the defendant argues at length that false testimony was introduced in his trial, he points to *the record*, not newly discovered, external sources, to *prove* his allegation. He points to *internal contradictions* in the testimony to support his claims." 7 So.3d at 98.

Petitioner contends, the testimony of two arresting officers of four (4), four *non*-existing, (never happened), *no* such transmission(s) is not mere *internal contradictions* — unequivocally it's perjury!

Perjured testimony is a felony crime in which officers of court have a duty to protect and uphold the law when malfeasance is so witnessed by this Court.

And perjured testimony on the face of "the record" should have been corrected by the Fifth Circuit as *patent error*.

The arresting officer(s) Paul Simoneaux and George McCoy both testified that after hearing the following four (4) broadcast on their police radio, they lawfully entered another jurisdiction to make a lawful arrest and search and seizure of personal property — alleged evidence introduced at trial:

> [1] "Detective Jewell advised on the radio that a suspect with a knife protruding from his back pocket, [2] got into a blue [color & name of co.] Metairie Service Cab. [3] He was trying to catch up with the cab, [4] but lost sight of the cab as *we* entered the Orleans Parish line. So *we* began canvassing the area."

(R. 98-100, 235-237).

Only for Detective Jewell to controvertodly testify that he made "no" such broadcast, and, there was "no" close or hot pursuit to immediately arrest Mr. Ayo. He only wanted to stop and question (*investigate*), but he did not match description and Officer Jewell's drove off.

> "As I'm passing him, you know, I'm thinking 'well, maybe this is the guy. Maybe I should stop and get his name and see . . . but I heard over . . ."

(R. 162, 182; See Exhibit - H, Attached).

In fact, when Officer Jewell returned to the area to question (investigate) — *not* return to arrest, the guy was gone, he did not see him leave or even see a cab. Let alone broadcast he was chasing the occupant with a knife, fleeing in a blue Metairie Cab, but lost sight of it as he entered Orleans Parish. (R. 163; See Also Exhibit - I, Attached).

Petitioner logically asserts that four (4), four *non*-existing broadcast going to statutory probable cause to enter another jurisdiction and immediately arrest is much much more than "internal contradiction(s)," but *material* perjury of the first magnitude designed solely to circumvent an *illegal* investigative stop, and exploratory search and seizure out of jurisdiction.

Further, perjury on the face of the record (State Exhibit - 3) should have been corrected as patent error in the interest of justice. Thus the Fifth Circuit's misapplication of law finalizing conviction of an innocent construction worker and, additional fraud on reviewing court(s) must be annulled.

**CLAIM SEVEN**:

> "Louisiana case law gives full weight to the doctrine of close pursuit. See, for example, ***United States v. Bishop***, 530 F.2d 1156, 1157 (5th Cir. 1976) (The police vehicle *followed* the [*GSP*] signal out of Shreveport into Bossier City) ... In ***State v. Washington***, 444 So.2d 320 (La. App. 1st Cir. 1983) (Assisted by a tracking dog, the Lafouche Parish Sheriff's Officers began *trailing* the robbers on foot.).
>
> "The exception to close pursuit applies in this case . . . the pursuit of the defendant, initiated in Jefferson Parish, was immediate and continuous." 7 So.3d at 94-95.

Petitioner contends, the perjury stops here! Detective Jewell unequivocally testified that when he observed Mr. Ayo and drove pass:

> Q. "He wasn't doing anything suspicious or inappropriate."
>
> A. "No, standing in the middle of the street, like I said, with the bag, the gym bag over his shoulder, speaking to someone on the landing of the apartment. "As I'm passing him, you know, I'm thinking 'well, maybe this is the guy. Maybe I should stop and get his name and see' . . . but I head over . . ."

(R. 162, 182; See Exhibit(s) - H & J, Attached).

The veteran lieutenant not only failed to stop Mr. Ayo on his way to work because he did not resemble description of perpetrator. He absolutely was not "in close *pursuit* to arrest," Art. 213, La. C.Cr.P. As the Fifth Circuit held: not "*following* his vehicle into another parish." ***Bishop***, 530 F.2d at 1157; and not "*trailing* him on foot with tracking dogs," ***Washington***, 444 So.2d at 320.

The misapplication of law with fictitious material facts by the Fifth Circuit is so evident in ***State v. Ayo***, 7 So.3d at 94-95. The fraud on reviewing court(s) must be annulled.

**CLAIM EIGHT**:

> "During direct examination at trial, the victim testified that he told the officers that the robber was 150 pounds . . . notably, at trial, the state introduced the prison *intake* assessment which established that on February 24, 2007, the defendant's weight 181 . . ." 7 So.3d at 93.

1. Petitioner contends, the malfeasance in the published opinion in *State v. Ayo*, 7 So.3d 85, is unmeasurably off the charts. Mr. Ayo was arrested January 7, 2007, with a weight of 240 pounds — not February 24, 2007 and/or 181 pounds. (See Exhibit - K, Attached).

2. Petitioner contends, had the Fifth Circuit not circumvent the "objection" challenged in the assignment of error. The appellate court's [fraud]ulent opinion fails to address the issue at bar: the district attorney *illegally* possessed Mr. Ayo's personal medical record(s) without his consent to private information or Court subpoena.

3. The prosecutor committed perjury, inform court it's "the arrest register" to introduce *illegal* evidence.

4. And "the prison's nurse practitioner who testified that defendant's weight on the day of trial was 212 pounds." 7 So.3d at 93.

Further testified she did *not* take the weight in the medical record(s). And she was *not* present when it was taken.

The Fifth Circuit circumvent the issue(s) at bar of highly *illegal* hearsay evidence *not* demonstrating Mr. Ayo's weight on day of arrest. Thus the fraud on reviewing court(s) must be annulled.

**CLAIM NINE**:

> "He [victim] informed the officers that the robber was between forty and fifty years old." 7 So.3d at 93.

Petitioner contends, the description sheet signed by the victim unequivocally list the perpetrator as 30-35 years old — *not* forty to fifty years old. (See Exhibit - L, Attached).

Thus further demonstrating the *repeated* crime(s) of perjury, *not a single isolated mistake*, by the Fifth Circuit in ***State v. Ayo***, 7 So.3d 85, 93 (La. App. 5th Cir. 2009). No, the appellate court went way way out the *material* facts at bar to commit malfeasance and fraud on all reviewing court(s), fraudulently changing testimonial evidence to create a scenario as if Mr. Ayo match the description and officers had probable cause to arrest.

The fraud on reviewing court(s) must be annulled.

**CLAIM TEN**:

> "During direct examination, the defendant admitted his 1994 conviction for manslaughter in the State of Florida . . . the prosecutor then inquired if he would be surprised to learn that a detainer to return him to Florida was in effect. [ ] at this point in the exchange, the defense moved for a mistrial but the court denied that request.
>
> "It was the defendant who brought up the fact of his prior conviction for manslaughter. *96 It is a well-recognized principle that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination.
>
> "Furthermore, in charging the jury that statements and arguments made by the attorneys were not evidence, thus protecting against any prejudice that might have arisen. This practice is in accord with that of ***State v. Pardon***, 703 So.2d 50, 62 (La. App. 5th Cir. 1997), in which the court instructed the jury that statements and arguments by counsel were not evidence . . . Accordingly, we see no abuse of the trial court's discretion." 7 So.3d at 95-96.

**1.** Petitioner contends, the Fifth Circuit knowingly, intelligently, and willingly with a deliberate indifference omitted [ ] the issue at bar. The State *did not question* Mr. Ayo on cross-examination regarding a "detainer," but accused, went into a highly prejudicial ***monologue*** during cross examination with the prosecutor giving her own personal opinion way *outside* any record:

"He has a detainer for violating parole in Santa Rosa County Florida."

(R. 330).

When Mr. Ayo has never, ***never*** been on parole in any state. Let alone being wanted for a parole violation. The statement is wholly false — perjury!

**2.** The Fifth Circuit misapplied the law in ***State v. Ayo***, 7 So.3d 85, 95-96 (La. App. 5th Cir. 2009). The defendant's ***admission*** of a prior conviction cease questioning into the scope of that conviction, it's not a legal principle to fully explore *non*-existing parole and/or detainers *outside* the conviction admitted.

**3.** And further, charging the jury at the conclusion of trial as cited to in ***State v. Pardon***, 703 So.2d 50, 62 (La. App. 5th Cir. 1997), that opening and closing statements is not evidence. Does *not* "protect against any prejudice . . ." on *cross examination*, thus the misapplication of law must be annulled to maintain conformity of law.

**CLAIM ELEVEN**:

> "The defendant next complains that the trial court should grant a mistrial due to the prosecutor's references to the [four felony] convictions of the defendant's friend, Theo Brickley.
>
> "Furthermore, the trial judge specifically charged the jury that statements and *arguments* made by the attorney's are not evidence." 7 So.3d 85, 96.

1. Petitioner contends, the opinion of the Fifth Circuit is wholly frivolous at best — it's *not* law. But a complete mockery to the integrity of the judicial process.

The prosecutor was totally out of control and would not cease her highly prejudicial *monologue* -- not question(s) of an [un]available witness not in court to impeach his credibility, not even over objection:

| | |
|---|---|
| [State] Ms. Swaim: | Now you do know that [Mr. Ayo's] good bud, Theo Brickley. |
| Mr. Schmidt: | Objection, you Honor. |
| Ms. Swaim: | Just got guilty for like four (4) felonies, in Division "O." |
| Mr. Schmidt: | Objection, your Honor. May we approach. |

(R. 335-338).

Further, it's a *monologue* to the jury — *not* questioning, during what's suppose to be *cross examination* -- not opening or closing arguments. *Material* error the Fifth Circuit ignored.

2. The trial judge blatantly *refuse* to admonish the jury, thus compounding the fundamental unfairness of the trial.

3. The Fifth Circuit's rational that "*arguments* made by the attorneys are not evidence" on *cross examination*, is nothing less than a misapplication of well settled law violating substantial *appellate* rights of the accused. Art. 921, La. C.Cr.P.

4. And the Fifth Circuit's misapplies the law, here, again, in ***State v. Ayo***, 7 So.3d 85, 96 (La. App. 5th Cir. 2009), charging the jury that opening and closing argument instructions apply to *cross examination* is so misplaced. The Louisiana Supreme Court must annul the *repeated* frivolous application of law in the *published* opinion of the Fifth Circuit. ***Id.***

## CONCLUSION OF RELIEF

Notably, herein Petitioner address only two (2) of the eleven (11) assignment of error(s) on direct appeal. Thus the wholly frivolous opinion of the Fifth Circuit still contains over sixty (60) *plus* misapplication(s) of law, *additional* perjury and, constitutional right violation(s) that have not yet been addressed in remaining nine (9) assignments.[4]

WHEREFORE, Petitioner respectfully moves this Honorable Court to grant relief as follows:

1. Annul both State Court's decision(s) in ***State v. Ayo***, 7 So.3d 85 (La. App. 5th Cir. 2009), ***writ denied***, 28 So.3d 1006 (La. 2010);

2. Change venue to non-bias Appellate Court for review;

3. And the Louisiana Supreme Court accept jurisdiction, issue a fair, proper opinion conforming to Federal and State Constitutional law(s).

This I forever pray.

Respectfully submitted,

[signature]
Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, Louisiana 70712
***[ Petitioner Pro Se ]***

---

[4]Petitioner objects, preserving the remaining sixty (60) plus issue(s) for review as patent error.

**CERTIFICATE OF SERVICE**

I, **Glenn Charles Ayo #531823**, hereby certify that a true copy of the **PETITION TO ANNUL** has been furnish to all parties by pre-paid U.S. Postal to:

Clerk of Court's Office
Court of Appeals
P.O. Box 489
Gretna, La. 70054

District Attorney's Office
200 Derbigny St.
Gretna, La. 70053

Mailed this 10th day of February, 2011.

Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, Louisiana 70712
***[Petitioner Pro Se]***

**THE LOUISIANA SUPREME COURT**
**STATE OF LOUISIANA**

GLENN CHARLES AYO
*Plaintiff / Petitioner*

-VS- CASE NO.: ________________

FIFTH CIRCUIT COURT OF APPEAL,
STATE OF LOUISIANA, ET AL.
*Defendant / Respondent (s)*

______________________ ______________________
DATE FILED DEPUTY CLERK

**PETITION TO ANNUL OPINION OF CIRCUIT COURT FOR VICES OF FORM AND SUBSTANCE AND FOR INJUNCTIVE RELIEF**

COMES NOW the above named Petitioner Pro Se, respectfully moves this Honorable Court pursuant to Art. 2002 B, La. C.Civ.P., amongst other applicable rule(s), and would show the following as basis in support thereof:

**FACTS IN SUPPORT**

On November 28, 2007, Plaintiff was convicted of armed robbery in the 24th Judicial District Court, in and for Jefferson Parish, Louisiana, Case #07-369, and sentenced to 87 years without parole. (See Exhibit - A).

On January 31, 2008, two (2) months later, Plaintiff diligently filed complaint (No. 08-963) pursuant to 42 U.S.C. § 1983, in the United States Eastern District Court of Louisiana, conclusively demonstrating from the record at bar *i.e.*, the 911 dispatch and, transcript(s) of Sheriff's office transmission(s). All three (3) officers committed the crime of "material" perjury in motion hearing to circumvent suppression law(s) on illegal search and seizure of evidence while on a roving patrol out of jurisdiction, and, the district attorney both knew of and capitalized on the same perjury again during trial.

The U.S. District Court ruled, State remedies must first be exhausted.

Appeal from the judgment and conviction was taken in State Court challenging said perjury claim(s) never addressed on merits.

On March 24, 2009, the Fifth Circuit Court of Appeal in ***State v. Ayo***, 7 So.3d 85, 98 (La. App. 5th Cir. 2009), held that since Defendant failed to object during trial to the testimony as perjury, he is precluded from raising it for the first time on appeal. ***Id.*** (See Exhibit - B, Attached).

On March 5, 2010, the Louisiana Supreme Court denied remedial writs in ***State ex rel. Ayo v. State***, 28 So.3d 1006 (La. 2010). Thus affirming the conviction and condone criminal malfeasance by State officials. (See Exhibit - C, Attached).

**ARGUMENT IN SUPPORT**

**1.** Petitioner contends, while preparing his application for post-conviction relief August 1, 2010. Mr. Ayo discovered the "published" opinion of the Fifth Circuit Court of Appeal in ***State v. Ayo***, 7, So.3d 85 (La. App. 5th Cir. 2009), contains an astronomical *over* seventy (70), seventy "material" error(s) of fact and, unbelievably, *additional* perjury *not* in the record nor introduced in any form of evidence, testimonial or otherwise. (See Exhibit - B, Attached).

**2.** Petitioner contends, perjury demonstrated from the *record* at bar should have been corrected as patent error.

**3.** Petitioner contends, the Louisiana Supreme Court's decision in ***State ex rel. Ayo v. State***, 28 So.3d 1006 (La. 2010), further condone the crime(s) of repeated perjury, and, endorse fraud on all reviewing court(s) taking under consideration the

fictitious opinion of the Fifth Circuit is ***State v. Ayo***, 7 So.3d 85 (La. App. 5th Cir. 2009. (See Exhibit - C, Attached).

**CLAIM ONE**[1]: Pro Se Assignment of Error Number One (FN 4)

> "(FN 4) in addition to eleven assignments of error, this pro se brief contains thirty-three italicized headings, all mentioning legal concepts. It is not clear how these headings relate to the assignments of error but it is clear that these headings are not briefed . . . Rule 2-12.4, Uniform Rules, Court of Appeal. Assignments of error neither briefed nor argued are considered abandoned on appeal. ***State v. Banks***, 804 So.2d 132, 139 (La. App. 5th Cir. 2001)."

***Id.*** 750 3d at 92.

Petitioner contends, the opinion of the Fifth Circuit in ***State v. Ayo***, 7 So.3d at 92, is a waste of judicial resources and violating Federtal and State Constitutional right(s). When a pro se litigant must explain to a *panel of superior judge's* how the following *subclaim(s)* relate:

1.Sufficiency of evidence warranting "hot pursuit" to arrest.

Assignment No. 1: The trial court erred finding police may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating constitutional right(s).

2. Lawfulness of "investigatory" stop out of jurisdiction.

(See Exhibit - D, Attached)

Yet three (3) separate judge(s), college graduates with law degree(s) can not discern the resemblance of subclaim(s) and criminal law key(s) taken from the very same law books they are per se to *fairly* decide the law in said opinion.

---

[1]Fraud on court will be listed first as heading, followed by Petitioner conclusively demonstrating falsehood from record.

In Exhibit - D, this Court will note that Mr. Ayo plagiarized the format of appellant counsel's brief, which was acceptable for an attorney but not conforming to uniform rules when it comes to pro se litigant. Further the thirty-three italicized heading(s) all contained "a specification of [legal] errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, . . . giving accurate citations of the pages of the record and the authorities cited." Clearly conforming with *all* the legal requirements of Rule 2-12.4.

Nevertheless the Fifth Circuit Court of Appeal seen fit to publish perjury, fraudulently claiming Mr. Ayo did "not brief" and "abandoned" thirty-three subclaim(s) on appeal. 7 So.3d at 92. Thus the fraud on all reviewing court's finalizing conviction of an innocent man must be annulled.

**CLAIM TWO**:

> "The Defendant places much reliance on the fact that officers did not turn on their police sirens and overhead lights as they pursued him into Orleans Parish." 7 So.3d at 92.

Petitioner contends, *nowhere* does he base a single argument or any reliance whatsoever on "officers not turning on their police sirens and overhead lights as they pursued him" into another parish [3]. 7 So.3d at 92. The Fifth Circuit *adds* perjury to record, documented in a *published* opinion overzealously trying to paint the Petitioner as another pro se *idiot* who has no merit to claim(s) of relief. Thus the fraud on all reviewing court's must be annulled in the interest of fairness, integrity, and justice.

---

[3] In Claim Three, Petitioner will demonstrate from record their was "NO" pursuit, close or otherwise, but officer's wereon a roving patrol out of jurisdiction.

**CLAIM THREE:**

> "Although all conditions of a citizen's arrest are satisfied in this case, the arrest [in another jurisdiction] passes muster as a close pursuit by a peace officer." 7 So.3d at 94.

Petitioner contends, the misapplication of law and fraud by the Fifth Circuit is at hand — the illegal "*investigative stop*" out of jurisdiction, an unlawful exploratory search, then an illegal arrest — not a "close pursuit of *person to be arrested.*" Art. 213(3) & (4), La. C.Cr.P.

The testimonial evidence presented during the suppression hearing and again at trial, (the record at bar), made clear Jefferson Parish Official's were on an illegal roving patrol out of jurisdiction in Orleans Parish. When Mr. Ayo exercised his constitutional right(s) to stop *investigative* questioning and walk away from the non-custodial police encounter. Deputy Paul Simoneaux became enraged and beat down the innocent construction worker, handcuffed, searched, and placed Mr. Ayo in back of his patrol car for an *investigative* show up identification:

> "I notified Deputy McCoy to bring the victim to identify the subject that I *stopped* to see *if* this *could be* the perpetrator." (R. 101, 116, 207, 256). (See Exhibit — E, Attached).

Contrary to the misapplication of law by the Fifth Circuit in ***State v. Ayo***, 7 So.3d at 94, by statute, neither a private person in Article 214, nor a peace officer as defined in Article 213, may enter another jurisdiction in this state and conduct *investigative* stop(s), questioning, search, and further conduct one-on-one show up identification process, then arrested;

> "Paul placed him under arrest *when* we [victim] identified him." (R. 116).

Clearly Article 213 nor Article 214 authorize police or private citizen's to conduct *investigation(s)* in another parish.

Further, these passages additionally demonstrate there was never no "close pursuit of person to be arrested" immediately upon first encounter. The prerequisite to enter another jurisdiction in Article 213, La. C.Cr.P. Thus the misapplication of law by the Fifth Circuit Court of Appeal must be annulled to maintain conformity of well-settled law.

**CLAIM FOUR**:

> "The exception of close pursuit applies in this case . . . the arrest was the result of an *uninterrupted investigation* by responding officers." 7 So.3d at 95. (Emphasis added).

Petitioner contends, the Fifth Circuit acknowledges the fact that Jefferson Parish Officers were conducting an "investigation" a few blocks over the adjoining parish line. *Id.* At 95. But misapplied Federal and State Constitutional law, in that, an "*uninterrupted investigation*" is not the legal standard to enter another jurisdiction and deprive a person of his property and/or liberty.

The prerequisite under Louisiana law is as follows:

> "An officer in close or hot pursuit of *person to be arrested*. May enter another jurisdiction . . ."

Art. 213(3) & (4), La. C.Cr.P.

Not to question, search, and *investigate in another parish* — "*bring the victim to see if this could be the perpetrator*." (Exhibit - E, Attached).

Thus the misapplication of law must be annulled to maintain conformity with statutory law.



**CLAIM FIVE:**

> "The defendant alleges that Detective Jewell's testimony was perjured. Specifically, he alleges that although jewel testified that he informed '911' that the defendant had a knife in his pocket, that in fact, he never told '911' any such thing.
>
> "The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell.
>
> *In the dispatch made by Officer Jewell, he informed the dispatcher that he saw the defendant with a knife in his pocket.* [Inset Perjury By Court].
>
> The dispatch call was different from the 911 call made by the victim. This claim has no merit." 7 So.3d at 98.

1. Petitioner contends, the Fifth Circuit Court of Appeals fictional Alice In Wonderland opinion in ***State v. Ayo***, 7 So.3d 85, 98 (La. App 5th Cir. 2009), is malfeasance at its best. The Court adds their own *additional* perjury to the record.[3]

The record before the Court is clear, the veteran lieutenant Detective Daniel Jewell committed perjury during trial and the prosecutor both knew it was perjury and capitalized on the material falsehood:

A. "Well, the 911 operator is different than the dispatcher."

Q. "Do you remember on the 911 tape saying that you thought you saw a knife in the back pocket?"

A. "I believe I said that. That's again why I answered his question earlier that way."

Q. "And, again, you've heard the 911 tape. That's someone writing what you say, correct?"

A. "Correct."

(R. 186-187; See Also Exhibit - F, Attached).

---

[3]Fifth Circuit Judge's are *immune* from *civil* liabilities, not criminal malfeasance.

The Defendant confused nothing, and after the Detective unequivocally clarified on the record that "the 911 operator is different than the dispatcher." The Fifth Circuit further add *additional* perjury to the record other reviewing court's will consider, in that:

> "The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell. *In the dispatch, he inform the dispatcher that he saw the defendant with a knife in his pocket.*"

*Id.* 7 So.3d at 98. (See Exhibit - B, Attached).

When the *sheriff office dispatch transcripts* (State Exhibit - 3) were also entered into evidence with the 911 transcripts (State Exhibit - 4) and neither of the two (2) contain any such transmission of Detective Jewell observing Defendant with a knife. (See Exhibit - G, Attached).

2. Petitioner contends, this same perjured testimony is the crux of the entire false arrest of an innocent man *i.e.*, alleging Jefferson Parish Officials broadcast they observed a knife, had probable cause to arrest, and, allegedly were in close pursuit of that person into another jurisdiction -- all perjury!

The [fraud]ulent *broadcast to all units*, coupled with the additional perjured publication of the Fifth Circuit:

> *"The pursuing officer saw a kitchen knife, matching the description of the weapon used in the robbery, sticking out from the defendant's pants."*

*Id.* 7 So.3d at 95. (See Exhibit - B, Attached).

The perjury is so *material* to the [lack] of probable cause to pursue and arrest out of jurisdiction, it further resulted in a fundamental unjust conviction of an innocent construction worker by the fact finder(s). In that, illegally seized

tools/evidence was *not* suppressed and admitted into trial as a direct result of the perjury of a lieutenant detective allegedly *observing* Mr. Ayo with a knife near the crime scene and *broadcast* it to all units to arrest him on sight. Thus the additional perjury in published opinion by a superior court must be annulled and, change of venue granted for proper appellate review.

**CLAIM SIX:**

> "Although the defendant argues at length that false testimony was introduced in his trial, he points to *the record*, not newly discovered, external sources, to *prove* his allegation. He points to *internal contradictions* in the testimony to support his claims." 7 So.3d at 98.

Petitioner contends, the testimony of two arresting officers of four (4), four *non*-existing, (never happened), *no* such transmission(s) is not mere *internal contradictions* — unequivocally it's perjury!

Perjured testimony is a felony crime in which officers of court have a duty to protect and uphold the law when malfeasance is so witnessed by this Court.

And perjured testimony on the face of "the record" should have been corrected by the Fifth Circuit as *patent error*.

The arresting officer(s) Paul Simoneaux and George McCoy both testified that after hearing the following four (4) broadcast on their police radio, they lawfully entered another jurisdiction to make a lawful arrest and search and seizure of personal property — alleged evidence introduced at trial:

> [1] "Detective Jewell advised on the radio that a suspect with a knife protruding from his back pocket, [2] got into a blue [color & name of co.] Metairie Service Cab. [3] He was trying to catch up with the cab, [4] but lost sight of the cab as *we* entered the Orleans Parish line. So *we* began canvassing the area."

(R. 98-100, 235-237).

Only for Detective Jewell to controvertedly testify that he made "no" such broadcast, and, there was "no" close or hot pursuit to immediately arrest Mr. Ayo. He only wanted to stop and question (*investigate*), but he did not match description and Officer Jewell's drove off:

> "As I'm passing him, you know, I'm thinking 'well, maybe this is the guy. Maybe I should stop and get his name and see . . . but I heard over . . ."

(R. 162, 182; See Exhibit - H, Attached).

In fact, when Officer Jewell returned to the area to question (investigate) — *not* return to arrest, the guy was gone, he did not see him leave or even see a cab. Let alone broadcast he was chasing the occupant with a knife, fleeing in a blue Metairie Cab, but lost sight of it as he entered Orleans Parish. (R. 163; See Also Exhibit - I, Attached).

Petitioner logically asserts that four (4), four *non*-existing broadcast going to statutory probable cause to enter another jurisdiction and immediately arrest is much much more than "internal contradiction(s)," but *material* perjury of the first magnitude designed solely to circumvent an *illegal* investigative stop, and exploratory search and seizure out of jurisdiction.

Further, perjury on the face of the record (State Exhibit - 3) should have been corrected as patent error in the interest of justice. Thus the Fifth Circuit's misapplication of law finalizing conviction of an innocent construction worker and, additional fraud on reviewing court(s) must be annulled.

**CLAIM SEVEN**:

> "Louisiana case law gives full weight to the doctrine of close pursuit. See, for example, ***United States v. Bishop***, 530 F.2d 1156, 1157 (5th Cir. 1976) (The police vehicle *followed* the [*GSP*] signal out of Shreveport into Bossier City) ... In ***State v. Washington***, 444 So.2d 320 (La. App. 1st Cir. 1983) (Assisted by a tracking dog, the Lafouche Parish Sheriff's Officers began *trailing* the robbers on foot.).
>
> "The exception to close pursuit applies in this case . . . the pursuit of the defendant, initiated in Jefferson Parish, was immediate and continuous." 7 So.3d at 94-95.

Petitioner contends, the perjury stops here! Detective Jewell unequivocally testified that when he observed Mr. Ayo and drove pass:

> Q. "He wasn't doing anything suspicious or inappropriate."
>
> A. "No, standing in the middle of the street, like I said, with the bag, the gym bag over his shoulder, speaking to someone on the landing of the apartment. "As I'm passing him, you know, I'm thinking 'well, maybe this is the guy. Maybe I should stop and get his name and see' . . . but I head over . . ."

(R. 162, 182; See Exhibit(s) - H & J, Attached).

The veteran lieutenant not only failed to stop Mr. Ayo on his way to work because he did not resemble description of perpetrator. He absolutely was not "in close *pursuit* to arrest," Art. 213, La. C.Cr.P. As the Fifth Circuit held: not "*following* his vehicle into another parish." ***Bishop***, 530 F.2d at 1157; and not "*trailing* him on foot with tracking dogs," ***Washington***, 444 So.2d at 320.

The misapplication of law with fictitious material facts by the Fifth Circuit is so evident in ***State v. Ayo***, 7 So.3d at 94-95. The fraud on reviewing court(s) must be annulled.

**CLAIM EIGHT:**

> "During direct examination at trial, the victim testified that he told the officers that the robber was 150 pounds . . . notably, at trial, the state introduced the prison *intake* assessment which established that on February 24, 2007, the defendant's weight 181 . . ." 7 So.3d at 93.

1. Petitioner contends, the malfeasance in the published opinion in *State v. Ayo*, 7 So.3d 85, is unmeasurably off the charts. Mr. Ayo was arrested January 7, 2007, with a weight of 240 pounds — not February 24, 2007 and/or 181 pounds. (See Exhibit - K, Attached).

2. Petitioner contends, had the Fifth Circuit not circumvent the "objection" challenged in the assignment of error. The appellate court's [fraud]ulent opinion fails to address the issue at bar: the district attorney *illegally* possessed Mr. Ayo's personal medical record(s) without his consent to private information or Court subpoena.

3. The prosecutor committed perjury, inform court it's "the arrest register" to introduce *illegal* evidence.

4. And "the prison's nurse practitioner who testified that defendant's weight on the day of trial was 212 pounds." 7 So.3d at 93.

Further testified she did *not* take the weight in the medical record(s). And she was *not* present when it was taken.

The Fifth Circuit circumvent the issue(s) at bar of highly *illegal* hearsay evidence *not* demonstrating Mr. Ayo's weight on day of arrest. Thus the fraud on reviewing court(s) must be annulled.

**CLAIM NINE**:

> "He [victim] informed the officers that the robber was between forty and fifty years old." 7 So.3d at 93.

Petitioner contends, the description sheet signed by the victim unequivocally list the perpetrator as 30-35 years old — *not* forty to fifty years old. (See Exhibit - L, Attached).

Thus further demonstrating the *repeated* crime(s) of perjury, *not a single isolated mistake*, by the Fifth Circuit in ***State v. Ayo***, 7 So.3d 85, 93 (La. App. 5th Cir. 2009). No, the appellate court went way way out the *material* facts at bar to commit malfeasance and fraud on all reviewing court(s), fraudulently changing testimonial evidence to create a scenario as if Mr. Ayo match the description and officers had probable cause to arrest.

The fraud on reviewing court(s) must be annulled.

**CLAIM TEN**:

> "During direct examination, the defendant admitted his 1994 conviction for manslaughter in the State of Florida . . . the prosecutor then inquired if he would be surprised to learn that a detainer to return him to Florida was in effect. [ ] at this point in the exchange, the defense moved for a mistrial but the court denied that request.
>
> "It was the defendant who brought up the fact of his prior conviction for manslaughter. *96 It is a well-recognized principle that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination.
>
> "Furthermore, in charging the jury that statements and arguments made by the attorneys were not evidence, thus protecting against any prejudice that might have arisen. This practice is in accord with that of ***State v. Pardon***, 703 So.2d 50, 62 (La. App. 5th Cir. 1997), in which the court instructed the jury that statements and arguments by counsel were not evidence . . . Accordingly, we see no abuse of the trial court's discretion." 7 So.3d at 95-96.

1. Petitioner contends, the Fifth Circuit knowingly, intelligently, and willingly with a deliberate indifference omitted [ ] the issue at bar. The State *did not question* Mr. Ayo on cross-examination regarding a "detainer," but accused, went into a highly prejudicial *monologue* during cross examination with the prosecutor giving her own personal opinion way *outside* any record:

"He has a detainer for violating parole in Santa Rosa County Florida."

(R. 330).

When Mr. Ayo has never, *never* been on parole in any state. Let alone being wanted for a parole violation. The statement is wholly false — perjury!

2. The Fifth Circuit misapplied the law in ***State v. Ayo***, 7 So.3d 85, 95-96 (La. App. 5th Cir. 2009). The defendant's *admission* of a prior conviction cease questioning into the scope of that conviction, it's not a legal principle to fully explore *non*-existing parole and/or detainers *outside* the conviction admitted.

3. And further, charging the jury at the conclusion of trial as cited to in ***State v. Pardon***, 703 So.2d 50, 62 (La. App. 5th Cir. 1997), that opening and closing statements is not evidence. Does *not* "protect against any prejudice . . ." on *cross examination*, thus the misapplication of law must be annulled to maintain conformity of law.

**CLAIM ELEVEN:**

> "The defendant next complains that the trial court should grant a mistrial due to the prosecutor's references to the [four felony] convictions of the defendant's friend, Theo Brickley.
>
> "Furthermore, the trial judge specifically charged the jury that statements and *arguments* made by the attorney's are not evidence." 7 So.3d 85, 96.

1. Petitioner contends, the opinion of the Fifth Circuit is wholly frivolous at best — it's *not* law. But a complete mockery to the integrity of the judicial process.

The prosecutor was totally out of control and would not cease her highly prejudicial *monologue* -- not question(s) of an [un]available witness not in court to impeach his credibility, not even over objection:

| | |
|---|---|
| [State] Ms. Swaim: | Now you do know that [Mr. Ayo's] good bud, Theo Brickley. |
| Mr. Schmidt: | Objection, you Honor. |
| Ms. Swaim: | Just got guilty for like four (4) felonies, in Division "O." |
| Mr. Schmidt: | Objection, your Honor. May we approach. |

(R. 335-338).

Further, it's a *monologue* to the jury — *not* questioning, during what's suppose to be *cross examination* -- not opening or closing arguments. *Material* error the Fifth Circuit ignored.

2. The trial judge blatantly *refuse* to admonish the jury, thus compounding the fundamental unfairness of the trial.

3. The Fifth Circuit's rational that "*arguments* made by the attorneys are not evidence" on *cross examination*, is nothing less than a misapplication of well settled law violating substantial *appellate* rights of the accused. Art. 921, La. C.Cr.P.

4. And the Fifth Circuit's misapplies the law, here, again, in ***State v. Ayo***, 7 So.3d 85, 96 (La. App. 5th Cir. 2009), charging the jury that opening and closing argument instructions apply to *cross examination* is so misplaced. The Louisiana Supreme Court must annul the *repeated* frivolous application of law in the *published* opinion of the Fifth Circuit. ***Id.***

## CONCLUSION OF RELIEF

Notably, herein Petitioner address only two (2) of the eleven (11) assignment of error(s) on direct appeal. Thus the wholly frivolous opinion of the Fifth Circuit still contains over sixty (60) *plus* misapplication(s) of law, *additional* perjury and, constitutional right violation(s) that have not yet been addressed in remaining nine (9) assignments.[4]

WHEREFORE, Petitioner respectfully moves this Honorable Court to grant relief as follows:

1. Annul both State Court's decision(s) in ***State v. Ayo***, 7 So.3d 85 (La. App. 5th Cir. 2009), ***writ denied***, 28 So.3d 1006 (La. 2010);

2. Change venue to non-bias Appellate Court for review;

3. And the Louisiana Supreme Court accept jurisdiction, issue a fair, proper opinion conforming to Federal and State Constitutional law(s).

This I forever pray.

Respectfully submitted,

[signature]
Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, Louisiana 70712
***[ Petitioner Pro Se ]***

---

[4]Petitioner objects, preserving the remaining sixty (60) plus issue(s) for review as patent error.

**AFFIDAVIT**

Personally appeared before me, Glenn Charles Ayo #531823, who after producing a picture State I.D., was duly sworn, and hereby declares under penalty of perjury that I read the foregoing **PETITION TO ANNUL FINAL JUDGMENT FOR VICES OF FORM AND SUBSTANCE AND FOR INJUNCTIVE RELIEF** and the facts herein are all true, correct and complete to the best of my knowledge.

Sworn this 28th day of February, 2011.

Glenn C. Ayo #531823
*[ Petitioner Pro Se ]*

NOTARY PUBLIC: ____________________

MY COMMISSION EXPIRES: ____________

Leuni Duffour 89823
**Ex-Officio Notary**
**Department of Public Safety & Corrections/LSP**

# SUPREME COURT OF LOUISIANA

400 Royal Street
New Orleans, LA 70130

February 14, 2011

To: Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, LA 70712

Re: Your writ

In reply to your letter of February 11, 2011, please be advised that:

( ) We have no record that anything was recently filed on your behalf in this Court. Please contact your attorney, the clerk of the district court where you were convicted, or the ______ Circuit Court of Appeal.

( ) An application for writs was filed in this Court on ________ and is pending.

( ) As requested, please find enclosed ____________________.

( ) Your writ application is pending. The Court will notify you when it has reached a decision in this matter.

( ) The following action has been taken on your case: ________________________________________________.

( X ) We are returning your papers to you unfiled. **If you wish to have your conviction or sentence set aside with new claims**, you must initially file an application for post-conviction relief or motion to correct an illegal sentence in the district court in which you were convicted. If you do not receive a satisfactory response there, you should file for writs at the Court of Appeal. <u>See</u> La.C.Cr.P. art. 924 <u>et seq</u>; La.C.Cr.P. art 822. You should also be aware of the time limits set out in La.C.Cr.P. art. 930.8, which in most cases bar filings more than two years after finality of conviction.

Sincerely,

CN

Central Staff

# SUPREME COURT OF LOUISIANA

400 Royal Street
New Orleans, LA 70130

March 2, 2011

To: Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, LA 70712

Re: Your writ

In reply to your letter of March 1, 2011, please be advised that:

( ) We have no record that anything was recently filed on your behalf in this Court. Please contact your attorney, the clerk of the district court where you were convicted, or the _____ Circuit Court of Appeal.

( ) An application for writs was filed in this Court on ________ and is pending.

( ) As requested, please find enclosed ____________________.

( ) Your writ application is pending. The Court will notify you when it has reached a decision in this matter.

( ) The following action has been taken on your case: ________________________________________________.

( X ) As stated in a previous letter to you, we are returning your papers to you unfiled. **If you wish to have your conviction or sentence set aside with new claims, you must initially file an application for post-conviction relief or motion to correct an illegal sentence in the district court in which you were convicted. If you do not receive a satisfactory response there, you should file for writs at the Court of Appeal.** See La.C.Cr.P. art. 924 et seq; La.C.Cr.P. art 822. You should also be aware of the time limits set out in La.C.Cr.P. art. 930.8, which in most cases bar filings more than two years after finality of conviction.

Sincerely,

Central Staff

# The Supreme Court of the State of Louisiana

STATE EX REL. GLENN CHARLES AYO

NO. 2009-KH-1026

VS.

STATE OF LOUISIANA

- - - - - -

IN RE: Ayo, Glenn Charles; - Plaintiff; Applying For Supervisory and/or Remedial Writs, Parish of Jefferson, 24th Judicial District Court Div. M, Nos. 07-369, 07-370; to the Court of Appeal, Fifth Circuit, Nos. 08-KA-468, 08-KH-1179;

- - - - - -

March 5, 2010

Denied.

JTK

BJJ

JPV

JLW

GGG

MRC

Supreme Court of Louisiana
March 5,2010

[signature]
Deputy Clerk of Court
For the Court

*1006 28 So.3d 1006

2009-1026 La. 3/5/10

Supreme Court of Louisiana.

**STATE ex rel. Glenn Charles AYO**
**v.**
**STATE of Louisiana.**

**No. 2009-KH-1026.**

March 5, 2010.

Prior report: La.App., 7 So.3d 85.

In re Ayo, Glenn Charles;--Plaintiff; Applying For Supervisory and/or Remedial Writs, Parish of Jefferson, 24th Judicial District Court Div. M, Nos. 07-369, 07- *1007 370; to the Court of Appeal, Fifth Circuit, Nos. 08-KA-468, 08-KH-1179.

Denied.

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF, STATE OF LOUISIANA

GLENN CHARLES AYO
Plaintiff/Petitioner

CASE NO. 11-956

-VS-

CLERK OF COURT,
LOUISIANA SUPREME COURT, ET AL
Defendant/respondent(s)

DIV./SEC. R (1)

**PETITION FOR WRIT OF MANDAMUS**

COMES NOW the above names petitioner pro se, respectfully moves this Honorable Court pursuant to 28 U.S.C.A. § 1651, amongst other applicable rule(s), and would show the following as basis in support thereof:

**JURISDICTION**

Federal Rule 28 U.S.C.A. § 2254 require state prisoners (under strict one-year time limitation) to exhaust remedies in highest state court before federal review.

In the instant case, the clerk of the Louisiana Supreme Court has ***"refuse to file"*** on ***two*** separate occasion(s) Mr. Ayo's timely petition. Thus effectively creating an unreasonable delay, and denying petitioner's constitutional due process right to adequate access to courts. La.Const. Art. 1, § 22; Cheney v. U.S. Dist. Court of Columbia, 542 U.S. 367, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004), there remains no other adequate means to attain relief, other than issuance of writ of mandamus. Thus jurisdiction rest in this court.

1. While petitioner was preparing his Application for Post-Conviction Relief August 1, 2010, Mr. Ayo discovered the ***published*** opinion of the Louisiana Fifth Circuit Court of Appeal in State v. Ayo, 7 So.3d 85 (La.App. 5th Cir. 2009), astronomically contains over ***seventy (70)***, seventy "***material***" error(s) of fact, and, unbelievably ***additional perjury*** "not" in the record nor introduced in any form of evidence, testimonial or otherwise.

2. Mr. Ayo ***timely*** "Petition to Annual Final Judgment For Vices of Form and Substance," pursuant to LSA-C.Cr.P. Art. 2001 thru 2006. (See Exhibit - AA, attached).

3. Petitioner contends, the clerk of Louisiana Supreme Court ***"refuse to file"*** and return the document(s), denying constitutional rights to adequate access to courts and remedy by due process of law February 14, 2011. (See Exhibit -BB, attached).

4. Mr. Ayo corrected what he thought a deficiency in title. Still ***timely***, [re]filed "Petition to Annual Opinion of Circuit Court For Vices of Form and Substance." (See Exhibit -CC, attached)

5. Petitioner contends, the clerk of the Louisiana Supreme Court again ***"Refuse to File"*** and return the document(s), repeatedly denying Mr. Ayo's constitutional right(s) to adequate access to courts and remedy by due process of law March 2, 2011. La.Const. Art. 1, § 22. (See Exhibit - CC, attached).

6. Petitioner contends, on two (2) occasion(s) the clerk of the Louisiana Supreme Court ***refuse*** to perform his/her ministerial duty willfully violating Mr. Ayo's constitutional right(s) to access to court, as the filing of prima facie petition will expose criminal malfeasance by superior court judge(s) of the Fifth Circuit in State v. Ayo, 7 So.3d 85 (La.App. 5th Cir. 2009). (See Exhibit - AA, attached).

7. Petitioner contends, most notable is the fact that circuit court judge DuFresne, comprised part of the panel of three judges under attack for malfeasance in State v. Ayo, 7 So.3d 85 (La.App.

5th Cir. 2009). The ***same*** justice responsible for ***several hundred*** case(s) of malfeasance in State v. Cordero, 993 So.2d 203 (La.2008).

8. Petitioner contends, ***additional perjury*** of the court of appeals, erroneous interpretation and misapplied constitutional law(s) of this state and the United State in ***published*** opinion will cause material injustice significantly affecting the public interest.

9. Petitioner contends, after two (2) timely and diligent attempts to access court by due process of law. Other than issuance of writ of mandamus, there remains no other adequate means to attain relief. Cheney v. U.S. Dist. Court of Columbia, 542 U.S. 367, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004).

10. Petitioner has satisfied the burden of showing that his right to issuance of the writ is clear and indisputable.

11. Petitioner contends, the issuance of writ is appropriate under the circumstances.

**WHEREFORE**, petitioner respectfully moves this Honorable Court to issue the writ of mandamus, compelling the clerk of Louisiana Supreme Court to properly file the prima facie petition and exhibit(s) attached hereto.

Respectfully submitted,

Petitioner Pro se

**AFFIDAVIT VERIFICATION**

Personally appeared before me Glenn C. Ayo 531823, who after producing a state picture ID was duly sworn, and hereby declares under penalty of perjury that I read the foregoing Petition for Writ of Mandamus and the facts herein are all true, correct and complete to the best of my knowledge.

Sworn this _____ day of ________________, 2011.

Petitioner Pro se

Notary Public: ______________________

My commission expires: ____________________

**CERTIFICATE OF SERVICE**

I, Glenn C. Ayo 531823, hereby certify that a true copy of the foregoing Petition for Writ of Mandamus has been furnished by pre-paid U.S. Postal to:

Clerk of Court's Office
Supreme Court of Louisiana
400 Royal St.
New Orleans, LA 70130

Mailed this _____ day of ________________, 2011.

Petitioner Pro se

Glenn C. Ayo 531823
Louisiana State Penitentiary
Angola, LA 70712

# SUPREME COURT OF LOUISIANA

400 Royal Street
New Orleans, LA 70130

February 14, 2011

To: Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, LA 70712

Re: Your writ

In reply to your letter of February 11, 2011, please be advised that:

( ) We have no record that anything was recently filed on your behalf in this Court. Please contact your attorney, the clerk of the district court where you were convicted, or the ______ Circuit Court of Appeal.

( ) An application for writs was filed in this Court on ________ and is pending.

( ) As requested, please find enclosed ____________________.

( ) Your writ application is pending. The Court will notify you when it has reached a decision in this matter.

( ) The following action has been taken on your case: ____________________________________________________________.

( X ) We are returning your papers to you unfiled. **If you wish to have your conviction or sentence set aside with new claims**, you must initially file an application for post-conviction relief or motion to correct an illegal sentence in the district court in which you were convicted. If you do not receive a satisfactory response there, you should file for writs at the Court of Appeal. See La.C.Cr.P. art. 924 et seq; La.C.Cr.P. art 822. You should also be aware of the time limits set out in La.C.Cr.P. art. 930.8, which in most cases bar filings more than two years after finality of conviction.

Sincerely,

CW

Central Staff

**SUPREME COURT OF LOUISIANA**

400 Royal Street
New Orleans, LA 70130

March 2, 2011

To: Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, LA 70712

Re: Your writ

In reply to your letter of March 1, 2011, please be advised that:

( ) We have no record that anything was recently filed on your behalf in this Court. Please contact your attorney, the clerk of the district court where you were convicted, or the ______ Circuit Court of Appeal.

( ) An application for writs was filed in this Court on ________ and is pending.

( ) As requested, please find enclosed ____________________.

( ) Your writ application is pending. The Court will notify you when it has reached a decision in this matter.

( ) The following action has been taken on your case: ____________________________________________________________.

( X ) As stated in a previous letter to you, we are returning your papers to you unfiled. **If you wish to have your conviction or sentence set aside with new claims, you must initially file an application for post-conviction relief or motion to correct an illegal sentence in the district court in which you were convicted. If you do not receive a satisfactory response there, you should file for writs at the Court of Appeal.** *See* La.C.Cr.P. art. 924 *et seq*; La.C.Cr.P. art 822. You should also be aware of the time limits set out in La.C.Cr.P. art. 930.8, which in most cases bar filings more than two years after finality of conviction.

Sincerely,

Central Staff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENN CHARLES AYO | CIVIL ACTION
VERSUS | NO. 11-956
CLERK OF COURT LOUISIANA SUPREME COURT | SECTION "R"

ORDER

The plaintiff has filed a document entitled "Motion for Reconsideration" (Rec. Doc. 12).

IT IS ORDERED that the motions are hereby set for submission on AUGUST 3, 2011, without oral argument.

Memorandum in opposition to be filed in accordance with Local Rule 7.5E.

New Orleans, Louisiana, this 7th day of July, 2011.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENN CHARLES AYO — CIVIL ACTION

VERSUS — NO: 11-956

CLERK OF COURT, LOUISIANA SUPREME COURT — SECTION: R(1)

**ORDER**

Before the Court is Glenn Ayo's petition for a Writ of Mandamus.[1] Ayo is a state prisoner in Louisiana. He was convicted of armed robbery and resisting an officer and sentenced to 87 years at hard labor. After unsuccessfully appealing his conviction, Ayo submitted two petitions to the Louisiana Supreme Court, a "Petition to Annul Final Judgment for Vices of Form and Substance" and a "Petition to Annul Opinion of Circuit Court for Vices of Form and Substance." Ayo contends that the Louisiana Supreme Court improperly refused to file these petitions. He asks this Court to direct the Clerk of Court for the Louisiana Supreme Court to allow him to file them.[2]

Section 1361 of Title 28 of the United States Code grants district courts original jurisdiction over "any action in the nature of mandamus to compel an officer or employee *of the United States* or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). As the plain

---

[1] (R. Doc. 1.)

[2] (*Id.* at 2-3.)

language of the statute makes clear, section 1361 grants district courts jurisdiction over mandamus actions directed at federal officers. *See Newsome v. Equal Employment Opportunity Commission*, 301 F.3d 227, 231 (5th Cir. 2002). Further, it is clearly established that federal courts lack the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief a petitioner seeks. *Lamar v. 118th Judicial District Court of Texas*, 440 F.2d 383, 384 (5th Cir. 1971); *Moye v. Clerk, Dekalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970); *Demos v. United States District Court*, 925 F.2d 1160, 1161-62 (9th Cir. 1991).

Here, the only relief Ayo seeks is an order from this Court directing the Louisiana Supreme Court to file his petitions. Therefore, because the Court cannot grant the relief Ayo seeks, the Writ of Mandamus must be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

IT IS SO ORDERED.

New Orleans, Louisiana, this 23rd day of June, 2011.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENN CHARLES AYO — CIVIL ACTION

VERSUS — NO: 11-956

CLERK OF COURT, LOUISIANA SUPREME COURT — SECTION: R(1)

**ORDER**

Before the Court is Glenn Ayo's motion for reconsideration of the Court's denial of his petition for a Writ of Mandamus.[1] Ayo is a state prisoner in Louisiana. He was convicted of armed robbery and resisting an officer and sentenced to 87 years at hard labor. After unsuccessfully appealing his conviction, Ayo submitted two petitions to the Louisiana Supreme Court, a "Petition to Annul Final Judgment for Vices of Form and Substance" and a "Petition to Annul Opinion of Circuit Court for Vices of Form and Substance." Ayo contends that the Louisiana Supreme Court improperly refused to file these petitions. Ayo

---

[1] (R. Doc. 12.) Ayo has also filed a Motion to Amend Petitioner's Traverse in Opposition Returned. (R. Doc. 16.) Because that motion reiterates identical arguments, the Court considers it part of Ayo's motion for reconsideration.

filed a petition for a Writ of Mandamus in this Court on April 19, 2011, asking it to direct the Clerk of Court for the Louisiana Supreme Court to allow him to file them. This Court dismissed with prejudice Ayo's petition on June 23, 2011, concluding that it lacks power to grant the relief Ayo seeks.[3]

Because Ayo's Motion for Reconsideration was filed within ten days of the Court's June 23 order, the Court will treat it as a motion to alter or amend judgment under FRCP Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993); 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2810.1 (2d ed. 1995). A district court has considerable discretion to grant or deny a motion for reconsideration. *See Edward H. Bohlin Co.*, 6 F.3d at 353. In exercising its discretion, the Court must "strike the proper balance" between the need for finality and "the need to render just decisions on the basis of all the facts." *Id.* at 355. Reconsideration, however, "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Reconsideration "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* Therefore, to succeed

---

[3] (R. Doc. 10.)

on a Rule 59(e) motion, a party must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 478-79.

Ayo's motion neither presents newly discovered evidence nor clearly establishes a manifest error of law or fact. Although Ayo's argument is not entirely clear, he appears to suggest that the Court dismissed his petition for failure to cite a specific jurisdictional statute. Based on that premise, he maintains that the Court erred because his petition contained both an invocation of 28 U.S.C. § 1651 and the language "amongst other applicable rules." Yet, as the Court stated in its June 23 order, it is clearly established that federal courts lack the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of there duties when, as in this case, mandamus is the only relief a petitioner seeks. *See Lamar v. 118th Judicial District Court of Texas*, 440 F.2d 383, 384 (5th Cir. 1971) (per curiam). Ayo's inclusion of the words "amongst other applicable rule(s)" in the jurisdictional section of his petition does nothing to alter the established state of the law.

Ayo also argues that it was error to dismiss his petition only three days after the Clerk of Court for the Louisiana Supreme Court filed its response, thereby leaving him "'less' than ten (10) days to file written objection / traverse brief." Ayo's argument appears to be based on a earlier version of Rule 72(b) of the Federal Rules of Civil Procedure, which gave parties 10 days to file written objections to a magistrate judge's proposed findings and recommendations.[3] But that rule - in either its earlier or current form - is not implicated in this case, as Ayo's petition was not referred to a magistrate judge. Nor can Ayo establish a manifest error of law based on an insufficient opportunity to file a reply to the Clerk of Court's response brief, as Ayo has not put forth any additional arguments that would call into question the Court's dismissal of his petition. *Cf. Williams v. Newark Beth Israel Medical Center*, 322 F. App'x 111, 114 (3d Cir. 2009) (rejecting plaintiffs' argument that the district court abused its discretion by issuing its order ahead of its original deadline, thus denying plaintiff an opportunity to file a reply brief, because the reply brief would have been "of no consequence"); *United States v. Isom*, 924 F.2d 1063, 1063 (9th Cir. 1991) (rejecting criminal defendant's

---

[3] Rule 72 was revised in 2009 to extend the 10-day period to 14 days. *See* Fed. R. Civ. P. 72, 2009 Amendments.

argument that the district court erroneously ruled on his motion to correct sentence before he could file a reply brief because "he was not denied any meaningful opportunity to present his contentions"). Ayo's motion for reconsideration therefore lacks merit.

For the foregoing reasons, Ayo's motion for reconsideration is DENIED.

New Orleans, Louisiana, this 16th day of August, 2011.

Sarah Vance
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GLENN CHARLES AYO** | **CIVIL ACTION** |
| | **DOCKET NO. 2:11-CV-00956** |
| **V.** | **JUDGE SARAH S. VANCE** |
| **CLERK OF COURT FOR THE LOUISIANA SUPREME COURT** | **MAGISTRATE JUDGE SALLY SHUSHAN** |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER**

**MAY IT PLEASE THE COURT:**

While the Federal Rules of Civil Procedure do not expressly allow motions for reconsideration, *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2002), the Fifth Circuit treats a Motion for Reconsideration challenging a prior judgment as either a Motion to Alter or Amend under FRCP Rule 59(C) or a Motion for Relief from Judgment under FRCP Rule 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). If the motion is filed within ten days of the judgment, it falls under Rule 59(e). If the motion is filed more than ten days after the judgment, it is governed by Rule 60(b).

In this case, judgment issued on June 23, 2011. (Rec. Doc.11). The Motion for Reconsideration was filed on July 5, 2011 (Rec. Doc. 12) and appears timely under Rule 59(e).

Under Rule 59(e), a Court's reconsideration of a prior order is an extraordinary remedy that should be used only sparingly and not to relitigate old matters, raise new arguments, or

present evidence that should have been raised in the earlier motion. *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000). Mere disagreement with the District Court's Order does not warrant reconsideration of that order. *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002). As one court put it, District Court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).

A Court may entertain a Motion for Reconsideration if the moving party demonstrates (1) newly discovered or previously unavailable evidence, (2) that the action is necessary to correct a manifest error of fact or law, (3) that the motion is necessary to prevent manifest injustice, or (4) that the motion is justified by an intervening change in the controlling law. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989); *Templet v. Hydro Chem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Gregg v. Weeks Marine, Inc.*, 99-1586, 2000 WL 802865 (E.D. La. May 26, 2000).

Plaintiff does not allege that any new evidence has arisen or that there was an intervening change of law. Thus the court must consider if reconsideration is necessary to correct or prevent a manifest error of fact or law or manifest injustice.

Plaintiff's petition for Writ of Mandamus seeks this Court to order the Clerk of Court for the Louisiana Supreme Court to file his "Petition to Annul Final Judgment for Vices of Form and Substance" and "Petition to Annul Opinion of Circuit Court for Vices of Form and Substances." As previously brought forth in the Response to Order to Show Cause filed by the Clerk of the Supreme Court (Rec. Doc. 9), the refusal to file these documents is supported by state law and plaintiff is not prejudiced as he has sufficient time to file the correct pleading to seek the relief sought.

As this Court correctly held in its original Order (Rec. Doc. 10), 28 U.S.C. 1361 grants District Court's original jurisdiction over mandamus actions directed to federal officers. However, it is clearly established that federal district courts lack jurisdiction to issue a Writ of Mandamus to direct state courts or state clerks of court in the performance of their duties. *Russell v. Knight*, 448 F.2d 96, 97 (5th Cir. 1973) (per curiam); *Lamar v. 118th Judicial District Court of Texas*, 440 F.2d 383, 384 (5th Cir. 1971); *Moye v. Clerk, Dekalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973); *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587 (4th Cir. 1969) (per curiam); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970); *In re Campbell*, 264 F.2d 730, 731 (7th Cir. 2001); *Demos v. United States District Court*, 925 F.2d 1160, 1611-62 (9th Cir. 1991); *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 (10th Cir. 1986).

In this case, the only relief sought by plaintiff is an Order from this Court ordering the Louisiana Supreme Court to file his petitions. As this Court cannot grant the relief sought for lack of jurisdiction, plaintiff's Petition for Writ of Mandamus was correctly dismissed with prejudice and likewise, plaintiff's Motion for Reconsideration should be denied.

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL**

BY: s/ David G. Sanders
**DAVID G. SANDERS, Bar Roll # 11696**
**BRIDGET B. DENICOLA, Bar Roll # 27433**
ASSISTANT ATTORNEYS GENERAL

**LOUISIANA DEPARTMENT OF JUSTICE**
**LITIGATION DIVISION**
P. O. BOX 94005
BATON ROUGE, LA 70804-9005
TELEPHONE: (225) 326-6300
FAX: (225) 326-6192

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been served upon counsel for all represented parties and has been served upon all pro se parties to this proceeding by CM/ECF notification, and to non-CM/ECF participants, by first class United States mail, properly addressed and postage prepaid on this 11th day of July, 2011.

***Plaintiff:***
Glenn Charles Ayo 531823
Louisiana State Penitentiary
General Delivery
Angola, LA 70712
*Pro Se*

s/ David G. Sanders
DAVID G. SANDERS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**GLENN CHARLES AYO**

**V.**

**CLERK OF COURT FOR THE LOUISIANA SUPREME COURT**

**CIVIL ACTION, SECT. R - DIV. 1**

**DOCKET NO. 2:11-CV-00956**

**JUDGE SARAH S. VANCE**

**MAGISTRATE JUDGE SALLY SHUSHAN**

**RESPONSE OF CLERK OF COURT FOR THE LOUISIANA SUPREME COURT TO COMPLAINT FOR WRIT OF MANDAMUS**

**MAY IT PLEASE THE COURT:**

The Clerk of Court for the Louisiana Supreme Court files this Response to Plaintiff's Complaint for a Writ of Mandamus pursuant to the Order of this Court. (Rec. Doc. 6.)

Plaintiff complains that the Clerk of Court refused to file plaintiff's "Petition to Annul Final Judgment for Vices of Form and Substance" and "Petition to Annul Opinion of Circuit Court for Vices of Form and Substance." (Rec. Doc. 1, p. 2)

The petitions were returned to plaintiff with instructions that to have a conviction or sentence set aside, plaintiff would need to initially file an application for post-conviction relief or motion to correct an illegal sentence in the district court and, if a satisfactory response was not received in the District Court, to file for writs at the Court of Appeal. (Rec. Doc. 1, p. 76, "Ex. BB"; Rec. Doc. 1, p. 79, "Ex. CC")

Plaintiff was convicted of armed robbery on November 28, 2007, and received a sentence of 87 years at hard labor. Plaintiff, through counsel, filed a Motion for New Trial which was denied on December 5, 2007. Plaintiff, through counsel, filed an Appeal

of his conviction for armed robbery and resisting an officer. The Louisiana Fifth Circuit Court of Appeal Affirmed the conviction. *State v. Ayo*, 08-468 (La. App. 5th Cir. 3/24/09), 7 So.3d 85. Rehearing at the Fifth Circuit was denied on April 13, 2009. The Louisiana Supreme Court denied writs on March 5, 2010, *State v. Ayo*, 2009-1026 (La. 3/5/10), 28 So.3d 1006.

There are four vehicles for relief available after conviction and sentencing: (1) an appeal, (2) application for post-conviction relief, (3) motion to reconsider sentence, and (4) a motion to amend sentence. See *State v. Branch*, 96-1626 (La. App. 3rd Cir. 5/21/97), 696 So.2d 81.

Plaintiff's allegations in his two petitions state claims that the Court that convicted him of armed robbery was in error. Such claims are properly brought as post-conviction relief under Louisiana Code of Criminal Procedure Arts. 924 et seq. or a Motion to Amend or Modify sentence under Louisiana Code of Criminal Procedure Art. 822, not as a Petition to Annul Judgment under Code of Civil Procedure Art. 2001 et seq. Plaintiff's conviction was final in March, 2010. Therefore, the Clerk correctly returned plaintiff's petition to him, advising him of his options in seeking post-conviction relief and the time limitations on such relief.

Further, plaintiff has not been prejudiced by the Clerk's action in returning his documents as he has ample time - 2 years after conviction and sentence becomes final, See, C.Cr.P. Art. 930 - to file for post-conviction relief.

Therefore, the Clerk acted properly in returning plaintiff's two Petitions, and Mr. Ayo's current Complaint for a Writ of Mandamus should be denied.

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL**

BY: s/ David G. Sanders
**DAVID G. SANDERS, Bar Roll # 11696**
ASSISTANT ATTORNEY GENERAL

**LOUISIANA DEPARTMENT OF JUSTICE**
**LITIGATION DIVISION**
P. O. BOX 94005
BATON ROUGE, LA 70804-9005
TELEPHONE: (225) 326-6300
FAX: (225) 326-6192

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon counsel for all represented parties and has been served upon all pro se parties to this proceeding by CM/ECF notification, and to non-CM/ECF participants, by first class United States mail, properly addressed and postage prepaid on this 20th day of June, 2011.

***Plaintiff:***
Glenn Charles Ayo 531823
Louisiana State Penitentiary
General Delivery
Angola, LA 70712
*Pro Se*

s/ David G. Sanders
DAVID G. SANDERS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GLENN CHARLES AYO | CIVIL ACTION |
| VERSUS | NO. 11-956 |
| CLERK OF COURT FOR THE LOUISIANA SUPREME COURT | SECTION "R" |

**JUDGMENT**

Considering the Court's order and reasons on file herein,

IT IS ORDERED, ADJUDGED AND DECREED that plaintiff's petition for Writ of Mandamus is hereby DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

New Orleans, Louisiana, this 23rd day of June, 2011.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE