RECEIVED

MAY 2 3 2013

Legal Programs Department

SCANNED at LSP and Emailed
5-23-13 by km . 44 pages
date      initials   No.

# APPENDIX - F

# IN THE
# TWENTY-FOURTH JUDICIAL DISTRICT COURT
# PARISH OF JEFFERSON
# STATE OF LOUISIANA

---

### CRIMINAL DOCKET NO: 07-369

---

### STATE EX REL. GLENN CHARLES AYO,
*Petitioner*

### VERSUS

### N. BURL CAIN, WARDEN
### LOUISIANA STATE PRISON
*Respondent*

---

# APPLICATION FOR POST CONVICTION RELIEF

---

ORIGINAL BRIEF FILED BY PRO SE PETITIONER
GLENN CHARLES AYO

RESPECTFULLY SUBMITTED BY:

GLENN CHARLES AYO #531823
LOUISIANA STATE PRISON
ANGOLA, LOUISIANA 70712
*(PRO SE PETITIONER)*

APPENDIX "A"
Adopted October 14, 1976
Effective January 1, 1977

# UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

**GLENN CHARLES AYO**
NAME OF PETITIONER

NO._____
(to be filled in by the clerk)

**531823**
PRISON NUMBER

**24th**    JUDICIAL DISTRICT COURT

PARISH OF **JEFFERSON**
STATE OF LOUISIANA

**LOUISIANA STATE PENITENTIARY**
**AT ANGOLA, LOUISIANA**
PLACE OF CONFINEMENT

**VERSUS**

**N. BURL CAIN, WARDEN**

CUSTODIAN (Warden, Superintendent, Jailor, or
authorized person having custody of petitioner)

Please serve CUSTODIAN and **HON. PAUL CONNICK**                    DISTRICT ATTORNEY,
**24th**    JUDICIAL DISTRICT, STATE OF LOUISIANA

## PETITION

1.   Name and location of court which entered the judgment of conviction challenged:
     **24th**   Judicial District Court, Parish of **Jefferson**

2.   Date of judgment of conviction: **November 28, 2007**

3.   Length of sentence: **Eighty-seven (87) years**

4.   Nature of offense involved (all counts): **Armed Robbery, Resisting Arrest (case no. 07370)**

5.   What was your plea?  (check one)
     (a)   Not guilty [X ]
     (b)   Guilty [    ]
     (c)   Not guilty and not guilty by reason of insanity [    ]
           If you entered a guilty plea to one or more counts and not guilty to other counts,
           give details:  **N/A**

     (d)   Name and address of the lawyer representing you at your plea (if you had no
           lawyer, please indicate):  **Unknown (Stand-In)**

     (e)   Was the lawyer appointed [X ] or hired [    ]? (check one)

6.   Kind of trial:  (a)    Jury [X ]    (b)    Judge only [    ]

7.   (a)   Name and address of the lawyer representing you at your trial:
           **Marquita Naquin and Evans Schmidt, 848 2nd Street, Gretna, La. 70053**
     (b)   Was the lawyer appointed [X ] or hired [    ]? (check one)

8.   Did you testify at the trial?  Yes [ X ]    No [    ]

ii.

9.   (a)   Give the name and address of the lawyer who represented you at sentencing for the conviction being attacked herein: **Evans Schmidt, 848 2ⁿᵈ Street, Gretna, La. 70053**
     (b)   Was the lawyer appointed [ X ] or hired [   ]? (check one)

10.  Did you appeal from the judgment of conviction?   Yes [ X ]      No [   ]

11.  If you did appeal, give the following information:
     (a)   Citation, docket, number, and date of written opinion by the appellate court (if known): **Fifth Circuit Court of Appeal -- *State v. Ayo, 7 So.3d 85* (La.   App.5ᵗʰCir.02/11/98); rehearing denied April 13 2009**
     (b)   Name and address of lawyer representing you on appeal: **Margaret Sollars 513 Country Club Blvd., Thibodaux, La. 70301**
     (c)   Was the lawyer appointed [ X ] or hired [   ]? (check one)

12.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?   Yes [   ]      No [ X ]

13.  If your answer to 12 is "yes", give the following information:
     (a)   (1)   Name of court:  N/A
           (2)   Nature of proceeding:      N/A
           (3)   Claims raised:      N/A
           _____
           _____
           (4)   Did you receive an evidentiary hearing on your application?
                 Yes [   ]      No [   ]
           (5)   Was relief granted [   ] or denied [   ]?
           (6)   Date of disposition:
           (7)   Citation of opinion (if known)
           (8)   Name and address of lawyer representing you (if none, so state):
           _____
           (9)   Was the lawyer appointed [   ] or hired [   ]? (check one)
     (b)   As to any second application give the same information:  _____
           (1)   Name of court: _____
           (2)   Nature of proceeding: _____
           (3)   Claims raised: _____
           (4)   Did you receive an evidentiary hearing on your application?
                 Yes [   ]      No [   ]
           (5)   Was relief granted [   ] or denied [   ]?
           (6)   Date of disposition: _____
           (7)   Citation of opinion (if known): _____
           (8)   Name and address of lawyer representing you [if none, so state]: _____
           (9)   Was the lawyer appointed [   ] or hired [   ]? (check one)
     (c)   Have you filed any other applications for post-conviction relief with respect to the challenged conviction?      Yes [   ]      No [   ]
           If "yes", set forth the details (as above) on separate paper and attach.
     (d)   Did you appeal or seek writs of review from the denial of any post-conviction application?
           (1)   First petition, etc.   Yes [   ]      No [   ]
           (2)   Second petition, etc.  Yes [   ]      No [   ]
     (e)   If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly why you did not: **Still on direct appeal and review therefrom.**
     (f)   Name of the lawyer who represented you on appeal from the denial of any post-conviction application [if none, so state]:
           (1)   First petition: _____
           (2)   Second petition: _____

## CLAIM(S) FOR RELIEF

CLAIM:     *SEE MEMORANDUM IN SUPPORT*

(a)   Supporting FACTS   (tell your story briefly without citing cases or law):

*SEE:            MEMORANDUM            IN            SUPPORT*

_____

_____

_____

_____

_____

(b)   List names and addresses of witnesses who could testify in support of your

claim. If you cannot do so, explain why: *(1) THEO BRICKLEY, LOUISIANA*

*DEPARTMENT OF CORRECTIONS, COTTONPORT, LA. (2) DAVE*

*CICERO ST., METAIRIE, LA. (3) WILLIAM (BILL) BARRET, SERVICE*

*CAB COMPANY, METAIRIE, LA. (4) RONNIE MONTGOMERY,*

*DEFENSE INVESTIGATOR, P.O. BOX 640526, KENNER LA. 70064, (5 thru*

*16) ALL TWELVE (12) JURORS, ADDRESSES ON JURY POOL*

(c)   If you failed to raise this ground in the trial court prior to conviction, on appeal or

in a prior application, explain why: *NOT AVAILABLE*_____

iv.

A.    Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged? Yes [   ]   No [ X ]       If "yes", name the court :

_____

B.    Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged?   Yes [   ]   No [ X ]

    (1)    If so, give name and location of court which imposed sentence to be served in the future:_____

    (2)    Give date and length of sentence to be served in the future:_____

    (3)    Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future? Yes [   ]   No [   ]

C.    If a copy of the court order sentencing you to custody is not attached, explain why:
    *(SEE EXHIBIT – W, ATTACHED)*_____

       **WHEREFORE**, petitioner prays that the Court grant petitioner relief to which he may be entitled.

                           Respectfully submitted by:

                      Petitioner:    _____
                      Print Name:  **Glenn Charles Ayo #531823**
                                   **Louisiana State Prison**
                                   **Angola, Louisiana 70712**

## APPLICATION FOR APPOINTMENT OF COUNSEL

       I am unable to employ counsel to represent me in this matter because I have no assets or funds except for any money which may be in my prison account. See Statement of Account.

    **NONE**
_____
**(Write "NONE" above if you have nothing; otherwise, list your assets including funds in prison accounts.)**

                             _____
                              (Petitioner)

**AFFIDAVIT**

STATE OF LOUISIANA

PARISH OF WEST FELICIANA

  GLENN CHARLES AYO , being first duly sworn says that he has read the foregoing

application for post-conviction relief and swears or affirms that all of the information therein is true and

correct.  He further swears or affirms that he is unable to employ counsel because he has no assets or

funds which could be used to hire an attorney except as listed above.

  [Delete reference to appointment of counsel if inapplicable.]

                                              Respectfully submitted by:

                       Petitioner:  _____

                       Print Name:  **Glenn Charles Ayo #531823**
                                    **Louisiana State Prison**
                                    **Angola, Louisiana 70712**

**SWORN TO AND SUBSCRIBED** before me this _____ day of _____, 2010.

                                    _____
                                    **Notary Public or other person**
                                    **authorized to administer an oath**

vi

# TABLE OF AUTHORITIES

## CONSTITUTIONAL PROVISIONS

Fourth Amendment, U.S. Constitution

Fifth Amendment, U.S. Constitution

Sixth Amendment, U.S. Constitution

Eighth Amendment, U.S. Constitution

Fourteenth Amendment, U.S. Constitution

Article I § 16, Louisiana Constitution

Article I § 17, Louisiana Constitution

## STATUTES

U.S.S.G. § 3C1.1

La. C.Cr.P. Art. 213

La. C.Cr.P. Art. 215.1

La. C.Cr.P. Art. 403

La. C.Cr.P. Art. 404

La. C.Cr.P. Art. 709

La. C.Cr.P. Art. 770

La. C.Cr.P. Art. 771

La. C.Cr.P. Art. 831

La. C.Cr.P. Art. 921

La. C.Cr.P. Art. 924

La. C.Cr.P. Art. 925

La. C.Cr.P. Art. 926.1

La. C.Cr.P. Art. 930.8

La. C.E. Art. 403

La. C.E. Art. 404

La. R.S. 14:64

La. R.S. 14:108

## OTHER

32 AM. Crim.L.Rev., at 1023-24

H.I.P.A.A. Medical Privacy Act

## CASE LAW (DISCRETIONARY) FOOTNOTES

Anderson v. Johnson, 338 F.3d 382, 393-94 (5th Cir. 2003)

Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (9164)

Brogan v. United States, 522 U.S. 398, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998)

Brown v. Illinois, 422 U.S. 90 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)

Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)

Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)

Code v. Montgomery, 799 F.2d 1481 (11th Cir. 1986)

Coolidge v. New Hampshire, 403 U.S. 553, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)

Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)

Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 679 (1969)

Derden v. McNeal, 978 F.2d 1453 (5th Cir. 1992)

Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)

Dunn v. U.S., 307 F.2d 883 (5th Cir 1962)

Geiger v. Cain, (05-0674) ___ F.Supp.2d ___ (E.D.La 11-28-06)

Gomez v. Beto, 462 F.2d 596 (5th Cir. 1972)

Harrison v. Quarterman, 496 F.3d 419, 427-28 (5th Cir. 2007)

Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)

Kirkpatrick v. Whitley, 992 F.2d 491 (5th Cir. 1993)

Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)

Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)

Montejo v. Louisiana, 556 U.S. ___, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009)

Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)

Nealy v. Cabana, 764 F.2d 1173, 1179-80 (5th Cir. 1985)

Nero v. Blackburn, 597 F.2d 991 (5th Cir. 1979)

Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)

State v. Aguillard, 357 So.2d 535 (La. 1978)

State v. Ayo, 750 So.3d 85, 98 (La. App. 5th Cir. 2009)

State v. Barber, 617 So.2d 974 (La. App. 4th Cir. 1993)

State v. Bias, 393 So.2d 677 (La. 1981)

State v. Blanton, 400 So.2d 661 (La. 1981)

State v. Blasio, 720 So.2d 749 (La. App. 4th Cir. 1998)

State v. Bourgeois, 609 So.2d 1003 (La. App. 5th Cir. 1992)

State v. Bright, 776 So.2d 1134 (La. 2000)

State v. Brown, 370 So.2d 547 (La. 1979)

State v. Caldwell, 504 So.2d 853 (La. 1987)

State v. Chopin, 372 So.2d 1222 (La. 1979)

State v. Constantine, 364 So.2d 1011 (La. 1978)

State v. Everidge, 702 So.2d 680 (La. 1997)

State v. Fallon, 290 So.2d 273 (La. 1974)

State v. Finklea, 313 So.2d 224 (La. 1975)

State v. Fisher, 720 So.2d 1179, 1184 (La. 1998)

## CASE LAW (DISCRETIONARY) FOOTNOTES

State v. Flank, 537 So.2d 236 (La. App. 4th Cir. 1988)

State v. Fogan, 609 So.2d 1016 (La. App. 4th Cir. 1992)

State v. Franklin, 353 So.2d 1315 (La. 1977)

State v. Godeaux, 378 So.2d 941 (La. 1980)

State v. Grogan, 723 So.2d 1049 (La. App. 3rd Cir. 1998)

State v. Hogan, 372 So.2d 1211 (La. 1979)

State v. Key, 375 So.2d 1354 (La. 1979)

State v. Lewis, 354 So.2d 566 (La. 1978)

State v. Mareno, 619. So.2d 62 (La. 1993)

State v. Matthews, 366 So.2d 1348 (La. 1978)

State v. McDermitt, 406 So.2d 195 (La. 1981)

State v. Owens, 565 So.2d 1062 (La. App. 5th Cir. 1990)

State v. Parker, 622 So.2d 791 (La. App. 4th Cir. 1993)

State v. Paster, 373 So.2d 170 (La. 1979)

State v. Pounds, 359 So.2d 150 (La. 1978)

State v. Prieur, 277 So.2d 126 (La. 1973)

State v. Raheem, 464 So.2d 293 (La. 1985)

State v. Rey, 351 So.2d 489, 491-92 (La. 1997)

State v. Robinson, 817 So.2d 1131 (La. 2002)

State v. Ruffin, 448 So. 2D 1274 (La. 1984)

State v. Sacco, 527 So.2d 471 (La. App. 5th Cir. 1988)

State v. Schwartz, 354 So.2d 1332 (La 1978)

State v. Short, 665 So.2d 1102 (La. 1992)

State v. Shy, 373 So.2d 145 (La. 1979)

State v. Singleton, 923 So.2d 803 (La. App. 5th Cir. 2006)

State v. Thompson, Sr., 894 So.2d 1268 (La. App.2nd Cir. 2005)

State v. Thorton, 621 So.2d 173 (La. App. 4th Cir 1993)

State v. Washington, 364 So.2d 958 (La. 1978)

State v. Williams, 833 So.2d 497 (La. App. 5th Cir. 2002)

State v. Wilson, 394 So.2d 254 (La. 1981)

State v. Zeno, 742 So.2d 699, 706 (La. App. 5th Cir. 1999)

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)

United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)

United States v. Crews, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980)

United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)

United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)

U.S. v. Anderson, 574 F.2d 1347 (5th Cir. 1978)

U.S. v. Barham, 595 F.2d 231, 243 (5th Cir. 1979)

U.S. v. Corona, 551 F.2d 1386 (5th Cir. 1977)

U.S. v. Drones, 218 F.3d 496 (5th Cir 2000)

## CASE LAW (DISCRETIONARY) FOOTNOTES

U.S. v. Fasano, 577 F.3d 572 (5th Cir. 2009)

U.S. v. Garza, 608 F.2d 659 (5th Cir. 1978)

U.S. v. Glass, 741 F.2d 83 (5th Cir 1984)

U.S. v. Giraldi, 86 F.3d 1368 (5th Cir. 1996)

U.S. v. Herrera, 531 F.2d 788 (5th Cir. 1976)

U.S. v. Mays, 872 F.2d 582 (5th 1989)

U.S. v. Morris, 568 F.2d 396 (5th Cir 1978)

U.S. v. O'Keefe, 128 F.3d 885, 893-94 (5th Cir. 1997)

U.S. v. Restrepo-Granda, 575 F.2d 524 (5th Cir. 1978)

U.S. v. Thomas, 489 F.2d 664, 667-68 (5th Cir. 1973)

U.S. v. Wayman, 510 F.2d 1020 (5th Cir 1975)

White v. Morris, 345 So.2d 461 (La. 1977)

IN THE
## TWENTY-FOURTH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

STATE EX REL. GLENN CHARLES AYO,          DOCKET NO: __07-369__
                    *Petitioner*

**VERSUS**                                DATE FILED: _____

N. BURL CAIN, WARDEN
    LOUISIANA STATE PRISON
                    *Respondent*          **CLERK OF COURT**

# MEMORANDUM IN SUPPORT OF
# APPLICATION FOR POST CONVICTION RELIEF

### CLAIM NO. 1

**DEFENSE COUNSEL'S INEFFECTIVE UNDUE DELAY RETAINING INVESTIGATOR AND NEGLIGENCE TO MOTION FOR CONTINUANCE OF SUPPRESSION HEARING, VIOATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Defendant / Petitioner, Mr. Ayo repeatedly informed both Defense Attorneys, Mrs. Marquita Naquin and Evans Schmidt for eight (8) months prior to suppression hearing August 16, 2007, emphasizing the necessary importance of investigating and securing two (2) alibi witnesses:

> "I need to speak with you and your investigator as my alibi witness is having landlord trouble and may move."

> (Supp. R. 56-65; See Exhibit "A", Attached)

But due to Mr. Schmidt's gross disregard, Counsel did not interview either witness nor retain Defense Investigator Ronnie Montgomery until August 2, 2007, just *days* prior to suppression hearing of August 16, 2007. Both of whom "**never**," not once, conducted a single consultation with either alibi witness.

Petitioner contends, despite hearing previously continued on seven (7) occasions. (R.1-8). Mr. Schmidt incompetently neglected to motion for continuance to interview, evaluate, and secure witness testimony, effectively defending against the alleged (primary) incriminating appearing evidence against Mr. Ayo that would otherwise been suppressed through testimony of material witnesses. Trial Court would grant motion to recess[1].

-2-

---

1 *State v. Hogan*, 372 So.2d 1211, 1214 (La. 1979); La. C.Cr.P. Art. 709.

Thus, resulting in an unreliable and fundamentally unfair outcome, because absent evidence of an alleged crime, jury would have acquitted Mr. Ayo[2]. (See: Exhibit "B", Attached).

## CLAIM NO. 2

**DEFENSE COUNSEL INEFFECTIVELY NEGLEATED TO INVESTIGATE AND SECURE TWO (2) EXCULPATORY WITNESSES FOR TWO (2) SUPPRESSION HEARING(S) AND/OR TRIAL, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND SRGUMENT IN SUPPORT

Defense Counsel's dereliction of duty did not cease at suppression hearing. Three (3) additional months (Eleven (11) full months) elapsed prior to trial November 27 & 28, 2007, without Mr. Schmidt attempting to locate either one of two "local" witnesses. Thus, Petitioner waived further continuance of trial as futile[3].

Had Defense Counsel performed his required duty, alibi witness Theo Brickley would have provided exculpatory testimonial evidence:

> "I picked-up Mr. Ayo walking home at 9:05 am in New Orleans, and he had 'no' zip-up windbreaker or travel bag when dropped off at Dave's apartment between 9:15 and 9:20 am on Cicero St."

> "Mr. Ayo was wearing a white dress shirt and pants. He requested I drop him off at work after changing clothes, but I had an appointment and could not wait."

> (R. 313-315, See: Exhibit "C", Attached).

Mr. Ayo did not know alibi witness "Dave's" last name. However, provided Counsel and alleged Investigator with a detailed map to his front door – the only residence on Cicero St. (R. 185).

Defendant further informed, "The landlord of building also knows Dave's place of employment as he receives direct deposit(s) for rent from Dave's employer." Thus had witness moved, alibi witness Dave was still locatable through his employer and other technological means. (See: Exhibit "B", Attached).

Dave would have offered additional exculpatory testimonial evidence directly refuting State's case in chief:

> "Theo Brickley dropped off Mr. Ayo at my apartment between 9:15 and 9:20 am. In my presence, Mr. Ayo called a cab and changed into work clothes until the cab arrived at 9:28 am."

> "I [Dave] gave Mr. Ayo a broken kitchen knife to strip copper."

---

2  One Ineffective Assistance Memorandum of Law consolidated into Claim No. 5 for convenience of Court.
3  Instanter subpoena day of trial did not rectify eleven (11) months malpractice.

"Also I sold him several travel bag(s), including a dark blue weatherproof zip-up windbreaker before leaving in Bill's cab."

(R. 316-318, See: Exhibit(s) "A" & "B", Attached)

Exculpatory, in so much as, the zip-up windbreaker and work knife are two (2) of the only three (3) pieces of evidence the State introduced at trial, the money is justified. Thus the absence of two (2) exculpatory witnesses excluding (primary) evidence is such a substantial issue which would cause Mr. Ayo's acquittal at trial.

Petitioner contends, Mr. Schmidt's gross incompetence is so evident. Detective Jewell testified:

"The only residence on Cicero Street is this [Dave's] apartment above the body shop."

(R.185).

But Defense Counsel ridiculously alleged, he could not locate the "only" residence on the block to investigate and secure Mr. Ayo's alibi witness.

The Trial Judge and District Attorney further ridiculed Mr. Schmidt on the record:

State:
"[Mr. Brickley] just pled guilty less than a month ago and [Counsel] is saying he couldn't locate him. He's on probation."

Court:
"It's certainly part of the public record."

(R. 336-337).

Petitioner contends, on defense entirely predicated on alibi, Defense Counsel and his alleged Investigator took absolutely no steps to interview nor subpoena any witnesses, subjecting State's case to meaningful adversarial testing.[4] Otherwise with material witnesses, the State could not carry burden of probably cause and (all) alleged evidence suppressed, emerging in an acquittal.[5]

## CLAIM NO. 3

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO INVESTIGATE AND SUBPOENA THIRD WITNESS FOR SUPPRESSION HEARING(S), VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Mr. William (Bill) Barrett was the cab driver taking Mr. Ayo to work, who witnessed an illegal investigative stop out of jurisdiction, an unlawful warrantless exploratory search, and the arrest of Mr

-4-

4   *Harrison v. Quarterman*, 496 F.3d 419, 427-28 (5th Cir. 2007) (citing *Anderson v. Johnson*, 338 F.3d 382, 393-94 (5th Cir. 2003), Counsel's failure to have the only known exculpatory witness testify satisfied *Strickland*s prejudice requirement.
5   One Ineffective Assistance Memorandum of Law consolidated into Claim No. 5

Ayo only after a highly suggestive show-up identification. (R. 101, 115, 207, 256; See: Exhibit "D", Attached).

Petitioner contends, Defense Counsel was aware that Mr. Barrett worked locally for service cab company. That police report(s) contain both his home and work address, cell phone number, and that his testimonial evidence would directly refute the State's case in chief. But Mr. Schmidt took absolutely no steps to investigate or subpoena and secure testimony of three defense witnesses[6], prejudicing Mr. Ayo's trial with introduction of unlawfully seized evidence[7]. (See: Exhibit "E", Attached).

## CLAIM NO. 4

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA DEFENSE INVESTIGATOR AS WITNESS, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Defense Investigator Ronnie Montgomery was retain to locate three (3) witnesses for suppression hearing(s) and trial. Additionally, Mr. Montgomery was to drive the route traveled by defendant three (3x) times from New Orleans to "Dave's" apartment, establishing time frame of Mr. Ayo's alibi and inability to commit offense in question. (R. 174; See: Exhibit(s) "F" & "G", attached).

Petitioner contends, Mr. Schmidt ineffectively failed to subpoena Defense Investigator as a witness. Further attempting to present an alibi defense without a single corroborating witness that these individual(s) even exist, but simply could not be located[8]. Thus, constituting an inadequate pretrial investigation so serious, Mr. Ayo was "coerced" to testify at trial and his bare testimony left him without any defense[9].

## CLAIM NO. 5

**DEFENSE COUNSEL INEFFECTIVELY, WITH A DELIBERATE INDIFFERENCE, REFUSED TO SUBMIT EXCULPATORY EVIDENCE, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Each day Defense Counsel neglected to investigate and secure Mr. Ayo's alibi witness[es] rose the likely probability of irreparable harm, forever losing contact with exculpatory witnesses as repeatedly emphasized in **numerous** (over ten (10)) correspondence to Mrs. Naquin and Mr. Schmidt. (See: Exhibit(s) "A", "B" & "F", Attached).

---

6  ***Nealy v. Cabana***, 764 F.2d 1173, 1179-80 (5th Cir. 1985). See also ***Code v. Montgomery***, 799 F.2d 1481, 1484-85 (11th Cir. 1986), Attorney compounds error by failing to move for continuance.
7  One Ineffective Assistance Memorandum of Law consolidated into Claim No. 5
8  ***Code v. Montgomery***, 799 F.2d 1481, 1484 (11th Cir. 1986), Counsel's failure to present alibi defense deprived him of a fundamentally fair trial.
9  One Ineffective Assistance Memorandum of Law consolidated into Claim No. 5

On March 5, 2007, Defendant made contact with Theo Brickley. Who in a sworn affidavit, attest to expected testimony. (See: Exhibit "C", Attached).

Petitioner contends, Defense Counsel willfully committed malpractice, blatantly refusing to submit exculpatory evidence (affidavit), evidence material to probably cause and suppression hearing(s), and, outrcome of trial. Mr. Schmidt's refusal conclusively demonstrates, he acted in collusion with State to further the prosecution. Counsel's refusal to defend Mr. Ayo in ineffective assistance of the first magnitude.

The United States Supreme Court in *Strickland v. Washington* developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel[10]. The Defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's repeated deficiencies in (over 60 claim(s)) of "lack" of performance is evident of his collusion with the Prosecution, and, judicial recourses would best be served by simply asking Mr. Schmidt in an evidentiary hearing, "Exactly what did you do to defend your client?"

Nevertheless, may it please the Court; Counsel was repeatedly informed that Mr. Brickley and Dave's testimony directly refuted the State's case in chief, providing Mr. Ayo without means to commit the crime in question.

Additionally Counsel was repeatedly warned for eleven (11) month(s) that Mr. Ayo's alibi witnesses must be investigated and secured prior to hearing(s) and trial. Mr. Schmidt's contention that "he could not locate them" is totally unpersuasive as public record(s) conclusively demonstrate Theo Brickley is on supervised probation. (R. 336-337).

The record is totally devoid of Counsel attempting to subpoena anyone, including Defense Investigator, for two (2) separate motion to suppress hearing(s). Mr. Schmidt's inadequate pretrial investigation fell below an objective standard of reasonable professional norms, not functioning as counsel guaranteed Mr. Ayo by the Sixth Amendment. (See: Exhibit "E", Attached).

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Counsel's malpractice of "not" investigating nor calling any defense witnesses. Moreover, refusing to introduce exculpatory

-6-

10 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

evidence directly refuting the State's case in chief, undermine confidence in the outcome of Mr. Ayo's trial.

Had Defense Counsel channeled his pretrial investigation, Mr. Brickley and Dave's testimony would have established Defendant's alibi, and the work knife and newly purchased windbreaker been justified and suppressed. The State could not have carried an erroneous burden of proof, and jury acquitted an innocent construction worker.

## CLAIM NO. 6

### DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES OR OBJECT TO KNOWN PERJURED TESTIMONY, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S)[11].

### FACTS AND ARGUMENT IN SUPPORT

The use of testimony known by prosecuting authorities to be false without correction in order to procure conviction where Mr. Ayo's life or liberty depends, violated due process of law to a fair trial[12].

The grant of a new trial based on a *Napue* violation, however, is only proper if: (1) the statement at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material.

In the case sub judice, the State's entire case hinged on whether the officers had probable cause to arrest and search Mr. Ayo out of their jurisdiction.

In satisfying the **Three-Prong** test of *Napue*: the arresting officer, Deputy Simoneaux testified that Detective Jewell advised on the radio that a suspect got into a "service cab" and had a knife protruding from his back pocket. He was trying to catch up with the cab and lost sight of the vehicle as [we] entered the Orleans Parish line. (R. 98-100, 235-237; See: Exhibit "H", Attached).

In showing testimony false: (1) Detective Jewell controvertedly testified that he observed a white male talking to someone outside an apartment several blocks away from crime scene, but did not know if this was the description and he drove off. He didn't see the cab nor the guy get into the vehicle.

After the first investigative stop produced negative results. He return to the area, construction workers said the person standing outside his apartment got into a cab and went "that way" - no broadcast of observing a weapon, the name of cab company, nor any hot pursuit to arrest Mr. Ayo in Orleans Parish was made by Detective Jewell[13]. (R. 162-164, 173-174; See: Exhibit "I", Attached).

-7-

---

11 The Fifth Circuit did not reach merit(s) of *Napue* claim(s) in *State v. Ayo*, 750 So.3d 85, 98 (La. App. 5th Cir. 2009) (citing *State v. Singleton*, 923 So.2d 803 (La. App. 5th Cir. 2006)), Due to counsel's failure to object.
12 *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *U.S. v. O'Keefe*, 128 F.3d 885, 893-94 (5th Cir. 1997).
13 The construction workers possess no knowledge of any crime.

In showing Prosecutor knew it false: (2) the State introduce (CFS) Dispatch Transcripts from Sheriff's Office into evidence, aware of her own evidence, knowing that "**no**" such broadcast exist of Detective Jewell alerting officers that he observed a weapon nor chasing Mr. Ayo or cab in hot pursuit across the parish line. (R. 153; State Exhibit – 3).

Petitioner contends, in the case of "probable cause" for issuance of an arrest warrant, intentional misrepresentation constitute fraud on the Court and impermissible overreaching by the government designed to deceive the Magistrate[14].

In showing statements were material: (3) absent the perjured testimonial evidence, the truthful innocent every day behavior of Mr. Ayo standing outside apartment with a travel bag waiting for cab to drive him to work. (R. 162, 173-174, 188). In probable cause and suppression hearing(s), the Prosecutor could not carry burden of proof showing particularize facts and circumstances known to the arresting officer were sufficient to justify a man of ordinary caution to believe Mr. Ayo committed a crime[15], and that "officers were in close or hot pursuit of '*person to be arrested*'... may enter another parish." La. C.Cr.P. Art. 213(3) & (4).

Petitioner contends, the erroneous broadcast of a veteran (Lieutenant Detective) observing Mr. Ayo with a knife several blocks from crime, pursuing and "losing sight of vehicle as we entered the Orleans Parish line." (R. 98-100). Did in fact [frand]ulently influence an affect the issue under determination: Whether probable cause to arrest exist, an "illegal" arrest occurred, and an illegal search and seizure out of jurisdiction took place. Otherwise corrupt*ing* the truth-seeking function of the trial process, as (all) illegally seized evidence would have been suppressed.

But despite Defense Counsel in possession of the dispatch transcript prior to hearing(s), the State introducing the same report into evidence, and reinforcing the deception through her misleading question(s)[16] (R. 153; See: Exhibit "A", Attached). Mr. Schmidt took absolutely no steps to impeach perjurious testimony or object, exposing fraud to judge during suppression hearing(s) or before jurors at trial[17]. Thus Mr. Ayo remains prejudiced with an illegal detention and unlawful exploratory search, absent probable cause, with its fruits from the poisonous tree unconstitutionally introduced as material evidence against him[18]. (See: Exhibit "J", Attached).

---

14 *State v. Rey*, 351 So.2d 489, 491-92 (La. 1997) (citing *U.S. v. Thomas*, 489 F.2d 664, 667-68 (5th Cir. 1973)).
15 *State v. Fisher*, 720 So.2d 1179, 1184 (La. 1998)
16 *U.S. v. Barham*, 595 F.2d 231, 243 (5th Cir. 1979), requiring a new trial.
17 *State v. Robinson*, 817 So.2d 1131, 1135 (La. 2002), cross-examination is the primary means by which to test the believability and truthfulness of testimony and has traditionally been used to impeach or discredit witnesses
18 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 9

## CLAIM NO. 7

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES OR OBJECT TO KNOWN PERJURED TESTIMONY, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

In satisfying the **Three-Prong** test of *Napue, supra*: Detective Jewell testified that he informed the 911 Dispatcher that he saw a knife in Mr. Ayo's back pocket. (R. 186-187; See Exhibit "K", Attached).

In showing testimony false: (1) Detective Jewell himself controvertedly testified that he met with the victim and got a better description[19]. Then instructed the victim, Mr. DeBroy to call 911 while he canvassed the area. (R. 157-158, 274). In fact, Sheriff's Office record(s) conclusively demonstrate that Detective Jewell first observed Mr. Ayo standing outside his apartment over sixteen (16) minutes "**after**" the 911 call was placed by the victim – not *before* the 911 call. (R. 161-163; See: Exhibit "K", Attached).

Assuming Arguendo the State was referring to Detective Jewell informing the Sheriff's Office and other officers that "he observed Mr. Ayo with a knife." The dispatch transcript is further devoid of any such transmission by Detective Jewell. (See: Exhibit "I", Attached).

In showing Prosecutor knew it false: (2) Mrs. Shannon Swaim, the Prosecutor concede meeting with Detective Jewell in her office to play and listen to both the 911 and Sheriff's Office dispatch tape(s). Introducing the same transcript(s) into evidence. (R. 152-154, 186-187; State Exhibit – 3 & 4).

Petitioner contends, the Prosecutor did not simply allow the false evidence go uncorrected, but elicit and reinforced the deception through her misleading question(s) knowing "**no**" such material evidence exist between the 911 operator nor Sheriff's Office dispatcher with Detective Jewell observing Mr. Ayo with a weapon. The 911 transcript, (State Exhibit – 4) is totally devoid of any such transmission by Detective Jewell – a textbook case of the Prosecutor in collusion with witness[es] to offer known perjured testimony and commit fraud on Court[20].

In showing the statements were material: (3) the State first procured this [fraud]ulent testimony at probably cause and suppression hearing(s) from Deputy Simoneaux to justify the unlawful detention out of jurisdiction and illegal search and seizure of evidence. (See: Claim No. 6). Then knowingly capitalized on perjury at trial to prejudice juries mind that a credible eyewitness (Lieutenant Detective) observed Mr. Ayo near the scene with the same type of weapon utilized by perpetrator to commit the

---

19 Yet Detective Jewell alleged that he drove past Defendant with a knife in his pocket because "[He] didn't know if this was the description." (R. 162-163).
20 *U.S. x Barham*, 595 F.2d 231, 243 (5th Cir. 1979), requiring a new trial.

crime at bar. Then chased him across parish line(s) as a result of the knife – undoubtedly "material" fraud on Court and fact finders[21]. (R. 98-100, 235-237; Compare Exhibit(s) "E", "F" and "G", Attached).

Petitioner contends, but Counsel did nothing to defend Mr. Ayo's Constitutional right(s). Mr. Schmidt simply refused to cross-examine and impeach witness perjured testimony with 911 and dispatch transcript(s) in evidence, exposing fraud to Judge and jury[22]. (R. 188; See: Exhibit "J", Attached).

## CLAIM NO. 8

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES OR OBJECT TO KNOWN PERJURED TESTIMONY, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

In satisfying the **Three-Prong** false testimony test of *Napue, supra*: Deputy McCoy testified that when he pulled into the Spur Gas Station in New Orleans. The victim was with him in patrol car and Mr. DeBroy said "Yes, that's him." Immediately identifying Mr. Ayo as the perpetrator from the patrol car. (R. 114-115, 204; See: Exhibit "L", Attached).

In showing testimony false: (1) Mr. DeBroy is the victim, the State's "chief" witness. Who controvertedly testified, "when I pulled up they asked me if I could identify the man. I said, 'no.' Let me go look at him first because I got out the car and I was a little distance away." (R. 85; See: Exhibit "M", Attached).

In showing Prosecutor knew it false: (2) the decision of whether to proceed with prosecuting case hinged on identification testimony. Unlike Defense Counsel, the record is clear that the Prosecutor met with her witnesses and was aware of Deputy McCoy's expected testimony. (R. 186). In this instance, reinforcing the deception with misleading question(s)[23].

In showing statements were material: (3) under Louisiana law, Art. 213(3) & (4) requires officials to be "in pursuit of *person to be arrested* ... may enter another parish." But Jefferson officials admitted illegally detaining Mr. Ayo in Orleans Parish pending a show-up identification to be conducted out of jurisdiction. (R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Incumbent on the State is to negate any reasonable probability of [mis]identification and carry burden of proving identity of Defendant as the perpetrator,Thus Deputy McCoy's perjured testimony

---

21 Defendant does not argue petty inconsistencies, but cumulative false testimony by "three (3)" officers of non existing transmission(s). Thus, establishing known perjury claim(s).
22 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 9
23 *U.S. v. Barham*, 595 F.2d 231, 243 (5th Cir. 1979), requiring a new trial.

alleging that from the moment they observed Mr. Ayo from the patrol car. The victim immediately shouted "Yes, that's him", is nothing less than material fraud in probable cause to arrest hearing[24].

In suppression hearing, truthfully testifying of the illegal detention and exploratory search and seizure out of jurisdiction. (All) evidence would have been suppressed, and jury acquitted Mr. Ayo in trial[25].

Petitioner contends, to the extent that the perjury was known to Mr. Schmidt and he failed to ask any question(s) about the false testimony during cross-examination, only serves as an additional basis for relief under Mr. Ayo's ineffective assistance of counsel claim(s)[26], [27]. (See: Exhibit "J", Attached).

### CLAIM NO. 9

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES OR OBJECT TO KNOWN PERJURED TESTIMONY, VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

#### FACTS AND ARGUMENT IN SUPPORT

Encompassed in proving the element(s) of an offense is the necessity of proving the identity of Defendant as the perpetrator, in order for State to carry its burden of proof[28].

In satisfying the **Three-Prong** false testimony test of *Napue, supra*: the victim did "**not**" identify Mr. Ayo in open-court as the perpetrator at suppression hearing just eight (8) months after he got a good look at his robber. (R. 82-83, 96).

On the second day of trial, the Judge ordered bailiff "clear the hall to return defendant from jail." The Assistant District Attorney Shannon Swain, walked the victim down a long hall and both strategically positioned themselves by the jail door procuring a "known" false identification of Defendant. Then Mr. DeBroy took the stand five (5) minutes later [fraud]ulently identifying Mr. Ayo, an innocent construction worker as the perpetrator. (R. 279-281).

In showing testimony false: (1) the victim previously did not make an in-court identification until "after" the highly illegal obstruction of justice and suggestive viewing at jail door.

In showing Prosecutor knew it false: (2) the Assistant District Attorney "knew" the victim could not make an in-court identification. So, she brought Mr. DeBroy in the hall despite Court order, regard for ethics, or performance of her every day job. Further, directing him 100 feet down the hall to all

-11-

24 **United States v. Crews**, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention cannot be introduced
25 **State v. Bourgeois**, 609 So.2d 1003, 1004 (La. App. 5th Cir. 1992), State lacked reasonable cause to search defendant standing in parking lot showing no sign of criminal activity. See also **Dunaway v. New York**, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979), police violated the Fourth and Fourteenth Amendments when, without probable cause, they seized Petitioner for interrogation.
26 **Brogan v. United States**, 522 U.S. 398, 118 S.Ct. 805, 809-10, 139 L.Ed.2d 830 (1998).
27 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 9
28 **State v. Zeno**, 742 So.2d 699, 706 (La. App. 5th Cir. 1999).

places – the jail door. Then  Prosecutor boldly capitalized on the victim not identifying Mr. Ayo at the suppression hearing, but could id him today at trial. (R. 280-281). Thus demonstrating beyond any doubt, the State knew testimonial evidence was the product of her falsehood[29].

But the greatest evidence of the State acting in collusion with her witnesses to offer perjured testimony, is the fact an excused juror wrote the Judge a note acknowledging that Mr. DeBroy previously could not identify Mr. Ayo as the perpetrator, but would do so at trial. Thus the same malfeasance could only be achieved through the Prosecution in secret agreement with her witness. (See: Exhibit "N", Attached).

In showing statements were material: (3) psychological studies on expert testimony surrounding juror misperception on eyewitness identification concluded that seventy-two (72) percent of jurors voted for conviction upon eyewitness "in-court" identification. 32 A.M. Crim.L.Rev., at 1023-24:

> "[E]yewitness testimony is likely to be believed by jurors ... there is almost nothing more convincing than a live human being who takes the stand, points a finger at the defendant, and says 'that's the one!'"

EYEWITNESS TESTIMONY at 19, Professor E. Loftus (1979).

Thus absent the material fraud of positive in-court identification, seventy-two (72) percent of jury would have acquitted Mr. Ayo in trial – a classic case of an over zealous Assistant District Attorney![30]

Petitioner contends, he abrupt the Court, in objection, bringing the malfeasance to the Court's attention. However, the Trial Judge very suspiciously, as if part of the corruption, strictly prohibit Mr. Ayo from making a record but through his attorney. (R. 296).

Defendant wrote Mr. Schmidt trial note(s), but Counsel would not bring the highly suggestive viewing to the attention of the Court. Then, in the presence of jury, Mr. Ayo shook Defense Counsel's whole body like two keystone comics, but Mr. Schmidt grossly refused to object or move for mistrial. (See: Exhibit "G", Attached).

The United States Supreme Court in *Strickland v. Washington*, developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel[31]. The Defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

29 *U.S. v. Barham*, 595 F.2d 231, 243 (5ᵗʰ Cir. 1979), prosecutor reinforced the deception through her misleading question(s), required a new trial.
30 *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5ᵗʰ Cir. 1993), Defendant met his burden of proving actual prejudice, such serious corruption of the truth-seeking process would strike at the confidence of the conviction.
31 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> [And] That there is reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been
> different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel possessed the 911 and dispatch transcripts prior to suppression hearing(s). Plus, Mr. Ayo repeatedly informed counsel of the truth and the fact all three (3) officers testimony conflicted and were committing perjury, testifying of several "non" existing radio broadcast demonstrative by the report(s) in his hand.

Mr. Schmidt, however, blatantly refused to cross-examine and/or impeach these witnesses in order to expose the truth and suppress "illegally" seized evidence. Thus falling below an objective standard of reasonable professional norms, not functioning as counsel guaranteed Mr. Ayo by the Sixth Amendment.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, had Defense Counsel performed his required duty and not let cumulative perjured testimony go uncorrected. Mr. Schmidt would have established the "investigative" stop out of jurisdiction is illegal[32]; the exploratory search that ensued unconstitutional, and the work knife, money, windbreaker, and pretrial identification, (all) evidence from unlawful detention suppressed[33]. With no alleged evidence going to jury, including unduly suggestive in-court identification. The State could not have carried an erroneous burden of proof and jury acquitted Mr. Ayo.

## CLAIM NO. 10

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO IMPROPER SUGGESTIVE IN-COURT IDENTIFICATION, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The victim did "not" identify Defendant as the perpetrator just eight (8) months after the incident at the suppression hearing August 16, 2007. So, at trial, prior to attempting an in-court identification, the State displayed a (single) picture of Mr. Ayo's booking photo, prejudicially implying: "Is this a picture of the person who robbed you?" (R. 279; State Exhibit – 13).

Petitioner contends, the single picture was displayed prior to procuring a proper in-court identification, laying a foundation for the introduction of evidence[34]. Only after the material evidence was suggestively displayed, focusing Mr. DeBroy's attention solely on suspect[35]. The victim identified

-13-

32. La. C.Cr.P. Art. 213(3) & (4).

33. *State v. Moreau*, 619 So.2d 62, 65-66 (La. 1993), arresting officer exceeded scope of investigatory stop when they took defendant into custody; *State v. Raffia*, 448 So.2d 1274, 1279-80 (La. 1984), evidence relied upon must be suppressed as fruits of an unlawful arrest.

34. *State v. Robinson*, 386 So.2d 1374, 1377 (La. 1980), photo array of six (6) individuals was not unduly suggestive.

35. *State v. Bright*, 776 So.2d 1134, 1145 (La. 2000), the identification procedure is suggestive if it unduly focuses a witness attention on the suspect; *State v. Flank*, 537 So.2d 236, 239 (La. App. 4th Cir. 1988), no picture can be singled out.

Mr. Ayo, an innocent construction worker on his way to work as the perpetrator.

When the Prosecutor improperly introduced "material" evidence, Defense Counsel ineffectively failed to object or motion for mistrial, neglecting to defend his client's constitutional right(s)[36].

## CLAIM NO. 11

### DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA MATERIAL EVIDENCE OF ILLEGAL INVESTIGATIVE STOP AND LAWLESS POLICE BRUTALITY, VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Jefferson Parish Sheriff's Deputy Paul Simoneaux testified that he was conducting surveillance, "watching" the suspect in Orleans Parish. Then pulled into the service station and attempted to speak with the pedestrian. (R. 99, 213, 237).

When Defendant question the officer's erratic behavior and unlawful jurisdiction, decline to answer his question(s) and attempted to walk away (R. 322-323). Deputy Simoneaux hated the exercise of Mr. Ayo's constitutional right(s), grabbed hold of Defendant's arm, wrestled him over the hood of car, beat him down and threatened to shoot Mr. Ayo with weapons drawn. If he did not submit to their investigative authority. (R. 109-110, 204-205, 323, 354-356).

Then handcuffed Defendant, placed him in the back of patrol car and:

> "I notified Deputy McCoy to bring the victim to identify the suspect 'I stopped to see if this could be the perpetrator'" (R. 101, 116, 207, 256).

(See: Exhibit(s) "D" & "O", Attached).

Petitioner contends, the mere fact that police approach a citizen and address him does not compel him to respond to their inquires or comply with their request. Legally, nothing prevents his choosing not to answer and walk away[37].

Mr. Ayo further exercised his clear right to resist the unlawful detention, and used only so much force as was necessary to repel the officer's aggression[38]. But Defense Counsel grossly refused to subpoena the mobile video system (MVS) from the patrol car or service station video surveillance tapes, conclusively demonstrating Jefferson Parish officials were "not" in hot pursuit into another parish, but conducted an illegal (investigative) stop out of their jurisdiction, coupled with lawless police

-14-

---

36 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 12.
37 *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *State v. Sky*, 373 So.2d 145, 147 (La. 1979).
38 *White v. Morris*, 345 So.2d 461, 466-67 (La. 1977).

misconduct, an unconstitutional exploratory search, and highly suggestive show-up identification took

place – beating and handcuffing Mr. Ayo in presence of victim[39] [40]. (See: Exhibit(s) "A" & "F",

Attached).

## CLAIM NO. 12

### DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNDULY SUGGESTIVE SHOW-UP IDENTIFICATION, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Deputy Simoneaux testified that the victim was in the passenger side of Deputy McCoy's patrol

car when they pulled into the service station. He provided the following account of the show-up

identification procedure utilized:

> "His windshield would be facing directly at the suspect while [we] were
> wrestling with him on the front-hood of car. After he was handcuffed, he
> stood up. He faced directly towards Deputy McCoy's unit."
> (R. 109-110).

Mr. DeBroy, the victim did "not" identify Mr. Ayo as the perpetrator at that time. (R. 85).

However, unequivocally testified that upon his viewing:

> "I was thinking they were arresting someone for something."
> (R. 86, 289-290).

The United States Supreme Court in *Manson v. Brathwaite*[41], developed a **Two-Prong Test** to

evaluate claim(s) of suggestive identification procedures:

> "Defendant must prove that the identification itself was suggestive";

> "And that there was a substantial likelihood of misidentification as a result
> of the procedure."

In satisfying the **First-Prong** of *Manson*: Petitioner contends, under the totality of

circumstances in which the victim was transported to another parish to view a dramatic exhibition of

"lawless police misconduct," instead of simply returning Mr. Ayo to the non-hostile crime scene[42]. The

show-up identification was undoubtedly suggestive.

-15-

---

39 *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), hostility of seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment, and common rumor or report, suspicion, or even strong reason to suspect was not adequate to support an arrest. *Davis v. Mississippi*, 394 U.S. 721, 726-27, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 679 (1969).

40 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 12

41 *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)

42 Officials knew "investigative" detention out of jurisdiction was illegal and Mr. Ayo could not be transported, absent arrest based on probable cause. See *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention cannot be introduced.

But Defense Counsel neglected to research and argue the law(s) made and provided, challenging such an unorthodox viewing procedure. (See: Exhibit "J", Attached).

In satisfying the **Second-Prong** of *Manson*: Petitioner contends, the victim concedes "[He] was thinking they were arresting somebody." Coupled with the fact, Mr. DeBroy sat attentively in police car listening to Mr. Ayo's criminal history with a crowd of deputies pointing, cheering, and screaming like a tailgate party: "That's him. That's him." (R. 86, 288-290, 324).

Additionally, the fact Mr. Ayo is (44 years old [14 years older], 240 pounds [90 lbs heavier] , husky, with **very severe cuts and bruising about his face**).

Distinguishably different than Mr. DeBroy's description of perpetrator (30 years old, 150 pounds, slim, "good looking man"). (R. 284; State Exhibit – 4).

Further, not identifying Mr. Ayo in-court at suppression hearing. (R. 96; State's Exhibit – 13).

Petitioner contends, due to the magnitude of the victim's [in]accuracy from initial description and degree of [un]certainty at pretrial hearing. Mr. DeBroy is in fact mistaken and his decision making prejudiced by the lawless police misconduct and highly suggestive procedure utilized.

But the record is clear, Defense Counsel grossly neglected to argue the prerequisite test of *Manson, supra,* nor any other compatible authority. Thus had Mr. Schmidt performed his required duty, the trial court would have found that there exist not just a substantial likelihood, but there was a [mis]identification of an innocent construction worker. (R. 325-326; See: Exhibit "J", Attached).

The United States Supreme Court in *Strickland v. Washington*[43], developed a **Two-Prong Test** to evaluate claim(s) of ineffective assistance of counsel. Defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, no justification exist for Defense Counsel's repeated failure to defend Mr. Ayo. (1) First his refusal to subpoena material evidence; (2) Then not arguing a single authority when, as a matter of law, show-up identification obtained during an illegal detention must be suppressed; (3) Neglecting to challenge officer's wrestling down and handcuffing Defendant "during" show-up identification; (4) Then grossly refusing to object or move for mistrial when Prosecutor brought victim to jail door for unduly suggestive viewing; and (5) Further failing to object to improper introduction of evidence. All fell below an objective standard of

-16-

---

43 *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

reasonable professional norms, constituting deficient performance of the first magnitude.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Defense Counsel's malpractice of not challenging one, but two (2) separate unduly suggestive identification(s), nor objecting to the highly improper introduction of material evidence is so prejudicial to a fair trial[44]

But for Mr. Schmidt's unprofessional error(s), the suggestive pretrial and in-court identification(s) would have been suppressed, the State unable to carry erroneous burden of proof, and jury would have acquitted Mr. Ayo.

## CLAIM NO. 13

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO CHALLENGE SUFFICIENCY OF EVIDENCE TO ARREST, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Mr. DeBroy, the victim of a robbery described the perpetrator as:

> "A white male. Clean shaven, (good looking man), 150 lbs., slim, black hair, wearing a blue or black 'pullover' hooded sweatshirt."
> (R. 82-83, 158, 283-286; State Exhibit – 3).

Several blocks away Lieutenant Detective Daniel Jewell, Jr. observed:

> "A white male, 'with two (2) black eyes', cuts and severe scabbing and bruising about his face [not the good looking man to (B.O.L.O.) be on lookout], 240 lbs., husky, brown hair, wearing a lime green t-shirt and carrying a travel bag."
> (R. 176-177, 320-321, 326, 364-367, State Exhibit – 13).

But Detective Jewell declined to "investigate" him further because he did not resemble the description and drove off.

Then a call came in that Deputy Simoneaux had a man "*detained*" fitting the description of suspect. (R. 158-162, 235-236). But when the victim did not identify the Mexican man detained for a show-up identification. Detective Jewell headed back to Cicero Street where he seen the white male in green shirt.

Upon arrival the guy was gone. However, construction workers with no knowledge of crime several blocks away, said that the guy standing outside his apartment:

> "He got into a blue cab and headed 'that way.'"
> (R. 162-163).

Petitioner contends, probable cause for a full custodian arrest is more than "reasonable suspicion

-17-

44 *State v. Knight*, 776 So.2d 1134, 1135 (La. 2000).

for an investigatory stop." The evidence was insufficient to establish Mr. Ayo was fleeing to avoid apprehension as would allow officers reasonable suspicion that Defendant committed a crime[45].

The only facts known to Jefferson Parish Officials when they entered Orleans Parish looking to "investigate" this possible suspect:

1.) That a white male was observed outside an apartment several blocks away from the incident, but did not match description for the initial stop by a veteran Lieutenant Detective. (R. 162).

2.) The man was not doing anything suspicious or illegal. He was just talking to someone on the landing of an apartment. (R. 174, 188).

3.) And an untested source, construction workers in the area with "*no*" incriminating information, informed Detective Jewell that the man hired a cab and went "that way". (R. 163).

This innocent everyday behavior did not provide officers with the requisite "reasonable cause" to believe Mr. Ayo committed a crime warranting immediate arrest[46].

Nothing changed from the time Detective Jewell initially saw Mr. Ayo standing outside his apartment until the time it was realized that the man Deputy Simoneaux stopped and detained was not the perpetrator. Officials had not heard nor seen anything more to give them grounds to believe Mr. Ayo acted unlawfully[47].

Petitioner contends, but Defense Counsel acting in collusion with prosecution, ineffectively stipulated this innocent everyday behavior warranted probable cause to arrest. (R. 125). Neglecting to impeach witnesses with conflicting report(s) and perjured testimony, grossly failing to argue a single, not one authority on insufficient evidence to arrest[48]. (See: Exhibit "J", Attached).

## CLAIM NO. 14

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE A SINGLE SUPPRESSION LAW ON SUFFICIENCY OF EVIDENCE FOR HOT PURSUIT TO ARREST IN ANOTHER PARISH, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, Defense Counsel neglected to impeach false testimony of "non" existing transmission(s) of observing Mr. Ayo with a knife and chasing, "but lost sight of him just as [we]

-18-

45 *State v. Fisher*, 720 So.2d 1179, 1183 (1998).
46 *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 70 L.Ed.2d 527 (1983), *Miller v. East Baton Rouge Sheriff's Dept.*, 511 So.2d 446, 454 (La. 1987), arresting officer failed to "act as a man of average caution" by arresting a suspect based "uncritically and almost exclusively on ... an unworthy source of information." *State v. Ruffin*, 448 So.2d 1274, 1278 (La. 1984).
47 *Beck v. Ohio*, 379 U.S. 89, 96-97, 85 S.Ct. 223, 228-29, 13 L.Ed.2d 142 (1964), common rumor or report, suspicion, or even strong reason to suspect was not adequate to support arrest. (citation omitted).
48 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21)

entered the Orleans Parish line." (See: Claim(s) No. 6 & 7). Thus, absent perjured testimony of an erroneous hot pursuit. The following fact(s) remain:

1.) Lieutenant Detective Jewell, a well-seasoned officer observed a white male outside his apartment. He was not doing anything suspicious or illegal. (R. 174, 188).

2.) He did not match the description for a stop and he drove off. (R. 162).

3.) And construction workers with "no" incriminating information said the man hired a cab and went "that way." (R. 163).

The information known to these officers did not establish probable cause for a warrantless arrest. La. C.Cr.P. Art. 213, state in pertinent part:

> A peace officer may, without a warrant, arrest a person when:

>> (3) A peace officer has reasonable cause to believe that the person to be arrested has committed an offense ...,

>> (4) A peace officer in close pursuit *'of a person to be arrested'* ... may enter another parish in the state and make the arrest*.

Petitioner contends, the case sub judice hinge on all four corners of the record with an identical scenario before the Louisiana Supreme Court. In which the arresting agents who were only informed by [Detective Jewell] to watch car and see what they could learn from such surveillance, did not have reasonable grounds to suspect Mr. Ayo of criminal activity to warrant stop of Defendant because of ongoing investigation[50].

But Defense Counsel neglected to impeach witnesses with conflicting report(s) and perjured testimony of a "non" existing hot pursuit into Orleans Parish, not arguing a single authority in support of Mr. Ayo's plausible defense[51]. (See: Exhibit "J", Attached).

---

49 *State v. Thompson, Sr.*, 894 So.2d 1268, 1272 (La. App 2nd Cir. 2005), the gang was spotted at an apartment complex loading the stolen money and a large cache of guns into a mini van. The Shreveport Police spotted and began trailing a green van matching the alert. As they entered Bossier Parish, the officer pulled over the van; *State v. Owens*, 565 So.2d 1062 (La. App. 5th Cir. 1990).

50 *State v. Blanton*, 400 So.2d 661, 663 (La. 1981), finding no deficiencies in the automobile or his conduct, agents could not make an Art. 215.1 investigatory stop.

51 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21

## CLAIM NO. 15

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ILLEGAL "INVESTIGATIVE" STOP OUT OF JURISDICTION, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

None of the officers involved in this case had reason to believe Defendant committed a crime to effectuate Mr. Ayo's immediate arrest in Orleans Parish[52]. Deputy Simoneaux unequivocally testified that when he observed the cab in the Spur Station:

"He stopped and began to watch."

(R. 99, 237, 254-255).

Then he wrestled down, handcuffed, and detained Mr. Ayo, notifying Deputy McCoy to:

"Bring the victim to identify the subject that 'I stopped to see if' this could
be the perpetrator."[53]
(R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Petitioner contends, Jefferson Parish Deputies admittedly were not in hot pursuit of this cab to immediately arrest its occupant(s). But "watched" and conducted a show-up (investigative) detention and exploratory search out of jurisdiction[54]. Detective Jewell, however, insubordinately broadcast "slow [New Orleans Police Department] N.O.P.D. Down." (See: Exhibit "I", Attached).

Though Jefferson Parish officials were without statutory authority to conduct independent investigatory stop(s) in another jurisdiction, Defense Counsel grossly neglected to impeach the officers admission of an illegal investigative detention in Orleans Parish nor argue a single, not one statutory authority defending Mr. Ayo's unconstitutional seizure[55]. (see Exhibit "J", Attached).

## CLAIM NO. 16

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE LACK OF STATUTORY AUTHORITY FOR PRIVATE CITIZEN TO EXECUTE "INVESTIGATIVE" STOP(S), VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The State diligently argued that Deputy Simoneaux was acting as a private citizen when he arrested Mr. Ayo in Orleans Parish. (R. 107). Deputy Simoneaux, however, concede not arresting Defendant immediately upon first encounter as the prerequisite of a hot pursuit out of jurisdiction in Article 213. But testified that "he stopped and began to watch." In other words, conducted an

-20-

---

52 *State v. Chopin, Jr.*, 372 So.2d 1222, 1224-25 (La. 1977), police did not have right to make investigatory stop.
53 Properly defined in Merriam Webster's Collegiate Dictionary, Eleventh Edition: *IF* \ 1: in the event that. 2: whether <ask>. 5: and perhaps not even.
54 *Brown v. Illinois*, 442 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the impropriety of the arrest was obvious. The Detectives embarked upon this expedition for evidence in hopes that something might turn up.
55 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21

investigation. Then after illegally detaining Mr. Ayo out of his lawful jurisdiction.

> "He notified Deputy McCoy to bring the victim to identify the subject that
> 'I stopped to see if this could be' the perpetrator.
> (R. 101, 116, 207, 256; See: Exhibit "D", Attacked).

Petitioner contends, accepting the State's argument as true. This "citizen" deputy made a forceful (investigative) detention for the purpose conducting a show-up identification process, not arresting Mr. Ayo until "after" the victim viewed his suspect. (R. 116, 207).

Despite the State's argument, an investigative stop by a private citizen is "illegal" in its entirety[56]. Defense Counsel ineffectively neglected to argue against the State's erroneous contention when Louisiana jurisprudence contains no such law. Adequately defending Mr. Ayo's constitutional right(s) to be free from intrusive encounters and illegal detention[57]. (See: Exhibit "J", Attached).

### CLAIM NO. 17

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO CHALLENGE INSUFFICIENCY OF PROBABLE CAUSE FOR PRIVATE CITIZEN TO ARREST, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

When Mr. Ayo was encountered by Jefferson Parish officials, he was in the 17th Ward of Orleans Parish (where Hurricane Katrina broke the 17th Street canal levee) – one of the hardest hit areas and most heavily under construction at the time.

The State diligently argued, Deputy Simoneaux was out of his lawful jurisdiction. But acting as a private citizen when he observed a knife "protruding" out Defendant's back pocket and arrested him. (R. 107, 144, 162, 237).

Petitioner contends, the State's argument is seriously misplaced. Police Officers and/or private citizens "**must**" have probable cause to arrest culprit before pursuing or detaining another citizen[58]. Mr. Ayo's possession of an [un]concealed knife violated "**no**" Louisiana law, and Lieutenant Detective Jewell could not testify of a single authority warranting an arrest. (R. 183, 315-316, 322-323).

If society sanction the State's position, it would cause total mayhem, authorizing the immediate arrest of nearly every construction worker on his way to and from work[59]. But Defense Counsel grossly neglected to impeach Deputy Simoneaux, the arresting officer with a single question regarding the

-21-

56 *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention cannot be introduced.
57 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21
58 *State v. Franklin*, 353 So.2d 1315, 1319 (La. 1978)
59 *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), seizure without probable cause violated the Fourth Amendment; *Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), arrest on mere suspicion collides violently with basic human right of liberty; *State v. Huntington*, 364 So.2d 958, 959-60 (La. 1978).

"lawfulness" of work knife, failing to defend Mr. Ayo's constitutional right(s)[60]. (See: Exhibit "J",

Attached).

## CLAIM NO. 18

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL STOP BASED ON RACE, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The State entered dispatch transcript(s) into evidence demonstrating Detective Jewell broadcast

that he observed:

> "A white male with green shirt and blue jeans" [several blocks away from
> the incident].
> (R. 152-154; See: Exhibit "I", Attached).

In light of the fact (no green t-shirt nor blue jeans) were part of initial description, its evident:

Deputy Simoneaux relied on the only remaining factor to justify stop of Defendant – Mr. Ayo's apparent

"white/male" ancestry.

Deputy McCoy uncontrovertedly testified that he stopped the other person:

> "Because the description said white male, and Hispanics are traditionally
> considered white males."
> (R. 213).

Petitioner contends, the United States Supreme Court has long since held that race or gender

alone form no reasonable basis for stopping and detaining citizens in a public place. The Fourth

Amendment does not allow stop(s) where race furnish the "only" ground for suspicion[61]. But Defense

Counsel grossly failed to argue a single authority defending Mr. Ayo's constitutional right(s) to be free

of such intrusive detention[62]. (See: Exhibit "J").

## CLAIM NO. 19

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFULNESS OF FORCIBLE *TERRI* STOP, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The United States Supreme Court defined reasonable suspicion as "specific and articulable

facts" which, taken together with rational inferences from these facts, reasonably warrant the

-22-

---

60 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21
61 *United States v. Brignoni-Ponce*, 422 U.S. 873, 885-86, 95 S.Ct. 2574, 2582-83, 45 L.Ed.2d 607 (1975), *State v. Blanco*, 720 So.2d 749, 750 (La. App. 4th Cir. 1998), police officers could not articulate reason for suspecting defendant of criminal activity.
62 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21

intrusion[63].

In essence, the question sub judice is whether based on the totality of circumstances. Did Deputy Simoneaux have a "particularized and objective basis" for suspecting that Mr. Ayo committed a crime?

The specific and articulable facts known to Jefferson Parish officials:

1.) A fellow officer broadcast that he merely observed a white male [several blocks away from incident] talking to someone on landing of apartment; (R. 162, 174, 188).

2.) He did not match the description, wearing a lime-green tee shirt and carrying a travel bag; (R. 86, 162).

3.) He did not match the profile, Mr. Ayo was 14 years older, "90" pounds heavier (240), with very notable cuts and bruising about his face (not the "good looking man" to B.O.L.O. - be on lookout); (R. 91, 158, 283-286).

4.) Mr. Ayo was in another parish and area under heavy construction; (R. 237).

5.) And lawfully paying a cab driver when observed a second time. (R. 237).

Neither singularly nor together did these facts afford Deputy Simoneaux with a particularize nor objective basis for reasonably suspecting Mr. Ayo of committing a crime[64].

The United States Fifth Circuit reason that these same circumstances describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the court to conclude that as little foundation as there was in this case could justify a seizure[65].

Petitioner contends, had he not been unlawfully detained, with the limited information known up to that point, Deputy Simoneaux did not have the requisite "probable cause" necessary to apply with a magistrate for an arrest warrant[66]. Consequently neither did the officers have "specific and articulable facts" warranting arrest without a warrant. But Defense Counsel ineffectively neglected to impeach witnesses nor argue a single authority, defending Mr. Ayo's constitutional right(s) on an unlawful forcible *Terri* stop on "less" that reasonable cause[67]. (See: Exhibit "J", Attached).

-23-

63 *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), these men paced alternately along an identical route, pausing to stare in the same store window roughly 24 times, where each completion of this route was followed immediately by a conference between the two men on the corner. *Id.* at 23.
64 *State v. Kay*, 375 So.2d 1354, 1358 (La. 1979)
65 *U.S. v. Glass*, 741 F.2d 83, 85-86 (5th Cir. 1984)
66 *Spinelli v. United States*, 393 U.S. 410, 412-13, 89 S.Ct. 584, 587, 21 L.Ed.2d 637 (1969); *U.S. v. Thomas*, 489 F.2d 664, 667-68 (5th Cir. 1973); *State v. Ray*, 351 So.2d 489, 491-92 (La. 1977).
67 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21

## CLAIM NO. 20

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL STOP MAY NOT RIPEN INTO PROBABLE CAUSE JUSTIFYING ILLEGALITY, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The State diligently argued that the "illegal" investigatory stop out of jurisdiction ripened into probable cause when Deputy Simoneaux observed the knife in Mr. Ayo's pocket. "Officers are not expected to sit back and let defendant enter the store with a knife." (R. 144-145).

Petitioner contends, his [un]concealed knife violated no law(s) nor did Mr. Ayo attempt to enter the store with his work knife or a weapon, call it what you will. Deputy Simoneaux unequivocally testified that Mr. Ayo sent the cab driver in the store with money. (R. 183, 237). Thus under the totality of circumstances presented, there was "**no probable cause**" for Defendant's arrest[68].

Consequently "after" the stop, when Defendant's unconcealed work knife was revealed. Though it violated no law, it cannot be the catalyst that converts Mr. Ayo's otherwise innocent activity into reasonable suspicion for the initial stop[69]. But Defense Counsel grossly failed to argue any suppression law whatsoever, not one authority defending against the State's erroneous contention, that the unlawful stop ripened into probable cause upon discovery of his work[70] [71]. (See: Exhibit "J", Attached).

### CLAIM NO. 21

**DEFENSE COUNSEL FAILED TO INVESTIGATE EXCULPATING EVIDENCE AND MOTION FOR DNA TESTING, VIOLATED DEFENDANT'S SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The victim testified the perpetrator placed a "really really big" knife to his throat demanding money. But when he had trouble getting the money out, the man pulled the blade against his neck, "touching my Adam's apple". (R. 92, 266, 271).

Petitioner contends, from the date of arrest, he maintain his actual innocence. Mr. Ayo repeatedly informed Defense Counsel that his small knife did not match the description, and that he retrieved it from Dave's kitchen sink just before leaving for work. (R. 316-317; See: Exhibit(s) "A" & "B", Attached).

But Defense Counsel ineffectively neglected to investigate DNA testing, an "exact" science, when the power of the results of testing would in fact prove negative of victim's skin cell(s) and

-24-

---

68 *State v. Maxiss*, 619 So.2d 62, 65 (La. 1993); *State v. Rabness*, 464 So.2d 293, 297 (La. 1985).
69 *U.S. v. Glass*, 741 F.2d 83, 85-86 (5th Cir. 1984)
70 *State v. Blanton*, 400, So.2d 661, 663 (La. 1981), the cocaine on his person should have been suppressed as the product of an unlawful stop and seizure.
71 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 21

positive for ham and mayonnaise – scientific evidence exonerating Mr. Ayo. The Court should now order DNA testing on application for post conviction relief[72].

The United States Supreme Court in *Strickland v. Washington* [73], developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's failure to impeach witnesses with conflicting report(s) and perjured testimony, arguing the lack of specific articulable facts warranting probable cause to arrest. Moreover, Mr. Schmidt neglected to investigate approved scientific testing that would exonerate Defendant, and, blatantly refused to challenge the State's erroneous contention that private citizens may conduct investigative stops, absent statutory authority, fell way below an objective standard of reasonable professional norms.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Defense Counsel's malpractice to investigate and failure to argue not one legal authority defending against Mr. Ayo's unconstitutional detention, undermined confidence in the outcome of Mr. Ayo's trial with the introduction of "illegally" seized evidence. Thus but for Mr. Schmidt's unprofessional errors, (all) alleged evidence seized during the unlawful detention would have been suppressed, charge(s) dismissed and/or Mr. Ayo acquitted at trial[74].

### CLAIM NO. 22

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ILLEGALLY SEIZED EVIDENCE "NOT" IDENTIFIED AS WAEPON BY VICTIM, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The record conclusively demonstrates that Jefferson Parish officials entered Orleans Parish and "watched", investigated Defendant. Then wrestled down and detained Mr. Ayo, searched and seized his work knife, and placed Defendant in the back of police car against his free will pending a show-up

-25-

---

72 *U.S. v. Fausso*, 577 F.3d (5th Cir. 2009); La. C.Cr.P. Art 926.1(B)(1). DNA Testing will resolve the doubt and establish innocence of Petitioner.

73 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

74 *State v. Aguillard*, 357 So.2d 535, 538 (La. 1978), police officer who apprehended defendant, patted him down and seized cocaine, and then placed him under arrest did not lawfully arrest defendant prior to search, and therefore the warrantless search was unlawful and refusal to suppress evidence was error.

identification procedure to be conducted. Afterwards placing Mr. Ayo under arrest. (R. 86, 101, 109-110, 116, 207, 256; See: Exhibit "D", Attached).

Petitioner contends, in order for officials to justify a warrantless search incident to arrest, an arrest must have already occurred and the arrest itself must have been "lawful."[75] The rule excluding evidence seized in violation of Fourth Amendment has been recognized as a principle mode of discouraging "lawless police misconduct."[76]

But despite Mr. Ayo furnishing Defense Counsel with adequate legal research on the illegal detention and exploratory search, Mr. Schmidt blatantly refuse to argue a single authority warranting suppression of material evidence unconstitutionally seized.

The most conspicuous ineffective assistance, however, came when the victim did "not" identify Mr. Ayo's work knife as the weapon used in robbery. (R. 87, 95, 278). Mr. Schmidt, acting in collusion with State to further prosecution, condone the introduction of [un]identified highly prejudicial material evidence against Mr. Ayo at trial. The record is completely silent of Mr. Schmidt challenging the suppression of unidentified weapon[77]. (See: Exhibit "J", Attached).

## CLAIM NO. 23

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ILLEGALLY SEIZED EVIDENCE AND, BLATANTLY *REFUSED* TO INTRODUCE EXCULPATORY EVIDENCE, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The victim reported that the Perpetrator made off with $28 dollars in U.S. currency. (R. 87). Defendant was detained just minutes after the incident and found in possession of $21 dollars, clearly not denomination stolen. (R. 101).

Petitioner contends, search of his inner pockets during an investigative stop exceeded scope of pat-down for weapon(s) where officers search thoroughly enough to locate money and then examine bills[78]. La. C.Cr.P. Art 215.1(B). But Defense Counsel neglected to argue a single authority defending Mr. Ayo's unconstitutional search.

The greatest display of ineffective assistance of counsel, however, came when Mr. Schmidt neglected to investigate his alibi of employment or work schedule – arrested on way to work. Then when Mr. Ayo further provided Defense Counsel with a $300 dollar Western Union receipt from "**less**" than 24 hours of this robbery, justifying Defendant's resources. Mr. Schmidt threw the material evidence

-26-

---

75 *State v. Marks*, 337 So.2d 1177, 1181 (La. 1976).

76 *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Key*, 375 So.2d 1354, 1355 (La. 1979).

77 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 28

78 *State v. Fogan*, 609 So.2d 1016, 1018 (La. App. 4th Cir. 1992), in order for warrantless search of defendant and subsequent seizure of marked money to be valid, the search would have to be incident to lawful arrest.

on defense table, blatantly refusing to introduce the exculpatory evidence in suppression hearing. Thus acting in collusion with the State to further prosecution, condone the introduction of prejudicial looking evidence[79]. (See: Exhibit(s) "A" & "J", Attached).

### CLAIM NO. 24

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON SEARCH INCIDENT TO UNLAWFUL ARREST, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The report(s) and testimony of Jefferson Parish officials regarding the seizure of U.S. currency is riddled with so many different version(s) of the event. Because starting with Deputy Simoneaux, who testified the $21 dollars was forced from Defendant's hand, but conceded searching his pockets. (R. 101, 240, 258). Deputy McCoy testified that the currency was seized when it conveniently fell to the ground in plain view. (R. 219), where Mr. Ayo maintain from the outset that his money was recovered from the search of his inner pockets[80]. (R. 323).

Petitioner contends, the State ignored the legality of initial stop, lawfulness of arrest, and failed to carry burden of affirmatively proving the currency seized derived from the robbery of Mr. DeBroy[81]. (R. 87, 258, 319). But Counsel ineffectively failed to argue a single authority defending Mr. Ayo's illegal detention or unconstitutional exploratory search and seizure of material evidence, when the $21 dollars would have been suppressed as a matter of law and jury acquit Defendant for lack of evidence[82]. (R. 1001, 116, 207, 256; See: Exhibit(s) "D" & "J", Attached).

### CLAIM NO. 25

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEIZURE OF ABANDON PROPERTY, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, Deputy McCoy testified that the money fell to the ground when Mr. Ayo was seized. (R. 219). But Defense Counsel failed to challenge unlawful investigative stop, thus property abandon by Defendant as a result of such an imminent stop cannot be legally seized[83]. Otherwise the material evidence would have been suppressed as a matter of law and jury acquit Defendant for lack of evidence[84]. (See: Exhibit "J", Attached).

-27-

---

79. One Ineffective Assistance Memorandum of Law consolidated into Claim No. 28
80. Both officer's ridiculously testified that Mr. Ayo still had the money in his hand 50 minutes "after" robbery – additional perjury.
81. *State v. Ruffin*, 448 So.2d 1274, 1279 (La. 1984), search of defendant, subsequent to an unlawful arrest, could not be justified as a search incident to a lawful arrest.
82. One Ineffective Assistance Memorandum of Law consolidated into Claim No. 28
83. *State v. Chopin, Jr.*, 372 So.2d 1222, 1224-25 (La. 1979)
84. One Ineffective Assistance Memorandum of Law consolidated into Claim No. 28

## CLAIM NO. 26

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH OF POCKETS EXCEEDED *TERRY* PAT-DOWN FOR WEAPONS, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, Jefferson Parish officials lacked probable cause to arrest out of jurisdiction, and thorough enough search of inner pants pockets to locate money and then examine bills exceeded *Terry* pat-down for weapons[85]. (R. 323).

But Defense Counsel ineffectively refused to argue a single legal authority defending Mr. Ayo's illegal detention and unconstitutional exploratory search and seizure, prejudicing Defendant's trial with the introduction of "*illegally*" seized material evidence[86]. (See Exhibit "J", Attached).

### CLAIM NO. 27

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ALLEGED EVIDENCE NOT IDENTIFIED, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Mr. DeBroy robbed of $28 dollars. The Defendant was forcefully detained and unlawfully searched just "*minutes*" after the incident in question. However, only $21 dollars was seized from his pants pocket. (R. 87, 220).

Petitioner contends, the currency in and of itself is not unlawful nor contraband, and its incriminating character not immediately apparent to justify seizure[87]. But Defense Counsel blatantly refused to argue Mr. Ayo's money did "*not*" match denomination stolen, and further refused to introduce exculpatory Western Union receipt into evidence during suppression hearing. Otherwise the currency would have been suppressed, and jury acquit Defendant for lack of evidence[88]. (See: Exhibit "A", Attached).

-28-

---

85 *State v. Thorton*, 621 So.2d 173, 176 (La. App. 4th Cir. 1993); *State v. Fogas*, 609 So.2d 1016, 1018 (La. App. 4th Cir. 1992)
86 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 28
87 *State v. Short*, 665 So.2d 1102 (La. 1992); *State v. Parker*, 622 So.2d 791, 794-95 (La. App. 4th Cir. 1993), if protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits "**will**" be suppressed.
88 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 28

## CLAIM NO. 28

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ALLEGED EVIDENCE VIOLATED CHAIN OF CUSTODY, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Jefferson Parish Sheriff Office record(s) conclusively demonstrate that Deputy Simoneaux and Deputy McCoy materialized at jail the day (after) Mr. Ayo's arrest, collected "any" $21 dollars from property officer, and submitted the same illegally seized material evidence to the State for use against Defendant at trial. (R. 87, 219-220).

Petitioner contends, to admit demonstrative evidence, the law "requires" the object to be identified visually or by establishing the chain of custody of the currency from the time it was seized to the time it was offered into evidence[89]. But despite the officers fraud on the court, and the State's inability to carry burden of proof that the U.S. currency introduced into evidence was the "same" object originally seized by the officers at the time of Mr. Ayo's arrest[90]. Defense Counsel refused to subject the State's case to meaningful adversarial testing, arguing the unconstitutional evidence must be suppressed. Otherwise the jury would have acquit Defendant for lack of evidence. (See: Exhibit "J", Attached).

The United States Supreme Court in *Strickland v. Washington* [91], developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.
>
> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's refusal to impeach witnesses with conflicting report(s) of Mr. Ayo's illegal detention and unconstitutionally seized evidence; coupled with Mr. Schmidt's failure to investigate and argue suppression law(s) readily available, fell below an objective standard of reasonable professional norms. Thus constituting deficient performance so serious, Mr. Schmidt was not functioning as counsel guaranteed Defendant by the Sixth Amendment.

-29-

---

[89] *State v. Galleaux*, 378 So.2d 941, 944 (La. 1980); *State v. Paster*, 373 So.2d 170, 177 (La. 1979).
[90] *State v. Lewis*, 354 So.2d 566, 568 (La. 1978).
[91] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Defense Counsel's malpractice of refusing to argue a single legal authority defending against Mr. Ayo's illegal detention, unconstitutional search and seizure, and failure to challenge suppress on [un]identified work knife as weapon is so prejudicial.

Additionally Mr. Schmidt's inexcusable "refusal" to introduce exculpatory Western Union receipt into evidence during suppression hearing, undermine the outcome of Defendant's trial with the State's introduction of material incriminating looking evidence. Thus but for counsel's unprofessional error(s), alleged evidence (unidentified weapon and any currency from jail) would have been suppressed as a matter of law and charges dismissed, or jury would acquit Mr. Ayo in trial for lack of evidence.

## CLAIM NO. 29

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ALLEGED EVIDENCE NOT MATCHING DESCRIPTION, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The victim described to police the perpetrator's clothing as wearing:

> "A blue or black 'pullover' hooded sweatshirt."
> (R. 158; State's Exhibit(s) – 3 & 4).

In fact, officials placed so much emphasis on Mr. DeBroy's description of a (pullover) hooded sweatshirt. Deputies reported they stopped Mr. Ayo because his tee-shirt was labeled as that of :

> "He was wearing a green 'pullover' shirt."
> (See: Police Report(s)).

Petitioner contends, but when officials testified to clothing located in Mr. Ayo's travel bag, they unequivocally describe:

> "A polyester weatherproof 'zip-up' windbreaker."
> (R. 180-181; State Exhibit – 15).

Defense Counsel ineffectively failed to argue suppression law(s) against the State's introduction of alleged material evidence "not" matching the description. Thus the incriminating color prejudice the entire trial[92]. (See: Exhibit "J", Attached).

---

92 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 35

## CLAIM NO. 30

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH PRIOR TO ARREST, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Deputy Simoneaux concedes forcefully detaining Mr. Ayo out of his lawful jurisdiction. Then:

> "I notified Deputy McCoy to bring the victim to identify the subject that 'I
> stopped to see if this could be the perpetrator."
> (R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Meanwhile prior to the highly illegal identification process, conducted an unconstitutional exploratory search of Defendant's inner pockets and travel bag. Then upon the victim's arrival, police showed him a knife and money removed from Mr. Ayo's pocket, and windbreaker removed from Defendant's travel bag. None of which was positively identified. (R. 86-87, 95).

Deputy Simoneaux next conducted his unlawful show-up in Orleans Parish, arresting Defendant only "after" Mr. DeBroy identified him[93]. (R. 116; See: Exhibit "D", Attached).

Petitioner contends, the officers must be "in close pursuit of 'person to be arrested' ... [to] enter another jurisdiction." La. C.Cr.P. Art. 213(3) & (4). Here police did not lawfully arrest Mr. Ayo prior to search, requiring suppression of (all) evidence unconstitutionally seized[94], including pretrial identification[95].

But Defense Counsel ineffectively neglected to *argue* a single suppression authority defending Mr. Ayo's constitutional right(s) to be free of intrusive encounters and warrantless search. Otherwise the work knife, "zip-up" windbreaker, and identification would have been suppressed and jury acquit Mr. Ayo for lack of evidence[96]. (See: Exhibit "J", Attached).

## CLAIM NO. 31

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH BEYOND SUSPECT'S IMMEDIATE CONTROL, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Deputy Simoneaux testified that he grabbed hold of Mr. Ayo, removed a knife from his pocket and placed it on the ice machine "in front store." (R. 100, 204). Deputy McCoy advised that he found a

-31-

---

[93] *Brown v. Illinois*, 442 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the impropriety of the arrest was obvious, both in design and in execution was investigatory. The detectives embarked upon this expedition for evidence in hope that something might turn up.
[94] *State v. Aguillard*, 357 So.2d 535, 538 (La. 1978).
[95] *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), pretrial identification obtained during illegal detention cannot be introduced.
[96] One Ineffective Assistance Memorandum of Law consolidated into Claim No. 35

jacket "**inside**" a travel bag located "in the back seat of cab." (R. 110).

Petitioner contends, the United States Supreme Court has long since held that search extending beyond Defendant's person and area in his immediate control was unreasonable[97]. But Counsel grossly failed to argue a single suppression authority defending against the unconstitutional search and seizure, or the "zip-up" windbreaker would have been inadmissible as a matter of law[98] and jury acquit Mr. Ayo for lack of evidence[99]. (See: Exhibit "J", Attached).

### CLAIM NO. 32

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON UNLAWFUL SEARCH OF CLOSED TRAVEL BAG NOT JUSTIFIED UNDER PLAIN VIEW EXCEPTION, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Detective Jewell testified that he observed a white male wearing a green tee-shirt, carrying a travel bag over his shoulder. (R. 158, 162, 173). His radio broadcast nor trial testimony makes "**no**" mention of observing an exposed jacket possibly fitting the description. (State's Exhibit – 3; See also: Exhibit "I", Attached).

In fact, Detective Jewell testified that a blue windbreaker was "removed (from) the gym bag found in the back of cab." (R. 180-181).

The victim unequivocally corroborated that "they walked over to a bag and they (*pulled out*) a blue jacket." (R. 277). (Emphasis added).

Petitioner contends, Deputy McCoy, however, seen fit to commit perjury and material fraud on Court testifying that the cab driver said that he has a jacket "that he put (in) the bag." (R. 116; State's Exhibit – 16).

Then at trial contradicted his own testimony from suppression hearing, testifying that the jacket "was laying (on top) the bag. I didn't have to go into the bag at all." (R. 123, 218). (Emphasis added).

In *State v. Pomes*[100], the Louisiana Supreme Court set forth a three (3) prong requirement before evidence in "plain view" may lawfully be seized:

1. That there be prior justification for police intrusion into a protected area;

2. That the evidence be discovered inadvertently;

-32-

---

97 **Chimel v. California**, 395 U.S. 752, 766-67, 89 S.Ct. 2034, 2041-42, 23 L.Ed.2d 685 (1969).

98 **Cool v. New Hampshire**, 403 U.S. 553, 556, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971), following arrest inside house, search of vehicle outside could not be justified as incident to the arrest; **State v. Raheem**, 464 So.2d 293, 297 (La. 1985), when made after an illegal detention or search, consent to search, even if voluntary, is valid only if it was the product of free will and not the result of an exploitation of the previous illegality; evidence seized from defendant's purse should have been suppressed.

99 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 35

100 **State v. Pomes**, 376 So.2d 133, 135 (La 1979)

3.  And that it be immediately apparent, without close inspection, that the items are evidence or contraband.

> *Id.*

In satisfying the **First-Prong** test of *Pomes*: Petitioner contends, under the totality of the circumstances and information known to Jefferson Parish officials. There was no reasonable cause nor hot pursuit "of person to be arrested," justifying the police intrusion into Mr. Ayo's protected area of privacy [travel bag in cab] in another jurisdiction while Defendant stood outside store. (R. 238).

Deputy Simoneaux, however, concede not immediately arresting Mr. Ayo, but conducted an illegal "investigative" detention in another parish for the purpose of bringing the victim to conduct a show-up identification procedure. (R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Thus Jefferson officials were not in a lawful position to conduct (investigations) and warrantless searches in Orleans Parish[101]. (R. 158, 162, 173).

In satisfying the **Second-Prong** test of *Pomes*: Petitioner contends, the cab driver's statement nor trial testimony make absolutely **"no"** mention of observing Mr. Ayo with a windbreaker, permission authorizing search of cab or Defendant's travel bag, nor the cab driver allegedly informing police Mr. Ayo put a jacket **"in"** his travel bag and that "he wanted it out of his cab." (R. 116; State's Exhibit – 16).

Quite the opposite of deputies repeated perjury. William Barrett testified, he don't recall Defendant having a travel bag. (R. 195).

Therefore the contents of the travel bag was not "discovered inadvertently," but through an unlawful detention out of jurisdiction and an illegal exploratory search of cab in hope it contained evidence[102]. (R. 180-181, 277; See: Exhibit "D", Attached).

In satisfying the **Third-Prong** test of *Pomes*: Petitioner contends, his travel bag contained a weatherproof polyester "zip-up" windbreaker, and not a cotton "pullover" sweatshirt as worn by the perpetrator. (R. 181; See: Exhibit "B", Attached).

Further, not one, but two (2) witnesses, a Lieutenant Detective and the victim both testified that Deputy McCoy:

> "Removed 'from' ... pulled 'out' a blue jacket from 'inside' a bag."
> (R. 180, 277).

---

101 *State v. Franklin*, 353 So.2d 1315, 1320-21 (La. 1977).
102 *Brown v. Illinois*, 422 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the arrest was investigatory detectives embarked upon this expedition for evidence in hope that something might turn up; *State v. Flukier*, 313 So.2d 224, 225-26 (La. 1975), items not visible from outside car were not in plain view, and thus not subject to warrantless seizure.

Petitioner contends, his work jacket "inside" carry all bag was not in plain view nor immediate apparent, without close inspection, that the "zip-up" windbreaker only resembled the "pullover" sweatshirt / evidence officials were lawlessly searching for[103].

But Defense Counsel grossly neglected to subpoena a single Defense witness for suppression hearing(s), and took absolutely no steps to impeach witnesses with obvious perjured testimony nor argue a single suppression law against the unlawful search and seizure of property not in plain view, adequately defending Mr. Ayo's constitutional right(s).

Otherwise the "zip-up" windbreaker would have been suppressed as a matter of law, and jury acquit Defendant for lack of evidence[104]. (See: Exhibit(s) "B" & "J", Attached).

### CLAIM NO. 33

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESSES NOR ARGUE SUPPRESSION LAW(S) ON PERJURY OF ALLEGED INCULPATORY STATEMENT, VIOLATED DEFENDANT'S FOURTH, SIXTH, AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Jefferson Parish officials testified that Defendant was arrested "after" the identification process was conducted in Orleans Parish, and placed in the back seat of Deputy Simoneaux's patrol car. (R. 101, 116, 207, 256). Then Deputy McCoy heard Defendant made an inculpatory statement:

> "Because his window was open."
> (R. 119).

Petitioner contends, the amount of perjury in this case is off the chart!

Again Mr. Ayo informed Defense Counsel that the officer is violating his oath:

> "He's lying. The back window of a patrol car does not open, it would be
> an 'escape' route for prisoners. Ask him that."
> (See: Exhibit "G", Attached).

But Defense Counsel took absolutely no steps to impeach and expose the officers perjury, blatantly refusing to argue suppression law(s) of false statement(s) and defend Mr. Ayo's constitutional right(s)[105]. Thus acting in collusion with the prosecution, Mr. Schmidt allowed the prejudicial testimonial evidence go to the jury that would have been suppressed as a matter of law[106]. (See: Exhibit "J", Attached).

-34-

---

103 *State v. Parker*, 622 So.2d 701, 704 (La. App 4th Cir. 1993), if incriminating character is not immediately apparent, the plain view doctrine cannot justify its seizure.
104 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 35
105 *State v. Fisher*, 720 So.2d 1179, 1185-86 (La. 1998), defendant's alleged statements were inseparable from his illegal detention and should not have been admitted, even though voluntarily given.
106 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 35

<u>CLAIM NO. 34</u>

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO ABUSE OF THE WRIT AND ABUSE OF JUDICIAL DISCRETION, VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

<u>FACTS AND ARGUMENT IN SUPPORT</u>

Defense Counsel filed a motion for preliminary examination (probable cause) hearing and, wholly inadequate motion to suppress. (R. 9). When Mr. Schmidt would not visit, consult, nor correspond with Defendant, "refusing" to investigate exculpatory alibi witnesses for their version and Mr. Ayo's factual input of the event(s) respectively. On <u>June 27, 2007</u>, Defendant supplemented the filing(s) pro se by way of "petition for writ of habeas corpus / alternative motion to suppress". (Supp. R. 17-65).

Petitioner contends, he provided Defense Counsel with copy of the pro se petition and memorandum of law in support prior to the hearing held two (2) months later on <u>August 16, 2007</u>, but when Judge Henry G. Sullivan, Jr. disregarded Mr. Ayo's prima facie petition pending. Mr. Schmidt blatantly refused to object or challenge the trial court's abuse of discretion, not hearing the habeas petition within thirty (30) day(s).

Moreover, Defense Counsel threw the memorandum of law and Western Union receipt, exculpatory evidence on defense table and, acting in collusion with prosecution, further refuse to argue a single authority on suppression law(s) during the suppression hearing. (See: Exhibit "J", Attached).

But the abuse of the writ did not end there. The record is clear, after the Fifth Circuit Court of Appeal issued Defendant's "writ of mandamus" in *Ayo v. Clerk of 24th Judicial District Court*, (07-K-871) ___ So.2d ___ (La App. 5th Cir. 10-31-07). Did Judge Sullivan conduct a (second) bare-bones hearing, <u>absent</u> State or Defense witnesses with "no" one to cross-examine or impeach, some five (5) month(s) later on <u>November 7, 2007</u>. (Supp. R. 15; See also: R. 45).

Petitioner contends, the Sixth Amendment to the United States Constitution and the Confrontation Clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him."[107] La. Const. Art. I § 16. Cross-examination is the primary means by which to test the believability and truthfulness of testimony and has traditionally been used to impeach or discredit witnesses[108].

But Mr. Schmidt ineffectively neglected to motion for continuance, subpoena witnesses nor object to the Court's abuse of the great writ. Additionally, Defense Counsel grossly conducted the

-35-

107 *State v. Blue*, 393 So.2d 677, 679 (La. 1981).
108 *State v. Robinson*, 817 So.2d 1131, 1135 (La. 2002).

second suppression hearing November 7, 2007, <u>absent</u> a single Defense or State witness present. Thus prejudicing Mr. Ayo with the introduction of unconstitutionally seized evidence, "material" evidence that would have otherwise been suppressed through testimony of witness[109]. (See: Exhibit "E", Attached).

## CLAIM NO. 35

**DEFENSE COUNSEL AGAIN INEFFECTIVELY FAILED TO SUBPOENA A SINGLE WITNESS TO PROPERLY CHALLENGE "ILLEGALLY" SEIZED EVIDENCE DURING THE SECOND SUPPRESSION HEARING AND NEGLECTED A MOTION FOR CONTINUANCE, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, Defense Counsel neglected to subpoena a single witness to properly challenge "illegally" seized evidence during the first suppression hearing of August 16, 2007. (R. 336-337; See: Exhibit(s) "A" & "B", Attached).

When given a second hearing, a second chance to rectify fundamental error(s), Mr. Schmidt willfully committed malpractice subpoenaing "no" witnesses – not even the arresting officer. Not moving for a continuance[110]. Further conducting the hearing without a single Defense or State witness to cross-examine and impeach at the second suppression hearing of November 15, 2007. (R. 131-146; See: Exhibit "E", Attached).

Petitioner contends, Defense Counsel neither investigated, nor made a reasonable decision not to investigate the State's case through Defense witnesses, such a complete lack of pretrial preparation puts at risk both Mr. Ayo's right to an ample opportunity to meet the case of the prosecution, and the reliability of the adversarial testing process.

In the case sub judice, we deal with a total failure to conduct pretrial investigation. Mr. Schmidt's performance at trial suggest no better explanation for this apparent and persuasive failure to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary.

Mr. Ayo is unable to point to a single issue investigated nor a single suppression law argued by Mr. Schmidt in his defense[111].

The United States Supreme Court in *Strickland v. Washington* [112], developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

-36-

---

109 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 35
110 *State v. Hogan*, 372 So.2d 1211, 1214 (La. 1979), at trial, critical differences developed between defendant and witness testimony. As such, the necessity for witness presence and the prejudice caused defendant by witness absence are clear.
111 *U.S. v. Brown*, 218 F.3d 496, 500 (5th Cir. 2000), when claim is based on counsel's failure to investigate issue, court looks to degree of investigation undertaken.
112 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

[And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's inexcusable failure to investigate or subpoena any witnesses during suppression hearing(s). Moreover, Mr. Schmidt's gross negligence to challenge illegally seized evidence "not" matching description fell way below an objective standard of reasonable professional norms.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Defense Counsel's malpractice not to subpoena any witnesses *or*, impeach perjury with testimonial evidence directly contradictory to State's case in chief, satisfied prejudice component of *Strickland*.[113]

But for Mr. Schmidt's unprofessional error(s) which prejudicially left Mr. Ayo without any effective defense whatsoever[114]. The windbreaker and money not matching description would have been suppressed as a matter of law, and jury acquit Defendant in trial for lack of evidence. (See: Exhibit "J", Attached).

## CLAIM NO. 36

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA EXCULPATORY EVIDENCE, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, repeatedly over an eleven (11) month period, he informed Defense Counsel of the necessary importance to subpoena his medical record(s) from Santa Rosa Medical Center, State of Florida. Records conclusively demonstrating Mr. Ayo lost part of his left knee in a serious accident. Thus making it physically impossible for Defendant to have run from crime scene as the perpetrator, refuting the State's case in chief[115]. (R. 170; See: Exhibit(s) "A" & "P", Attached).

But Mr. Schmidt willfully committed malpractice blatantly refusing to prepare any defense whatsoever, subjecting the State's case to meaningful adversarial testing[116]. (See: Exhibit(s) "F" & "G", Attached).

-37-

---

113 *Harrison v. Quarterman*, 496 F.3d 419, 427-28 (5th Cir. 2007) (citing *Anderson v. Jackson*, 338 F.3d 382, 393-94 (5th Cir. 2003)), counsel failure to have the only known exculpatory witness testify satisfied *Strickland's* prejudice requirement.
114 *Code v. Montgomery*, 799 F.2d 1481, 1484 (11th Cir. 1986), failure to move for continuance compounds error.
115 *State v. Hogan*, 372 So.2d 1211, 1214 (La. 1979), defendant is entitled to summon, at state expense, attendance of witnesses from outside the state.
116 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 38

CLAIM NO. 37

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO SUBPOENA EXCULPATORY EVIDENCE, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, when his phone record(s) establishing alibi were allegedly and mysteriously irretrievable from the date in question -- just as both Defense witnesses on probation unlocatable! Mr. Ayo repeatedly informed Defense Counsel of the necessary importance to subpoena William Barrett, the cab driver's phone record(s). Records expressly and directly refuting the State's case in chief, to wit: Defendant was committing an armed robbery at 9:14 am, running several blocks thereafter to Jefferson Highway. (R. 170, 190; See: Exhibit(s) "A" & "F", Attached).

In this case, Mr. Schmidt totally failed to conduct any pretrial investigation whatsoever. Otherwise had counsel investigated, subpoenaed and introduced the exculpatory evidence, the State could not carry erroneous burden of proof, and jury acquit Mr. Ayo in trial.[117]

CLAIM NO. 38

**DEFENSE COUNSEL GROSSLY FAILED TO VISIT OR CONSULT WITH CLIENT IN JAIL TO PREPARE ANY DEFENSE WHATSOEVER, VIOLATED DEFENDANT'S SIXTH, EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, he diligently wrote Defense Counsel over ten (10) prima facie letter(s) detailing an adequate defense, however, Mr. Schmidt neglected to return a single correspondence. (See: Exhibit(s) "A", "B" & "F", Attached).

Further, as evident from Sheriff Office record(s), Defendant had "not" seen nor spoke a single word with Mr. Schmidt in over four (4) month(s) prior to trial. Thus coercing Mr. Ayo to blindly take the stand in his own defense at trial without any, none -- *no* preparation nor expectation of State's questioning. Defendant would *not* have otherwise testified.

The United States Supreme Court in *Strickland v. Washington* [118], developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

-38-

---

117 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 38
118 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's inadequate pretrial investigation and repeated failure to subpoena either one of three (3) exculpatory piece(s) of evidence left Mr. Ayo without any effective defense, coercing Mr. Ayo to testify and prove his innocence, fell way below an objective standard of reasonable professional norms.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Counsel's willful malpractice of "not" subpoenaing exculpatory evidence directly refuting the State's case in chief was so prejudicial to outcome of trial.

But for Mr. Schmidt's unprofessional error(s), medical record(s) demonstrating improbability to commit crime, and phone record(s) establishing alibi would have resulted in Mr. Ayo's acquittal.

## CLAIM NO. 39

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT WHEN TRIAL COURT VIOLATED MR. AYO'S RIGHT TO PARTICIPATE IN CHALLENGING AND IMPANELLING OF JURY, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

During the jury selection process, prospective juror(s) were called and examined in presence of Defendant, however, Mr. Ayo sat deafen at Defense table while challenging between State and Defense Counsel and the actually impaneling of jury was performed electronically (in secrecy) at the bench, to wit: the electronic microphone is "not" stereophonically wired to loudspeakers for courtroom listening, but hardwired directly to the stenographer's computer recording device. Thus effectively denying Mr. Ayo's constitutional right to (hear) and participate in the challenge and selection of his jury[119].

Petitioner contends, Louisiana law provides that "a defendant charged with a felony 'shall' be present ... [a]t the calling, examination, 'challenging, impaneling,' and swearing of the jury, and at any subsequent proceedings for the discharge of the jury." La. C.Cr.P. Art. 831(A)(3). Further Louisiana Constitutional Art. I § 17(A), provides in part that "[t]he accused 'shall' have the right to 'full' voir dire examination of prospective jurors and to challenge jurors peremptorily." *[Emphasis added]*.

The same is with the case sub judice, Mr. Ayo was "not" permitted to hear nor participate in "the challenging or selection" of his jury.

The Third Circuit Court of Appeal rejected a similar contention of the Trial Court in which the Judge unpersuasively reasoned:

"He has [Defense Counsel] to tell him what these people are saying."

-39-

---

119 Mr. Ayo is additionally hearing impaired, disable (ADA) with "less" than half (80% of 200%) of his hearing.

The violation of Defendant's right(s) was not harmless error although there was no evidence that Defendant was prejudiced, required reversal of conviction and new trial[120].

But again, again, and again, Mr. Schmidt took absolutely no steps to object or defend Mr. Ayo's constitutional right(s) to participate in the challenge and impaneling of an impartial jury[121].

## CLAIM NO. 40

**DEFENSE COUNSEL INEFFECTIVELY REFUSED TO OBJECT TO HIGHLY INFLAMMATORY RHETORIC IN OPENING ARGUMENTS, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Throughout all proceeding(s) the high strong Prosecutor refused to cease from the use of pejorative comment(s) and prejudicial rhetoric outside the record. Trial was no different, when from the onset of opening statement, the State instilled Mr. Ayo's guilt in the juries mind:

"The defendant here armed robbed Mr. DeBroy." (See Opening Statement)

Not that the State "intends to prove" or that "the evidence will demonstrate." Shannon Swaim effectively informed the jury that Defendant "did" in fact rob and "is" guilty of the crime charged, absent introduction of any evidence. That the prosecution is not required to prove its case, but Mr. Ayo must prove his innocence.[122]

Petitioner contends, the Court's have long since held that such egregious remark(s) constitute "plain error" seriously affecting the fairness, integrity and public reputation of judicial proceedings[123]. An attorney properly may state "I believe the evidence has shown the defendant's guilt,"[124] but may not state "I believe that the defendant is guilty."[125]

Presumably, the Trial Judge would have taken corrective action and admonish jury if there had been an objection or motion for mistrial.[126] La. C.Cr.P. Art 770 & 771. But Defense Counsel blatantly "refused" to object, defending Mr. Ayo's constitutional right(s) to a fair trial[127]. (See: Exhibit "G", Attached).

-40-

120 *State v. Gorgas*, 723 So.2d 1049, 1050 (La. App 3rd Cir. 1998).
121 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 41
122 Defendant observed Shannon Swaim, Assistant District Attorney, snort narcotics throughout all proceeding(s), hair sample (testing dating back seven (7) years) with FBI will prove positive results.
123 *United States v. Young*, 470 U.S. 1, 14-15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).
124 *U.S. v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978).
125 *U.S. v. Wayman*, 510 F.2d 1020, 1028 (5th Cir. 1975).
126 *U.S. v. Herrera*, 531 F.2d 788, 789 (5th Cir. 1976).
127 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 41

## CLAIM NO. 41

DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO THE STATE CAPITALIZING ON PERJURY AND OTHER CRIME(S) EVIDENCE IN OPENING STATEMENTS, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, the State refused to cease from the use of highly inflammatory rhetoric. In open statements, the State instilled Mr. Ayo's guilty in the juries mind:

> "You will hear the broadcast of officers observing Mr. Ayo with a knife and chasing him into Orleans Parish ... you will learn the defendant is wanted in other states."
> (See Opening Statement).

Petitioner contends, as detailed with Exhibit(s) in (Claim(s) 6 & 7), the dispatch transcripts make absolute "*no*" mention, not one transmission of "observing Mr. Ayo with a knife and chasing him into Orleans Parish." (Compare Exhibit(s) "H" & "F", Attached).

The State knowingly and intentionally offered the perjured testimony to stop the suppression of "illegally" seized evidence in an exploratory search out of jurisdiction. Then improperly capitalized on the fraud on court in opening statements. But Defense Counsel took no steps to object or motion for mistrial, defending Mr. Ayo's constitutional right(s) to a fair trial.

The United States Supreme Court in *Strickland v. Washington* [128], developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's ineffectively neglected to protect his constitutional right(s) to participate in the challenging and selection of an impartial jury. Coupled with Mr. Schmidt's blatant refusal to object or move for admonishment of jury on not one, but "numerous" occasion(s) of repeated prosecutorial misconduct, fell way below an objective standard of reasonable professional norms [129].

-41-

128 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
129 *U.S. v. Herrera*, 531 F.2d 788, 789 (5ᵗʰ Cir. 1976); *Geiger v. Cain*, (05-0674) ___ F.Supp.2d ___ (E.D. La. 11-28-06), writ granted with respect to unconstitutional trial error due to improper remarks by prosecution, and ineffective assistance of counsel due to fail of the defense to move for mistrial as a result of those remarks.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, Counsel's malpractice of not objecting nor motion for mistrial when Louisiana Law would have granted one, prejudiced Defendant with a fundamentally unfair outcome of trial. La. C.Cr.P. Art. 770 & 771.

But for Mr. Schmidt's unprofessional error(s), Mr. Ayo would have sat a fair jury, had an impartial trial without prejudicial remarks and perjury, and Defendant would have been acquitted[130].

### CLAIM NO. 42

**THE CHIEF COURT REPORTER COMMITTED MATERIAL FRAUD ON COURT, VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

#### FACTS AND ARGUMENT IN SUPPORT

Defendant motion the Fifth Circuit Court of Appeal for an "in camera" inspection of trial tape(s). After an outright (unethical shouting match) in presence of jury had been "omitted" from the record as follows:

| ORIGINAL TRIAL | AS DEPICT IN TRANSCRIPT |
|---|---|
| *STATE*:<br>Q. So you were sentenced in 1994 to 17 years and now 13 years later you're not on parole? | Q. You're not on parole? |
| A. No, Ma'am | A. No, Ma'am |
| Q. He's a liar. | Q. At this time. *[ALTERED]* |
| A. I'm not lying. | A. At this time. *[ALTERED]* |
| <u>Ms. Swaim</u>:<br>Q. He's a liar. *[SCREAMING]*<br>    He's a liar. | *[OMITTED]*<br>*[OMITTED]* |
| <u>Defendant</u><br>    You want to talk about liars. Let's talk about lying ass officers who conveniently said everything was in plain view. | *[OMITTED]* |
| <u>Mr. Schmidt</u>:<br>    Objection your Honor. May we approach? | *[OMITTED]* |

(R. 329-365)

Petitioner contends, in light of the fact Mr. Ayo has "**never**," never been on parole in any state or at any time. Mr Ayo certainly would not erroneously endorse the State's perjury of other crime(s) evidence stating:

> "No, Ma'am. [I'm not on parole] at this time."
> (R. 329-332).

The Fifth Circuit Court of Appeal committed fundamental error in *State v. Ayo*, 7. So.3d 85, 103 (La. App. 5th Cir. 2009), ordering John H. Andressen, Chief Court Reporter of the Twenty-Fourth

-42-

---

130 ***State v. Grogan***, 723 So.2d 1049, 1050 (La. App. 3rd Cir. 1998), no showing of prejudice necessary to warrant a new trial.

Judicial District [the same entity responsible for altering transcript], to listen to the relevant portion of transcript. *Id.* Naturally, Mr. Andressen cosign and denied the alteration despite twelve (12) jurors, amongst other officer(s) of court, "witnessing" the ethic violation(s).

Petitioner contends, Defense Counsel must be afforded fair opportunity to review tape(s) and cross-examine witnesses on highly prejudicial issue in an evidentiary hearing. (See: Exhibit "Q", Attached).

## CLAIM NO. 43

## PROSECUTORIAL MISCONDUCT, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, the State committed plain error giving the jury her own personal guarantee that Mr. Ayo "is lying" and the officers, her witnesses are telling the truth[131]. Constituted an extremely prejudicial attack on the credibility of Mr. Ayo, the (only) Defense Witness. Thus requiring a new trial[132].

## CLAIM NO. 44

## TRIAL COURT COMMITTED PLAIN ERROR SUSTAINING OBJECTION AND RULED CONTRARY TO FLORIDA LAW, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, he was coerced to testify and attempt to prove his innocence due to Defense Counsel's failure to investigate local exculpatory witnesses.

Defendant testified that he was previously convicted of manslaughter in 1994, which is enumerated as accidental death / culpable negligence under Florida Law. The State objected , and Trial Court improperly sustained, precluding Defense line of questioning going to the credibility of (only) Defense Witness.

Consequently the State improperly capitalized that it wasn't accidental, but murder. (R. 328-330).

Petitioner contends, Florida Statutory Law, and his contracted plea agreement is clear:

**The Court**: Is there also a mandatory minimum?

**Mr. Strickler [State]**: No, your Honor, because under the statute, it has – manslaughter is not enumerated and it's not considered murder.

---

131 *U.S. v. Herrera*, 531 F.2d 788, 789-90 (5th Cir. 1976), it was impermissible for the prosecutor to impart verity to the testimony of officer's.
132 *United States v. Young*, 470 U.S. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *U.S. v. Restrepo-Granda*, 575 F.2d 524, 529-30 (5th Cir. 1978), conviction obtain by such inflammatory rhetoric must be reversed as the prosecutor's remark(s) rose to a level of "plain error."

Judicial District [the same entity responsible for altering transcript], to listen to the relevant portion of transcript. *Id.* Naturally, Mr. Andressen cosign and denied the alteration despite twelve (12) jurors, amongst other officer(s) of court, "witnessing" the ethic violation(s).

Petitioner contends, Defense Counsel must be afforded fair opportunity to review tape(s) and cross-examine witnesses on highly prejudicial issue in an evidentiary hearing. (See: Exhibit "Q", Attached).

## CLAIM NO. 43

**PROSECUTORIAL MISCONDUCT, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, the State committed plain error giving the jury her own personal guarantee that Mr. Ayo "is lying" and the officers, her witnesses are telling the truth[131]. Constituted an extremely prejudicial attack on the credibility of Mr. Ayo, the (only) Defense Witness. Thus requiring a new trial[132].

## CLAIM NO. 44

**TRIAL COURT COMMITTED PLAIN ERROR SUSTAINING OBJECTION AND RULED CONTRARY TO FLORIDA LAW, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, he was coerced to testify and attempt to prove his innocence due to Defense Counsel's failure to investigate local exculpatory witnesses.

Defendant testified that he was previously convicted of manslaughter in 1994, which is enumerated as accidental death / culpable negligence under Florida Law. The State objected , and Trial Court improperly sustained, precluding Defense line of questioning going to the credibility of (only) Defense Witness.

Consequently the State improperly capitalized that it wasn't accidental, but murder. (R. 328-330).

Petitioner contends, Florida Statutory Law, and his contracted plea agreement is clear:

**The Court**: Is there also a mandatory minimum?

**Mr. Strickler [State]**: No, your Honor, because under the statute, it has – manslaughter is not enumerated and it's not considered murder.

---

131 *U.S. v. Herrera*, 531 F.2d 788, 789-90 (5th Cir. 1976), it was impermissible for the prosecutor to impart verity to the testimony of officer's.
132 *United States v. Young*, 470 U.S. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *U.S. v. Restrepo-Granda*, 575 F.2d 524, 529-30 (5th Cir. 1978), conviction obtain by such inflammatory rhetoric must be reversed as the prosecutor's remark(s) rose to a level of "plain error."

(See: Exhibit "R", Attached).

Defendant's contention is further demonstrated by the prosecutor's bewilderment and perjurious monologue in presence of jury:

> "He's a liar. He's a liar. He has a detainer for violating parole in Santa Rosa
> County, Florida."
> (R. 330).

Public record(s) corroborate that Mr. Ayo is not, and has "never" been on parole in any State; neither has Defendant suffered a murder conviction nor is he wanted for a parole violation.

Petitioner contends, the Trial Court first erred by sustaining objection, excluding testimonial evidence going to Mr. Ayo's credibility, violating substantial constitutional due process right(s)[133].

Further, after Defendant stipulated to the manslaughter conviction, specific(s) relating to the prior offense were foreclosed to the prosecution. Moreover, testimony of a "**non**"-existent warrant for parole violation is nothing less than highly inflammatory question(s) of other crime(s) evidence put to Mr. Ayo[134].

The Trial Court committed fundamental error sustaining objection, contrary to Florida Law. Thus allowing jury to weigh Defendant's credibility with the erroneous assumption that Mr. Ayo is a wanted criminal with a prior murder conviction, as opposed to manslaughter by culpable negligence[135].

## CLAIM NO. 45

**TRIAL COURT ABUSED JUDICIAL DISCRETION AND FUNDAMENTAL ERROR REFUSING TO ADMONISH JURY, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The amped up Prosecutor was totally out of control. Ms. Swaim would not cease her highly prejudicial "monologue," not questions, of an [un]available witness, **nor** over objection during cross-examination:

> Ms. Swaim:
>
> Now you do know that [Mr. Ayo's] good bud, Theo Brickley.
>
> Mr. Schmidt:
>
> Objection, your Honor.
>
> Ms. Swaim:
>
> Just got guilty for like four (4) felonies, in Division "O".
>
> Mr. Schmidt:
>
> Objection, you Honor. May we approach.
>
> (R. 335-338).

-44-

---

133 *State v. Everidge*, 762 So.2d 680, 684 (La. 1997).
134 *State v. Ponade*, 359 So.2d 150, 153 (La. 1978).
135 DUI Manslaughter and the Mishandling of Firearms are responsible for countless "accidental" deaths yearly.

Petitioner contends, the Trial Court properly ruled that the Prosecutor did "not" have the right to go into Mr. Brickley's criminal history. But committed fundamental error "refusing" to admonish the jury on impropriety. (R. 339).

The Fourth Circuit addressed an identical situation in which the prosecutor's statement prejudicial and completely irrelevant as statement was outside of any evidence adduced at trial. Thus the questioning was impermissible and trial court should have at least admonished the jury to disregard prosecutor's statement[136]. La. C.E. Art. 403; La. C.Cr.P. Art. 770 & 771.

The Court's do not indicate that only the prosecuting attorney is worthy of blame. Indeed the Trial Judge had an obligation in the interest of fairness and justice to stop the Prosecutor from delivering a greatly prejudicial argument sua sponte[137].

In the case sub judice, Mr. Ayo was the (only) Defense Witness to testify. The State's repeated inflammatory remark(s) of calling Defendant a liar, ridiculing inability to secure witnesses, and improper attack on character of an unavailable witness, all in the presence of jury, absent admonishment of jury, the "cumulative" effect of numerou(s) improprieties denied Mr. Ayo's constitutional right to a fair and impartial trial. Thus Trial Judge committed fundamental error additionally denying mistrial[138].

## CLAIM NO. 46

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON IMPEACHMENT EVIDENCE, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The State disclosed a letter to the Defense that Mr. Ayo wrote to William Barrett, the cab driver in the instant case. The letter contain highly prejudicial information of [un]related other crime(s). the Prosecutor stipulated pretrial not to introduce the evidence, however, "breached" that agreement mid-trial and the Court admitted unconstitutionally evidence as State's Exhibit – 21. (R. 345-349; See: Exhibit "S", Attached).

Petitioner contends, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice[139]. La. C.E. Art. 404(B)(1). Though a (second) suppression hearing was conducted "less" than two (2) weeks before trial. Defense Counsel ineffectively neglected to argue the suppression of other crime(s) evidence when

-45-

---

136 *State v. Barber*, 617 So.2d 974, 976 (La. App. 4th Cir. 1993).
137 *U.S. v. Corona*, 551 F.2d 1386, 1391 n. 5 (5th Cir. 1977), once such statements are made, the damage is hard to undo.
138 *U.S. v. Garza*, 608 F.2d 659, 665 (5th Cir. 1978).
139 *State v. McDermitt*, 406 So.2d 195, 200 (La. 1981), to avoid unfair inference that defendant committed crime because he is a person of criminal character.

Louisiana Law would have automatically granted motion[140]. (See: Exhibit "T", Attached).

The United States Supreme Court recently addressed a similar issue in Louisiana, holding that remand was required to determine whether it required suppression of the letter defendant wrote victim's widow[141].

### CLAIM NO. 47

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO MOTION TO REDACT IRRELEVANT PORTION(S) OF HIGHLY PREJUDICIAL EVIDENCE, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

#### FACTS AND ARGUMENT IN SUPPORT

The Prosecutor stipulated pretrial not to introduce the letter Defendant wrote to William Barrett making mention of Mr. Ayo's previous incarceration in state prison and, posting bond in another state. Ms. Swaim, however, breached that agreement mid-trial and the Trial Court erroneously admitted a barrage of evidence unrelated to the trial at hand as State's Exhibit – 21. (R. 345-349; See: Exhibit "S", Attached).

Petitioner contends, the requirements of *Prieur* are his constitutional safeguards against the introduction of irrelevant and prejudicial information[142]. Portion(s) of the letter exceeded the permissible scope of cross-examination or rebuttal evidence, and its probative value outweighed by its prejudicial value[143].

Nevertheless, Defense Counsel blatantly refused to motion to redact the irrelevant portion(s) of other crime(s) evidence, neglecting to defend Mr. Ayo's constitutional right(s) to a fair trial[144]. (See: Exhibit "G", Attached).

### CLAIM NO. 48

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE BREACH OF PRETRIAL AGREEMENT, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

#### FACTS AND ARGUMENT IN SUPPORT

The Prosecutor stipulated pretrial not to introduce the letter Defendant wrote William Barrett into evidence. The State, however, breached that agreement mid-trial and the Trial Court admitted State's Exhibit – 21. (R. 345-349; See: Exhibit "S", Attached).

-46-

---

140 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 52
141 *Montejo v. Louisiana*, 556 U.S. ___, 129 S.Ct. 2079, 2091-92, 173 L.Ed.2d 955 (2009).
142 *State v. Prieur*, 277 So.2d 126, 128 (La. 1973).
143 *State v. Constantine*, 364 So.2d 1011, 1014 (La. 1978), *State v. Schwartz*, 354 So.2d 1332, 1333-34 (La. 1978), it was reversible error to allow state to present highly prejudicial evidence of unrelated other crime(s).
144 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 52

Petitioner contends, the District Attorney did "not" motion to modify stipulation nor reserve the right to impeach Defendant with the letter if Mr. Ayo took the stand[145]. La. C.Cr.P. Art. 921. But Defense Counsel ineffectively failed to argue a single authority on State's breach of agreement, absent reservation, defending Mr. Ayo's constitutional right(s) to a fair trial.[146,147] (See: Exhibit "G", Attached).

CLAIM NO. 49

**DEFENSE COUNSEL INEFFECTIVELY MISLEAD DEFENDANT WITH FALSE ADVICE, VIOLATED MR. AYO'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

FACTS AND ARGUMENT IN SUPPORT

Defense Counsel never met with Mr. Ayo in "over" four (4) month(s) prior to trial, so Defendant possessed no knowledge of witnesses who would testify. When mid-trial Mr. Schmidt advised:

> "I want a nurse from the jail to weigh you, right now. 'We' will put her on the stand and demonstrate you are much heavier than Mr. DeBroy's description."

Petitioner contends, to his astonishment nurse practitioner Susan Lee was "not" a defense, but a State witness. Thus Defense Counsel had Mr. Ayo so [un]informed regarding his case. Defendant had no idea Counsel's advice was "false" until after the State announced its last witness. (R. 299). Mr. Ayo never would have agreed to expose his parish jail record(s)[148].

CLAIM NO. 50

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE SUPPRESSION LAW(S) ON ILLEGAL EVIDENCE, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, assuming arguendo the State did not violate *Brady* rule(s) of discovery[149], Nurse Susan Lee "illegally" provided the State with Mr. Ayo's "personal" medical record(s), absent Defendant's consent nor through proper judicial subpoena, Record(s) the State unconstitutionally entered into evidence. (R. 289-303).

But Defense Counsel grossly refused to defend Mr. Ayo's Federal Constitutional right(s) under the H.I.P.A.A. Privacy Act, ineffectively neglecting to argue a single word on the illegally seized evidence[150]. (See: Exhibit "J", Attached).

-47-

---

145 *State v. Patton*, 290 So.2d 273, 278 (La. 1974).
146 *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994), hearing was required as to due process claim relating to claim of unfair surprise.
147 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 52
148 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 52
149 Defense Counsel never met with nor provided Mr. Ayo with copy of discovery.
150 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 52

CLAIM NO. 51

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO ARGUE LAW(S) ON PERJURY, FRAUD ON COURT, OR ABUSE OF JUDICIAL DISCRETION WHEN TESTIMONY EXCEEDED PERMISSIBLE SCOPE OF EVIDENCE, VIOLATED DEFENDANT'S FOURTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

FACTS AND ARGUMENT IN SUPPORT

The State elicit testimonial evidence from Nurse Lee, custodian of Medical Record(s) and Superior of Health Care of Inmates at the Jefferson Parish Jail. (R. 299-300). Over hearsay objection, the Trial Court ordered the admission of record(s) into evidence for the sole purpose:

> "In showing the weight of this defendant when he was booked ..."
> (R. 302; State's Exhibit – 20).

Petitioner contends, contrary to the State's perjurious contention when questioned of her illegality of possessing the record(s):

> "[It's] not ... personal hospital records. It's a mandatory physical assessment ..."
> (R. 301).

The record(s) introduced into evidence were "**not**" that of a mandatory evaluation upon Mr. Ayo's booking January 7, 2007. Nurse Lee provided the following hearsay testimony:

> "That physical assessment was done February 24, 2007. No, I did 'not'
> conduct the weighing or anything. It say's, he was 181 pounds."
> (R. 302-303). *[Emphasis added]*.

Hence despite the State's perjury and fraud on Court, impermissibly introduced Mr. Ayo's personal medical record(s) from a sick-call visit while in jail, conducted one and one-half (1 ½) month(s) "**after**" booking[151]. Defense Counsel ineffectively took absolutely no steps to argue suppression of [fraud]ulent booking record(s) nor object to the highly prejudicial testimonial evidence exceeding permissible scope of Court order[152]. La. C.E. Art. 403. (See: Exhibit "J", Attached).

CLAIM NO. 52

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO HIGHLY INFLAMMATORY RHETORIC OF BEING IN JAIL, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

FACTS AND ARGUMENT IN SUPPORT

The amped up District Attorney first bewitched the jury with an improper monologue of Defendant being wanted for a "**non**" existing parole violation. (R. 330).

-48-

---

151 *U.S. v. Mejia*, 872 F.2d 582, 587-88 (5ᵗʰ Cir. 1989), trial court abused its discretion admitting evidence was not harmless, and should have been excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. Art. 403.

152 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 52

Next the Prosecutor introduced the letter Mr. Ayo wrote to the cab driver making highly prejudicial reference(s) to Defendant's prior imprisonment, and, posting bond in another state. (R. 345-349, See: Exhibit "S", Attached).

Petitioner contends, then the State elicited highly inflammatory testimony from Nurse Lee through misleading question(s). Testifying that she is the custodian of medical record(s) and oversees the health care of "inmates at the Jefferson Parish *jail*." Additionally testifying of Mr. Ayo's personal medical appointment in the "*jail*" one and on-half (1 ½) month(s) "after his arrest." (R. 299-303).

But Defense Counsel grossly neglected to object or motion for mistrial, not once, to repeated reference(s) to Defendant being "**in jail**"; failing to defend Mr. Ayo's constitutional due process right(s) to a fair trial[153]. La. C.E. Art. 403 & 404(A)(1); La. C.Cr.P. Art. 770 & 771.

The United States Supreme Court in *Strickland v. Washington* [154], developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's failure to move for suppression of evidence, his failure to argue law(s) on breach of agreement, and his further failure to object to hearsay testimony exceeding the scope of evidence. Coupled with Mr. Schmidt's negligence to motion for mistrial to fraud on the court and repeated reference(s) to Mr. Ayo being in jail, fell way below an objective standard of reasonable professional norms.

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, but for Defense Counsel's unprofessional error(s) and blatant "refusal" to defend his constitutional right(s), motioning to suppress or redact irrelevant portion(s) of highly inflammatory evidence. It was reversible error to present prejudicial evidence of unrelated other crime(s), and the jury never would have learned, nor Mr. Ayo have had testify and defend against his criminal history being improperly exposed. Thus the jury would have acquit Defendant, a man of good character for lack of evidence. La. C.Cr.P. Art. 770 & 771.

153 *State v. Barber*, 617 So.2d 974, 976-77 (La. App. 4th Cir. 1993), prosecutor's line of questioning was impermissible and trial court should have at least admonished jury to disregard prosecutor's statement.
154 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## CLAIM NO. 53

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH WITNESS ON PLEA AGREEMENT WITH STATE TO TESTIFY, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The cab driver, William (Bill) Barrett is Defendant's best friend, who was present for the illegally investigative stop of Mr. Ayo out of jurisdiction, the unlawful exculpatory search, and his arrest thereafter. (R. 116). Allege Defense Investigator, Ronnie Montgomery informed Defendant:

> "Your friend William Barrett was arrested. He worked a plea agreement
> with the State, turned your letter(s) over and agreed to testify against you
> for probation or something."
> (See: Exhibit "B", Attached).

Petitioner contends, cross-examination is the primary means by which to test the truthfulness of testimony and has traditionally been used to impeach or discredit witnesses[155]. La. Const. Art I § 16. Directed toward revealing possible bias, prejudice or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand[156].

But Defense Counsel blatantly refused to impeach State's witness William Barrett as to what he was promised, what was his motive to testify and commit perjury against Mr. Ayo[157]. (R. 189-195; See: Exhibit(s) "E" & "G", Attached).

## CLAIM NO. 54

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO IMPEACH ON STATE'S OBSTRUCTION OF JUSTICE TAMPERING WITH WITNESSES, VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The cab driver, William (Bill) Barrett witnessed the illegal investigative stop of Mr. Ayo in Orleans Parish by Jefferson Officials. The unlawful exploratory search of Defendant's inner pockets and travel bag, absent consent, and his arrest that followed this exploration. (R. 101, 116, 207, 256; See: Exhibit "D", Attached).

Petitioner contends, he remained in contact with Mr. Barrett who was always very lucid of the true fact(s). During trial, however, State's witness Barrett committed perjury, providing the Court with

---

155 *State v. Robinson*, 817 So. 2D 1131, 1135 (La. 2002).
156 *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination; *U.S. v. Sampliapp*, 564 F.2d 176, 178 (5th Cir. 1977), witness refusal to disclose promise of immunity in another case which would have affected his credibility required reversal.
157 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 60

a fictitious address and, developed "selective amnesia" and "out-right stupidity" upon examination. (R. 189-195). Mr. Ayo brought the fraud to Defense Counsel's attention, demanding he questioned the conspicuous behavior. But Mr. Schmidt refused to defend Mr. Ayo's constitutional right(s), exposing the Prosecutor's obstruction of justice[158]. (see: Exhibit "G", Attached).

In case sub judice, Mr. Barrett's truthful testimony would unveil perjury on material issue(s), highly illegal investigation and exploratory search out of jurisdiction. Thus requiring suppression of unconstitutional evidence. But Defense Counsel did not subpoena Mr. Barrett for either one of two (2) suppression hearing(s), and ineffectively refused to impeach witness when opportunity arose at trial[159] [160]. (See: Exhibit "E", Attached).

## CLAIM NO. 55

## THE PROSECUTOR FELONIOUSLY TAMPERED WITH DEFENSE WITNESS, VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).

### FACTS AND ARGUMENT IN SUPPORT

Defense witness, Theo Brickley would corroborate Defendant's alibi and will testify:

1.) "[He] evaded Defense subpoena to appear at Mr. Ayo's trial because Assistant District Attorney, Shannon Swaim informed him: 'Ayo is trying to cooperate with the State Police and have you arrested for drug trafficking.' "[161]

2.) "Ms. Swaim also agreed to a lenient sentence if I did not testify on Mr. Ayo's behalf.[162]

3.) "But before his trial, Ms. Swaim did not trust that I would not appear, and had my probation officer issue a violation warrant for no reason, she made sure I did not appear for his trial, knowing I would not show – up in court with an active warrant."[163]

(See: Exhibit "T", Attached).

Petitioner contends, the Prosecutor obstructed justice and tampered with Defense Witnesses using improper threats of harsh sentence(s), coercion, and suborned perjury from her duties, affectively suppressing exculpatory material testimonial evidence of Mr. Brickley which directly refuted the State's case in chief.

---

158 *State v. Wilson*, 394 So.2d 254, 258 (La. 1981), trial court's refusal to order witness to answer defense counsel's questions, violated defendant's right to compel attendance of witnesses and to present a defense as guaranteed by State and Federal Constitution(s). *Kirkpatrick v. Whitley*, 992 F.2d 491, 495 (5th Cir. 1993), remand was required to determine whether prosecutor presented falsified evidence
159 Fraud on the court is typically confined to the most flagrant case(s) where it can be said that the fraud presents a deliberate scheme or directly subvert the judicial process. *U.S. v. Anderson*, 574 F.2d 1347, 1355-56 (5th Cir. 1978), new trial is necessary when disclosure of the truth would affect judgment of jury.
160 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 60
161 Officer of Court aiding and abetting criminal activity, and obstructing justice is felony malfeasance.
162 Ms. Swaim is totally out of control in her addiction and her action(s).
163 *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993), such a corruption of the truth-seeking process would strike at the confidence of the conviction and sentence.

Therefore requiring an evidentiary hearing to resolve such serious claim(s), and further determine whether probable cause exist warranting Shannon Swaim's arrest.

## CLAIM NO. 56

**DEFENSE COUNSEL INEFFECTIVELY "REFUSED" TO OBJECT AND MAKE RECORD OF NUMEROU(S) ILLEGALITIES, VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, prior to trial he provided Defense Counsel with a chronological list of prima facie objection(s) detailing numerou(s) illegalities, ranging from perjured testimony in suppression hearing(s) to "local" exculpatory witnesses on probation that allegedly could not be located for investigation and attendance. But Mr. Schmidt blatantly "refused" to object, defending and preserving Mr. Ayo's constitutional right(s)[164]. (See: Exhibit "U", Attached).

## CLAIM NO. 57

**DEFENSE COUNSEL INEFFECTIVELY "REFUSED" TO MOTION FOR MITIGATION HEARING, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

The Federal Drug Enforcement Administration (DEA) and Louisiana State Police met twice with Defendant, requesting his extensive cooperation in bringing to justice a "major criminal enterprise" involving eight (8) drug trafficker's and at least twenty (20) other distributors. (See: Exhibit "T", Attached).

Petitioner contends, but Defense Counsel blatantly "refused" to motion for hearing to arrange a sit-down meeting between Agent(s), the judge and District Attorney to reach plea agreement and mitigation of charge[165]. (See: Exhibit "A", Attached).

## CLAIM NO. 58

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO ABUSE OF JUDICIAL DISCRETION, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

On concluding the first day of trial, the Judge ordered the jury to be in Court the next morning:

> "I would like everyone here around 8:00 o'clock, no later than 8:30 [a.m.] so we can get started on time."

On the second night of trial, November 28, 2007, it was "after" 8:30 p.m. And closing

-52-

---

164 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 60
165 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 60

arguments, charging of jury with instructions, nor had the evidence yet been published or deliberation commenced.

Petitioner contends, half the jury panel expressed the need to stop. (R. 372-373). Mr. Ayo further brought to Defense Counsel's attention the aggravation and fatigue displayed by the jury, with at least two (2) juror's falling asleep during testimony of (only) Defense witness, Mr. Ayo.

But Mr. Schmidt ineffectively "refused" to object or motion for recess until the next day, failing to challenge the Trial Court's abuse of discretion[166]. Neglecting to defend Mr. Ayo's constitutional due process right(s) to a fair trial, when juror's left their respective homes and had been in Court an  absurd sixteen (16) hour(s)[167]. Now pressured by the Trial Court, and obvious fatigue to reach a speedy and fundamentally unjust verdict at 9:52 p.m.[168] (See: Exhibit "V", Attached).

## CLAIM NO. 59

**DEFENSE COUNSEL INEFFECTIVELY "REFUSED" TO MOTION FOR MISTRIAL AFTER AT LEAST TWO (2) JURORS' FELL ASLEEP, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, half the jury panel expressed the need to stop. (R 372-373). Mr. Ayo further brought to Defense Counsel's attention the aggravation and fatigue display by the jury, with at least two (2) jurors' falling asleep during testimony of (only) Defense witness, Mr. Ayo.

But Mr. Schmidt blatantly "refused" to motion for mistrial and defend Mr. Ayo's constitutional right(s) to a fair an  just trial, when major portion(s) of the truth-seeking process directly refuting the State's case in chief went "unheard" by numerou(s) sleeping juror's[169]. (See: Exhibit "V", Attached).

Noteworthy is the fact that Mr. Ayo was prohibited from objecting to any violation(s) of law during trial, reprimanded by Trial Judge that "If you have anything to say, say it through your attorney." (R. 296).

## CLAIM NO. 60

**DEFENSE COUNSEL INEFFECTIVELY FAILED TO OBJECT TO HIGHLY INFLAMMATORY RHETORIC IN CLOSING ARGUMENTS, VIOLATED DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Throughout all proceeding(s) the amped up Prosecutor refused to cease from the use of perjurative comment(s) and prejudicial rhetoric outside the record. Trial was no different, when from

-53-

166 *U.S. v. Gaudin*, 86 F.3d 1368, 1374 (5th Cir 1996).
167 Calculated on an average person awakening "no less" than one (1) hour, at 6:00 am, before leaving home at 7:00 am. Allowing for traffic to timely arrive at Court for 8:00 am.
168 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 60
169 One Ineffective Assistance Memorandum of Law consolidated into Claim No. 60

the onset of closing statements, the State capitalized on perjured testimony and material fraud on Court:

"You heard how a Lieutenant Detective broadcast, how he observed Mr. Ayo get into a cab with a large knife right around the corner from the robbery, and how the officers chased but lost sight of the vehicle as they entered Orleans Parish." [170]

(See Closing Arguments).

When "not" a single word of the aforementioned monologue is true, [un]substantiated by the CFS Dispatch transcripts and State's Exhibit- 3. thus a textbook case of "known" perjury. (See: Exhibit "I", Attached).

Petitioner contends, the court's have long held that such egregious remark(s) constitute "plain error" seriously affecting the fairness, integrity and reputation of judicial proceedings[171]. And presumably, the Trial Judge would have taken corrective action and admonished jury if there had been an objection or, granted motion for mistrial had Counsel performed his duty[172]. La. C.Cr.P. Arts. 770 & 771.

But Defense Counsel simply "refused" to object, defending Mr. Ayo's constitutional right(s) to a fair trial.

The United States Supreme Court in *Strickland v. Washington* [173], developed a two-prong test to evaluate claim(s) of ineffective assistance of counsel that defendant must show:

> That counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88.

> [And] That there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

In satisfying the **First-Prong** of *Strickland*: Petitioner contends, Defense Counsel's repeated lack of performance on over "sixty", (sixty 60) claim(s) is evident of nothing less than his acting in collusion with the State to further prosecution, and judicial resources would best be served by simply asking Mr. Schmidt "exactly what did you do to defend your client, Mr. Ayo."

Nevertheless, may it please the Court: Defense Counsel's failure to expose witness plea agreement with the State and impeach his motivation to testify and commit perjury. Coupled with Mr. Schmidt's further failure **to** motion for mistrial when the Prosecutor tampered with witnesses, and, jurors' sleeping through Defense case in chief, fell way below an objective standard of reasonable

-54-

---

170 Trial Court denied Mr. Ayo's motion to transcribe closing arguments in March 2010.
171 *United States v. Young*, 470 U.S. 1, 14-15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).
172 *U.S. v. Herrera*, 531 F.2d 788, 789 (5th Cir. 1976).
173 *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

professional norms[134].

In satisfying the **Second-Prong** of *Strickland*: Petitioner contends, but for Defense Counsel's unprofessional error(s) and blatant "refusal" to defend his constitutional right(s) to a fair trial, absent other crime(s) evidence. Moreover, had arrange for Defendant to cooperate and present highly estimable mitigating factor(s) in his defense. The case would not have proceeded to trial and, resulted in a lenient sentence. However, even had trial still commenced. If Mr. Schmidt exposed the State's obvious perjury and fraud on court. Defendant would "not" have testified and jury not learned of his criminal history, believed the truthful version of facts, and acquit Mr. Ayo[175].

## CLAIM NO. 61

**THE CUMULATIVE EFFECT OF DEFENSE COUNSEL'S FUNDMENTAL ERROR(S), VIOLATED DEFENDANT'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT(S).**

### FACTS AND ARGUMENT IN SUPPORT

Petitioner contends, in the interest of judicial economy he need not methodically reiterate the preceding "sixty", sixty (60) inexcusable and unprofessional error(s) of Defense Counsel to demonstrate it prejudiced the entire trial, resulting in an unjust conviction that violated due process of equal protection of law.

The Federal Court's in *Derden v. McNeel*,[176] developed a three-prong standard to evaluate whether relief should be granted for cumulative error(s) in the conduct of a State trial. The Defendant must show:

1.) The individual error(s) involve matter of constitutional dimension;

2.) The error(s) are not procedurally barred;

3.) And the error(s) so inflected the entire trial, that the resulting conviction violates due process. *Id.* at 1454.

In satisfying the **First-Prong** of *Derden*: Petitioner contends, with the cumulative effect of so many error(s), it would be nothing less than a waste of judicial resources to engage in an argument that at least sixty (60) or more error(s) did not surpass the harmless error test of *Chapman*,[177] and try to rationalize that Mr. Ayo received his Sixth and Fourteenth Amendment Constitutional Due Process right(s) to effective assistance of counsel, and, a fair trial.

-55-

174 *Kirkpatrick v. Whitley*, 992 F.2d 491, 495 (5th Cir. 1993), remand was required to determine whether prosecutor presented falsified evidence.
175 *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993), such a corruption of the truth-seeking process would strike at the confidence of the conviction.
176 *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992).
177 *Chapman v. California*, 386 U.S. 18, 25-26, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Nevertheless, Defense Counsel's blatant malpractice in a nutshell will demonstrate:

1. Mr. Schmidt did not investigate nor subpoena two (2) "**local**" exculpatory alibi witnesses easily locatable through probation office;

2. Refused to impeach material perjured testimony from record;

3. Failed to subpoena third material witness (cab driver) for suppression hearing(s) who witnesses illegalities;

4. Failed to subpoena Defense Investigator;

5. Refused to subpoena exculpatory evidence (police video);

6. Refused to introduce exculpatory evidence (affidavit and Western Union receipt) on two (2) occasion(s);

7. Refuse to argue a single legal authority in "suppression" hearing;

8. Failed to subpoena a single witness, including the arresting officer at (second) suppression hearing;

9. Never visited Defendant for four (4) month(s) leading up to trial;

10. Failed to object or motion for mistrial to countless perjury;

11. Countless prejudicial remark(s) of other crime(s) evidence in presence of jury;

12. Refused to object to obstruction of justice and suggestive identification at jail door;

13. Failing to object to juror(s) sleeping during Defense case in chief.

(See: Exhibit(s) "A", "B", "C", "F", "G" & "J", Attached).

Just to name a few! To ridiculously argue just these thirteen (13) error(s) are not of constitutional dimension would be frivolous.

In satisfying the **Second-Prong** of *Derden*: Petitioner contends, the Louisiana Supreme Court denied Certiorari Review from Direct Appeal March 5, 2010. Thus Mr. Ayo is well within the two (2) year statute of limitation to file post-conviction relief as defined in La. C.Cr.P. Art. 930.8, and Defendant's cumulative error claim is not procedurally barred from review.

In satisfying the **Third-Prong** of *Derden*: Petitioner contends, Defense Counsel material error(s) so infected the entire truth-seeking process of trial, they resulted in a fundamentally unjust conviction of an innocent construction worker, in that:

1. Theo Brickley would have provided exculpatory testimony that Mr. Ayo was in Orleans Parish with him at the time of robbery;

2. Dave would have provided additional exculpatory testimony that he furnished Mr. Ayo with the work knife and zip-up windbreaker "**after**" the crime in question;

3. Mr. Schmidt, acting in collusion with prosecution, refused to argue that any money from jail property room is **not** material evidence;

4. Blatantly refused to argue a single authority at suppression hearing, condoning the introduction of material evidence "illegally" seized without warrant, and, out of lawful jurisdiction;

5. Mr. Schmidt's outright refusal to object or motion for mistrial to repeated perjury;

6. Unlawful suggestive viewing of Mr. Ayo at jail door; and

7. Juror sleeping, etc., etc...

(See: Exhibit(s) "A", "B", "C", "F", "G" & "J", Attached).

Petitioner contends, these seven of sixty (60) or more Defense Counsel error(s) standing alone so inflected the entire trial, as (all) alleged evidence would have been suppressed as a matter of law. The "plain error" denied Mr. Ayo's due process to a fair and impartial trial, resulting in a fundamentally unjust conviction of actually innocent person. Thus satisfying all three-prong(s) of *Derden*.

## CONCLUSION OF RELIEF

WHEREFORE, Petitioner respectfully moves this Honorable Court to GRANT relief as follows:

1. Vacate Mr. Ayo's judgment of conviction and sentence;

2. Order a new trial be held within one hundred and twenty (120) days;

3. Or, IN THE ALTERNATIVE, Order an evidentiary hearing be held on specific time and date.

This I forever pray.

RESPECTFULLY SUBMITTED BY:

GLENN CHARLES AYO #531823
*[PRO SE PETITIONER]*

## AFFIDAVIT OF VERIFICATION

I, _GLENN C. AYO #531823_, hereby declare under penalty of perjury that I read the foregoing

**PETITION FOR POST-CONVICTION RELIEF** and the fact(s) herein are all true, correct and

complete to the best of my knowledge.

SWORN this ___6TH___ day of ___AUGUST___, 2010.

GLENN CHARLES AYO #531823
_[PRO SE PETITIONER]_

## CERTIFICATE OF SERVICE

I, _GLENN C. AYO #531823_, hereby certify that a true copy of petition and memorandum has

been furnished by pre-paid U.S. Postal to:

**DISTRICT ATTORNEY'S OFFICE**
**200 DERBIGNY STREET**
**GRETNA, LOUISIANA 70053**

Mailed this ___6TH___ day of ___AUGUST___, 2010.

GLENN CHARLES AYO #531823
LOUISIANA STATE PRISON
ANGOLA, LOUISIANA 70712
_[PRO SE PETITIONER]_

TWENTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

NO. 07-0369                              DIVISION "M"

STATE OF LOUISIANA

VERSUS

GLENN CHARLES AYO

FILED: _5-16-12_

DEPUTY CLERK

RECEIVED

MAY 21 2012

W.F.P.S.O.

R E C E I V E D

MAY 2 1 2012

Legal Programs Department

## RE-ISSUED ORDER*

This matter comes before the court on petitioner's **APPLICATION FOR POST-CONVICTION RELIEF, STAMPED AS FILED AUGUST 11, 2010, STATE'S RESPONSE, STAMPED AS FILED NOVEMBER 15, 2010, AND PETITIONER'S WRITTEN OBJECTION AND TRAVERSE TO STATE'S RESPONSE TO POST-CONVICTION, STAMPED AS FILED DECEMBER 1, 2010.**

On November 28, 2007, petitioner was convicted of LSA-R.S. 14:64, relative to armed robbery. On December 5, 2007, the court sentenced him to 87 years imprisonment at hard labor. The Fifth Circuit Court of Appeal affirmed his conviction and sentence. *State v. Ayo*, 08-KA-468 (La. App. 5 Cir. 3/24/09), 7 So.3d 85 *rehearing denied* (4/3/09); *writ denied, State ex rel. Ayo*, 2009-KH-1026 (La. 3/5/10), 28 So.3d 1006.

Petitioner files an application for post-conviction relief, alleging the following claims:

1.    Ineffective assistance of counsel in counsel's delay in retaining investigator, and negligence in moving for continuance in suppression hearing.

2.    Ineffective assistance of counsel in counsel's failure to investigate and secure two exculpatory witnesses for suppression hearings and/or trial.

3.    Ineffective assistance of counsel in counsel's failure to subpoena witness for suppression hearing.

4.    Ineffective assistance of counsel in counsel's failure to subpoena investigator as a witness.

5.    Ineffective assistance of counsel when counsel refused to submit exculpatory evidence.

6.    Ineffective assistance of counsel when counsel failed to impeach witness, and when counsel did not object to perjured testimony.

7.    Ineffective assistance of counsel when counsel failed to impeach witness, and when counsel did not object to perjured testimony, regarding the testimony of Detective Jewell and Deputy Simoneaux.

8.    Ineffective assistance of counsel when counsel failed to impeach witness, and when counsel did not object to perjured testimony, regarding the testimony of Deputy McCoy.

9.    Ineffective assistance of counsel when counsel failed to impeach witness, and when counsel did not object to perjured testimony, regarding the testimony of Mr. DeBroy.

10.   Ineffective assistance of counsel when counsel did not object to improper suggestive in-court identification.

11.   Ineffective assistance of counsel when counsel failed to subpoena material evidence of illegal investigative stop and lawless police brutality.

12.   Ineffective assistance of counsel in counsel's failure to affectively argue suppression laws on suggestive show-up identification.

13.   Ineffective assistance of counsel in counsel's failure to challenge sufficiency of evidence for arrest.

14.   Ineffective assistance of counsel in counsel's failure to argue suppression law on sufficiency of evidence in hot pursuit to arrest in another parish.

15.   Ineffective assistance of counsel in counsel's failure to argue suppression law on illegal investigative stop out of jurisdiction.

*1*

Issued on 5-16-12

16.   Ineffective assistance of counsel in counsel's failure to argue lack of statutory authority for private citizen to execute investigative stop.

17.   Ineffective assistance of counsel in counsel's failure to challenge sufficiency of probable cause for a private citizen to arrest.

18.   Ineffective assistance of counsel in counsel's failure to argue that defendant was stopped because he was a white male.

19.   Ineffective assistance of counsel in counsel's failure to argue illegal investigatory stop.

20.   Ineffective assistance of counsel in counsel's failure to argue that the illegal stop was not grounds for arrest.

21.   Ineffective assistance of counsel in counsel's failure to investigate exculpatory evidence (DNA on knife).

22.   Ineffective assistance of counsel in counsel's failure to argue suppression of weapon because of illegal stop.

23.   Ineffective assistance of counsel in counsel's failure to argue that money recovered from defendant was result of illegal search, and failure to investigate alibi witness.

24.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on search incident to lawful arrest.

25.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on seizure of abandoned property.

26.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on unlawful search of pockets exceeded *Terry* pat-down for weapons.

27.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on alleged evidence not identified.

28.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on alleged evidence violated chain of custody.

29.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on evidence not matching description.

30.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on unlawful search prior to arrest.

31.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on unlawful search beyond suspect's immediate control.

32.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on unlawful search of defendant's closed travel bag not justified under plain view exception.

33.   Ineffective assistance of counsel in counsel's failure to neither impeach witnesses nor argue suppression laws on perjury of alleged inculpatory statement.

34.   Ineffective assistance of counsel in counsel's failure to object to abuse of the writ and abuse of judicial discretion.

35.   Ineffective assistance of counsel in counsel's failure to subpoena a single witness to properly challenge "illegally" seized evidence during second suppression hearing and neglected a motion for continuance.

36.   Ineffective assistance of counsel in counsel's failure to subpoena exculpatory evidence.

37.   Ineffective assistance of counsel in counsel's failure to subpoena exculpatory evidence.

38.   Ineffective assistance of counsel in counsel's failure to visit or consult with client in jail to prepare a defense.

39.   Ineffective assistance of counsel in counsel's failure to object when trial court violated defendant's right to participate in challenging and impaneling jury.

40.   Ineffective assistance of counsel in counsel's failure to object to highly inflammatory rhetoric in opening arguments.

41.   Ineffective assistance of counsel in counsel's failure to the State capitalizing on perjury and other crimes in opening statements.

42.   The Chief Court Reporter committed material fraud on court.

43.   Prosecutorial misconduct.

44.   Trial court committed plain error in sustaining objection and ruled contrary to Florida law.

45.   Trial court abused judicial discretion and fundamental error refusing to admonish jury.

46.   Ineffective assistance of counsel in counsel's failure to argue suppression laws on impeachment evidence.

2

47.     Ineffective assistance of counsel in counsel's failure to redact irrelevant portions of highly prejudicial evidence.

48.     Ineffective assistance of counsel in counsel's failure to argue breach of pretrial agreement.

49.     Ineffective assistance of counsel in counsel's misleading defendant with false advice.

50.     Ineffective assistance of counsel in counsel's failure to argue suppression laws on illegal evidence.

51.     Ineffective assistance of counsel in counsel's failure to argue laws on perjury, fraud on court, or abuse of judicial discretion when testimony exceeded permissible scope of evidence.

52.     Ineffective assistance of counsel in counsel's failure to object to highly inflammatory rhetoric of being in jail.

53.     Ineffective assistance of counsel in counsel's failure to impeach witness on plea agreement with State.

54.     Ineffective assistance of counsel in counsel's failure to impeach on State's obstruction of justice tampering with witnesses.

55.     Prosecutor feloniously tampered with defense witness.

56.     Ineffective assistance of counsel in counsel's refusal to object and make a record of numerous illegalities.

57.     Ineffective assistance of counsel in counsel's refusal to move for a mitigation hearing.

58.     Ineffective assistance of counsel in counsel's failure to object to abuse of judicial discretion.

59.     Ineffective assistance of counsel in counsel's refusal to move for a mistrial after at least two jurors fell asleep.

60.     Ineffective assistance of counsel in counsel's failure to object to highly inflammatory rhetoric in closing arguments.

61.     The cumulative effect of defense counsel's fundamental error(s).

The State responded to this application, as ordered by the court. In its response, the State raises procedural bars to some of the claims. Such procedural objections must be ruled on before any court may proceed to the merits. LSA-C.Cr.P. art. 927 (A).

Procedural Objections

As the State argues, the merits of claims #9 and 12, regarding suggestive and insufficient identification, were addressed on appeal.  The merits of claims #2, 5, and 23 (partially), regarding failure to investigate, were addressed on appeal. The merits of claims # 13-20, 22, and 23 (partially), dealing with arrest, search, and seizure, were addressed on appeal. The merits of claims # 24-26, 27 (partially), 28 (partially), 29-30, were addressed on appeal. The merits of the claims dealing with Officer Jewell's testimony, #6-7, were addressed on appeal. The merits of the claims about defendant's bag, #31-32, were addressed on appeal.  The merits of the claim regarding the court reporter committing fraud, #42, were addressed on appeal. The merits of the claims regarding prosecutor's remarks as to other crimes, # 46, 47, and 52, were addressed on appeal. The merits of the claim that the court's failure to admonish the jury regarding the State's comments of Brickley pleading guilty, claim #45, was addressed on appeal. The merits of claim #35, counsel's failure to subpoena witnesses, and # 61, cumulative effect, were addressed on appeal.

Under LSA-C.Cr.P. Art. 930.4(C), unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.  These claims (as listed above in preceding paragraph) were previously included and argued assignments of error in petitioner's direct appeal. The merits of these claims shall not be reviewed by this court, and are procedurally denied.  Moreover, as to the ineffective assistance of counsel claims mentioned above, if the court were to address the merits of these claims, the court would find that petitioner proves neither prong of *Strickland* as to ineffective assistance of counsel, as he shows no deficient performance, and no prejudice.

The court finds claim # 21, regarding DNA evidence, repetitive and successive, as the court has already denied the merits of the claim on October 12, 2010. This claim is procedurally barred from further review.

3

The court finds that claims # 43 and 44 are procedurally barred under LSA-C.Cr.P. art. 930.4. The court finds petitioner's claims are barred because they could have been, but were not, raised on appeal. Under La.C.Cr.P. art. 930.4, such claims should be denied. Additionally, the court finds that under *State ex rel. Rice v. State*, 749 So.2d 650 (La. 1999), Petitioner's proper use of the Uniform Application satisfies the requirement of LSA-C.Cr.P. art. 930.4(F). Petitioner fails to explain the reasons for not previously raising these claims. The court finds these claims are procedurally barred from judicial review.

## Ineffective assistance of counsel

Petitioner makes numerous claims involving ineffective assistance of counsel. It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Washington*, 491 So.2d 1337 (La.1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Legrand*, 2002-1462 (La.12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the *Strickland* test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. *State v. Soler*, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

The Supreme Court has emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674 .

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claim of ineffective assistance made in the instant application and argued in the petitioner's memorandum in support, as well as the State's response.

### Claim #1

Petitioner claims that counsel failed to investigate and secure witnesses for a suppression hearing and trial. His argument as to this claim is purely speculative. He fails to show evidence of how counsel was ineffective, or how the outcome of trial would have been different. He does not prove prejudice. Petitioner does not meet his burden for post-conviction relief.

### Claim # 3

Petitioner claims that counsel failed to investigate and subpoena witness for suppression hearing. His argument as to this claim is purely speculative. He fails to show evidence of how counsel was ineffective, or how the outcome of trial would have been different. He does not prove prejudice. Petitioner does not meet his burden for post-conviction relief.

### Claim #4

Petitioner claims that counsel failed to subpoena defense investigator as a witness. His argument as to this claim is purely speculative. He fails to show evidence of how counsel was ineffective, or how the outcome of trial would have been different. He does not prove prejudice. Petitioner does not meet his burden for post-conviction relief.

### Claim #8

Petitioner claims that counsel failed to impeach Deputy McCoy for perjury. As the State surmises in its response, the issue at the suppression hearing was whether or not the identification was suggestive. The court finds no merit to petitioner's claim, as based on the testimony presented at trial, the victim clearly identified the defendant as the perpetrator. Petitioner fails to meet his burden, as he does not show how counsel was ineffective, and does not prove prejudice.

4

### Claim # 10

Petitioner claims that counsel failed to object to improper suggestive in-court identification at trial. The court had previously found that the initial identification made by the victim was not suggestive. The court finds no merit to this claim. Petitioner fails to meet his burden, as he does not show how counsel was ineffective, and does not prove prejudice.

### Claim #11

Petitioner argues that counsel failed to subpoena material evidence of an illegal investigative stop and police brutality. This allegation is purely speculative, as petitioner presents no evidence in support thereof. He fails to show evidence of how counsel was ineffective, or how the outcome of trial would have been different. He does not prove prejudice. Petitioner does not meet his burden for post-conviction relief.

### Claim #33

Petitioner argues that counsel erred in failing to impeach Det. McCoy and expose perjury. As the State argues, defendant was convicted on the weight of the evidence and not on the statement of whether the window was up or down, or where defendant was originally picked up. Petitioner fails to show any significant error or prejudice.

### Claim #34

Petitioner contends that counsel was ineffective for not objecting to abuse of writ and abuse of judicial discretion. A review of the record shows that on November 15, 2007, counsel objected to the dismissal of petitioner's pro se filing and argues on petitioner's behalf. The court finds no merit to this claim.

### Claim # 36

Petitioner claims that counsel was ineffective for failing to subpoena medical records. Petitioner does not show how these medical records are relevant. The court finds no merit to this claim.

### Claim #37

Petitioner claims that counsel was ineffective for failing to subpoena cell phone records of the taxi driver. Petitioner argues that these phone records would support defendant's alibi, and would show what time defendant was picked up. Petitioner provides no proof or evidence, hence the court finds this claim purely speculative. Additionally, defendant was convicted on the weight of the evidence and not on the statement of where or when defendant was originally picked up. Petitioner fails to show any significant error or prejudice.

### Claim # 38

Petitioner argues that counsel was ineffective for failure to consult with him while incarcerated, and failure to provide a defense. The court has reviewed counsel's performance in this case, and finds that petitioner fails to meet his burden in this claim, and fails to show any prejudice. The court finds that he does not meet either prong of *Strickland*.

### Claim #39

Petitioner claims that counsel was ineffective in failing to object when trial court violated his right to participate in challenging and impaneling the jury. Petitioner was present in the court room, though excluded in bench conferences. The court finds no merit to petitioner's claims, and no prejudice.

### Claim # 40

Petitioner claims that counsel was ineffective in refusing to object in opening arguments. The court finds that the opening statements of the prosecutor conformed to LSA-C.Cr.P. art. 766. The court finds no merit to petitioner's claim.

### Claim #41

Petitioner contends that counsel was ineffective in not objecting to perjury and other crimes in prosecutor's opening statements. The court finds that the opening statements of the prosecutor conformed to LSA-C.Cr.P. art. 766. The court finds no merit to petitioner's claim.

### Claim #48

Petitioner claims that counsel failed to argue breach of pretrial agreement. However, petitioner fails to carry his burden in this case. The exhibit presented in support of this claim appears to be petitioner's hand-written notes from trial. He presents no evidence to the court that would establish any prejudice. Moreover, the state is allowed to use evidence that may not be used for the truth of the matter asserted, when said evidence is used for impeachment purposes.

### Claims #49, 50, and 51

Petitioner claims that counsel misled him with false advice regarding a nurse from jail testifying, and failure to object to his medical records being presented in court. The court finds no merit to these claims, as counsel in fact argued for suppression of the medical records and lodged objections, which were overruled. Furthermore, petitioner fails to show any prejudice.

5

### Claim #53 and 54

Petitioner claims that defense counsel failed to impeach witness on plea agreement with State, and failed to impeach on State's obstruction of justice and tampering with witnesses. The court finds that petitioner has not provided sufficient evidence in support of these claims. In as far as petitioner again contests the legality of the stop, the appellate court has ruled that the stop was legal. Petitioner's claims are purely speculative, and he shows no prejudice.

### Claim #55

Petitioner argues that the prosecutor tampered with defense witness, Theo Brickley. This allegation is speculative and conclusory, and not supported by the record. The court finds no merit to this claim. *The court notes that ineffective counsel is not alleged in this claim, and this claim is not subjected to the *Strickland* standard.

### Claim #56

Petitioner argues that counsel was ineffective in refusing to object to the cumulative list of objections petitioner provided to trial counsel prior to trial. As the State points out in its response, many of these objections are included in petitioner's application for post-conviction relief. Petitioner fails to meet the *Strickland* standard, as he does not show how lodging these objections prior to trial would have been successful and/or would have changed the outcome of the trial. He does not prove prejudice.

### Claim #57

Petitioner argues that counsel was ineffective in refusing to move for a mitigation hearing, based on meetings with the Federal Drug Enforcement Administration and the Louisiana State Police. He presents no evidence that the State would have entertained a plea bargain. This claim is purely speculative and conclusory. Petitioner does not show any inadequate performance in counsel's actions, or prejudice resulting. He is not entitled to relief on this claim.

### Claim #58 and 59

Petitioner claims that counsel was ineffective for failing to timely move for a recess and argues that jurors fell asleep during the State's case. He claims that the jury reached an unjust verdict because they were fatigued. Petitioner provides no evidence to support this claim. Again, his claim is based on speculation and is conclusory in nature. He meets neither prong of *Strickland*, and is not entitled to relief.

### Claim #60

Petitioner claims that counsel was ineffective in failing to object to inflammatory statements in the State's closing arguments. He argues that the State made false statements; however, he provides no proof or evidence in support of this claim. The court finds as a matter of law that the petitioner has failed to meet his burden of proof or to prove a violation of the *Strickland* standard. He has not established that either prong of the *Strickland* standard has been violated.

*This exact order was originally signed and issued under case # 07-370, defendant's companion misdemeanor case, on February 22, 2011. The court now re-issues the same order under the proper felony case number.

Accordingly,

**IT IS ORDERED BY THE COURT** that the petitioner's application for post-conviction relief be and is hereby **DENIED**.

Gretna, Louisiana this 16th day of May , 2012

_____
JUDGE

PLEASE SERVE:
PRISONER: Glenn Ayo, DOC # 531823, Louisiana State Penitentiary, Angola, LA 70712

Terry Boudreaux, Anne Wallis, Research and Appeals, Office of the District Attorney, 200 Derbigny St., LA 7005

6

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE

_____
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON

RECEIVED

MAY 23 2013

Legal Programs Department

SCANNED at LSP and Emailed
5-23-13 by ฿m. 18 pages
date        initials   No.

# APPENDIX - G

STATE OF LOUISIANA                    COURT OF APPEAL

VERSUS                                FIFTH CIRCUIT

GLENN CHARLES AYO                     STATE OF LOUISIANA

                                      NO. 12-KH-583

---

## APPLICATION FOR SUPERVISORY AND/OR REMEDIAL WRIT

---

### FROM THE DENIAL OF APPLICATION FOR POST CONVICTION RELIEF
### BY THE HONORABLE HENRY G. SULLIVAN, JR., JUDGE, TWENTY-FOURTH
### JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, NO. 07-369, DIVISION "M"

---

### PRO SE APPLICATION OF GLENN CHARLES AYO

RESPECTFULLY SUBMITTED PRO SE BY:

GLENN CHARLES AYO #531823

LOUISIANA STATE PENITENTIARY

ANGOLA, LA 70712

**TABLE OF CONTENTS**

PAGE NO.

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Assignment of Error(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2 – 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 – 12

Oath/Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Appendix - A (with Exhibit(s) Attached)

Appendix -B

## JURISDICTION

The appellate court has supervisory jurisdiction pursuant to Article 5, § 10(B), Louisiana Constitution (1974), and Article 874, La. C.Cr.P. to consider claim(s) that actual innocent petitioner has been unconstitutionally convicted.

## STATEMENT OF CASE

The petitioner/appellant, Glenn Ayo, was arrested January 7, 2007 and charged by Bill of Information with armed robbery, in violation of LSA-R.S. 14:64. Trial was held November 27 - 28, 2007. Petitioner was convicted at jury trial. The court sentenced him to 87 years imprisonment at hard labor.

The Fifth Circuit Court of Appeal affirmed his conviction and sentence. *State v. Ayo*, 7 So.3d 85 (La.App. 5 Cir.2008). The Louisiana Supreme Court denied his writ of review. *State ex rel. Ayo v. State*, 28 So.3d 1006 (La.2010).

Petitioner filed an Application for Post Conviction Relief August 11, 2011. The State's response was filed November 15, 2010, and petitioner's written objection and traverse to State's response filed December 1, 2010. (See Appendix - A, with Exhibit(s) attached).

The Honorable Henry G. Sullivan, Jr. denied relief May 16, 2012. (See Appendix - B, attached)

## PROCEDURAL ASSIGNMENT OF ERROR(S)

SUBCLAIM 1: The district court adopted the State's contention in final order on petition for post conviction relief, alleging that the merits were addressed on direct appeal for claim(s) 2, 5, 6, 7, 9, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 35, 42, 43, 44, 45, 46, 47, 52, and 61 (thirty-five (35) claim(s).

Petitioner contends that the ruling of district court is suspect, in light of the Fifth Circuit's decision in *State v. Ayo*, 7 So.3d 85, 90-91 (La.App. 5 Cir.2009), defendant filed a pro-se supplemental brief arguing eleven (11) assignment of errors on appeal - [not thirty-five (35)] - as erroneously alleged in district court order. Id. at 90 - 91.

Further, assignment of error eight (8) on direct appeal, one sole claim appellant raised ineffective assistance of counsel. The Fifth Circuit, however, held that *the trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel.* Id. at 99.

Therefore, the district court ruling is wholly frivolous and case must be remanded to lower tribunal for review of the remaining thirty-five (35) claims of ineffective assistance of counsel strategically disregarded.

SUBCLAIM - 2: The district court erroneously applied LSA-C.Cr.P. art. 930.4 (C), to procedurally deny the aforementioned thirty-five (35) claims. In light of the fact that the Fifth Circuit also held that the record is insufficient to review claims of ineffective assistance of counsel. 7 So.3d at 99. Thus, on issue(s) never before heard, Mr. Ayo has been effectively denied his Fourteenth Amendment constitutional right to due process and equal protection of law.

SUBCLAIM - 3: The district court frivolously denied Claim 21 as repetitive and successive. The petitioner's *post-trial* "Motion for DNA Testing" on claim of actual innocence, does not bar challenge of counsel's *pre-trial* ineffective assistance for his complete incompetency to test the evidence in question.

SUBCLAIM - 4: The district court erroneously denied Claim(s) 43 and 44. When prosecutorial misconduct "not" objected to by ineffective defense counsel *could* and *should* not have been raised on direct appeal. The order is wholly frivolous.

Wherefore, the procedural assignment of error(s) alone require reversal of district court's order.

## ASSIGNMENT OF ERROR(S)

CLAIM -1: The district court's order is wholly frivolous. Petitioner attached eight (8) unanswered letters directed to defense counsel as evidence of ineffective assistance. Further, (Exhibit -B attached to petition) contains a detailed map to the front door of the home of exculpatory witnesses. See Harrison v. Quarterman, 496 F.3d 419, 427-28 (5th Cir.2007)(citing Anderson v. Johnson, 338 F.3d 382, 393-94 (5th Cir.2003), counsel's failure to have the only known exculpatory witness testify satisfied Strickland's prejudice requirement.

CLAIM -2: The district court erroneously curtailed claim. The Fifth Circuit addressed counsel's failure to contact one (1) witness, Theo Brickley, on direct appeal. 750 So.3d at 102.

2

However, failed to address counsel's complete failure to contact and investigate all three (3) -- not one (1) -- exculpatory defense witnesses. See Code v. Montgomery, 799 F.2d 1481, 1484-85 (11th Cir.1986), counsel's failure to move for continuance and present alibi defense deprived defendant of a fundamentally fair trial.

CLAIM -3: The district court's order is a mockery to the judicial system. William Barrett was the driver and *primary* witness present for illegal stop and arrest out of jurisdiction, present for unlawful exploratory search and seizure of alleged evidence. His testimony was *material* to suppression hearing. See Harrison v. Quarterman, 496 F.3d 419, 427-28 (5th Cir.2007)(citing Anderson v. Johnson, 338 F.3d 382, 393-94 (5th Cir.2003, counsel's failure to have the only known exculpatory witness testify satisfied Strickland's prejudice requirement.

CLAIM -4: The district court's order is frivolous. Defense investigator Ronnie Montgomery was to locate three (3) witnesses, and drive route traveled (3x) to establish time of Mr. Ayo's alibi. See Code v. Montgomery, 799 F.2d 1481, 1484 (11th Cir.1986), counsel's failure to present alibi defense deprived him of a fundamentally fair trial.

CLAIM -5: The district court erroneously curtailed another major claim. Petitioner had an affidavit from Theo Brickley, *primary* exculpatory witness defense counsel alleged he could not locate. Then counsel ineffectively *refused* to submit the material evidence at trial. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -6: The district court erroneously curtailed claim. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -7: The district court erroneously curtailed claim. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

3

CLAIM -8: The district court misleads other the court's in order.  See *Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979), police violated Fourth and Fourteenth Amendment when, without probable cause, they seized petitioner for interrogation. *Pretrial* identification obtained during illegal detention cannot be introduced.  *United States v. Crews*, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

CLAIM -9: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -10: The district court failed to distinguish between the initial "show-up" identification, and petitioner's challenge of the suggestive "in-court" identification in presence of jury.  Moreover, the prejudice that flowed·from the prosecutor's statement display an improper introduction of said evidence.  See *State v. Bright*, 776 So.2d 1134, 1145 (La.2000), the identification procedure is suggestive if it unduly focuses a witness attention on the suspect. *No picture can be singled out.* *State v. Frank*, 537 So.2d 236, 239 (La.App. 4 Cir.1988).

CLAIM -11: The district court's order is ambiguous.  Had defense counsel not been wholly ineffective and properly subpoenaed *material* evidence petitioner repeatedly requested.  (See Exhibit(s)).  They would have been plenty evidence of illegal investigative stop out of jurisdiction, police brutality, and actual innocence.  See *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), hostility of seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment.

CLAIM -12: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -13: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

4

CLAIM -14: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -15: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -16: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -17: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -18: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -19: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -20: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -21: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -22: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -23: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -24: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -25: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -26: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -27: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -28: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -29: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -30: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -31: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -32: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM 33: The district court's order is wholly frivolous.  The purjury is false material evidence that went to fundamentally unjust conviction.  See State v. Fisher, 720 So.2d 1179, 1185-86 (La.1998), defendant's alleged statements were inseparable from his illegal detention and should not have been admitted, even though voluntarily given.

CLAIM -34: The district court confused the facts of argument.  The issue is not counsel's failure to object at suppression hearing of November 15, 2007 -- but hearing of August 16, 2007.  See State v. Robinson, 877 So.2d 1131, 1135 (La.2002), cross-examination is the primary means by which to test the believability and truthfulness of testimony and has traditionally been used to impeach or discredit witnesses.

CLAIM -35: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that *"trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.

CLAIM -36: The district court's order is frivolous.  Had defense counsel subpoenaed *material* witnesses and evidence from out of state, it would have disproved state's case in chief that defendant *"ran"* several blocks to escape.  See State v. Hogan, 372 So.2d 1211, 1214 (La.1979), defendant is entitled to summons, at state expense, attendance of witnesses from outside

the state.

CLAIM -37: The district court's order is ambiguous. Defense counsel's failure to subpoena cell phone records, record(s) that would support alibi and exculpate defendant is *"evidence,"* is the *"proof"* the court frivolously alleges he don't provide. See United States v. Drones, 218 F.3d 496, 500 (5th Cir.2000), when claim is based on counsel's failure to investigate issue, court looks to degree of investigation undertaken.

CLAIM -38: The district court's order is laughable. Defense counsel failed to consult with defendant four (4) months prior to jury trial, then coerced Mr. Ayo to blindly take stand in his own defense. Counsel's own *inactions* self-satisfy both the *"unreasonable"* performance and *"prejudicial"* prong(s) of Strickland v. Washington.

CLAIM -39: The district court's order is wholly frivolous. See LSA-C.Cr.P. art. 831(A)(3); La.Const. Art. I, § 17(A). See also State v. Grogan, 723 So.2d 1049, 1050 (La.App. 3 Cir.1998). The violation of defendant's right to full voir dire examination was not harmless error although there was no evidence that defendant was prejudiced, required reversal of conviction and new trial.

CLAIM -40: The district court's order erroneously denied relief. See United States v. Morris, 568 F.2d 396, 402 (5th Cir.1978)(citing United States v. Wayman, 510 F.2d 1020, 1028 (5th Cir. 1975)), an attorney properly may state "I believe the evidence has shown the defendant's guilty," but may not state "I believe that the defendant is guilty."

CLAIM -41: The district court's order is wholly frivolous. Is so much as, the opening and closing arguments were *"not"* transcribed. The court *denied* pro se motion to transcribe those portions of record. Thus, it can not adequately be determined whether the prosecutor's statements conform to LSA-C.Cr.P. art. 766, as frivolously ordered. (See case review/docket master).

CLAIM -42: The district court's order is erroneous. It's plain error to allow *same* entity review record(s) and tape(s) for their *own* material fraud on court. (See order to review)

8

CLAIM -43: The district court's order is frivolous.  See United States v. Young, 470 U.S. 1, 105 S.Ct. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); United States v. Restrepo-Granda, 575 F.2d 524, 529-30 (5th Cir.1978), conviction obtian by such inflammatory rhetoric must be reversed as the prosecutor's remark(s) rose to a level of "plain error."

CLAIM -44: The district court's order is erroneous.  Once defendant stipulated to prior conviction, specific facts relative to the prior offense were foreclosed to the prosecution.  See State v. Pounds, 359 So.2d 150, 153 (La.1978).

CLAIM -45: The district court's order is wholly frivolous, In so much as, the trial court had a judicial duty to stop inflammatory opinion(s), *not* questions put to witness, and admonish jury. LSA-C.E. art. 403 and 404(B)(1); LSA-C.Cr.P. art. 770 and 771.  See also State v. Barber, 617 So.2d 974, 976 (La.App. 4 Cir.1983).

CLAIM-46: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that "*trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel.*" 750 3d at 99.

CLAIM-47: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that "*trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel.*" 750 3d at 99.

CLAIM -48: The district court's order is wholly frivolous.  The state breached pretrial agreement and Louisiana law. LSA-C.Cr.P. art. 921.  Blackmon v. Scott, 22 F.3d 560, 565 (5th Cir.1994), hearing was *required* as to due process claim relating to unfair surprise. See also State v. Falton, 290 So.2d 273, 278 (La.1974).

CLAIM -49, 50, 51: The district court's order is erroneous, finding no merit to claim(s). When the Fifth Circuit in United States v. Mays, 872 F.2d 582, 587-88 (5th Cir.1989), held that trial court abused its discretion admitting evidence was not harmless and should have been excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. LSA-C.E. art. 403.

CLAIM -52: The district court erroneously curtailed claim.  When the Fifth Circuit on direct appeal held that "*trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel.*"  7 So.3d at 99.

CLAIM -53. and 54: The district court's order is wholly frivolous.  The United States Supreme Court in Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), reason that exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.  United States v. Sanflippo, 564 F.2d 176, 178 (5th Cir.1977), witness refusal to disclose promise of immunity in another case which would have affected his credibility *required reversal*.  See State v. Robinson, 817 So.2d 1131, 1135 (La.2002).

CLAIM-55: The district court's order is erroneous, absent an evidentiary hearing.  See Kirkpatrick v. Whitley, 992 F.2d 491, 495 (5th Cir.1993), such corruption of the truth-seeking process would strike at the confidence of the conviction and sentence, and remand was *required* to determine whether prosecutor presented falsified evidence.  Id., at 497

CLAIM -56: The district court's order is wholly frivolous.  Petitioner points out to the court that the per se "cumulative list" of objections provided to counsel prior to trial are on petition for post-conviction relief.  Because logically, defense counsel *failed* to object and preserve Mr. Ayo's constitutional due process right to a fair trial and appeal, respectively.  Thus, such a "cumulative" list of non performance satisfy the prejudicial prong(s) of Strickland v. Washington.

CLAIM -57: The district court's order is laughable.  The Federal Drug Enforcement Administration was requesting defense counsel to arrange the date and time for a sit-down meeting with the state, which counsel *repeatedly* refused to arrange.  But the district court does not see "any inadequate performance in counsel's actions."  Stop-the-Madness!

CLAIM -58: The district court's order is wholly frivolous.  Half the jury panel expressed the need to stop and come back tommorow.  (R. 372-373).  Yet alleges "*petitioner provided no evidence to support this claim.*"  United States v. Giruldi, 86 F.3d 1368, 1374 (5th Cir.1996),

10

defense counsel ineffectively neglected to motion for recess until the next day.

CLAIM -59: The district court's order is wholly frivolous.  An evidentiary hearing is required to determine whether two jurors were sleeping.  The prejudice is obvious.  United States v. Giruldi, 86 F.3d 1368, 1374 (5th Cir.1996).

CLAIM -60: The district court's order is wholly frivolous.  In light of the fact that the trial court denied petitioner's motion to transcribe closing arguments and, evidentiary hearing herein. Logically Mr. Ayo cannot attach "*proof or evidence*."  See Kirkpatrick v. Whitley, 992 F.2d 491, 495 (5th Cir.1993), remand was *required* to determine whether prosecutor presented falsified evidence.

CLAIM -61:  The district court's order is wholly frivolous.  The cumulative effect of defense counsel's error(s) addressed in eleven (11) assignments of error on direct appeal, has absolutely *no* connection to sixty-one (61) claims of ineffective assistance raised on *post-*conviction relief.  See Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir.1993), such a corruption of the truth-seeking process would strike at the confidence of the conviction.  See also Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir.1992).

**CONCLUSION OF RELIEF**

Petitioner/appellant has demonstrated permanent prejudice to the ability of his counsel to provide adequate representation and fairness of the criminal proceedings leading to his conviction, and now, serious injustice of collateral review by the trial court.  There is effect of a *constitutional dimension* which needs to be purged to make certain that Mr. Ayo has been effectively represented and fairly convicted/acquitted on claim of actual innocence.  The Sixth and Fourteenth Amendment violation(s) provide relief for the ineffective assistance of counsel and denial of due process of law, respectively.

11

**WHEREFORE**, petitioner respectfully moves this Honorable Court to *grant* the remedial writ as follows:

1. Issue an opinion correcting the district court's decision *conflicting* with record and well settled law; and,

2. Remand to the district court for an evidentiary hearing, *not* inconsistent with the opinion of Fifth Circuit.

This I forever pray.

Respectfully submitted,

_____

Petitioner Pro se

## AFFIDAVIT VERIFICATION

I, Glenn C. Ayo #531823, hereby declare under penalty of perjury that I read the foregoing Application for Supervisory and/or Remedial Writ and the facts herein are all true, correct and complete to the best of may knowledge.

Sworn this ___6ᵗʰ___ day of July, 2012.

_____
Petitioner Pro se

## CERTIFICATE OF SERVICE

I, Glenn C. Ayo #531823, hereby certify that a true copy of the writ has been furnished by prepaid U.S. Postal to:

> District Attorney
> 24th Judicial District
> Parish of Jefferson
> 200 Derbigny Street
> Gretna, LA 70053

Mailed this ___6ᵗʰ___ day of July, 2012.

_____
Petitioner Pro se

Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, LA 70712

13

# *Application For Writs*

## No. '12-KH-583

## COURT OF APPEAL, FIFTH CIRCUIT

## STATE OF LOUISIANA

JUL 20 2012

_____

Deputy Clerk

**STATE OF LOUISIANA**
**VERSUS**
**GLENN CHARLES AYO**

IN RE  GLENN CHARLES AYO

APPLYING FOR  SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE HENRY G. SULLIVAN, JR., DIVISION "M", NUMBER 07-369

**Attorneys for Relator:**

Glenn Charles Ayo #531823
Louisiana State Penitentiary
Angola, LA 70712

**Attorneys for Respondent:**

Terry M. Boudreaux
Assistant District Attorney
Parish of Jefferson
200 Derbigny Street
Gretna, LA 70053
(504) 368-1020

**WRIT DENIED**

See Attached

Gretna, Louisiana, this 29th day of August, 2012.

STATE OF LOUISIANA                    NO. 12-KH-583

VERSUS                               FIFTH CIRCUIT

GLENN CHARLES AYO                    COURT OF APPEAL

                                     STATE OF LOUISIANA

## WRIT DENIED

In his pro se writ application, relator alleges that the district court erred in denying his application for post-conviction relief which was based on allegations of ineffective assistance of counsel.

In his application for post-conviction relief filed in the district court, relator set forth sixty-one claims of ineffectiveness of counsel. In its order denying his application, the district court judge found that numerous claims were procedurally barred because the merits of the claims were addressed on appeal, the claims could have been, but were not, raised on appeal, or the claim was repetitive. Regarding the remainder of claims that were not procedurally barred, the district court addressed each claim and found them to be without merit.

We have reviewed the documents submitted by relator, including the district court's reasons for its denial of the application for post-conviction relief, and have carefully considered his allegations of ineffective assistance of counsel. We find, as did the district court, that relator failed to prove that counsel's performance was deficient and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Accordingly, this writ application is denied.

Gretna, Louisiana, this 24th day of August, 2012.

RAC
_____
JUDGE ROBERT A. CHAISSON

Smc
_____
JUDGE SUSAN M. CHEHARDY

_____
JUDGE MARC E. JOHNSON

A TRUE COPY
GRETNA

AUG 2 4 2012

DEPUTY CLERK
COURT OF APPEAL, FIFTH CIRCUIT