SCANNED at LSP and Emailed
5.23.13 by BM . 80 pages
date        initials   No.

RECEIVED

MAY 2 3 2013

Legal Programs Department

# APPENDIX - H



# The Judiciary Commission of Louisiana
## Office of Special Counsel
601 St. Charles Avenue
New Orleans, Louisiana
70130

Steven Scheckman
Special Counsel

(504) 568-8299
Fax (504) 599-1360

## JUDICIAL MISCONDUCT COMPLAINT

### PART A:    INFORMATION ABOUT YOU: PLEASE KEEP CURRENT

1.   FULL NAME: _GLENN CHARLES AYO #531828_
     TELEPHONE: area code ( _N/A_ )
2.   HOME ADDRESS: _LOUISIANA STATE PENITENTIARY_
     CITY: _ANGOLA_           STATE: _LA_   ZIP: _70712_
3.   EMPLOYER:         _N/A_
     WORK ADDRESS: _N/A_
     CITY: _N/A_        STATE:         ZIP:
     TELEPHONE: area code ( _N/A_ )
4.   NAME OF PERSON WHO CAN ALWAYS REACH YOU: _BURL CAIN, WARDEN_
     ADDRESS & TELEPHONE: _LOUISIANA STATE PENITENTIARY_
     _____ _ANGOLA, LA. 70712_
5.   YOUR STATUS: _____ State/Parish/City Employee    _✓_ Litigant
                   _____ Citizen                       _____ Attorney
                   _____ Elected Public Official        _____ Judge
                   _____ Other _____

### PART B:    INFORMATION ABOUT THE JUDGE

1.   NAME OF JUDGE: _____
2.   TYPE: _____ Unknown
            _____ La. Supreme Court
            _✓_ Court of Appeal
            _____ District
            _____ City or Parish
            _____ Justice of the Peace
            _____ Other
3.   PARISH: _JEFFERSON PARISH, LOUISIANA_
4.   CASE TITLE and NUMBER:(If applicable)
     _STATE-V-AYO, 7 SO. 3d 85 (LA. APP 5TH CIR. 2009)_

The Judiciary Commission of Louisiana is charged with the responsibility of investigating allegations of judicial misconduct
pursuant to Article 5 §25 of the Louisiana Constitution and under the Code of Judicial Conduct.

## PART C:   EXPLANATION OF YOUR COMPLAINT

State in detail why you think this judge has done something improper or has failed to do something which this judge should have done.[1]  Include the names and addresses of all persons who know something about your complaint.  Attach copies of any pleadings, judgments, or any other relevant documents that pertain to your complaint.  Attach additional 8 1/2" x 11" sheets of paper if you need more space for your explanation.

(SEE 22 PAGE COMPLAINT AND EXHIBIT(S) ATTACHED)

[1] The Judiciary Commission of Louisiana does not have the authority to order a judge to change his/her judgment.  If you are dissatisfied with your judgment, consult an attorney regarding filing a writ or appeal.

LIST ALL DOCUMENTS ATTACHED: _EXHIBIT(S) CONTAIN COURT OPINION(S)_

_TRIAL TRANSCRIPT, AND RECORD ON APPEAL IN SUPPORT OF_

_RELIEF_

DATE OF SIGNING: _NOVEMBER 28, 2012_

_____
                COMPLAINANT

_____
                COMPLAINANT

RETURN THIS FORM TO:        The Judiciary Commission of Louisiana
                            Office of Special Counsel
                            601 St. Charles Avenue
                            New Orleans, LA 70130



## CLAIM ONE

MADELINE   JASMINE,   JUDGE   PRO   TEMPORE,
AMONGST ENTIRE PANEL[1], NEGLECTED TO PERFORM
THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND
MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL
TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4),
AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 92 (La. App. 5th Cir.

2009), Judge Madeline Jasmine fraudulently alleged that "It is not clear how [thirty-

three] headings relate to the assignments of error."

Pro Se Assignment of Error Number One (FN 4)

"(FN 4) in addition to eleven assignments of error, this pro se
brief contains thirty-three italicized headings, all mentioning
legal concepts. It is not clear how these headings relate to the
assignment of error"

*Id.*, 7 So.3d at 92, 105. (See Exhibit – A, Attached)

Petitioner contends, the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d at 92,

is a waste of judicial resources violating Federal and State Constitutional law and

right(s) of Mr. Ayo. When a pro se litigant must explain to a *panel of superior judge's*

how the following *subclaim(s)*, also known as Law Key(s), relate to primary heading:

**HEADINGS**          1. Sufficiency of evidence warranting "hot pursuit" to arrest.

Assignment No. 1: The trial court erred finding police may enter
another jurisdiction and forcibly stop and (investigate any citizen on
whim, violating constitutional right(s).

---

1 The panel is composed of Judges Madeline Jasmine, Edward A. Dufrense, Jr., and Walter J.
Rothschild.

2. Lawfulness of "investigatory" stop out of jurisdiction.

(See Exhibit – B, Attached)

Yet, three (3) separate judge(s), entire panel of college graduates with law degree(s) can not discern the resemblance of subclaim(s) and criminal law key(s) taken from the very same law books they are per se to *fairly* decide the law in said opinion.

Moreover, when in comparsion with (Exhibit – C, Attached). This judiciary will note that Mr. Ayo *plagiarized* the format of appellate counsel's brief, which according to Judge Jasmine's decision, is an acceptable practice for attorneys. But not clear nor conforming to uniform rules *only* when it relates to pro se litigants. Thus demonstrating Judge Madeline Jasmine's incompetency to fairly decide judicial matters in violation, but not limited to, Canon 3:A(1), her faithfulness to the law; 3:A(4), perform judicial duties without bias; and 3:A(7), dispose of judicial matters fairly.

## CLAIM TWO

MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, COMMITTED PERJURY AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 92 (La. App. 5th Cir. 2009), Judge Madeline Jasmine committed perjury in published opinion stating that thirty-three "headings are not briefed," and "abandoned on appeal" by Mr. Ayo.

2

Pro Se Assignment of Error Number One (FN 4)

> "(FN 4) in addition to eleven assignments of error, this pro se brief contains thirty-three italicized headings, all mentioning legal concepts. It is not clear how these headings relate to the assignment of error"

*Id.*, 7 So.3d at 92, 105. (See Exhibit – A, Attached)

In the case subjudice, the thirty-three italicized heading(s) all contained "a specification of [legal] errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, . . . giving accurate citations of the pages of the record and the authorities cited." Clearly conforming with *all* the legal requirements of Rule 2-12.4. (See Exhibit – B, Attached).

Nevertheless, the Fifth Circuit Court of Appeal seen fit to publish perjury, fraudulently claiming Mr. Ayo did "not brief" and "abandoned" thirty-three subclaim(s) on appeal. 7 So.3d at 92. Thus creating a *fraud* on all reviewing court's, and horrendously finalizing conviction of an innocent man in violation of, but limited to, <u>Canon</u> 3:A(1), maintain professional competence of the law; 3:A(4), perform judicial duties without bias; and 3:A(7), dispose of judicial matters fairly.

## <u>CLAIM THREE</u>

MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, MISAPPLIED LAW AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

3

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 94 (La. App. 5th Cir. 2009), Judge Madeline Jasmine willfully misapplied constitutional law knowingly making a bias and partial decision against an innocent man.

> "Although all conditions of a citizen's arrest are satisfied in this case, the arrest [in another jurisdiction] passes muster as a close pursuit by a peace officer."

*Id.*, 7 So.3d at 94.

Mr. Ayo contends, Jefferson Parish Sheriff's Office conducted as illegal "*investigative stop*" out of jurisdiction, an unlawful exploratory search, then an illegal arrest – not a "close pursuit of *person to be arrested*." Art. 213(3) & (4), La. C.Cr.P.

The testimonial evidence presented during the suppression hearing and again at trial, (the record at bar), made clear Jefferson Parish Official's were on an illegal roving patrol out of jurisdiction in Orleans Parish. When Mr. Ayo exercised his constitutional right(s) to stop *investigative* questioning and walked away from the non-custodial police encounter. Deputy Paul Simoneaux became enraged and beat down the innocent construction worker, handcuffed, searched, and placed Mr. Ayo in back of his patrol car for an *investigative* show up identification *out-of-jurisdiction*:

> "I notified Deputy McCoy to bring the victim to identify the subject that I *stopped* to see *if* this *could be* the perpetrator." (R. 101, 116, 207, 256). (See Exhibit – D, Attached).

Contrary to the misapplication of law by the Fifth Circuit in *State v. Ayo*, 7 So.3d at 94, by statute, neither a private person in Article 214, nor a peace officer as defined in

4

Article 213, may enter another jurisdiction in this state and conduct *investigative* stop(s), questioning, search, and further conduct one-on-one show up identification process, then arrested;

> "Paul placed him under arrest *when* we identified him." (R. 116).

Clearly Article 213 nor Article 214 authorize police or private citizen's to conduct *investigation(s)* in another parish.

Further these passages from the record additionally demonstrate there was never no **"close pursuit of person to be arrested"** immediately upon first encounter, the prerequisite to enter another jurisdiction in Article 213, La. C.Cr.P. Thus Judge Madeline Jasmine's exhibits an extremely bias and partial decision in violation of <u>Canon</u> 3:A(1), maintain professional competence; 3:A(4), perform judicial duties without bias; and 3:A(7), dispose of judicial matters fairly.

## <u>CLAIM FOUR</u>

> MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, MISAPPLIED LAW AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 95 (La. App. 5th Cir. 2009), Judge Madeline Jasmine willfully misapplied constitutional law and acted in a Legislative capacity rewriting and publishing new Louisiana law.

> "The exception of close pursuit applies in this case . . . the
> arrest was the result of an *uninterrupted investigation* by
> responding officers."

*Id.*, 7 So.3d at 95. (Emphasis added)

Mr. Ayo contends that by such rational, the Fifth Circuit acknowledges the fact

that Jefferson Parish Officers were conducting an "investigation" a few block over the

adjoining parish line. *Id.*, at 95. But misapplied Federal and State Constitutional law, in

that, an "*uninterrupted investigation*" is not the legal standard to enter another

jurisdiction and deprive a person of his property and/or liberty.

The prerequisite under Louisiana law is as follows:

> "An officer in close or hot pursuit of *person to be arrested*.
> May enter another jurisdiction . . ."

Art. 213(3) & (4), L. C.Cr.P.

Not for an officer to enter, conduct stop(s), search, and *investigate in another parish-*

*"bring the victim to see if this could be the perpetrator."* (Exhibit – D, Attached).

Often investigations go uninterrupted for day(s), week(s) or even month(s). Under

Judge Jasmine's standard of law, officials may enter another jurisdiction and make an

encounter as long as there is an on-going investigation. Thus Judge Jasmine may not act

in Legislative capacity and rewrite Louisiana law nor issue published opinions contrary

thereof, in violation of <u>Canon</u> 3:A(1), faithfulness to law; 3:A(4), without bias; and

3:A(7), dispose of fairly.

6

## CLAIM FIVE

MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY CHANGED THE FACTS ON RECORD AT BAR CREATING A FRAUD ON ALL REVIEWING COURT'S AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 98 (La. App. 5th Cir. 2009), it's sad when Superior Judge Madeline Jasmine willfully changed the facts and created a fraud on all reviewing court's to prejudicially tilt the scales of justice in favor of the state.

> "The defendant alleges that Detective Jewell's testimony was perjured. Specifically, he alleges that although Jewell testified that he informed '911' that the defendant had a knife in his pocket, that in fact, he never told '911' any such thing.

> "The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell."

*Id.*, 7 So.3d at 98 (See Exhibit – A, Attached).

Mr. Ayo contends that Judge jasmine adds her own *additional* perjury to record. [2] When the record is clear, it should not take a mere high school student to point out to a panel of college graduates, that Detective Daniel Jewell committed perjury during trial and the prosecutor both knew it was perjury and capitalized on the material falsehood:

---

2  The panel of the Fifth Circuit Judge's should be aware that they are *immune* from *civil* liabilities, not criminal malfeasance.

A.    "Well, the 911 operator is different than the dispatcher."

Q.    "Do you remember on the 911 tape saying that you thought you saw a knife in the back pocket?"

A.    "I believe I said that. That's again why I answered his question earlier that way."

Q.    "And again, you've heard the 911 tape. That's someone writing what you say, correct?"

A.    "Correct."

(R. 186-187; See also Exhibit – E, Attached).

The defendant confused nothing! The detective unequivocally *clarified* on the record that "the 911 operator is different than the dispatcher." (R. 186). (See also Exhibit – E, Attached). Then Judge Jasmine willfully added *additional* perjury to the record at bar alleging the Defendant is confusing 911 call with police dispatch, knowingly creating a fraud on all future reviewing court's. Thus Judge Madeline Jasmine issued an extremely bias and partial decision in favor of state in violation of Canon 3:A(1), she shall maintain professional competence; 3:A(4), perform judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly.

Mr. Ayo contends, such a misapplication of law in published opinion can not stand and must be reversed.

8

## CLAIM SIX

MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY CHANGED THE FACTS ADDING HER OWN PERJURY TO RECORD AT BAR AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 98 (La. App. 5th Cir. 2009), Superior Judge Madeline Jasmine published her crime of perjury.

> "The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell. *In the dispatch, he inform the dispatcher that he saw the defendant with a knife in his pocket. The dispatch call was different from the 911 call made by the victim. This claim has no merit*."

*Id.*, 7 So.3d at 98. (See Exhibit – A, Attached).

Mr. Ayo contends, contrary to Judge Jasmine's perjury of such broadcast. The *sheriff office dispatch transcripts* (State Exhibit – 3) was also entered into evidence with the 911 transcripts (State Exhibit – 4) and neither of the two (2) contain any such transmission to dispatcher of Detective Jewell observing Defendant with a knife. (See Exhibit – F, Attached).

Mr. Ayo contends, this same perjured testimony is the crux of the entire false arrest of an innocent man, *i.e.*, allegedly Jefferson Parish Officials broadcast to all units that they observed a knife, had probable cause to arrest, and allegedly were following that person in hot pursuit of that person into another jurisdiction - - all perjury! (See

State's Exhibit – 3 (Dispatch Transcript)).

The perjury is so *material* to the [lack] of probable cause to pursue and arrest out of jurisdiction, it further resulted in a fundamental unjust conviction of an innocent construction worker by the fact finder(s). Only for Judge Madeline Jasmine to give her own false authoritative assurance that it's not perjury, it's in there. Willfully creating a fraud on all future reviewing court's and malfeasance of the first magnitude. Thus in violation of <u>Canon</u> 3:A(1), Judge Jasmine neglected to maintain professional competence; 3:A(4), perform her judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly.

### <u>CLAIM SEVEN</u>

> MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY MISAPPLIED THE LAW AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in ***State v. Ayo***, 7 So.3d 85, 98 (La. App. 5th Cir. 2009), Superior Judge Madeline Jasmine misapplied the legal standard of perjury as that of "internal contradictions."

> "Although the defendant argues at length that false testimony was introduced in his trial, he points to *the record,* not newly discovered, external sources, to *prove* his allegation. He points to *internal contradictions* in the testimony to support his claims."

10

*Id.*, 7 So.3d at 98. (See Exhibit – A, Attached).

Mr. Ayo contends, the testimony of two arresting officers of four (4), four *non-existing*, (never happened), *no* such transmission(s) of close or hot pursuit is not mere *internal contradictions* – unequivocally it's perjury!

Perjured testimony is a felony crime in which officers of court have a duty to protect and uphold the law when malfeasance is so witnessed by this Court, and perjured testimony on the face of "the record," as quoted by Judge Jasmine, should have been corrected by the Fifth Circuit as *patent error.* But the Fifth Circuit neglected to uphold and apply the laws of this state.

The arresting officer(s) Paul Simoneaux and George McCoy both testified that after hearing the following four (4) broadcast on their police radio, they *lawfully* entered another jurisdiction to make a lawful arrest and search and seizure of personal property. Alleged evidence introduced at trial:

> [1] "Detective Jewell advised on the radio that a suspect with a knife protruding from his back pocket, [2] got into a blue [color & name of co.] Metairie Service Cab. [3] He was trying to catch up with the cab, [4] but lost sight of the cab as *we* entered the Orleans Parish line. So *we* began canvassing the area."

(R. 98-100, 235-237) (See Also Exhibit – F, Attached).

Only Detective Jewell to controvertedly testify that he made "no" such broadcast, and, there was "no" close or hot pursuit to immediately arrest Mr. Ayo. He only wanted to stop and question (*investigate*), but he did not match description and Officer Jewell's

11

drove off:

> "As I'm passing him, you know, I'm thinking 'well, maybe this
> is the guy. Maybe I should stop and get his name and see . . .'
> but I heard over . . ."

(R. 162, 182; See Exhibit – G, Attached).

In fact, when Officer Jewell returned to the area to question (investigate) – *not* return to *arrest*, the guy was gone, he did not see him leave or even see a cab. Let alone broadcast he was chasing the occupant with a knife fleeing in a blue Metairie Cab, but lost sight of it as he entered Orleans Parish.

Mr. Ayo logically asserts that Superior Judge Jasmine knew that four (4), four *non-existing* broadcast going to statutory probable cause to enter another jurisdiction and immediately arrest is much much more than "internal contradiction(s)," but *material* perjury of the first magnitude. Perjury designed solely to circumvent an *illegal* investigative stop, and exploratory search and seizure out of jurisdiction. Yet she willfully refused to perform her duty and correct perjury in the interest of justice. This in violation of <u>Canon</u> 3:A(1), Judge Jasmine neglected to maintain professional competence; 3:A(4), perform her judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly.

12

## CLAIM EIGHT

MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY MISAPPLIED THE LAW AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 94-94 (La. App. 5th Cir. 2009), Superior Judge Madeline Jasmine misapplied the law, in that:

"Louisiana case law gives full weight to the doctrine of close pursuit. See, for example, *United States v. Bishop*, 530 F.2d 1156, 1157 (5th Cir. 1976) (The police vehicle *followed* the [GPS] signal out of Shreveport into Bossier City) ... In *State v. Washington*, 444 So.2d 320 (La. App. 1st Cir. 1983) (Assisted by a tracking dog, the Lafouche Parish Sheriff's Officers began *trailing* the robbers on foot.).

"The exception to close pursuit applies in this case . . . the pursuit of the defendant, initiated in Jefferson Parish, was immediate and continuous."

*Id.*, 7 So.3d at 94-95.

Mr. Ayo contends, the perjury stop here! Detective Jewell unequivocally testified that when he observed Mr. Ayo and drove pass:

Q.   "He wasn't doing anything suspicious or inappropriate."

A.   "No, standing in the middle of the street, like I said, with a bag, the gym bag over his shoulder, speaking to someone on the landing of the apartment. As I'm passing him, you know, I'm thinking 'well, maybe this is the guy. Maybe I should stop and get his name and see' . . . but I head over . . ."

(R. 162, 182; See Exhibit – G, Attached).

13

The veteran Lieutenant Detective not only failed to stop Mr. Ayo on his way to work because he did not resemble description of perpetrator. He absolutely was not "in close *pursuit* to arrest," Art. 213, La. C.Cr.P.; not *following* his vehicle into another parish." *Bishop*, 530 F.2d at 1127; and not "*trailing* him on foot" or otherwise. *Washington*, 444 So.2d at 320.

The misapplication of law with fictitious material facts by the Fifth Circuit is so evident in *State v. Ayo*, 7 So.3d at 94-95, it created a fraud on all reviewing court's in the future. Thus in violation of <u>Canon</u> 3:A(1), Judge Jasmine neglected to maintain professional competence; 3:A(4), perform her judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly.

**CLAIM NINE**

> MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY PUBLISHED PERJURY, A FELONY UNDER LOUISIANA LAW, AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 93 (La. App. 5th Cir. 2009), Superior Judge Madeline Jasmine published perjury, in that:

> "During direct examination at trial, the victim testified that he told the officers that the robber was 150 pounds . . . notably, at trial, the state introduced the prison *intake* assessment which established that on February 24, 2007, the defendant's weight 181 . . ."

14

*Id.*, 7 So.3d at 93.

Mr. Ayo contends, the perjury and malfeasance in the published opinion in *State v. Ayo*, 7 So.3d 85, is unmeasurably off the charts, unbelievable for a per se court of law. Mr. Ayo was arrested January 7, 2007, with a weight of 240 – not February 24, 2007 and/or 181 pounds (See Exhibit – H, attached).

In the case subjudice, the Fifth Circuit circumvented the "objection" challenged in the assignment of error and willfully sidestepped the issue at bar, *i.e.*, the district attorney *illegally* possessed Mr. Ayo's personal medical record(s) without his consent to private information or Court subpoena.

The prosecutor committed perjury by informing the Court it's "the arrest register" to introduce *illegal* evidence and fraud on trial court. When the arrest register is dated January 7, 2007 – not February 24, 2007.

And "the prison's nurse practitioner who testified that defendant's weight on the day of trial was 212 pounds." 7 So.3d at 93. Further testified she did *not* take the weight in the medical record(s), and she was *not* present when it was taken.

The Fifth Circuit circumvented the issue(s) at bar of highly *illegal* hearsay/perjured evidence alleging Mr. Ayo's false weight on day of arrest, then capitalized on all reviewing court's in the future in violation of Canon 3:A(1), Judge Jasmine neglected to maintain professional competence; 3:A(4), perform her judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly.

15

## CLAIM TEN

MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY ADDED THEIR PERJURY CREATING A FRAUD ON REVIEWING COURT'S, AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 93 (La. App. 5th Cir. 2009), Superior Judge Madeline Jasmine published perjury, in that:

"He [victim] informed the officers that the robber was between forty and fifty years old."

*Id.*, 7 So.3d at 93.

Mr. Ayo contends, the description sheet signed by the victim unequivocally list the perpetrator as 30-35 years old – *not* forty or fifty years old. (See Exhibit – I, Attached).

Therefore conclusively demonstrating the *repeating* crime(s) of perjury, and *not a mere single isolated mistake* by the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 93 (La. App. 5th Cir. 2009). No, the appellate court went way way out the *material* facts at bar to commit malfeasance and fraud on all reviewing court(s), fraudulently changing testimonial evidence to create a scenario as if Mr. Ayo match the description and officers had probable cause to arrest. Thus in violation of Canon 3:A(1), Judge Jasmine neglected to maintain professional competence; 3:A(4), perform her judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly. The fraud on the

16

court(s) must be annulled.

## CLAIM ELEVEN

> MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY MISAPPLIED THE LAW, CREATING A FRAUD ON REVIEWING COURT'S AND NEGLECTED TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 95-96 (La. App. 5th Cir. 2009), Superior Judge Jasmine willfully misapplied the law and published a fraud on reviewing court's and society, in that:

> "During direct examination, the defendant admitted his 1994 conviction for manslaughter in the State of Florida . . . the prosecutor then inquired if he would be surprised to learn that a detainer to return him to Florida was in effect. [] at this point in the exchange, the defense moved for a mistrial but the court denied that request.

> "It was the defendant who brought up the fact of his prior conviction for manslaughter. *96 It is a well-recognized principle that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination."

*Id.*, 7 So.3d at 95-96.

Mr. Ayo contends, the Fifth Circuit knowingly, intelligently, and willingly with a deliberate indifference omitted [] the issue at bar. The State *did not question* Mr. Ayo on cross-examination regarding a "detainer," but accused; went into a highly prejudicial

17

*monologue* during cross examination with the prosecutor giving her own personal opinion way *outside* any record:

"He has a detainer for violating parole in Santa Rosa County Florida."

(R. 330).

When Mr. Ayo has never, *never* been on parole in any state. Let alone being wanted for a parole violation. The statement is wholly false – perjury, and extremely prejudicial.

The Fifth Circuit misapplied the law in *State v. Ayo*, 7 So.3d 85, 95-96 (La. App. 5th Cir. 2009). The defendant's *admission* of prior conviction cease questioning into the scope of that conviction, it's not a legal principle to fully explore *non-existing* parole and/or detainers *outside* the conviction admitted. (See Exhibit – J, Attached).

The Louisiana Supreme Court in *State v. Edwards*, 420 So.2d 663, 674-75 (La. 1982), held that the cross-examination was proper *since the testimony was relevant and material *675 to the responsive verdict. Id.* Thus the opinion of the Fifth Circuit is in violation of Canon 3:A(1), Judge Jasmine neglected to maintain professional competence; 3:A(4), perform her judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly. The fraud on the court(s) must be annulled.

18

## CLAIM TWELVE

MADELINE JASMINE, JUDGE PRO TEMPORE, AMONGST ENTIRE PANEL, WILLFULLY MISAPPLIED THE LAW, COMMITTED PUBLISHED FRAUD ON ALL REVIEWING COURT'S, NEGLECTING TO PERFORM THE DUTIES OF OFFICE FAIRLY, IMPARTIALLY, AND MAINTAIN PROFESSIONAL COMPETENCE FAITHFUL TO THE LAW IN VIOLATION OF CANON 3:A(1), 3:A(4), AND 3:A(7).

In the opinion of the Fifth Circuit in *State v. Ayo*, 7 So.3d 85, 96 (La. App. 5th Cir. 2009), Superior Judge Jasmine willfully misapplied the law and committed perjury, in that:

> "The defendant next complains that the trial court should grant a mistrial due to the prosecutor's references to the [four felony] conviction of the defendant's friend, Theo Brickley.
>
> "Furthermore, the trial judge specifically charged the jury that statements and *arguments* made by the attorney's are not evidence."

*Id.*, 7 So.3d at 96.

1. Mr. Ayo contends, the opinion of the Fifth Circuit is wholly frivolous at best – it's *not* law. But a complete mockery to the integrity of the judicial process.

When the Defendant took the stand in his own defense, the prosecutor was totally out of control and would not cease her highly prejudicial *monologue* - - not question(s), of an [un]available witness not in court to impeach his credibility, not even over objection:

19

| [State] Ms. Swaim: | Now you do know that [Mr. Ayo's] good bud, Theo Brickley. |
|---|---|
| Mr. Schmidt: | Objection, your Honor. |
| Ms. Swaim: | Just got guilty like four (4) felonies, in Division "O." |
| Mr. Schmidt: | Objection, your Honor. May we approach. |

(R. 335-338).

Further, it's a *monologue* to the jury – *not* questioning, during what's suppose to be *cross examination* - - not opening or closing arguments. *Material* error the Fifth Circuit ignored. Then Judge Jasmine falsely published that "*the trial judge specifically charged the jury*." 7 So.3d at 96.

The trial judge blatantly *refused* to admonish the jury, thus compounding the fundamental unfairness of the trial. (See Exhibit – K, Attached).

The Court:   I'm not going to admonish the jury. Please move on.

(R. 338-339).

But Judge Jasmine published her crime of perjury fraudulently ruling that "the trial judge specifically charged the jury."

2. Additionally the Fifth Circuit's rational that "*arguments made by attorneys are not evidence*" on *cross examination*, is nothing less than a misapplication of well settled law violating substantial *appellate* rights of the accused. Art. 921, La. C.Cr.P., and judicial Canon 3:A(1), and 3:A(4).

20

3. And the Fifth Circuit misapplied the law and published a fraud on all reviewing court's here, again, in *State v. Ayo*, 7 So.3d 85, 96 (La. App. 5th Cir. 2009) citing *State v. Pardon*, 703 So.2d 50, 62 (La. App. 5th Cir. 1997), ruling that closing argument instructions apply to *cross examination* is so misplaced. (See Exhibit – K, Attached).

In the case sub judice, in light of the fact that the trial judge blatantly *refused to admonish the jury* to prosecutorial misconduct during *cross-examination*. (R. 338-339). Judge Jasmine misapplied law for instructions of statements made during all reviewing court's violates <u>Canon</u> 3:A(1), Judge Jasmine neglected to maintain professional competence; 3:A(4), perform her judicial duties without bias or prejudice; and 3:A(7), dispose of judicial matters fairly. The fraud on the court(s) must be annulled/reversed.

## CONCLUSION

The mission of the Court of Appeals is to protect and promote the rule of law, to ensure public trust, to ensure the highest professional conduct, integrity, and competence of both the bench and the bar, and to ensure the proper administration and performance of all courts under its authority.[3]

WHEREFORE, Mr. Ayo respectfully moves this Honorable Judicial Committee to grant relief as follows:

1. Annul/reverse both State Court's decision(s) in *State v. Ayo*, 7 So.3d 85 (La. App. 5th Cir. 2009), *writ denied*, 28 So.3d 1006 (La. 2010);

---

[3] Herein, Mr. Ayo address only two (2) of the eleven (11) assignment of error(s) on direct appeal. Thus the wholly frivolous opinion of the Fifth Circuit still contains over sixty (60) *plus* misapplications of law, *additional* perjury by court, and, constitutional right violation(s) that have not yet been addressed in remaining nine (9) assignments.

2. Change venue to non-bias Appellate Court for review;

3. And remove Madeline Jasmine's judgeship for life.

This I forever pray.

Respectfully submitted,

Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, Louisiana  70712

22



# The Judiciary Commission of Louisiana

### OFFICE OF SPECIAL COUNSEL

601 St. Charles Avenue
New Orleans, La. 70130-3481

TELEPHONE (504) 568.8299
FAX (504) 599.1360
EMAIL OSC@LAJAO.ORG

December 6, 2012

**PERSONAL AND CONFIDENTIAL**
Glenn Ayo #531823
Louisiana State Penitentiary
Angola, Louisiana 70712

RE:   Our File No. 12-497

Dear Mr. Ayo:

This will acknowledge receipt of your complaint against Judge Madeline Jasmine. This matter has been assigned administrative File No. 12-497 for future reference.

This office is responsible for investigating allegations of unethical judicial conduct in violation of Article V, § 25(C) of the Louisiana Constitution or the Code of Judicial Conduct. Your complaint does not allege actionable judicial misconduct within the parameters of our jurisdiction. Consequently, we cannot open an inquiry.

Please be advised that this office is not permitted to give you legal advice or to represent your legal interests. The Judiciary Commission does not have the authority to order the recusal of a judge from a case, to order a judge to change his judgment, or to order a judge to take any particular action in a case. If what you seek is a new judge to be assigned to or a different outcome in your case, you should immediately discuss the possible legal remedies that may exist with an attorney. Finally, filing a complaint with the Judiciary Commission is not a substitute for pursuing appellate remedies that also may exist.

I regret that we cannot be of service at this time.

Yours truly,

Mary Whitney
Special Counsel

MW/chs

# EXHIBIT- A

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                                                          **Page 1**

\*85  7 So.3d 85

08-468 La.App. 5 Cir. 3/24/09

Court of Appeal of Louisiana,
Fifth Circuit.

**STATE of Louisiana**
v.
**Glenn C. AYO.**

Nos. 2008-KA-468, 2008-KH-1179.
March 24, 2009.

Rehearing Denied April 13, 2009.

**Background:** Defendant was convicted in a jury trial in the Twenty-Fourth Judicial District Court, Jefferson Parish, No. 07-369, Division "M," Henry G. Sullivan, Jr., J., of armed robbery and resisting an officer. Defendant appealed.

**Holdings:** The Court of Appeal, Madeline Jasmine, Judge Pro Tempore, held that:

(1) one-on-one identification did not present substantial likelihood of misidentification;

(2) officer was authorized to enter another jurisdiction to make arrest under close pursuit exception;

(3) prosecutor's reference to other crime committed by defendant did not warrant mistrial; and

(4) probable cause existed to support defendant's arrest.

Affirmed.

**West Headnotes**

[1]   Criminal Law ⚖️339.8(6)

    110 ----
        110XVII Evidence
        110XVII(D) Facts in Issue and Relevance
        110k339.5 Identity of Accused
        110k339.8   Out-Of-Court   or   Pre-Trial Confrontation
        110k339.8(2)   Time   and   Manner   of Confrontation; Suggestiveness
        110k339.8(6) Confrontations at the scene or shortly after offense or arrest.

One-on-one identification did not present substantial likelihood of misidentification; victim made positive identification of defendant at trial, robbery occurred in daylight, victim had opportunity to view robber at close range, victim made immediate report of crime, gave description of robber's clothing and appearance, and made positive identification of defendant within one hour of robbery, victim excluded first subject detained by police and only made positive identification of defendant after viewing him at close range, and victim testified that police did not suggest to him that he should identify defendant as robber.

[2]   Criminal Law ⚖️339.8(1)

    110 ----
        110XVII Evidence
        110XVII(D) Facts in Issue and Relevance
        110k339.5 Identity of Accused
        110k339.8   Out-Of-Court   or   Pre-Trial Confrontation
        110k339.8(1) In general; lineup, showup or other confrontation.

Viewing the evidence from a totality of the circumstances, the trial court should consider whether suggestiveness presents a substantial likelihood of misidentification; this review is based on five specific factors: 1) the opportunity of the witness to observe the perpetrator at the time of the crime, 2) the witness' degree of attention at the time of the crime, 3) the accuracy of his prior description of the offender, 4) the level of certainty displayed at the confrontation, and lastly, 5) the time between the crime and the confrontation.

[3]   Criminal Law ⚖️339.8(5)

    110 ----
        110XVII Evidence
        110XVII(D) Facts in Issue and Relevance
        110k339.5 Identity of Accused
        110k339.8   Out-Of-Court   or   Pre-Trial Confrontation
        110k339.8(2)   Time   and   Manner   of Confrontation; Suggestiveness
        110k339.8(5) Necessity of lineup; single suspect showup in general.

[See headnote text below]

[3]   Criminal Law ⚖️339.8(6)

    110 ----

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                              Page 2

110XVII Evidence
110XVII(D) Facts in Issue and Relevance
110k339.5 Identity of Accused
110k339.8   Out-Of-Court   or   Pre-Trial
Confrontation
110k339.8(2)   Time   and   Manner   of
Confrontation; Suggestiveness
110k339.8(6) Confrontations at the scene or
shortly after offense or arrest.

Although "show up" or one-on-one identifications
are not favored in law, circumstances may justify the
use of such procedures; one such exception is when
the suspect is apprehended and viewed soon after the
crime, because such immediate identifications
increase accuracy in identification and provide for the
expeditious release of innocent suspects.

[4]   Arrest ⬅66(3)

35 ——
35II On Criminal Charges
35k66 Place of Arrest or Stop
35k66(3) Pursuit.

Officer was authorized to enter another jurisdiction
to make arrest under close pursuit exception; arrest
took place within hour of crime a few blocks over
adjoining parish line, arrest was result of
uninterrupted investigation by responding officers,
pursuit of defendant, initiated in Jefferson Parish, was
immediate and continuous, defendant was detained
after he hired cab and was leaving area of robbery,
pursuing officers saw kitchen knife, matching
description of weapon used in robbery, sticking out
from defendant's pants, and within minutes of
defendant's detention and within hour of robbery,
victim made positive identification.  LSA-C.Cr.P.
arts. 213(2, 3, 4), 214.

[5]   Criminal Law ⬅2045

110 ——
110XXXI Counsel
110XXXI(D)   Duties   and   Obligations   of
Prosecuting Attorneys
110XXXI(D)5 Presentation of Evidence
110k2043 Examination of Accused
110k2045 Cross-examination.

[See headnote text below]

[5]   Criminal Law ⬅2194

110 ——

110XXXI Counsel
110XXXI(F)   Arguments   and   Statements   by
Counsel
110k2191 Action of Court in Response to
Comments or Conduct
110k2194 Presentation of evidence.

Prosecutor's reference to other crime committed by
defendant, which took place when prosecutor was
questioning defendant, did not warrant mistrial; state's
limited reference to outstanding detainer related to
crime that had already been admitted by defendant,
and in charging jury at conclusion of trial, judge
instructed jury that statements and arguments made by
attorneys were not evidence, thus protecting against
any prejudice that might have arisen.  LSA-C.Cr.P.
art. 770(2).

[6]   Criminal Law ⬅867.6

110 ——
110XX Trial
110XX(J) Issues Relating to Jury Trial
110k867 Discharge of Jury Without Verdict;
Mistrial
110k867.6 Fairness and justice in general.

Except where mandated by statute, a mistrial is
warranted only when trial error results in substantial
prejudice to defendant, depriving him of a reasonable
expectation of a fair trial.

[7]   Criminal Law ⬅867.2

110 ——
110XX Trial
110XX(J) Issues Relating to Jury Trial
110k867 Discharge of Jury Without Verdict;
Mistrial
110k867.2 Discretion of court.

[See headnote text below]

[7]   Criminal Law ⬅1155

110 ——
110XXIV Review
110XXIV(N) Discretion of Lower Court
110k1155 Issues related to jury trial.

The decision to grant or deny a mistrial is within
the sound discretion of the trial court, and that
decision will not be disturbed absent an abuse of that
discretion.

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                          **Page 3**

[8]   Witnesses ⬡═269(1)

410 ----
410III Examination
410III(B) Cross-Examination
410k269 Limitation of Cross-Examination to Subjects of Direct Examination
410k269(1) In general.

When one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination.

[9]   Criminal Law ⬡═2045

110 ----
110XXXI Counsel
110XXXI(D) Duties and Obligations of Prosecuting Attorneys
110XXXI(D)5 Presentation of Evidence
110k2043 Examination of Accused
110k2045 Cross-examination.

[See headnote text below]

[9]   Criminal Law ⬡═2194

110 ----
110XXXI Counsel
110XXXI(F) Arguments and Statements by Counsel
110k2191 Action of Court in Response to Comments or Conduct
110k2194 Presentation of evidence.

Prosecutor's references to convictions of defendant's friend, which took place when prosecutor was questioning defendant, did not warrant mistrial; in light *85 of all the testimony introduced at trial, the brief, unanswered question into friend's recent convictions did not create unfair trial, and judge specifically charged jury that statements and arguments made by attorneys were not evidence.

[10]   Criminal Law ⬡═1036.1(9)

110 ----
110XXIV Review
110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1036 Evidence
110k1036.1 In General
110k1036.1(9) Exclusion of evidence.

Defendant failed to preserve for appellate review claim that trial court erroneously and unfairly curtailed defense questioning on issues of jurisdiction, investigatory stop, and lawfulness of his arrest as defendant failed to proffer substance of excluded testimony.

[11]   Criminal Law ⬡═662.3

110 ----
110XX Trial
110XX(C) Reception of Evidence
110k662 Right of Accused to Confront Witnesses
110k662.3 Nature or stage of proceeding.

The defendant's constitutional confrontation rights are not affected by questioning at a motion hearing. U.S.C.A. Const.Amend. 6.

[12]   Criminal Law ⬡═1037.1(3)

110 ----
110XXIV Review
110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1037 Arguments and Conduct of Counsel
110k1037.1 In General
110k1037.1(3) Presentation of evidence.

Defendant was precluded from raising for appellate review claim that officer's testimony was false and knowingly presented by state; although defendant argued at length that false testimony was introduced in his trial, he pointed to record, not newly discovered, external sources, to prove allegation, he pointed to internal contradictions in testimony to support his claims, thus establishing that substance of claim, and its factual underpinnings, were known to him at time of trial, and although claim was known to him, defendant did not afford trial court opportunity to rule on perjury claim.

[13]   Criminal Law ⬡═1159.2(9)

110 ----
110XXIV Review
110XXIV(P) Verdicts
110k1159 Conclusiveness of Verdict
110k1159.2 Weight of Evidence in General
110k1159.2(9) Weighing evidence.

[See headnote text below]

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

**Page 4**

[13]  Criminal Law ☞1159.4(1)

> 110 ----
> 110XXIV Review
> 110XXIV(P) Verdicts
> 110k1159 Conclusiveness of Verdict
> 110k1159.4 Credibility of Witnesses
> 110k1159.4(1) In general.

It is not the function of the appellate court to assess credibility or reweigh the evidence.

[14]  Criminal Law ☞566

> 110 ----
> 110XVII Evidence
> 110XVII(V) Weight and Sufficiency
> 110k566 Identity and characteristics of persons or things.

A positive identification of only one witness is sufficient to support a conviction.

[15]  Criminal Law ☞1119(1)

> 110 ----
> 110XXIV Review
> 110XXIV(G) Record and Proceedings Not in Record
> 110XXIV(G)15 Questions Presented for Review
> 110k1113 Questions Presented for Review
> 110k1119 Conduct of Trial in General
> 110k1119(1) In general.

[See headnote text below]

[15]  Criminal Law ☞1440(2)

> 110 ----
> 110XXX Post-Conviction Relief
> 110XXX(A) In General
> 110k1435 Consideration Despite Waiver or Other Bar
> 110k1440 Counsel
> 110k1440(2) Preferability of raising effectiveness issue on post-conviction motion.

A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full evidentiary hearing can be conducted, rather than on direct appeal; however, where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. U.S.C.A. Const.Amend. 6.

[16]  Arrest ☞63.4(12)

> 35 ----
> 35II On Criminal Charges
> 35k63 Officers and Assistants, Arrest Without Warrant
> 35k63.4 Probable or Reasonable Cause
> 35k63.4(7) Information from Others
> 35k63.4(12) Identification or description of offender or vehicle.

Probable cause existed to support defendant's arrest; police had reasonable and trustworthy report of armed robbery where dangerous weapon was knife, along with physical description of robber, defendant, who matched description given, was found shortly after robbery, attempting to leave area, and upon detection, defendant was arrested by officer when he saw him at gas station, and visibly protruding from defendant's back pocket was knife handle. U.S.C.A. Const.Amend. 4.

[17]  Arrest ☞63.4(2)

> 35 ----
> 35II On Criminal Charges
> 35k63 Officers and Assistants, Arrest Without Warrant
> 35k63.4 Probable or Reasonable Cause
> 35k63.4(2) What constitutes such cause in general.

Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. U.S.C.A. Const.Amend. 4.

[18]  Criminal Law ☞1036.1(4)

> 110 ----
> 110XXIV Review
> 110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
> 110XXIV(E)1 In General
> 110k1036 Evidence
> 110k1036.1 In General
> 110k1036.1(3) Particular Evidence
> 110k1036.1(4) Wrongfully obtained evidence.

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir, 2009)                         **Page 5**

Defendant waived for appellate review claim that currency seized from him at arrest should have been suppressed, based upon inconsistent and perjured testimony from officers, that money was abandoned after defendant was unlawfully seized, and that chain of custody was not proved; although issue was raised in motion to suppress, defendant failed to object at trial to introduction of currency.

[19]  Arrest ⬅➡71.1(5)

35 ----
    35II On Criminal Charges
    35k71.1 Search
    35k71.1(4) Scope of Search
    35k71.1(5) Particular places or objects.

When a lawful arrest is made of an occupant or recent occupant of a vehicle, law enforcement officers have the right to search the entirety of the passenger compartment, including closed containers found in the passenger compartment, as a contemporaneous incident of the lawful arrest. U.S.C.A. Const.Amend. 4.

[20]  Criminal Law ⬅➡1036.1(9)

110 ----
    110XXIV Review
    110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
    110XXIV(E)1 In General
    110k1036 Evidence
    110k1036.1 In General
    110k1036.1(9) Exclusion of evidence.

Defendant failed to preserve for appellate review claim relating to location of booking; during his questioning, State objected and trial court sustained objection, and defendant objected to ruling but did not proffer testimony of officer related to this line of questioning.

[21]  Witnesses ⬅➡311

410 ----
    410IV Credibility and Impeachment
    410IV(A) In General
    410k311 Grounds of credibility in general.

"Impeachment evidence" is that which affects the credibility of a witness.

[22]  Witnesses ⬅➡379(5)

410 ----
    410IV Credibility and Impeachment
    410IV(D) Inconsistent Statements by Witness
    410k379 Inconsistency of Statements as Ground of Impeachment in General
    410k379(4) Written Statements or Instruments
    410k379(5) Letters.

Trial court did not abuse its discretion in admitting defendant's letter into evidence for impeachment purposes; defendant testified that he secured knife to use for work stripping copper, but what he wrote in letter contradicted his *85 trial testimony.

[23]  Criminal Law ⬅➡1186.1

110 ----
    110XXIV Review
    110XXIV(U) Determination and Disposition of Cause
    110k1185 Reversal
    110k1186.1 Grounds in general.

The combined effect of assignments of error, none of which warrant reversal on its own, does not deprive a defendant of his right to a constitutionally fair trial.

*88  Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Shannon Swaim, Assistant District Attorneys, Parish of Jefferson, Gretna, LA, for Appellee.

Glenn C. Ayo, Angola, LA, In Proper Person.

Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, LA, for Defendant/ Appellant.

Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and MADELINE JASMINE.

MADELINE JASMINE, Judge Pro Tempore.

[08-468 La.App. 5 Cir. 2] Defendant Glenn C. Ayo appeals his conviction for armed robbery, a violation of *89 LSA-R.S. 14:64, and his conviction for resisting an officer, a violation of LSA-R.S. 14:108. (FN1)  On appeal, counsel for Mr. Ayo argues the following assignments of error:

I. The trial court erred by failing to suppress the identification obtained in violation of the defendant's constitutional rights.

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                                    **Page 6**

2. A mistrial should have been granted.

Defendant also filed a *pro se* supplemental brief arguing the following assignments of error:

1. The trial court erred by failing to suppress the seizure of Mr. Ayo, finding police "not in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

[08-468 La.App. 5 Cir. 3] 2. Trial Court erred by precluding Defense from cross-examining arresting officer on relevant "material" issue(s) in violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

3. Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution's obvious use of known perjured testimony, and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

4. Trial court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as "private citizen" to immediately arrest, violating Mr. Ayo's Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).

5. Trial court erred by failing to suppress the seizure of alleged evidence, finding that construction worker's possession of [un]concealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

6. Trial court erred by failing to suppress seizure of jacket in cab, not in "plain view" and beyond control of Mr. Ayo, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

7. Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

8. Trial court erred by not continuing trial, and "not" addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

9. Trial Court erred by failing to grant a mistrial when the State committed fundamental error and "perjury" by fraudulently informing jury that Mr. Ayo is wanted for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

*90 10. Trial court erred by admitting evidence agreed upon in pretrial not to introduce, violating Mr. Ayo's Sixth and Fourteen Amendment Constitutional Right(s) to a fair trial.

11. Trial court erred in not intervening and properly govern proceedings, stopping State's repeated improprieties denying Mr. Ayo's right to a fair and impartial trial, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

[08-468 La.App. 5 Cir. 4] Defendant was convicted on November 28, 2007, following trial by jury, whose verdict was unanimous. On the same date, he was also convicted by judge of the related misdemeanor offense of resisting an officer. On December 5, 2007, the defendant was sentenced, on the armed robbery charge, to serve 87 years incarceration of hard labor without the benefit of probation, parole, or suspension of sentence. On the resisting an officer conviction, defendant was sentenced to 6 months in jail, to run concurrently with the above sentence.

*FACTS*

The eighty-eight year old victim, Baptiste DeBroy, testified at trial that on the morning of January 7, 2007, he and his wife went to a warehouse located at 250 Iris Avenue, Jefferson, Louisiana, in order to distribute beads to members of a Mardi Gras krewe. As they walked toward the building, a white man in a hooded blue jacket approached Mr. DeBroy, pulled him behind the building, knocked him down, and put a knife to his throat. The victim testified that the knife looked like a kitchen knife with approximately a six-inch blade. The man demanded the victim's wallet and ordered Mr. DeBroy not to look at him, covering his own head with the hood of his jacket. However, the victim testified that he got a good look at the robber from close range before he donned the hood. Mr. DeBroy told the robber that he did not have a wallet, whereupon the robber demanded his cash. Mr. DeBroy turned over all his cash, amounting to $28, (FN2) and the robber started to leave, going towards

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

River Road. He came back and told the victim, "If you get up, I'm going to stick you." The robber then left in the direction of Jefferson Highway.

[08-468 La.App. 5 Cir. 5] Mr. DeBroy immediately went inside the warehouse and announced that he had been robbed. He spoke to the 911 operator and described the robber, his clothing, and the knife. Members of the Jefferson Parish Sheriff's Office (JPSO) responded and began an investigation. The 911 tape was played to the jury.

Lieutenant Danny Jewell, JPSO, testified that the warehouse belonged to his family and that he lived nearby. On the morning of January 7, 2007, he was off-duty when he was awakened by his uncle, who reported a robbery on the premises. Lieutenant Jewell met with the victim, who gave a detailed description of the robber and the knife. Jewell began to canvas the neighborhood in his unmarked police unit. He did not operate his lights or sirens in pursuit. Jewell testified that he did not activate his lights and sirens because that action would give away his identity to suspects.

Within thirty minutes of the robbery, while searching the immediate area, Jewell heard on the police radio that a suspect had been detained in the 800 block of Jefferson Highway and that the victim was being brought to view the suspect. As *91 Jewell drove to that location, he saw a dark-haired, clean shaven, white male, wearing a green tee shirt on Cicero Street, near Jefferson Highway. Jewell testified that due to the detention of the first suspect, he did not investigate this man further at that time.

The victim immediately excluded the first suspect as the robber. Shortly afterwards, Jewell returned to Cicero Street to look for the man he had seen earlier. He was no longer in sight, but workers in the area told him that the man in the green shirt had just gotten into a blue cab, headed towards New Orleans. Jewell proceeded toward Jefferson Highway, which turns into Claiborne Avenue at the parish line, looking for the blue cab.

[08-468 La.App. 5 Cir. 6] En route, Jewell heard on the police radio that a subject in a blue cab had been found at a gas station on Claiborne Avenue. When he arrived at the gas station, the suspect had already been detained by police. The subject was the same man that Jewell had seen on Cicero Street a few moments earlier. The victim was brought to the scene and identified the defendant as the robber. This identification was made within an hour of the robbery.

At trial, Lieutenant Jewell positively identified the defendant as the man discovered at the gas station after the robbery. A blue hooded sweatshirt was found on top of the defendant's green bag, recovered on the back seat of the cab.

At trial, the victim made a positive in-court identification of the defendant as the robber. He also positively identified a photograph of the defendant as the man who robbed him. He positively identified the blue hooded jacket and stated that the six-inch kitchen knife looked like the knife used in the robbery. The victim was cross-examined extensively regarding his physical description of the perpetrator.

Deputy George McCoy, JPSO, testified that he was on patrol on January 7, 2007 when he was dispatched to 250 Iris to investigate an armed robbery. He obtained a description of the robber from the victim and completed the information sheet. Deputy McCoy took the victim in his car to view an initial suspect. The victim immediately stated that this suspect was not the robber.

Soon afterwards, Deputy McCoy transported the victim to view a second suspect. When he arrived at the Spur station, he saw Deputy Simoneaux attempting to restrain the subject. The victim told him that the man was the robber. At trial, McCoy identified the defendant as the man arrested that day.

Deputy Paul Simoneaux, JPSO, testified that he was assigned as a backup officer on the robbery investigation. After the victim excluded the first suspect as [08-468 La.App. 5 Cir. 7] the robber, he heard on the police radio that Deputy McCoy saw a suspect getting into a cab, heading toward New Orleans. Simoneaux followed McCoy's unit to the Spur gas station in New Orleans. He saw a man matching the suspect's description exit the cab, handing what appeared to be money to the driver. As Simoneaux approached, he saw a kitchen knife sticking out from the suspect's back pocket. During a search incident to arrest, a twenty dollar bill and a one dollar bill were recovered from the defendant's pocket. At trial, Deputy Simoneaux positively identified the defendant as the man arrested that day and noted that at his arrest, the defendant gave police a false name and date of birth. Simoneaux described changes to the defendant's physical appearance in the months following the robbery, stating that he was heavier at trial.

The defendant exercised his right to testify at trial

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                                    **Page 8**

and stated that the victim's *92 identification was mistaken. He explained his possession of a kitchen knife, testifying that he carried this knife in order to strip copper from wires in demolished homes in connection with his post-Katrina job. He admitted that he was in possession of a blue jacket and a kitchen knife and that he gave a false name upon arrest.

### COUNSELED ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred by failing to suppress the identification obtained in violation of the defendant's constitutional rights. (FN3)

### PRO SE ASSIGNMENT OF ERROR NUMBER ONE (FN4)

[08-468 La.App. 5 Cir. 8] The trial court erred by failing to suppress the seizure of Mr. Ayo, finding police "not in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

### PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN

Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The defendant argues that the trial court erred by failing to suppress the identification, which he contends was obtained in violation of his constitutional rights and was unduly suggestive. He first argues that the victim's on-scene identification was a prohibited "show-up" identification. He next argues that his arrest in New Orleans by Jefferson Parish officers was illegal due to the absence of an arrest warrant and lack of jurisdiction.

Prior to trial, the defense filed motions to suppress the identification and evidence, as well as other pretrial motions. At the motion to suppress hearing, the victim and two police officers testified regarding the identification procedures. At the conclusion of their testimony, the court denied the defense motions.

At trial, extensive cross-examination of the victim and the officers revealed inconsistencies in the

victim's physical description of the robber. Based on the vagueness and inconsistencies of the description, the defendant argues that the court should have granted his motion to suppress the identification. The defendant also argues, as he did before trial, that his arrest was unlawful because it was made in the city of New Orleans by the Jefferson Parish Sheriff's Office. The defendant places much reliance on the fact that the officers did not turn on their police sirens and overhead lights as they pursued him into Orleans Parish.

*Motion to Suppress Identification*

**Physical Description**

[1] [08-468 La.App. 5 Cir. 9] The burden of proof on a motion to suppress is on the defendant. LSA-*93 C.Cr.P. art. 703 To view preceding link please click here (D). A trial court's decision to deny a motion to suppress is afforded great weight by the reviewing court. *State v. Raines*, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639, *writ denied*, 01-1906 (La.5/10/02), 815 So.2d 833.

[2] The admissibility of an identification is controlled by *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Williams*, 08-272, p. 3, (La.App. 5 Cir. 12/16/08), 3 So.3d 526. Viewing the evidence from a totality of the circumstances, the trial court should consider whether suggestiveness presents a substantial likelihood of misidentification. This review is based on five specific factors: 1) the opportunity of the witness to observe the perpetrator at the time of the crime, 2) the witness' degree of attention at the time of the crime, 3) the accuracy of his prior description of the offender, 4) the level of certainty displayed at the confrontation, and lastly, 5) the time between the crime and the confrontation. *Id.* at 115, 97 S.Ct. 2243.

[3] This Court has noted that the likelihood of misidentification of a suspect may violate due process, but the mere existence of suggestiveness is not an automatic constitutional violation. *State v. Hurd*, 05-258, p. 5 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570. Although "show up" or one-on-one identifications are not favored in law, circumstances may justify the use of such procedures. One such exception is when the suspect is apprehended and viewed soon after the crime. Such immediate identifications increase accuracy in identification and provide for the expeditious release of innocent suspects. *State v. Spurlock*, 08-163, p. 8 (La.App. 5

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                                    Page 9

Cir. 5/27/08), 986 So.2d 89, 94.

In applying these factors, we find that the trial court correctly denied the motion to suppress the identification. At the suppression hearing, the victim [08-468 La.App. 5 Cir. 10] testified that during the robbery, he had a clear, close, and well-lit view of the robber. The victim's undiverted attention was focused on the robber. Moments after the robbery, the victim gave police his best physical description of the robber and his clothing. Although there was a range of possible weights given by the victim, it is critically important that the victim *excluded* a suspect stopped by police shortly after the robbery.

Even more important than his physical description, the victim positively identified the defendant less than an hour afterwards. The victim explained to the jury that he had been unable to identify the defendant at the motion to suppress hearing, because there were many defendants seated together in the jury box, all dressed alike. At the time of trial, however, he again positively identified the defendant as the man who robbed him.

In brief, the defendant places great emphasis on the differing physical descriptions of the robber as described by the victim. During direct examination at trial, the victim testified that he told officers that the robber, a white male, was around 5'7" or 5'8". He stated that he may have told police that the robber was 150 pounds or he may have said 135 or 170 pounds. The transcript of the 911 tape states 170 lbs. He informed officers that the robber was between forty and fifty years old. Notably, at trial, the state introduced the prison intake assessment which established that on February 24, 2007, the defendant's weight was 181 and his height was 5'7". The prison's nurse practitioner testified that defendant's weight on the day of trial was 212 lbs.

Cross-examination of witnesses provides an opportunity to challenge identifications. The elderly victim in this case admitted to having given somewhat unspecific descriptions *94 of the robber, such as possibly stating that his weight was 150, 135, or 170 pounds. He also stated that he may have said the robber was [08-468 La.App. 5 Cir. 11] around thirty years of age. Any discrepancies between the description of the perpetrator and the defendant as he appeared at trial were fully explored and known to the jury.

Most importantly, the victim made a positive identification of the defendant at trial. This was a

daylight robbery in which the victim had an opportunity to view the robber at close range. The victim made an immediate report of the crime, gave a description of the robber's clothing and appearance, and made a positive identification of the defendant within an hour of the robbery.

Notably, the victim excluded the first subject detained by the police and only made a positive identification of the defendant after viewing him at close range. The victim testified at trial that the police officers did not suggest to him that he should identify the defendant as the robber. Thus it appears that all five *Brathwaite* factors are present and the identification of the defendant was reliable.

For these reasons, we find that the trial court did not err in denying the motion to suppress the out-of-court identification.

**Close Pursuit**

[4] The defendant next complains that his arrest was illegal because it took place in Orleans Parish but was conducted by Jefferson Parish Sheriff's officers. He contends the trial court should have granted his motion to suppress because the arresting officers were outside of their territorial boundaries.

In urging this motion, the defendant places much reliance on the law relating to a citizen's arrest. By statute, a private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence. LSA-C.Cr.P. art. 214. Although all conditions of a citizen's arrest are satisfied in this case, the arrest passes muster as a close pursuit by a peace officer.

[08-468 La.App. 5 Cir. 12] A warrantless arrest by a peace officer is lawful when the person to be arrested has committed a felony or the officer has reasonable cause to believe the person has committed an offense. LSA-C.Cr.P. art. 213(2), (3). In addition, the common law doctrine of fresh pursuit is codified in LSA-C.Cr.P. art. 213(4). Under this article, a peace officer in close pursuit of a person to be arrested is authorized to enter another jurisdiction of this state to make that arrest. (FN5)

Louisiana case law gives full weight to the doctrine of close pursuit. See, for example, *United States v. Bishop*, 530 F.2d 1156, 1157 (5 Cir.1976). In a case construing Louisiana law, the court found close pursuit to be present in the investigation of a bank robbery in Caddo Parish. Shreveport Police stopped

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

and arrested the suspect in Bossier Parish. The arrest was found to be legally valid under the "close pursuit" statute, even though the *95 arrest occurred outside the arresting officers' jurisdiction, without the assistance of local law enforcement officers.

In *State v. Washington*, 444 So.2d 320 (La.App. 1 Cir.1983), *writ denied*, 445 So.2d 450 (La.1984), a robbery occurred at a Raceland bank near the border of Lafourche and St. Charles Parishes. Assisted by a tracking dog, the Lafourche Parish sheriff's officers began trailing the robbers on foot. Officers encountered the defendants on the railroad track in adjoining St. Charles Parish within two hours of the robbery. When found, the suspects were only five and a half miles from the scene of the robbery. The exception of close pursuit applied and the arrest was upheld. *Id.* at 324.

[08-468 La.App. 5 Cir. 13] The exception of close pursuit applies in this case. The arrest took place within an hour of the crime a few blocks over the adjoining parish line. The arrest was the result of an uninterrupted investigation by responding police officers. The pursuit of the defendant, initiated in Jefferson Parish, was immediate and continuous. Furthermore, the defendant was detained after he hired a cab and was leaving the area of the robbery. The pursuing officers saw a kitchen knife, matching the description of the weapon used in the robbery, sticking out from the defendant's pants. Within minutes of the defendant's detention and within an hour of the robbery, the victim made a positive identification. This assignment of error has no merit.

COUNSELED ASSIGNMENT OF ERROR NUMBER TWO

[5] The defendant argues that a mistrial should have been granted due to the prosecutor's reference to other crimes committed by the defendant. In a related vein, he also contends in this assignment that a mistrial should have been granted after the prosecutor asked the defendant if he knew that his friend Theo Brickley, who was subpoenaed to testify on his behalf (but whom the state was unable to serve and therefore was not present at trial), had recently been convicted of four felonies.

During direct examination, the defendant admitted his 1994 conviction for manslaughter in the State of Florida. Counsel for the defendant characterized this crime as an accidental death, resulting in the prosecutor following up to ask the defendant if he received a seventeen-year sentence for this

"accidental" crime. The defendant admitted the manslaughter conviction and seventeen-year sentence but denied that he was on parole. The prosecutor then inquired if he would be surprised to learn that a detainer to return him to Florida was in effect. At this [08-468 La.App. 5 Cir. 14] point in the exchange, the defense moved for a mistrial but the court denied that request. The court ordered that the exchange in question be stricken from the record and disregarded by the jury.

A mistrial shall be ordered when a remark, made within the hearing of the jury, by a judge, district attorney, or court official, refers to another crime committed or alleged to have been committed by the defendant when this evidence is not admissible. LSA-C.Cr.P. art. 770(2).

[6][7] A mistrial is a drastic remedy. Except where mandated by statute, a mistrial is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. *State v. Ballay*, 99-906, p. 14 (La.App. 5 Cir. 2/ 29/00), 757 So.2d 115, 126, *writ denied*, 00-0908 (La.4/20/01), 790 So.2d 13. The decision to grant or deny a mistrial is within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of that discretion. *Id.*

[8] It was the defendant who brought up the fact of his prior conviction for manslaughter. *96 It is a well-recognized principle that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination. *State v. Smart*, 05-814, p. 12 (La.App. 5 Cir. 3/14/06), 926 So.2d 637, 647. The evidence of the defendant's conviction for manslaughter was elicited directly from the defendant on direct examination; even on appeal, the defendant does not complain evidence of this conviction was improperly admitted. From the defendant's own testimony, the jury was aware of his criminal history. The defendant testified, without objection, that he had an attachment from Florida. It is notable also that the prosecutor did not allege that the defendant had committed additional crimes but rather questioned him regarding an outstanding detainer. The reference to the term detainer was not defined or explored further.

[08-468 La.App. 5 Cir. 15] The state's limited reference to an outstanding detainer related to a crime that had already been admitted by the defendant. Furthermore, in charging the jury at the conclusion of the trial, the judge instructed the jury that statements

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

and arguments made by the attorneys were not evidence, thus protecting against any prejudice that might have arisen. This practice is in accord with that of *State v. Pardon*, 97-248, p. 14 (La.App. 5 Cir. 10/15/97), 703 So.2d 50, 62, in which the court instructed the jury that statements and arguments by counsel were not evidence. On appeal, this Court held that this instruction cured any error and that therefore the defendant suffered no prejudice. Accordingly, we see no abuse of the trial court's discretion.

[9] The defendant next complains that the trial court should have granted a mistrial due to the prosecutor's references to the convictions of the defendant's friend, Theo Brickley. During direct examination, the defendant testified that he got a ride from Theo Brickley on the morning of the robbery. During cross-examination, the prosecutor asked whether Mr. Brickley would testify at trial. The defendant responded that Brickley had not been served to appear in court and would not testify. The prosecutor asked the defendant if he knew that Brickley had recently been convicted of four felonies in another section of court. Before an answer could be given and after an immediate objection, the prosecutor voluntarily stated that she would not pursue this line of questioning any further. The trial court denied the motion for a mistrial and no further questioning along this line took place.

The trial court did not err in denying the motion for mistrial. In light of all the testimony introduced at trial, the brief, unanswered question into Theo Brickley's recent convictions did not create an unfair trial. Furthermore, the trial [08-468 La.App. 5 Cir. 16] judge specifically charged the jury that statements and arguments made by the attorneys are not evidence.

A trial court's ruling shall not be reversed by an appellate court because of any error which does not affect substantial rights of the accused. LSA-C.Cr.P. art. 921. As this Court recently held, harmless error is present when the guilty verdict actually rendered was surely unattributable to the error. *State v. Lemeunier*, 07-230, p. 9 (La.App. 5 Cir. 5/27/08), 986 So.2d 130, 136.

In this case, the evidence of the victim and police officers, if believed by the trier of fact, established all the elements of the crime of armed robbery. In light of the strength of the evidence against the defendant, the guilty verdict was "surely unattributable" to the alleged references to other crimes. This assignment

of error has no merit.

**\*97   *PRO SE ASSIGNMENT OF ERROR NUMBER TWO***

[10] Trial Court erred by precluding Defense from cross-examining arresting officer on relevant "material" issue(s) in violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The defendant argues that at the hearing on his motion for a preliminary examination and his motion to suppress, the trial court erroneously and unfairly curtailed defense questioning on issues of jurisdiction, an investigatory stop, and the lawfulness of his arrest.

The defendant directs this Court's attention to the cross-examination of Deputy Simoneaux during the motion to suppress and preliminary examination, held on August 16, 2007. (FN6) When defense counsel asked this officer if he was commissioned as a law enforcement officer in Orleans Parish, the prosecutor [08-468 La.App. 5 Cir. 17] objected. The objection was sustained. A bench conference was held but no objection or proffer of testimony was put on the record.

[11] It is critically important that the defendant's complaint addresses curtailment of questioning at a motion hearing, not at trial. The defendant's constitutional confrontation rights are not affected by questioning at a motion hearing. *State v. Harris*, 08-2117 (La.12/19/08), 998 So.2d 55. In *Harris*, the Supreme Court specifically held that the right to confrontation contained in the United States and the Louisiana Constitutions is not implicated in a pre-trial matter.

In addition to the fact that the confrontation clause does not apply to a pretrial hearing, this issue is not preserved for appellate review. In *State v. Stevenson*, 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, this Court addressed an argument that the trial court erred in failing to allow defense counsel to fully cross-examine and impeach a police officer. The defendant desired to ask the officer about the law pertaining to booking a suspect. The trial court did not allow such questioning and on appeal, the defendant argued that he was unable to show the jurors the corruption of the police officers. The defendant objected but did not proffer the testimony of the officer. In denying relief on this claim on appeal, this Court relied on LSA-C.E. art. 103(A)(2), which provides that in order to preserve the right to appeal a trial court ruling that excludes evidence, the defendant must make the

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

substance of the evidence known to the trial court. The defendant failed to proffer the substance of the excluded testimony and was precluded from raising the issue on appeal.

This pro se assignment of error merits little consideration.

[08-468 LA.APP. 5 CIR. 18] *PRO SE ASSIGNMENT OF ERROR NUMBER THREE*

Trial Court committed fundamental error by not exercising judicial authority stopping the prosecution's obvious use of known perjured testimony; and, from the record, Defense Counsel rendered ineffective assistance by not impeaching or objecting, condoning the same, fraud on court, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s).

The defendant first argues that Deputy Jewell's testimony was false and knowingly presented by the state. Next, he argues that the court abused its discretion by allowing this perjured testimony to be presented, although he does not assert, and the record does not show, that he objected *98 to the officer's testimony in the trial court. Next, the defendant argues that perjury is shown by the fact that the victim could not identify the defendant at the suppression hearing but could make a positive identification at trial. In his final subclaim, the defendant argues that his attorney was constitutionally ineffective for failing to object to the use of perjury.

The defendant relies on the leading perjury case, *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). In *Napue*, the Supreme Court of the United States held that where a prosecutor allows a state witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness's testimony reasonably could have affected the jury's verdict, even if the testimony goes only to the credibility of the witness.

This Court in *State v. Singleton*, 05-634 (La.App. 5 Cir. 2/14/06), 923 So.2d 803, addressed a perjury claim raised for the first time on appeal. The Court held that since the defendant failed to object during trial to the testimony as perjury, he waived his right to assert the error on appeal.

[12] Although the defendant argues at length that false testimony was introduced in his trial, he points to the record, not newly discovered, external sources, to prove his allegation. He points to internal contradictions in the testimony to support his [08-468 La.App. 5 Cir. 19] claims, thus establishing that the substance of the claim, and its factual underpinnings, were known to him at the time of trial. Although the claim was known to him, the defendant did not afford the trial court an opportunity to rule on his perjury claim. Therefore, he is precluded from raising it for the first time on appeal.

The defendant alleges that Detective Jewell's testimony was perjured. Specifically, he alleges that although Jewell testified that he informed "911" that the defendant had a knife in his pocket, that in fact, he never told "911" any such thing. He alleges that at the time 911 was called by the victim, that Officer Jewell had not yet even seen nor spotted the defendant.

The defendant is apparently confusing the 911 call made by the victim with the dispatch call made by Officer Jewell. In the dispatch made by Officer Jewell, he informed the dispatcher that he saw the defendant with a knife in his pocket. The dispatch call was different from the 911 call made by the victim. This claim has no merit.

In his third subclaim, the defendant argues that the state contrived the victim's positive in court identification. The defendant repeatedly argues that, absent fraud, seventy-two percent of the jury would have returned a not guilty verdict. (FN7)

The defendant correctly notes that the victim testified at the motion to suppress hearing that he could not make a positive identification of the robber. The record establishes that during the motion to suppress hearing, the victim testified that the man he identified that day was the robber. In response to the question during cross-examination of whether he could identify in court the [08-468 La.App. 5 Cir. 20] individual who robbed him, the victim replied, "No, not today. I did that day when I was face to face with him. I cannot--I can't say I would do it today, no." At trial, the victim positively identified the defendant as the man who robbed *99 him. He was questioned thoroughly about this issue and explained his failure to identify the robber at the suppression hearing as both uncertainty due to the number of identically-dressed defendants seated in the jury box, and a reluctance to identify the wrong person in the absence of certainty.

[13][14] Clearly, the credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

testimony of any witness. It is not the function of the appellate court to assess credibility or reweigh the evidence. *State v. Longo*, 08-405 (La.App. 5 Cir. 1/27/09), 8 So.3d 666, 2009 WL 196358. It is also well settled that a positive identification of only one witness is sufficient to support a conviction. *State v. Williams*, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, *writ denied*, 02-3182 (La.4/25/03), 842 So.2d 398.

The jury was aware that the victim did not make a positive identification of the defendant at the motion to suppress hearing, although he made a positive identification of the defendant shortly after the robbery and at trial. The jury's finding of guilt reveals that they found the witness credible and believed his identification of the defendant.

[15] In his final complaint under this assignment of error, the defendant complains that his attorney was ineffective for failing to object to the use of perjured testimony. A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full evidentiary hearing can be conducted, rather than on direct appeal. *State v. McIntyre*, 97-876, p. 10 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, *writ denied*, 98-1032 (La.9/18/98), 724 So.2d 753. However, where the record [08-468 La.App. 5 Cir. 21] contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. *Id.*

Notably, although the defendant points to discrepancies in testimony between witnesses, he does not establish that perjury occurred in his trial. The defendant also makes factual allegations of what he contends his attorney knew at the time of trial and on his allegation that the prosecutor allowed perjured testimony to be presented at trial. None of these allegations are supported by the record. The trial court record, therefore, is insufficient to review the facts addressing the defendant's claim of ineffective assistance of counsel. As presented on appeal, this assignment of error has no merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

Trial court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as "private citizen" to

immediately arrest, violating Mr. Ayo's Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).

## PRO SE ASSIGNMENT OF ERROR NUMBER FIVE

Trial court erred by failing to suppress the seizure of alleged evidence, finding that construction worker's possession of [un]concealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

Pro se assignments of error four and five allege related complaints and are addressed together. The defendant argues, as he did in his pro se motion to suppress the evidence, that in order to justify a *100 warrantless search as incident to an arrest, the arrest itself must be a "lawful" arrest.

The arrest of the defendant was made by Officer Simoneaux. This arrest was based on the description of the robber broadcast on the police radio. The [08-468 La.App. 5 Cir. 22] Supreme Court of the United States has expressly concluded that if a law enforcement bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on the bulletin justifies a stop to check identification. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985).

[16][17] Furthermore, probable cause existed to support the defendant's arrest. Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. *State v. Fisher*, 97-1133, p. 7 (La.9/9/98), 720 So.2d 1179, 1184.

The police in this case had a reasonable and trustworthy report of an armed robbery where the dangerous weapon was a knife, along with a physical description of the robber. The defendant, who matched the description given, was found shortly after the robbery, attempting to leave the area. Upon detection, the defendant was arrested by Deputy Simoneaux when he saw him at a gas station. Visible protruding from the defendant's back pocket was a knife handle.

These circumstances constitute probable cause. As the Supreme Court of Louisiana noted in *State v.*

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

*Johnson,* 363 So.2d 684, 689 (La.1978) that "[o]ne of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime." The police in this case knew that an armed robbery had just occurred and they had reasonably trustworthy information on the robber's description sufficient to justify [08-468 La.App. 5 Cir. 23] a man of ordinary caution in believing the defendant had committed this robbery. This assignment of error has no merit.

[18] In a subclaim, defendant argues that the currency seized from him at arrest should have been suppressed, based upon inconsistent and perjured testimony from the officers, and that the money was abandoned after defendant was unlawfully seized, and that the chain of custody was not proved. A review of the record shows that although the issue was raised in the motion to suppress, the defendant failed to object at trial to the introduction of the currency. Accordingly, the issue was waived and not preserved for appeal.

### PRO SE ASSIGNMENT OF ERROR NUMBER SIX

Trial court erred by failing to suppress seizure of jacket in cab, not in "plain view" and beyond control of Mr. Ayo, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The defendant argues that the trial court should have suppressed the evidence of his windbreaker. He argues that the recovery of his windbreaker from his travel bag inside the cab was unreasonable because it was outside his immediate control. He also contends that the incriminating nature of the seized evidence was not immediately apparent.

*101 The defendant, pro se, raised a pretrial challenge to the seizure of the windbreaker from his travel bag. The trial court heard this argument (and other arguments) in a hearing on motions to suppress and for a preliminary examination and found that the evidence was lawfully seized.

[19] The defendant's reliance on "plain view" case law is misplaced. It is well established that when a lawful arrest is made of an occupant (or recent occupant) of a vehicle, law enforcement officers have

the right to search the entirety of the passenger compartment, including closed containers found in the passenger [08-468 La.App. 5 Cir. 24] compartment, as a contemporaneous incident of the lawful arrest. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). See also *State v. Warren,* 05-2248 (La.2/22/07), 949 So.2d 1215. *Belton* is not limited to situations where suspects remain in their vehicles when approached by the police. See *Thornton v. United States,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), where the police stopped the driver of a vehicle for a traffic violation after he had parked and left his car. The driver consented to a pat down during which he admitted possession of illegal drugs on his person. Police arrested the driver and put him in the patrol car before searching the vehicle and discovering a handgun under the driver's seat. The High Court concluded that so long as an arrestee is the sort of recent occupant of a vehicle "such as [the driver] was here," law enforcement officers could lawfully search the vehicle incident to the arrest. *Thornton* at 623, 124 S.Ct. at 2132.

This pro se assignment of error has no merit.

### PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN

Trial court erred by failing to suppress one-on-one identification, finding it not suggestive or that a likelihood of misidentification occurred, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

The portion of the defendant's argument that the victim's identification constituted a prohibited show-up identification has been addressed at length in connection with the first counseled assignment of error.

[20] In an additional claim, the defendant argues that he should have been extradited to Jefferson Parish after his arrest in Orleans Parish. He relies in part on a federal statute, 18 U.S.C.A. § 3182, which has no applicability to his arrest for a violation of Louisiana law.

LSA-C.Cr.P. art. 228 provides that "[i]t is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct [ 08-468 La.App. 5 Cir. 25] the person arrested to the nearest jail or police station and cause him to be booked." This Court, in *State v. Stevenson,* 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, addressed

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                    Page 15

the argument the defendant now makes.

Through his questions, the defendant in *Stevenson* attempted to show that under article 228, he should have been taken to Orleans Parish for booking rather than the Gretna Police Station in Jefferson Parish. On appeal, he argued that the failure of the police to book him in Orleans Parish supported his defense that the police planted drugs on him while he was at the Gretna Police Station. The defendant argued that, in order to present his defense, he should have been allowed to fully cross-examine the officer on the law pertaining to booking a suspect.

On appeal, this Court found that the defendant did not preserve his right to appeal on this claim. During his questioning, the State objected and the trial court sustained the objection. The defendant **\*102** objected to the ruling but did not proffer the testimony of the officer related to this line of questioning.

Similarly, the defendant in this case did not preserve the alleged error relating to the location of booking for appeal. This assignment of error has no merit.

### PRO SE ASSIGNMENT OF ERROR NUMBER EIGHT

Trial court erred by "not" addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violating Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s). (FN8)

[08-468 La.App. 5 Cir. 26] In this assignment of error, the defendant states that he wrote numerous letters to his attorney regarding preparation of his defense.

It is fundamental that a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To establish ineffective assistance of counsel, a defendant must prove both that 1) his attorney's performance was deficient, and 2) he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A claim for ineffective assistance of counsel is most typically and efficiently addressed in an application for post-conviction relief, where a full evidentiary hearing can be conducted, rather than on direct appeal. *State v. McIntyre*, 97-876 (La.App. 5 Cir. 1/

27/98), 708 So.2d 1071, 1075,*writ denied*, 98-1032 (La.9/18/98), 724 So.2d 753.

The defendant raises complaints regarding preparation and the choice of defense witnesses. In particular, he asserts that counsel failed to locate and subpoena his potential defense witness, Theo Brickley.

The record does not support the allegation. Defense counsel noted on the record that he attempted to serve Theo Brickley for trial but was unsuccessful. (Vol. 2, p. 336, 339). The defense had an instanter subpoena issued for this witness but there was no return on the subpoena. More importantly, defense counsel informed the defendant at trial that he was entitled to a continuance should Brickley not be available for trial. The defendant on the record informed the court that he did not want a continuance but wanted to proceed to trial even without the witness. Accordingly, this assignment of error has no merit.

[08-468  LA.APP.  5  CIR.  27]  *PRO SE ASSIGNMENT OF ERROR NUMBER NINE*

Trial Court erred by failing to grant a mistrial when the State committed fundamental error and "perjury" by fraudulently informing jury that Mr. Ayo is wanted **\*103** for a parole violation, when Mr. Ayo has (never) been on parole, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

The majority of issues raised in this pro se assignment of error have been discussed in connection with the second counseled claim.

The defendant makes a new factual claim: that his trial transcript has been altered. A criminal defendant has a right to a complete transcript of trial proceedings. LSA-Const. Art. I, § 19. The law provides that in criminal cases tried in the judicial districts, the official court reporter shall record all portions of the proceedings required by law or the court and shall, when required by law or the court, transcribe those portions of the proceedings required, which shall be filed with the clerk of court in the parish where the case is being tried. LSA-R.S. 13:961

Each volume of the transcript in this case bears the certification of the court reporter that a true and correct transcript of proceedings has been made. Despite these official attestations, the defendant states that his trial transcripts have been altered and that the

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

7 So.3d 85, 08-468 La.App. 5 Cir. 3/24/09, State v. Ayo, (La.App. 5 Cir. 2009)                                    Page 16

alterations reveal perjury and ineffective assistance of his counsel. In his brief, he quotes passages which he contends are the true version of events.

By order of this Court, John H. Andressen, Deputy Judicial Administrator and Chief Court Reporter of the Twenty-fourth Judicial District, listened to the relevant portion of the transcript. He has provided a written statement to this Court that he listened to the entire cross-examination of the defendant and "determined that there are no parts of the transcript missing or altered." – This assignment of error has no merit.

[08-468   LA.APP.   5   CIR.   28]   *PRO   SE ASSIGNMENT OF ERROR NUMBER TEN*

Trial court erred by admitting evidence agreed upon in pretrial not to introduce, violating Mr. Ayo's Sixth and Fourteen Amendment Constitutional Right(s) to a fair trial.

It is undisputed that after the robbery the defendant wrote a letter to the cab driver, William Barrett. It is also undisputed that the state, in possession of the letter, provided a copy to the defense before trial. In this letter, the defendant stated that he armed himself with a knife before getting into the cab because he was afraid of a "psycho patient [sic] contractor" who was outside.

The defendant argues that the prosecutor promised prior to trial not to introduce his letter into evidence. He further contends that the state breached this agreement and questioned him regarding his letter. He concludes that the introduction of his letter to Mr. Barrett was so prejudicial as to warrant the granting of a new trial.

The state cross-examined the defendant on his letter to the cab driver. Defense counsel objected and informed the court that he had received copies from the state of letters the defendant wrote. Counsel also stated that he had been promised that the state would not use the letters at trial. The assistant district attorney replied that she had promised counsel not to use the letters during her case-in-chief but she denied promising not to use the letter to impeach the defendant. The trial judge allowed the prosecutor to cross-examine the defendant on his letter and allowed it to be admitted as state's exhibit 21.

In a bench conference, the state indicated that it wished to offer this letter into evidence. The defense objected but the court admitted the letter into

evidence as State's Exhibit 21. The trial court was faced with contradictory accounts of an agreement between counsel. Under the circumstance, the trial court's ruling was not an abuse of discretion.

*104 [08-468 La.App. 5 Cir. 29] Furthermore, the trial court's ruling was supported by evidence law. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. LSA-C.E. art. 403.

[21][22] Evidence may also be admitted for impeachment purposes. Impeachment evidence is that which affects the credibility of a witness. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). An example, present in this case, of impeachment evidence is a prior inconsistent statement by the testifying witness. Defendant testified that he secured the knife to use for work stripping copper. What he wrote in the letter contradicts his trial testimony. Absent a clear abuse of discretion, a trial court's ruling on the admissibility of evidence will not be overturned on appeal.

The defendant's argument to this Court does not establish that the trial court abused its wide discretion in admitting the defendant's letter into evidence. This assignment of error has no merit

*PRO SE ASSIGNMENT OF ERROR NUMBER ELEVEN*

Trial court erred in not intervening and properly govern proceedings, stopping State's repeated improprieties denying Mr. Ayo's right to a fair and impartial trial, violating his Sixth and Fourteenth Amendment Constitutional Right(s).

In his final assignment of error, the defendant contends that thirty-three errors infected his trial and that these were not harmless.

[23] The combined effect of assignments of error, none of which warrant reversal on its own, does not deprive a defendant of his right to a constitutionally fair trial. [08-468 La.App. 5 Cir. 30] *State v. Rochon*, 98-717, p. 14 (La.App. 5 Cir. 3/10/99), 733 So.2d 624, 633. The Supreme Court has noted that the "cumulative error" doctrine has lost favor in the Louisiana courts. *State v. Draughn*, 05-1825, p. 70

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

(La.1/17/07), 950 So.2d 583, 629. Significantly, the Supreme Court in *State v. Manning*, 03-1982 (La.10/19/04), 885 So.2d 1044, quoted with approval *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir.1987), where the federal Fifth Circuit rejected the cumulative error doctrine by noting that "twenty times zero equals zero."

This assignment of error has no merit.

## ERROR PATENT DISCUSSION

The record was reviewed for errors patent, as required by LSA-C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La.1975); *State v. Weiland*, 556 So.2d 175 (La.App. 5 Cir.1990). The review of the record reveals no errors patent in this case.

## PRO SE WRIT NO. 08-KH-1179

In a pro se writ application, the defendant also challenges his misdemeanor conviction for resisting arrest, a violation of LSA-R.S. 14:108. This Court consolidated the actions on January 15, 2009.

Defendant argues that the "Trial Court committed fundamental error by finding police 'not' in close nor hot pursuit of person to be arrested, may enter another jurisdiction and forcibly conduct 'investigatory' stop/ detention of any citizen on whim, and that Mr. Ayo inherently vests no right to resist such an illegal arrest/detention, in violation of Mr. Ayo's Fourth, Fifth, Sixth, and Fourteenth Amendment Constitutional Right(s)."

LSA-R.S. 14:108 states, in pertinent part:

[08-468 La.App. 5 Cir. 31] § 108. Resisting an officer

A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual *105. acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

In this challenge to his misdemeanor conviction, the defendant reiterates legal arguments made in his challenge to his felony conviction. The merits of this assignment of error have been addressed at length in

connection with the issues raised in pro se assignments of error one, two, four, and five. For the reasons noted above, his assignment of error has no merit.

Accordingly, the defendant's convictions are affirmed.

## AFFIRMED.

(FN1.) Because the violation of LSA-R.S. 14:108 is a misdemeanor, Mr. Ayo filed a writ application in this court for review of that conviction. The writ application and this appeal have been consolidated for review and opinion.

(FN2.) Mr. DeBroy was very specific that he was carrying a $20 dollar bill, a $5 dollar bill, and three $1 dollar bills, as was his custom.

(FN3.) For logical discussion, these claims are taken out of the order presented in the defendant's brief.

(FN4.) In addition to eleven assignments of error, this pro se brief contains thirty-three italicized headings, all mentioning legal concepts. It is not clear how these headings relate to the assignments of error but it is clear that these headings are not briefed. The brief must contain "a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, ... giving accurate citations of the pages of the record and the authorities cited[.]" Rule 2-12.4, Uniform Rules, Courts of Appeal. Assignments of error neither briefed nor argued are considered abandoned on appeal. *State v. Blank*, 01-564 (La.App. 5 Cir. 11/27/01), 804 So.2d 132, 139.

(FN5.) "Close pursuit" does not require that police lights or sirens be used, nor does it require a high rate of speed. As noted by other courts reviewing this issue, "pursuit does not imply a fender-smashing Hollywood style chase scene, it does connote something more than mere casual following." *City of Wenatchee v. Durham*, 43 Wash.App. 547, 552, 718 P.2d 819 (Div. 3 1986). Similarly, a pursuit into another jurisdiction was upheld where the police stayed within the 45 mile an hour speed limit and did not activate sirens or flashing lights. The court observed that the critical elements characterizing hot pursuit are the continuity and immediacy of the pursuit, rather than merely the rate of speed at which pursuit is made. *Poss v. State*, 167 Ga.App. 86, 87, 305 S.E.2d 884

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

(Ga.App.1983).

(FN6.) In his brief, the defendant references pages 131-146 of the record. This portion of the transcript reflects two brief hearings on the defendant's petition for habeas corpus. Neither hearing contains testimony from witnesses.

(FN7.) For his proposition that seventy-two percent of the jury voted for conviction based on the positive identification, the defendant mistakenly relies on Expert Testimony on Eyewitness Identification: A New Pair of Glasses for the Jury, 32 Am.Crim. Law. 1013, 1023. This article addresses issues not before this Court and furthermore, the article does not support the defendants claim.

(FN8.) he defendant, in initially listing his assignments of error, includes the language relating to the court not continuing the trial. When the assignment is listed in his brief, it does not contain any reference or discussion on the question of continuing the trial. The defendant, in the body of his brief, assigns as error the following: "Trial Court erred by 'not' addressing multiple ineffective assistance of counsel claim(s) in pretrial writ, violation Mr. Ayo's Sixth and Fourteenth Amendment Constitutional Right(s)." As discussed above, under Rule 2-12.4, Uniform Rules, Courts of Appeal, assignments of error neither briefed nor argued are considered abandoned on appeal.

It is also noteworthy that no written motion for continuance appears in the record and that the minute entries from each day of trial fail to reflect that a continuance was requested by the defendant. LSA-C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The article also provides that "It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefore."

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

# EXHIBIT- B

Nevertheless, the jury found Defendant guilty of armed robbery, sentencing Mr. Ayo to serve 87 years at hard labor. (R. 383, 386). The State dismissed the multiple bill. (R. 402, 410). The instant appeal follows judgment and sentencing.

*I.*    ***Sufficiency of evidence warranting "hot pursuit" to arrest.***[1]

### ASSIGNMENT OF ERROR NO. 1

The Trial Court erred by failing to suppress the seizure of Mr. Ayo, finding police "not" in close or hot pursuit of person to be arrested may enter another jurisdiction and forcibly stop and (investigate) any citizen on whim, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

### ARGUMENT IN SUPPORT

Mr. Baptiste DeBroy had gone to a Mardi Gras warehouse with his wife when a man approached from behind and put a knife to his throat demanding money. The robber and he were face-to-face, within one foot, and he got a good look at him. (R. 80-83, 264-268). Mr. DeBroy gave the perpetrator $28.00 and he fled on foot towards Jefferson Highway.

This incident took place outside of a business owned by the parents of Lt. Detective Daniel Jewell, Jr., who grew up in the neighborhood, and was off duty at the time. Detective Jewell's uncle informed him of the robbery and gave him a very brief description of the suspect.

Detective Jewell immediately went and met with the victim and got a better description. He specifically remembered Mr. DeBroy saying that "He was a nice looking guy." (R. 155-158). Mr. DeBroy described the suspect as:

> A white male, clean shaven, good looking man, 150 lbs., slim, black hair, wearing a blue or back pullover hooded sweatshirt.
> (R. 82-83, 158, 283-286; State's Exhibit – 3).

Detective Jewell instructed Mr. DeBroy to call 911 while he canvassed the area.

After making a couple of loops around the neighborhood to see if he could spot the perpetrator, Detective Jewell downgraded the search to a Code-1. The radio dispatcher broadcast that Deputy Simoneaux stopped a suspect on Jefferson Highway.

While going down Cicero St., in route to assist Deputy Simoneaux, Detective

---

[1]  Ground one of pro se writ of Habeas Corpus / Motion to Suppress  (Supp R. 17-61; R. 16, 131-146)

Jewell saw a white male several blocks from the scene of the incident wearing blue jeans and a green tee shirt carrying a travel bag. After Detective Jewell questioned the description of the man with fellow officers via radio, he learned that he did not fit the description of the suspect and passed up the individual. (R. 158-162).

The testimony of the officers and Mr. Ayo at trial revealed that at the time of the incident Mr. Ayo's description was:

> A white male, with two (2) black eyes, cuts, and severe scabbing and bruising about his face (not the good looking man to B.O.L.O. – to be on the look-out for), 240 lbs., husky, brown hair, wearing a lime green tee shirt and carrying a travel bag.
> (R. 176-177, 320-321, 326, 364-367; State's Exhibit – 13).

Detective Jewell declined to "investigate" him further because a call came in that Deputy Simoneaux had a man detained *"fitting"* the description of the suspect. (R. 162, 235-236). When Mr. DeBroy did not identify the Mexican man that had been stopped and detained, Detective Jewell headed back to Cicero St. where he had seen the white male in green shirt and jeans.

Upon arriving, the guy in the green tee shirt wasn't there anymore. However, their were several construction workers in the area. Detective Jewell asked them if they had seen where the guy that was just standing there went. One man said, "Yeah. He got into a blue cab and headed that way," pointing in the direction of New Orleans, the State of Mississippi, or possibly Florida. (R. 162-163).[2]

Deputy Simoneaux controvertedly testified that Detective Jewell broadcast on the radio that he observed a suspect fitting the description get into a Service Cab and was trying to catch up with the cab but just lost sight of the vehicle as he crossed the line into Orleans Parish. At that time he slowed down and began looking down side streets. (R. 99, 236-237; Exhibit – A).

Mr. Ayo contends that probable cause for a full custodial arrest, is more than *"reasonable suspicion for an investigatory stop."* See e.g., State v. Fisher, 720 So.2d 1179, 1183 (La. 1998) (evidence was insufficient to establish that defendant was fleeing

---

2   Two miles of businesses and residential neighborhoods lie between this point and Orleans Parish line.

to avoid apprehension, as would allow officer's reasonable suspicion that defendant had committed a crime).

The only facts known to Jefferson Parish officials when they entered another jurisdiction looking to "*investigate*" this possible suspect was that:

> 1.    A white male was observed outside an apartment several blocks away from the scene of the incident, [but did not match the description for the initial stop by Detective Jewell].
>
> 2.    The man was not doing anything suspicious or illegal. He was just carrying a travel bag.
>
> 3.    An untested source informed police that the man (Mr. Ayo) hired a cab and went "that way."

This innocent everyday behavior did not provide the officers with the requisite "reasonable cause" to believe that Mr. Ayo committed a crime warranting immediate arrest. See, e.g., State v. Blanton, 400 So.2d 661, 663 (La. 1981), arresting agents who were only informed by another agent to watch car and see what they could learn from such surveillance, did not have reasonable grounds to suspect him of criminal activity to warrant stop of defendant, and information supplied by confidential informant did not establish probable cause for warrantless arrest. State v. Raheem, 464 So.2d 293, 297 (La. 1985); State v. Matthews, 366 So.2d 1348, 1352 (La. 1978).

La.C.Cr.P. Art. 213 states in relevant part:

> A peace officer may, without a warrant, arrest a person when:
>
> (3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;

Detective Jewell merely observed Mr. Ayo, who did not match the description of the suspect standing outside his apartment with a carryall bag. Detective Jewell did not have reasonable cause to believe that Mr. Ayo had committed an offense.

Had Mr. Ayo matched the description of the suspect and/or was doing something suspicious to make Detective Jewell believe that he had committed an offense, as a seasoned officer, (Lieutenant) Detective Jewell, would undoubtedly have stopped and detained Mr. Ayo. However, this is not the case. Detective Jewell simply passed by Mr.

7

Ayo and did not give him a second thought until it was discovered that the man that

Deputy Simoneaux stopped and detained was not the suspect.

    Nothing had changed from the time Detective Jewell initially saw Mr. Ayo

standing outside his apartment with a carryall bag until the time that it was realized that

the man Deputy Simoneaux stopped and detained was not the perpetrator. Beck v. Ohio,

379 U.S. 89, 96-97, 85 S.Ct. 223, 228-229, 13 L.Ed.2d 142 (1964). Officials had not

heard or seen anything more to give them grounds to believe that Mr. Ayo acted

unlawfully. Thus, in light of the fact Jefferson Parish Officials were not in hot pursuit of

"*person to be arrested*," the (investigatory) stop in Orleans Parish, without probable

cause, was illegal and violated the Fourth Amendment. Dunaway v. New York, 442 U.S.

200, 214-215, 99 S.Ct. 2248, 2257-2258, 60 L.Ed.2d 824 (1979).

2.    *Lawfulness of "investigatory" stop out of jurisdiction.*

    La.C.Cr.P. Art. 213(4) states in relevant part:

> A peace officer in close pursuit of a person to be arrested, who is
> making an arrest pursuant to this Article may enter another jurisdiction in
> this state and make the arrest. (emphasis added).

However, police in hot pursuit must have probable cause to arrest culprit before pursuing

him. State v. Franklin, 353 So.2d 1315, 1319 (La. 1978); see e.g., State v. Randolph, 337

So.2d 498, 500 (La. 1976) (information of broadcast came from officer who personally

observed defendant as he ran out of house).

    None of the officers involved in this incident had reason to believe that Defendant

had committed a crime outside their presence to effectuate an immediate arrest of Mr.

Ayo.

    In fact, Deputy Simoneaux, unequivocally testified that he was not following the

cab nor seen it until after [they] entered New Orleans. Then he observed [a] cab at the

Spur Station on the corner of Eagle St. and Claiborne Avenue. "He stopped and began to

watch." (R. 99, 237, 254-255).[3]

    Art. 213 allows a law enforcement officer from another parish in close pursuit (*of*

---

3  Properly defined in Merriam Webster's Collegiate Dictionary, Eleventh Edition; *Watch* \ 1. A state of alert or
continuous attention; 6. To keep oneself informed about <His Progress>.

# EXHIBIT- C

COURT OF APPEAL
STATE OF LOUISIANA
FIFTH CIRCUIT


DOCKET NUMBER: 08-KA-0468


STATE OF LOUISIANA
APPELLEE

VERSUS

GLENN C. AYO
APPELLANT


APPEALED FROM THE TWENTY-FOURTH JUDICIAL DISTRICT
COURT IN AND FOR THE PARISH OF JEFFERSON
STATE OF LOUISIANA
CRIMINAL DOCKET NO. 07-369
HONORABLE HENRY C. SULLIVAN, JR., PRESIDING


ORIGINAL BRIEF ON BEHALF OF APPELLANT


LOUISIANA APPELLATE PROJECT

MARGARET S. SOLLARS
BAR ROLL NO. 21122
ATTORNEY FOR APPELLANT
513 COUNTRY CLUB BLVD.
THIBODAUX,  LOUISIANA 70301
(985) 446-2618

2.   A mistrial should have been granted.

## ISSUES PRESENTED FOR REVIEW

1.   Did the Trial Court err when the identification of Mr. Ayo was not

suppressed?

2.   Should a mistrial have been granted?

## LAW AND ARGUMENT

## ASSIGNMENT OF ERROR NUMBER ONE (1)

1. The Trial Court erred by failing to suppress the identification obtained in

violation of the defendant's constitutional rights.

The State, in its attempt to prove Mr. Ayo's guilt, asked the jury to disregard

the discrepancies and hesitancy in Mr. DeBoy's identification of Mr. Ayo as the

robber.   Furthermore, an illegal arrest occurred when the arrest and seizure was

effectuated outside Jefferson Parish and without a warrant.

The Identification

Mr. DeBoy was an elderly man who certainly wanted to do what was right.

There is no doubt that he wanted to tell the truth and accuse the right person.

However, he had had two cataract surgeries and his eyesight had dimmed through the

years. (Record 263). Originally he told Detective Jewell to look for a white man who

was nice looking, clean shaven, dark hair, about 5'9", and wearing a blue hooded

jacket. (Record 158). Minutes later he gave more or less the same description to the

911 operator. (Record 105, 235).

Yet, when Deputy McCoy arrived, he described a white man about 5'7" and

weighing 165. He might have even told the police that the robber weighed 150

pounds. He did not remember any tattoos on the robber's hands, nor did he report

that the hair color was dark. (Record 91, 94-96, 269-272, 280-281, 285).

7

Considering the circumstances surrounding Mr. DeBoy's identification, all of the **Braithwaite** factors do not favor admissibility in this case. The identification was the crucial issue in this case, but, under these circumstances Mr. Ayo's identification as the culprit was unreliable. As such, this conviction should be vacated on the basis of this error.

### The Illegal Seizure and Arrest

No warrant was issued for Mr. Ayo's arrest. The only information that Detective Jewell had about the robber was that he was looking for a nice looking, clean shaven, white male of average height who was wearing a blue hooded jacket. As such, he evidently began looking for any white male who was walking in the surrounding neighborhood.

To illustrate the vagueness of this description and Mr. DeBoy's other descriptions, Detective Jewell saw Mr. Ayo on foot several blocks from the robbery. About the only thing that matched was that he was a white male. Mr. Ayo was a good deal heavier and older than the person Mr. DeBoy described. About the time that Detective Jewell decided to stop Mr. Ayo, he heard that another person had been detained. He had seen Mr. Ayo standing in the street talking to someone. (Record 182). He left Mr. Ayo alone and began going to where the other person was being held. When Mr. DeBoy said that the person was not the robber, Detective Jewell returned to where he had seen Mr. Ayo. He learned that he had gotten in a cab headed for New Orleans.

Deputy Simoneaux started looking for the cab and he crossed the parish line. He saw a cab stopped at gas station and Mr. Ayo standing next to the cab. He saw a knife sticking out of a back pocket and Mr. Ayo was wearing a green shirt. He immediately approached Mr. Ayo and tried to take the knife away. By then other

11

# EXHIBIT- D

1    BY MR. SCHMIDT:

2    Q.   If Deputy McCoy testified that you alerted him on

3    the radio to the effect that "I think I have the

4    perpetrator," would that be an accurate statement?

5    A.   I don't know because I wasn't here when he

6    testified to that.  All I can say is that I notified

7    him to bring the victim to me to identify the subject

8    that I had stopped to see if this could be the

9    perpetrator.

10   Q.   Okay.  The knife that was in the back pocket of

11   Mr. Ayo, that wasn't a concealed weapon, was it?

12        MS. SWAIM:

13             Judge, I'm going to object to the

14        relevance.

15        THE COURT:

16             What's the relevance, Counsel?

17        MR. SCHMIDT:

18             Just --

19        THE COURT:

20             You want to approach the bench?

21             * * * * * *

22   (BENCH CONFERENCE OUT OF THE HEARING OF THE JURY)

23             (AS FOLLOWS:)

24             * * * * * *

25        MR. SCHMIDT:

26             Just going back through the facts and

27        his arrival on the scene and what he saw,

28        that's all.  I think I have a right to do

29        that on cross-examination.

30        THE COURT:

31             You can ask him what he saw.  That's

32        not what you said.

-109-

252

# EXHIBIT- E

1      THE COURT:

2              Yes, you may.

3      MR. SCHMIDT:

4              I have no further questions, Your

5         Honor.

6      THE COURT:

7              Thank you.  Any redirect by the State?

8      MS. SWAIM:

9              Yes, Your Honor.

10                 REDIRECT EXAMINATION

11   BY MS. SWAIM:

12   Q.   Lieutenant Jewell, that radio, that dispatch

13   transcription you're looking at, did you type that?

14   A.   No, ma'am.

15   Q.   Whose typing those words that end up there?

16   A.   I have no idea.  I guess the dispatcher.

17   Q.   Okay.  And there is a dispatcher, right?

18   A.   Yes, ma'am.

19   Q.   Can you explain to the Ladies and Gentlemen of

20   the Jury what a dispatcher is?

21   A.   A dispatcher is someone who dispatches calls out

22   to the deputies on the street or the officers.  She

23   receives that -- well, the 911 operator is different

24   than the dispatcher.

25   Q.   So you talk -- as we heard you talking on the 911

26   tape -- you're talking, and then someone else is

27   typing.

28   A.   I guess.

29   Q.   Typing what you said.

30   A.   I guess.

31   Q.   Now, you and I met the other day, correct, in my

32   office?

1    A.   Correct.

2    Q.   Did I play the copy of the dispatch tape to you?

3    A.   I believe so.

4    Q.   And do you remember hearing on the dispatch tape

5    as we all just heard --

6         MR. SCHMIDT:

7              Objection, Your Honor.  The State's

8              asking Lieutenant Jewell to testify to what

9              the tape says.  We've all listened to the

10             tape.  The tape's in evidence.  I think it's

11             inappropriate for him to try to testify as

12             to what the tape says.  He can testify to

13             what he said.

14        THE COURT:

15             The tape is in evidence.  He can

16             testify as to what he said.

17   BY MS. SWAIM:

18   Q.   Lieutenant Jewell, again you listened to the 911

19   tape.  We listened to it in my office, correct?

20   A.   Correct.

21   Q.   Do you remember on the 911 tape saying that you

22   thought you saw a knife in the back pocket?

23   A.   I believe I said that.  That's again why I

24   answered his question earlier that way.

25   Q.   And, again, you've heard the 911 tape.  This is

26   not your writing.  That's someone writing what you

27   say, correct?

28   A.   Correct.

29   Q.   Now, Lieutenant, when you're driving around and

30   looking for people, the one main thing you're looking

31   for is a blue-hooded sweatshirt, correct, or blue

32   hooded pullover or something like that, correct?

-40-

# EXHIBIT- F

```
Tiburon, Inc.   INCIDENT HISTORY DETAIL: J0700702    Page   1         09-05-07
                    JEFFERSON PARISH POLICE                              09:28
************************************************************************
INITIATE:    09:21:24 01/07/07   CALL NUMBER:     J0269
ENTRY:       09:23:19            CURRENT STATUS:  CLOSED
DISPATCH:    09:24:29            PRIMARY UNIT:    1A1
ON SCENE:    09:25:13            ITEM NUMBER:     JP070106371
CLOSE:       12:34:40            DISPOSITION:     R

LOCATION: 250 IRIS AV,ME (JEANETTE ST & LANCE ST)
DAREA:    D1
BEAT:     101                    TYPE:  64K   ROBBERY/KNIFE
GZONE:    1117                   PRIORITY:  6
FIRE:     1211

09:23:19 JC01 ENTRY      RP:ALI: CINGULAR \AD:912 DAKIN ST,NO #5044531610
                         PH:985-238-9042 \ ORIGIN:9 \TX:C/2...COMP BEATRICE ADV
                         W/M WEARING BLUE HOOD OVER HEAD PUT 95K TO FRINEDS
                         THROAT AND DEMANDED MONEY (MTF)
09:23:19 JC01 IT         JP070106371
09:23:51 JC01 SUPP       ORIGIN:9 \TX:COMP ADV SUBJ ON FOOT WALKED TWDS JEFF
                         HWY....SUBJ 5'7 170 LBS
09:24:07 JC01 SUPP       ORIGIN:9 \TX:BLK HAIR CLEAN SHAVEN
09:24:29 JD07 DISP-ENR   1A1
09:24:29 JD07 ID         1A1 <S96945>MCCOY, GEORGE
09:24:32 JD07 BACK-ENR   1A1 1A12
09:24:32 JD07 ID         1A12 <S897695>SIMONEAUX, PAUL
09:24:32 JC01 SUPP       ORIGIN:9 \TX:OCCURED 10 MINS AGO....NOT INJURED DOES NO
                         NEED MEDICAL
09:24:35 JD07 BACK-ENR   1A12 1A14
09:24:35 JD07 ID         1A14 <S99783>PITFIELD, JAMES D
09:25:12 JC01 SUPP       ORIGIN:9 \TX:SUBJ TOLD COMP THAT IF HE GOT UP HE WOULD
                         KILL HIM....SUBJ TOOK $30 FROMTHE COMP
09:25:13 JD07 BACK-ONS   1A12 631
09:25:13 JD07 ID         631 <S96715>JEWELL, DANIEL
09:25:33 JC01 SUPP       ORIGIN:9 \TX:C/B 453 1610
09:25:37 JD07 MISC       631, ADVD HE IS IN THE NEIGHBORHOOD...NOT CODE
09:25:43 JD07 INSRVICE   1A1
09:25:52 JD07 MISC       1A12, WILL START TO THE AREA TO SEARCH
09:26:03 JD07 MISC       631, ADVD ITS NOT C/2 OCCURRED 10 MINS AGO
09:27:53 JD07 MISC       AIRED ON C/2 AT TIME OF DISPATCH
09:27:56 JD07 ONSCENE    1A12
09:28:13 JD07 MISC       WITH TONES ON JAC,INC F 1,F 4
09:30:23 JD07 BACK-ONS   1A12 1A1
09:30:23 JD07 ID         1A1 <S96945>MCCOY, GEORGE
09:30:50 JD07 CHGLOC     1A12 800-BLK JEFFERSON HY,ME, W/M TAN SHORT BLUE SLEEVE
                         SHIRT
09:30:53 JD07 ONSCENE    1A12
09:31:14 JD07 MISC       631, ADVD CLOTHING SCRIPT DRK PANTS BLUE SWEAT SHIRT
09:31:31 JD07 MISC       631, ADVD HE IS A W/M
09:31:50 JD07 MISC       1A12, H/M...TAN SHORTS...
09:32:56 JD07 PREEMPT    1A14
09:33:21 JD07 MISC       1A12, CLOSE TO THE TRIPLE A MINI STORAGE
09:33:38 JD07 MISC       1A1, ADVD HE IS 10-5 VICTIM AND SEE IF HE CAN IDENTIFY
09:33:53 JD07 MISC       631, TRYING TO VERIFY ETHINICITY
09:34:01 JD07 MISC       1A1, ADVD AN AMERICAN MALE
09:34:16 JD07 MISC       631, ADV DWHAT ABOUT THE HOODED SWEATSHIRT
09:36:13 JD07 MISC       1A1, SUBJ WASNT THE ONE
09:36:27 JD07 MISC       631, HE SUBJ GOT IN TO A CAB
09:36:36 JD07 MISC       631, ADVD GOING TO NEW ORLEANS
```

83110

IMAGED DEC 03 2007

```
Tiburon, Inc.   INCIDENT HISTORY DETAIL: J07007026   Page  2        09-05-07
                        JEFFERSON PARISH POLICE                        09:28
****************************************************************************

09:37:26 JD07 MISC      631, ADVD IS IT GREEN SHIRT AND BLUE JEANS
09:37:55 JD07 MISC      1A1, HAD ON BLUE JEANS FOR SURE
09:38:04 JD07 MISC      631, ADVD DOESNT SEE A CAB
09:38:15 JD07 INSRVICE  1A12
09:38:30 JD07 BACK-ONS  1A1 1A12
09:38:30 JD07 ID        1A12 <S97695>SIMONEAUX, PAUL
09:38:51 JD07 MISC      1A12, ADVD HE IS WITH A W/M BLK SHIRT BLUE JEANS
09:39:04 JD07 MISC      631, M SEEM W/M BROWN HAIR GREEN SHIRT
09:39:58 JD07 CHGLOC    1A12 CLAIBORNE DR/JEFFERSON HY,ME, SPUR STATION
09:40:10 JD07 MISC      1A12, SUBJ HAS A 95K
09:40:42 JD07 CHGLOC    1A12 EAGLE/CLAIBORNE
09:40:50 JD07 MISC      1A1, GET NOPD OUT HERE
09:40:50 JD05 MISC      EAGLE AND CLAIBORNE
09:41:00 JD07 MISC      1A12, ADVD THE SUBJ HAS A 95K....
09:41:07 JD07 BACK-ONS  1A12 1A10
09:41:07 JD07 ID        1A10 <S22906>ARSENAUX, SANDRA
09:41:20 JD07 CHGLOC    1A1 EAGLE/CLAIBORNE
09:41:26 JD07 ONSCENE   1A1
09:41:39 JD07 MISC      AIR IS 10 83
09:42:43 JD07 BACK-ONS  1A1 1A3
09:42:43 JD07 ID        1A3 <S99205>SOILEAU, MARK
09:43:12 JD05 MISC      NOPD E/R
09:43:19 JD07 MISC      1A3, ADVD STILL NEED NOPD TO LOC
09:43:21 JD07 INSRVICE  1A3
09:44:54 JD07 ONSCENOK  1A1
09:44:54 JD07 ONSCENOK  1A10
09:44:54 JD07 ONSCENOK  1A12
09:45:44 JD07 MISC      631, ADVD TO SLOW NOPD DOWN ...SINCE JPSO ADVD A C/4
09:49:26 JD07 MISC      1A1, START C/S TO THE LOC
09:50:37 JD07 BACK-ENR  1A1 805
09:50:37 JD07 ID        805 <107276>NAUMANN, RODNEY E
09:51:24 JD07 MISC      631, HAVE AN ON DUTY ROBBERY GET IN TOUCH....
09:51:47 JD05 MISC      JP 568 ADVD
09:52:49 JD07 MISC      631, P/S 416 2778 ...
09:52:59 JD07 MISC      631, ADVD IT IS FOR 1A1
09:54:24 JD07 MISC      1A1, 10 53
10:07:47 JD07 TRANSPRT  1A12 JPCC, 1X
10:08:24 JD07 INSRVICE  1A10
10:20:16 JD07 MISC      1A1, 416 8778, FOR 1A1, FOR DET TO 1021
10:20:36 JD05 MISC      JP 568 ADV
10:24:19 JD07 MISC      1A1, REQ C/S MEET HIM AT 250 IRIS, 805 ADV
10:24:22 JD07 CHGLOC    1A1 250 IRIS AV,ME
10:24:27 JD07 ONSCENE   1A1
10:24:41 JD07 CHGLOC    805 250 IRIS AV,ME
10:27:44 JD07 ONSCENE   1A12
10:28:36 JD07 MISC      1A1, ADV HE IS OUT ON IRIS
10:35:57 JD07 ONSCENE   805
10:36:41 JD07 MISC      805, 1053
10:49:01 JD07 INSRVICE  805
11:13:44 JD07 INSRVICE  1A12
11:35:56 JD05 BACK-ONS  1A1 1A12
11:35:56 JD05 ID        1A12 <S97695>SIMONEAUX, PAUL
12:06:10 JD07 INSRVICE  1A12
12:24:15 JD07 CLEAR     1A1 R
12:34:40 JD07 INSRVICE  631
12:34:40 JD07 CLOSE
```

S - 3

IMAGED DEC 03 2007   83110

Tiburon, Inc.   INCIDENT HISTORY DETAIL:  J0700702     Page   3  (last) 09-05-07
                JEFFERSON PARISH POLICE                              09:28
*************************************************************************

```
OPERATOR ASSIGNMENTS:   JC01   115581 KATICICH, ELLA OP30
                        JD07   115835 RHODES, JIANNI OP40
                        JD05   115007 TOURELLE, ASHLEY  OP18
       AS OF 10:07:47:  JD07   S94188 BANKSTON, LINDA  OP11
       AS OF 10:20:36:  JD05   S32320 BODLEY, SHARON A OP52
       AS OF 11:35:56:  JD05   115007 TOURELLE, ASHLEY  OP18
       AS OF 12:34:40:  JD07   115007 TOURELLE, ASHLEY  OP18
```

IMAGED  DEC 0 3 2007

S-3-
83110 1

EXHIBIT- G

A.   As I was going down Cicero from Brooklyn to
Jefferson -- if you don't know, Ladies and Gentlemen,
it's where -- if any of you are familiar with
Jefferson Highway, it's where the big S curve is going
into the city.  Cicero, Jules, and Jefferson Highway
all intersect right there at that curve, at the first
curve, just past Ochsner.

I was going down Cicero towards Jefferson
Highway, at which point I saw a white male with dark
hair, clean shaven, carrying like a gym bag, dark
jeans or blue jeans, with a green tee shirt.  Almost
simultaneously as I'm passing him, I hear the 1 Alpha
12 put out the stop in the 800 block of Jefferson
Highway.

As I'm passing him, you know, I'm thinking "Well,
maybe this is the guy.  Maybe I should stop and get
his name and see."  But like I said, at the same time
this other stop happened.  So I head over to assist.
But before I can get there and as I'm thinking, you
know, I'm thinking "Maybe I should stop him, but let
me go back up this guy."  As I'm heading over there,
the victim was being relocated -- or he asked -- I'm
sorry.  He asked, "Is this the description?"  He's
asking me, and I'm like "I don't know.  I don't have
the victim.  I'm just driving the area."

So I was going to relocate back to get the victim
to bring him over there.  But in route back to 250
Iris, the 1 Alpha 1, one of the other responding
units, had already picked up the victim to bring him
to identify the subject stopped in the 800 block of
Jefferson Highway.

So then I started my search again.  I said,

-15-

1    Q.    Canvass the area.  Now, when you saw Mr. Ayo, he

2    wasn't doing anything suspicious or inappropriate, was

3    he?

4    A.    No.  Standing in the middle of the street, like I

5    said, with the bag, the gym bag over his shoulder,

6    speaking to someone on the landing of the apartment.

7    Q.    And you didn't notice anything unusual about him

8    at that time, did you?

9    A.    Other than, you know, his body type and clean

10   shaven and hair color matched the description of the

11   perpetrator as well as there was a knife sticking out

12   of his back pocket.  Other than those two things -- or

13   at least a handle of a knife.

14   Q.    Well, so you're canvassing the area for somebody

15   that just committed an armed robbery with a knife.

16   A.    Correct.

17   Q.    And you see a gentlemen with a knife in his back

18   pocket.

19   A.    Correct.

20   Q.    Why didn't you call that in on dispatch?  You

21   didn't think that was significant?

22   A.    I think I did call it in on dispatch.  I put the

23   description out on dispatch.

24   Q.    This is Exhibit 3, which I know you've already

25   reviewed.

26   A.    Uh-huh (affirmative response).

27   Q.    Could you point out to me where you put the knife

28   out on dispatch.

29   A.    I put the green shirt, the blue jeans -- no.  I

30   don't have it in here.

31   Q.    Certainly, that would have been a very

32   significant feature, would it not have?

-35-

182

**EXHIBIT - H**

# Arrest Register

Arrestee
GLENN C AYO   *Code b*

ATN 260020700296

*AMENDE*
*0?-00179*

## ARRESTEE DATA

| Last Name AYO | First GLENN | Middle C | | Race W | Sex M | DOB 08/01/1962 | Ethnicity NHIS |
|---|---|---|---|---|---|---|---|

Arrestee Address
2801  ROSSETTA DRV CHALMETTE, LA

Hair BLN   Eyes BRO

| SSN 434767070 | License LA 5263680 | SID 001045637 | CCN 80664500 |
|---|---|---|---|

Height 5 ft. 08 in.   Weight 240

ALIAS Name (last,first,middle,suffix), ALIAS Sex, Race, DOB
AYO DENNIS   Alias Race: W  Alias Sex: M  Alias DOB: 01-AUG-62

Birth State   Nationality

## ARREST DATA

Location of Arrest
CLAIBORN  LA

Cross Street
EAGLE ST

Arrest Date & Time
01/07/2007 09:40

Grid
1117

| Arresting Officer's Name 1 SIMONEAUX, PAUL E. | Officer's PR # 97695 |
|---|---|

Unit
1A12

Arresting Officer's Name 2         Officer's PR #

Credit
10

| Transporting Officer's Name SIMONEAUX, PAUL E. | Trans. Officer's PR # 97695 | Credit Description FIRST DISTRICT |
|---|---|---|

## CHARGES

| Item Number | S/A/W | Type | Charge Code | Charge Title | Instant Charge |
|---|---|---|---|---|---|
| A-06371-07 | | FE | RS14:64 | ARMED ROBBERY | Y |

Comments
KNIFE

| Item Number | S/A/W | Type | Charge Code | Charge Title | Instant Charge |
|---|---|---|---|---|---|
| A-06371-07 | | MI | RS14:69.B.3 | ILL POSS OF STOLEN LESS $300 | Y |

Comments
VALUE $26

| Item Number | S/A/W | Type | Charge Code | Charge Title | Instant Charge |
|---|---|---|---|---|---|
| A-06371-07 | | MI | RS14:108 | RESISTING AN OFFICER | Y |

## REMARKS

ON JAN 7, 2006, I RESPONDED TO AN ARMED ROBBERY AT 250 IRES AVE. JP631 WHO WAS ON THE SCENE PRIOR ADVISED HE OBSERVED A SUSPECT FITTING THE 64 G SUSPECT GET INTO A METAIRIE CAB AND HE HAD A KNIFE IN HIS BACK POCKET. JP631 STARTED TO FOLLOW THE CAB BUT LOST SIGHT OF IT. AS I FOLLOWED JP631 I OBSERVED A METAIRIE CAB IN THE SPUR STATION AT EAGLE AND CLAIBORNE. I OBSERVED A SUBJECT FITTING THE 64G SUSPECT DESCRIPTION GET OUT OF THE CAB. I TURNED AROUND AND PULLED INT THE STATION AND BEGAN TO SPEAK WITH THE SUBJECT. I OBSERVED THE HANDLE OF A KITCHEN KNIFE IN HIS BACK POCKET. I REMOVED THE

# EXHIBIT - I

3. NAMES USED: _None_

DATE: _01-07-2007_

4. PHYSICAL FEATURES:

RACE: _W_ SEX: _M_ AGE: _30-35_
HEIGHT: _5'7"_ WEIGHT: _150_ BUILD: _Slim_
PHYSICAL DEFECTS: _Unknown_
NATIONALITY: _U.S_
SPEECH: _____ DEFECTS: _____

5. FACIAL AND BODY FEATURES:

HAIR COLOR: _No_ STYLE: _____
FOREHEAD: _____ EYEBROWS: _____
EYE COLOR: _____ EARS: _____
NOSE: _____ MOUTH: _____
TEETH: _____ LIPS: _____
MUSTACHE: _____ BEARD: _____
CHIN: _____ NECK: _____
HANDS: _____ FINGERS: _____

6. SCARS/MARKS/TATOOS: _____

7. CLOTHING & ITEMS:

HAT: _No, just a hat_ GLASSES: _None_
NECKTIE: _____ TIE CLASP: _____
SHIRT: _____ COAT: _Blue hooded jacket_
TOP COAT: _____ GLOVES: _____
BELT: _____ TROUSERS: _Blue jeans_
SHOES: _____ SOCKS: _____
JEWELRY: _____
OTHER: _____

8. AUTOMOBILE INVOLVED:

MAKE: _None_ YEAR: _____
BODY STYLE: _____
COLOR: _____ LIC#: _____
STATE: _____ COLOR: _____
COLOR OF NUMBERS: _____

9. FIREARMS USED:

A. REVOLVER:        B. AUTOMATIC:

COLOR:
BLACK
SILVER

FRONT VIEW          FRONT VIEW

CALIBER

LARGE   MEDIUM   SMALL

10. PERSON GIVING DESCRIPTION:

NAME: _DeBray, Baptiste H._
ADDRESS: _____
TEL: _____
JPSO Form 1.13 Rev. 7-72

OFFICER: _C.D. McCoy_ UNIT#: _1A1_

1      I'm not going to admonish the jury.

2      Please move on.

3  BY MS. SWAIM:

4  Q.  Mr. Ayo, you tried to serve your friend, Theo

5  Brickley, right?

6  A.  I believe the clerk tried to serve Theo Brickley.

7  Q.  And who provided the address to the clerk?

8  A.  I gave the address to my attorney who provided it

9  to the clerk.

10  Q.  Okay.  So you provided the address to everybody,

11  and he's not here, right?  The person who could have

12  said, "Hey, I drove you there," he's not here to help

13  you out?  Yes or no?

14      MR. SCHMIDT:

15          Objection to the characterization.

16      THE COURT:

17          You can answer the question.

18      THE DEFENDANT:

19          No, he's not here, ma'am.

20  BY MS. SWAIM:

21  Q.  Now, that morning you say he drove you there

22  because you had to go to work, right?  And you had to

23  wash your clothes at Dave's house, right?

24      MR. SCHMIDT:

25          Objection, Your Honor.

26          Mischaracterization of his testimony.

27      THE COURT:

28          It's cross-examination.  The witness

29          can answer the question.

30      THE DEFENDANT:

31          I have no problem with answering the

32          question.  He picked me up because I was

-192-

339

EXHIBIT- J

home of her paramour at this time. The court ruled that the cross-examination was proper because the defense had gone into defendant's activities thereby entitling the prosecutor to full cross-examination since the testimony was relevant and material *675 to the responsive verdict of manslaughter on the question of whether or not defendant's blood had cooled as well as being relevant to the credibility of the testimony of the defendant that she was concerned about her husband's well-being.

[20][21][22]  Admittedly, this evidence was damaging to the defense; however, the defendant "opened the door" for its introduction by testifying concerning her activities between the prior altercation and the shooting. It is well settled that where one side has gone partially into a matter on examination-in-chief, the other side may go fully into it on cross-examination. *State v. Nugent,* 116 La. 99, 40 So. 581 (1906). Mere doubt as to the propriety or the extent of cross-examination is always resolved in favor of the cross-examination. *State v. Lane,* 292 So.2d 711 (La.1974).

[23][24]  Additionally, the defendant testified about her concern for the well being of her husband prior to the shooting; this evidence was relevant to negate her intent to locate the victim for the purpose of killing him or doing him great bodily harm. See La.R.S. 15:441. The state then had the right to rebut this contention by attempting to show defendant was not genuinely concerned about her husband's condition after the earlier incident. The evidence was also proper to attack her credibility on this point.

These assignments of error lack merit.

## ASSIGNMENTS OF ERROR NOS. 16, 18 AND 24

In these assignments of error defendant complains the trial court erred in curtailing defense presentation of its case. Specifically, defendant complains the trial court erred in disallowing cross-examination of Mrs. Outz about a prior visit by Mrs. Edwards to the Outz residence, by refusing to allow defendant to testify about the prior visit, and by refusing to allow Tanya Edwards to testify regarding the "crowbar incident".

On direct-examination, the prosecutor asked the following question of Mrs. Outz:

Q. Had Mrs. Edwards ever been in your home before?

A. Yes, sir.

No further questions about this prior incident were asked. On cross-examination, defense counsel asked several questions about the prior visit without objection which revealed that Mr. Edwards had arrived at Mrs. Outz's home on a prior occasion in an intoxicated condition causing Mrs. Outz to put him to bed where he slept for several hours. Mrs. Edwards arrived thereafter with a gun, talked to Mr. Edwards, and left with him. At this point, the state objected to further testimony in this vein as being irrelevant and immaterial. Outside the jury's presence, defense counsel argued that according to a recorded statement he had from Mrs. Outz she would testify that on the prior occasion Mrs. Edwards had not threatened Mr. Edwards nor did he threaten her or act in a hostile manner, there was discussion of a divorce, and they had left together without any violence. It was asserted that the testimony was relevant to bolster defendant's contention that she carried a gun to prevent Mr. Edwards from harming her, to rebut the prosecution's contention that she entered the Outz home with the specific intent to kill or inflict great bodily harm, to rebut the state's contention that she had not acted in self-defense, and to explain her surprise when her husband attacked her on the occasion of the shooting.

The trial court sustained the objection on the grounds that this testimony was irrelevant and immaterial and also inadmissible because there had been no appreciable evidence of an overt act on the part of the victim toward the defendant.

[25]  We conclude that the cross-examination should have been allowed. It was not evidence of a prior bad act on the part of the victim and the state had gone into the matter partially on direct-examination. See *State v. Nugent, supra; State v. Lane, supra; State v. Brown,* 395 So.2d 1301 (La.1981). The defense had the right to probe into the incident fully on cross-examination.

A more serious issue is presented regarding Mrs. Edwards' testifying independently *676 regarding this prior incident absent its surfacing as a result of direct-examination of Mrs. Outz. Obviously, the inference sought by such testimony was that since no threats were made by either the defendant or the victim toward each other nor did any violence ensue, Mrs. Edwards did not embark upon the latter encounter for the purpose of threatening defendant with her gun or with the specific intent to kill him or to do him great bodily harm and that she was surprised by his reaction.

Human action being infinitely varied, however, there

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

Thereafter, the court again overruled the defense counsel's objection.

[25] According to La.Code Crim. P. Art. 774, the State's rebuttal is limited to answering the defendant's argument. In his closing argument, defense counsel argued the intoxication defense to the jury. Although the prosecutor went farther than necessary in the rebuttal, the reference to the other case was simply an example of a defendant whose defense to a murder charge was intoxication.

[26] Before a conviction is reversed on the grounds of improper argument, prejudice must be shown. *Perkins, supra,* at 25. Although the trial court denied the defendant's motions for mistrial, the court admonished the prosecutor. A mistrial is a drastic remedy warranted under certain circumstances. *Narcisse, supra,* at 133. The conduct of which defendant complains is not mandatory grounds for a mistrial under La.C.Cr.P. art. 770.

In addition, the court instructed the jury that statements and arguments by counsel are not evidence and that jurors should not be influenced by passion or prejudice. The instruction cured any error and the defendant therefore suffered no prejudice.

Considering the foregoing, we find no merit to this assignment.

**ASSIGNMENT OF ERROR NO. 4**

*Appellant's statement to Officer Este was introduced at trial, denying appellant due process of the law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2, 13, and 16 of the Louisiana Constitution of 1974.*

This assignment refers to the State's introduction of defendant's statement to Officer Este shortly after he arrived on the scene. Este testified he asked the defendant whether she knew what had happened. She replied "that she had left her bedroom, walked down a hallway, found Mr. Conner laying on a sofa. And she had no knowledge of how he was on the sofa or how he was in that condition." The trial court had previously denied the motion to suppress this statement and overruled defense counsel's objection to Officer Este's testimony.

[97-248 La.App. 5 Cir. 15] Defendant claims she was not advised of her constitutional rights prior to telling Officer Este about the incident. To resolve this

assignment of error, it must be determined whether the defendant was "in custody" when she spoke to Officer Este.

[27][28][29] Before an inculpatory statement is introduced at trial, the State must prove that the declarant was advised of his or her *Miranda* rights prior to custodial interrogation. *State v. Castillo,* 389 So.2d 1307, 1310 (La.1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); La. Const. Art. 1, § 13. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way. Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without *Miranda* warnings even where a defendant is in custody." *Castillo, supra.*

[30][31] This Court has defined custodial situations as follows:

*Custodial* interrogation *includes* situations which fall short of an actual arrest but where the accused is questioned by the police in a setting which indicated that he has been deprived of his freedom of action in a significant way. [Citations omitted; emphasis in original.] This determination is made on a case by case basis, and the factors involved include:

1. Whether there was probable cause to arrest prior to questioning;

2. Whether the statements and actions of the police indicate an intent to hold or restrain the accused;

*63. 3. Whether the accused reasonably believed he was restrained, and

4. The extent to which the investigation had focused on the accused.

*State v. Foret,* 96-281 (La.App. 5 Cir. 11/14/96); 685 So.2d 210, 222.

[32] Considering the evidence presented at trial, the defendant was not in custody at the time she answered Este's general question regarding the events which had transpired. Because no information had been given to Este regarding suspects and the situation was not immediately obvious to Este from the scene, there was

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

EXHIBIT - K

# EXHIBIT- J

EXHIBIT-J

home of her paramour at this time. The court ruled that the cross-examination was proper because the defense had gone into defendant's activities thereby entitling the prosecutor to full cross-examination since the testimony was relevant and material **\*675** to the responsive verdict of manslaughter on the question of whether or not defendant's blood had cooled as well as being relevant to the credibility of the testimony of the defendant that she was concerned about her husband's well-being.

[20][21][22] Admittedly, this evidence was damaging to the defense; however, the defendant "opened the door" for its introduction by testifying concerning her activities between the prior altercation and the shooting. It is well settled that where one side has gone partially into a matter on examination-in-chief, the other side may go fully into it on cross-examination. *State v. Nugent*, 116 La. 99, 40 So. 581 (1906). More doubt as to the propriety or the extent of cross-examination is always resolved in favor of the cross-examination. *State v. Lane*, 292 So.2d 711 (La.1974).

[23][24] Additionally, the defendant testified about her concern for the well being of her husband prior to the shooting; this evidence was relevant to negate her intent to locate the victim for the purpose of killing him or doing him great bodily harm. See La.R.S. 15:441. The state then had the right to rebut this contention by attempting to show defendant was not genuinely concerned about her husband's condition after the earlier incident. The evidence was also proper to attack her credibility on this point.

These assignments of error lack merit.

### ASSIGNMENTS OF ERROR NOS. 16, 18 AND 24

In these assignments of error defendant complains the trial court erred in curtailing defense presentation of its case. Specifically, defendant complains the trial court erred in disallowing cross-examination of Mrs. Outz about a prior visit by Mrs. Edwards to the Outz residence, by refusing to allow defendant to testify about the prior visit, and by refusing to allow Tanya Edwards to testify regarding the "crowbar incident".

On direct-examination, the prosecutor asked the following question of Mrs. Outz:

Q. Had Mrs. Edwards ever been in your home before?

A. Yes, sir.

No further questions about this prior incident were asked. On cross-examination, defense counsel asked several questions about the prior visit without objection which revealed that Mr. Edwards had arrived at Mrs. Outz's home on a prior occasion in an intoxicated condition causing Mrs. Outz to put him to bed where he slept for several hours. Mrs. Edwards arrived thereafter with a gun, talked to Mr. Edwards, and left with him. At this point, the state objected to further testimony in this vein as being irrelevant and immaterial. Outside the jury's presence, defense counsel argued that according to a recorded statement he had from Mrs. Outz she would testify that on the prior occasion Mrs. Edwards had not threatened Mr. Edwards nor did he threaten her or act in a hostile manner, there was discussion of a divorce, and they had left together without any violence. It was asserted that the testimony was relevant to bolster defendant's contention that she carried a gun to prevent Mr. Edwards from harming her, to rebut the prosecution's contention that she entered the Outz home with the specific intent to kill or inflict great bodily harm, to rebut the state's contention that she had not acted in self-defense, and to explain her surprise when her husband attacked her on the occasion of the shooting.

The trial court sustained the objection on the grounds that this testimony was irrelevant and immaterial and also inadmissible because there had been no appreciable evidence of an overt act on the part of the victim toward the defendant.

[25] We conclude that the cross-examination should have been allowed. It was not evidence of a prior bad act on the part of the victim and the state had gone into the matter partially on direct-examination. See *State v. Nugent, supra; State v. Lane, supra; State v. Brown*, 395 So.2d 1301 (La.1981). The defense had the right to probe into the incident fully on cross-examination.

A more serious issue is presented regarding Mrs. Edwards' testifying independently **\*676** regarding this prior incident absent its surfacing as a result of direct-examination of Mrs. Outz. Obviously, the inference sought by such testimony was that since no threats were made by either the defendant or the victim toward each other nor did any violence ensue, Mrs. Edwards did not embark upon the latter encounter for the purpose of threatening defendant with her gun or with the specific intent to kill him or to do him great bodily harm and that she was surprised by his reaction.

Human action being infinitely varied, however, there

© 2009 Thomson Reuters. No claim to original U.S. Govt. works.

# EXHIBIT - K

EXHIBIT - K

Thereafter, the court again overruled the defense counsel's objection.

[25] According to La.Code Crim. P. Art. 774, the State's rebuttal is limited to answering the defendant's argument. In his closing argument, defense counsel argued the intoxication defense to the jury. Although the prosecutor went farther than necessary in the rebuttal, the reference to the other case was simply an example of a defendant whose defense to a murder charge was intoxication.

[26] Before a conviction is reversed on the grounds of improper argument, prejudice must be shown. *Perkins, supra,* at 25. Although the trial court denied the defendant's motions for mistrial, the court admonished the prosecutor. A mistrial is a drastic remedy warranted under certain circumstances. *Narcisse, supra,* at 133. The conduct of which defendant complains is not mandatory grounds for a mistrial under La.C.Cr.P. art. 770.

In addition, the court instructed the jury that statements and arguments by counsel are not evidence and that jurors should not be influenced by passion or prejudice. The instruction cured any error and the defendant therefore suffered no prejudice.

Considering the foregoing, we find no merit to this assignment.

## ASSIGNMENT OF ERROR NO. 4

*Appellant's statement to Officer Este was introduced at trial, denying appellant due process of the law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2, 13, and 16 of the Louisiana Constitution of 1974.*

This assignment refers to the State's introduction of defendant's statement to Officer Este shortly after he arrived on the scene. Este testified he asked the defendant whether she knew what had happened. She replied "that she had left her bedroom, walked down a hallway, found Mr. Conner laying on a sofa. And she had no knowledge of how he was on the sofa or how he was in that condition." The trial court had previously denied the motion to suppress this statement and overruled defense counsel's objection to Officer Este's testimony.

[97-248 La.App. 5 Cir. 15] Defendant claims she was not advised of her constitutional rights prior to telling Officer Este about the incident. To resolve this

assignment of error, it must be determined whether the defendant was "in custody" when she spoke to Officer Este.

[27][28][29] Before an inculpatory statement is introduced at trial, the State must prove that the declarant was advised of his or her *Miranda* rights prior to custodial interrogation. *State v. Castillo,* 389 So.2d 1307, 1310 (La.1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); La. Const. Art. 1, § 13. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way. Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without *Miranda* warnings even where a defendant is in custody." *Castillo, supra.*

[30][31] This Court has defined custodial situations as follows:

*Custodial* interrogation *includes* situations which fall short of an actual arrest but where the accused is questioned by the police in a setting which indicated that he has been deprived of his freedom of action in a significant way. [Citations omitted; emphasis in original.] This determination is made on a case by case basis, and the factors involved include:

1. Whether there was probable cause to arrest prior to questioning;

2. Whether the statements and actions of the police indicate an intent to hold or restrain the accused;

*63. 3. Whether the accused reasonably believed he was restrained, and

4. The extent to which the investigation had focused on the accused.

*State v. Foret,* 96-281 (La.App. 5 Cir. 11/14/96); 685 So.2d 210, 222.

[32] Considering the evidence presented at trial, the defendant was not in custody at the time she answered Este's general question regarding the events which had transpired. Because no information had been given to Este regarding suspects and the situation was not immediately obvious to Este from the scene, there was

© 2011 Thomson Reuters. No claim to original U.S. Govt. works.

RECEIVED

MAY 2 3 2013

Legal Programs Department

SCANNED at LSP and Emailed
5-23-13 by RM , 23 pages
date     initials   No.

# APPENDIX - I

IN THE SUPREME COURT OF LOUISIANA

GLENN CHARLES AND

        PETITIONER                S. CT. NO. 12-KH-2093

        - VS -                     (TO BE ASSIGNED)

STATE OF LOUISIANA,

BURL CAIN, WARDEN, ET AL           5TH CIR. NO. 12-KH-583

        DEFENDANT(S)

### MOTION FOR ENLARGEMENT OF TIME

    COMES NOW THE ABOVE NAMED PETITIONER PRO SE, BRIARKTOWN MOVES THIS HONORABLE COURT PURSUANT TO LSA-R.S. RULE X, § 5 (A), FOR AN ENLARGEMENT OF TIME TO FILE WRIT AND WOULD SHOW THE FOLLOWING AS BASIS IN SUPPORT THEREOF:

1.   JEFFERSON PARISH 24TH JUDICIAL DISTRICT COURT DENIED PETITIONER'S APPLICATION FOR POST-CONVICTION RELIEF, AND SUPERVISORY WRIT WAS TAKEN IN THE 5TH CIRCUIT COURT OF APPEAL.

2.   THE FIFTH CIRCUIT DENIED WRIT WITH OPINION AUGUST 24, 2012.

3.   PETITIONER CONTENDS HURRICANE "ISAAC" HIT (BEFORE) SERVICE WAS PERFECTED AUGUST 31, 2012, AT WHICH TIME, ELECTRICAL POWER AND ALL MOVEMENT, MAIL, COPYING SERVICE, AND INMATE COUNSEL (LEGAL ASSISTANCE) CEASED AT ANGOLA.

4.   IN SO MUCH AS, ANGOLA STATE PENITENTIARY SECURITY WAS THRASHED WITH OVER 1,600 INMATE EVACUEES FROM ORLEANS PARISH PRISON, THUS REGULAR OPERATIONS DID NOT RESUME UNTIL SEPTEMBER 5, 2012

5.   PETITIONER CONTENDS THAT TWO (2) WEEKS OF THIRTY (30) DAY DEADLINE WAS LOST DUE TO NATURAL DISASTER AND THROUGH NO FAULT OF HIS OWN.

WHEREFORE, PETITIONER RESPECTFULLY MOVES THIS HONORABLE COURT
FOR AN ENLARGEMENT OF TWENTY-ONE (21) DAYS TO SUBMIT WRIT,
RUNNING NUNC PRO TUNC OCTOBER 15, 2012.

THIS IS FOREVER PRAY.

RESPECTFULLY, SUBMITTED,

PETITIONER PRO SE.

2 OF 3

AFFIDAVIT VERIFICATION

I, GLENN C. AYO 531823 HEREBY DECLARE UNDER PENALTY OF PERJURY
THAT I READ THE MOTION FOR ENLARGEMENT OF TIME AND THE FACTS
HEREIN ARE ALL TRUE, CORRECT AND COMPLETE TO THE BEST OF MY
KNOWLEDGE

SWORN THIS 14TH DAY OF SEPTEMBER, 2012.

_____
PETITIONER Pro se

CERTIFICATE OF SERVICE

I, GLENN C. AYO 531823 HEREBY CERTIFY THAT A TRUE COPY HAS
BEEN FURNISHED BY PRE-PAID U.S. POSTAL TO:

DISTRICT ATTORNEY'S OFFICE
24TH JUDICIAL DISTRICT COURT
200 DERBIGNY ST.
GRETNA, LA 70053

MAILED THIS 14TH DAY OF SEPTEMBER, 2012.

_____
PETITIONER Pro se

GLENN C. AYO 531823
LA. STATE PEN
ANGOLA, LA. 70712

3 OF 3

{                                    (

# SUPREME COURT OF LOUISIANA
### 400 Royal Street
### New Orleans, LA  70130

September 26, 2012


To: Glenn Charles Ayo #531823                Re: 12-KH-2093
    Louisiana State Penitentiary
    Angola, LA  70712

     In reply to your letter of September 18, 2012, please be
advised that:

(  )  We have no record that anything was recently filed on
your behalf in this Court.  Please contact your
attorney, the clerk of the district court where you were
convicted, or the _____ Circuit Court of Appeal.

(  )  An application for writs was filed in this Court on
_____ and is pending.

(  )  As requested, please find enclosed _____.

(  )  Your writ application is pending.  The Court will notify
you when it has reached a decision in this matter.

(  )  The following action has been taken on your case:

_____.

( X )  Your request for an extension of time has been filed and
given the above number.  You should send your
application as soon as you are able, preferably within
60 days from the date of this letter.  Your application
will be filed as a supplement to the filing under the
above number.  The filing of your request for an
extension and any supplemental application does not
represent a finding by this Court that your filings are
or are not timely.


                                  Sincerely,

                                   Central Staff

STATE OF LOUISIANA

VERSUS

GLENN CHARLES AYO

SUPREME COURT

STATE OF LOUISIANA

NO. *12-KH-2093*

---

### APPLICATION FOR REMEDIAL WRIT/CERTIORARI

---

TO THE COURT OF APPEAL, FIFTH CIRCUIT, STATE OF LOUISIANA,

NO. 2012-K-583, DENYING APPLICATION FOR SUPERVISORY WRIT

---

FROM THE DENIAL OF APPLICATION FOR POST CONVICTION RELIEF

BY THE HONORABLE HENRY G. SULLIVAN, JR., JUDGE, TWENTY-FOURTH

JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, NO. 07-369, DIVISION "M"

---

PRO SE APPLICATION OF GLENN CHARLES AYO

RESPECTFULLY SUBMITTED PRO SE BY:

GLENN CHARLES AYO #531823

LOUISIANA STATE PENITENTIARY

ANGOLA, LA 70712

# TABLE OF CONTENTS

PAGE NO.

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Assignment of Error(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Oath/Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Appendix - A (Application for Post Conviction Relief with Exhibit(s) Attached)

Appendix -B (Order of Denial in District Court)

Appendix -C (Order of Denial in Circuit Court)

## JURISDICTION

Jurisdiction of this Court is vested by Article V, § 5(A) of the 1974 Louisiana Constitution.

## STATEMENT OF CASE

The petitioner/appellant, Glenn Ayo, was arrested January 7, 2007 and charged by Bill of Information with armed robbery, Case No. 07-369, in violation of LSA-R.S. 14:64. Trial was held November 27 - 28, 2007. Petitioner was convicted at jury trial. The court sentenced him to 87 years imprisonment at hard labor.

The Fifth Circuit Court of Appeal affirmed his conviction and sentence. State v. Ayo, 7 So.3d 85 (La.App. 5 Cir.2008). The Louisiana Supreme Court denied his writ of review. State ex RED. Ayo v. State, 28 So.3d 1006 (La.2010).

Petitioner filed an Application for Post Conviction Relief August 11, 2011. The State's response was filed November 15, 2010, and petitioner's written objection and traverse to State's response filed December 1, 2010. (See Appendix - A, with Exhibit(s) attached).

The Honorable Henry G. Sullivan, Jr. denied relief May 16, 2012. (See Appendix - B, attached). Supervisory writ was taken in Fifth Circuit Court of Appeal, No. 12-K.-583, denied August 24, 2012. See Appendix-C.

## PROCEDURAL ASSIGNMENT OF ERROR(S)

SUBCLAIM 1: The district court and circuit court adopted the State's contention in final order on petition for post conviction relief, alleging that the merits were addressed on direct appeal for claim(s) 2, 5, 6, 7, 9, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 35, 42, 43, 44, 45, 46, 47, 52, and 61 (thirty-five (35) claim(s).

Petitioner contends that the ruling is a gross departure from proper judicial proceedings. In light of the Fifth Circuit's decision on direct appeal in State v. Ayo, 7 So.3d 85, 90-91 (La.App. 5 Cir.2009), defendant filed a pro se supplemental brief arguing eleven (11) assignment of errors on appeal - [not thirty-five (35)] - as erroneously alleged in court orders. Id. at 90 - 91.

Further, assignment of error eight (8) on direct appeal, one sole claim appellant raised ineffective assistance of counsel. The Fifth Circuit, however, held that *the trial court record is insufficient to review the facts addressing defendant's [one] claim of ineffective assistance of counsel.* Id. at 99.

Therefore, both the district and circuit courts' gross departure from proper judicial

1

proceedings calls for exercise of this court's supervisory authority, and case must be remanded to lower tribunal for review of the remaining thirty-five (35) claims of ineffective assistance of counsel strategically disregarded and never before heard. See Appendix-B.

SUBCLAIM - 2: The district court erroneously applied LSA-C.Cr.P. art. 930.4 (C), to procedurally deny the aforementioned thirty-five (35) claims, and circuit court adopted the same. In light of the fact that the Fifth Circuit on direct appeal also held that the record is insufficient to review claims of ineffective assistance of counsel. 7 So.3d at 99. Thus, on issue(s) never before heard, the erroneous interpretation of constitutional law has been effectively denied Mr. Ayo his Fourteenth Amendment constitutional right to due process and equal protection of law to access to court. See Appendix-B.

SUBCLAIM - 3: The district and circuit courts frivolously denied Claim 21 as repetitive and successive. The petitioner's *post-trial* "Motion for DNA Testing" on claim of actual innocence, does not bar challenge of counsel's *pre-trial* ineffective assistance for his complete incompetency to test the evidence in question. Thus, both courts' grossly abused its powers, calling for an exercise of this court's supervisory authority. See Appendix-A.

SUBCLAIM - 4: The district court erroneously denied Claim(s) 43 and 44, and the circuit court adopted the same. When prosecutorial misconduct "not" objected to by ineffective defense counsel *could* and *should* not have been raised on direct appeal. The order is wholly frivolous and a gross departure from proper judicial proceedings. See Appendix-A.

Wherefore, the procedural assignment of error(s) alone require reversal of district and circuit court orders, as the *published* opinion perpetrate a fraud on the public and all reviewing courts..

## ASSIGNMENT OF ERROR(S)

CLAIM -1: The district and appellate court orders is an erroneous interpretation of law. Petitioner attached eight (8) *unanswered* letters directing to defense counsel to material evidence and exculpatory witnesses demonstrative of ineffective assistance. Further, (Exhibit -B attached to petition) contains a detailed map to the front door of the home of exculpatory witnesses. See

2

Harrison v. Quarterman, 496 F.3d 419, 427-28 (5th Cir.2007)(citing Anderson v. Johnson, 338 F.3d 382, 393-94 (5th Cir.2003), counsel's failure to have the only known exculpatory witness testify satisfied Strickland's prejudice requirement. See Exhibits A & B.

CLAIM -2: The district and appellate courts abused its powers and erroneously curtailed constitutional laws. The Fifth Circuit addressed counsel's failure to contact one (1) witness, Theo Brickley, on direct appeal. 7 So.3d at 102. However, failed to address counsel's complete failure to contact and investigate all three (3) -- not one (1) -- exculpatory defense witnesses. See Code v. Montgomery, 799 F.2d 1481, 1484-85 (11th Cir.1986), counsel's failure to move for continuance and present alibi defense deprived defendant of a fundamentally fair trial. See Exhibits B & C.

CLAIM -3: The district and appellate court orders so far depart from proper judicial proceedings, they are a mockery to the judicial system. William Barrett was the driver and *primary* witness present for illegal stop and arrest out of jurisdiction, present for unlawful exploratory search and seizure of alleged evidence. His testimony was *material* to suppression hearing. See Harrison v. Quarterman, 496 F.3d 419, 427-28 (5th Cir.2007)(citing Anderson v. Johnson, 338 F.3d 382, 393-94 (5th Cir.2003, counsel's failure to have the only known exculpatory witness testify satisfied Strickland's prejudice requirement. See Exhibits D & E.

CLAIM -4: The district and appellate court orders will cause a material injustice. Defense investigator Ronnie Montgomery was to locate three (3) witnesses, and drive route traveled (3x) to establish time of Mr. Ayo's alibi. See Code v. Montgomery, 799 F.2d 1481, 1484 (11th Cir.1986), counsel's failure to present alibi defense deprived him of a fundamentally fair trial. See Exhibits F & G.

CLAIM -5: The district and appellate courts abused their powers and erroneously curtailed another major claim. Petitioner had an affidavit from Theo Brickley, the *primary* exculpatory witness defense counsel allegedly could not locate. Then counsel ineffectively *refused* to submit the material evidence at trial. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibits A,

3

B, C & F.

CLAIM -6: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibits H, I & J.

CLAIM -7: The district and appellate courts abused their powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibits E thru K.

CLAIM -8: The district and appellate courts erroneously applied constitutional law, thus committing a fraud on reviewing courts and material injustice. See Dunaway v. New York, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979), police violated Fourth and Fourteenth Amendment when, without probable cause, they seized petitioner for interrogation. *Pretrial* identification obtained during illegal detention cannot be introduced. United States v. Crews, 445 U.S. 463, 477, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). The claim is properly raised on post-conviction relief. See Exhibits D, J, L & M.

CLAIM -9: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibits G & N.

CLAIM -10: The district and appellate courts failed to distinguish between the initial "show-up" identification, and petitioner's challenge of the suggestive "in-court" identification in presence of jury, thus the erroneous interpretation of constitutional law caused a material injustice. Moreover, the prejudice that flowed from the prosecutor's statement display a suggestive

4

introduction of said evidence.   See *State v. Bright*, 776 So.2d 1134, 1145 (La.2000), the identification procedure is suggestive if it unduly focuses a witness attention on the suspect. *No picture can be singled out.* *State v. Frank*, 537 So.2d 236, 239 (La.App. 4 Cir.1988).  See Exhibit 13.

CLAIM -11: The district and appellate court orders is ambiguous and grossly depart from proper judicial proceedings.   Had defense counsel not been wholly ineffective and properly subpoenaed *material* evidence petitioner *repeatedly* requested. (See Exhibit(s)).  They would have been plenty evidence of illegal investigative stop out of jurisdiction, police brutality, and actual innocence.  See *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979), hostility of seizures based on mere suspicion was a prime motivation for the adoption of the Fourth Amendment.  See Exhibits A, D, F & O.

CLAIM -12: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief.  See Exhibits - J.

CLAIM -13: The district and appellate courts grossly abused its powers and erroneously curtailed constitutional laws to arrest.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief.  See Exhibits 3 & 13.

CLAIM -14: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief.  See Exhibits -J.

CLAIM -15: The district and appellate courts grossly abused its powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibits D, I & J.

CLAIM -16: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit D & J.

CLAIM -17: The district and appellate courts abused its powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit - J.

CLAIM -18: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See R. 213; and Exhibit - J.

CLAIM -19: The district and appellate courts abused its powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit - J.

CLAIM -20: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of*

*ineffective assistance of counsel.*" 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit - J.

CLAIM -21:  The district and appellate courts abused its powers and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief. See Exhibits A & B.

CLAIM -22:  The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief. See Exhibits D & J.

CLAIM -23:  The district and appellate courts abused its powers and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief. See Exhibits A & J.

CLAIM -24:  The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief. See Exhibits D & J.

CLAIM -25:  The district and appellate courts abused its powers and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief. See Exhibit- J.

CLAIM -26:  The district and appellate courts grossly departed from proper judicial

proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit- J.

CLAIM -27: The district and appellate courts abused its powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit- A.

CLAIM -28:  The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit- J.

CLAIM -29:  The district and appellate courts abused its powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit- J.

CLAIM -30:  The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit- J.

CLAIM -31: The district and appellate courts abused its powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit- J.

CLAIM -32:  The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"Trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief.  See Exhibit- J.

CLAIM 33:  The district and appellate court orders is an erroneous application of constitutional law.  The perjury is false material evidence that went to fundamentally unjust conviction.  See State v. Fisher, 720 So.2d 1179, 1185-86 (La.1998), defendant's alleged statements were inseparable from his illegal detention and should not have been admitted, even though voluntarily given.  See Exhibit- J.

CLAIM -34: The district and appellate court erroneously interpreted the facts of argument.  The issue is not counsel's failure to object at suppression hearing of November 15, 2007 -- but hearing of August 16, 2007.  See State v. Robinson, 877 So.2d 1131, 1135 (La.2002), cross-examination is the primary means by which to test the believability and truthfulness of testimony and has traditionally been used to impeach or discredit witnesses.  See Exhibit- J.

CLAIM -35:  The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws.  When the Fifth Circuit on direct appeal held that *"trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99.  The claim is properly raised on post-conviction relief.  See Exhibit- J.

CLAIM -36:  The district and appellate court orders erroneously applied constitutional laws.  Had defense counsel subpoenaed *material* witnesses and evidence from out of state, it would have disproved state's case in chief that defendant *"ran"* several blocks to perfect his crime.  See State v. Hogan, 372 So.2d 1211, 1214 (La.1979), defendant is entitled to summons, at state expense, attendance of witnesses from outside the state.  See Exhibits A & Q.

CLAIM -37: The district and appellate court orders is an erroneous interpretation of

9

constitutional law.  Defense counsel's failure to subpoena cell phone records, record(s) that would support alibi and exculpate defendant is "*evidence,*" is the "*proof*" the court frivolously alleges he don't provide.  See United States v. Drones, 218 F.3d 496, 500 (5th Cir.2000), when claim is based on counsel's failure to investigate issue, court looks to degree of investigation undertaken.  See Exhibits A & F.

CLAIM -38:  The district and appellate court orders is an erroneous application of constitutional laws.  Defense counsel failed to consult with defendant four (4) months prior to jury trial, then coerced Mr. Ayo to blindly take stand in his own defense.  Counsel's own *inactions* self-satisfy both the "*unreasonable*" performance and "*prejudicial*" prong(s) of Strickland v. Washington.  See Exhibits A, B & F.

CLAIM -39:  The district and appellate court orders is an erroneous application of constitutional laws.  See LSA-C.Cr.P. art. 831(A)(3); La.Const. Art. I, § 17(A).  See also State v. Grogan, 723 So.2d 1049, 1050 (La.App. 3 Cir.1998), violation of defendant's right to full voir dire examination was not harmless error although there was no evidence that defendant was prejudiced, required reversal of conviction and new trial.

CLAIM -40:  The district and appellate court orders is an erroneous interpretation of constitutional laws.  See United States v. Morris, 568 F.2d 396, 402 (5th Cir.1978)(citing United States v. Wayman, 510 F.2d 1020, 1028 (5th Cir. 1975)), an attorney properly may state "I believe the evidence has shown the defendant's guilty," but may not state "I believe that the defendant is guilty."  See Exhibit G.

CLAIM -41:  The district and appellate court orders is an erroneous application of constitutional laws, is so much as, the opening and closing arguments were "*not*" transcribed.  The court *denied* pro se motion to transcribe those portions of record.  Thus, it can not adequately be determined whether the prosecutor's statements conform to LSA-C.Cr.P. art. 766, as frivolously ordered.  (See case review/docket master; also compare Exhibits H & F).

CLAIM -42:  The district and appellate courts is a gross departure from proper judicial

10

proceedings. It's plain error to allow *same* entity review record(s) and tape(s) for their *own* material fraud on court. (See order to review; also See Exhibit - Q).

CLAIM -43: The district and appellate court orders is an erroneous application of constitutional laws. See United States v. Young, 470 U.S. 1, 105 S.Ct. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); United States v. Restrepo-Granda, 575 F.2d 524, 529-30 (5th Cir.1978), conviction obtain by such inflammatory rhetoric must be reversed as the prosecutor's remark(s) rose to a level of "plain error."

CLAIM -44: The district and appellate court orders is an erroneous interpretation of constitutional laws. Once defendant stipulated to prior conviction, specific facts relative to the prior offense were foreclosed to the prosecution. See State v. Pounds, 359 So.2d 150, 153 (La.1978).

CLAIM -45: The district and appellate court orders is an erroneous application of constitutional laws. The trial court had a judicial duty to stop inflammatory opinion(s), *not* questions put to witness, and admonish jury. LSA-C.E. art. 403 and 404(B)(1); LSA-C.Cr.P. art. 770 and 771. See also State v. Barber, 617 So.2d 974, 976 (La.App. 4 Cir.1983).

CLAIM-46: The district and appellate courts grossly abused its powers and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 750 3d at 99. The claim is properly raised on post-conviction relief. See Exhibit- J.

CLAIM-47: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 750 3d at 99. The claim is properly raised on post-conviction relief. See Exhibits G & S.

CLAIM -48: The district and appellate court orders is an erroneous application of constitutional laws. The state breached pretrial agreement and Louisiana law. LSA-C.Cr.P. art.

11

921. Blackmon v. Scott, 22 F.3d 560, 565 (5th Cir.1994), hearing was *required* as to due process claim relating to unfair surprise. See also State v. Falton, 290 So.2d 273, 278 (La.1974). See Exhibits G & S.

CLAIM -49, 50, 51: The district and appellate court orders is an erroneous application of constitutional laws. When the Fifth Circuit in United States v. Mays, 872 F.2d 582, 587-88 (5th Cir.1989), held that trial court abused its discretion admitting evidence was not harmless and should have been excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. LSA-C.E. art. 403. See Exhibits - J

CLAIM -52: The district and appellate courts grossly departed from proper judicial proceedings and erroneously curtailed constitutional laws. When the Fifth Circuit on direct appeal held that *"trial court record is insufficient to review the facts addressing defendant's claim of ineffective assistance of counsel."* 7 So.3d at 99. The claim is properly raised on post-conviction relief. See Exhibit - S.

CLAIM -53 and 54: The district and appellate court orders is an erroneous application of constitutional laws. The United States Supreme Court in Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), reason that exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. United States v. Sanflippo, 564 F.2d 176, 178 (5th Cir.1977), witness refusal to disclose promise of immunity in another case which would have affected his credibility *required reversal.* See State v. Robinson, 817 So.2d 1131, 1135 (La.2002). See Exhibits E & G.

CLAIM-55: The district and appellate court orders is an erroneous application of constitutional law, absent an evidentiary hearing. See Kirkpatrick v. Whitley, 992 F.2d 491, 495 (5th Cir.1993), such corruption of the truth-seeking process would strike at the confidence of the conviction and sentence, and remand was *required* to determine whether prosecutor presented falsified evidence. Id., at 497.

CLAIM -56: The district and appellate court orders is an erroneous application of

12

constitutional laws. Petitioner points out to the court that the per se "cumulative list" of objections provided to counsel prior to trial are in fact on petition for post-conviction relief. Therefore, logically, if defense counsel *failed* to object and preserve Mr. Ayo's constitutional due process right to a fair trial and appeal, respectively. Such a "cumulative" list of his non performance satisfied the prejudicial prong(s) of Strickland v. Washington. See Exhibit - U.

CLAIM -57:   The district and appellate court orders is an erroneous application of constitutional laws on ineffective assistance of counsel. The State Police in conjunction with the Federal Drug Enforcement Administration was requesting defense counsel to arrange the date and time for a sit-down meeting with the state to negotiate Mr. Ayo's cooperation, in exchange for mitigated plea and sentence, which counsel *repeatedly* refused to arrange. But the district and appellate courts do not see "any inadequate performance in counsel's actions.": Stop-the-Madness! See Exhibit - T.

CLAIM -58:   The district and appellate court orders erroneously interpreted constitutional laws. The record supports that half the jury panel expressed the need to stop and come back tomorrow. (R. 372-373). Yet, the court alleged that "*petitioner provided no evidence to support this claim.*" United States v. Giruldi, 86 F.3d 1368, 1374 (5th Cir.1996), defense counsel ineffectively neglected to motion for recess until the next day.

CLAIM -59:   The district and appellate courts grossly departed from proper judicial proceedings. Absent an evidentiary hearing, it's impossible to determine whether two jurors were sleeping. The prejudice is obvious. United States v. Giruldi, 86 F.3d 1368, 1374 (5th Cir.1996).

CLAIM -60:   The district and appellate courts grossly departed from proper judicial proceedings. In light of the fact that the trial court denied petitioner's motion to transcribe closing arguments, and further, an evidentiary hearing herein. Logically Mr. Ayo cannot attach "*proof or evidence.*" See Kirkpatrick v. Whitley, 992 F.2d 491, 495 (5th Cir.1993), remand was *required* to determine whether prosecutor presented falsified evidence.

CLAIM -61:   The district and appellate court orders erroneously apply constitutional laws. The cumulative effect of defense counsel's error(s) addressed in eleven (11) assignments of error

13

on direct appeal have absolutely *no* connection to sixty-one (61) claims of ineffective assistance raised on *post*-conviction relief. Thus, the issue could not have been previously addressed. See Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir.1993), such a corruption of the truth-seeking process would strike at the confidence of the conviction. See also Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir.1992).

## CONCLUSION OF RELIEF

Petitioner/appellant has demonstrated permanent prejudice to the ability of his counsel to provide adequate representation and fairness of the criminal proceedings leading to his conviction, and now, serious injustice of collateral review by the trial and appellate courts. There is effect of a *constitutional dimension* which needs to be purged to make certain that Mr. Ayo has been effectively represented and fairly convicted/acquitted on claim of actual innocence. The Sixth and Fourteenth Amendment violation(s) provide relief for the ineffective assistance of counsel and denial of due process of law, respectively.

**WHEREFORE**, petitioner respectfully moves this Honorable Court to *grant* the remedial writ as follows:

1. Issue an opinion correcting the district and appellate courts decisions *conflicting* with record and well settled law; and,

2. Remand to the district court for an evidentiary hearing or a new trial, *not* inconsistent with the opinion of the Louisiana Supreme Court.

This I forever pray.

Respectfully submitted,

Petitioner Pro se

14

## AFFIDAVIT VERIFICATION

I, Glenn C. Ayo #531823, hereby declare under penalty of perjury that I read the foregoing Application for Remedial Writ/Certiorari and the facts herein are all true, correct and complete to the best of may knowledge.

Sworn this _24th_ day of September, 2012.

_____
Petitioner Pro se

## CERTIFICATE OF SERVICE

I, Glenn C. Ayo #531823, hereby certify that a true copy of the writ has been furnished by prepaid U.S. Postal to:

> District Attorney
> 24th Judicial District
> Parish of Jefferson
> 200 Derbigny Street
> Gretna, LA 70053

Mailed this _24th_ day of September, 2012.

_____
Petitioner Pro se

Glenn C. Ayo #531823
Louisiana State Penitentiary
Angola, LA 70712

# The Supreme Court of the State of Louisiana

STATE EX REL. GLENN CHARLES AYO

NO.  2012-KH-2093

VS.

STATE OF LOUISIANA

- - - - - -

IN RE:  Ayo, Glenn Charles; - Plaintiff; Applying For Supervisory
and/or Remedial Writs, Parish of Jefferson, 24th Judicial District
Court Div. M, No. 07-369; to the Court of Appeal, Fifth Circuit, No.
12-KH-583;

- - - - - -

March 8, 2013

Denied.

JDH

BJJ

JPV

JTK

JLW

GGG

MRC

Supreme Court of Louisiana
March 8,2013

Deputy

Clerk of Court
For the Court