## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

GLENN CHARLES AYO                                     CIVIL ACTION

VERSUS                                                NO. 13-4580

N. BURL CAIN, WARDEN                                  SECTION "J"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I. *Procedural History* [1]

Petitioner, Glenn Charles Ayo, is a state prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. On January 19, 2007, Ayo was charged by bill of information

_____

[1] The State used Adobe Acrobat Standard version 8.2.5 to superimpose sequential page numbering onto the entire state court record. The State uses this page numbering in its response when citing to the state court record. For ease of reference, the Court will likewise refer to the superimposed page-numbering system when citing to the state court record (R.p.). When applicable, however, the Court will still cite to the original page number itself associated with the particular transcript at issue.

with armed robbery pursuant to Louisiana Revised Statute 14:64.[2]  Following a two-day jury

trial, he was found guilty on November 28, 2007.[3]  On December 5, 2007, the trial court denied

his motion for a new trial and sentenced him to eighty-seven (87) years imprisonment at hard

labor without benefit of parole, probation or suspension of sentence.[4]

Ayo appealed his conviction and sentence to the Louisiana Fifth Circuit Court of Appeal

on a number of grounds, both counseled and *pro se*.  Appointed counsel asserted two grounds

for relief regarding the trial court's failure to suppress the identification and to grant a

mistrial.  As set forth by the court of appeal, Ayo separately asserted 11 assignments of trial

court error.[5]  These grounds included illegal arrest; improper limitation of cross-examination;

knowing use of perjured testimony by the State and ineffective assistance of trial counsel in

failing to object; several assignments relating to suppression of evidence; failure to suppress

a one-on-one identification; ineffective assistance of counsel in preparing for trial; failure to

---

[2] State Rec., Vol.  3 of 13, R.p. 613, Bill of Information.

[3] State Rec., Vol. 5 of 13, R.p. 1022-1024, Trial Transcript (November 28, 2007), pp. 235-37).

[4] State Rec., Vol. 2 of 13, R.p. 461; *see also* State Rec., Vol. 5 of 13, R.p. 1028 (Motion for New Trial and Sentencing, Tr. pp. 14-15).  The multiple bill filed by the State was dismissed on February 28, 2008.  State Rec., Vol. 5 of 13, R.p. 1049.

[5] The court of appeal also noted that in addition to the eleven assignments of error, his *pro se* brief included 33 italicized headings that would not be considered for failure to comply with Rule 2-12.4, Uniform Rules, Courts of Appeal. *State v. Ayo*, 08-468, 08-1179 (La. App. 5th Cir. 3/24/09), 7 So.3d 85, 92 n. 4.

grant a mistrial based on the State's false and fraudulent assertions regarding a parole violation; improper admission of evidence that the State had agreed not to introduce; and cumulative improprieties that denied him a fair trial.  On March 24, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[6]  His request for a rehearing was subsequently denied.  The Louisiana Supreme Court denied relief on March 5, 2010.[7]  He did not seek review in the United States Supreme Court.

On August 6, 2010, Ayo filed an application for post-conviction relief in the state district court.[8]  In that application, he raised sixty-one (61) claims for relief, the majority of which alleged ineffective assistance of trial counsel.  He also filed an application for DNA testing with the state district court on September 23, 2010.[9]  The trial court denied the application for DNA

---

[6] *State v. Ayo*, 08-468, 08-1179 (La. App. 5th Cir. 3/24/09), 7 So.3d 85, *reh'g denied* (La. App. 5th Cir. 4/13/09) (State Rec., Vol. 8 of 13, R.p. 1635-1670).  The Fifth Circuit also affirmed his related misdemeanor conviction and sentence for resisting an officer, for which he received six-months imprisonment, to run concurrently.  The challenge to the misdemeanor conviction was raised separately in a supervisory writ application, No. 08-KH-1179, and consolidated with the direct appeal.  The misdemeanor conviction is not at issue in the instant *habeas* proceeding.

[7] *State v. Ayo*, 2009-1026 (La. 3/5/10), 28 So.3d 1006; copy of writ denial at State Rec., Vol. 9 of 13, R.p. 1671.

[8] State Rec., Vol. 1 of 13, R.p. 157, Uniform Application for Post-Conviction Relief signed and dated August 6, 2010.  Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).

[9] State Rec., Vol. 1 of 13, R.p. 129, Application for DNA testing.

3

testing on October 12, 2010.[10]  On May 16, 2012, the state district court denied the application

for post-conviction relief.  The district court rejected some of the claims as procedurally barred

under Louisiana Code of Criminal Procedure article 930.4, but denied relief on the merits as

to the majority of the claims.[11]  On August 24, 2012, the Louisiana Fifth Circuit likewise denied

relief.[12]  On March 8, 2013, the Louisiana Supreme Court denied his related writ application

without stated reasons.[13]

On May 20, 2013, Ayo filed his federal application for *habeas corpus* relief.[14]  In his

application, Ayo raises twelve numbered claims for relief.  Each of these claims contain

numerous designated "sub-claims."  The claims and subclaims correspond to the sixty-one (61)

claims raised by Ayo on post-conviction review.  The majority of the grounds raised involve

ineffective assistance of trial counsel.

---

[10] State Rec., Vol. 1 of 13, R.p. 103, State district court order signed October 12, 2010 denying Application for DNA testing.

[11] State Rec., Vol. 1 of 13, R.p. 25, State district court order signed May 16, 2012 denying application for post-conviction relief.

[12] State Rec., Vol. 1 of 13, R.pp. 7-8, *State v. Ayo*, 2012-KH-583 (La. App. 5th Cir. 8/24/12) (unpublished).

[13] *State ex rel. Ayo v. State*, 2012-2093 (La. 3/8/13), 109 So.3d 358; *see also* State Rec., Vol. 1 of 13, R.p. 5.

[14] Rec. Doc. No. 3, Petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254. "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  The petitioner signed the petition on May 20, 2013, which is presumed to be the earliest date on which it could have been delivered to prison officials for mailing.

Ayo's claims for federal relief are reproduced verbatim herein as follows:

(1)     The adjudication that police were in an "uninterrupted investigation" and properly entered another jurisdiction, and decision that counsel was not ineffective for refusing to defend his client against illegal arrest involved an unreasonable application of federal law, violated defendant's Fourth, Sixth and Fourteenth Amendment constitutional right(s).

(2)     The adjudication that defense counsel was not ineffective [for] refusing to impeach witness nor object to known perjured testimony involved unreasonable application of federal law, violated defendant's Sixth and Fourteenth Amendment constitutional right(s) to a fair trial.

(3)     The adjudication that defense counsel [was] not ineffective for refusing to impeach witnesses nor object to unduly suggestive show-up and in-court identification involved an unreasonable application of federal law, violated defendant's Sixth and Fourteenth Amendment constitutional right(s) to a fair trial.

(4)     The adjudication that defense counsel [was] not ineffective for neglecting to investigate and secure exculpatory witnesses for suppression hearing(s) and/or trial involved an unreasonable application of federal law, violated defendant's Fourth, Sixth and Fourteenth Amendment constitutional right(s).

(5)     The adjudication that defense counsel was not ineffective for neglecting to argue statutory law(s) on illegal "investigative stop" out of jurisdiction involved an unreasonable application of federal law, violated defendant's Fourth, Sixth and Fourteenth Amendment constitutional right(s).

(6)     [Ayo has designated this also as Claim 5, but numerically it is Claim 6] The adjudication that defense counsel was not ineffective for neglecting to argue suppression law(s) on unlawful *Terri* stop based on race involved an unreasonable application of federal law, violated defendant's Fourth, Sixth and Fourteenth Amendment constitutional right(s).

(7)     The adjudication that defense counsel was not ineffective for refusing to argue suppression law(s) on illegally seized evidence not identified as evidence of alleged crime involved an unreasonable application of federal law, violated defendant's Fourth, Sixth and Fourteenth Amendment constitutional right(s).

(8)     The adjudication that defense counsel was not ineffective for neglecting to investigate, motion for DNA testing and subpoena exculpatory evidence, object to defendant's non-participation in jury challenge, nor object to highly inflammatory rhetoric involved an unreasonable application of federal law, violated defendant's Fourth, Sixth and Fourteenth Amendment constitutional right(s).

(9)     The adjudication that the chief court reporter did not commit material fraud on court concealing prosecutorial misconduct and trial court committed fundamental error refusing to admonish the jury, violated defendant's Sixth and Fourteenth Amendment constitutional right(s).

(10)    The adjudication that defense counsel was not ineffective for neglecting to argue law(s) against breach of pretrial argument and introduction of illegal evidence involved an unreasonable determination of facts and an unreasonable application of federal law, violated defendant's Fourth, Sixth and Fourteenth Amendment constitutional right(s).

(11)    The adjudication that defense counsel was not ineffective for neglecting to argue law(s) against obstruction of justice, abuse of judicial discretion and juror's sleeping involved an unreasonable determination of facts and an unreasonable application of federal law, violated defendant's Sixth, Eighth, and Fourteenth Amendment constitutional right(s).

(12)    The adjudication that defense counsel did not render a cumulative amount of ineffective assistance involved an unreasonable determination of facts and an unreasonable application of federal law, violated defendant's Sixth and Fourteenth Amendment constitutional right(s).

The State concedes that the petition is timely and that all of the claims have been exhausted. The State contends two of Ayo's claims are procedurally defaulted. The remainder

6

of the claims, the State argues, should be denied on the merits.

II. *Facts*

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts as

follows:

> The eighty-eight year old victim, Baptiste DeBroy, testified at trial that on the morning of January 7, 2007, he and his wife went to a warehouse located at 250 Iris Avenue, Jefferson, Louisiana, in order to distribute beads to members of a Mardi Gras krewe. As they walked toward the building, a white man in a hooded blue jacket approached Mr. DeBroy, pulled him behind the building, knocked him down, and put a knife to his throat. The victim testified that the knife looked like a kitchen knife with approximately a six-inch blade. The man demanded the victim's wallet and ordered Mr. DeBroy not to look at him, covering his own head with the hood of his jacket. However, the victim testified that he got a good look at the robber from close range before he donned the hood. Mr. DeBroy told the robber that he did not have a wallet, whereupon the robber demanded his cash. Mr. DeBroy turned over all his cash, amounting to $28,[15] and the robber started to leave, going towards River Road. He came back and told the victim, "If you get up, I'm going to stick you." The robber then left in the direction of Jefferson Highway.
>
> Mr. DeBroy immediately went inside the warehouse and announced that he had been robbed. He spoke to the 911 operator and described the robber, his clothing, and the knife. Members of the Jefferson Parish Sheriff's Office (JPSO) responded and began an investigation. The 911 tape was played to the jury.
>
> Lieutenant Danny Jewell, JPSO, testified that the warehouse belonged to his family and that he lived nearby. On the morning of January 7, 2007, he was off-duty when he was awakened by his uncle, who reported a robbery on the premises. Lieutenant Jewell met with the victim, who gave a detailed description of the robber and the knife. Jewell began to canvas the neighborhood in his unmarked police unit. He did not operate his lights or sirens in pursuit. Jewell testified that he did not activate his lights and sirens because that action would give away his identity to suspects.

---

[15] Mr. DeBroy was very specific that he was carrying a $20 dollar bill, a $5 dollar bill, and three $1 dollar bills, as was his custom (footnote in original).

Within thirty minutes of the robbery, while searching the immediate area, Jewell heard on the police radio that a suspect had been detained in the 800 block of Jefferson Highway and that the victim was being brought to view the suspect. As Jewell drove to that location, he saw a dark-haired, clean shaven, white male, wearing a green tee shirt on Cicero Street, near Jefferson Highway. Jewell testified that due to the detention of the first suspect, he did not investigate this man further at that time.

The victim immediately excluded the first suspect as the robber. Shortly afterwards, Jewell returned to Cicero Street to look for the man he had seen earlier. He was no longer in sight, but workers in the area told him that the man in the green shirt had just gotten into a blue cab, headed towards New Orleans. Jewell proceeded toward Jefferson Highway, which turns into Claiborne Avenue at the parish line, looking for the blue cab.

En route, Jewell heard on the police radio that a subject in a blue cab had been found at a gas station on Claiborne Avenue. When he arrived at the gas station, the suspect had already been detained by police. The subject was the same man that Jewell had seen on Cicero Street a few moments earlier. The victim was brought to the scene and identified the defendant as the robber. This identification was made within an hour of the robbery.

At trial, Lieutenant Jewell positively identified the defendant as the man discovered at the gas station after the robbery. A blue hooded sweatshirt was found on top of the defendant's green bag, recovered on the back seat of the cab.

At trial, the victim made a positive in-court identification of the defendant as the robber. He also positively identified a photograph of the defendant as the man who robbed him. He positively identified the blue hooded jacket and stated that the six-inch kitchen knife looked like the knife used in the robbery. The victim was cross-examined extensively regarding his physical description of the perpetrator.

Deputy George McCoy, JPSO, testified that he was on patrol on January 7, 2007 when he was dispatched to 250 Iris to investigate an armed robbery. He obtained a description of the robber from the victim and completed the information sheet. Deputy McCoy took the victim in his car to view an initial suspect. The victim immediately stated that this suspect was not the robber.

Soon afterwards, Deputy McCoy transported the victim to view a second suspect. When he arrived at the Spur station, he saw Deputy Simoneaux attempting to restrain the subject. The victim told him that the man was the robber. At trial, McCoy identified the defendant as the man arrested that day.

Deputy Paul Simoneaux, JPSO, testified that he was assigned as a backup officer on the robbery investigation. After the victim excluded the first suspect as the robber, he heard on the police radio that Deputy McCoy saw a suspect getting into a cab, heading toward New Orleans. Simoneaux followed McCoy's unit to the Spur gas station in New Orleans. He saw a man matching the suspect's description exit the cab, handing what appeared to be money to the driver. As Simoneaux approached, he saw a kitchen knife sticking out from the suspect's back pocket. During a search incident to arrest, a twenty dollar bill and a one dollar bill were recovered from the defendant's pocket. At trial, Deputy Simoneaux positively identified the defendant as the man arrested that day and noted that at his arrest, the defendant gave police a false name and date of birth. Simoneaux described changes to the defendant's physical appearance in the months following the robbery, stating that he was heavier at trial.

The defendant exercised his right to testify at trial and stated that the victim's identification was mistaken. He explained his possession of a kitchen knife, testifying that he carried this knife in order to strip copper from wires in demolished homes in connection with his post-Katrina job. He admitted that he was in possession of a blue jacket and a kitchen knife and that he gave a false name upon arrest.[16]

### III.  *Procedural Default*

The State asserts that two of Ayo's claims are in procedural default.[17]  The first claim alleges prosecutorial misconduct in "giving the jury a guarantee that Ayo is lying and the

---

[16] *State v. Ayo*, 08-468, 08-1179 (La. App. 5th Cir. 3/24/09), 7 So.3d 85, 90-92.

[17] The State acknowledges that not all of the procedural bars imposed by the state courts would result in procedural default to prevent a federal *habeas* court from reviewing the merits of the claims (*ie.*, procedural bar pursuant to Louisiana Code of Criminal Procedure article 930.4(A) for those claims addressed on direct appeal).  *See* Rec. Doc. 16, pp. 9-12.

officers are telling the truth."[18]  The second claim alleges trial court error in sustaining the

State's objection to petitioner testifying that his 1994 manslaughter conviction in Florida was

enumerated as an accidental death under Florida law.[19]

The state district court dismissed both claims as procedurally barred from post-

conviction review under Louisiana Code of Criminal Procedure article 930.4 (C), because they

could have been but were not raised on direct appeal.[20]  The Louisiana Fifth Circuit and the

Louisiana Supreme Court denied Ayo's related writ applications, relying on the same reasons

set forth by the district court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115

---

[18] Ayo's numbering of his claims and format for presentation of those claims on direct appeal differed from that used on post-conviction review and also from that used in his federal *habeas* application to this Court.  This claim was designated as Claim number 43 in his state post-conviction relief application and corresponds to "Claim 9, sub-claim 3" in his federal petition.  On direct appeal, the Louisiana Fifth Circuit noted that the italicized headings used by Ayo in his *pro se* brief did **not** constitute properly briefed or argued assignments of error and were considered abandoned.  *State v. Ayo*, 7 So.3d at 92 n. 4.  This particular claim, listed as italicized claim 28, was included therein. See Rec. Doc. 3-2, Appendix B at p. 89, Pro Se brief, p. 35.

[19] This claim was designated as Claim number 44 in Ayo's state post-conviction application and corresponds to "Claim 9, sub-claim 4" in his federal petition. The Louisiana Fifth Circuit on direct appeal addressed only the error properly assigned by Ayo, namely that the trial court erred in denying his motion for a mistrial based on improper introduction of other crimes evidence.

[20] Article 930.4, subsection C provides that "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief." La.C.Cr.P. art. 930.4(C).

L.Ed.2d 706 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of the claims on federal *habeas corpus* review.  For a state-imposed procedural bar to prevent review by this federal *habeas* court, the bar must be both independent and adequate.  Article 930.4 (C) qualifies as both an independent and adequate procedural rule to support a procedural bar in federal court.

Federal courts have repeatedly found that Louisiana Code of Criminal Procedure article 930.4(C) is a well-established and independent state law procedural ground regularly applied by the state courts to deny review of improperly raised post-conviction claims.  *See Parks v. Cain*, 12-0297, 2014 WL 505329, at *8 (E.D. La. 2/16/14) (Feldman, J.); *Lewis v. Cain*, 2010 WL 4363546, *9 (E.D. La. 8/19/10) (Chasez, MJ.), *report & recommendation adopted*, 2010 WL 4340795 (E.D. La.10/21/10) (Feldman, J.); *Hurd v. Cain*, 2009 WL 3063354, *7 (E.D. La. 9/23/09) (Lemmon, J.); *Simmons v. Cain*, No. 06–2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05–0929, 2006 WL 5507856, at *8 (E.D.La. Oct.17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds by Monroe v. Cain*, No. 05–0929, 2008

12

WL 818968, at *1 (E.D.La. Mar.24, 2008) (Berrigan, J.). Here, the state courts' ruling was based on Louisiana law setting forth the requirements for preservation and presentation of claims on post-conviction review. The ruling was independent of federal law and relied strictly on state procedural requirements.

Furthermore, it qualifies as an "adequate" procedural ground because the state rule is "firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)); *see also Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997) (To be considered "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases). State procedural rules enjoy a presumption of adequacy when the state court expressly relies upon them in deciding not to review a claim, and the burden is on the petitioner to demonstrate otherwise. *Glover*, 128 F.3d at 902; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir.1999). As previously discussed, the state district court expressly relied on well-settled Louisiana law arising from Louisiana Code of Criminal Procedure article 930.4 (C) to bar review of Ayo's claims. The bars imposed on Ayo's claims are supported by the record and adequate to foreclose review by this federal court.

In order to overcome the procedural default doctrine, Ayo must demonstrate "cause" for the default and prejudice resulting from the default, or show that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995)(citations omitted). To establish cause for a procedural

default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In this case, Ayo has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claim in a procedurally proper manner. Nor does the record reflect any action or inaction on the part of the State which prevented him from doing so. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir.1996).

Finally, Ayo does not present any claim and the record contains nothing to suggest his actual innocence on the underlying conviction. To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. 478, 496; *Glover*, 128 F.3d at 902. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. Thus, Ayo's defaulted claims are procedurally barred from review by this Court.

IV. *Substantive Merits*

A. *Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections

14

2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

A state court decision is contrary to clearly established precedent if the state court

applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. at 102; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents

16

defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

B. *Petitioner's Claims*[21]

    1. *Court reporter fraud/prosecutorial misconduct (Claim 9, sub-claims 2-3)*[22]

Ayo contends he was deprived of a fair trial when the prosecutor in the presence of the jurors shouted multiple accusations that he was a liar.  The alleged outburst related to his testimony that he was not on parole for a prior manslaughter conviction in the state of Florida. He acknowledges that the transcript does not reflect the prosecutor's alleged remarks, but attributes this to "material fraud by the court reporter who concealed prosecutorial misconduct."  Ayo challenged the transcript's accuracy in the state courts and attempted to show  the "actual" exchange that occurred between the prosecutor, himself and defense counsel, which he contends was omitted from the transcript.  He maintains that his version of the exchange, which he quotes in his memorandum in support, is a true reflection of what transpired at trial.[23]  In his attempt to prove that the trial transcript certified by official court

---

[21] The claims will be addressed in a different chronology than presented by the parties for purposes of orderly and efficient presentation, beginning with a discussion of the limited claims that do not relate to ineffective assistance of trial counsel.

[22] Due to the interrelated nature of the claims, the Court addresses Claim 9 in its entirety here despite the previous discussion that certain sub-claims were procedurally defaulted.

[23] *See* Rec. Doc. 3, Memo in support, p. 89 of 117.

reporter Pamela Lobrano was inaccurate, he pursued in the court of appeal a motion for *in camera* inspection of the recordings of trial under the authority of Louisiana Code of Civil Procedure article 2132.  The court of appeal ordered Chief Court Reporter of the Twenty-Fourth Judicial District Court, John Andressen, to listen to the relevant portion of the transcript in dispute.  Andressen certified in writing to the court that "there are no parts of the transcript missing or altered."

Ayo raised this claim on direct appeal. The Louisiana Fifth Circuit Court of Appeal rejected the claim, reasoning:

> The defendant makes a new factual claim: that his trial transcript has been altered. A criminal defendant has a right to a complete transcript of trial proceedings. LSA-Const. Art. 1, § 19. The law provides that in criminal cases tried in the judicial districts, the official court reporter shall record all portions of the proceedings required by law or the court and shall, when required by law or the court, transcribe those portions of the proceedings required, which shall be filed with the clerk of court in the parish where the case is being tried. LSA-R.S. 13:961.

> Each volume of the transcript in this case bears the certification of the court reporter that a true and correct transcript of proceedings has been made. Despite these official attestations, the defendant states that his trial transcripts have been altered and that the alterations reveal perjury and ineffective assistance of his counsel. In his brief, he quotes passages which he contends are the true version of events.

> By order of this Court, John H. Andressen, Deputy Judicial Administrator and Chief Court Reporter of the Twenty-fourth Judicial District, listened to the relevant portion of the transcript. He has provided a written statement to this Court that he listened to the entire cross-examination of the defendant and "determined that there are no parts of the transcript missing or altered." This

assignment of error has no merit.[24]

The Louisiana Supreme Court denied relief without additional stated reasons.

Ayo urges in these federal *habeas* proceedings that the Louisiana Fifth Circuit Court of Appeal "committed fundamental error" by "ordering John H. Andressen, Chief Court Reporter of [the same entity responsible for altering transcript], to listen to the relevant portion of the transcript. Naturally, Mr. Andressen cosign [sic] and denied the alteration despite twelve (12) jurors, amongst other officer(s) of court, 'witnessing' the unethical shouting match."[25] However, he is not entitled to federal *habeas corpus* relief based on any perceived error in the state court of appeal's ruling on his motion for *in camera* inspection. Federal *habeas corpus* relief is not available for alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The record demonstrates that Ayo was afforded the opportunity to object to the proceedings as transcribed and to refute the accuracy of the transcript consistent with principles of procedural due process.[26] *Cf. Chessman v. Teets*, 354 U.S. 156, 164 n. 12 (1957).

Nor has he established prosecutorial misconduct based on his unsupported allegation

---

[24] *State v. Ayo*, 7 So.3d at 103.

[25] Rec. Doc. 3, p. 89 of 117.

[26] State Rec., Vol. 8 of 13, No. 08-KA-468 (Motion for In Camera Inspection at R.p. 1534 and Order dated October 27, 2008 at R.p. 1533); State Rec., Vol. 9 of 13, No. 09-KH-1026 (La. S.Ct. writ application), R.pp. 1704-05.

that the prosecutor "gave the jury her own guarantee that Mr. Ayo 'is lying' and the officers, her witnesses are telling the truth."  Because Ayo does not cite to a particular transcript page, the Court presumes he raises this claim in the context of the alleged altered and missing transcript testimony discussed above.[27]  Even if the claim were properly before this Court for review, however, it lacks merit.

As noted,  Ayo has presented no evidence to support his claim that the trial transcripts were incomplete or inaccurate.  He offers only conclusory allegations, without any evidentiary support, which do not provide a basis for *habeas* relief.  He cannot demonstrate that the prosecutor made these improper remarks, much less show that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) (internal quotations omitted).  Thus, Ayo's unsubstantiated allegations of a falsified transcript and prosecutorial misconduct based on purely hypothetical comments simply do not entitle him to federal *habeas* relief.

### 2.   Improper rulings by trial court (Claim 9, sub-claims 4 and 5)

(a) *Limitations on Ayo's testimony*

Ayo contends the trial court improperly sustained the State's objection and precluded the defense's line of questioning during Ayo's testimony regarding his prior manslaughter

---

[27] He cites to Appendix F, which is a copy of his state court post-conviction application and trial court order.  These likewise contain no page-cite reference.

conviction in the state of Florida.  He argues that he does not have a murder conviction and he was not on parole, but the improper restriction allowed the jury to believe he was "a wanted criminal with a prior murder conviction as opposed to manslaughter by culpable negligence."[28] As previously discussed, this claim should be denied as procedurally defaulted.  However, even if it were properly before this Court, the claim lacks merit.

Briefly, the facts related to this issue are as follows.  During direct examination, defense counsel had Ayo admit his prior manslaughter conviction in the state of Florida, and then posed the question to Ayo: "In Florida,  that's an accidental death?"  The prosecutor objected to the question and the objection was sustained.  Later during cross-examination, the State questioned Ayo about the prior conviction and inquired if he would be surprised to learn that there was a detainer for him issued by the State of Florida.  At this point, defense counsel moved for a mistrial, which was denied.  However, the trial court admonished the jury to disregard the question and any response.[29]

With regard to the trial court's evidentiary ruling sustaining an objection under state law, it is "not the province of a federal *habeas* court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court is limited on federal *habeas* review to deciding whether a state court conviction violates the

---

[28] Rec. Doc. 3, Memo in support, p. 92.

[29] State Rec., Vol. 5 of 13, Trial Transcript, pp. 181-186.

Constitution, laws, or treaties of the United States. *Id.* Thus, *habeas corpus* relief does not lie for perceived errors in evidentiary rulings unless the error was of such a magnitude as to deny fundamental fairness to the criminal trial in violation of due process. *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977). Ayo has not established such a violation under the circumstances.

Even assuming that the trial court erred in restricting Ayo's ability to explain that under Florida law a manslaughter conviction is considered an accidental death, this was not an extreme error of such magnitude that he was deprived of a fair trial. Had he been allowed to offer a detailed explanation, it would simply have opened the door for the State to elicit more factual details surrounding that conviction.[30] Thus, Ayo's testimony would have had been of limited, if any, value to his defense. Furthermore, there was no risk that the jury would believe he was a "wanted criminal," in relation to his Florida conviction, regardless of how Ayo characterized that conviction under Florida law. That risk was eliminated by the trial court's curative instruction to the jury to disregard the exchange pertaining to the detainer for a parole violation.[31] Thus, Ayo is not entitled to relief on this claim.

(b) *Denial of motion for mistrial due to prosecutor's reference to Brickley's criminal history*

Ayo contends the trial court erred in failing to grant a mistrial or admonish the jury

---

[30] La. C.E. art. 609.1(C).

[31] The Court notes that Ayo himself later testified that he is aware of the existence of a Florida attachment, but that it was based on a missed court date rather than a parole violation. State Rec., Vol. 5 of 13, Trial Transcript, pp. 212-213.

when the prosecutor asked Ayo, during cross-examination, whether he knew that his absent alibi witness, Theo Brickley, was recently found guilty of four felonies in another section of court. The comment prompted defense counsel to request a mistrial and admonishment, both of which were denied. During a bench conference, the trial court considered the State's argument that it was entitled to explore the alibi witness' absence and the inability of the defense to locate or subpoena the witness, but agreed with defense counsel that the prosecutor was not entitled to go into Brickley's criminal history. The prosecutor agreed not to pursue the line of questioning and the trial court instructed the attorneys to "move on."[32]

On direct appeal, Ayo argued that the trial court erred in denying his motion for a mistrial. The Louisiana Fifth Circuit rejected the claim as follows:

> The defendant next complains that the trial court should have granted a mistrial due to the prosecutor's references to the convictions of the defendant's friend, Theo Brickley. During direct examination, the defendant testified that he got a ride from Theo Brickley on the morning of the robbery. During cross-examination, the prosecutor asked whether Mr. Brickley would testify at trial. The defendant responded that Brickley had not been served to appear in court and would not testify. The prosecutor asked the defendant if he knew that Brickley had recently been convicted of four felonies in another section of court. Before an answer could be given and after an immediate objection, the prosecutor voluntarily stated that she would not pursue this line of questioning any further. The trial court denied the motion for a mistrial and no further questioning along this line took place.
>
> The trial court did not err in denying the motion for mistrial. In light of all the testimony introduced at trial, the brief, unanswered question into Theo Brickley's recent convictions did not create an unfair trial. Furthermore, the

---

[32] *Id.* at 188-192.

trial judge specifically charged the jury that statements and arguments made by the attorneys are not evidence.

A trial court's ruling shall not be reversed by an appellate court because of any error which does not affect substantial rights of the accused. LSA-C.Cr.P. art. 921. As this Court recently held, harmless error is present when the guilty verdict actually rendered was surely unattributable to the error. *State v. Lemeunier*, 07-230, p. 9 (La. App. 5 Cir. 5/27/08), 986 So.2d 130, 136.

In this case, the evidence of the victim and police officers, if believed by the trier of fact, established all the elements of the crime of armed robbery. In light of the strength of the evidence against the defendant, the guilty verdict was "surely unattributable" to the alleged references to other crimes. This assignment of error has no merit.[33]

To the extent Ayo alleges that the denial of his motion for mistrial amounted to an abuse of discretion by the trial court or reversible error under Louisiana law, the claim should be dismissed as non-cognizable.  Federal *habeas corpus* is available only to correct federal constitutional violations. A denial of a motion for mistrial or a failure to admonish only implicates the Constitution if the error results in  fundamental unfairness that fatally infects the trial. *Matthews v. Cain*, 2010 WL 3210444, at *16 (E.D. La. July 12, 2010) (citing *Lisenba v. California*, 314 U.S. 219, 236–37 (1941)); *see also Webb v. Blackburn*, 773 F.2d 646, 651–52 (5th Cir.1985) (emphasizing that the inquiry is whether a denial of mistrial "rendered the trial fundamentally unfair in the constitutional sense.").  A petitioner must show that "the trial court's error had a substantial and injurious effect or influence in determining the jury's verdict."  *Hernandez v. Dretke*, 125 F. Appx. 528, 529 (5th Cir.2005) (citing *Brecht v.*

---

[33] *Ayo*, 7 So.3d at 96.

*Abrahamson*, 507 U.S. 619, 623 (1993)).

There was no evidence from Brickley himself offered at trial, only Ayo's testimony that Brickley could account for Ayo's whereabouts at the time of the armed robbery. The isolated question posed by the prosecutor immediately followed Ayo's testimony that the defense could not find Brickley.  The import of the question was the defense's purported inability to locate the witness, rather than the missing witness' criminal history.  The court of appeal concluded that the trial court's failure to grant a mistrial or to admonish the jury in response to this brief and unanswered comment about Brickley's recent criminal convictions, given the entirety of the evidence against Ayo, did not result in fundamental unfairness or have a substantial impact on the jury's verdict.  This Court cannot find that the state appellate court unreasonably applied clearly established federal law by finding Ayo was not deprived of a fundamentally fair trial.

### 3. *Tampering with witness/obstruction of justice* (Claim 11, sub-claim 3)

Ayo claims that the prosecutor obstructed justice by tampering with witness, Theo Brickley, and preventing his appearance at trial.  He speculates that Brickley possessed information regarding the numerous ways in which the State actively interfered and effectively discouraged his appearance at trial.  He suggests the State instilled fear of arrest, offered leniency in connection with another matter for not testifying, and ensured he had an active warrant falsely issued by his probation officer in order to discourage him from testifying. The state district court denied this claim for prosecutorial tampering with a witness

as speculative, conclusory and unsupported by the record. Ayo cites to Exhibit "T" in support of the claim. However, the exhibit only contains more self-serving allegations by Ayo in the form of a letter *from Ayo* to the Louisiana State Police.[34] Ayo has not made any credible assertions, supported by evidentiary proof, that the prosecution intimidated Brickley. The state courts properly found the claim entirely unsupported by the record in this case. Ayo has not shown that the state court's denial of this claim was contrary to or involved an unreasonable application of established federal law.

### 4. Ineffective Assistance of Counsel: Controlling law

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.,* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

---

[34] Rec. Doc. 3, Exhibit T; *see also* State Rec., Vol. 2 of 13, R.pp. 312-316.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Matthesen v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims

on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). As the United States Supreme Court has recognized therefore, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be doubly deferential. *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (citing *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

### 5. *Suggestive pretrial identification (Claim 3, sub-claims 3-4)*

Ayo claims he is entitled to relief based on the trial court's refusal to suppress the pretrial show-up identification that took place under highly suggestive circumstances. He also claims that counsel rendered ineffective assistance in failing to object to the victim's in-court identification of him that was obviously tainted by the highly suggestive "show-up" procedure, as well as the prosecutor's actions in showing the victim a booking photograph of Ayo and allowing the victim to view Ayo outside of the courtroom before he was asked to identify him.

On direct review, the Louisiana Fifth Circuit held that the trial court did not err in denying the motion to suppress the pretrial identification. The appellate court set out the applicable federal law and corresponding state law:

> The admissibility of an identification is controlled by *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Williams*, 08-272, p. 3, (La. App. 5 Cir. 12/16/08), 3 So.3d 526. Viewing the evidence from

a totality of the circumstances, the trial court should consider whether suggestiveness presents a substantial likelihood of misidentification. This review is based on five specific factors: 1) the opportunity of the witness to observe the perpetrator at the time of the crime, 2) the witness' degree of attention at the time of the crime, 3) the accuracy of his prior description of the offender, 4) the level of certainty displayed at the confrontation, and lastly, 5) the time between the crime and the confrontation. *Id.* at 115, 97 S.Ct. 2243.

This Court has noted that the likelihood of misidentification of a suspect may violate due process, but the mere existence of suggestiveness is not an automatic constitutional violation. *State v. Hurd*, 05-258, p. 5 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570. Although "show up" or one-on-one identifications are not favored in law, circumstances may justify the use of such procedures. One such exception is when the suspect is apprehended and viewed soon after the crime. Such immediate identifications increase accuracy in identification and provide for the expeditious release of innocent suspects. *State v. Spurlock*, 08-163, p. 8 (La. App. 5 Cir. 5/27/08), 986 So.2d 89, 94.

In applying the factors to Ayo's case, the court of appeal reasoned:

At the suppression hearing, the victim testified that during the robbery, he had a clear, close, and well-lit view of the robber. The victim's undiverted attention was focused on the robber. Moments after the robbery, the victim gave police his best physical description of the robber and his clothing. Although there was a range of possible weights given by the victim, it is critically important that the victim excluded a suspect stopped by police shortly after the robbery.

Even more important than his physical description, the victim positively identified the defendant less than an hour afterwards. The victim explained to the jury that he had been unable to identify the defendant at the motion to suppress hearing, because there were many defendants seated together in the jury box, all dressed alike. At the time of trial, however, he again positively identified the defendant as the man who robbed him.

In brief, the defendant places great emphasis on the differing physical descriptions of the robber as described by the victim. During direct examination at trial, the victim testified that he told officers that the robber, a white male, was around 5'7" or 5'8". He stated that he may have told police that the robber was 150 pounds or he may have said 135 or 170 pounds. The transcript of the

911 tape states 170 lbs. He informed officers that the robber was between forty and fifty years old. Notably, at trial, the state introduced the prison intake assessment which established that on February 24, 2007, the defendant's weight was 181 and his height was 5'7". The prison's nurse practitioner testified that defendant's weight on the day of trial was 212 lbs.

Cross-examination of witnesses provides an opportunity to challenge identifications. The elderly victim in this case admitted to having given somewhat unspecific descriptions of the robber, such as possibly stating that his weight was 150, 135, or 170 pounds. He also stated that he may have said the robber was around thirty years of age. Any discrepancies between the description of the perpetrator and the defendant as he appeared at trial were fully explored and known to the jury.

Most importantly, the victim made a positive identification of the defendant at trial. This was a daylight robbery in which the victim had an opportunity to view the robber at close range. The victim made an immediate report of the crime, gave a description of the robber's clothing and appearance, and made a positive identification of the defendant within an hour of the robbery.

Notably, the victim excluded the first subject detained by the police and only made a positive identification of the defendant after viewing him at close range. The victim testified at trial that the police officers did not suggest to him that he should identify the defendant as the robber. Thus it appears that all five *Brathwaite* factors are present and the identification of the defendant was reliable.[35]

To prevail on his claim that the victim's identification testimony derived from a suggestive identification procedure, petitioner must show that the identification procedure was "so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law." *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)); *Manson v. Braithwaite*,

---

[35] *State v. Ayo*, 7 So.3d at 92-94.

432 U.S. 98, 114 (1977).   While initially it must be determined if the pretrial identification is

impermissibly suggestive, even if a pretrial identification procedure is suggestive, a reviewing

court will look to the totality of the circumstances in order to determine if the identification

is nevertheless reliable. *Neil v. Biggers*, 409 U.S. at 199-20.   In making the determination, the

Court considers the following five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime;
> (2) the witness's degree of attention at the time of observation; (3) the accuracy
> of the witness's prior description of the criminal; (4) the level of certainty
> demonstrated by the witness when confronting the defendant; and (5) the
> length of time between the crime and the confrontation.

*Manson v. Brathwaite*, 432 U.S. at 114; *Neil v. Biggers*, 409 U.S. at 199–200.   This analysis

involves a mixed question of law and fact.   *Livingston v. Johnson*, 107 F.3d 297, 309 (5th

Cir.1997); *Sumner v. Mata*, 455 U.S. 591, 597 (1982) ("[T]he ultimate question as to the

constitutionality of the pretrial identification procedures ... is a mixed question of law and

fact....").

The state court's detailed and factored analysis in this case is reasonable in light of the

record presented and discloses no substantial likelihood of irreparable misidentification.

Much of Ayo's argument focuses on the suggestiveness factor given that the victim saw him

handcuffed and over the hood of the car.   Ayo refers to the "dramatic exhibition of lawless

police misconduct," which he characterizes as deputies "pointing, cheering and screaming like

a tailgate party:  That's him, That's him."[36]  Although his characterization of the events surrounding the identification is quite exaggerated, the nature of a one-person "show up" procedure itself is arguably suggestive.  Nonetheless, even assuming that the out-of-court identification procedure was impermissibly suggestive, it did not create a substantial risk of misidentification because the identification was independently reliable.

The victim had ample opportunity to view the perpetrator and his attention was directly focused on his assailant during the robbery.  The victim testified that he had a good view of the perpetrator's face, which was only a foot away from his own during the robbery. His attention was surely focused on the perpetrator as the victim was held immobile on the ground with a knife at his throat while staring directly at the perpetrator.  In fact, the victim testified that at this point, the perpetrator pulled his hood over his head and told the victim, "Don't stare at me so you can identify me."[37]

The level of accuracy in the victim's description of the perpetrator was high.  The victim gave a detailed and thorough, albeit imperfect, description of the perpetrator immediately after the robbery.  The victim told 911 dispatch what the perpetrator was wearing and described his appearance as a "clean-shaven" white man with dark hair, about 30 years old, 5'7" or 5'8", and weighing about 170 pounds.  The victim gave differing accounts to police at

---

[36] Rec. Doc. 3, p. 37 of 117.

[37] State Rec., Vol. 5 of 13, Trial Transcript, p. 121.

other times as to Ayo's approximate weight and age.  While Ayo disputes the accuracy of the victim's differing physical descriptions, particularly the weight, and notes that he was actually 44 years old at the time, the victim's description after the initial observation was detailed and fairly accurate.

The level of certainty demonstrated by the victim at the confrontation was likewise high.  The victim testified at trial that he was certain he identified the right person.[38] One critical detail noted by the trial court was that the victim had excluded a different subject initially detained by police.  The victim was sure that he was not the man who had robbed him. The victim then observed Ayo and was able to state with certainty that he was the man who had robbed him.  The victim did not equivocate and agreed that he would testify truthfully if he was at all unsure.

Finally, the "show-up" identification procedure was carried out by police in relatively close temporal and geographical proximity to the crime.  The identification by the victim occurred promptly, within about an hour of the crime.  And although the perpetrator was apprehended in a neighboring parish, the distance was not far from where the crime had occurred.

Given the totality of the circumstances, the out-of-court identification was based on independent factors and was reliable enough to overcome any suggestiveness in the show-up

---

[38] *Id.* at 129.

procedure.  The state appellate court's denial of Ayo's claim with regard to suppression of the out-of-court identification was not contrary to Supreme Court precedent or an unreasonable application of federal law.

With respect to the ineffective assistance of counsel claim, Ayo argues that his attorney failed to advance the appropriate legal arguments to suppress the suggestive identification. He also failed to object to the in-court identification when the prosecutor procured the victim's identification immediately after showing him a suggestive single photograph of Ayo taken at the time of his arrest.  Ayo claims that the photograph improperly influenced the victim to identify Ayo at trial although he was unable to identify Ayo at the suppression hearing.  He maintains counsel also failed to object or move for a mistrial when the prosecutor brought the victim to the jail door "for [an] unduly suggestive viewing" of Ayo before the victim testified.

In denying his post-conviction claim that counsel was ineffective in failing to object to the suggestive in-court identification at trial, the state district court reiterated the finding that the initial pretrial identification was not unduly suggestive.  The state court found no showing of deficient performance or prejudice under *Strickland*.  The court of appeal and Louisiana Supreme Court likewise denied relief.

Defense counsel twice moved during pretrial proceedings to suppress the victim's out-of-court identification.  The first motion was denied after a full evidentiary hearing on the

matter.[39]  The second motion urged Ayo's specific grounds for suppression of the identification under *Manson*, *supra*., expressly pertaining to the legal argument he now alleges counsel did not advance.  That motion to suppress was subsequently considered on the written motion and memorandum and likewise denied.[40]  Defense counsel reurged the motion to suppress at trial a third and final time, and the motion was denied.[41]  Defense counsel's decision to voice no objection a fourth time at trial based on the victim's out-of-court identification of Ayo was not objectively unreasonable and does not constitute deficient performance.  To the contrary, the record demonstrates that he effectively argued for suppression of the out-of-court statement.

To the extent Ayo contends that counsel should have objected to the introduction of the booking photo or suggestive viewing by the victim with regard to the in-court identification, he fails to show that he was deprived of effective assistance of counsel in this regard.   Ayo's counsel made a reasonable tactical decision not to make what he knew was a futile objection to the victim's in-court identification as unreliable for the reasons suggested by Ayo.  The identification would not have been excluded.  Moreover, the decision to attack the credibility

---

[39] State Rec., Vol. 4 of 13, R.p. 712, August 16, 2007 suppression hearing.

[40] State Rec., Vol. 2 of 13, R.p. 401, Ayo's memorandum of law in support of petition for writ of habeas corpus/alternative motion to suppress (suggestive identification argument at R.p. 416).  See also State Rec., Vol. 4 of 13, R.p. 766, November 7, 2007 suppression hearing (submitted on written pleadings).

[41] State Rec., Vol. 4 of 13, Trial Transcript, pp. 83-86.

and reliability of the victim's identification of Ayo through cross-examination, as opposed to raising meritless evidentiary objections, was a reasonable trial strategy.  In fact, defense counsel fully explored the discrepancies in the victim's identification, including Ayo's physical attributes, as well as the victim's inability to identify Ayo at the pretrial suppression hearing. The state court reasonably found that Ayo failed to establish either deficient performance or prejudice.  He is not entitled to relief on this claim.

### 6.  Illegal arrest, search, and related ineffective assistance claims (Claim 1; Claim 3, sub-claim 2; Claims 4-7)

Initially, the Court notes that to the extent Ayo advances any claims under the Fourth Amendment, federal courts will not address such a claim upon *habeas* review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not precluded by any failure of the state's corrective processes.  *Stone v. Powell*, 428 U.S. 465, 494–495, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  A "full and fair" opportunity as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir.1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir.1977).

The United States Court of Appeals for the Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir.1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir.2002), *cert. denied*, 537 U.S. 1196 (2003).  Simply stated, it is the opportunity to present a Fourth Amendment claim to the

state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320–21.

In the instant case, the record indicates that Ayo filed two pretrial motions to suppress, one *pro se* and one counseled, which were denied by the trial court. He also reurged the motion at trial.[42] The Louisiana Fifth Circuit's opinion on direct appeal further illustrates that the Louisiana courts did, in fact, provide Ayo with the opportunity to litigate any Fourth Amendment claims.[43] The Louisiana Supreme Court denied discretionary review. Because Ayo cannot show that the Louisiana courts provided no procedure by which he could raise his Fourth Amendment claims, any substantive Fourth Amendment grounds asserted by Ayo are barred from federal *habeas corpus* review by *Stone*.

Ayo also contends his defense attorney failed to provide effective assistance of counsel because he inadequately prepared for, investigated and litigated the suppression hearings. In particular, he argues that counsel was unable to prove the illegality of his arrest for lack of probable cause and improper search and seizure of evidence because he failed to: (a) adequately investigate and subpoena material evidence; (b) call witnesses or move for a continuance to obtain material evidence and witnesses; (c) raise the appropriate legal arguments during the hearing; (d) introduce relevant evidence; and (e) effectively cross-

---

[42] State Rec., Vol. 4 of 13, Trial Transcript, pp. 83-86.

[43] *State v. Ayo*, 7 So.3d at 94-95.

examine witnesses.

Defense counsel moved for suppression on three separate occasions, albeit unsuccessfully, citing numerous grounds. At the evidentiary hearing on the counseled motion to suppress, the victim and the two arresting officers, Simoneaux and McCoy, testified about the crime and the brief pursuit that ended with the apprehension of Ayo and the seizure of evidence. Deputy Simoneaux's testimony revealed that he maintained constant pursuit of a suspect fitting the description of the robber through radio broadcasts as to his whereabouts. He approached Ayo because he fit the physical description of the suspect reportedly seen getting into a cab. He observed a knife sticking out of Ayo's back pocket and immediately retrieved the knife and placed it out of reach. After a brief struggle, and with the help of Deputy McCoy, they secured Ayo. The victim positively identified Ayo as the individual who had robbed him at knifepoint. They also recovered a crumpled twenty dollar bill and a one-dollar bill that Ayo was holding in his hand. They learned from the cab driver that a bag belonging to Ayo was in the back seat of the cab. Deputy McCoy saw the bag with a blue jacket on top of it in the cab and retrieved it.

At the conclusion of the hearing, defense counsel argued that Ayo should not have been detained in Orleans Parish by Jefferson Parish officers when there was no evidence that they were commissioned to operate in that parish. He also argued that the officer had no authority or consent to go into the cab and take the jacket from the duffle bag. The State responded that the officers had authority to detain him based on "hot pursuit" when they found a suspect

38

fitting the description of the armed robber who was in possession of a knife in a neighboring parish.  Additionally, the State noted that officers properly retrieved the items in the cab belonging to Ayo because the bag was brought to the officers' attention by the cab driver and the jacket was sticking out of the bag.  The trial court concluded:

> Based upon testimony of the witnesses, the Court clearly finds that the evidence adduced indicates probable cause to hold this Defendant for the charge of Armed Robbery.  With regard to the Motion to Suppress Identification:  that motion is denied.  The testimony of all three witnesses was that the victim, Mr. DeBroy, did in fact identify this Defendant as the individual who robbed him while using a knife to his throat.
>
> With regard to the Statement. This Statement was given by this Defendant not subject to any questioning by the Police Officers; but something that he blurted out voluntarily after he had been read his Rights.  The Motion to Suppress Statement is denied.
>
> With regard to the evidence, the Court finds that the Motion to Suppress Evidence in this matter should also be denied.  The Court finds that based upon the testimony of the three witnesses, that they were in pursuit of the perpetrator of an Armed Robbery; which led them to apprehend this Defendant, who was still in possession of a knife, although in Orleans Parish.[44]

A *pro se* motion to suppress was separately filed by Ayo and subsequently heard and denied on November 17, 2007.[45]  Ayo and his counsel agreed to submit the motion to the court on the pleadings.  Those pleadings consisted of the motion itself and a 28-page memorandum

---

[44] State Rec., Vol. 4 of 13, R.p. 712 (Transcript of Motion to Suppress hearing held August 16, 2007 at pp. 49-52).

[45] *Id.* at R.p. 766, 775  (Transcript of Motion to Suppress hearings held November 7 and November 17, 2007).

containing 22 points of law and discussion, along with the police report narrative, supplemental report by McCoy and dispatch records.  Once again, the defense argued that there was no authority for the detention based on "hot pursuit" and that the officers exceeded their jurisdiction. After considering the motions, the witnesses previously heard, and all of the documents provided, the trial court again denied the motion to suppress.

At trial, defense counsel re-urged the motion to suppress the evidence "based on the testimony that's been provided herein already both as to the arrest being improper in that the Jefferson Parish sheriff's officers had no reason to arrest Mr. Ayo and therefore their actions were improper and were illegal and therefore anything that flows from those actions in the context of their arrest and detention of Mr. Ayo would be the fruit of the poisonous tree."[46] That motion was similarly denied.

The merits of Ayo's illegal-arrest claim were considered by the Louisiana Fifth Circuit on direct appeal.  The appellate court held that the arrest was lawful and probable cause existed.  The court of appeal expressly rejected Ayo's claim that the arrest was illegal and unauthorized due to jurisdictional issues, namely that Jefferson Parish Sheriff's deputies had no legal authority to stop and arrest him in Orleans Parish, based on the exception of close pursuit.  The court held:

> The exception of close pursuit applies in this case. The arrest took place within
> an hour of the crime a few blocks over the adjoining parish line. The arrest was

---

[46] *Id.*, R.pp. 866-869, Trial transcript, pp. 83-86.

the result of an uninterrupted investigation by responding police officers. The pursuit of the defendant, initiated in Jefferson Parish, was immediate and continuous. Furthermore, the defendant was detained after he hired a cab and was leaving the area of the robbery. The pursuing officers saw a kitchen knife, matching the description of the weapon used in the robbery, sticking out from the defendant's pants. Within minutes of the defendant's detention and within an hour of the robbery, the victim made a positive identification. This assignment of error has no merit.

Furthermore, the appellate court held that probable cause existed for the arrest and that the

trial court properly denied Ayo's request for suppression of the evidence seized from him and

introduced at trial:

### PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

Trial court erred by failing to suppress the seizure of Mr. Ayo and alleged evidence, finding that police bare-face observation of construction worker possessing [un]concealed knife, which violates no law, had probable cause as "private citizen" to immediately arrest, violating Mr. Ayo's Fourth, Fifth and Fourteenth Amendment Constitutional Right(s).

### PRO SE ASSIGNMENT OF ERROR NUMBER FIVE

Trial court erred by failing to suppress the seizure of alleged evidence, finding that construction worker's possession of [un]concealed knife, which violated no law, was seized incident to arrest, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

Pro se assignments of error four and five allege related complaints and are addressed together. The defendant argues, as he did in his pro se motion to suppress the evidence, that in order to justify a warrantless search as incident to an arrest, the arrest itself must be a "lawful" arrest.

The arrest of the defendant was made by Officer Simoneaux. This arrest was based on the description of the robber broadcast on the police radio. The Supreme Court of the United States has expressly concluded that if a law enforcement bulletin has been issued on the basis of articulable facts supporting

a reasonable suspicion that the wanted person has committed an offense, then reliance on the bulletin justifies a stop to check identification. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985).

Furthermore, probable cause existed to support the defendant's arrest. Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. *State v. Fisher*, 97-1133, p. 7 (La. 9/9/98), 720 So.2d 1179, 1184.

The police in this case had a reasonable and trustworthy report of an armed robbery where the dangerous weapon was a knife, along with a physical description of the robber. The defendant, who matched the description given, was found shortly after the robbery, attempting to leave the area. Upon detection, the defendant was arrested by Deputy Simoneaux when he saw him at a gas station. Visible protruding from the defendant's back pocket was a knife handle.

These circumstances constitute probable cause. As the Supreme Court of Louisiana noted in *State v. Johnson*, 363 So.2d 684, 689 (La.1978) that "[o]ne of the most important elements in determining whether probable cause existed is satisfied when the police know a crime has actually been committed. When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime." The police in this case knew that an armed robbery had just occurred and they had reasonably trustworthy information on the robber's description sufficient to justify a man of ordinary caution in believing the defendant had committed this robbery. This assignment of error has no merit.[47]

In his post-conviction applications, Ayo presented the claims to the state courts in the context of ineffective assistance of counsel. The state district court denied the claims. The court of appeal and the Louisiana Supreme Court likewise denied relief.

---

[47] *State v. Ayo*, 7 So.3d at 99-100.

Ayo's claim is not that counsel provided ineffective assistance by failing to challenge the constitutionality of the arrest or search and seizure.  Nor could he advance such a claim given that defense counsel challenged the warrantless arrest for lack of probable cause and moved to exclude the evidence on three separate occasions.  Rather, Ayo disputes the manner in which his counsel handled the pretrial suppression proceedings.  However, for the following reasons, Ayo fails to show that counsel performed deficiently or that he was prejudiced by counsel's conduct under the *Strickland* standard.

(a) *Failure to investigate video and surveillance (Claim 3, sub-claim 2)*

Ayo alleges that counsel did not conduct adequate investigation and subpoena the mobile vehicle system used by Jefferson Parish police or the service station surveillance tapes. The state district court deemed the claim purely speculative and found that Ayo failed to show how counsel was ineffective or how the outcome of trial would have been different.

With respect to an attorney's duty to investigate, the United States Fifth Circuit has explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir.2014) (quoting *Strickland v. Washington*, 466

43

U.S. at 690-91).  Furthermore, to demonstrate prejudice based on a failure to investigate, a petitioner must establish not only what the investigation would have shown, but also a reasonable probability that the outcome would have been different as a result. *Diaz v. Quarterman*, 239 F. Appx. 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696).

Ayo contends the mobile video and store surveillance would "conclusively demonstrate Jefferson Parish officials were 'not' in hot pursuit to immediately  arrest Mr. Ayo in another parish. But on a roving patrol and conducted an illegal (investigative) stop out of their jurisdiction, coupled with lawless police misconduct, an unconstitutional exploratory search, and then conducted a highly suggestive show-up identification took place – beating and handcuffing Mr. Ayo in the presence of [] victim."[48]  Because Ayo has not shown that the surveillance footage to which he refers actually existed, the claim is purely speculative. Moreover, assuming such video was available, counsel did not perform deficiently in failing to secure it.  The video footage would have been cumulative of the testimony and evidence presented at the hearing as to the circumstances surrounding the arrest and seizure of evidence.  Clearly, the court of appeal considered the circumstances of the arrest and found that probable cause existed and the search and seizure of evidence were lawful.  Ayo cannot show that investigation into the purported surveillance footage would have affected that conclusion.

---

[48] Rec. Doc. 3, Memo in support at p. 35 of 117.

(b) *Failure to subpoena witnesses (Claim 4, sub-claims 1-4)*[49] *or move for a continuance*
   *(Claim 4, sub-claim 1; Claim 7, sub-claims 12-13)*

Ayo also argues that counsel failed to investigate and subpoena various exculpatory witnesses for the suppression hearing. These witnesses include "Dave" and Theo Brickley for their alibi testimony. Ayo claims that Dave could also offer a legitimate explanation for how Ayo came to possess Dave's knife, bag and jacket. William Barrett, the cab driver, allegedly could attest to the illegal investigative stop. As for Ronald Montgomery, the private defense investigator, Ayo does not specify what relevant testimony he could offer other than presumably to support Ayo's allegations that he did not properly perform his investigative duties with regard to these witnesses to assist with an alibi defense. The state district court found the claim unsupported and concluded that Ayo had not shown deficient performance or prejudice. The state court's decision rejecting the ineffectiveness claim on these grounds was reasonable under *Strickland*, *supra*.

As the United States Fifth Circuit Court of Appeals has explained regarding claims of uncalled witnesses:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available

---

[49] Ayo's arguments in relation to calling these witnesses for trial will be addressed later in this report.

> to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir.2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In support of his claims, Ayo points to only one affidavit purportedly prepared by Brickley.  He offers nothing else in support of the alleged favorable testimony to be offered by these witnesses.  Thus, as to three of the four proposed witnesses, Ayo falls far short of satisfying his burden of proof that they would have offered testimony favorable to the defense at the suppression hearing.  Furthermore, testimony with respect to Ayo's whereabouts at the time of the crime was not relevant for purposes of suppression.  Thus, even as to Brickley, Ayo cannot establish that the absence of his testimony during the suppression hearing prejudiced him.  Brickley had no testimony to provide that was pertinent to the merits of the motion to suppress.  Brickley's alleged testimony to be offered at the suppression hearing about giving Ayo a ride on the morning of the robbery and dropping him off at Dave's house would not have been relevant to the question whether officers at the time of the stop possessed reasonable

suspicion to believe that Ayo committed the robbery and probable cause to arrest him or whether the search and seizure of evidence during that arrest was lawful. Even if counsel had offered the testimony suggested by Ayo, it would not have altered the finding that there was probable cause for the officers to arrest Ayo and search the vehicle.

Only Barrett's testimony related to Ayo's arrest. However, the record evidence soundly contradicts Ayo's allegation with respect to Barrett's allegedly favorable testimony regarding the arrest. Barrett's written statement to police and his testimony at trial reflect that he was unable to attest to the events surrounding Ayo's arrest. He was inside the store when the police arrived and exited after Ayo was apprehended.

Relatedly, Ayo contends his attorney failed to request a continuance of the suppression hearings to provide additional time for investigation and gathering evidence and witnesses. He also faults counsel for failing to object based on an abuse of judicial discretion when the trial court ignored his supplemental *pro se* filings in connection with the first suppression hearing and then proceeded with a second "bare-bones" suppression hearing. However, Ayo has failed to point to any witnesses or evidence that would have altered the result of the proceedings to warrant any request for continuance. The motion hearing had been continued multiple times and counsel was prepared to litigate the suppression issues. Furthermore, Ayo succeeded in having his *pro se* motion and arguments heard by the trial court and the transcript shows that Ayo voiced his agreement with counsel to submit the second motion to

47

suppress on the pleadings and evidence.[50]   Defense counsel's decision not to move for a continuance to subpoena the witnesses or evidence suggested by Ayo was not objectively unreasonable under the circumstances.

(c) *Failure to present legal argument (Claims 5 and 6; Claim 7, sub-claims 1, 3-10)*

Ayo generally faults his defense attorney for failing to raise pertinent legal grounds in support of the motion to suppress that would have established the unlawfulness of the arrest and seizure of evidence.  Claim 5 and its sub-parts involve counsel's alleged ineffectiveness in failing to advance particular legal arguments to the trial court with respect to the investigative stop and arrest by officers in another parish.  The claims are based on Ayo's misperception, however, that an impermissible "citizen's arrest" served as the legal grounds for the investigative stop and arrest, and that his attorney could have defeated those grounds by arguing "lack of statutory authority for private citizen to execute investigative stops" and "insufficiency of probable cause for private citizen to arrest."  He cites record transcript pages that purportedly reflect the State's erroneous position that private citizens may conduct full custodial investigation.  In fact, no such support exists. To the contrary, the record shows that neither the State nor the trial court relied on such a theory to support a finding that the investigative stop and arrest were lawful. As the court of appeal held in ruling on the substantive merits, the legality of the stop was established based on hot pursuit of an armed

---

[50] *See* Rec. Doc. 16 at p. 7 of 95, n. 3.  The State sets forth a detailed history of Ayo's pro se motion to suppress.

robbery suspect and the officers had probable cause to arrest him based on their reasonable belief that he had committed the armed robbery.  Counsel is not obligated to advance every legal argument posited by a client and in this instance nothing in the record indicates that this particular argument had any merit or would have persuaded the trial court to grant the motion to suppress.  Ayo's defense attorney in this case offered reasonable arguments against the legality of the stop and arrest of his client, particularly with regard to officers exceeding their jurisdiction.  He is not entitled to relief on these grounds.

Similarly, in Claim 6, Ayo contends defense counsel was ineffective in failing to present legal argument with respect to the unlawfulness of the forcible stop under *Terry v. Ohio*, 392 U.S. 1 (1968). He contends counsel failed to argue that he was unlawfully detained based solely on his race and gender without reasonable suspicion otherwise that he had committed any crime. He argues that the unconcealed knife officer observed in his back pocket after the officer stopped him did not provide the reasonable suspicion for the initial unlawful stop. However, the legal argument he sets forth based on *Terry* was actually presented to the trial court as grounds for suppression because it was raised in Ayo's 22-point memorandum in support of his *pro se* motion to suppress.[51] Therefore, the argument was in fact considered and ultimately rejected by the trial court.  No deficient performance has been shown under these circumstances.  Furthermore, the court of appeal considered the substantive merits of the

---

[51] State Rec. Vol. 2 of 13, R.p. 405.

claim and found that officers had a reasonable and trustworthy report of an armed robbery with a knife, along with a detailed description of the robber, and they found Ayo matching that description shortly after the crime at a nearby gas station with a knife protruding from his back pocket.  The court of appeal soundly rejected Ayo's claim that the trial court erred in finding the detention and subsequent arrest were lawful.  Defense counsel not only strongly advocated for suppression but offered reasonable arguments in support. Certainly nothing in the record indicates that a more vigorous performance by defense counsel could have persuaded the trial court to grant the motion to suppress.

The majority of Claim 7 involves alleged ineffective assistance by defense counsel in failing to present proper legal arguments for suppression of items of evidence seized.  These items include the knife, currency, travel bag and jacket.  Ayo claims that counsel should have argued that the seized evidence was confiscated before he was even subjected to arrest and thus could not have been a proper search incident to lawful arrest.  Further, he argues that counsel failed to argue suppression based on the fact that the knife was not identified by the victim as the one used by the perpetrator in the armed robbery.

The record demonstrates that defense counsel argued extensively for suppression of evidence based on the illegality of the arrest.  As thoroughly explained by the appellate court on direct review, the trial court properly denied the motion to suppress because under the circumstances probable cause existed and the arrest was lawful.  Counsel is not obligated to raise every conceivable argument that might exist, much less those that he reasonably believes

50

would prove futile and serve no legitimate purpose.  *See Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir. 2012).  A search incident to arrest is not unlawful simply because it preceded a formal arrest.  *See United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996); *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980).  Nor would the victim's inability to positively identify the knife as the one used in the crime serve as the basis for pre-trial suppression.  Certainly, the mere fact that the motion to suppress was unsuccessful despite counsel's exercise of reasonable professional judgment is not indicative of deficient performance.  *Strickland*, 466 U.S. at 699.  Ayo has not shown that he is entitled to relief on these grounds.

Ayo also argues that counsel was ineffective in failing to raise proper legal arguments for suppression of the currency unlawfully seized.  He contends counsel should have argued suppression laws on "search incident to arrest, unlawful seizure of abandoned property resulting from the unlawful investigative stop, unlawful search of pockets exceeded *Terry* pat-down for weapons, and evidence violated chain of custody."[52]  However, as the State notes, these arguments were actually raised and presented to the trial court.  Defense counsel plainly challenged all of the evidence based on the illegality of the stop and arrest.  Furthermore, the specific arguments Ayo claims should have been raised were in fact raised by Ayo in his 22-point memorandum.[53]  Because the trial court considered and weighed all of these

---

[52] Rec. Doc. 3, Memo in Support, pp. 63-66.

[53] State Rec. Vol 2 of 13, R.p. 408 (Ground Six: "Whether under the totality of the circumstances presented, search of defendant's inner pockets and travel bag subsequent to

arguments in denying the motion to suppress, Ayo cannot show any deficient performance or prejudice.

The same is true for Ayo's ineffective assistance claims regarding his attorney's failure to argue "suppression laws on search beyond suspect's immediate control and unlawful search of closed travel bag not justified under plain view exception" with regard to the evidence seized from the cab.  The claims were expressly raised and submitted to the trial court for consideration in Ayo's 22-point legal memorandum accompanying his motion to suppress.[54] Indeed, the Louisiana Fifth Circuit noted that the claims had been raised as part of the motion to suppress in the trial court when it reviewed and denied the substantive claims on direct appeal.  In rejecting the claim, the court of appeal explained:

> **PRO SE ASSIGNMENT OF ERROR NUMBER SIX**
>
> Trial court erred by failing to suppress seizure of jacket in cab, not in "plain view" and beyond control of Mr. Ayo, violating Mr. Ayo's Fourth and Fourteenth Amendment Constitutional Right(s).

---

an 'unlawful arrest' could not be justified as search incident to arrest"; R.p. 415 (Ground Thirteen: "Whether officers violated chain of custody and defendant's substantial Fourth and Fourteenth Amendment due process right(s) by materializing [sic] next day at parish jail, collecting any $21 dollars from property officer, and submitting the same to district attorney as tangible evidence"), R.p. 413 (Ground Eleven: "Whether search of defendant's inner pockets and seizure of $21 dollars exceeded *Terry* pat-down search for weapons").

[54] *Id.* at 409 (Ground Seven: "Whether officers... search of travel bag in cab extended to area beyond control of defendant stopped in front of store, violated Fourth Amendment right to freedom from unreasonable search and seizure") and R.p. 411 (Ground Nine: "Whether the officer's discovery of (zip-up) jacket inside closed travel bag [was] not justified under plain view doctrine").

The defendant argues that the trial court should have suppressed the evidence of his windbreaker. He argues that the recovery of his windbreaker from his travel bag inside the cab was unreasonable because it was outside his immediate control. He also contends that the incriminating nature of the seized evidence was not immediately apparent.

The defendant, pro se, raised a pretrial challenge to the seizure of the windbreaker from his travel bag. The trial court heard this argument (and other arguments) in a hearing on motions to suppress and for a preliminary examination and found that the evidence was lawfully seized.

The defendant's reliance on "plain view" case law is misplaced. It is well established that when a lawful arrest is made of an occupant (or recent occupant) of a vehicle, law enforcement officers have the right to search the entirety of the passenger compartment, including closed containers found in the passenger compartment, as a contemporaneous incident of the lawful arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *See also State v. Warren*, 05-2248 (La.2/22/07), 949 So.2d 1215. Belton is not limited to situations where suspects remain in their vehicles when approached by the police. *See Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), where the police stopped the driver of a vehicle for a traffic violation after he had parked and left his car. The driver consented to a pat down during which he admitted possession of illegal drugs on his person. Police arrested the driver and put him in the patrol car before searching the vehicle and discovering a handgun under the driver's seat. The High Court concluded that so long as an arrestee is the sort of recent occupant of a vehicle "such as [the driver] was here," law enforcement officers could lawfully search the vehicle incident to the arrest. *Thornton* at 623, 124 S.Ct. at 2132.

This pro se assignment of error has no merit.[55]

Ayo argues that counsel should have raised an additional argument with respect to the jacket and highlighted that it did not match the victim's description (*ie.*, zip-up windbreaker versus hooded sweatshirt). However, any perceived discrepancy in the description by the victim and the physical appearance of the item recovered is simply irrelevant to the question of suppression. It is abundantly clear that the claims regarding suppression of the travel bag and jacket were expressly included as grounds for the motion to suppress, and the outcome would have been the same, regardless of the manner in which those legal arguments or claims were couched.

(d) *Failure to introduce evidence (Claim 4, sub-claim 5; Claim 7, sub-claim 2)*

Ayo claims counsel was ineffective in failing to use an affidavit Ayo obtained from Theo Brickley as evidence during the suppression hearing. The affidavit set forth details that helped Ayo establish an alibi for the time of the armed robbery. He also claims counsel should have used as evidence Ayo's Western Union receipt showing he had received $300 less than twenty-four hours before the robbery to establish that he had no reason to commit the robbery. The receipt was actually introduced by the defense at trial. However, the existence of a possible alibi defense would not have shown that the search or seizure was illegal and served as a basis to suppress the evidence. Apart from any admissibility hurdles, while the

---

[55] *Ayo*, 7 So.3d at 100-101.

affidavit and Western Union receipt may arguably have provided an alternative explanation for Ayo's whereabouts and the source of the money found on him, they do not bear on the reasonableness of the officers' actions at the time of the arrest and seizure of the evidence. Because the demonstrative evidence had no relevance to the matter of suppression, the trial court properly found that Ayo failed to establish either deficient performance or prejudice as the result of counsel's omission.

(e) *Failure to adequately cross-examine Deputy McCoy (Claim 7, sub-claim 11)*

Ayo claims that counsel was ineffective in failing to properly cross-examine Deputy McCoy at the suppression hearing.  One of the issues at the suppression hearing involved an entirely voluntary statement made by Ayo after he was arrested.  Ayo argues that McCoy testified falsely that he heard Ayo make a statement through an open window while Ayo was allegedly sitting inside the police car.  McCoy testified that while he was talking to his ranking officer and describing the events, Ayo interjected that the cab actually picked him up in New Orleans, a different location than where the cab driver had reported.  Ayo alleges he informed defense counsel that Deputy McCoy was lying because the back window of a patrol car does not open, but defense counsel refused to object to the testimony or argue suppression laws against false or perjured statements.  Aside from the fact that Ayo's argument is based solely on his subjective and entirely conclusory opinion as to whether or not the rear window of the police car can or cannot be opened, Ayo cannot establish that the line of questioning he proposed would have affected the outcome of the suppression hearing and that the court

would have suppressed the statement.  Ayo does not dispute that his statement was spontaneous and voluntarily made.  Instead, he argues that his statement should have been suppressed because it was "inseparable from his illegal detention."[56]  Defense counsel fully explored the legality of the stop and arrest.  More extensive cross-examination of Officer McCoy regarding his ability to have heard the statement by Ayo through the back window of the cruiser would not have altered the outcome of the suppression hearing.  Thus, counsel's failure to more vigorously cross-examine the officer did not prejudice Ayo.

### 7.  Failure to impeach witnesses or object to alleged perjured testimony at trial (Claim 2)

Ayo points to four instances where he contends defense counsel performed deficiently for failing to object to knowingly false witness testimony at trial.  Three of those instances, he claims, involved alleged known perjured testimony by the three police officers – Simoneaux, Jewell, and McCoy.  He argues that the fraudulent testimony denied him a fair trial considering "the entire case hinged on the officers' contention that they had probable cause to arrest and search Mr. Ayo out of their jurisdiction."[57]  He also argues that counsel should have objected to the victim's false identification of Ayo as the perpetrator.

Ayo claims that the first instance occurred during Deputy Simoneaux's testimony when he testified falsely that Detective Jewell advised that he observed a suspect fitting the

---

[56] Rec. Doc. 3, Memo in support, p. 73.

[57] *Id.* at 21.

perpetrator's description getting into a cab, which was last seen heading toward New Orleans, and that he was trying to catch up to the cab.[58] Ayo argues that this testimony is contrary to the dispatch transcript, which does not reflect Jewell's purported statements, as well as Jewell's trial testimony that he personally did not see the suspect get into the cab.[59] Defense counsel cross-examined both officers about the discrepancy.  He questioned Jewell, who testified as follows:

> Q:  Now, when you saw Mr. Ayo, he wasn't doing anything suspicious or inappropriate, was he?
>
> A:  No. Standing in the middle of the street, like I said, with the bag, the gym bag over his shoulder, speaking to someone on the landing of the apartment.
>
> Q:  And you didn't notice anything unusual about him at that time, did you?
>
> A:  Other than, you know, his body type and clean shaven and hair color matched the description of the perpetrator as well as there was a knife sticking out of his back pocket.  Other than those two things — or at least a handle of a knife.
>
> Q:  Well, so you're canvassing the area for somebody that just committed an armed robbery with a knife.
>
> A:  Correct.
>
> Q:  And you see a gentleman with a knife in his back pocket.
>
> A:  Correct.
>
> Q:  Why didn't you call that in on dispatch? You didn't think that was significant?
>
> A:  I think I did call it in on dispatch.  I put the description out on dispatch.
>
> Q:  This is Exhibit 3, which I know you've already reviewed.
>
> A:  Uh-huh.

---

[58] State Rec., Vol. 4 of 13, Trial transcript (Deputy Simoneaux) at p. 89.

[59] *Id.*, Trial Transcript (Lt. Jewell) at pp. 15-17.

> Q:     Could you point out to me where you put the knife out on dispatch?
>
> A:     I put the green shirt, the blue jeans — no, I don't have it in here.
>
> Q:     Certainly, that would have been a very significant feature, would it not have?[60]

Defense counsel also cross-examined Deputy Simoneaux:

> Q:     Let me take you back a moment.  You had gone on — you had information that had been provided to you by Deputy Jewell that the suspect in the green shirt and blue jeans had left in a blue cab heading toward New Orleans, is that correct?
>
> A:     Yes, sir.
>
> Q:     And Deputy Jewell didn't actually see him leave.  That was information that had been provided to him by someone at the scene, is that correct?
>
> A:     I have no knowledge of that.  All I know is what I heard on the radio.
>
> Q:     But you didn't hear on the radio that Deputy Jewell or Lieutenant Jewell was actually right behind the cab?
>
> A:     No I didn't hear him say he was right behind.  But I took it that he saw the cab enough that he was trying to catch up to it.

The second instance allegedly occurred when the state elicited Jewell's testimony that he conveyed to a dispatcher that the suspect was carrying a knife in his back pocket.  Though he recalled doing so, Jewell conceded on cross-examination that no reference appears in the transcript of the dispatch transmission.[61]  Ayo asserts that the falsified evidence was used to

---

[60] *Id*. at 35.

[61] *Id*. at 35-41; *see also* State Rec., Vol. 3 of 13, R.pp. 614-616 (identified as Exhibit S-3, "Incident History Detail") and R.pp. 617-620 (identified as Exhibit S-4, transcribed audio of "911" call).  The victim actually placed the call to 911, not Jewell.  Although reference on redirect in the trial transcript is to the 911 transcript (Tr.p. 39), the controversy actually centers on the dispatch transcript.

justify the unlawful arrest out of jurisdiction and illegal search and seizure of evidence.

The third instance concerns allegedly false testimony given by Deputy McCoy. In support, Ayo points to a discrepancy between the testimony of the victim and that of McCoy. The victim testified that McCoy asked him when they drove into the station if he could identify the individual as the perpetrator, but he stated he could not immediately identify Ayo from his vantage point. He walked closer to the individual and made a positive identification. McCoy's testimony differed, however. He testified that the victim immediately stated as they drove into the station, "Yes, that's him."[62]

Finally, a fourth instance involved the prosecutor eliciting the victim's allegedly known false identification of Ayo in court when he could not identify him at the suppression hearing. Ayo claims the state prosecutor improperly guided that identification and even acted in collusion with witnesses to offer false testimony. The victim was cross-examined thoroughly with respect to his inability to identify Ayo during the suppression hearing:

> Q:   Now, let me ask you, Mr. DeBroy — and I understand that this is all difficult, but as you can appreciate this is very, very important.
> A:   I understand.
> Q:   I was standing right here where I am right now, and you were sitting right where you are right now, and I asked you the question if you could identify the individual that robbed you that day. And do you remember what you specifically told me?
> A:   I said I wasn't sure, I said, "No." And I saw people all over the place, and I didn't look really at each person. And I don't know

---

[62] State Rec., Vol. 5 of 13, Trial Transcript (DeBroy) at 128; State Rec., Vol. 4 of 13 (Deputy McCoy) at 56-60, 67.

> whether I could identify him that day or not.  I had an idea, but I
> would never say without being sure.
>
> Q:   Yeah.  Let me show you – if you wouldn't mind reading from Line
> 14 through 20, please.
>
> A:   "14, Question:   Are you able to identify in court today the
> individual that robbed you that day?"
> "Answer:  No, not today.  I did that day when I was face to
> face with him.  I cannot say I would do it today, no."
> "Question:  So you don't see who did rob you?
> No response."
>
> Q:   And would that be — is that an accurate reflection —
>
> A:   I think that's accurate.
>
> Q:   I don't want to mince words, but you didn't say I'm not sure.  It
> might be him.  You were unable to identify anybody.
>
> A:   I said I couldn't identify him.[63]

The knowing use of false testimony to obtain a conviction violates the due process clause of the Fourteenth Amendment.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  However, perjured testimony does not include mere inconsistencies between a witness' pretrial statements and the witness' statements at trial.  *See United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987); *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (due process is not implicated when testimony is challenged by another witness or is inconsistent with prior statements).  Similarly, while contradictory testimony among different witnesses poses a credibility question for the jury, it does not alone suffice to establish perjury.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (citing *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988)).

---

[63] State Rec., Vol. 5 of 13, Trial Transcript (DeBroy) at pp. 138-139.

Here, Ayo references multiple inconsistencies in the testimony to support his allegations of perjury. The admitted testimonial discrepancies and conflicting evidence, however, simply do not establish perjury. Furthermore, these inconsistencies were presented to the jury for its consideration and ultimate resolution as the trier of fact. In rejecting the substantive perjury claim on the merits, the state court of appeal reasonably concluded that "although the defendant points to discrepancies in testimony between the witnesses, he does not establish that perjury occurred in his trial."[64]

Similarly, his ineffective assistance of counsel claim is unavailing. Counsel did not perform deficiently by failing to object to the testimony cited by Ayo. He had previously challenged the legality of the arrest and search and pretrial identification through several motions to suppress. Despite counsel's exhaustive attempts, the arrest was deemed lawful and the evidence was ruled admissible. His decision to subject the witnesses to cross-examination to expose the inconsistencies in their testimony, rather than to attempt impeachment or an objection to their testimony based on perjury, was objectively reasonable. The record reveals that he thoroughly and effectively cross-examined the State's witnesses with respect to the discrepancies in their testimony, squarely presenting the credibility issues to the jury for consideration. Ayo is not entitled to relief on this claim.

---

[64] *Ayo*, 7 So.3d at 99.

*8.  Inadequate preparation and investigation for trial (Claim 4; Claim 8, sub-claims 2-4)*

(a)  *Consultation with counsel*

Ayo claims that counsel was ineffective in failing to visit him in jail or prepare any defense on his behalf.  In support, he points to counsel's failure to respond to his "ten prima facie letter(s) detailing an adequate defense," and the fact that counsel did not consult with him for more than four months prior to trial.  It is clear, however, that Ayo's assertions of deficiency are based primarily upon counsel's failure to comply immediately with every request made in those letters.  The Court cannot infer from the mere absence in the state court record of written replies from defense counsel to Ayo's monthly correspondence that counsel ignored the concerns raised by his client.  Nor is the failure to act on each and every request made by Ayo in those letters indicative of deficient performance or inadequate preparation of a defense.  To the contrary, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S.Ct. 10, 17 (quoting *Strickland*, 466 U.S. at 690).  In fact, the record shows that defense counsel met with his client before trial, retained a private investigator, conducted discovery and issued subpoenas for relevant and material records and evidence, including many records requested by Ayo in his correspondence.  Defense counsel was adequately prepared for the suppression hearing and trial.

The record also refutes Ayo's allegations that counsel failed to visit or consult with him and specifically that he failed to meet with him in the four months before trial.  The record

62

reflects that Ayo appeared in court twice with his attorney, on November 7 and 15, 2007, in connection with the *pro se* motion to suppress.[65]   Ayo also had the opportunity to meet personally with the private investigator in August and October 2007.[66] While Ayo might have preferred more frequent or longer private conferences with counsel, it is clear that he was afforded the opportunity to provide sufficient input to counsel and assist in the preparation of his defense.

(b)  *DNA testing of the knife*

Next, Ayo asserts that counsel failed to have the knife tested for DNA.  Ayo filed a separate post-conviction application for DNA testing of the evidence.  The trial court denied the motion.  In his subsequent post-conviction relief application filed with the state district court, he raised a claim of ineffective assistance of counsel for failing to investigate and conduct DNA testing on the knife.  The state district court denied the claim as repetitive and successive based on its earlier ruling.  The State submits that the ineffective assistance claim is a different claim entirely and is procedurally defaulted.  Even if this Court ignores any procedural default and considers this claim on the merits, however, Ayo has failed to establish ineffective assistance under *Strickland v. Washington*.

In order to establish a failure to investigate on the part of counsel, a petitioner must

---

[65] State Rec., Vol. 4 of 13, Hearing transcripts.

[66] State Rec., Vol. 1 of 13, R.p. 232 (correspondence dated August 3, 2007); State Rec., Vol. 2 of 13, R.p. 256 (correspondence dated October 4, 2007).

allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir.2011). The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed. *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir.1998); *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir.2005).

Ayo alleges that "the results of testing would in fact prove negative of victim's blood or skin cell(s) and test positive for ham and mayonnaise – scientific evidence exonerating Mr. Ayo."[67] He offers nothing to support this subjective statement. Nor does the record provide any support for his allegation. There is no evidence that the victim was cut by the knife, but rather, merely that the blade rested against the victim's throat momentarily during the encounter. Under these circumstances, a negative finding would not tend to disprove Ayo's guilt at all. Nor would Ayo's sheer speculation regarding what testing may have revealed support a finding that the outcome would have been any different had DNA testing been conducted on the knife. Counsel's decision not to have the knife tested for the victim's blood or skin cells was therefore objectively reasonable. Thus, even if this claim were not procedurally barred, it is without merit.

(c) *Investigate and obtain evidence*

Ayo argues that defense counsel failed to subpoena his personal medical records or

---

[67] Rec. Doc. 3, Memo in support, p. 79.

Barrett's telephone records to support his defense.  Ayo asserts counsel should have obtained

his medical records to show that he suffered permanent damage to his knee, which made it

physically impossible for him to have run from the crime scene.  The state-court records

indicate that defense counsel did subpoena his medical records.  On August 20, 2007, a

subpoena *duces tecum* was issued for Glenn Ayo's medical records from Santa Rosa Medical

Center.[68]  Court minutes reflect that on September 24, 2007, the return on the subpoena *duces*

*tecum* was marked satisfied by the defense.  Furthermore, the testimony at trial was that the

distance from the robbery scene to the corner where Ayo caught the cab was very short ("only

a few city blocks").[69]  Given the time frame, Ayo could have walked the distance.  No suggestion

was made or theory advanced at trial that the perpetrator would have had to run.  The victim

himself testified that the perpetrator walked away after the robbery.  Not surprisingly, the

state district court rejected the claim because Ayo failed to show how the medical records

were relevant.  The state court's finding was not objectively unreasonable given that there was

no showing that the medical records were relevant, and regardless, counsel had obtained the

records.

Ayo also faults counsel for failing to subpoena the cab driver's cell phone records, which

he claims would have shown that Ayo was calling the cab driver at the exact same time as the

---

[68] State Rec., Vol. 3 of 13, R.p. 510.

[69] State Rec., Vol. 4 of 13, Trial transcript (Lieutenant Jewell), p. 23.

armed robbery was occurring in another location, and therefore he could not have committed the robbery.  With respect to this evidence, however, Ayo's argument is not only conclusory but illogical.  Notwithstanding the fact that the records may not have existed, the time at which Ayo placed the call for a cab as purportedly evidenced by incoming call records on Barrett's cell phone would not establish Ayo's location at the time he made the phone call.  The mere fact he made a phone call around the time the robbery occurred does not suggest he was not present in that location at the time of the robbery.  The state court properly rejected this claim for relief based on the lack of proof and speculative nature of the claim.

(d)  *Subpoena of witnesses*

Ayo next claims that counsel failed to adequately investigate and call witnesses, Theo Brickley, "Dave," Ronald Montgomery and William Barrett, to testify at trial.  As set out previously in this report with regard to the suppression hearing, in order to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner cannot rest on mere allegations alone.  A petitioner must provide the name of the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009); *see also Anthony v. Cain*, Civ. Action No. 07–3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses,

66

on that issue.").

Ayo maintains that Brickley and Dave would have offered testimony helpful to his alibi defense. Ayo concedes he could not provide his attorney with Dave's full name or address. Not only was he vaguely identified simply as "Dave," but Ayo informed counsel he was unsure if he could be located due to an impending move. There is nothing in the record to indicate whether counsel ever attempted to locate Dave based on the scant information he was provided or if he was simply unable to find him. Regardless, Ayo has failed to offer any evidentiary support regarding the specifics of Dave's purported testimony. He offers only self-serving, speculative and conclusory allegations that Dave would testify to the time Ayo was at his apartment and that he gave him a broken kitchen knife to use to strip copper and sold him the travel bag and dark blue weatherproof zip-up windbreaker because it had been rainy all weekend.[70] Ayo has not presented evidence in the form of actual testimony by the witness or an affidavit. Self-serving speculation that a witness' testimony would be favorable will not sustain an ineffective assistance claim. *See Yowell v. Thaler*, 545 F. Appx. 311, 314 (5th Cir. 2013) ("We have consistently held that conclusional and speculative allegations of ineffective assistance are not grounds for habeas relief.") (citing *Kinnamon v. Scott*, 40 F.3d 731, 734-35 (5th Cir. 1994); *Barnard v. Collins*, 958 F.2d 634, 642 n. 11 (5th Cir. 1992)).

The same is true for Ronald Montgomery, the private defense investigator. Ayo fails

---

[70] Rec. Doc. 3, Memo in support, pp. 43-44.

to even allege what his testimony would be or how it would have helped his defense at trial, much less present an affidavit setting forth his proposed testimony. This claim likewise fails as unsupported and speculative.

With respect to Theo Brickley, Ayo informed counsel that Brickley would testify that he gave Ayo a ride from uptown New Orleans to Dave's apartment at the time the robbery was taking place. He provided an affidavit from Theo Brickley in support of his claim. The record is clear, however, that defense counsel actually did issue an instanter subpoena for Theo Brickley.[71] Therefore, counsel did not perform deficiently considering he issued a subpoena for this witness. There was no return on the subpoena and Brickley ultimately failed to appear for trial. When the defense learned that Brickley was not available for trial, however, counsel presented Ayo with the choice to request a continuance of trial. Ayo stated on the record that he did not want a continuance and wanted to proceed to trial without Brickley. Ayo's actions and his decision in this regard certainly militate against the probability that Brickley would, if called, offer testimony favorable to the defense, or that it would have affected the outcome of trial. While Ayo arguably suggests under Claim 4 that counsel was ineffective for failing to use Brickley's purported affidavit at trial, any attempt to use such hearsay evidence would have been denied. The state courts' finding that Ayo failed to establish ineffective assistance

---

[71] State Rec., Vol. 6 of 13 (Trial Transcript, November 27, 2007), pp. 2-6.

of counsel based on this claim was proper.[72]

Finally, as to William Barrett, counsel had no obligation to investigate him further or to subpoena him as a witness for trial.  Barrett made a statement to police after the incident. He was called as a witness for the State and testified at trial.  Defense counsel had ample opportunity to,  and did, cross-examine him and explore his knowledge surrounding Ayo's arrest.  He offered nothing helpful to Ayo's defense.  Ayo is not entitled to *habeas* relief on these claims.

### 9.  Participation in jury impaneling (Claim 8, sub-claim 5)

Ayo claims that counsel rendered ineffective assistance when he took no steps to object or defend his right to participate in the challenge or impaneling of an impartial jury.  The state district court rejected the claim because the transcript of voir dire proceedings showed that Ayo was present in the courtroom, though excluded from bench conferences.  Ayo complains that he was improperly excluded because although he was present during the calling and examination of prospective jurors during voir dire, he remained seated and out of earshot of the court and counsel for the state and defendant during "the actual[] impaneling of the jury," which denied his "constitutional right to (hear) and participate in the challenge and selection of his jury."[73]

---

[72] *Ayo*, 7 So.3d at 102.

[73] Rec. Doc. 3, Memo in support, pp. 82-83.

Under federal law, a criminal defendant "has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975); *United States v. Thomas*, 724 F.3d 632, 642 (5th Cir. 2013). The impaneling of a jury is a material stage of a trial that requires the defendant's presence. *Thomas*, 724 F.3d at 642 (citing *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002)). Nevertheless, "the right to be present is not absolute: it is triggered only when the defendant's 'presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Cohen v. Senkowski*, 290 F.3d at 489 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)).

Ayo has failed to show that the state court's decision in this case was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1), (2). Ayo concedes he was present in the courtroom throughout jury selection proceedings. The record reflects that defense counsel ensured Ayo's presence at the defense table during voir dire examination, and at no point was he removed or excluded from the courtroom. There is no indication or allegation that counsel did not confer with Ayo throughout the entire voir dire process, which took place in open court and for which Ayo was admittedly present. Ayo therefore had the ability to observe and participate fully in voir dire examination of the prospective jurors. He plainly had the ability to consult with defense

counsel, who was seated next to him during those proceedings, and to express his opinions and concerns with respect to the questioning of prospective jurors. He also had the ability to consult with defense counsel both before and immediately after the bench conferences regarding those prospective panel jurors who were excused or accepted for which he was undeniably present in open court.

Ayo complains only that he could not hear the bench conferences where challenges were made. However, there is no indication in the record, or notably any allegation even made by Ayo, that at any point during the proceedings he expressed a desire to counsel or to the court that he wanted to approach the bench for the challenges. Nor has Ayo cited any United States Supreme Court precedent that would either demand his presence at the bench or obligate defense counsel to object based on his client remaining seated and out of earshot during the bench conferences. Moreover, to prevail on a claim that counsel was ineffective for failing to object to his client not being present for the voir dire bench conferences, he must demonstrate not only that counsel was deficient, but that the deficiency prejudiced the defense. *See Cartwright v. Dretke*, 103 F. Appx. 545, 550 (5th Cir. 2004). Even assuming that counsel was deficient in failing to insist on Ayo's presence at the bench conferences, Ayo fails to show how his presence at the bench conferences would have impacted the fairness of his trial. He does not suggest that any particular juror selected or the impaneled jury itself was impartial. Accordingly, this claim does not merit *habeas* relief.

10.  *Opening and closing statements (Claim 8, sub-claims 6-7; Claim 11, sub-claim 7)*

Ayo maintains that defense counsel was ineffective because he failed to object during the opening statement when the prosecutor informed the jury, "The defendant here armed robbed Mr. DeBroy," and instilled guilt in the jurors' minds based on a personal belief that Ayo was guilty.  He asserts that the prosecutor also improperly told the jury that they would hear the broadcast of officers observing Mr. Ayo with a knife and chasing him into Orleans Parish and would learn the defendant is wanted in other states.  The state district court found no merit to the claim.

The first objectionable comment occurred at the beginning of the State's opening argument:

> Ladies and Gentleman, 88 years.  That's how long Baptiste Debroy has lived on this earth.  Fifty years is how long him and his wife Frances have been riding in the Iris parade in Jefferson Parish.  Fifty years, they've been getting together with their Krewe to hand out throws.
>
> Twenty years is how long they did the 250 Iris, the warehouse at 250 Iris to hand out throws on Friday, Saturday and Sunday before the parade, 20 years as of January 7th, 2007, the date of this incident that they been going to that warehouse.  Twenty-eight dollars, a twenty, a five, and three ones is the amount of money that Baptiste Debroy carries on him when he goes out, unless he needs more money for something else, a twenty, a five and three ones.
>
> *And a couple of minutes, a couple of minutes, on January 7th, 2007 is the amount of time it took for Glenn Ayo, the Defendant, to arm rob Baptiste Debroy.*  A couple of minutes is all it took, after all that time, to take that from him.
>
> Ladies and gentleman, you're going to hear from the victim in this case, Baptiste Debroy.[74]

---

[74] State Rec., Vol. 7 of 13, Transcript (opening statement), p. 270.

To establish his claim of ineffective assistance of counsel on federal *habeas* review, Ayo must establish both that his counsel's performance was deficient and, had his counsel performed adequately, there is a reasonable probability that the outcome would have been different. He must also establish that the state courts' findings on both of these elements were objectively unreasonable.

Fairly read in the context of both the statements preceding and following the objectionable language, these remarks cannot be characterized as an expression of the prosecutor's personal belief in defendant's guilt.  The prosecutor's argument was presented in a manner to garner sympathy for the victim before she summarized the evidence from the witnesses in the case, beginning with the testimony of the victim himself, and in no way suggested that she had any personal knowledge of Ayo's guilt.  It is entirely permissible for an attorney "to make statements that indicate his opinion or knowledge of the case ... if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence." *See United States v. Thompson*, 482 F.3d. 781, 786 (5th Cir. 2007).  Counsel is not required to raise groundless objections. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994).

With respect to the second remark allegedly made by the prosecutor (*i.e.*, that the jury would hear the broadcast of officers observing Mr. Ayo with a knife and chasing him into Orleans Parish and would learn the defendant is wanted in other states), this statement does not appear in the transcript of opening statement.  Because the alleged misstatements by the prosecutor as framed by Ayo were not in fact made, no basis for objection existed.  Similarly, to the extent the statements were framed in a different and entirely permissible context asking

the jury to draw inferences from the evidence presented at trial, any objection to such statements would have been improper and futile.  As such, failure to make the objection would not constitute deficient performance.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Furthermore, the Court notes that the jury was specifically instructed that the prosecutor's opening statement was not evidence and that a decision should be based on the evidence in the case. The jury is presumed to have followed the instructions given to it by the trial judge. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Woods v. Johnson*, 75 F.3d 1017, 1036 n. 29 (5th Cir.1996).  Therefore, no prejudice has been established.

In Claim 11, sub-claim 7, Ayo contends the state was allowed to capitalize on perjured testimony and fraudulent inflammatory rhetoric during closing argument when defense counsel refused to object to the following statement:

> You have heard how a Lieutenant Detective broadcast, how he observed Mr. Ayo get into a cab with a large knife right around the corner from the robbery, and how the officers chased but lost sight of the vehicle as they entered Orleans Parish.

The state district court denied the claim because Ayo provided no proof or evidence in support.  Although the state court record does not contain a copy of the transcript of closing argument, the Court finds the transcript is unnecessary to resolve the claim.  Ayo's argument is premised on his unsuccessful and non-meritorious claim that the police officers' testimony was perjured.  For the reasons previously stated, he failed to establish perjury based on the mere fact that inconsistent evidence or testimony existed.  Just as counsel had no grounds to object to the officers' testimony as perjured during trial, similarly, any objection during closing

argument based on prosecutorial misconduct in presenting and summarizing this evidence would have been futile and improper.  It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference. *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir.1992).  Furthermore, even if counsel's failure to object could be considered deficient performance, Ayo clearly has not shown the prejudice required to support his claim. The jurors were properly instructed that they were not to consider the prosecutor's arguments as evidence, and "[j]urors are presumed to follow their instructions...." *Weeks*; *Woods*, *supra*. Accordingly, the Court finds that Ayo is not entitled to *habeas* relief on these claims.

*11.  Pretrial agreement and introduction of Ayo's letter (Claim 10, sub-claims 2-3)*

Ayo argues that counsel rendered ineffective assistance in allowing the State to introduce highly prejudicial evidence of other crimes in the form of correspondence Ayo sent to William Barrett after the robbery, in violation of an express pretrial agreement with the State not to introduce the evidence at trial.[75]  Ayo contends defense counsel should have objected based on a breach of the pretrial agreement or moved to redact the letters with respect to the other crimes evidence.

On direct appeal, Ayo asserted that the trial court erred in admitting the evidence at trial.  In rejecting the claim, the Louisiana Fifth Circuit found no abuse of discretion.  The court of appeal explained:

It is undisputed that after the robbery the defendant wrote a letter to the cab

---

[75] Rec. Doc. 3, Exhibit S; State Rec., Vol. 3 of 13, R.p. 628, State's Exhibit 21.

driver, William Barrett. It is also undisputed that the state, in possession of the letter, provided a copy to the defense before trial. In this letter, the defendant stated that he armed himself with a knife before getting into the cab because he was afraid of a "psycho patient [sic] contractor" who was outside.

The defendant argues that the prosecutor promised prior to trial not to introduce his letter into evidence. He further contends that the state breached this agreement and questioned him regarding his letter. He concludes that the introduction of his letter to Mr. Barrett was so prejudicial as to warrant the granting of a new trial.

The state cross-examined the defendant on his letter to the cab driver. Defense counsel objected and informed the court that he had received copies from the state of letters the defendant wrote. Counsel also stated that he had been promised that the state would not use the letters at trial. The assistant district attorney replied that she had promised counsel not to use the letters during her case-in-chief but she denied promising not to use the letter to impeach the defendant. The trial judge allowed the prosecutor to cross-examine the defendant on his letter and allowed it to be admitted as state's exhibit 21.

In a bench conference, the state indicated that it wished to offer this letter into evidence. The defense objected but the court admitted the letter into evidence as State's Exhibit 21. The trial court was faced with contradictory accounts of an agreement between counsel. Under the circumstance, the trial court's ruling was not an abuse of discretion.

Furthermore, the trial court's ruling was supported by evidence law. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. LSA-C.E. art. 403.

Evidence may also be admitted for impeachment purposes. Impeachment evidence is that which affects the credibility of a witness. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). An example, present in this case, of impeachment evidence is a prior inconsistent statement by the testifying witness. Defendant testified that he secured the knife to use for work stripping copper. What he wrote in the letter contradicts his trial testimony. Absent a clear abuse of discretion, a trial court's ruling on the admissibility of evidence will not be overturned on appeal.

The defendant's argument to this Court does not establish that the trial court abused its wide discretion in admitting the defendant's letter into evidence. This assignment of error has no merit.[76]

On post-conviction review, the state district court denied the claim as unsupported and noted that the State is permitted to use evidence to impeach a witness.

It is not the province of a federal *habeas* court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. at 68. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. Because the state court held that admission was proper under state law, trial counsel cannot be deemed ineffective for failing to object to the admission of the evidence.

Moreover, the record in this case does not support Ayo's assertions that defense counsel failed to object or move for redaction of the evidence.  Instead, it reveals he did both. Defense counsel argued that the evidence was improper and should not be admitted based on the pretrial agreement.  After debate by counsel disputing the nature and scope of that agreement, the trial court resolved the issue in favor of the State:

Well, I don't believe that's true.  It doesn't sound like that would be the spirit of any attorney's stipulation or promise.  If then in a defense case someone takes the stand, a witness takes the stand and says something that's contrary, the attorney has a right to impeach or rebut.[77]

Defense counsel later objected to the relevance of certain parts of the letter and argued for excising  certain portions, but the trial court denied the request.  The objection by counsel is

---

[76] *Ayo*, 7 So.3d at 103.

[77] State Rec., Vol. 5 of 13, pp. 198-200.

reflected in the following bench conference:

MR. SCHMIDT:

     I don't think it's relevant.  To the extent that any portion of that might be relevant, I think that any limited probative value is substantially outweighed by the fact that it's associated with –

THE COURT:

     Well, the prejudice is that it attacks the credibility of your client, and certainly that's a prejudice to your client, but the State has a right to do that.

MR. SCHMIDT:

     Well, there's a lot of stuff in there that really – he's talking about bonds.

THE COURT:

     Well, that's no secret.  I mean, they know about 1994.  It's not like we have to hide that prior arrest or conviction.

MR. SCHMIDT:

     Well, if the Court is disposed to letting it in, which I would object to, I would alternatively ask to excise any portion that's not directly related to what the State's –

MS. SWAIM:

     Your Honor, I mean, he said he wrote the letter.  He identified the letter as writing the letter to Bill and Dave.  He testified he wrote the letter because he wanted them to tell the truth.  He went into painstaking – he's the one that made this letter more relevant than anyone.  So, I mean, I don't see how it's a problem.

THE COURT:

I'm going to admit it.  Your objection is noted for the record.[78]

Because the evidence plainly refutes Ayo's claim of ineffective assistance of counsel, Ayo is not

entitled to relief on these claims.

### 12.  Nurse Lee's testimony  (Claim 10, sub-claims 4-6)

Susan Lee, a nurse practitioner who oversees the health and wellness of inmates at the

Jefferson Parish Correctional Center, testified as a witness for the State.  She testified regarding

a physical assessment for Ayo conducted about a month and a half after his arrest and about

seven months before trial.  She testified that Ayo weighed 181 pounds at the time of the

assessment in February 2007.  She testified that Ayo's current weight was 212 pounds.[79]

Ayo maintains defense counsel was ineffective in allowing the State's witness, Susan

Lee, to weigh him at trial and then elicit testimony from Nurse Lee, regarding Ayo's weight as

obtained during the physical assessment conducted in prison shortly after his arrest.  He

claims he was misled by his own counsel to believe it was in his best interest and would help

his defense to allow the nurse to weigh him, only to later learn the nurse was a witness for the

State.  He faults defense counsel for failing to object to the admission of the prison medical

records absent proper consent or subpoena of such records, especially in light of federal

privacy regulations. He also argues that the use of the records exceeded the limited scope of

the trial court's ruling with respect to admission for purposes of showing Ayo's weight when

---

[78] *Id*. at 222-224.

[79] State Rec., Vol. 5 of 13, Trial Transcript, pp. 152-57; *see also* State Rec., Vol. 3 of 13, R.p. 627 (physical assessment).

he was booked at the correctional center, because the physical assessment was done more than one month after his arrest and booking. The state district court denied the claim because counsel in fact argued for suppression of the medical records and lodged objections, which were overruled.

The record reflects that the trial court granted defense counsel's request on behalf of his client to be weighed, given the court's previous ruling allowing the State to call Nurse Lee as a witness to offer testimony regarding Ayo's weight shortly after the arrest.  Ayo agreed with counsel that this course of action would be in his best interest.  The mere fact that Nurse Lee was allowed to accompany him and witness the weigh-in, and that she was a witness for the State, hardly tends to show either deficient performance or prejudice.  The circumstances do not alter the tactical decision made by counsel, with Ayo's full knowledge and agreement, to obtain a current weight that could tend to support their mistaken identity defense since Ayo maintained and would testify that he weighed 240 pounds at the time of his arrest. Furthermore, counsel expressly objected to the admission of Ayo's physical assessment record based on improper seizure of those records in violation of the Health Insurance Portability and Accountability Act ("HIPPA") regulations and on hearsay grounds.[80]  Thus, counsel cannot be faulted for failing to make objections that were actually raised, but denied.  Finally, Ayo's claim with regard to the use of the evidence is actually directed at the scope of Nurse Lee's testimony elicited by the State.  Defense counsel certainly cannot be faulted for failing to raise yet another objection based on admissibility of the physical assessment records that would have been

---

[80] State Rec., Vol. 5 of 13, pp. 153-155.

denied. Instead, he effectively cross-examined Nurse Lee to cast doubt on the accuracy of the assessment. His decision in this regard was objectively reasonable and an objection to the use of the assessment form as inconsistent with the court's ruling would not have altered the outcome of the proceedings. He is not entitled to relief on these claims.

*13. Objections to several references to alleged other crimes* (Claim 10, sub-claim 7)

Ayo argues that defense counsel was ineffective in failing to object or move for a mistrial on three occasions when the prosecutor made prejudicial references to Ayo's being in jail. The first instance occurred when she referenced Ayo's "being wanted for a 'non' existing parole violation." The second instance occurred when she introduced the letter Ayo wrote to the cab driver containing references to Ayo's prior imprisonment and posting bond in another state. The third instance occurred when she elicited testimony from Nurse Lee referencing her duties overseeing the health care of "inmates" and Ayo's medical appointment "in jail." The state district court construed these claims to reference ineffective assistance in failing to object to impermissible other crimes evidence (PCR Claim No. 52), and denied them because the substance of the claim was already addressed and rejected on direct review by the Louisiana Fifth Circuit.

The record shows that defense counsel did object and move for a mistrial based on the reference to Ayo's parole status and he also objected to the admission of the correspondence sent to Barrett. Moreover, the court of appeal held that these evidentiary rulings were proper under state law. Ayo fails to establish that counsel's performance was deficient or that he suffered any prejudice. His argument that counsel should have objected to Nurse Lee's

testimony based on inadmissible other crimes evidence fails because her references clearly were not to "other crimes" committed by Ayo.  Her testimony was therefore not objectionable on such grounds, and defense counsel was not obligated to raise a meritless objection.  He is not entitled to relief on this claim.

14.  C*ross-examination of William Barrett (Claim 11, sub-claims 1-2)*

Ayo asserts that defense counsel was ineffective in failing to properly cross-examine William Barrett.  He argues that counsel "refused to impeach Barrett as to what he was promised for his testimony and what his motive was to testify and commit perjury against Ayo."[81]  He asserts that investigator, Ronnie Montgomery, told him that Barrett was arrested and "worked a plea agreement with the State" in which he would testify against Ayo.  This is bolstered, according to Ayo, by the fact that Barrett developed "selective amnesia" and "out-right stupidity" upon cross-examination by the defense only, which was completely out of character with regard to his command of the facts and circumstances surrounding the illegal investigative stop of Ayo and the unlawful exploratory search.  The state district court rejected this claim as unsupported.

Defense counsel had no reason to question Barrett about a plea deal or his motivation for testifying.  Ayo's assertions to this effect are self-serving, contrived and completely exaggerated. For instance, he cites to his own Exhibit B to support his claim that Montgomery informed him about the existence of a plea agreement between the State and Barrett; however, Exhibit B consists of a letter written *by Ayo* to Montgomery.  He offers no support for his

---

[81] Rec. Doc. 3, Memo in support, p. 104.

contention that Barrett's testimony was improperly influenced.  Furthermore, the legality of the arrest and lawfulness of the search had already been established.  Defense counsel would have had no reason or grounds to impeach Barrett's testimony at trial and his decision in this regard was proper.  Ayo is not entitled to relief on this claim.

*15.  Fatigued jurors (Claim 11, sub-claims 5-6)*

Ayo asserts that counsel was ineffective in failing to object when two jurors fell asleep during Ayo's testimony and to either move for a recess or a mistrial due to the fatigued nature of the jurors prior to closing arguments and deliberation.  Ayo alleges jurors "had been in court an absurd sixteen (16) hours and half the jury panel expressed the need to stop."[82]  He maintains the jury was unable to render a fair verdict under the circumstances.  The state district court denied these claims as unsupported, speculative and conclusory.

Although the second day of trial was a full twelve to thirteen-hour day, there is no indication from the record that jurors were too tired to function or deliberate properly and render a fair verdict.  Trial on the second day was set to start at 9:00 a.m.  Court minutes from the second day of trial reflect that the state and the defense presented their cases, and the State began its closing argument at 7:30 p.m.  The jury was sent to deliberate at 8:56 p.m. and returned with a verdict at 9:52 p.m.

There is nothing in the record to support Ayo's allegation that two jurors fell asleep during his testimony.  Nor was it extremely late in the evening when Ayo testified, considering closing arguments began at 7:30 p.m.  At no time during his testimony did anyone other than

---

[82] Rec. Doc. 3, Memo in support, pp. 107-08.

Ayo apparently notice jurors sleeping, and no juror voiced complaints or asked for a break in the proceedings.  Before closing argument began, the trial court inquired if the jurors wanted to take a break.  Even at that point in time, the record reflects that some of the jurors wanted a break and some did not.  The trial court ordered a brief recess.  There is simply no evidence in this case to show that the jury experienced fatigue severe enough to materially affect their judgment.  The timeline of Ayo's second day of trial was certainly not so extreme to suggest the jury was unable to render a fair verdict.   Ayo has failed to establish any entitlement to relief on these claims.

*16.  Failure to make a record of Ayo's objections for appeal (Claim 11, sub-claim 4)*

   Ayo argues that prior to trial he gave defense counsel a "chronological list of prima facie objections detailing numerous illegalities, ranging from perjured testimony in suppression hearings to local exculpatory witnesses on supervised probation that allegedly could not be located for investigation and/or attendance," but counsel blatantly refused to object.[83]  Many of these instances were designated separately and were already found in this report to lack merit individually.  Defense counsel was not required to present futile objections simply to preserve meritless contentions for presentation on appeal.  Ayo has failed to present any evidence or argument sufficient to show that the state court's rejection of this claim amounts to a federal violation or resulted in prejudice so as to warrant federal *habeas* relief.

---

[83] Rec. Doc. 3, Memo in support, Exhibit U.

### 17. Cumulative error (Claim 12)

Finally, the Court addresses Ayo's complaints regarding "cumulative error." He argues that cumulatively, his assertions of ineffective assistance of counsel warrant relief. Where, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively. *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir.2008), *cert. denied*, 129 S.Ct. 1544 (2009); *United States v. Hall*, 455 F.3d 508, 520 (5th Cir.2006); *Miller v. Johnson*, 200 F.3d 274, 286 n. 6 (5th Cir.2000); *Sholes v. Cain*, Civ. Action No. 06–1831, 2008 WL 2346151, at *17 (E.D. La. June 6, 2008), *aff'd*, No. 08–30654, 2010 WL 1141590 (5th Cir. Mar. 25, 2010). As the United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir.1987).

For the foregoing reasons, Ayo has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Thus, under the AEDPA's doubly deferential standard applicable to ineffective assistance claims, the claims should be rejected.

### **RECOMMENDATION**

**IT IS RECOMMENDED** that Ayo's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[84]

      New Orleans, Louisiana, this <u>23rd</u> day of <u>   October   </u>, 2015.

                           **MICHAEL B. NORTH**
                          **UNITED STATES MAGISTRATE  JUDGE**

---

[84] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.